Page 1

1                IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ALASKA AT ANCHORAGE

3   _____

4   LAWRENCE H. GROVE, ET AL.,           )
                                         )
5                 Plaintiffs,            )
                                         )
6        vs.                             )
                                         )
7   UNOCAL CORPORATION,                  )
                                         )
8                 Defendant.             )

9   _____

10  Case No. A-04-0096 CV (JKS)

11

12

13  _____

14          VIDEOTAPED DEPOSITION OF PAUL CRAPPS

15  _____

16                   March 3, 2006
                     11:00 a.m.
17

18            Taken by Counsel for Plaintiffs
                            at
19              330 L Street, Suite 200
                   Anchorage, Alaska

20

21

22

23

24

25

EXHIBIT 14

*Stamps: COPY; RECEIVED MAR 21 2006 WEIDNER & ASSOCIATES*

Page 41

1   Q. Well, let's take at that point in time.
2   A. No.
3   Q. At your present job, do you have to use work
4   platforms?
5   A. Yes.
6   Q. Now, after that -- did you ever take any more
7   pictures of the filter room other than on that one
8   occasion?
9   A. Not in the filter room, no.
10  Q. Not in the filter room, so can you clarify? Did
11  you take pictures outside the filter room?
12  A. We had an OSHA posting that I took a picture of
13  the door going into the filter room with the OSHA
14  posting on it.
15  Q. Why did you have to put an OSHA posting on the
16  door?
17  A. From what I know, it was required to be posted
18  after the incident was --
19  Q. Did somebody tell you to post --
20  A. Yes.
21  Q. Who was that?
22  A. Roxanne.
23      MR. THORSNESS: Excuse me. I am just going
24  to make an objection as to the admissibility of any
25  reference to OSHA examination, inspections, this kind of

Page 42

1   thing. I don't want anyone to say that I waived my
2   objections concerning admissibility of any of this
3   information.
4       MR. COHN: Well, that can be taken up at the
5   appropriate time.
6       MR. THORSNESS: I learned this from
7   Mr. Weidner that I am well advised to preserve my
8   record, so that's why I am doing it.
9   Q. Where did you have to put the OSHA posting? Was
10  this on the door to the filter room?
11  A. No, we posted it on every floor.
12  Q. On every floor? And do you recall what that
13  posting said?
14  A. I wouldn't recall word for word, but just saying
15  that we had an OSHA incident and we were, under whatever
16  OSHA code, we were being fined.
17  Q. We being?
18  A. As the company.
19  Q. Unocal?
20  A. Yes.
21  Q. The --
22      MR. THORSNESS: Mike, when it's a good
23  time --
24      MR. COHN: Why don't we just take a break?
25  Off record.

Page 43

1       VIDEOGRAPHER: Off record 12:00 p.m. This is
2   the end of tape number one.
3       (There was a short break.)
4       VIDEOGRAPHER: On record 12:14 p.m. This is
5   the start of tape number two.
6   BY MR. COHN:
7   Q. Good afternoon, Mr. Crapps. I want to show you a
8   document. There is some writing on it because this is a
9   copy the court reporter had, and this is going to be
10  marked as Exhibit No. 1 to your deposition. This is the
11  renotice of taking video deposition of Paul Crapps.
12  Have you seen this document before, ignoring the writing
13  on there?
14  A. Yes.
15      (Exhibit No. 1 marked.)
16  Q. And you are here pursuant to this deposition
17  notice?
18  A. Yes.
19  Q. Before the accident involving Mr. Grove, had you
20  had any occasion to come up to the penthouse and observe
21  Siemens employees working?
22  A. No.
23  Q. You never did?
24  A. No.
25      MR. COHN: You know what? I'll give you

Page 44

1   this full stack, John. Actually, this is a better
2   stack.
3       MR. THORSNESS: Give this one back?
4       MR. COHN: Right.
5       MR. THORSNESS: Is this your note, pal?
6       MR. COHN: Yeah. Let's go off record for a
7   second.
8       VIDEOGRAPHER: Off record 12:16.
9       (There was a short break.)
10      VIDEOGRAPHER: On record 12:22.
11  Q. Do you have any personal knowledge of who first
12  erected that work platform in the filter room?
13  A. No.
14  Q. Do you have any personal knowledge of any
15  modifications made to that work platform in the filter
16  room before the accident?
17  A. No.
18  Q. Do you have any personal knowledge of any
19  maintenance on the work platform in the filter room
20  before the accident?
21  A. No.
22      MR. THORSNESS: Paul, be sure and let
23  Mr. Cohn finish his question before you answer. Thank
24  you.
25  Q. Have you heard any information about who erected

14 (Pages 41 to 44)



EXHIBIT  14

## Page 45

1  the work platform in the filter room?
2  A. No.
3      MR. THORSNESS: I would just caution the
4  witness, anything he has been told by his lawyers he is
5  not to reveal.
6      (Exhibit No. 2 marked.)
7  Q. Other than anything that's attorney-client. I
8  want to show you -- now, you have indicated earlier that
9  you reviewed some material before the deposition, but
10 you weren't sure exactly what it was or how to phrase
11 it.
12     Would a document like this refresh your
13 recollection if you looked at any discovery responses by
14 Unocal?
15 A. I would have to read it.
16     MR. THORSNESS: That's Exhibit No. 2, for
17 the record?
18 Q. This is -- it would have been better to do it the
19 same number, but this is Defendant's Responses to
20 Plaintiffs' First Discovery Requests, and this has been
21 marked as Exhibit No. 2 to the deposition of Mr. Crapps.
22     First, excuse me, it's Defendant's Responses to
23 Plaintiffs' First Discovery Requests. Did I say
24 "second"?
25     MR. THORSNESS: You said "first". This is

## Page 46

1  first, but mine are a lot thicker than that.
2      MR. COHN: What I did is I left out the
3  attachments. I didn't think that they were necessary.
4  Q. So this is Exhibit No. 2. Do you recall if you
5  reviewed this document?
6  A. No, I don't recall.
7  Q. Well --
8  A. They all look the same, so I would have to read
9  it all.
10 Q. But there were documents similar to this? It may
11 just not be this particular response that you reviewed?
12 A. Yes.
13 Q. Looking at page two of Exhibit No. 2,
14 interrogatory number two, which says, "Please identify
15 the owner of the work platform/scaffold involved in the
16 accident."
17     The answer, "Upon information and belief, Siemens
18 Building Technology, Inc. is the owner of the described
19 platform/scaffold." That information did not come from
20 you?
21 A. No.
22 Q. And you have no information one way or the other
23 who owns the work platform?
24 A. No, I don't.
25 Q. Now, when you looked at the platform, it was

## Page 47

1  affixed to the wall, is that correct, at least three
2  sides?
3  A. The brackets were affixed to the wall.
4  Q. Was the plank just laying on the -- was the plank
5  itself affixed to the brackets or just laying on the
6  brackets?
7  A. One end of the plank was on one bracket. One end
8  of the plank was on the floor.
9  Q. But the plank itself was not -- as far as you
10 could see, it wasn't attached with screws or any means
11 other than just laying -- if the bracket was up, it was
12 your understanding it was just laying on the brackets?
13 A. Yes.
14     (Exhibit No. 3 marked.)
15 Q. I want to show you what's been marked as Exhibit
16 No. 3, which is Responses to Plaintiffs' Second
17 Discovery Requests. Have you ever seen that document
18 before?
19     MR. THORSNESS: Take your time, Paul. Look
20 through it.
21 A. No.
22 Q. In request for admission number one, in the
23 response on page one, which asks them -- Unocal to admit
24 that the work platform had never been evaluated to
25 determine if it was safe, part of the response was,

## Page 48

1  "Upon information and belief, Plaintiffs' employer,
2  Siemens Building Technology, Inc. erected the subject
3  platform in connection with performance of HVAC
4  services."
5      As you indicated before, you don't have any
6  knowledge one way or the other about the truth or the
7  veracity of that statement?
8  A. No.
9      (Exhibit No. 4 marked.)
10 Q. I want to show you what's been marked as Exhibit
11 No. 4 and this is Responses to Plaintiffs' Third
12 Discovery Requests. Have you seen that document before?
13 A. No.
14 Q. In regard to that previous partial response that
15 I gave you in which it was indicated that upon
16 information and belief the platform had been -- that
17 Siemens Building Technology, Inc. is the owner of the
18 described platform/scaffold, which is one of the answers
19 to the interrogatories in exhibit --
20 A. This is No. 4.
21 Q. -- Exhibit No. 3, we then asked where did they
22 get the information and belief that Siemens Building
23 Technology erected the platform or owned the platform.
24     And the answer is, in part, if you look at page
25 two of exhibit -- is that Exhibit No. 4?

GROVE v UNOCAL

PAUL CRAPPS
3/3/2006

Page 49

1 A. Yes.
2 Q. Exhibit No. 4, it says partly -- and the answer
3 stated, "In addition, upon information and belief in
4 response to Unocal's response to Plaintiffs' First
5 Discovery Requests specifically answers, C(c) to
6 interrogatory number one states, "Upon information and
7 belief, plaintiff and his employer, Siemens Building
8 Technology, Inc. are the most knowledgeable concerning
9 the subject work platform/scaffold."
10     And answer to interrogatory number two states,
11 "Upon information and belief, Siemens Building
12 Technology, Inc. is the owner of the described
13 platform/scaffold.
14     And in the defendant Unocal's Response to
15 Plaintiffs' Second Discovery Requests, specifically
16 request for admission number one states, "Upon
17 information and belief, Siemens Building Technology,
18 Inc. erected the subject platform in connection with the
19 performance of HVAC services."
20     It's asked to identify each person supplying
21 these answers and the basis of information and belief.
22 Do you see that? Have you been following me?
23 A. I see.
24 Q. It says, the answer, the second sentence,
25 "Without waiving the foregoing, defendant Unocal, by and

Page 50

1 through counsel, has conferred with the following
2 individuals in connection with its discovery responses."
3 Do you see down on number two whose name is that? Is
4 that your name?
5 A. Yes, it is.
6 Q. It says Mr. Paul Crapps?
7 A. Yes.
8 Q. It says, "Mr. Crapps is a current Unocal
9 employee. His position is associate coordinator
10 building services."
11     Would that be correct at the time, which the
12 responses are dated November 20, 2004?
13 A. Yes.
14 Q. Now, though Unocal indicates it has conferred
15 with you in regard to these responses, you don't have
16 any personal knowledge that any of the -- that Siemens
17 Building Technology erected or maintained or built that
18 scaffold; is that correct?
19     MR. THORSNESS: Objection; form and vague.
20 Q. You may answer.
21     MR. THORSNESS: And asked and answered about
22 four times now.
23 A. Yeah. I mean, we deferred that. No one went up
24 into that filter room prior to the incident other than
25 Siemens.

Page 51

1 Q. And when did you start working at the building?
2 A. I mean when I came on as a Kelly Services
3 contractor.
4 Q. And do you know if the platform was erected after
5 you came on as a contractor with Kelly Services?
6     MR. THORSNESS: Objection; foundation, asked
7 and answered.
8 A. No, I don't.
9 Q. You don't have any personal knowledge?
10 A. No.
11 Q. You don't have any personal knowledge as to when
12 that platform was erected?
13 A. No.
14 Q. Do you have any explanation as to how your name
15 is on this answer as one of the people that's provided
16 the information which forms the basis of the responses
17 to the discovery requests one and two?
18     MR. THORSNESS: Objection; form and
19 foundation.
20 A. No.
21     (Exhibit No. 5 marked.)
22 Q. I want to show you Defendant's Responses to
23 Plaintiffs' Third (sic) Discovery Requests. The reason
24 for that, there was already a third, so this should have
25 been labeled fourth discovery request. This is listed

Page 52

1 as Exhibit No. 5. Have you seen that document before?
2     MR. THORSNESS: You are asking him if he has
3 ever seen this document before? That's your question?
4 A. No. Not that I know of, no.
5     MR. THORSNESS: Thank you.
6 Q. Which document are you looking at?
7 A. No. 5.
8 Q. Now, the reason I'm asking you this is in
9 response to -- Defendant's Response to Plaintiffs' Third
10 Discovery Requests, which is Exhibit No. 4, it is
11 indicated you have been conferred with at least in
12 regard to the previous discovery answers.
13     Were you conferred with in regard to the answers
14 in these discovery requests, to the best of your
15 knowledge?
16 A. I don't know exactly what you are asking.
17 Q. Did anybody ask you for information that became
18 the basis of any of the answers in this response, to the
19 best of your personal knowledge at this time?
20     MR. THORSNESS: You are referring to Exhibit
21 No. 5, Michael?
22     MR. COHN: Yeah.
23 A. So you are asking then did anyone ask me for
24 input into these answers? Input in this? No, not that
25 I can recollect.

16 (Pages 49 to 52)

### Page 53

1      (Exhibit No. 6 marked.)
2    Q. I want to show you Defendant's Response to
3  Plaintiffs' Fifth Discovery Requests, which is Exhibit
4  No. 6. And I want to ask you specifically on page two,
5  interrogatory number one, the interrogatory asks,
6  "Please explain what happened to the work platform in
7  the mechanical room -- "
8      When I say "mechanical room," I am referring to
9  the filter room. "-- of the Unocal building following
10 the accident."
11     And we asked specifically where the work platform
12 and its parts, including bolts, who took down and
13 removed the platform, what happened to the platform.
14     And the answer is, "Unocal reserves the right to
15 respond to this interrogatory when the court rules on
16 the outstanding motions." That's dated June 27, 2005.
17   A. Okay.
18      MR. THORSNESS: Wait a second. What are you
19 referring to?
20      MR. COHN: That's Exhibit No. 6, which is
21 Defendant's Responses to Plaintiffs' Fifth Discovery
22 Requests.
23   Q. Now, at the time, were you conferred with in
24 regard to the answer to interrogatory number one to the
25 fifth discovery requests? Have you seen this document

### Page 54

1  before?
2    A. No.
3    Q. Now, in previous answers you have indicated you
4  are the one who took down the work platform or removed
5  it from the room; is that correct?
6    A. Yes.
7    Q. Then after you took it down, the nuts, the bolts,
8  the washers, if any, and the brackets were thrown in the
9  trash; is that correct?
10   A. Yes.
11   Q. And that the plank was stored, but you don't know
12 what happened after the plank was stored in the
13 penthouse?
14   A. Yes.
15      MR. THORSNESS: Object to these questions.
16 They have already been asked several times.
17      (Exhibit No. 6-A marked.)
18   Q. And I want to show you what's been marked as
19 Exhibit No. 6-A, and that's Defendant's Supplemental
20 Responses to Plaintiffs' Fifth Discovery Requests, which
21 is a supplemental answer to interrogatory number one.
22      And it is signed by one of Unocal's counsel,
23 December 16, 2005, the same question about what happened
24 to the work platform and its parts.
25      Its answer is, "Unocal does not currently know

### Page 55

1  the whereabouts of the work platform or the identity of
2  the person or persons who removed it."
3       That statement is incorrect, isn't it?
4       MR. THORSNESS: Just a second, Michael. You
5  are really confusing things here. You are referring to
6  6-A.
7       MR. COHN: Which is Defendant's Supplemental
8  Responses to Plaintiffs' Fifth Discovery Requests.
9       MR. THORSNESS: Don't interrupt me, please.
10 The language you read doesn't appear on 6-A, unless you
11 can direct me to it. 6-A is the supplemental response,
12 right?
13      MR. COHN: Right. Look at page two,
14 interrogatory number one, the answer.
15      THE WITNESS: You are on a different
16 document, because this is --
17      MR. THORSNESS: You are right. Thanks for
18 clearing that up. That's Defendant's --
19      MR. COHN: This is Defendant's Supplemental
20 Responses to Plaintiffs' Fifth Discovery Requests dated
21 by counsel December 16, 2005.
22   Q. And the answer in regard to what happened to the
23 work platform is -- can you read the first sentence of
24 that answer?
25   A. "Unocal does not currently know the whereabouts

### Page 56

1  **of the work platform or identification of the person or**
2  **persons who removed it."**
3    Q. Now, that's incorrect, isn't that? You are the
4  person who removed it; is that correct? Do you have any
5  explanation as to why that answer was given?
6    A. No.
7       MR. THORSNESS: I'll object to this
8  disingenuous line of questioning. Counsel knows that
9  there is a supplemental that makes that clear.
10      MR. COHN: We'll go to the supplemental.
11      MR. THORSNESS: Let me finish. Stop
12 interrupting me. I don't interrupt you. Don't
13 interrupt me, please.
14      MR. COHN: Keep going, John.
15      MR. THORSNESS: This is a waste of time. So
16 I'll object on that basis.
17      MR. COHN: For completeness of the record, I
18 am providing --
19      MR. THORSNESS: You are harassing this
20 witness. I object to it.
21      MR. COHN: Well, the record will show my
22 tone of voice and whether I'm screaming at the witness
23 or not, which I am not. I am talking in a calm tone of
24 voice.
25      MR. THORSNESS: You are harassing him

Page 57

1  though. Let's continue.
2       MR. COHN: The problem with the answers is
3  that they have been misrepresenting the facts all along,
4  which is why there is now a second supplement. And Mr.
5  Thorsness has told me there will be a third supplement,
6  which isn't here yet.
7       MR. THORSNESS: You know, I object to your
8  allegation of misrepresentation. There is no basis for
9  that. I object to it, Counsel. I object to it.
10      MR. COHN: That's fine. You can make
11 whatever you objections you want, John.
12      MR. THORSNESS: Let's continue, please.
13      (Exhibit No. 6-B marked.)
14 Q. Defendant's Second Supplemental Response to
15 Plaintiffs' Fifth Discovery Requests, which is Exhibit
16 No. 6-B, and I'm going to show you that document. This
17 is a supplement to the supplement.
18      MR. THORSNESS: Object to characterization.
19 Ask your question, Counsel. And move to strike.
20      MR. COHN: Objection to that as proposed.
21 Q. I just want to -- and the same question about
22 what happened to the work platform.
23      MR. THORSNESS: Object to foundation. You
24 haven't laid a foundation.
25 Q. Exhibit No. 6-B, have you seen this exhibit

Page 58

1  before?
2  A. Yes.
3  Q. When did you see that exhibit?
4  A. Earlier today.
5  Q. Were you -- did you provide information that went
6  into this exhibit?
7  A. Yes.
8  Q. And when were you contacted in regard to this
9  information that's provided here?
10 A. I don't know.
11 Q. Could you read the answers into the record,
12 number two and three, and then I want to ask you if
13 that's information that you provided?
14 A. "Defendant believes that Paul Crapps removed the
15 scaffolding from inside the filter room within a few
16 days of the alleged incident. At that time, Paul
17 Crapps' title was building services coordinator.
18      He provided services to Union Oil Company of
19 California through Kelly Services. Mr. Crapps' contact
20 information has been previously provided.
21      Upon information and belief, Paul Crapps placed
22 metal pieces of the platform in a trash can located
23 outside the filter room. Subsequent to removing the
24 platform from the filter room, Mr. Crapps has attempted
25 to locate boards at part of the platform, but has been

Page 59

1  unable to do so. Defendant does not know the current
2  location of the boards."
3  Q. What information in number two and number three
4  did you provide?
5  A. All of it.
6  Q. Have you gone back and checked to see if the
7  plank is still in the location that you stored it?
8  A. Yes.
9  Q. Is it there?
10 A. No.
11 Q. Do you know who removed it?
12 A. No.
13      MR. THORSNESS: I want to state for the
14 record that there is an error in answer number two that
15 was explained to Counsel before the deposition today.
16      And if he doesn't clear it up, I'm going to
17 clear it up on cross examination.
18      MR. COHN: You are right. We did talk about
19 that previously, and I would appreciate it if counsel
20 would explain what the changes are.
21      MR. THORSNESS: We're going to file another
22 supplemental here. Mr. Crapps was not building services
23 coordinator at the time the scaffolding was removed.
24 That job title and duties came after that event.
25      MR. THORSNESS: I'll ask the witness right

Page 60

1  now, have I just made a correct statement of the fact,
2  Mr. Crapps?
3       THE WITNESS: Yes.
4       MR. THORSNESS: Anything you wish to add to
5  that?
6       THE WITNESS: No.
7       MR. THORSNESS: Thank you.
8  Q. I would like to mark as the next exhibit in
9  order, which would be Exhibit No. 7, Defendant's
10 Responses to Plaintiffs' Ninth Discovery Requests. If
11 you can hold on one moment, I might get a --
12      (Exhibit No. 7 marked.)
13 Q. I'm showing deponent Defendant's Response to
14 Plaintiffs' Ninth Discovery Requests. Have you seen
15 this document before?
16      The "MC," that's just a notation here at the
17 office, so that's not part of the response on the cover.
18 A. Yes.
19 Q. You have seen that document before?
20 A. Yes.
21 Q. When have you seen that document?
22 A. Earlier today.
23 Q. In that interrogatory number one, "Identify any
24 and all persons who provided information that became the
25 basis of Defendant's Supplemental Responses to

18 (Pages 57 to 60)