

Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA        )
GROVE, SARAH GROVE, and,          )
MICHAEL GROVE (DOB 1/21/88) by    )
and through his father LAWRENCE H. )
GROVE,                            )
                                  ) Case No. A04-0096 CV (JKS)
            Plaintiffs,           )
                                  )
       v.                         )
                                  )
UNOCAL CORPORATION                )
                                  )
            Defendant             )
_____)

**AFFIDAVIT OF MICHAEL COHN IN SUPPORT OF
PLAINTIFFS' MEMORANDUM IN SUPPORT OF RULE 37 MOTION FOR DEFAULT
AGAINST DEFENDANT AS SANCTION FOR WILLFUL BAD FAITH NON-
COMPLIANCE WITH DISCOVERY AND/OR ORDER COMPELLING
DISCLOSURE/DISCOVERY**

STATE OF ALASKA          )
                         )   ss.
THIRD JUDICIAL DISTRICT  )

        MICHAEL COHN, being first duly sworn under oath,

deposes and states as follows:

TEL. 907/276-1200 • FAX 907/278-6571

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

1.   I am an associate attorney with the law firm of Phillip Paul Weidner & Associates, Inc., attorneys of record for plaintiffs in this matter.  I am licensed to practice law in the State of Alaska.  The following information I give is to the best of my personal knowledge and recollection;

2.   Attached hereto as Exhibit 1 is defendant's Response to plaintiffs' First Discovery Requests;

3.   Attached hereto as Exhibit 2 is defendant's Response to plaintiffs' Second Discovery Requests;

4.   Attached hereto as Exhibit 3 is defendant's Response to plaintiffs' Third Discovery Requests;

5.   Attached hereto as Exhibit 4 is defendant's Response to plaintiffs' Third (sic) Discovery Requests;

6.   Attached hereto as Exhibit 5 is defendant's Response to plaintiffs' Fifth Discovery Requests;

7.   Attached hereto as Exhibit 5-A is defendant's Supplemental Response to plaintiffs' Fifth Discovery Requests;

8.   Attached hereto as Exhibit 5-B is defendant's Second Supplemental Response to plaintiffs' Fifth Discovery Requests;

9.   Attached hereto as Exhibit 6 is defendant's Response to plaintiffs' Sixth Discovery Requests;

TEL. 907/276-1200 • FAX 907/276-6571    LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC    330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

10.  Attached hereto as Exhibit 7 is defendant's Response to plaintiffs' Seventh Discovery Requests;

11.  Attached hereto as Exhibit 8 is defendant's Response to plaintiffs' Eighth Discovery Requests;

12.  Attached hereto as Exhibit 9 is defendant's Response to plaintiffs' Ninth Discovery Requests;

13.  Attached hereto as Exhibit 10 is defendant's Response to plaintiffs' Tenth Discovery Requests;

14.  Attached hereto as Exhibit 11 is the deposition of Doug Schutte, who was designated on behalf of Siemens Building Technologies, Inc. to be the individual deposed for a records deposition of Siemens business records;

15.  A review of the records that I have been able to locate in this office indicates that defendant has verified the Second, Sixth and the Seventh Discovery Requests.  I have been unable to locate verifications for any other discovery responses (note that as the Eighth Discovery Requests contained no interrogatories, no verification is required under the rules);

16.  Defendant Unocal, in its Responses to First, Second and Third Discovery Requests, incorrectly and apparently falsely claim that Siemens Building Technologies, Inc. was the owner and/or constructed the

Affidavit of Michael Cohn                     Page 3

work platform that was erected in the Unocal building at 909 West 9th Avenue, which collapsed while Larry Grove, an employee of Siemens Building Technologies, Inc. was performing services in the building pursuant to a Siemens/Unocal contract.  In fact, the OSHA records recently received by undersigned counsel (Exhibit 12) verify that Unocal management was well aware that the work platform was in existence well before the Siemens contract, and there is no indication in these records that Siemens had any involvement in the building/construction of the work platform;

17.   Furthermore, plaintiffs' Third Discovery Requests to defendant asked defendant Unocal to identify the individuals who provided the information which formed the alleged basis for the information and belief that Siemens Building Technologies, Inc. was the owner of the work platform, or constructed it.  Unocal provided a list of names.  Mr. Paul Crapps, who was listed in Unocal's response as having knowledge, has been deposed, and he does not have any knowledge as to Siemens' involvement in the building or construction or ownership of this work platform.  Many of the other individuals on this list have been contacted by representatives of plaintiffs, and likewise have no

Affidavit of Michael Cohn                                    Page 4

knowledge of Siemens' involvement in the building or construction or ownership of the work platform. Other individuals, including present and former employees of Siemens, with knowledge of same, who have been contacted, likewise have no knowledge of Siemens having any involvement in the building or construction or ownership of the work platform. It is apparent from the OSHA records, and the information deduced to date, that Unocal management, including individuals who are referenced in the OSHA records, which are attached hereto as Exhibit 12, knew, or should have known, that Siemens Building Technologies, Inc. had no involvement in the building, construction or erection of this work platform. To date, no records have been produced by Siemens or Unocal that would show otherwise;

18.   In defendants supplemental responses to plaintiffs' Fifth Discovery Requests, and in response to subsequent discovery requests, including Sixth Discovery Requests and Seventh Discovery Requests and defendant has made apparently false assertions that the work platform, which collapsed causing the severe and permanent ankle injuries to Larry Grove on September 9, 2002, was removed shortly after the accident. This assertion is ridiculous, as Unocal management knew,

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

TEL. 907/276.1200 • FAX 907/278-6571

including individuals such as Building Manager Roxanne
Sinz, Unocal Safety Advisor Ken Burns, that OSHA came
out and inspected the platform in March of 2003.  Paul
Crapps testified at his deposition that he threw the
brackets and nuts and bolts in the garbage shortly
after the accident involving Mr. Grove, which is
contrary to the OSHA records.  Furthermore, since
OSHA's records, and Unocal's own records, clearly
indicate that OSHA inspected the platform, such an
inspection could not have occurred in March 2003 if the
work platform was destroyed in September 2002.  These
assertions by Unocal are ridiculous on their face;

19.  Unocal has consistently failed to produce records
and failed to respond to plaintiffs request for
inspection of records that could show what happened,
who constructed the work platform, who authorized or
approved the construction;

20.  Unocal counsel refuse to provide information
regarding whether or not Siemens has accepted the
tender of defense by Unocal;

21.  Mr. Thorsness, prior to the Paul Crapps
deposition on March 3, 2006, requested that plaintiffs
send discovery requests as to whether Siemens has
accepted the tender of defense.  This document should

have been produced pursuant to discovery requests No. 9, where a letter from Unocal to Siemens requesting that Siemens accept the tender of defense was attached. The response from Siemens is missing;

22.  At the records deposition of Siemens Building Technologies, Inc., Mr. Doug Schutte acknowledged that there were contracts preexisting the May, 2000 contract.  Only May 2000 documents onward were produced therein.  The other pre-May 2000 records, which he indicated would be easily locatable, and would include any and all work orders.  Thus, if Siemens had anything to do with the construction or maintenance of the work platform, these documents should be included in such work orders.  Likewise, such documents, if same exist, should be in the Unocal records.  None of these documents have been produced or made accessible to plaintiffs, despite requests for same;

23.  Plaintiffs, in their First Discovery Requests asked for records pertaining to the work platform at issue in this case.  Defendant's response was simply to claim that "all records pertaining to the erection and construction at the Unocal office building are kept at the Unocal office building.  However, because Unocal did not erect the subject platform/scaffold, questions

Affidavit of Michael Cohn                                    Page 7

pertaining to the location of records concerning

procurement of materials and supplies in connection

therewith should be directed to the parties most

knowledgeable concerning the subject platform/scaffold

as identified above."  See Exhibit 1 to this Affidavit.

It appears from the answer that defendant did not

conduct any search for said records, and failed to

fulfill their discovery obligations.  In fact, the

discovery efforts by Unocal more closely resemble the

admonishment in Bratka v. Anheuser-Busch Company, 164

F.R.D. 448 (S.D. Ohio 1995) which indicated that it was

contrary to the integrity of the discovery process

"engaging in halfhearted ineffective efforts to

identify and produce relevant documents."  In my own

investigations in this matter, including talking to

numerous individuals, I have come to the realization

that it appears Unocal has simply failed to comply, and

to apparently take seriously their requirements with

discovery and locate documents.  Thus, in Plaintiffs'

Ninth Discovery Requests seeking to inspect the Unocal

building records to attempt to locate and identify any

records in regard to the building maintenance

inspection of the work platform, the defendant only

offered to make available only the documents they have

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC

TEL. 907/276-1200 • FAX 907/278-6571

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

already produced in this case.  See Exhibit 9, Response
to Plaintiffs' Ninth Discovery Requests attached
hereto, specifically, Response to Request for
Inspection at pages 11-12;

24.  In fact, through the depositions of a number of
individuals, including that of Archie Cook, and in
conversations with other individuals, it appears that a
structure built within the Unocal building would need
the authorization and approval of Unocal.  Indeed, Mr.
Cook indicated that a requisition form translated into
a requisition order would ordinarily be involved in
regard to any such construction within the Unocal
building.  Other witnesses have informed plaintiffs'
counsel that even something as simple as replacing a
chair would require approval of Unocal.  Thus, the
answer by Unocal appears to be an evasion of discovery
as these records, if they have not been destroyed by
Unocal, apparently exist as to a structure that has
been built within the Unocal building.  Years after
this litigation has commenced, plaintiffs still do not
have access to these documents which are under the
control of Unocal, unless they have been destroyed as
was the work platform in this matter;

Affidavit of Michael Cohn                    Page 9

25.   Attached hereto as Exhibit 13 A through GG are letters to and from counsel regarding the discovery in this matter.   Exhibits 13a-d are letters regarding demand by defense counsel for possession of the sheared bolts that Mr. Grove had retrieved from the filter room following the collapse of the work platform which caused the severe ankle injuries to Mr. Grove.   In a letter dated April 5, 2005, Linda J. Johnson, one of the attorneys representing defendant, wrote in regard to a request by plaintiffs' counsel to retain possession of the bolts, "there is no credible evidence that spoliation will occur if the transfer of possession takes place, so this is not a valid argument."   It has been revealed in discovery, especially at the deposition of Paul Crapps on March 3, 2006, that the defendant in fact destroyed all other evidence of the work platform other than the evidence that was retained by Mr. Grove;

26.   Attached hereto as Exhibit 13e is a letter that I wrote to Mr. John Thorsness stating the following:

> In regard to the work platform that collapsed in the Unocal building resulting in injuries to Larry Grove, you have made an issue as to the possession of sheared bolts by plaintiffs.   Have you preserved the work platform?   If so, where is it?   It should be made available for inspection by plaintiffs.   Where are the bolts or bolt

fragments that remain?  Do you have them in your
possession?  If so, why was this evidence not
disclosed to plaintiffs?

Without getting any response by Mr. Thorsness,

plaintiffs submitted their Fifth Discovery Requests,

which asked what happened to the work platform.

Instead of answering this question, a bad faith non-

responsive answer, totally out of compliance with the

Federal Rules of Civil Procedure was provided in an

un-verified response signed by Linda Johnson for John

Thorsness stating "Unocal reserves the right to

respond to this interrogatory when the court rules on

the outstanding motions."  See Exhibit 5.  On August

5, 2005, by which point I was not doing any work for

the firm of Phillip Paul Weidner & Associates as I was

working elsewhere for most of July, all of August and

September, and returning only as of October 17, 2005,

another attorney at our law firm, Wayne Hawn, wrote a

letter explaining that due to the tremendous

expenditure of time on the In Re: Dillingham Air Crash

litigation, a complex air crash and products liability

action scheduled for trial for 3 to 5 months, that was

to commence in mid-September, there was not time to

actually schedule the depositions needed in the

instant Grove case for the summer of 2005.  Mr. Hawn

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC   TEL. 907/276-1200 • FAX 907/278-6571

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

also noted that the responses by the defendant to

plaintiffs' discovery requests had been evasive.    In

particular, Mr. Hawn noted:

> In addition, your office has been hindering the discovery
> process in this case by not adequately responding to
> discovery requests relevant to the depositions we are
> attempting to schedule.  For example, your response to our
> inquiry as to the present location of the work platform and
> debris from the accident, which is directly relevant to the
> liability issues, was "Unocal reserves the right to respond
> to this interrogatory when the court rules on the outstanding
> motions."  Under the rules, you have no such rights, and a
> complete and forthright answer was due not only under
> Rules 33 and 34, but also should have been disclosed as
> part of your initial disclosures.  We also requested
> information regarding the location of the work platform
> and the debris from the accident on May 10, 2005 (Exhibit
> 6) and have not received a response.  If you do not fully
> respond to Plaintiff's 5th Discovery Requests by August 26,
> 2005, we will file a motion to compel.
>
> Likewise, your responses to Plaintiff's Third (sic)
> discovery requests are evasive and incomplete.  Those
> requests were propounded in an attempt to narrow issues
> for trial, and to narrow issues for the depositions of Unocal
> employees, regarding the nature and existence of the work
> platform.  As to each such request, rather than conduct the
> investigation required by Rule 34, and provide a forthright
> response, you indicated that you could not determine if
> your client owned the platform in its own building as
> discovery is ongoing.  You have now had adequate time to
> fully investigate the circumstances surrounding the
> existence of the work platform, and you also have had
> adequate time to discover evidence tending to show that the
> platform collapsed while Mr. Grove was on a business
> visit.  This letter is a formal request that you supplement
> your responses to Plaintiff's Third (sic) Discovery Requests
> dated May 10, 2005.

(Emphasis added).

27.  On August 12, 2005 in a letter attached hereto as

Exhibit 13g, Linda J. Johnson wrote back stating:

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC    TEL. 907/276-1200 • FAX 907/278-6571

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

We are unable to fully respond to your
discovery request regarding the various
components of the work platform in
issue until we have deposed Mr. Grove.
We are at this time unaware of what
exactly he removed from the scene or
where he placed it.  I have continually
demanded to depose Mr. Grove and your
office's unwillingness to work with us
on this is in violation of the Court's
order.  We expect you to provide dates
of his availability prior to the
Dillingham trial.

28.  It is contrary to the evidence that was

apparently known to the Unocal management, including

what has been revealed in OSHA records, and Unocal's

own records.  Unocal, and its employees, including

Roxanne Sinz, Ken Burns, Paul Crapps, were apparently

fully well aware that the brackets, the platform and

most of the hardware to the platform to the work

scaffold remained at the Unocal building well after Mr.

Grove had left the scene.  Indeed, in a subsequent

conversation between myself and Ms. Johnson, she stated

to me that perhaps Larry Grove could have come back and

taken the work platform, which Unocal apparently knew,

and as shown in the OSHA records, Mr. Crapps

deposition, and other evidence, is an apparent

misstatement of the truth;

TEL. 907/276-1200 • FAX 907/276-0571

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

29.    Due to the In Re: Dillingham Air Crash
litigation, the resources of the law firm of Phillip
Paul Weidner & Associates was devoted to that case, and
Mr. Hawn's letter of August 12, 2005 was not followed
up on until my return to the office.  On December 9,
2005 I wrote to Mr. Thorsness and Ms. Johnson again,
similar to Mr. Hawn's letter, indicating that their
answer to Interrogatory No. 1 and Request for
Production No. 1 to Plaintiffs' Fifth Discovery
Requests was improper and non-responsive.  I asked them
to respond, otherwise I would file a motion to compel.
As apparently non-responsive responses continued and
apparently were not verified, I subsequently filed a
motion to compel on the non-responses of defendant to
Plaintiffs' Fifth Discovery Requests.  Indeed,
following the Fifth Discovery Requests, defendant
submitted a supplement to the discovery requests in
which they stated "Unocal does not currently know the
whereabouts of the work platform or the identity of the
person or persons who removed it."  This was an
absolute falsehood, in that the OSHA records, as well
as Unocal management apparently fully well knew that
Paul Crapps removed the work platform, and Mr. Crapps
admitted it at his deposition of March 3, 2006.  In

fact, the OSHA records reveal that Mr. Crapps removed the work platform at the behest of Unocal Building Manager Roxanne Sinz and Safety Advisor Ken Burns;

30.  On December 20, 2005 I wrote a letter in which I indicated that we would like to start deposing individuals most knowledgeable concerning certain aspects of building maintenance and building management from Unocal concerning the (1) mechanical room (by mechanical room I meant the filter room where the accident occurred); and (2) the work platform in the mechanical room at said Unocal building.  There has been no response back from defense counsel to the best of my knowledge at this time as to that 30(b)(6) request.  See Exhibit 13-i;

31.  On January 4, 2006 I again wrote a letter regarding the use of the facility in the Oakland area for the examination of the bolts and nuts and washers that had been turned over to defense counsel that had previously been in possession of plaintiffs' counsel. Subsequently on February 17, 2006, Mr. Weidner signed a letter with an attached protocol for inspection of the nuts, bolts and washers.  See Exhibit 13-p attached hereto.  In fact, I had a subsequent conversation with Mr. Thorsness when he asked us to re-fax said documents

to him, which I did, and we apparently still have not
had a response to this date, near the end of March,
2006 for the protocols for the examination of the nuts,
bolts and washers, and the location of said inspection,
despite our request to do so, and despite the fact that
expert reports are due the end of April, 2006, and our
experts have not had a chance to inspect or examine the
nuts, bolts and washers which are being retained by
defendant.  In regard to the inspection of the bolts,
see plaintiffs' Exhibits 13 J, K and T;

32.  On January 5, 2006 (Exhibit 13-K) I provided a
list of individuals that we seek to depose in this
matter.  Defendant apparently has not gotten back with
information on many of the individuals listed in that
request, nor as to the Rule 30(b)(6) people;

33.  On January 10, 2006, following an inquiry I had
made to Siemens Building Technologies,.Inc., the
employer of Larry Grove, instead of responding to my
request for information, apparently individuals from
Siemens contacted counsel for Unocal, who then wrote me
indicating that all discovery requests to Siemens be
routed through Unocal's counsel, which I found peculiar
insofar as Siemens as the employer would have a third
party lien under the worker's compensation act for any

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC    TEL. 907/276-1200 • FAX 907/276-6571

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

recovery from Unocal, and thus would be putting themselves in an adverse position to Mr. Grove while perhaps seeking to recover a lien against him;

34.  I attempted to make further inquiries as to the exact relationship between Unocal and Siemens and the representation by counsel, but have not yet received a satisfactory response.  See Exhibit 13-n;

35.  On January 20, 2006 I wrote to Mr. Thorsness and Ms. Johnson indicating that we had agreed to the deposition of Roxanne Sinz on February 14, 2006 and Mr. Kevin Tabler on February 15, 2006, and that we would like to schedule the remaining depositions of Unocal personnel in March and April 2006.  See Exhibit 13-m;

36.  In a letter of January 25, 2006 (Exhibit 13-n) I asked Ms. Johnson as to what exactly is the relationship between Siemens Building Technologies, Inc. and defense counsel for Unocal, which she apparently was unwilling to answer, and also why we need to clear requests from Siemens through Unocal.  I also asked for any indemnity agreements between Siemens/Unocal.  Subsequently discovery requests were sent asking for all information regarding the relationship between the parties, and in defendant's response to Plaintiffs' Eighth Discovery Requests,

where I asked for all such correspondence and contacts
between Unocal and Siemens, I received a letter which
was a tender of defense letter by Unocal to Siemens
dated September 17, 2004, however, I never received
back the response.  When I asked Mr. Thorsness
regarding that, he simply said "send a discovery
request" which is an apparent evasion, since that
document would have been covered by plaintiffs' Eighth
Discovery Requests;

37.  On January 25, 2006 I wrote to Mr. Thorsness
indicating, again, I was seeking the protocol from our
metallurgist, which was sent on February 17, 2006, and
after a conversation with Mr. Thorsness, re-sent said
protocol to him, to which there apparently has been no
response in regard to examination of the nuts, bolts
and washers until a letter dated March 24, 2006, but
still no agreement;

38.  On February 8, 2006 (Exhibit 13-p) I again wrote
to defense counsel regarding the Rule 30(b)(6) records
deposition of Doug Schutte, a Service Manager of
Siemens Building Technologies, Inc., that I took on
February 3, 2006 following the apparent refusal of
Siemens to cooperate with me and necessitating a
records deposition.  Prior to that deposition, defense

counsel indicated that they were representing Siemens for purposes of that deposition in a conversation I had with Mr. Thorsness. As indicated in my letter of February 8, 2006 and in the deposition of Mr. Schutte (Exhibit 11 herein) much of the information requested was apparently not provided to plaintiffs, even though it was encompassed in the subpoena, and Mr. Schutte admitted that said documents existed in archives at Siemens. Instead of indicating that these documents would be provided, the defense counsel appearing, Liam Moran, simply indicated that I should send another discovery request, which is unnecessary as it is encompassed by the records deposition, and I requested that these records be turned over without delay, which now, almost two months later, it appears these records have not been provided. These records would show, presumably, whether there have been any work orders or otherwise by Siemens Building Technologies, Inc. to construct or maintain the work platform, which Unocal had apparently falsely claimed in previous discovery responses, including Exhibits 1, 2 and 3, was owned or maintained or controlled by Siemens Building Technologies, Inc. I can state unequivocally that, as to the individuals that I have been able to contact,

Affidavit of Michael Cohn                          Page 19

none of them have stated that it was a Siemens structure, including individuals that were in Siemens management and would have knowledge of same;

39.  Exhibits 13-Q and 13-R are letters from Mr. Phillip Weidner and myself in which we take issue with John Thorsness' abrupt cancellation of the depositions of Roxanne Sinz and Kevin Tabler, claiming that we did not provide reasonable notice that they would be video depositions on the 14th of February and for Mr. Paul Crapps on February 15, 2006.  This is apparently bad faith by Mr. Thorsness, in light of the fact that we had agreed to take these depositions over a month earlier, resulted in plaintiffs having to cancel the depositions and reschedule them for March 2006;

40.  As a result of defendant's unwillingness to apparently answer completely, honestly, fully and candidly, plaintiffs' previous discovery requests, I have had to promulgate additional discovery requests to explain the lack of answers to the previous discovery requests.  Following a request for an extension of time to respond to a number of plaintiffs' discovery requests on February 16, 2006, Linda Johnson wrote back and indicated, without explaining how she computed it,

Affidavit of Michael Cohn                              Page 20

that we had exceeded the allowed number of
interrogatories under Federal Rule 33;

41.   On March 2, 2006 I wrote back to Ms. Johnson
disputing her claim that we had exceeded the number of
allowed interrogatory requests as I found that we were
still far short of the total allowed without permission
of the court under Federal Rule of Civil Procedure 33.
See Exhibit 13-U;

42.   On March 8, 2006 Ms. Johnson wrote back and made
a computation of the number of interrogatories, coming
with a total of 24 for the first seven discovery
requests made by plaintiffs, and then claiming that we
had exceeded the number after the first interrogatory
on plaintiffs' Ninth Discovery Request.  See Exhibit
AA.  As can be seen by her claim that there is six
subparts to Interrogatory No. 1 in Plaintiffs' Seventh
Discovery Requests (see Exhibit 7) that can be derived
by plaintiffs asking, in the same question, who, what,
when, where, why, etc.  The apparent reasons for such
an all encompassing question is the apparent conduct
and practice of defense counsel of mincing words and
failing to answer completely and thoroughly plaintiffs'
discovery requests.  However, to divide the question
and make it six questions is unreasonable and an

apparent attempt to evade proper discovery requests.   I
also note that this discovery response was promulgated
because of the failure of defendant to adequately
respond to previous discovery requests;

43.   On March 2, 2006 (Exhibit 13-V) I sent a letter
to Mr. Thorsness and Ms. Johnson indicating, again,
that I want verification for discovery responses that
have not been verified.   Instead of affirmatively
telling plaintiffs that they have verified the
interrogatory requests, on March 10, 2006 Ms. Johnson
simply writes back asking us to indicate which requests
we claim there have been no verifications.   Defense
counsel should fully know which responses they have
failed to verify.   I take that as another effort to
apparently disrupt the discovery process and apparently
fail/delay to verify the discovery requests that we
sought to have defendant verify.   In that March 2, 2006
letter I also indicated that, after agreeing to
extension of deadlines, which was requested by a
paralegal at Ms. Johnson's office, I was not aware that
defendant would later claim that we had exceeded the
discovery requests and that they would simply fail to
answer much of the discovery in any event;

Affidavit of Michael Cohn                    Page 22

44.  On March 3, 2006 Ms. Johnson wrote a letter threatening to take me to the Alaska Bar Association and sanctions for "violation of the Federal discovery rules."  Defense counsel apparently used this subterfuge as an excuse for again not having Roxanne Sinz and Kevin Tabler show up for depositions that were scheduled, and now almost a month later, defense counsel has still not sought to provide dates for the rescheduling of the depositions of Kevin Tabler and Roxanne Sinz.  See also Exhibit CC, a letter dated March 10, 2006 by Ms. Johnson in which she demands that I verify that I am not withholding any more documents before they produce witnesses for depositions.  The irony of this is that the information that they are claiming that I withheld has apparently been within the knowledge of the Unocal management from the outset of this litigation, and simply not provided to plaintiffs' counsel.  For example, as noted previously, in numerous letters and discovery responses, defendant had repeatedly refused to acknowledge that it was aware of what happened to the work platform, who took down the work platform and components, and only admitted same in 2006.  Furthermore, despite the knowledge of Unocal management as shown in the OSHA records, Unocal has

apparently claimed repeatedly in discovery responses that somehow Siemens was the owner or erector or builder of the work platform, and that Unocal had no records, which is apparently incomprehensible on its face, that regardless of who built it, that Unocal would not have records of a structure that is erected in its own building. Furthermore, as noted in the deposition of Archie Cook, and from witnesses that I have been able to talk to, no such work platform apparently would be built in the Unocal building without the approval, authority and authorization of Unocal. See also my letter of March 17, 2006 (Exhibit 13-DD), which is a response to the March 3, 2006 letter of Linda Johnson (Exhibit W) and March 10, 2006 letter of Linda Johnson (Exhibit CC). It appears the claims against me may be an effort to misdirect the court from the apparent willful bad faith non-compliance by Unocal throughout this litigation;

45.    Indeed, the claim by defense counsel that an affidavit signed by Mr. Crapps was not provided to defendant, when presumably Unocal would have reviewed the affidavit before Mr. Crapps signed it, and presumably Unocal would already possess the affidavit through various means, and presumably Paul Crapps and

Affidavit of Michael Cohn                             Page 24

Unocal management would be aware of having done this affidavit.  Unocal's claims the affidavit would "refresh his memory" as to when he destroyed the work platform is apparently preposterous, especially since Mr. Crapps reviewed a number of documents before his deposition, including document DEF0027, which was a Unocal document prepared by Ken Burns, which clearly states that OSHA people inspected the platform on or about March 3, 2003, which presumably should have refreshed Mr. Crapps' memory that he apparently could not have destroyed a platform in September 2002 that was apparently inspected in March 2003.  Mr. Crapps made the apparently ridiculous assertion at his deposition that he had dismantled and destroyed a platform in September of 2002, which even Unocal records apparently show was not dismantled until March of 2003.

46.    Plaintiffs have also complied with the rules for disclosure, which requires seasonal supplementation under Federal Rule of Civil Procedure 26.  It appears that Unocal and Siemens have had many OSHA records. Indeed, when I myself talked to a former Siemens employee, he told me that he had seen OSHA records pass by his desk.  Yet, at the records deposition of Doug

Affidavit of Michael Cohn                           Page 25

Schutte of Siemens, apparently he could not locate any OSHA records, which do not mean they did not exist, but simply means he was not the person most knowledgeable regarding the location of many of the records that he was assigned the task of supposedly providing to me. Defendant Unocal has apparently failed to provide many relevant records, including records that are listed in the OSHA records that I have received, and which are relevant to this litigation;

47. Exhibit 13-X is a March 6, 2006 letter from Linda Johnson requesting an extension of time to respond to plaintiffs' Eleventh Discovery Requests until March 24, 2006. As is my custom, I rarely, if ever, withhold an extension by opposing counsel;

48. On March 8, 2006 (Exhibit 13-Y) I sent a letter to Mr. Thorsness and Ms. Johnson regarding their failure to allow an inspection of Unocal records, which were requested in plaintiffs' First Discovery Requests, Interrogatory No. 1(d) and in plaintiffs' Ninth Discovery Requests, Request for Production No. 16. As noted, in Exhibit 1, and subsequently in Exhibit 9, which requests the documents that have been concealed by defendant, the response for inspection was simply "with prior appointment, the original documents

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC    330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501    TEL. 907/276-1200 • FAX 907/278-6571

produced in this case are available for inspection"
(emphasis added). That is apparently an offer to
produce only documents that they have already provided
to plaintiffs. The failure to search, or apparent
halfhearted effort to search for records on the
approval, authorization, maintenance and inspection of
the work platform, despite numerous efforts to attempt
to obtain this information, leads plaintiffs to
respectfully request a default judgment for discovery
abuse. My March 8, 2006 letter, like many of my
letters, is apparent ignored.

49. Another letter on March 8, 2006, which is Exhibit
13-Z is my review of certain files, including
correspondence files, and the effort to ensure that any
and all documents that may be in our possession, but
misfiled, would be provided to defense counsel.
However, I note that it is unclear to me that these
documents were not already in possession of defendant.

50. On March 9, 2006 I wrote a letter to John
Thorsness and Linda Johnson again indicating it was
time to resume the process of deposing various
witnesses in this case. That is, in light of the fact
that expert reports are due at the end of April, and
discovery closes in June, 2006, there are still many

Affidavit of Michael Cohn                    Page 27

witnesses to be deposed. I set forth a list of people, including Rule 30(b)(6) individuals that would need to be deposed in this matter. See Exhibit 13-BB. Instead of actually setting dates for any of these depositions, what I received was a letter from Ms. Johnson demanding that I verify that we are not withholding any more documents. This from a defendant and defendant's counsel that has apparently withheld relevant information from plaintiffs since the beginning of this litigation. In fact, plaintiffs have apparently fully complied with every discovery request made to them by defendants.

51.  On March 17, 2006 in Exhibit 13-DD, I again wrote to Ms. Johnson and Mr. Thorsness, which letter has not been responded to. In that letter I again reiterated the following:

> It is apparent that many of the discovery responses by Unocal are inaccurate, misleading, or deceptive. Furthermore, all of the information is or should be in possession of Unocal. Please provide immediately all statements of Unocal employees and/or contractors withheld from plaintiffs. Please provide an affidavit from Unocal that Unocal did not possess or have knowledge of the Paul Crapps affidavit. It appears unlikely that Mr. Crapps would have signed any affidavit concerning the OSHA investigation without Unocal management and/or counsel reviewing the affidavit, and have retained a copy of the affidavit, and indeed, already had possession of the entire OSHA file. Please also provide all documents not previously provided to plaintiffs related to the work platform, the Grove accident, the OSHA investigation, and the likelihood Grove would take legal action.

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC
TEL. 907/276-1200 • FAX 907/278-6571
330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

In regard to records concerning the work platform, it is unlikely the structure was erected without the authorization, approval and/or payment by Unocal. It also appears that absolutely no effort was made to search for such records (see response to First Discovery Requests.)

We will also seek to depose the person or persons from Unocal most knowledgeable concerning each of Unocal's discovery responses, including but not limited to efforts to search for documents, or ascertain the facts before compiling each of the discovery responses.

52.    More information was revealed at the deposition of Archie Cook, a former Unocal Human Resources Manager at the Unocal building, taken on March 15, 2006.  After his deposition, I wrote the following.  See Exhibit 13-EE;

In light of the recent discovery in this case, including, the deposition of Archie Cook, in which he revealed that Harry Eaton was the Health and Safety Environmental Manager, (the department responsible for safety), and that Mr. Eaton participated in management meetings, including apparently, meetings regarding the Larry Grove accident (Mr. Cook mentioned a meeting with the Operations Manager (Roxanne Sinz), the Asset Manager, the Safety Manager (Harry Eaton), the Business Development Manager, and the legal counsel), and given the absence of production from Unocal to the present date as to such meetings, safety records, the work platform, and the periodic safety inspections, we would like to have full and candid disclosure before we take Mr. Eaton's deposition.

We trust that you shall cooperate in the effort to provide full discovery, supplement previous discovery responses and to reschedule the Eaton deposition.

53.    Defense counsel has written a letter claiming that Mr. Grove has not given a full account of certain of his activities following his September 9, 2006

TEL. 907/276-1200 • FAX 907/278-6571

LAW OFFICES OF PHILLIP PAUL WEIDNER AND ASSOCIATES, APC

330 L STREET, SUITE 200 • ANCHORAGE, ALASKA 99501

accident, which defendants want to have in detail at
the same time as they withhold much relevant evidence
in this case. My response is in a letter dated March
21, 2006, attached hereto as Exhibit 13-FF. In
addition, I wrote another letter to John Thorsness of
March 21, 2006, Exhibit 13-GG in which I asked him to
explain the basis for him claiming attorney/client
privilege. Particularly, he claimed attorney/client
privilege as to Archie Cook, and it is my assumption
that he may attempt to claim attorney/client privilege
to a number of individuals, including former employees
of Unocal who apparently should not be subject to
attorney/client privilege in this case. A number of
the individuals that Mr. Thorsness may seek to claim
attorney/client privilege were not even designated
subject to attorney/client privilege in defendant's
initial disclosures and in defendant's responses to
plaintiffs' Third Discovery Requests;

54. Attached hereto as Exhibit 14 are excerpts from
the deposition of Paul Crapps, taken March 3, 2006.
See pages 43-71, 88-89 wherein he acknowledges no
knowledge of Siemens Building Technologies, Inc. having
any role as the builder/owner of the work platform and
acknowledges that he destroyed, dismantled and

discarded portions of the work platform, only storing a

plank, which later disappeared.


FURTHER AFFIANT SAYETH NAUGHT.

                                        Michael Cohn
                                        ABA  8506049


        SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned, a
Notary Public in and for the State of Alaska, duly commissioned
as such, this __27th__ day of March, 2006.

                                        Notary Public in and for the
State of Alaska

                                        My Commission Expires: 7-25-09