Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE, )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNOCAL CORPORATION )<br><br>Defendant )<br>_____ ) | Case No. 3:04-CV-0096TMB |

**PLAINTIFFS' REPLY IN SUPPORT OF RULE 37 MOTION FOR DEFAULT AGAINST DEFENDANT AS SANCTION FOR WILLFUL BAD FAITH NON-COMPLIANCE WITH DISCOVERY AND/OR ORDER COMPELLING DISCLOSURE/DISCOVERY, AND OPPOSITION TO DEFENDANT'S SURREPLY TO MOTION TO COMPEL AND DEFENDANT'S MOTION FOR RULE 37 SANCTIONS**

A.    THE CRAPPS AFFIDAVIT

Defendant, Unocal, has filed a Motion for Rule 37 Sanctions in response to plaintiffs' Motion for Rule 37 Sanctions, claiming that plaintiffs concealed and failed to disclose

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

possession of an affidavit of Unocal employee, Paul Crapps, which document had been in possession of Unocal for years, and which Unocal failed to disclose to plaintiffs for three years. Defense counsel, Linda Johnson, threatened to file a Bar grievance against one of plaintiffs' attorneys, Michael Cohn, for the alleged failure to produce the Paul Crapps Affidavit, which, as it turns out, was always in the possession of Unocal, but not released or revealed to plaintiffs.

In defendant's Surreply to Motion to Compel and Memorandum in Support of Motion for Rule 37 Sanctions the defendant makes numerous allegations concerning the plaintiffs' alleged failure to disclose the affidavit of Paul Crapps, including references on page 2, 3, 5, 6, 7, and 8, before the astonishing admission on page 9 <u>that in fact defendant had possession of the Paul Crapps Affidavit all along</u>, but apparently had concealed this document from plaintiffs, which plaintiffs first learned about at the end of January, 2006.

Defendant states at page 3 "plaintiffs had the affidavit in their possession long before the deposition [of Paul Crapps] but failed to produce it." On page 7, defendant asserts that plaintiffs disclosed for the first time during the Crapps deposition that they had the Affidavit of Paul Crapps. See Defendant's Memorandum at page 7. At page 8, defendant again asserts that plaintiffs were fully aware that the affidavit …

**Weidner & Associates**
3301 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

had not been produced [by plaintiffs]. Defendant asserts

incorrectly, (as it is not reviewing the records carefully),

that plaintiffs had had possession of the affidavit since

December, 2004. See Defendant's Memorandum at page 8 (in fact,

the previous OSHA records received by plaintiffs did not contain

any affidavit of Paul Crapps). The first notice to plaintiffs

as to the Paul Crapps Affidavit was the end of January, 2006

through newly received OSHA records, at which time plaintiffs

rightfully believed defendant already had possession of this

affidavit, which simply had not been produced to plaintiffs.

See Michael Cohn's original affidavit supporting Motion for

Default, attached hereto as Exhibit A to Affidavit of April 5,

2006.

Defendant's main attack against plaintiffs in defendant's

Motion to Compel is the failure to produce the Paul Crapps

Affidavit, despite the astonishing admission at page 9, when

Unocal states:

> Finally, when Unocal was provided with a copy of
> Paul Crapps Affidavit, <u>it was able to locate a
> copy of the Affidavit that had been separated from
> the Unocal's main file</u>.

Defendant's Memorandum at p. 9; (emphasis added).

In fact, this document was revealed only after plaintiffs'

counsel asked Unocal to submit an affidavit that it did not

possess the Crapps Affidavit, which it was unable to do because

Unocal <u>had</u> the Crapps Affidavit. Though the defendant, even in

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

this admission, buried at page 9 of its memorandum, and only
after at least 9 references to the failure of the plaintiffs to
produce a document that defendant had possession of for years
but failed to produce to plaintiffs, and which should have been
produced to plaintiffs in initial disclosures, and further
should have been produced in response to numerous plaintiffs'
discovery requests, finally make this grudging admission.  Even
this admission is halfhearted as Unocal somehow claims that it
is only because Unocal got a copy of the affidavit from the
plaintiffs that Unocal was able to locate Paul Crapps' Affidavit
in its own files.  The admission by Unocal itself in turn
creates numerous questions that plaintiffs respectfully request
the court require Unocal to answer.  These include, but are not
limited to, the following:

1.    What is in the Unocal main file?  That file should be
      produced at once to plaintiffs;

2.    Who put together the Unocal main file?

3.    How did this affidavit somehow become separated from
      the Unocal main file?

4.    Who separated the affidavit from the Unocal main file?

5.    How was someone able to find the affidavit that had
      been separated from the Unocal main file?

6.    How was it that defendant was able to locate files
      that plaintiffs for years have been requesting, but

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

defendant apparently has been unable to locate previously?

7.   Who located the affidavit, and how did they know where to find this affidavit?

8.   What other files were with that affidavit, and what other files have been separated from the Unocal main file, and who has knowledge of where all these files are, and why haven't they been produced to plaintiffs?

Defendant's counsel said that they might take legal action against one of plaintiffs attorneys, Michael Cohn, for the alleged failure to produce a document which defendant already possess, and which it had failed to disclose to plaintiffs for years.  The Affidavit of Paul Crapps was located by Unocal only after one of plaintiffs' counsel wrote back demanding an affidavit from defendant that it did not have the Affidavit of Paul Crapps.  Defendant finally and grudgingly revealed, at page 9 of its memorandum, that Unocal has been in possession of the Crapps Affidavit, which had (for many years) been withheld from plaintiffs' counsel.  Yet, despite this conduct of defendant, defendant still has the nerve to seek a motion for sanctions against plaintiffs based primarily on the Crapps Affidavit.

Defendant seeks to preclude the use of the Paul Crapps' Affidavit for the alleged egregious conduct by plaintiffs. Defendant claims that if Mr. Crapps had this affidavit available

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

before his deposition (which affidavit was available because Unocal had possession of same) that Mr. Crapps could have refreshed his memory as to when he had in fact dismantled the work platform that collapsed injuring Larry Grove on September 9, 2002. Mr. Crapps testified in his deposition that the dismantling occurred a few days after Mr. Grove's accident of September 9, 2002. Plaintiffs' counsel who was questioning Mr. Crapps was frankly surprised at this statement since there was numerous evidence, including that of Unocal employees' own knowledge and Unocal documents, including documents reviewed by Mr. Crapps before his deposition, which showed that his statement was simply incorrect. That is, Mr. Crapps testified at his deposition that he had reviewed one of the few documents of any materiality that had been produced by Unocal in this case, that is DEF00027, produced in Initial Disclosures. This document is as follows:

> Notes concerning visit by State of Alaska OSHA
> Inspector as complied by Ken Burns, Drilling
> Safety Advisor
>
> 03/03/03 – Monday
> . . .
> After lunch, Paul Crapps received a call from Tom
> Lake, Siemens Supervisor that State OSHA was at
> their office investigating a complaint from one of
> their employees regarding conditions (scaffolding)
> here at Unocal. Lake further advised that OSHA
> was on their way to Unocal.
> . . .
> At approximately 1440 hrs, I was notified by Paul
> Crapps that State OSHA was at the reception desk

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> to conduct a Complaint Inspection. Paul further explained that several months ago a Siemens employee fell and hurt himself while working in the penthouse.
>
> I responded to the front desk (reception) and was met by Paul Crapps, Tom Scanlon and Lee Zhao from State OSHA and Tom Lake, Siemens Supervisor. . . . Scanlon stated that he wanted to view the location listed on the complaint and to take some photographs of the scaffolding. . . .
>
> Tom Scanlon, Lee Zhao, Tom Lake, Paul Crapps and I went to the Penthouse and allowed the inspectors to view the area of the complaint. Prior to entering, Paul had to shut the air conditioner down because of the noise and wind velocity in the filter chamber. Tom Scanlon and trainee Lee Zhao entered the chamber and proceeded to take photograph and measurements. <u>Both Tom Scanlon and Lee Zhao climbed the ladder and exposed themselves to the open-sided platform. One significant question was asked. "Who erected this scaffolding</u>?" No one knew the answer. It was obvious from the structure that it had been erected many years ago. . . .
>
> Later in the afternoon, after briefing Roxanne, I was requested (e-mail) by the Law Department and Roxanne to **REDACTED** (Exhibit 15; emphasis added).

This document, which has a date of March 3, 2003, clearly shows (see highlighted portion) that the OSHA inspectors came out and inspected the platform. Obviously, they could not have inspected this platform if it had been dismantled and destroyed in September, 2002, which Mr. Crapps claimed at his deposition, despite his knowledge of this document, which he reviewed before his deposition. Furthermore, this information as to dismantling the work platform was in the possession of Unocal from the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

beginning of this litigation.  The OSHA records, which will be
discussed in more detail in this memorandum, are second hand
summaries by the OSHA inspectors of information that was
supplied by the primary source, that is the Unocal personnel,
including individuals such as <u>Roxanne Sinz</u>, <u>Paul Crapps</u>, and
other Unocal personnel.  The OSHA records reveal that this
knowledge was obtained from <u>Roxanne Sinz</u>, <u>Paul Crapps</u>, <u>Archie
Cook</u>, <u>Charles Arnett</u>, all individuals that are listed in
response to Plaintiffs' Third Discovery Requests as individuals
that Unocal counsel conferred with in answering discovery
requests.  Yet, despite conferring with these individuals, the
information that they knew, was not revealed to plaintiffs'
counsel for years.

   The plaintiffs did not need an affidavit from Paul
Crapps to know that the work platform had been dismantled.
Everyone knew the work platform had been dismantled.  When
the filter room where the work platform collapsed was
examined by plaintiffs' counsel and plaintiffs' expert, the
platform was gone.  Unocal personnel knew the platform was
gone.  In fact, Larry Grove testified in his deposition in
November 2004 that the platform had been removed after the
OSHA inspection:

                A.  . . . After OSHA inspected it [the work
                    platform] it all disappeared.
                Q.  After they inspected it?

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> A.   Well, after OSHA showed up, it was all
>      gone after that.

Deposition of Lawrence H. Grove of 11/12/04 at pg. 130 (Exhibit 17).

DEF00027 clearly and definitively establishes that the work platform was still in the filter room at the Unocal building in March of 2003 when the OSHA inspectors came out and inspected the work platform.  Individuals who had told Mr. Crapps to remove the work platform, including Roxanne Sinz, the building manager who conferred with Unocal counsel in completing discovery requests to plaintiffs, and Ken Burns, a safety official with Unocal, who is the source for DEF00027, were well aware that the platform had been dismantled, and when it was dismantled.

The affidavit of Mr. Crapps was simply an affidavit of abatement and posting.  There was no advantage to be gained from allegedly concealing this document from Unocal.  All it was, was a confirmation that Mr. Crapps had personal knowledge of the dismantling of the work platform (which finally had been admitted by defendant before the deposition in 2006), and that he had posted citations and notifications of penalty.  Thus, Mr. Crapps was simply asked his personal knowledge of the dismantling of the work platform.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

It is important for the court to go through plaintiffs'
original Motion to Compel, and the Affidavit of Michael Cohn,
which has been validated by the admission of defendant that it
had possession of the Paul Crapps Affidavit for years, but
failed to disclose it to the plaintiffs.  On March 17, 2006, in
Exhibit 13-DD to the Affidavit of Michael Cohn (Exhibit A
herein) to the initial Motion to Compel by plaintiffs, in a
letter to defense counsel, it was stated:

> Please provide an affidavit from Unocal that Unocal did not possess or have
> knowledge of the Paul Crapps affidavit.  It appears unlikely that Mr. Crapps
> would have signed any affidavit concerning the OSHA investigation without
> Unocal management and/or counsel reviewing the affidavit, and have retained a
> copy of the affidavit, and indeed, already had possession of the entire OSHA file.

This letter, which is quoted in Para. 51 of Mr. Cohn's Affidavit
in support of the Motion to Compel, has now been proven to be
correct through the admission by defense counsel, buried at page
9 of Unocal's memorandum.  See also Affidavit of Michael Cohn
(Exhibit A), Para. 45.  In paragraph 43 (Exhibit A), Mr. Cohn
states that it is his belief that this information, including
the Paul Crapps Affidavit, is already in the possession of
defendant.  Furthermore, the fact that following the challenge
laid out in Mr. Cohn's letter of March 13, 2006 (Exhibit 13-GG)
as to the Paul Crapps Affidavit, resulted, apparently, in Unocal
finding the Affidavit of Paul Crapps had always been in their
possession, confirms the statements by Mr. Cohn in his affidavit
(Exhibit A) at Para. 23 and 48 that the defendant has engaged in

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

half-hearted efforts to search for records previously. That is apparent now, since it did not appear to have taken much time to find the Affidavit of Paul Crapps.

The defendant makes many false misrepresentations in defendant's Surreply. For example, Unocal claims that when plaintiffs asked in discovery what happened to the work platform, that plaintiffs already knew what happened to the work platform because of OSHA records. <u>None</u> of the OSHA records indicate what happened with the work platform. The OSHA records merely indicate that the work platform was dismantled. That was already obvious, even without OSHA records, because it was not in the filter room. What the plaintiffs' counsel wanted to know is, what happened to the dismantled work platform and it's components, and where the parts are now located. That is the information that defendant has personal knowledge of, but concealed from the plaintiffs for years.

B.    <u>UNOCAL MISREPRESENTATIONS</u>

Following the maneuver by defendant to obtain possession of the broken sheared bolts that Mr. Grove had retrieved shortly after the accident (which luckily had been retrieved by Mr. Grove as we now know defendant destroyed the rest of the evidence), plaintiffs then sent a letter, to which there was no response, asking defendant to account for the work platform. The failure to respond to the letter

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

resulted in plaintiffs sending out Plaintiffs' Fifth

Discovery Requests, which defendant responded to as follows:

> **INTERROGATORY NO. 1**:    Please explain what happened to the work platform in the mechanical room of the Unocal Building at 909 West 9th Avenue, Anchorage, Alaska following the accident involving Larry Grove. Specifically, please explain:
> 1.    Where is the work platform and its parts, including bolts;
> 2.    Who took down and/or removed the work platform (identify the individual, his job title and employer at the time of disassembly/removal of the platform, last know address and telephone number);
> 3.    What happened to the work platform and its parts after removal from the mechanical room, including where was it stored, who had custody, how long it was stored, and ultimately what happened to the work platform.

> **ANSWER**:    Unocal reserves the right to respond to this interrogatory when the court rules on the outstanding motions.
> (Emphasis added).

This answer was a violation of the Code of Professional

Responsibility 3.4 insofar as there was no good faith effort to

determine what had happened to the work platform.  However,

defendant attempts to spin this answer by claiming that the OSHA

records received by plaintiffs in December 2004 and January 2005

already provided the answer to plaintiffs.  See defendant's

Memorandum at pgs. 9-10.  In fact, none of the OSHA records that

plaintiffs have been able to review, whether received in 2005 or

2006 tell us what Unocal did with the work platform.  That

information was solely in the possession of Unocal and that

answer, and several supplemental answers, were simply evasive

discovery responses.  All that was known, and everybody already

knew, was that the work platform eventually had been dismantled

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

after the OSHA inspection.  That much is known from review of

Ken Burns' notes, which were produced in initial disclosures

(00027) which shows that the OSHA inspectors inspected the

actual work platform, and not an imaginary platform in March of

2003, and the deposition of Larry Grove where he testified that

after the OSHA inspection the work platform was gone.  This

information was within the knowledge of Unocal personnel,

including Roxanne Sinz, Ken Burns, Paul Crapps, and others.

Therefore, to claim somehow that defendant could not properly

answer this question without OSHA records, when this information

is not within any OSHA records, neither records in December 2004

and January 2005, or at the end of January 2006, is just a

complete fabrication.  All that the records indicate is that the

platform was dismantled, not what happened to the platform.

Indeed, the first time it is noted who might have had a part in

the dismantling of this platform was obtained by plaintiffs at

the end of January 2006.  There was no mention of who dismantled

the platform in the previous OSHA records received by

plaintiffs.

     There are many other misrepresentations in Unocal's Surreply

to Motion to Compel and Memorandum in Support of Motion for Rule

37 Sanctions.  At Pg. 3 of the Surreply, Factual Background,

Unocal states:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

This case was filed on April 16, 2004.  Initial
disclosures were made July 2004.  Plaintiff's Initial
Disclosure said:

> Medical records; worker's compensation records;
> tax returns for years 1998-2002; Reemployment
> Benefits Plan; Alaska Pipe Trades Agreement, 2003-
> 2006; **State OSHA records**; photographs of work
> platform and Mr. Grove's injuries; sheared/broken
> bolts are in the possession of plaintiff's
> counsel.  See Bates Stamp Nos. LG00001 to LG
> 00508.  The broken bolts are available for
> inspection upon reasonable notice.  Color copies
> of photographs are likewise available for copying
> or inspection upon reasonable notice.

Ex. 1, page 5, attached to affidavit of counsel,
emphasis added.  No OSHA records can be located in
Plaintiff's original production.  (Emphasis added).

In fact, plaintiffs attached to their Initial Disclosures

LG000025-30 and LG000073-79, which are OSHA records that

were in the possession of plaintiffs.  See Exhibit 18.

Thus, the statement of defense counsel that no OSHA records

can be located in plaintiffs' original production is a

misrepresentation.[1]

Unocal also cites to its First Discovery Requests,

Request for Production No. 7:

**Request for Production No. 7:**

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] There is another irony contained in the quote of plaintiffs' Initial Disclosures.  That is, in plaintiffs' Initial
Disclosures, plaintiffs disclosed that the sheared/broken bolts of the collapsed platform were in the possession of
plaintiffs' counsel, and that the broken bolts were available for inspection upon reasonable notice.  Subsequent to
that disclosure, as well as a further disclosure in response to discovery requests, plaintiffs sent a letter indicating
they wanted to send the bolts to be examined by their experts approximately a year ago.  Defense counsel then filed
a Motion to Compel, claiming, incorrectly, that plaintiffs had concealed their possession of these broken bolts and
that defendant had no knowledge of the possession of the broken bolts by plaintiff until the letter to defense counsel
in March of 2005, when in fact as seen by the defendant's quote of plaintiffs' Initial Disclosures, that information
was revealed, and not concealed.

Please produce all notes, memoranda, **COLOR photographs**, diagrams, drawings, or other tangibles which in any way relate to the accident or plaintiff's damage claims. **Response**: Objection. Vague. What are "tangibles"? See enclosed photographs. **See State OSHA records already produced.**

*Id*. at page 7, emphasis added and in original. <u>No OSHA records can be located as promised in the RFP response</u>. (Emphasis added).

The plaintiffs were referencing the OSHA records that had been produced in their Initial Disclosures, which are referenced in this discovery request. However, once again, defendant incorrectly claims that no OSHA records can be located.

C.    <u>OSHA RECORDS</u>

The OSHA records received December 30, 2004 by plaintiffs pertained to the file as to Siemens Building Technologies, Inc., and not the investigation as to Unocal. Therefore, there is in fact very little evidence in that disclosure pertaining to Unocal per se. Furthermore, though the defendant references three files, what apparently happened was after the receipt of the files at the end of December 2004, which showed Xeroxed copies of photographs, plaintiffs requested color copies of the photos, and in January simply got back the same Xeroxed copies that had already been submitted, along with a letter from OSHA stating that the actual photographs themselves could not be located. Thus, the second file does not contain any new

**Weidner & Associates**
3301 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

information other than in the first file.  Furthermore, despite

the fact the defendant attempted to make the documents received

at the end of December 2005 and January 2005 into a massive

conspiracy by plaintiffs to withhold evidence, in fact what

happened is they were received by plaintiffs through

correspondence, and promptly filed by office staff into the

correspondence file.  None of these documents were apparently

sent to plaintiffs' experts until their re-discovery in March

2006.

After repeated requests for verification of discovery

responses from defendant, which were ignored, plaintiffs'

counsel decided to review the correspondence file to see whether

verifications had been misfiled in the correspondence (see

Exhibit 19).  In going through the entire five volumes of

correspondence records, said counsel came across the misfiled

OSHA records received in December 2004 and January 2005

(Exhibits 20 and 21).  Upon recognizing that these records had

been misfiled, copies were promptly made and sent to defense

counsel and plaintiffs' experts.  There is no proof of willful

evasion.

The records themselves do not contain anything that should

have affected the ability of defendant to respond to discovery.

For example, there was nothing in these records that pertained

to the failure of Unocal to search their records to find any

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

records regarding the construction, maintenance, inspection or destruction of the work platform. There is nothing in these records that pertain to Unocal searching their records to find any records concerning authorization or approval of the work platform. The only items of any significance, if any, in the disclosures of the OSHA records of December 2004 (as noted, the January 2005 disclosures contain nothing new, but simply Xerox copies of photographs that had already been produced in December 2004) is that there is a reference that the platform had been dismantled, and that there are the black and white photos showing the platform.

The dismantling of the platform is not a surprise. Unocal (and plaintiffs) already knew the platform had been dismantled. Everybody knew the platform had been dismantled because it wasn't there anymore. Furthermore, from DEF00027, and Larry Grove's deposition, and other information, everybody knew, or should have known, the platform had been dismantled after the OSHA inspection. It is clear even from the citations issued by OSHA that they had knowledge of what the platform looked like and consisted of, otherwise they could not have issued the citations they did.

The only other information of any significance was the actual photographs showing the platform. Mr. Grove has taken photos showing the platform in its collapsed condition, which

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

were disclosed to defendant.  The OSHA photos, while of interest, would not indicate what happened to the platform, who built the platform, or any of the other questions that the plaintiffs asked the defendant to answer, but which were evaded.

It is simply a clerical error that the OSHA photographs were filed away.  Indeed, the fact that these photographs were not used by plaintiffs' counsel or sent to plaintiffs' experts until March 2006, is further indication that the photographs were simply misfiled.

We then come to the records received at the end of January 2006 (Exhibit 12), when plaintiffs' counsel, frustrated with the total lack of response and total evasion of discovery answers by defense counsel, sent another request to OSHA, and this time received OSHA records regarding <u>Unocal</u>.  These records contained narratives by the OSHA inspectors, which summarize information provided to them by Unocal personnel, including many of the individuals that Unocal's counsel itself indicated they conferred with in responding to plaintiffs' discovery requests, including Roxanne Sinz, Paul Crapps, Archie Cook, and others. The OSHA records do not contain statements of the Unocal individuals, but the second hand reports of the OSHA investigators.  The <u>primary</u> knowledge has always remained with Unocal.  Unocal had <u>access</u> to the primary knowledge, but simply

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

failed to provide it to plaintiffs in answering forthrightly interrogatories, or in producing documentary evidence.

The defendant makes the leap of faith in claiming that plaintiffs should have been aware Unocal did not have the OSHA records due to a Freedom of Information Act request dated July 8, 2005 by defense counsel on behalf of defendant Unocal 76, Inc.  The defense counsel requested the entire case file, reprinted photos, and stated "we represent Unocal and request copies of all investigative files.  We understand there were interviews taken of Unocal employees prior to the issuance of the citations.  We request copies of the written statements, and notes, and any recordings."  (Emphasis added).  On August 8, 2005 the OSHA records custodian responded to the paralegal from defense counsel, and stated that "after examining both files, I can report that there are no witness statements to pass on to you, just the original complaint form filed by Mr. Grove . . .. If you have any questions please feel free to contact me at 907-269-3727."

Unocal claims that this letter from OSHA should have established to plaintiffs' counsel that Unocal did not have any OSHA records.  That is definitely not established by that correspondence.  There are no written statements by witnesses in the OSHA records that plaintiffs have received (except for the Larry Grove Complaint), and as far as plaintiffs know, none are

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

in existence, and therefore, the statement by OSHA was correct.

If defendant implies somehow that plaintiffs have received the

written statements, that is simply incorrect.  What the files

contain are OSHA inspector summaries of their investigation, but

no written statements by witnesses.  In fact, the affidavit of

abatement by Mr. Crapps is not technically even a written

statement pursuant to an interview before citation issuance, but

was simply a mundane notice indicating compliance with OSHA

requirements, and citation by posting the citation and

notification of penalty in the Unocal building.  As noted above,

Unocal possessed the Crapps Affidavit, but failed to disclose it

to plaintiffs.

Defendant alleged numerous times in the Surreply that the

plaintiffs have an obligation to notify defense counsel of the

OSHA records because of the correspondence between Unocal and

OSHA.  In fact, that correspondence clearly indicates that there

are two files.  There is nothing in the communication that

indicates that Unocal or its counsel did not receive copies of

those files from OSHA.  Secondly, even if that letter does not

show that the documents were received, it also told defense

counsel they could call back, and they simply could have called

back, asked for the records, and got them from OSHA.  If

however, they did not receive the records initially, and they

did not call back to get these records, the third and final

probability is that defense counsel and Unocal, whether in a Unocal main file or a subsidiary file already possess all of the records, and defendant was simply looking to see if there were actual written statements in existence (which to the best of plaintiffs' knowledge there are not). Therefore, it is untrue for defense to claim that this correspondence establishes that plaintiff knew that defense did not have these records. In fact, from the quick review that was made by plaintiffs' counsel upon receipt of these records, it was assumed that defense had these records, and simply in keeping with their past course of conduct would not produce same to plaintiffs' counsel. Furthermore, Rule 26(e) only indicates that a party is under a duty to supplement if additional information has not been made known to the other party. Unocal knew about the information. Furthermore, any duty to supplement at appropriate intervals "seasonably" <u>if</u> the information is not otherwise known to the party.

D.    <u>FAILURE OF UNOCAL TO ANSWER DISCOVERY</u>

    None of what was written in the Surreply by defendant excuses the failure to properly respond to discovery that was promulgated by plaintiffs over the past several years, but which has been evaded, ignored, not treated seriously, or simply result from half hearted efforts made by defense to respond or comply. All of the information that is allegedly in the OSHA

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

records comes from the primary sources, which is Unocal, and

Unocal had direct access to all this information from the outset

of this litigation, as well as having in its possession the Paul

Crapps Affidavit.  None of this information is new information.

None of this information from the OSHA records should have had

any bearing on defendant responding properly to plaintiffs'

discovery requests, and defendant's failure to do so time and

time again.[2]

Unocal's assertion that somehow this information was

important for it in order to respond or would have changed how

it complied with discovery, or conducted litigation, is without

merit.  All this information was within the knowledge of Unocal,

and the individuals from Unocal who have been participating in

this litigation, and who had been consulted by defense counsel,

including Roxanne Sinz and Paul Crapps, as well as other

individuals such as Marc Bond, Kevin Tabler and Ken Burns.

Thus, it is disingenuous for Unocal to argue that it needed the

OSHA records to know what their own people already knew, but

which had not been provided to plaintiffs.

In addition to the requests that were made in plaintiffs'

initial Motion to Compel in light of the admissions by Unocal

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[2] It should be noted that many of the discovery responses by defense counsel occurred well before plaintiffs received any OSHA records, and furthermore, well before more significant records were received at the end of January 2006, which are the second hand reports from the OSHA people of what was already within the knowledge of the Unocal personnel, including many of the Unocal personnel that were consulted with or actively participating in the defense of this litigation.

that it had the Paul Crapps Affidavit all along, as well as that there is a Unocal main file, and that the Paul Crapps Affidavit was in a separate file, plaintiffs respectfully request that the court also order Unocal to produce:

1.    The Unocal main file.  That file should be produced at once to plaintiffs;

2.    Identify who put together the Unocal main file.

3.    Explain how this affidavit somehow become separated from the Unocal main file.

4.    Identify who separated the affidavit from the Unocal main file.

5.    Explain how Unocal was able to produce the affidavit that had been separated from the Unocal main file.

6.    Explain how Unocal was able to locate files that plaintiffs for years have been requesting, but defendant has been unable to apparently locate.

7.    Explain what other files were with that affidavit, and what other files have been separated from the Unocal main file, and who has knowledge of where all these files are, and why haven't these been produced to plaintiffs?

In addition, it is noteworthy that Unocal has failed to produce any safety meeting records or minutes, though Archie Cook at his recent deposition (Exhibit 16) indicated that there were safety meetings, and there were meetings in which the Larry Grove

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

accident and the work platform were discussed.  None of those records have been produced to plaintiffs.  In addition, defendant has failed to produce any e-mails, and that appears to be of some interest insofar as DEF00027 references an e-mail from the Law Department to Mr. Burns in regard to the Larry Grove accident and the OSHA investigation.  It is hard to believe there are no relevant e-mails.

Plaintiffs request the information that apparently has been redacted from DEF00027.

The actions of Unocal in failing to answer forthrightly, candidly and truthfully, discovery requests from the outset of this litigation on to the present date, including the recent responses to plaintiffs' discovery requests in which Unocal refused to disclose the nature of the relationship between Siemens Building Technologies, Inc. and defense counsel, which is clearly relevant as to Siemens' credibility/bias, etc. has resulted in an enormous waste of time by plaintiffs' counsel in learning facts which should have been revealed by defense counsel and interviewing witnesses and following dead ends through defendant not providing the information initially and in requiring plaintiffs to file two Motions to Compel.

Plaintiffs respectfully request that the Motion to Compel be granted, that the defendant's Motion to Compel be denied (especially since there is no evidence of any willfulness on

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

part of any of the plaintiffs) and the plaintiffs be given damages for waste of time as set out in the affidavit of counsel herein.  Finally, plaintiffs respectfully request that the court compel production of all information that has been withheld by defense and that defendant answers the questions regarding the latest discovery of documents that had been withheld by defendant since the outset of this litigation.

RESPECTFULLY SUBMITTED this 6th day of April 2006.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs

s/ Phillip Paul Weidner
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail: jgreene@weidner-justice.com
ABA 7305032

CERTIFICATE OF SERVICE
I hereby certify that on April 6, 2006 a copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF RULE 37 MOTION FOR DEFAULT AGAINST DEFENDANT AS SANCTION FOR WILLFUL BAD FAITH NON-COMPLIANCE WITH DISCOVERY AND/OR ORDER COMPELLING DISCLOSURE/DISCOVERY, AND OPPOSITION TO DEFENDANT'S SURREPLY TO MOTION TO COMPEL AND DEFENDANT'S MOTION FOR RULE 37 SANCTIONS** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC

s/ Phillip Paul Weidner

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571