25. Attached hereto as Exhibit 13 A through GG are letters to and from counsel regarding the discovery in this matter. Exhibits 13a-d are letters regarding demand by defense counsel for possession of the sheared bolts that Mr. Grove had retrieved from the filter room following the collapse of the work platform which caused the severe ankle injuries to Mr. Grove. In a letter dated April 5, 2005, Linda J. Johnson, one of the attorneys representing defendant, wrote in regard to a request by plaintiffs' counsel to retain possession of the bolts, "there is no credible evidence that spoliation will occur if the transfer of possession takes place, so this is not a valid argument." It has been revealed in discovery, especially at the deposition of Paul Crapps on March 3, 2006, that the defendant in fact destroyed all other evidence of the work platform other than the evidence that was retained by Mr. Grove;

26. Attached hereto as Exhibit 13e is a letter that I wrote to Mr. John Thorsness stating the following:

> In regard to the work platform that collapsed in the Unocal building resulting in injuries to Larry Grove, you have made an issue as to the possession of sheared bolts by plaintiffs. Have you preserved the work platform? If so, where is it? It should be made available for inspection by plaintiffs. Where are the bolts or bolt

Affidavit of Michael Cohn                                Page 10              Exhibit A, pg. 10

fragments that remain? Do you have them in your possession? If so, why was this evidence not disclosed to plaintiffs?

Without getting any response by Mr. Thorsness, plaintiffs submitted their Fifth Discovery Requests, which asked what happened to the work platform. Instead of answering this question, a bad faith non-responsive answer, totally out of compliance with the Federal Rules of Civil Procedure was provided in an un-verified response signed by Linda Johnson for John Thorsness stating "Unocal reserves the right to respond to this interrogatory when the court rules on the outstanding motions." See Exhibit 5. On August 5, 2005, by which point I was not doing any work for the firm of Phillip Paul Weidner & Associates as I was working elsewhere for most of July, all of August and September, and returning only as of October 17, 2005, another attorney at our law firm, Wayne Hawn, wrote a letter explaining that due to the tremendous expenditure of time on the In Re: Dillingham Air Crash litigation, a complex air crash and products liability action scheduled for trial for 3 to 5 months, that was to commence in mid-September, there was not time to actually schedule the depositions needed in the instant Grove case for the summer of 2005. Mr. Hawn

Affidavit of Michael Cohn                                Page 11            Exhibit A, pg. 11

also noted that the responses by the defendant to plaintiffs' discovery requests had been evasive. In particular, Mr. Hawn noted:

> In addition, your office has been hindering the discovery process in this case by not adequately responding to discovery requests relevant to the depositions we are attempting to schedule. For example, <u>your response to our inquiry as to the present location of the work platform and debris from the accident, which is directly relevant to the liability issues, was "Unocal reserves the right to respond to this interrogatory when the court rules on the outstanding motions." Under the rules, you have no such rights, and a complete and forthright answer was due not only under Rules 33 and 34, but also should have been disclosed as part of your initial disclosures. We also requested information regarding the location of the work platform and the debris from the accident on May 10, 2005 (Exhibit 6) and have not received a response.</u> If you do not fully respond to Plaintiff's 5th Discovery Requests by August 26, 2005, we will file a motion to compel.
>
> <u>Likewise, your responses to Plaintiff's Third (sic) discovery requests are evasive and incomplete. Those requests were propounded in an attempt to narrow issues for trial, and to narrow issues for the depositions of Unocal employees, regarding the nature and existence of the work platform. As to each such request, rather than conduct the investigation required by Rule 34, and provide a forthright response, you indicated that you could not determine if your client owned the platform in its own building as discovery is ongoing. You have now had adequate time to fully investigate the circumstances surrounding the existence of the work platform, and you also have had adequate time to discover evidence tending to show that the platform collapsed while Mr. Grove was on a business visit. This letter is a formal request that you supplement your responses to Plaintiff's Third (sic) Discovery Requests dated May 10, 2005.</u>
>
> (Emphasis added).

27. On August 12, 2005 in a letter attached hereto as Exhibit 13g, Linda J. Johnson wrote back stating:

> We are unable to fully respond to your discovery request regarding the various components of the work platform in issue until we have deposed Mr. Grove. We are at this time unaware of what exactly he removed from the scene or where he placed it. I have continually demanded to depose Mr. Grove and your office's unwillingness to work with us on this is in violation of the Court's order. We expect you to provide dates of his availability prior to the Dillingham trial.

28. It is contrary to the evidence that was apparently known to the Unocal management, including what has been revealed in OSHA records, and Unocal's own records. Unocal, and its employees, including Roxanne Sinz, Ken Burns, Paul Crapps, were apparently fully well aware that the brackets, the platform and most of the hardware to the platform to the work scaffold remained at the Unocal building well after Mr. Grove had left the scene. Indeed, in a subsequent conversation between myself and Ms. Johnson, she stated to me that perhaps Larry Grove could have come back and taken the work platform, which Unocal apparently knew, and as shown in the OSHA records, Mr. Crapps deposition, and other evidence, is an apparent misstatement of the truth;

Exhibit A, pg. 13

Affidavit of Michael Cohn                    Page 13

29. Due to the In Re: Dillingham Air Crash litigation, the resources of the law firm of Phillip Paul Weidner & Associates was devoted to that case, and Mr. Hawn's letter of August 12, 2005 was not followed up on until my return to the office. On December 9, 2005 I wrote to Mr. Thorsness and Ms. Johnson again, similar to Mr. Hawn's letter, indicating that their answer to Interrogatory No. 1 and Request for Production No. 1 to Plaintiffs' Fifth Discovery Requests was improper and non-responsive. I asked them to respond, otherwise I would file a motion to compel. As apparently non-responsive responses continued and apparently were not verified, I subsequently filed a motion to compel on the non-responses of defendant to Plaintiffs' Fifth Discovery Requests. Indeed, following the Fifth Discovery Requests, defendant submitted a supplement to the discovery requests in which they stated "Unocal does not currently know the whereabouts of the work platform or the identity of the person or persons who removed it." This was an absolute falsehood, in that the OSHA records, as well as Unocal management apparently fully well knew that Paul Crapps removed the work platform, and Mr. Crapps admitted it at his deposition of March 3, 2006. In

Affidavit of Michael Cohn     Page 14     Exhibit A, pg. 14

fact, the OSHA records reveal that Mr. Crapps removed the work platform at the behest of Unocal Building Manager Roxanne Sinz and Safety Advisor Ken Burns;

30. On December 20, 2005 I wrote a letter in which I indicated that we would like to start deposing individuals most knowledgeable concerning certain aspects of building maintenance and building management from Unocal concerning the (1) mechanical room (by mechanical room I meant the filter room where the accident occurred); and (2) the work platform in the mechanical room at said Unocal building. There has been no response back from defense counsel to the best of my knowledge at this time as to that 30(b)(6) request. See Exhibit 13-i;

31. On January 4, 2006 I again wrote a letter regarding the use of the facility in the Oakland area for the examination of the bolts and nuts and washers that had been turned over to defense counsel that had previously been in possession of plaintiffs' counsel. Subsequently on February 17, 2006, Mr. Weidner signed a letter with an attached protocol for inspection of the nuts, bolts and washers. See Exhibit 13-p attached hereto. In fact, I had a subsequent conversation with Mr. Thorsness when he asked us to re-fax said documents

Affidavit of Michael Cohn                Page 15    Exhibit A, pg. 15

to him, which I did, and we apparently still have not had a response to this date, near the end of March, 2006 for the protocols for the examination of the nuts, bolts and washers, and the location of said inspection, despite our request to do so, and despite the fact that expert reports are due the end of April, 2006, and our experts have not had a chance to inspect or examine the nuts, bolts and washers which are being retained by defendant. In regard to the inspection of the bolts, see plaintiffs' Exhibits 13 J, K and T;

32. On January 5, 2006 (Exhibit 13-K) I provided a list of individuals that we seek to depose in this matter. Defendant apparently has not gotten back with information on many of the individuals listed in that request, nor as to the Rule 30(b)(6) people;

33. On January 10, 2006, following an inquiry I had made to Siemens Building Technologies, Inc., the employer of Larry Grove, instead of responding to my request for information, apparently individuals from Siemens contacted counsel for Unocal, who then wrote me indicating that all discovery requests to Siemens be routed through Unocal's counsel, which I found peculiar insofar as Siemens as the employer would have a third party lien under the worker's compensation act for any

Affidavit of Michael Cohn    Page 16    Exhibit A, pg. 16

recovery from Unocal, and thus would be putting themselves in an adverse position to Mr. Grove while perhaps seeking to recover a lien against him;

34. I attempted to make further inquiries as to the exact relationship between Unocal and Siemens and the representation by counsel, but have not yet received a satisfactory response. See Exhibit 13-n;

35. On January 20, 2006 I wrote to Mr. Thorsness and Ms. Johnson indicating that we had agreed to the deposition of Roxanne Sinz on February 14, 2006 and Mr. Kevin Tabler on February 15, 2006, and that we would like to schedule the remaining depositions of Unocal personnel in March and April 2006. See Exhibit 13-m;

36. In a letter of January 25, 2006 (Exhibit 13-n) I asked Ms. Johnson as to what exactly is the relationship between Siemens Building Technologies, Inc. and defense counsel for Unocal, which she apparently was unwilling to answer; and also why we need to clear requests from Siemens through Unocal. I also asked for any indemnity agreements between Siemens/Unocal. Subsequently discovery requests were sent asking for all information regarding the relationship between the parties, and in defendant's response to Plaintiffs' Eighth Discovery Requests,

Affidavit of Michael Cohn                                    Page 17

Exhibit A, pg. 17

where I asked for all such correspondence and contacts between Unocal and Siemens, I received a letter which was a tender of defense letter by Unocal to Siemens dated September 17, 2004, however, I never received back the response. When I asked Mr. Thorsness regarding that, he simply said "send a discovery request" which is an apparent evasion, since that document would have been covered by plaintiffs' Eighth Discovery Requests;

37. On January 25, 2006 I wrote to Mr. Thorsness indicating, again, I was seeking the protocol from our metallurgist, which was sent on February 17, 2006, and after a conversation with Mr. Thorsness, re-sent said protocol to him, to which there apparently has been no response in regard to examination of the nuts, bolts and washers until a letter dated March 24, 2006, but still no agreement;

38. On February 8, 2006 (Exhibit 13-p) I again wrote to defense counsel regarding the Rule 30(b)(6) records deposition of Doug Schutte, a Service Manager of Siemens Building Technologies, Inc., that I took on February 3, 2006 following the apparent refusal of Siemens to cooperate with me and necessitating a records deposition. Prior to that deposition, defense

Exhibit A, pg. 18

Affidavit of Michael Cohn    Page 18

counsel indicated that they were representing Siemens for purposes of that deposition in a conversation I had with Mr. Thorsness. As indicated in my letter of February 8, 2006 and in the deposition of Mr. Schutte (Exhibit 11 herein) much of the information requested was apparently not provided to plaintiffs, even though it was encompassed in the subpoena, and Mr. Schutte admitted that said documents existed in archives at Siemens. Instead of indicating that these documents would be provided, the defense counsel appearing, Liam Moran, simply indicated that I should send another discovery request, which is unnecessary as it is encompassed by the records deposition, and I requested that these records be turned over without delay, which now, almost two months later, it appears these records have not been provided. These records would show, presumably, whether there have been any work orders or otherwise by Siemens Building Technologies, Inc. to construct or maintain the work platform, which Unocal had apparently falsely claimed in previous discovery responses, including Exhibits 1, 2 and 3, was owned or maintained or controlled by Siemens Building Technologies, Inc. I can state unequivocally that, as to the individuals that I have been able to contact,

Affidavit of Michael Cohn                                Page 19   Exhibit A, pg. 19