Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


          IN THE UNITED STATES DISTRICT COURT

             FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA      )
GROVE, SARAH GROVE, and,        )
MICHAEL GROVE (DOB 1/21/88)     )
By and through his father       )
LAWRENCE H. GROVE,              )
                                ) Case No. 3:04-CV-0096TMB
          Plaintiffs,           )
                                )
          v.                    )
                                )
UNOCAL CORPORATION              )
                                )
          Defendant             )
_____ )


      **PLAINTIFFS' SURREPLY TO MOTION TO COMPEL (DOCKET 33)**
  **AND PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RULE 37**
                  **SANCTIONS (DOCKET 63)**

A.    THE CRAPPS AFFIDAVIT

     Defendant, Unocal, has filed a Motion for Rule 37 Sanctions

in response to plaintiffs' Motion for Rule 37 Sanctions,

claiming that plaintiffs concealed and failed to disclose

possession of an affidavit of Unocal employee, Paul Crapps,

which document had been in possession of Unocal for years, and which Unocal failed to disclose to plaintiffs for three years. Defense counsel, Linda Johnson, threatened to file a Bar grievance against one of plaintiffs' attorneys, Michael Cohn, for the alleged failure to produce the Paul Crapps Affidavit, which, as it turns out, was always in the possession of Unocal, but not released or revealed to plaintiffs.

In defendant's Surreply to Motion to Compel and Memorandum in Support of Motion for Rule 37 Sanctions the defendant makes numerous allegations concerning the plaintiffs' alleged failure to disclose the affidavit of Paul Crapps, including references on page 2, 3, 5, 6, 7, and 8, before the astonishing admission on page 9 <u>that in fact defendant had possession of the Paul Crapps Affidavit all along</u>, but apparently had concealed this document from plaintiffs, which plaintiffs first learned about at the end of January, 2006.

Defendant states at page 3 "plaintiffs had the affidavit in their possession long before the deposition [of Paul Crapps] but failed to produce it." On page 7, defendant asserts that plaintiffs disclosed for the first time during the Crapps deposition that they had the Affidavit of Paul Crapps. See Defendant's Memorandum at page 7. At page 8, defendant again asserts that plaintiffs were fully aware that the affidavit … had not been produced [by plaintiffs]. Defendant asserts

**Weidner & Associates**
3301 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

incorrectly, (as it is not reviewing the records carefully), that plaintiffs had had possession of the affidavit since December, 2004.  See Defendant's Memorandum at page 8 (in fact, the previous OSHA records received by plaintiffs did not contain any affidavit of Paul Crapps).  The first notice to plaintiffs as to the Paul Crapps Affidavit was the end of January, 2006 through newly received OSHA records, at which time plaintiffs rightfully believed defendant already had possession of this affidavit, which simply had not been produced to plaintiffs. See Michael Cohn's original affidavit supporting Motion for Default, attached hereto as Exhibit A to Affidavit of April 5, 2006.

Defendant's main attack against plaintiffs in defendant's Motion to Compel is the failure to produce the Paul Crapps Affidavit, despite the astonishing admission at page 9, when Unocal states:

> Finally, when Unocal was provided with a copy of Paul Crapps Affidavit, <u>it was able to locate a copy of the Affidavit that had been separated from the Unocal's main file</u>.

Defendant's Memorandum at p. 9; (emphasis added).

In fact, this document was revealed only after plaintiffs' counsel asked Unocal to submit an affidavit that it did not possess the Crapps Affidavit, which it was unable to do because Unocal <u>had</u> the Crapps Affidavit.  Though the defendant, even in this admission, buried at page 9 of its memorandum, and only

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

after at least 9 references to the failure of the plaintiffs to produce a document that defendant had possession of for years but failed to produce to plaintiffs, and which should have been produced to plaintiffs in initial disclosures, and further should have been produced in response to numerous plaintiffs' discovery requests, finally make this grudging admission. Even this admission is halfhearted as Unocal somehow claims that it is only because Unocal got a copy of the affidavit from the plaintiffs that Unocal was able to locate Paul Crapps' Affidavit in its own files. The admission by Unocal itself in turn creates numerous questions that plaintiffs respectfully request the court require Unocal to answer. These include, but are not limited to, the following:

1.  What is in the Unocal main file? That file should be produced at once to plaintiffs;

2.  Who put together the Unocal main file?

3.  How did this affidavit somehow become separated from the Unocal main file?

4.  Who separated the affidavit from the Unocal main file?

5.  How was someone able to find the affidavit that had been separated from the Unocal main file?

6.  How was it that defendant was able to locate files that plaintiffs for years have been requesting, but

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

defendant apparently has been unable to locate
previously?

7.    Who located the affidavit, and how did they know where
to find this affidavit?

8.    What other files were with that affidavit, and what
other files have been separated from the Unocal main
file, and who has knowledge of where all these files
are, and why haven't they been produced to plaintiffs?

Defendant's counsel said that they might take legal action
against one of plaintiffs attorneys, Michael Cohn, for the
alleged failure to produce a document which defendant already
possess, and which it had failed to disclose to plaintiffs for
years.  The Affidavit of Paul Crapps was located by Unocal only
after one of plaintiffs' counsel wrote back demanding an
affidavit from defendant that it did not have the Affidavit of
Paul Crapps.  Defendant finally and grudgingly revealed, at page
9 of its memorandum, that Unocal has been in possession of the
Crapps Affidavit, which had (for many years) been withheld from
plaintiffs' counsel.  Yet, despite this conduct of defendant,
defendant still has the nerve to seek a motion for sanctions
against plaintiffs based primarily on the Crapps Affidavit.

Defendant seeks to preclude the use of the Paul Crapps'
Affidavit for the alleged egregious conduct by plaintiffs.
Defendant claims that if Mr. Crapps had this affidavit available

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

before his deposition (which affidavit was available because

Unocal had possession of same) that Mr. Crapps could have

refreshed his memory as to when he had in fact dismantled the

work platform that collapsed injuring Larry Grove on September 9,

2002.  Mr. Crapps testified in his deposition that the

dismantling occurred a few days after Mr. Grove's accident of

September 9, 2002.  Plaintiffs' counsel who was questioning Mr.

Crapps was frankly surprised at this statement since there was

numerous evidence, including that of Unocal employees' own

knowledge and Unocal documents, including documents reviewed by

Mr. Crapps before his deposition, which showed that his statement

was simply incorrect.  That is, Mr. Crapps testified at his

deposition that he had reviewed one of the few documents of any

materiality that had been produced by Unocal in this case, that

is DEF00027, produced in Initial Disclosures.  This document is

as follows:

> Notes concerning visit by State of Alaska OSHA
> Inspector as complied by Ken Burns, Drilling
> Safety Advisor
>
> 03/03/03 – Monday
> . . .
> After lunch, Paul Crapps received a call from Tom
> Lake, Siemens Supervisor that State OSHA was at
> their office investigating a complaint from one of
> their employees regarding conditions (scaffolding)
> here at Unocal.  Lake further advised that OSHA
> was on their way to Unocal.
> . . .
> At approximately 1440 hrs, I was notified by Paul
> Crapps that State OSHA was at the reception desk

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> to conduct a Complaint Inspection. Paul further explained that several months ago a Siemens employee fell and hurt himself while working in the penthouse.
>
> I responded to the front desk (reception) and was met by Paul Crapps, Tom Scanlon and Lee Zhao from State OSHA and Tom Lake, Siemens Supervisor. . . . Scanlon stated that he wanted to view the location listed on the complaint and to take some photographs of the scaffolding. . . .
>
> Tom Scanlon, Lee Zhao, Tom Lake, Paul Crapps and I went to the Penthouse and allowed the inspectors to view the area of the complaint. Prior to entering, Paul had to shut the air conditioner down because of the noise and wind velocity in the filter chamber. Tom Scanlon and trainee Lee Zhao entered the chamber and proceeded to take photograph and measurements. <u>Both Tom Scanlon and Lee Zhao climbed the ladder and exposed themselves to the open-sided platform. One significant question was asked. "Who erected this scaffolding</u>?" No one knew the answer. It was obvious from the structure that it had been erected many years ago. . . .
>
> Later in the afternoon, after briefing Roxanne, I was requested (e-mail) by the Law Department and Roxanne to **REDACTED** (Exhibit 15; emphasis added).

This document, which has a date of March 3, 2003, clearly shows (see highlighted portion) that the OSHA inspectors came out and inspected the platform. Obviously, they could not have inspected this platform if it had been dismantled and destroyed in September, 2002, which Mr. Crapps claimed at his deposition, despite his knowledge of this document, which he reviewed before his deposition. Furthermore, this information as to dismantling the work platform was in the possession of Unocal from the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

beginning of this litigation.  The OSHA records, which will be discussed in more detail in this memorandum, are second hand summaries by the OSHA inspectors of information that was supplied by the primary source, that is the Unocal personnel, including individuals such as <u>Roxanne Sinz</u>, <u>Paul Crapps</u>, and other Unocal personnel.  The OSHA records reveal that this knowledge was obtained from <u>Roxanne Sinz</u>, <u>Paul Crapps</u>, <u>Archie Cook</u>, <u>Charles Arnett</u>, all individuals that are listed in response to Plaintiffs' Third Discovery Requests as individuals that Unocal counsel conferred with in answering discovery requests.  Yet, despite conferring with these individuals, the information that they knew, was not revealed to plaintiffs' counsel for years.

The plaintiffs did not need an affidavit from Paul Crapps to know that the work platform had been dismantled. Everyone knew the work platform had been dismantled.  When the filter room where the work platform collapsed was examined by plaintiffs' counsel and plaintiffs' expert, the platform was gone.  Unocal personnel knew the platform was gone.  In fact, Larry Grove testified in his deposition in November 2004 that the platform had been removed after the OSHA inspection:

> A.  . . . After OSHA inspected it [the work platform] it all disappeared.
> Q.  After they inspected it?

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

                    A.   Well, after OSHA showed up, it was all
                         gone after that.

Deposition of Lawrence H. Grove of 11/12/04 at pg. 130 (Exhibit

17).

     DEF00027 clearly and definitively establishes that the work

platform was still in the filter room at the Unocal building in

March of 2003 when the OSHA inspectors came out and inspected

the work platform.  Individuals who had told Mr. Crapps to

remove the work platform, including Roxanne Sinz, the building

manager who conferred with Unocal counsel in completing

discovery requests to plaintiffs, and Ken Burns, a safety

official with Unocal, who is the source for DEF00027, were well

aware that the platform had been dismantled, and when it was

dismantled.

     The affidavit of Mr. Crapps was simply an affidavit of

abatement and posting.  There was no advantage to be gained from

allegedly concealing this document from Unocal.  All it was, was

a confirmation that Mr. Crapps had personal knowledge of the

dismantling of the work platform (which finally had been

admitted by defendant before the deposition in 2006), and that

he had posted citations and notifications of penalty.  Thus, Mr.

Crapps was simply asked his personal knowledge of the

dismantling of the work platform.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

It is important for the court to go through plaintiffs' original Motion to Compel, and the Affidavit of Michael Cohn, which has been validated by the admission of defendant that it had possession of the Paul Crapps Affidavit for years, but failed to disclose it to the plaintiffs.  On March 17, 2006, in Exhibit 13-DD to the Affidavit of Michael Cohn (Exhibit A herein) to the initial Motion to Compel by plaintiffs, in a letter to defense counsel, it was stated:

> Please provide an affidavit from Unocal that Unocal did not possess or have knowledge of the Paul Crapps affidavit.  It appears unlikely that Mr. Crapps would have signed any affidavit concerning the OSHA investigation without Unocal management and/or counsel reviewing the affidavit, and have retained a copy of the affidavit, and indeed, already had possession of the entire OSHA file.

This letter, which is quoted in Para. 51 of Mr. Cohn's Affidavit in support of the Motion to Compel, has now been proven to be correct through the admission by defense counsel, buried at page 9 of Unocal's memorandum.  See also Affidavit of Michael Cohn (Exhibit A), Para. 45.  In paragraph 43 (Exhibit A), Mr. Cohn states that it is his belief that this information, including the Paul Crapps Affidavit, is already in the possession of defendant.  Furthermore, the fact that following the challenge laid out in Mr. Cohn's letter of March 13, 2006 (Exhibit 13-GG) as to the Paul Crapps Affidavit, resulted, apparently, in Unocal finding the Affidavit of Paul Crapps had always been in their possession, confirms the statements by Mr. Cohn in his affidavit (Exhibit A) at Para. 23 and 48 that the defendant has engaged in

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

half-hearted efforts to search for records previously.  That is
apparent now, since it did not appear to have taken much time to
find the Affidavit of Paul Crapps.

    The defendant makes many false misrepresentations in
defendant's Surreply.  For example, Unocal claims that when
plaintiffs asked in discovery what happened to the work
platform, that plaintiffs already knew what happened to the work
platform because of OSHA records.  <u>None</u> of the OSHA records
indicate what happened with the work platform.  The OSHA records
merely indicate that the work platform was dismantled.  That was
already obvious, even without OSHA records, because it was not
in the filter room.  What the plaintiffs' counsel wanted to know
is, what happened to the dismantled work platform and it's
components, and where the parts are now located.  That is the
information that defendant has personal knowledge of, but
concealed from the plaintiffs for years.

B.    <u>UNOCAL MISREPRESENTATIONS</u>

    Following the maneuver by defendant to obtain
possession of the broken sheared bolts that Mr. Grove had
retrieved shortly after the accident (which luckily had been
retrieved by Mr. Grove as we now know defendant destroyed
the rest of the evidence), plaintiffs then sent a letter, to
which there was no response, asking defendant to account for
the work platform.  The failure to respond to the letter

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

resulted in plaintiffs sending out Plaintiffs' Fifth

Discovery Requests, which defendant responded to as follows:

> **INTERROGATORY NO. 1**:     Please explain what happened to the
> work platform in the mechanical room of the Unocal Building at 909 West 9th
> Avenue, Anchorage, Alaska following the accident involving Larry Grove.
> Specifically, please explain:
>> 1.     Where is the work platform and its parts, including bolts;
>> 2.     Who took down and/or removed the work platform (identify the
> individual, his job title and employer at the time of disassembly/removal of the
> platform, last know address and telephone number);
>> 3.     What happened to the work platform and its parts after removal
> from the mechanical room, including where was it stored, who had custody, how
> long it was stored, and ultimately what happened to the work platform.

> **ANSWER**:     Unocal reserves the right to respond to this
> interrogatory when the court rules on the outstanding
> motions.
> (Emphasis added).

This answer was a violation of the Code of Professional

Responsibility 3.4 insofar as there was no good faith effort to

determine what had happened to the work platform.  However,

defendant attempts to spin this answer by claiming that the OSHA

records received by plaintiffs in December 2004 and January 2005

already provided the answer to plaintiffs.  See defendant's

Memorandum at pgs. 9-10.  In fact, none of the OSHA records that

plaintiffs have been able to review, whether received in 2005 or

2006 tell us what Unocal did with the work platform.  That

information was solely in the possession of Unocal and that

answer, and several supplemental answers, were simply evasive

discovery responses.  All that was known, and everybody already

knew, was that the work platform eventually had been dismantled

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

after the OSHA inspection.  That much is known from review of
Ken Burns' notes, which were produced in initial disclosures
(00027) which shows that the OSHA inspectors inspected the
actual work platform, and not an imaginary platform in March of
2003, and the deposition of Larry Grove where he testified that
after the OSHA inspection the work platform was gone.  This
information was within the knowledge of Unocal personnel,
including Roxanne Sinz, Ken Burns, Paul Crapps, and others.
Therefore, to claim somehow that defendant could not properly
answer this question without OSHA records, when this information
is not within any OSHA records, neither records in December 2004
and January 2005, or at the end of January 2006, is just a
complete fabrication.  All that the records indicate is that the
platform was dismantled, not what happened to the platform.
Indeed, the first time it is noted who might have had a part in
the dismantling of this platform was obtained by plaintiffs at
the end of January 2006.  There was no mention of who dismantled
the platform in the previous OSHA records received by
plaintiffs.

There are many other misrepresentations in Unocal's Surreply
to Motion to Compel and Memorandum in Support of Motion for Rule
37 Sanctions.  At Pg. 3 of the Surreply, Factual Background,
Unocal states:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

This case was filed on April 16, 2004. Initial disclosures were made July 2004. Plaintiff's Initial Disclosure said:

> Medical records; worker's compensation records; tax returns for years 1998-2002; Reemployment Benefits Plan; Alaska Pipe Trades Agreement, 2003-2006; **State OSHA records**; photographs of work platform and Mr. Grove's injuries; sheared/broken bolts are in the possession of plaintiff's counsel. See Bates Stamp Nos. LG00001 to LG 00508. The broken bolts are available for inspection upon reasonable notice. Color copies of photographs are likewise available for copying or inspection upon reasonable notice.

Ex. 1, page 5, attached to affidavit of counsel, emphasis added. No OSHA records can be located in Plaintiff's original production. (Emphasis added).

In fact, plaintiffs attached to their Initial Disclosures LG000025-30 and LG000073-79, which are OSHA records that were in the possession of plaintiffs. See Exhibit 18. Thus, the statement of defense counsel that no OSHA records can be located in plaintiffs' original production is a misrepresentation.[1]

Unocal also cites to its First Discovery Requests, Request for Production No. 7:

**Request for Production No. 7:**

---

[1] There is another irony contained in the quote of plaintiffs' Initial Disclosures. That is, in plaintiffs' Initial Disclosures, plaintiffs disclosed that the sheared/broken bolts of the collapsed platform were in the possession of plaintiffs' counsel, and that the broken bolts were available for inspection upon reasonable notice. Subsequent to that disclosure, as well as a further disclosure in response to discovery requests, plaintiffs sent a letter indicating they wanted to send the bolts to be examined by their experts approximately a year ago. Defense counsel then filed a Motion to Compel, claiming, incorrectly, that plaintiffs had concealed their possession of these broken bolts and that defendant had no knowledge of the possession of the broken bolts by plaintiff until the letter to defense counsel in March of 2005, when in fact as seen by the defendant's quote of plaintiffs' Initial Disclosures, that information was revealed, and not concealed.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> Please produce all notes, memoranda, **COLOR photographs**,
> diagrams, drawings, or other tangibles which in any way
> relate to the accident or plaintiff's damage claims.
> **Response**: Objection. Vague. What are "tangibles"?
> See enclosed photographs. **See State OSHA records
> already produced.**
>
> *Id*. at page 7, emphasis added and in original. <u>No OSHA
> records can be located as promised in the RFP response</u>.
> (Emphasis added).

The plaintiffs were referencing the OSHA records that had been produced in their Initial Disclosures, which are referenced in this discovery request. However, once again, defendant incorrectly claims that no OSHA records can be located.

C.    <u>OSHA RECORDS</u>

The OSHA records received December 30, 2004 by plaintiffs pertained to the file as to Siemens Building Technologies, Inc., and not the investigation as to Unocal. Therefore, there is in fact very little evidence in that disclosure pertaining to Unocal per se. Furthermore, though the defendant references three files, what apparently happened was after the receipt of the files at the end of December 2004, which showed Xeroxed copies of photographs, plaintiffs requested color copies of the photos, and in January simply got back the same Xeroxed copies that had already been submitted, along with a letter from OSHA stating that the actual photographs themselves could not be located. Thus, the second file does not contain any new

information other than in the first file.  Furthermore, despite
the fact the defendant attempted to make the documents received
at the end of December 2005 and January 2005 into a massive
conspiracy by plaintiffs to withhold evidence, in fact what
happened is they were received by plaintiffs through
correspondence, and promptly filed by office staff into the
correspondence file.  None of these documents were apparently
sent to plaintiffs' experts until their re-discovery in March
2006.

     After repeated requests for verification of discovery
responses from defendant, which were ignored, plaintiffs'
counsel decided to review the correspondence file to see whether
verifications had been misfiled in the correspondence (see
Exhibit 19).  In going through the entire five volumes of
correspondence records, said counsel came across the misfiled
OSHA records received in December 2004 and January 2005
(Exhibits 20 and 21).  Upon recognizing that these records had
been misfiled, copies were promptly made and sent to defense
counsel and plaintiffs' experts.  There is no proof of willful
evasion.

     The records themselves do not contain anything that should
have affected the ability of defendant to respond to discovery.
For example, there was nothing in these records that pertained
to the failure of Unocal to search their records to find any

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

records regarding the construction, maintenance, inspection or
destruction of the work platform.  There is nothing in these
records that pertain to Unocal searching their records to find
any records concerning authorization or approval of the work
platform.  The only items of any significance, if any, in the
disclosures of the OSHA records of December 2004 (as noted, the
January 2005 disclosures contain nothing new, but simply Xerox
copies of photographs that had already been produced in December
2004) is that there is a reference that the platform had been
dismantled, and that there are the black and white photos
showing the platform.

　　　The dismantling of the platform is not a surprise. Unocal
(and plaintiffs) already knew the platform had been dismantled.
Everybody knew the platform had been dismantled because it
wasn't there anymore.  Furthermore, from DEF00027, and Larry
Grove's deposition, and other information, everybody knew, or
should have known, the platform had been dismantled after the
OSHA inspection.  It is clear even from the citations issued by
OSHA that they had knowledge of what the platform looked like
and consisted of, otherwise they could not have issued the
citations they did.

　　　The only other information of any significance was the
actual photographs showing the platform.  Mr. Grove has taken
photos showing the platform in its collapsed condition, which

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

were disclosed to defendant.  The OSHA photos, while of interest, would not indicate what happened to the platform, who built the platform, or any of the other questions that the plaintiffs asked the defendant to answer, but which were evaded.

It is simply a clerical error that the OSHA photographs were filed away.  Indeed, the fact that these photographs were not used by plaintiffs' counsel or sent to plaintiffs' experts until March 2006, is further indication that the photographs were simply misfiled.

We then come to the records received at the end of January 2006 (Exhibit 12), when plaintiffs' counsel, frustrated with the total lack of response and total evasion of discovery answers by defense counsel, sent another request to OSHA, and this time received OSHA records regarding <u>Unocal</u>.  These records contained narratives by the OSHA inspectors, which summarize information provided to them by Unocal personnel, including many of the individuals that Unocal's counsel itself indicated they conferred with in responding to plaintiffs' discovery requests, including Roxanne Sinz, Paul Crapps, Archie Cook, and others. The OSHA records do not contain statements of the Unocal individuals, but the second hand reports of the OSHA investigators.  The <u>primary</u> knowledge has always remained with Unocal.  Unocal had <u>access</u> to the primary knowledge, but simply

**Weidner & Associates**
3301 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

failed to provide it to plaintiffs in answering forthrightly interrogatories, or in producing documentary evidence.

The defendant makes the leap of faith in claiming that plaintiffs should have been aware Unocal did not have the OSHA records due to a Freedom of Information Act request dated July 8, 2005 by defense counsel on behalf of defendant Unocal 76, Inc. The defense counsel requested the entire case file, reprinted photos, and stated "we represent Unocal and request copies of all investigative files. We understand there were interviews taken of Unocal employees _prior_ to the issuance of the citations. We request copies of _the_ written statements, and notes, and any recordings." (Emphasis added). On August 8, 2005 the OSHA records custodian responded to the paralegal from defense counsel, and stated that "after examining both files, I can report that there are no witness statements to pass on to you, just the original complaint form filed by Mr. Grove . . .. If you have any questions please feel free to contact me at 907-269-3727."

Unocal claims that this letter from OSHA should have established to plaintiffs' counsel that Unocal did not have any OSHA records. That is definitely not established by that correspondence. There are _no_ written statements by witnesses in the OSHA records that plaintiffs have received (except for the Larry Grove Complaint), and as far as plaintiffs know, none are

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

in existence, and therefore, the statement by OSHA was correct.
If defendant implies somehow that plaintiffs have received the
written statements, that is simply incorrect.  What the files
contain are OSHA inspector summaries of their investigation, but
no written statements by witnesses.  In fact, the affidavit of
abatement by Mr. Crapps is not technically even a written
statement pursuant to an interview before citation issuance, but
was simply a mundane notice indicating compliance with OSHA
requirements, and citation by posting the citation and
notification of penalty in the Unocal building.  As noted above,
Unocal possessed the Crapps Affidavit, but failed to disclose it
to plaintiffs.

        Defendant alleged numerous times in the Surreply that the
plaintiffs have an obligation to notify defense counsel of the
OSHA records because of the correspondence between Unocal and
OSHA.  In fact, that correspondence clearly indicates that there
are two files.  There is nothing in the communication that
indicates that Unocal or its counsel did not receive copies of
those files from OSHA.  Secondly, even if that letter does not
show that the documents were received, it also told defense
counsel they could call back, and they simply could have called
back, asked for the records, and got them from OSHA.  If
however, they did not receive the records initially, and they
did not call back to get these records, the third and final

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

probability is that defense counsel and Unocal, whether in a Unocal main file or a subsidiary file already possess all of the records, and defendant was simply looking to see if there were actual written statements in existence (which to the best of plaintiffs' knowledge there are not).  Therefore, it is untrue for defense to claim that this correspondence establishes that plaintiff knew that defense did not have these records.  In fact, from the quick review that was made by plaintiffs' counsel upon receipt of these records, it was assumed that defense had these records, and simply in keeping with their past course of conduct would not produce same to plaintiffs' counsel. Furthermore, Rule 26(e) only indicates that a party is under a duty to supplement if additional information has not been made known to the other party.  Unocal knew about the information. Furthermore, any duty to supplement at appropriate intervals "seasonably" <u>if</u> the information is not otherwise known to the party.

D.    <u>FAILURE OF UNOCAL TO ANSWER DISCOVERY</u>

    None of what was written in the Surreply by defendant excuses the failure to properly respond to discovery that was promulgated by plaintiffs over the past several years, but which has been evaded, ignored, not treated seriously, or simply result from half hearted efforts made by defense to respond or comply.  All of the information that is allegedly in the OSHA

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

records comes from the primary sources, which is Unocal, and
Unocal had direct access to all this information from the outset
of this litigation, as well as having in its possession the Paul
Crapps Affidavit. None of this information is new information.
None of this information from the OSHA records should have had
any bearing on defendant responding properly to plaintiffs'
discovery requests, and defendant's failure to do so time and
time again.[2]

Unocal's assertion that somehow this information was
important for it in order to respond or would have changed how
it complied with discovery, or conducted litigation, is without
merit. All this information was within the knowledge of Unocal,
and the individuals from Unocal who have been participating in
this litigation, and who had been consulted by defense counsel,
including Roxanne Sinz and Paul Crapps, as well as other
individuals such as Marc Bond, Kevin Tabler and Ken Burns.
Thus, it is disingenuous for Unocal to argue that it needed the
OSHA records to know what their own people already knew, but
which had not been provided to plaintiffs.

In addition to the requests that were made in plaintiffs'
initial Motion to Compel in light of the admissions by Unocal

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[2] It should be noted that many of the discovery responses by defense counsel occurred well before plaintiffs received any OSHA records, and furthermore, well before more significant records were received at the end of January 2006, which are the second hand reports from the OSHA people of what was already within the knowledge of the Unocal personnel, including many of the Unocal personnel that were consulted with or actively participating in the defense of this litigation.

that it had the Paul Crapps Affidavit all along, as well as that there is a Unocal main file, and that the Paul Crapps Affidavit was in a separate file, plaintiffs respectfully request that the court also order Unocal to produce:

    1.    The Unocal main file.  That file should be produced at once to plaintiffs;

    2.    Identify who put together the Unocal main file.

    3.    Explain how this affidavit somehow become separated from the Unocal main file.

    4.    Identify who separated the affidavit from the Unocal main file.

    5.    Explain how Unocal was able to produce the affidavit that had been separated from the Unocal main file.

    6.    Explain how Unocal was able to locate files that plaintiffs for years have been requesting, but defendant has been unable to apparently locate.

    7.    Explain what other files were with that affidavit, and what other files have been separated from the Unocal main file, and who has knowledge of where all these files are, and why haven't these been produced to plaintiffs?

In addition, it is noteworthy that Unocal has failed to produce any safety meeting records or minutes, though Archie Cook at his recent deposition (Exhibit 16) indicated that there were safety meetings, and there were meetings in which the Larry Grove

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

accident and the work platform were discussed.  None of those records have been produced to plaintiffs.  In addition, defendant has failed to produce any e-mails, and that appears to be of some interest insofar as DEF00027 references an e-mail from the Law Department to Mr. Burns in regard to the Larry Grove accident and the OSHA investigation.  It is hard to believe there are no relevant e-mails.

Plaintiffs request the information that apparently has been redacted from DEF00027.

The actions of Unocal in failing to answer forthrightly, candidly and truthfully, discovery requests from the outset of this litigation on to the present date, including the recent responses to plaintiffs' discovery requests in which Unocal refused to disclose the nature of the relationship between Siemens Building Technologies, Inc. and defense counsel, which is clearly relevant as to Siemens' credibility/bias, etc. has resulted in an enormous waste of time by plaintiffs' counsel in learning facts which should have been revealed by defense counsel and interviewing witnesses and following dead ends through defendant not providing the information initially and in requiring plaintiffs to file two Motions to Compel.

Plaintiffs respectfully request that the Motion to Compel be granted, that the defendant's Motion to Compel be denied (especially since there is no evidence of any willlfulness on

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

part of any of the plaintiffs) and the plaintiffs be given

damages for waste of time as set out in the affidavit of counsel

herein.  Finally, plaintiffs respectfully request that the court

compel production of all information that has been withheld by

defense and that defendant answers the questions regarding the

latest discovery of documents that had been withheld by

defendant since the outset of this litigation.

       RESPECTFULLY SUBMITTED this 6th day of April 2006.

                           WEIDNER & ASSOCIATES, INC.
                           Counsel for Plaintiffs

                           s/ Phillip Paul Weidner
                           WEIDNER & ASSOCIATES, INC.
                           330 L Street, Suite 200
                           Anchorage, AK  99501
                           Phone (907) 276-1200
                           Fax (907) 278-6571
                           E-mail: jgreene@weidner-justice.com
                           ABA 7305032


CERTIFICATE OF SERVICE
I hereby certify that on April 6, 2006 a copy of the foregoing
**PLAINTIFFS' REPLY IN SUPPORT OF RULE 37 MOTION FOR DEFAULT
AGAINST DEFENDANT AS SANCTION FOR WILLFUL BAD FAITH NON-
COMPLIANCE WITH DISCOVERY AND/OR ORDER COMPELLING
DISCLOSURE/DISCOVERY, AND OPPOSITION TO DEFENDANT'S SURREPLY TO
MOTION TO COMPEL AND DEFENDANT'S MOTION FOR RULE 37 SANCTIONS**
was served electronically on John B. Thorsness at Clapp,
Peterson, Van Flein, Tiemessen & Thorsness, LLC

s/ Phillip Paul Weidner