none of them have stated that it was a Siemens structure, including individuals that were in Siemens management and would have knowledge of same;

39. Exhibits 13-Q and 13-R are letters from Mr. Phillip Weidner and myself in which we take issue with John Thorsness' abrupt cancellation of the depositions of Roxanne Sinz and Kevin Tabler, claiming that we did not provide reasonable notice that they would be video depositions on the 14th of February and for Mr. Paul Crapps on February 15, 2006. This is apparently bad faith by Mr. Thorsness, in light of the fact that we had agreed to take these depositions over a month earlier, resulted in plaintiffs having to cancel the depositions and reschedule them for March 2006;

40. As a result of defendant's unwillingness to apparently answer completely, honestly, fully and candidly, plaintiffs' previous discovery requests, I have had to promulgate additional discovery requests to explain the lack of answers to the previous discovery requests. Following a request for an extension of time to respond to a number of plaintiffs' discovery requests on February 16, 2006, Linda Johnson wrote back and indicated, without explaining how she computed it,

Exhibit A, pg. 20

Affidavit of Michael Cohn          Page 20

that we had exceeded the allowed number of interrogatories under Federal Rule 33;

41. On March 2, 2006 I wrote back to Ms. Johnson disputing her claim that we had exceeded the number of allowed interrogatory requests as I found that we were still far short of the total allowed without permission of the court under Federal Rule of Civil Procedure 33. See Exhibit 13-U;

42. On March 8, 2006 Ms. Johnson wrote back and made a computation of the number of interrogatories, coming with a total of 24 for the first seven discovery requests made by plaintiffs, and then claiming that we had exceeded the number after the first interrogatory on plaintiffs' Ninth Discovery Request. See Exhibit AA. As can be seen by her claim that there is six subparts to Interrogatory No. 1 in Plaintiffs' Seventh Discovery Requests (see Exhibit 7) that can be derived by plaintiffs asking, in the same question, who, what, when, where, why, etc. The apparent reasons for such an all encompassing question is the apparent conduct and practice of defense counsel of mincing words and failing to answer completely and thoroughly plaintiffs' discovery requests. However, to divide the question and make it six questions is unreasonable and an

Affidavit of Michael Cohn                    Page 21

Exhibit A, pg. 21

apparent attempt to evade proper discovery requests. I also note that this discovery response was promulgated because of the failure of defendant to adequately respond to previous discovery requests;

43. On March 2, 2006 (Exhibit 13-V) I sent a letter to Mr. Thorsness and Ms. Johnson indicating, again, that I want verification for discovery responses that have not been verified. Instead of affirmatively telling plaintiffs that they have verified the interrogatory requests, on March 10, 2006 Ms. Johnson simply writes back asking us to indicate which requests we claim there have been no verifications. Defense counsel should fully know which responses they have failed to verify. I take that as another effort to apparently disrupt the discovery process and apparently fail/delay to verify the discovery requests that we sought to have defendant verify. In that March 2, 2006 letter I also indicated that, after agreeing to extension of deadlines, which was requested by a paralegal at Ms. Johnson's office, I was not aware that defendant would later claim that we had exceeded the discovery requests and that they would simply fail to answer much of the discovery in any event;

**Exhibit A, pg. 22**

Affidavit of Michael Cohn                              Page 22

44. On March 3, 2006 Ms. Johnson wrote a letter threatening to take me to the Alaska Bar Association and sanctions for "violation of the Federal discovery rules." Defense counsel apparently used this subterfuge as an excuse for again not having Roxanne Sinz and Kevin Tabler show up for depositions that were scheduled, and now almost a month later, defense counsel has still not sought to provide dates for the rescheduling of the depositions of Kevin Tabler and Roxanne Sinz. See also Exhibit CC, a letter dated March 10, 2006 by Ms. Johnson in which she demands that I verify that I am not withholding any more documents before they produce witnesses for depositions. The irony of this is that the information that they are claiming that I withheld has apparently been within the knowledge of the Unocal management from the outset of this litigation, and simply not provided to plaintiffs' counsel. For example, as noted previously, in numerous letters and discovery responses, defendant had repeatedly refused to acknowledge that it was aware of what happened to the work platform, who took down the work platform and components, and only admitted same in 2006. Furthermore, despite the knowledge of Unocal management as shown in the OSHA records, Unocal has

Affidavit of Michael Cohn     Page 23     Exhibit A, pg. 23

apparently claimed repeatedly in discovery responses that somehow Siemens was the owner or erector or builder of the work platform, and that Unocal had no records, which is apparently incomprehensible on its face, that regardless of who built it, that Unocal would not have records of a structure that is erected in its own building. Furthermore, as noted in the deposition of Archie Cook, and from witnesses that I have been able to talk to, no such work platform apparently would be built in the Unocal building without the approval, authority and authorization of Unocal. See also my letter of March 17, 2006 (Exhibit 13-DD), which is a response to the March 3, 2006 letter of Linda Johnson (Exhibit W) and March 10, 2006 letter of Linda Johnson (Exhibit CC). It appears the claims against me may be an effort to misdirect the court from the apparent willful bad faith non-compliance by Unocal throughout this litigation;

45. Indeed, the claim by defense counsel that an affidavit signed by Mr. Crapps was not provided to defendant, when presumably Unocal would have reviewed the affidavit before Mr. Crapps signed it, and presumably Unocal would already possess the affidavit through various means, and presumably Paul Crapps and

Unocal management would be aware of having done this affidavit. Unocal's claims the affidavit would "refresh his memory" as to when he destroyed the work platform is apparently preposterous, especially since Mr. Crapps reviewed a number of documents before his deposition, including document DEF0027, which was a Unocal document prepared by Ken Burns, which clearly states that OSHA people inspected the platform on or about March 3, 2003, which presumably should have refreshed Mr. Crapps' memory that he apparently could not have destroyed a platform in September 2002 that was apparently inspected in March 2003. Mr. Crapps made the apparently ridiculous assertion at his deposition that he had dismantled and destroyed a platform in September of 2002, which even Unocal records apparently show was not dismantled until March of 2003.

46. Plaintiffs have also complied with the rules for disclosure, which requires seasonal supplementation under Federal Rule of Civil Procedure 26. It appears that Unocal and Siemens have had many OSHA records. Indeed, when I myself talked to a former Siemens employee, he told me that he had seen OSHA records pass by his desk. Yet, at the records deposition of Doug

Schutte of Siemens, apparently he could not locate <u>any</u> OSHA records, which do not mean they did not exist, but simply means he was not the person most knowledgeable regarding the location of many of the records that he was assigned the task of supposedly providing to me. Defendant Unocal has apparently failed to provide many relevant records, including records that are listed in the OSHA records that I have received, and which are relevant to this litigation;

47. Exhibit 13-X is a March 6, 2006 letter from Linda Johnson requesting an extension of time to respond to plaintiffs' Eleventh Discovery Requests until March 24, 2006. As is my custom, I rarely, if ever, withhold an extension by opposing counsel;

48. On March 8, 2006 (Exhibit 13-Y) I sent a letter to Mr. Thorsness and Ms. Johnson regarding their failure to allow an inspection of Unocal records, which were requested in plaintiffs' First Discovery Requests, Interrogatory No. 1(d) and in plaintiffs' Ninth Discovery Requests, Request for Production No. 16. As noted, in Exhibit 1, and subsequently in Exhibit 9, which requests the documents that have been concealed by defendant, the response for inspection was simply "with prior appointment, <u>the original documents</u>

produced in this case are available for inspection" (emphasis added). That is apparently an offer to produce only documents that they have already provided to plaintiffs. The failure to search, or apparent halfhearted effort to search for records on the approval, authorization, maintenance and inspection of the work platform, despite numerous efforts to attempt to obtain this information, leads plaintiffs to respectfully request a default judgment for discovery abuse. My March 8, 2006 letter, like many of my letters, is apparent ignored.

49. Another letter on March 8, 2006, which is Exhibit 13-Z is my review of certain files, including correspondence files, and the effort to ensure that any and all documents that may be in our possession, but misfiled, would be provided to defense counsel. However, I note that it is unclear to me that these documents were not already in possession of defendant.

50. On March 9, 2006 I wrote a letter to John Thorsness and Linda Johnson again indicating it was time to resume the process of deposing various witnesses in this case. That is, in light of the fact that expert reports are due at the end of April, and discovery closes in June, 2006, there are still many