John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska  99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>    Plaintiffs,<br><br> vs.<br><br>UNOCAL CORPORATION,<br><br>    Defendant. | Case No. 3:04-cv-0096-TMB |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR RULE OF LAW</u>

Defendant Unocal Corporation moves for a ruling of law on the following issues:

1. AS 09.17.070 applies; union disability and early retirement benefits drawn by Mr. Grove will reduce any damages he is awarded;

2. The damages cap applies to limit an award of non-economic damages to a maximum of $400,000.00 for the totality of plaintiffs' claims;

3. Sarah Grove's consortium claim is limited to 14 months after the injury, ending when she reached the age of majority;

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 1 of 13

4. The statutory cap on punitive damages[1] limits plaintiffs' recovery and 50% of any award will be paid to the State of Alaska; and

5. Larry Grove had a duty to mitigate his damages.

Unocal requests a ruling on these issues as a matter of law at this time to aid the parties in determining a realistic evaluation of potential damages; a determination that will aid the parties in settlement talks and/or mediation.

Each of the arguments addressed below is a state law question and substantive law from the Alaska Supreme Court is therefore cited.

## I. Evidence of Collateral Source May Be Used To Reduce the Total Award of Damages After Trial.

Larry Grove has asked for damages related to his injury. Unocal believes that Mr. Grove should not recover damages. But Unocal requests that the court issue a ruling that AS 09.17.070 will apply if damages are awarded.

A collateral source of income is money received by the plaintiff "entirely independent of and collateral to a wrongdoer who is legally responsible for the injuries." *Alyeska Pipeline Service Co. v. HC Price Co.*, 694 P.2d 782, 788 (Alaska 1985); Restatement (Second) of Torts §920A(2) and comment b (1977).[2]

Originally, the collateral source rule barred all reduction of a plaintiff's damages. The rationale behind the adoption of the rule was that "a tort-feasor is

---

[1] A separate summary judgment motion will be filed on the punitive damage issue. By filing this motion Unocal is not conceding that the punitive damages claim should be presented to the jury

[2] Money paid by the defendant is not a collateral source: e.g., health care costs paid by a defendant may be introduced and offset. See 1 DOBBS, LAW OF REMEDIES § 3.8(2) (concluding that the collateral source rule does not apply when the benefit is derived from the defendant himself).

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal* 3:04-cv-0096-TMB
Page 2 of 13

not entitled to have his liability reduced merely because plaintiff was fortunate enough to have received compensation for his injuries or expenses from a collateral source." *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 790 (Alaska 1999).   Although the collateral source rule operated to compensate an injured plaintiff more than needed to make him whole, the common law rule allowed for this double recovery, since the alternative was that the tortfeasor would avoid responsibility.  *King v. Jordan*, 601 P.2d 273, 278 (Alaska 1979).  An example of a collateral source is insurance policy proceeds.  Larry Grove draws disability and early retirement from his union, which is also a collateral source.  Exhibits A and B.

The legislature enacted AS 09.17.070 in 1986 to change the common law on collateral sources and shift some of the balance back to the defendant.[3]  The statute provides for reduction of an award of damages for certain limited, unsubrogated sources that a plaintiff receives.  The law is applied <u>after</u> damages have been awarded during a jury trial.  In whole, the statute says:

> 09.17.070. Collateral benefits.
> (a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.
> (b) If the defendant elects to introduce evidence under (a) of this section, the claimant may introduce evidence of
> > (1) the amount that the actual attorney fees incurred by the claimant in obtaining the award exceed the amount of attorney fees awarded to the claimant by the court; and

---

[3] *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) does not change the provision in AS 09.17.070.  *Eichel* applied to and limited a FELA claim to the introduction of collateral source evidence during trial on the issue of proving malingering.

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 3 of 13

> (2) the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence.
>
> (c) If the total amount of collateral benefits introduced as evidence under (a) of this section exceeds the total amount that the claimant introduced as evidence under (b) of this section, the court **shall** deduct from the total award the amount by which the value of the non-subrogated sum awarded under (a) of this section exceeds the amount of payments under (b) of this section.
>
> (d) Notwithstanding (a) of this section, the defendant may not introduce evidence of
>
>    (1) benefits that under federal law cannot be reduced or offset;
>    (2) a deceased's life insurance policy; or
>    (3) gratuitous benefits provided to the claimant.
>
> (e) This section does not apply to a medical malpractice action filed under AS 09.55.

(Emphasis added.)

At the time of his injury, Larry Grove was vested in his retirement and he would have eventually collected a retirement whether he was injured or not. Mr. Grove's accident did not deprive Mr. Grove of his retirement benefits.  In fact, Mr. Grove is drawing early retirement[4] and disability from his union pension fund. Exhibits A and B.

According to Alaska law, if damages are awarded to Mr. Grove, the union disability and retirement benefits that he is currently collecting should be deducted from the total award after the trial is completed.  This rule allows the jury to determine how much retirement Mr. Grove lost as a result of his injury, if any, but does not allow Grove a double retirement recovery.

---

[4] The actuarial calculations for the pension fund assure that Mr. Grove will receive all his pension despite the monthly reduction for early retirement, since he will receive the pension for a longer period of time.

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 4 of 13

Unocal requests a ruling that AS 09.17.070 applies to Mr. Grove's collateral source income that fits within the definition of the statute.  Further, Unocal requests a ruling that Mr. Grove's union disability and retirement are collateral sources within the definition of AS 09.17.070.  The union disability and retirement are not subject to subrogation.  Unocal requests that as a matter of law the court rule that the Alaska statute provides that the total amount of disability retirement Mr. Grove is receiving, and will continue to receive, should be deducted from the overall amount he anticipated before his injury.

## II.    Non-Economic Damages Should Be Determined According to AS 09.17.010(B).

Each plaintiff in this case has made a separate non-economic claim.  Unocal requests that the court issue a ruling that if non-economic damages are awarded, AS 09.17.010(b) will apply to limit to limit the plaintiffs claims.  The statutory cap of $400,000 applies to limit the total award of non-economic damages for the injury to Mr. Grove by all plaintiffs.  The law states:

09.17.010. Non-economic damages.
(a) In an action to recover damages for personal injury or wrongful death, all damage claims for non-economic losses shall be limited to compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other non-pecuniary damage.
(b) Except as provided under (c) of this section, the damages awarded by a court or a jury under (a) of this section for **all claims**, including a loss of consortium claim, **arising out of a single injury** or death **may not exceed $400,000** or the injured person's life expectancy in years multiplied by $8,000, whichever is greater.
(c) In an action for personal injury, the damages awarded by a court or jury that are described under (b) of this section may not exceed $1,000,000 or the person's life expectancy in years multiplied

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 5 of 13

1

by $25,000, whichever is greater, when the damages are awarded for
severe permanent physical impairment or severe disfigurement.

2

   (d) Multiple injuries sustained by one person as a result of a
single incident shall be treated as a single injury for purposes of this
section.

3

4

Emphasis added.

5

  The cap defined in (b) is the applicable cap.  Mr. Grove's injury does not fit

6

7

within (c) because an ankle injury is not a "severe permanent physical impairment

8

or severe disfigurement," and it is appropriate for the federal district court to make

9

that determination now.  This issue arose in *City of Bethel v. Peters,* 97 P.3d 822

10

(Alaska 2004), where the plaintiff's leg was permanently contorted and scarred.

11

The court said:

12

  The superior court must make a threshold determination of severe
disfigurement before submitting the issue to the jury. The court should
withhold the issue from the jury if no reasonable juror could find that
the plaintiff suffered from severe disfigurement; otherwise the question
should go to the jury.

13

14

15

*Id.* at 828.  This court should find that Mr. Grove's injuries do not rise to the level of

16

17

severe disfigurement.

18

  In order to determine whether a severe disfigurement is present, "a

19

reasonable healing period must be allowed before disfigurement may be assessed.

20

Otherwise, a plaintiff might, for example, claim to be disfigured based on his

21

condition immediately after being injured when a wound that will eventually heal

22

completely still appears grisly."  *Id.* at 828.

23

  The statute itself does not define "severe disfigurement."  But in the *City of

24

25

*Bethel* case, the court said that a disfigurement is "[t]hat which impairs or injures

26

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 6 of 13

the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect." *Id.* at 829. Plaintiff in that case wanted the court to rely upon the fact that her walk was significantly slowed by the injury, that her confidence was shaken, and that she could no longer take part in activities like berry picking or boating. But the court said that "disfigurement concerns the outward appearance of a person's body, not its function." *Id.* Thus, the court only considered evidence that the plaintiff's leg was permanently bent and scarred, not the injury's effect on her ability to walk or take part in other activities. *Id.*

Mr. Grove must come forward with evidence of severe disfigurement, which he cannot do. Mr. Grove's original bruising has healed and his surgery scars are mild and have not "severely disfigured" him. The evidence cannot support a possibility of non-economic damages under AS 09.17.010(c).

Unocal requests that the court hold that if any non-economic damages are awarded that they be subject to the cap found in AS 09.17.010(b).

Unocal also requests that the court issue an order consistent with the statute, that the cap of $400,000 applies to the aggregate of all non-economic claims by all plaintiffs.

## III. Sarah Grove's Consortium Claim Should Be Limited To 14 Months.

Sarah Grove must be a minor in order to maintain a claim for non-economic damages based on a consortium claim. *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987), first established the right for a minor child to bring an independent loss of consortium claim based upon the injuries to a parent. The

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal* 3:04-cv-0096-TMB
Page 7 of 13

Alaska Supreme Court recognized that consortium was "a cause of action created and developed by the courts." *Id.* at 995. To date, the Alaska Supreme Court has not recognized the right of an adult child to bring a loss of consortium claim.

Sarah Grove was born November 12, 1985. Sarah Grove Deposition testimony at 7 ("Q: And what is the date of your birth? A: November 12th, 1985."). Larry Grove was injured September 9, 2002. This lawsuit was filed April, 19, 2004. Ms. Grove turned 18 in 2003, almost a year before the action was filed and she is listed in the caption as an adult plaintiff.[5]

Sarah Grove's consortium claim was brought without temporal limitation. She alleged generally that she "suffered loss of love, comfort, support of her father including loss of family activities as a result of the injuries to [her] father." Complaint at ¶15. However, Sarah Grove was only a minor for 14 months after Larry Grove was injured, and therefore is only entitled to the alleged loss suffered during the 14 months before she became an adult.

Although Ms. Grove's complaint was timely, her recovery of potential damages is only for the period of time during which she was a minor. This fact is implicitly recognized by *Truesdell v. Halliburton Co., Inc.,* 754 P.2d 236 (Alaska 1988), which recognized that the statute of limitations tolls for a minor child's right to file a claim for consortium until two years after the age of majority.

---

[5] In comparison Michael Grove is specifically listed as a minor, and his claim is brought "by and through his father", although the birth date in the caption appears to be incorrect.

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal* 3:04-cv-0096-TMB
Page 8 of 13

Unocal asks this court for a ruling that Sarah Grove's potential recovery is limited to the time she was an adult child.

## IV.    Punitive Damages Should Be Determined by AS 09.17.010.

Unocal requests a ruling from the court that any alleged punitive damages award will be subject to the damages cap(s) found in AS 09.17.020, and that if any punitive damages are awarded, 50% will be awarded to the State of Alaska.  An award for punitive damages is not open ended in Alaska.  The Legislature has specifically moved to limit the amount of punitive damages a jury may award.

09.17.020. Punitive damages.
. . .
(b) The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct
       1) was outrageous, including acts done with malice or bad motives; or
       (2) evidenced reckless indifference to the interest of another person.
. . .
(f) Except as provided in (g) and (h) of this section, an award of punitive damages may not exceed the greater of
       (1) three times the amount of compensatory damages awarded to the plaintiff in the action; or
        (2) the sum of $500,000.
. . .
(j) If a person receives an award of punitive damages, the court shall require that 50 percent of the award be deposited into the general fund of the state. This subsection does not grant the state the right to file or join a civil action to recover punitive damages.

The Alaska Supreme Court recently upheld the punitive damages cap found in AS 09.17.020.  The cap was challenged in *Reust v. Alaska Petroleum Contractors, Inc.,* 127 P.3d 807 (Alaska 2005). The court found that the cap

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 9 of 13

"applies to all actions in which punitive damages are awarded." *Id.* at 821. Plaintiff complained that the statutes capping punitive damages awards and requiring payment of fifty percent of such awards to the state violated due process because they infringed on fundamental rights without a compelling or legitimate purpose. However, in *Evans ex rel. Kutch v. State,* the Alaska Supreme Court had already concluded that because interests in "unlimited [punitive] damages are merely economic, the State's objectives need only be 'legitimate'-not 'compelling'-to justify the State's action." *Reust*, 127 P.3d at 822, *citing Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1053 (Alaska 2002) (*citing Reid v. Williams,* 964 P.2d 453, 458 (Alaska 1998)). The Alaska Supreme Court was evenly divided in *State ex rel. Cent. Bering Sea Fishermen's Ass'n* (*Anderson II*), 78 P.3d 710 (Alaska 2003) on the issue of the constitutionality of AS 09.17.020(j), which is the section of the statute that allocates fifty percent of punitive damages awards to the state. But the split was resolved in *Reust*, which upheld the constitutionality of that provision for the reasons expressed in *Anderson II.*

> [A]llocating half of all punitive damage awards to the state will reduce the incentive for plaintiffs to pursue punitive damages claims. The statute will also encourage plaintiffs to settle their cases since the state only shares in punitive damages when an award is made. These incentives could reduce both the overall number of punitive damage claims as well as the number of punitive damage claims that actually go to trial. This effect could reasonably be expected to have a moderating influence on liability insurance premiums. Further, the incentive to settle punitive damage claims could reduce the length and complexity of litigation, thereby reducing the overall cost of litigation. The state's expectation that AS 09.17.020(j) will help to fulfill these purposes is at least minimally rational.

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 10 of 13

*Reust,* at 822, *citing* to *Anderson II*, 78 P.3d at 717 (internal footnote omitted).

Plaintiff in *Reust* also made many lesser arguments.  He alleged that the punitive damages caps violated the equal protection clauses of the Alaska and United States Constitutions. He claimed that the tort reform legislation discriminated between two classes of litigants-those who received full recovery and those whose recovery was capped. These exact arguments were presented and rejected in *Evans*, 56 P.3d at 1051-55 and *Reust* rejected the arguments again. Likewise, Reust argued that the punitive damages cap violated the right to a jury trial provided by the Alaska Constitution, Art. I, §16.  The same argument was rejected in *Evans,* where a majority of this court agreed that "[t]he decision to place a cap on [punitive] damages awarded is a policy choice and not a re-examination of the factual question of damages determined by the jury." *Evans,* 56 P.3d at 1051. Plaintiff in *Reust* urged a reconsideration of this conclusion, arguing that "[a] constitutional protection cannot be bypassed by allowing it to exist in form but not letting it have an effect in function." *Reust* at 822-823.  The Alaska Supreme Court saw no compelling reason to revisit *Evans's* holding on that issue.  Finally, *Reust's* plaintiff claimed that the statute constituted an unconstitutional taking.  The Alaska Supreme Court dismissed that argument, relying upon the decision in *Anderson II.*

Since the Alaska Supreme Court has upheld the Alaska statute, this court should adopt the Alaska Supreme Court's decision.  Unocal requests the court enter a ruling that the punitive cap found in AS 09.17.010(f) and the 50% rule found in (j) will apply in this lawsuit.

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 11 of 13

### V.    Larry Grove Had a Duty To Mitigate His Damages.

Every plaintiff has a duty to mitigate his damages.  Unocal requests that the court rule that Larry Grove had a duty to mitigate his damages that allegedly resulted from his injury.

Federal courts apply state law on the issue of mitigation.  The Ninth Circuit in *Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322 (9th Cir. 1995), found that:

> A wronged party must use reasonable efforts to avoid the consequences of injury done by another. *See Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991). This duty to mitigate damages rests on the party claiming damages, but the burden of proving failure to mitigate falls on the breaching party. *See West v. Whitney-Fidalgo Seafoods, Inc.,* 628 P.2d 10, 18 (Alaska 1981).

*Id.* at 1329.  S*ee also University of Alaska v. Chauvin,* 521 P.2d 1234, 1239 (Alaska 1974) ("A wronged party must use reasonable efforts to avoid the consequences of injury done by another.").

In *Spruce Equipment Co. v. Maloney,* 527 P.2d 1295 (Alaska 1974), a truck driver, who was injured, was unable to continue working as a truck driver.  He made no effort to secure alternative employment, although he could have done so.  The Alaska Supreme Court held that he failed to mitigate his damages.  The failure of the trial court to issue a proper instruction on his duty to mitigate resulted in a reversal of the case.  The court said:

> It is a cardinal rule in the law of damages that a plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them. This rule applies whether

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 12 of 13

the action is in tort or breach of contract and is known as the avoidable consequences rule.

*Id.* at *

Whether Mr. Grove has mitigated his damages is a factual question for the jury to determine.  Unocal requests only that the court find as a matter of law that Mr. Grove had a duty to mitigate his damages.

## VI.  Conclusion.

For the above-stated reasons, the motion for rule of law should be granted.

DATED at Anchorage, Alaska, this ___14th___ day of December 2006.

> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS, LLC
> Attorneys for Defendant Unocal
>
>
> s/ Linda J. Johnson
> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS LLC
> 711 H Street, Suite 620
> Anchorage, AK  99501-3454
> Phone:  (907) 272-9631
> Fax:  (907) 272-9586
> Direct email:  ljj@cplawak.com
> Alaska Bar No. 8911070

### Certificate of Service

I hereby certify that on December 14, 2006, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

> s/ Linda J. Johnson

Memorandum in Support of Motion for Rule of Law
*Grove v. Unocal*  3:04-cv-0096-TMB
Page 13 of 13