Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>             Plaintiffs,<br><br>      v.<br><br>UNOCAL CORPORATION<br><br>             Defendant | )<br>)<br>)<br>)<br>)<br>)  Case No. A04-0096 CV (TMB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO MOTION FOR RULE OF LAW**

Defendant, Unocal Corporation, has moved for ruling of law on five separate issues.  Some of these issues are either under-briefed and/or dependent on the determination of factual issues, which have not been presented to the court by the defendant, and therefore are devoid of merit.  Plaintiffs will discuss the specific issues, which have either been under-briefed or in which insufficient factual support has been presented, and therefore should not be considered by the court

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

before proceeding to issues that are strictly that of legal issues.

A.    <u>Non-Economic Damages Pursuant to AS 09.17.010</u>

Under AS 09.17.010(c) in an action for personal injury plaintiffs are entitled to recover at least $1,000,000 in non-economic damages where there has occurred either severe permanent physical impairment or severe disfigurement.[1]  Only in the absence of either severe permanent physical impairment or severe disfigurement are plaintiffs limited by AS 09.17.010(b) to a total of $400,000 in non-economic damages.  The defendant cites the statute AS 09.17.010 and conclusorily claims that the Grove family is only entitled to $400,000 in non-economic damages under AS 09.17.010(b) without producing a single shred of evidence to this court.  How, in fact, can the court rule on such a determination made by the defendant when the defendant fails to introduce any evidence in support of its motion. Furthermore, defendant then simply ignores the allowance of $1,000,000 in non-economic damages for severe permanent physical impairment, and only discusses (again, without any factual support) severe disfigurement.  Thus, irrespective of whether the issue of severe disfigurement is presently before

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] The statute is still subject to constitutional challenge on a number of grounds, including right to jury trial, which have not yet been determined by the Alaska Supreme Court in its split decision.  Plaintiffs reserve the right to challenge the statutory caps.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the court, the defendant has failed, utterly and completely, to argue in regard to severe permanent physical impairment.  Mr. Grove sustained severe permanent physical impairment due to an injury to his right ankle, which resulted in an 8% permanent impairment for the whole person, (this rating was given to Mr. Grove after his first ankle surgery, but before he had a subsequent ankle surgery, which has increased the impairment of the ankle).  He also, as a result of loss of the talus bone and two serious ankle surgeries and the injuries sustained has significant scarring to the ankle and disfigurement of the ankle.

The defendant cites one case, but only dealing with the issue of disfigurement, and that is <u>Bethel v. Peters</u>, 97 P.3d 822 (Alaska 2004), and in that case the court noted that the court should only withhold the issue of severe disfigurement from the jury if no reasonable juror could find that the plaintiff suffered from severe disfigurement, and that the court would review that determination for abuse of discretion. The court upheld the determination by the Superior Court to present that issue to the jury.  The issue before the court was only that of severe disfigurement.  As noted, the defense has not cited any cases on severe permanent physical impairment, and that issue has not even been raised before the court, or at least has been ignored by the defendant.

Plaintiff Larry Grove and his family are pursuing claims for physical injuries and other damages arising out of an accident on September 9, 2002 when a work platform at the Unocal building collapsed while he was there on a service call resulting in serious permanent ankle injuries and disfigurement.  See photographs of Larry Grove's leg taken after the accident attached herein as Exhibit 1.

Plaintiff Larry Grove sustained serious permanent ankle injuries, which has left him unable to do the work he did his whole life, and 30%-40% impairment of his right ankle (he has been rated at 8% permanent impairment for the whole person).  He has had two ankle surgeries, and faces the prospect of continuing deterioration of his ankle (Dr. Chang has indicated the more that Larry Grove uses his ankle, the more likely his ankle will deteriorate, with further loss of function, increased arthritis and pain, wearing out of the ankle joint, leaving him with greater disability as he ages).[2] See Operative Report of Dr. Geitz attached hereto as Exhibit 2 and Operative Report of Dr. Michael Chang, attached hereto as Exhibit 3.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[2] Pursuant to opinion expressed by Dr. Chang to Michael Cohn. See Affidavit of Michael Cohn.

Dr. Geitz operated on May 20, 2003.  The Operative Report by Dr. Geitz states:

> PREOPERATIVE DIAGNOSES
> 1.  Chronic lateral ligament laxity, right ankle.
> 2.  Osteochondral fracture and loose body lateral talus, right ankle.
> 3.  Chronic posterior tibial tendonitis and adhesions, right ankle.
>
> POSTOPERATIVE DIAGNOSES
> 1.  Chronic lateral ligament laxity, right ankle.
> 2.  Osteochondral fracture and loose body lateral talus, right ankle.
> 3.  Chronic posterior tibial tendonitis and adhesions, right ankle.
>
> OPERATIONS PERFORMED
> 1.  Repair lateral collateral ligament, right ankle.
> 2.  Arthrotomy debridements, curettage and drilling of osteochondral defect, lateral talus with joint exploration.
> 3.  Tenolysis and debridement posterior tibial tendon, right ankle.
>
> INTRAOPERATIVE FINDINGS:  This patient fell from a scaffold in a 9/2002 and had persistent lateral instability, joint swelling and posterior tibial tendonitis despite many months of nonoperative management.
>
> His intraoperative findings correlated exactly with his clinical findings, his x-rays and his MRI scan.  The ATFL lateral ligament was very lax and attenuated.  The calcaneal fibular ligament was intact and tight.  There was a large chondral defect on the lateral talar articular surface as seen on plain x-ray and the MRI scan.  This chondral piece was 8 x 16 mm in size, it was loose and avascular.  The bony bed was sclerotic. The remainder of the joint surface and the medial corner looked fine.  There was no opposing lesion on the tibial side of the talus lesion.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> The posterior tibial tendon was chronically inflamed. The sheath was hypertrophied and adherent behind the medial malleolus and there was fusiform swelling with some longitudinal cracks in the posterior.

Exhibit 2. See also, excerpts of Dr. Geitz deposition attached hereto as Exhibit 4.

In January 2005, Dr. Geitz referred Larry Grove to Dr. Eugene Chang. Dr. Chang operated on March 8, 2005. See Exhibit 3. He noted:

> **PREOPERATIVE DIAGNOSIS:** Right ankle anterolateral soft tissue impingement and synovitis.
>
> **POSTOPERATIVE DIAGNOSIS:** Right ankle anterolateral soft tissue impingement and synovitis.
>
> **PROCEDURE:** Right ankle anthroscopy with soft tissue debridement, extensive, and chondroplasty. …
> **FINDINGS:** 1) Heavy soft tissue overgrowth to anterolateral gutter with anterolateral synovitis; 2) Grade 2/3 chondromalacia, lateral ridge of the talus.
> …
> Evaluation into the capsule joint showed that there was a tremendous amount of soft tissue in the anterior capsule encroaching into the anterior part of the ankle joint from medial to lateral. … The anterolateral gutter and anterolateral corner was completely obliterated by excessive overgrowth of soft tissue and scar. A extensive amount of time had to be spent on using an additional accessory port anterolaterally to shave out this anterolateral soft tissue. … With the ankle plantar flexed, I was able to appreciate the cartilage damage from his previous ankle trauma. Grade 2/3

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

>           chondromalacia was seen in the mid portion of his
>           talus laterally.
>
>           …

See also Dr. Chang Deposition excerpts attached hereto as

Exhibit 5.[3]

It is also premature for the defendant to be raising this

issue at this time, since the issue itself for the court would

be one to be raised in a motion for directed verdict after the

presentation of the evidence before the jury.  Beyond

presenting no evidence to this court for it to make the

threshold determination, the defendant simply resorts to

submitting a merit-less motion on the issue of non-economic

damages.  The plaintiffs respectfully request that the motion

to limit non-economic damages to $400,000 be denied, and that

the court consider the evidence presented at trial before

making any such threshold determination on either severe

permanent physical impairment or severe disfigurement.

B.   <u>Mitigation of Damages</u>

The defendant seeks a ruling from this court that Larry

Grove had a duty to mitigate his damages.  See defendant's

Memorandum in Support of Motion for Rule of Law, pg. 12-13.

Whether or not there is even an issue as to mitigation or

damages has not been determined, and cannot be determined

---

[3] Dr. Chang noted that Larry Grove's surgery should only take 5
minutes; however, it took 45 minutes due to the extensive
damages.  See Exhibit 5.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

through the briefing that has been presented by defendant.

Even in the cases cited by defendant it is noted that the

burden of proof is on the defendant on any issue of mitigation

of damages.  See University of Alaska v. Chauvin, 521 P.2d 1234

(Alaska 1974).  That case made it clear that the burden of

proof was on the defendant to prove that there was suitable

alternative employment available in a case in which defendant

was claiming that the plaintiff had failed to accept other

employment.  The trial court had found in that case that the

defendant had failed to show that there was the existence of

alternative employment consistent with the plaintiff's

qualifications and training.  The Alaska Supreme Court held:

> When it became clear to Chauvin that the University
> would not reconvene its committee, he became
> obligated to accept suitable alternative employment,
> even with the University, if it did not involve
> embarrassment or hardship, in order to mitigate his
> damages.  But the burden of proof on this matter was
> on the University.  It must show both that there was
> suitable alternative employment available and that
> Chauvin failed to make reasonable efforts to obtain
> it.  The University's showing was for the most part
> restricted to the positions offered Chauvin at a time
> when acceptance would compromise his claim.  Although
> there was evidence that one of the University's job
> offers may have remained open for some time after the
> University had definitely terminated, Chauvin, we
> cannot say that the trial court's finding that the
> University failed to carry its burden of proving the
> availability of suitable alternative employment was
> clearly erroneous.

Id. at 1240; emphasis added.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Accordingly, to simply state the obvious, that under the law there is a duty to mitigate, does not aid to court in determining whether in this case an actual duty to mitigate instruction should be given, and what the contours of said instruction shall be.  That is in part determined on the basis of the evidence that is brought forth and on whether the defendant meets the burden of proof on the issue to even make it a jury issue.

C.  <u>Sarah Grove's Consortium Claim</u>

Defendant acknowledges that under <u>Hibpshman vs. Prudue Bay Supply, Inc.</u>, 734 P.2d 991 (Alaska 1987)that the Alaska Supreme Court established the right of a minor child to bring an independent loss of consortium claim based on the injuries of a parent.  In that case, the Alaska Supreme Court recognized the child's cause of action based on loss of parental consortium even though a majority of the courts had refused to recognize the child's cause of action based on loss of parental consortium even though a majority of the courts had refused to recognize such a cause of action.  "<u>In the past we have not hesitated to adopt novel common law theories concerning injuries to family members</u>."  Id. at 993 (emphasis added).  In this case, defendant claims that although Sarah Grove has a viable claim, that when she reached 18, any losses that she suffered as a result of the injury to her father are no longer

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

compensable.  In another case the undersigned counsel has briefed to the Alaska Supreme Court and is presently on appeal, the appellant has argued that non-pecuniary damages due to deaths of the minor children killed in an accident cease when those children would have reached age 18 citing AS 09.15.010. See <u>Sowinski v. Walker</u>, Supreme Court No. S12114/12203.

AS 09.15.010 allows a parent to file a claim on behalf of a child that is under 18.  The statute could have limited the damages that any such child would recover or any losses due to the injuries or death of a child in an appropriate case could be recovered up until the time the child would have reached the age of majority.  The statute did not do so and thus, there is no basis for claiming that as long as the claim has been brought appropriately under the statute that the damages are only limited to the age in which they would have been the age of majority.  Similarly, in this case, the defendant makes a broad assertion that the case of <u>Truesdell v. Halliburton Company, Inc.</u>, 754 P.2d 236 (Alaska 1988) which noted that a child has until two years after obtaining the age of majority to file a claim somehow supports defendant's position that Sarah Grove cannot recover losses after the attainment of the age of majority.  This argument based on <u>Truesdell</u> is the same argument that is made based on the statute AS 09.15.010 and is equally without merit.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The defendant is taking a procedural device, which sets out a statute of limitation for filing of claim and expanding that into a substantive denial of relief past a certain date. There is nothing in Truesdell or in the statute cited above that limits the damages recoverable by children until they reach the age of majority.

Furthermore, the defense counsel in this case is well aware that in other instances the Alaska Superior Court has determined that adult children can recover non-pecuniary damages for injuries or death for the death of a parent. See Dillingham Air Crash Litigation, Case No. 3DI-03-112 CI [4].

Defense has cited no cases that directly support its position. Before such an issue of such serious matter should be even considered by this Court, the defendant should come forth with substantial briefing on the issue after which the plaintiff would then have an opportunity to respond. Defendants have basically failed to cite any authority to support their position. As the Court recognized in Hibpshman, there was a claim for loss of consortium by a child.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[4] In that case Leena Matson died in a plan crash and left behind seven adult children. The Court found that all of the adult children could have a claim for loss of consortium. Defense counsel in this case was defense counsel in that case.

The age of majority is not a magical severing of the emotional bond and attachment that is formed between parents and their children.

The recognition of consortium claims has extended to parents' claims for loss of a child's consortium. <u>United States v. Dempsey</u>, 635 So.2d 961 (Fla. 1994); <u>Gallimore v. Children's Hospital Medical Center</u>, 617 N.E.2d 1052 (Ohio 1993); <u>Boucher v. Dixie Medical Center</u>, 850 P.2d 1179, 1183 n.27 (Utah 1992). This trend has continued by allowing consortium for the death or injury of an adult child.

In <u>Howard Frank, M.D., P.C. v. Superior Court</u>, 722 P.2d 955 (Ariz. 1986), the court recognized a parental claim for loss of consortium of an <u>adult child</u> who had suffered severe brain damage due to the negligent administration of anesthesia during surgery. Arizona had previously recognized consortium when the injury was to a minor child. <u>Reuben v. Ely</u>, 705 P.2d 1360 (Ariz.App. 1985).

In <u>Howard Frank</u>, <u>supra</u>, 722 P.2d at 956, the court stated:

> In both *Reuben v. Ely* and the present case the defendants raised a host of policy arguments against recognizing claims for loss of filial consortium. . . . <u>[T]he arguments against compensating family members for loss of consortium were lost not today, or in *Reuben*, but during the past two decades</u>. [Footnote omitted; emphasis added.]

The court in <u>Reuben</u> and <u>Howard Frank</u> rejected the same argument rejected by the Alaska Supreme Court in <u>Hibpshman</u>.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

<u>Howard Frank rejected the view that children had worth only for pecuniary services up until the age of majority</u>:

> The most salient legal argument against
> extending the filial consortium action to adult
> children is the fact that emancipation frees parents
> and children from the reciprocal legal obligations of
> support and obedience.  It is argued that parents
> have some form of legal entitlement to the services
> and earnings of their children during their
> children's minority, loss of which is compensable,
> but that accession to majority expunges this
> entitlement and the concomitant right to recovery for
> injury to the children.  <u>However, we believe that
> this argument against extension of a filial
> consortium action to adults is premised upon an
> archaic and outmoded pecuniary theory of parental
> rights and fundamentally misapprehends the modern
> elements of consortium.  Accordingly, we are
> convinced that the cause of action first recognized
> in *Reuben v. Ely* should be extended to adult
> children</u>.

>             *    *    *

> In striking contrast to the significant changes
> in spousal consortium actions, however, filial
> consortium actions continue to be haunted by the
> common law master-servant heritage despite parallel
> changes in social status and the death of the
> economic-services rationale.  Even those states which
> recognize the parents' action for loss of filial
> consortium of their injured children restrict the
> action to minor children.  Why they do so is
> puzzling, since <u>the common law master-servant analogy
> is clearly antiquated and long overdue for judicial
> burial.  We do not believe that an age distinction is
> justified.  The demise of the pecuniary services
> theory of consortium and subsequent emergence of
> companionship and society as the primary components
> of the action has vitiated the legitimacy of any age
> distinction in filial consortium actions</u>.

>             *    *    *

> It is irrelevant that parents are not entitled to the
> services of their adult children; they continue to
> enjoy a legitimate and protectible expectation of
> consortium beyond majority arising from the very
> bonds of the family relationship.  Surely nature
> recoils from the suggestion that the society,
> companionship and love which compose filial
> consortium automatically fade upon emancipation;
> while common sense and experience teach that the
> elements of consortium can never be commanded against
> a child's will at any age.  The filial relationship,
> admittedly intangible, is ill-defined by reference to
> the ages of the parties and ill-served by arbitrary
> age distinctions.  Some filial relationships will be
> blessed with mutual caring and love from infancy
> through death while others will always be bereft of
> those qualities.  <u>Therefore, to suggest as a matter
> of law that compensable consortium begins at birth
> and ends at age eighteen is illogical and
> inconsistent with common sense and experience.  Human
> relationships cannot and should not be so neatly
> boxed.  "The law does not fly in the face of nature,
> but rather acts in harmony with it."</u>  *Harper v.
> Tipple*, 21 Ariz. 41, 44, 184 P.1005, 1006 (1919)
> (citation omitted).

<u>Id.</u> at 959-960 (emphasis added).

In <u>Masaki v. General Motors Corp</u>., 780 P.2d 566 (Haw. 1989), the court recognized a consortium claim by parents of an <u>adult child</u> who had been rendered a quadriplegic in an accident, following the decision in <u>Howard Frank</u>.  <u>See also</u> <u>Harbeson v. Parker Davis, Inc.</u>, 656 P.2d 483 (Wash. 1983).

In <u>Sawyer v. Claar</u>, 766 P.2d 792 (Idaho App. 1988), the court stated, "[I]n recent years, the courts increasingly have held that an emotional loss caused by the death or serious injury of an adult child is no less crippling or compensable than if the child had been a minor." (<u>Id.</u> at 796.)  The court also adopted the following criteria for the loss of consortium

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

of an adult child in making an award:  (1) the relationship between the parent and child; (2) the living arrangements; (3) the absence or lack of absence of the child from the parent for extended periods; (4) the harmony of family relations; and (5) human interests and activities.  Id. at 797.

While these cases do not deal directly with the specific issue before this Court, neither does the defense cite any case law to support its position on substantive matter.

A complaint was filed on behalf of Sarah Grove well before she turned 18 while she was a minor and the effect of that injury to her father on the relationship between herself and her father on the family dynamics do not cease when she reached the age of majority.  Accordingly, the motion on this point is without merit, unsupported factually or legally and therefore should be denied.

In the event that the Court deems that the issue is one that should be addressed later, it is also premature insofar as the necessity of even raising this issue now should await a trial and determination of trial.  The Court can simply do the same thing that was done in the case of Walker et. al. vs. Bingham/Sowinski et. al., Case No. Case No. 3PA-97-1096 CI, 3PA-98-370 CI, 3PA-98-557 CI, 3PA-98-573 CI, (consolidated), in which the trial court simply divided the damages sustained by the family of the deceased child for loss of consortium from

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the date before he would have attained the age of majority and

the date afterwards, leaving that issue to be raised by the

defendant in the appellant court.  In this case, we will not

even know if we have an issue until a jury verdict and

regardless of the Court's decision in this case the damages for

post majority age by Sarah Grove should be allowed to go to the

jury so that a new trial will not be necessary, if plaintiffs

prevail in the appellate court.

D.   The Defendant Seeks to Apply the Collateral  Source
Rule Under As 09.17.070 to the Plaintiffs' Damages
Recovered in This Matter.

AS 09.17.070 is the Alaska Statue regarding the

application of what is called Collateral Source Rule.  The

statue itself makes clear that this issue only presents itself

after the close of trial and after the court has awarded costs

and attorney fees.  Only then may a defendant introduce

evidence of alleged collateral sources to offset the damages

recovered by the plaintiff.

It is also made clear under AS 09.17.070 (b) if the

defendant elects to introduce such evidence the claimant can

introduce evidence of the attorney fees incurred and the amount

that the plaintiff has paid or contributed to secure the right

to the issuance of the benefit introduced by the defendants as

evidence.  In other words, the attempt to offset by the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

defendant itself would be subject to an offset.  In this case, the defendant has introduced some documents regarding a national pension disability fund that is being received by Mr. Grove.  Even if this benefit is applicable, the contributions that have been made by Mr. Grove to secure this benefit as well as any competing contribution made by his employer as part of his benefit package would need to be computed and determined to off set any such deduction that the defendant is seeking in this case.

The defendant has attached as Exhibit A and B to its motion certain documents regarding a national pension disability benefits received by Mr. Grove.  It is unclear if this is the extent of any claimed collateral source or if the defendants are claiming other sources or collateral sources in this matter.  In regard to collateral sources, it has to be established that the collateral source is a payment arising out of the same injury for which the claimant, in this case Mr. Grove, is recovering benefits before such can even be considered a collateral source under AS 09.17.070.

Furthermore, to the extent that the defendant makes gratuitous unsubstantiated remarks such as footnote four, at page four of its memorandum alleging that Mr. Grove will receive all of his pension despite the monthly reduction for early retirement since he will receive his pension over a

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

longer period of time, disregards the losses that Mr. Grove has actually incurred, including the loss of continued accruement of benefits if he was able to work for many more years.  In addition, the fact that Mr. Grove is taking his benefits over a longer period of time means he is getting a lower amount monthly, and after the date in which he would have been his normal retirement age his benefits will continue at this lower number.  In other words, if Mr. Grove had been able to work until his retirement, work at the job that he had and loved, he could have earned significant sums he was making until retirement and then has a much higher benefit after the age of retirement.  Thus, the losses that Mr. Grove had incurred will continue up until the end of his life.  The claims by the defendant that he has basically suffered no loss in damages, is again, another unsubstantiated allegation, disregarding the significant losses that Mr. Grove has incurred.

In any event, as a <u>general</u> rule, the plaintiff agrees that certain sources in appropriate circumstances may be considered collateral sources but to state the rule is just simply to state the obvious and that is what the defendant has done here. The real issue is actually, at this point, premature to even be considered by the Court and is dependent on what evidence is actually presented after trial and after a verdict in favor of the plaintiffs. That is, the defendant will then at that point

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

have to come forth with the total benefits that they are

claiming are collateral sources and then the plaintiff will be

able to offset this cannot be determined until after the trial

in this matter as to the exact amount of any such offset which

includes the attorney fees incurred by the plaintiffs.

Thus, in regard to any attempt to apportion a pension

received by Mr. Grove whether or not there will be actually any

offset is not even something the Court can determine at this

point.  Simply attaching two documents from the national

pension board does not indicate whether this should be properly

considered a collateral source subject to deduction.

The plaintiffs respectfully request that the Court

withhold any judgment on this matter until after trial and in

accordance with AS 09.17.070.

E.    Punitive Damages

The defendant finally has argued that punitive damages

should be offset by 50% pursuant to AS 09.17.020.  Defendant

even cites a case by the Alaska Supreme Court upholding AS

09.17.020.[5]  Even if there is a 50% reduction if applicable,

that will not be to the benefit of the defendant and instead it

will simply be a deduction to be determined after an award of

punitive damages.  That 50% reduction would then go to the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[5] The constitutionality of the statute is still an open question.
Several grounds were not considered by the Alaska Supreme
Court, and plaintiffs do not waive any such challenge.

State of Alaska if that is the state of the law at the time of the ultimate determination in this case. [6]

One challenge to AS 09.17.020 has been turned back in Reust vs. Alaska Petroleum Contractors, Inc., 127 P.3d 807 (Alaska 2005). That is not the only basis or challenge to the Court and to the extent that there are issues regarding the constitutionality of the statute and/or the applicability to this case that is a matter that is premature to be addressed at this point and should be taken up if and when it becomes relevant to these proceedings. Accordingly, the plaintiffs respectfully request that the court withhold any determination as to the law.

RESPECTFULLY SUBMITTED this 18th day of January 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs

        /s/ Michael Cohn
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail: nbackes@weidnerjustice.com
ABA No. 8506049

*CERTIFICATE OF SERVICE*

---

[6] In fact, it is not even clear whether or not the defendant has the standing to make the claim that 50% of the fee awarded should go to the State of Alaska, as that would not benefit the defendant. It is the State of Alaska that interceded in the Reust case on its own behalf.

I hereby certify that on January 18, 2007 a copy of the foregoing Opposition to Rule Motion for Rule of Law was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.  /s/ Michael Cohn

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571