John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>  Plaintiffs,<br><br>  vs.<br><br>UNOCAL CORPORATION,<br><br>  Defendant. | Case No. 3:04-cv-0096-TMB |

**REPLY TO OPPOSITION TO MOTION TO COMPEL PRODUCTION**

Plaintiff Larry Grove has failed to answer or produce discovery regarding his paid status as a "corporate officer" and President of six adult oriented businesses in Pennsylvania. Incredibly, Larry Grove stated that he did not know the particulars of the operations. Research has revealed that the "true" owner, and one of the six companies, has in the past been indicted for money laundering and mailing non-mailable, obscene matter. The same company was sold in 2004 for an

undisclosed amount of money.[1]  Defendant Unocal Corporation needs more information about the six companies, the proceeds of the sale, and Mr. Grove's involvement with the companies prior to entering into settlement discussions with Larry Grove and his family.

## I. Other Sources of Income and Potential Association with "Sham Corporations" Is Relevant Discovery.

Unocal has searched diligently for other sources of income for Mr. Grove.  In its efforts, it subpoenaed Mr. Grove's bank records and received them February 23, 2007.  See Ex. 1 to Unocal's motion to compel production.  Buried in those records were checks from the six companies that stated they were payments for "corporate officer fees."  *Id*.  Suspiciously, the checks were made payable to Larry Grove and were also signed by Larry Grove, all on different bank accounts.  All tolled, there were ten (10) separate checks for $250 each, totaling $2500.  At the time the checks were found among Mr. Grove's bank records, Unocal had not had any prior notice that Mr. Grove might have developed an alternative source of income.

Mr. Grove did not disclose the six companies or his ten payments there from in his initial disclosures.

Mr. Grove did not disclose the income to his economic expert who would have factored the money into his calculation of damages.

---

[1] This is new information discovered since the original motion to compel production was filed last week.  It was discovered only after Mr. Grove finally disclosed one of the owner's names.

REPLY TO OPPOSITION TO MOTION TO COMPEL PRODUCTION
*Grove v. Unocal*  3:04-cv-0096-TMB                                                                    Page 2 of 10

Mr. Grove did not disclose his travel on behalf of the companies to Unocal, when asked for travel outside the state in an interrogatory. See Ex. 5 attached to Unocal's motion to compel production.

Mr. Grove has not declared the income from the companies on his IRS tax returns. It is unknown if there is other money from the six companies that was not declared.

Unocal has not had any notice of the very existence of these companies or Mr. Grove's association and compensation there from until Unocal discovered the checks in the bank records last month.

Since its discovery, Unocal has attempted to work directly with Plaintiff in discovering the facts underlying Mr. Grove's association and compensation from these companies. See Ex. 2 attached to Unocal's motion to compel production. The request was ignored completely until the status conference on March 19, 2007, when the court ordered the parties to work on discovery issues.

In response to the court's order, Mr. Grove gave a minimal and misleading answer to the questions posed about the six companies. The motion to compel production was then filed, as the court authorized at the status conference.

In response to the motion, Mr. Grove sent another letter to Unocal disclosing just a little more. This time he disclosed that the companies are owned by "Phillip Krasner"[2] who lives in Allentown, Pennsylvania and in Florida. Letter dated March

---

[2] In his opposition, Plaintiff stated that the "true owner" wished to remain anonymous. Unocal finds this request suspicious.

23, 2007, attached hereto as Exhibit. 1.  In the letter, Mr. Grove refused to obtain any documents from the companies even though he is the corporate president.

In researching the name of the owner of the companies, Unocal immediately found that Phillip Krasner sold two of the six companies in 2004.  See Article dated January 1, 2005, entitled "New Machine Buys Puritan Lock, Stock and Smokin' Series", attached hereto as Exhibit 2.  The article states that Puritan International, a "very hard core print magazine with various forays into video production," was sold in 2004.  Mr. Grove clearly did not disclose the sale of two of his companies when asked.  Whether Mr. Grove received any money from the sale of Puritan International is certainly relevant to "other sources of income".  Plaintiffs named Krasner as "an owner", so it is unknown if Mr. Krasner is the only owner.

The business of the remaining companies that Mr. Grove received corporate officer fees is still unknown.  The article, however, stated that Mr. Krasner was "not totally leaving the industry, [and] decided he wanted his company to take a different direction."  See Exhibit 2, page 2.  Therefore, the remaining four companies may be the "new direction" that Mr. Krasner is going in.

Plaintiff also disclosed that Mr. Krasner lives in both Pennsylvania and Florida.  Mr. Grove has only declared that he flew to Pennsylvania on company business.  It is unknown if Mr. Grove also flew to Florida for the same purpose and simply has not declared the trips.  As stated in the motion, Unocal asked Mr. Grove about any trips outside Alaska and in December 2005, Mr. Grove only claimed he had been to a few funerals.  The business trips are relevant to "other income" and to Mr. Grove's level of activity after the injury.

Mr. Grove did not disclose that he was president of six companies that he "signed papers" for. As President, Mr. Grove has access to the paperwork of the company. He refuses to produce or have produced any company paperwork.[3]

Mr. Grove has stated that he does not have access to any of the money associated with the companies. However, his signature appears on the signed checks on the company's bank accounts. See Ex. 1 to motion to compel production. Therefore, as a signatory, Mr. Grove certainly has access to the accounts. How often he accesses the money from the companies and what he uses the money for is relevant to "other income" and a necessary piece of information before mediation.

Now that Unocal finally knows the name of an owner, Philip Krasner, Unocal was able to research Westlaw regarding the ownership. Philip Krasner was indicted in federal district court in Pennsylvania. According to *U.S. v. Krasner,* 841 F.Supp. 649 (M.D.Pa. 1993):

> Defendant Philip J. Krasner (Krasner) created a series of corporations which distributed obscene materials. As the "beneficial owner of the companies," he oversaw the production, distribution and reaped the financial windfalls of an empire which marketed obscene materials throughout the United States. In furtherance of his scheme, he created <u>a series of sham corporations</u>, with both fictional and unwitting nonfictional directors, <u>who invested and hid the proceeds of his illegal business</u>. He also used the alias "P.J. Craig" to further conceal the workings of his obscenity ventures.

---

[3] Plaintiffs allege that Unocal could hire a private investigator to obtain the discovery needed on the six companies. The information sought is within Mr. Grove's custody or control and Unocal should not be required to hire a private investigator to search out the information readily available to Mr. Grove. Further, the use of a federal subpoena is unwieldy and takes time and money. Unocal should not be required to use this method either.

> As noted, there were several corporations involved in the scheme. Index Publishing, Ltd., published <u>Puritan International, one of the magazines alleged to be obscene.</u> Pure Images, Inc., Stage III, Inc., and Graphic Distributors, Inc. distributed sexually explicit magazines and videotapes through advertising efforts in Puritan.

Emphasis added, *Id.* at 653.

One of the indicted companies was Puritan International, which Mr. Grove is the president of and from which he received money. See checks attached as Ex. 1 to motion to compel production. Different scenarios that could be highly relevant to mediation efforts are: 1) Mr. Grove is an investor in a company that was indicted; 2) As President, Mr. Grove runs what may be an indicted company; or 3) Mr. Grove is helping to hide proceeds of an illegal business. Any one of those scenarios would be information highly relevant to his damages case and to the settlement.

Mr. Grove states in his pleadings that the amount of money he has received and the character of the company is "irrelevant" to any issue in this case. His characterization is incorrect. Mr. Grove's ability to earn income from the six companies he receives checks from as President is certainly relevant. Whether Mr. Grove is capable of performing alternative employment or has received payments from the companies is very relevant.

Plaintiff states that he answered all the questions posed. However, that is incorrect. Plaintiff told Unocal "just enough" without disclosing the full facts: who owned the company, how much he is paid, whether there are subsidiary or parent

companies,[4] what his duties as President consist of,[5] whether he accesses the money in the business accounts for which he is a signatory, how many times he has traveled to Pennsylvania or elsewhere on "business," whether he holds any adult business licenses, etc.

Mediation is only one week away. Full disclosure of the companies is imperative before Unocal can determine Mr. Grove's true damages. Unocal requests that its motion to compel production be granted.

## II. Plaintiff's Attack on Unocal Is Irrelevant to the Discovery Issue Before the Court.

Each time a discovery issue is raised by Unocal, Mr. Grove immediately counters and defends with his own perceived discovery grievances.[6] The current attack is not warranted and is irrelevant to whether Mr. Grove must produce information about the six pornography distribution companies.

Plaintiffs continually claim that they did not receive information on the construction of the work platform and safety records. Plaintiffs know the lengths that Unocal has gone to in order to try and find any documentation related to the

---

[4] *U.S. v. Krasner*, 841 F.Supp. 649, stated that Index publishing Ltd., published the obscene magazine owned by Puritan International. There may still be parent or subsidiary companies involved.

[5] Mr. Grove claims he is just a "figurehead" President. As President, he is presumably on the board of directors, and owes a fiduciary duty to the company. If one of the companies is indicted again, it is unlikely that the prosecutor will allow the president of the company to escape prosecution with a plea of "I don't know what my company does."

[6] The court invited each party to informally discuss and resolve discovery issues and to re-file a motion to compel production if necessary for mediation. Plaintiffs did not request any production prior to mediation and have not filed their own motion to compel.

REPLY TO OPPOSITION TO MOTION TO COMPEL PRODUCTION
*Grove v. Unocal* 3:04-cv-0096-TMB                                                                 Page 7 of 10

discovery asked for. Plaintiffs know that the documents they seek probably do not exist.[7] Unocal has not been able to locate the documents that Plaintiffs insist must exist. In attempting to find and produce relevant documents, Unocal went to the effort of issuing records subpoenas for companies that worked inside the Unocal building prior to Grove's employer. The records subpoenas requested the same documents that Plaintiffs wanted from Unocal. The companies produced their paperwork and nothing relevant was found. Additionally, Unocal deposed former contract employees who worked inside the Unocal building prior to Mr. Grove.

Plaintiffs have pursued their own discovery as well. They have deposed Unocal witnesses and former contractors. Plaintiffs have talked to former Unocal employees. No one has been able to determine when the platform was built, why it was built, or who built it. There is no basis upon which to believe documents exist that have not been produced.

Plaintiffs frequently use the refrain of perceived discovery grievances as a defense in court pleadings. The argument is irrelevant to the current motion to compel. Further, Plaintiffs should not be allowed to escape their discovery obligations simply because they believe that they were not given all documents that they think should exist. The argument is a "red herring" and should be dismissed.

### III. Conclusion

The motion to compel production should be granted. Plaintiff Larry Grove should be required to answer the following questions honestly and produce records

---

[7] The Unocal safety employee who said he performed safety inspections inside the building prior to the alleged injury did not keep a copy of his own report and the report

which, as President of the six companies, are within his custody or control, and further his answers should be required before the mediation set for April 4, 2007:

    (1)  Disclose the names of all owners of the six Pennsylvania companies for which Lawrence Grove is a corporate officer and/or President;

    (2)  Disclose the primary business of each individual company;

    (3)  Disclose what Mr. Grove's specific job duties are for each company;

    (4)  Disclose whether the companies are subsidiaries of other companies or own any other company;

    (5)  Disclose the physical location of each company;

    (6)  Disclose the dates, purpose, activities, and other particulars of Mr. Grove's travel to Pennsylvania or any other location for business purposes;

    (7)  Produce copies of the corporate papers Mr. Grove signs;

    (8)  Disclose how much money Mr. Grove was paid pursuant to the sale of one or more of the companies;

    (9)  Disclose whether any of the companies is still under indictment;

    (10)  Disclose Mr. Grove's access to the monies of the companies, where the money comes from, and what he uses the money for;

    (11)  Whether Mr. Grove holds any adult oriented business licenses;

    (12)  Disclose whether any of Mr. Grove's business associates, owners, partners, or employees of the six companies have visited him in Alaska for any purpose, stayed at his Talkeetna, Alaska cabin, and/or hunted or fished with him; and

    (13)  Disclose whether Mr. Grove has attended any seminars, conferences, conventions, or business meetings related to any of the six companies, including the dates, locations, purposes, and amounts of any expenses or remunerations paid.

cannot be located. There is no reason to believe that he is not truthful.

DATED at Anchorage, Alaska, this __27th__ day of March 2007.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal

s/ Linda J. Johnson
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9631
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar No. 8911070

Certificate of Service

I hereby certify that on March 27, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

s/ Linda J. Johnson