Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE, )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:04-cv-0096-TMB |
| Plaintiffs, ) | |
| vs. ) | |
| UNOCAL CORPORATION, )<br>)<br>Defendant. ) | |

**PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

### I.    Introduction/Background

COME NOW plaintiffs Larry Grove, Cynthia Grove, and children Sarah Grove and Michael Grove, by and through counsel, Phillip Paul Weidner of Phillip Paul Weidner & Associates, Inc., and hereby moves this court for an entry of in limine orders regarding the conduct of trial, and to exclude and limit certain

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

items of evidence which plaintiffs anticipate may be proffered in the upcoming trial.

Plaintiff Larry Grove and his family are pursuing claims for physical injuries and other damages arising out of an accident on September 9, 2002 when a work platform at the Unocal building collapsed while he was there on a service call as an employee of Siemens Building Technology, Inc., (Siemens), resulting in serious permanent ankle injuries and disfigurement. See photographs of Larry Grove's leg taken after the accident attached as Exhibit 1 to the Affidavit of Michael Cohn supporting this Motion.[1]

Plaintiff Larry Grove sustained serious permanent ankle injuries, which has left him unable to do the work he did his whole life, and 30%-40% impairment of his right ankle (he has been rated at 8% permanent impairment for the whole person). He has had two ankle surgeries, and faces the prospect of continuing deterioration of his ankle (Dr. Chang has indicated the more that Larry Grove uses his ankle, the more likely his ankle will deteriorate, with further loss of function, increased arthritis and pain, wearing out of the ankle joint, leaving him with greater disability as he ages). See Operative Report of

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] All exhibits are attached to the Affidavit of Michael Cohn supporting this Motion.

Dr. Geitz attached hereto as Exhibit 2 and Operative Report of

Dr. Michael Chang, attached hereto as Exhibit 3.

Dr. Geitz operated on May 20, 2003.  The Operative

Report by Dr. Geitz states:

> PREOPERATIVE DIAGNOSES
> 1.   Chronic lateral ligament laxity, right ankle.
> 2.   Osteochondral fracture and loose body lateral talus, right ankle.
> 3.   Chronic posterior tibial tendonitis and adhesions, right ankle.
>
> POSTOPERATIVE DIAGNOSES
> 1.   Chronic lateral ligament laxity, right ankle.
> 2.   Osteochondral fracture and loose body lateral talus, right ankle.
> 3.   Chronic posterior tibial tendonitis and adhesions, right ankle.
>
> OPERATIONS PERFORMED
> 1.   Repair lateral collateral ligament, right ankle.
> 2.   Arthrotomy debridements, curettage and drilling of osteochondral defect, lateral talus with joint exploration.
> 3.   Tenolysis and debridement posterior tibial tendon, right ankle.
>
> INTRAOPERATIVE FINDINGS:  This patient fell from a scaffold in a 9/2002 and had persistent lateral instability, joint swelling and posterior tibial tendonitis despite many months of nonoperative management.
>
> His intraoperative findings correlated exactly with his clinical findings, his x-rays and his MRI scan.  The ATFL lateral ligament was very lax and attenuated.  The calcaneal fibular ligament was intact and tight.  There was a large chondral defect on the lateral talar articular surface as seen on plain x-ray and the MRI scan.  This chondral piece was 8 x 16 mm in size, it was loose and avascular.  The bony bed was sclerotic.  The

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

remainder of the joint surface and the medial
corner looked fine.  There was no opposing lesion
on the tibial side of the talus lesion.
     The posterior tibial tendon was chronically
inflamed.  The sheath was hypertrophied and
adherent behind the medial malleolus and there was
fusiform swelling with some longitudinal cracks in
the posterior.

Exhibit 2.


    In January 2005, Dr. Geitz referred Larry Grove to Dr.

Eugene Chang.  Dr. Chang operated on March 8, 2005.  See

Exhibit 3.  He noted:

> **PREOPERATIVE DIAGNOSIS:**  Right ankle anterolateral
> soft tissue impingement and synovitis.
>
> **POSTOPERATIVE DIAGNOSIS:**  Right ankle
> anterolateral soft tissue impingement and
> synovitis.
>
> **PROCEDURE:**  Right ankle anthroscopy with soft
> tissue debridement, extensive, and chondroplasty.
> …
> **FINDINGS:**  1) Heavy soft tissue overgrowth to
> anterolateral gutter with anterolateral synovitis;
> 2) Grade 2/3 chondromalacia, lateral ridge of the
> talus.
> …
> Evaluation into the capsule joint showed that
> there was a tremendous amount of soft tissue in
> the anterior capsule encroaching into the anterior
> part of the ankle joint from medial to lateral.  …
> The anterolateral gutter and anterolateral corner
> was completely obliterated by excessive overgrowth
> of soft tissue and scar.  A extensive amount of
> time had to be spent on using an additional
> accessory port anterolaterally to shave out this
> anterolateral soft tissue.  … With the ankle
> plantar flexed, I was able to appreciate the
> cartilage damage from his previous ankle trauma.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Grade 2/3 chondromalacia was seen in the mid portion of his talus laterally.[2]

None of the doctors who have evaluated the injuries of Larry Grove say that he can go back to work as a pipe fitter/heating air conditioning ventilation specialist, the work he has done for approximately 30 years.

He has suffered a tremendous loss in benefits as a member of the Pipefitters Union, and taken an early retirement.

Siemens Building Technologies, Inc. has stated there is no work for Larry Grove.  Unocal discovery numbers 200282; 200347; 200218; and 200231. (See Exhibit 4)

The history of Mr. Grove's ankle injuries and surgeries is important in assessing plaintiffs' motion in limine, as Unocal's counsel has gone on a wide ranging intrusion into the Grove family.  These include the following.  Larry Grove has been subjected to repeated secret surveillance, as if he did not have serious ankle injuries and two surgeries. Defense counsel has intruded on the personal life of Sarah Grove, the daughter of Larry Grove, including downloading her on-line diary, which pertains overwhelmingly to private personal chats/thoughts about/to friends, leaving her

---

[2] Dr. Chang noted that Larry Grove's surgery should only take 5 minutes; however, it took 45 minutes due to the extensive damages.

feeling embarrassed and violated. The defense has compiled irrelevant, immaterial and prejudicial information about Larry Grove and his family. The defense has refused to answer discovery, refused to sign interrogatory requests, failed to turn over documentation about the work platform/scaffold, failed to turn over documents about safety reviews of the Unocal building, worked in collusion with management of Siemens (Larry Grove's employer who has a worker's compensation lien) to diminish the plaintiffs' claims against Siemens, including, but not limited to, the following:

1.    Defense counsel apparently represents both Siemens and Unocal;

2.    Defense counsel has been given free access to Siemens' employees while plaintiffs' counsel has not been allowed to do so;

3.    Defense counsel has represented itself as Siemens' counsel;

4.    Defense counsel has refused to reveal any indemnity agreement with Siemens;

5.    Defendant/defense counsel is apparently planning to blame Siemens, which has the worker's compensation exclusive remedy bar, and Siemens apparently will assist defendant in this endeavor to reduce Siemens

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

indemnity obligations (still concealed from plaintiffs) to fund the liability of defendant.

There are many separate areas to address in this motion in limine.  Other motions will deal with discovery issues, spoliation of evidence, collusion between Siemens/Unocal, and liability of Unocal for compensatory and punitive damages.

## II.  **Discussion**

Under Federal Rule of Evidence 401, relevant evidence is defined as:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Federal Rule of Evidence Rule 402:

Evidence which is not relevant is not admissible.

Relevancy calls for a two-part determination.  Evidence, in order to be admissible as relevant, must be material and probative.  See McCormick, Law of Evidence § 185, p. 541 (3rd Edition 1984); Poulin v. Zartman, 541 P.2d 251, 260 (Alaska 1975).  Materiality refers to whether the evidence which is offered is germane to any issue which is in dispute in the litigation.  Id.

Evidence that is probative often is said to have "logical relevance," while evidence lacking probative value may be

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

condemned as "remote" or "speculative."  McCormick, <u>Law of Evidence</u>, § 185 at 542.

In <u>Poulin</u>, <u>supra</u>, the court defined the test of relevancy:

> To be of sufficient relevance for admission, testimony, documents or other evidence must have some tendency and reason to establish a proposition material to the case.  <u>Hutchings v. State</u>, 518 P.2d 767, 769 (Alaska 1974). The dual concepts of logical relevance, i.e., some tendency to establish the opening point for which the evidence is offered, and materiality, i.e., germaneness of the ultimate point to issues in the trial, have been emphasized repeatedly in our opinions. <u>Poulin</u>, <u>supra</u>, 542 P.2d at 260.

Thus, much of the "evidence" that Unocal may seek to introduce is irrelevant/inadmissible under Rule 402.  Furthermore, even if the alleged evidence is not irrelevant under Rule 402, the evidence should be excluded because its limited probative value is clearly outweighed by countervailing considerations of prejudice under Federal Rule of Evidence 403.

Federal Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless of presentation of cumulative evidence.

In McCormick, <u>Law of Evidence</u>, § 185, it is stated:

> In sum, relevant evidence is evidence that in some degree advances the inquiry.  It is material and probative.  As such, it is

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

admissible, at least prima facie.  But this
relevance does not assure admissibility.
There remains a question of whether its
value is worth what it costs.  A great deal
of evidence is excluded on the ground that
the cost outweighs the benefit.  Rule 403 of
the federal and revised uniform evidence
rules categorize most of these costs.  It
codifies the common-law power of the judge
to exclude relevant evidence "if its
probative value is substantially outweighed
by the danger of unfair prejudice, confusion
of the issues, or misleading the jury, or by
considerations of undue delay, waste of
time, or needless presentation of cumulative
evidence...."  First, there is the danger of
prejudice.  In this context, prejudice does
not simply mean damage to the opponent's
cause.  Neither does it necessarily mean an
appeal to emotion.  Prejudice can arise,
however, when the facts arouse the jury's
hostility or sympathy for one side without
regard to the probative value of the
evidence....  Second, ...relevant evidence
can confuse, or worse, mislead the trier of
fact....  Third, certain proof and the
answering evidence that it provokes might
unduly distract the jury from the main
issues.  Finally, the evidence offered in
the counterproof may consume an inordinate
amount of time.

Id. at 545-546.

As stated in McCormick, Law of Evidence, § 185, even if
evidence is relevant, "There remains the question of whether its
value is worth what it costs."  Id. at 544.

**1.   Unocal Should be Precluded From any Argument,
Implication, Speculation that Anyone Other than
Unocal Designed, Constructed, Maintained,
Repaired, Authorized, Approved, or Owned the Work
Platform in the Unocal Building that Collapsed,
Injuring Plaintiff Larry Grove**

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

9

In responses to Plaintiffs' First and Second Discovery Requests, defendant Unocal claimed that on information and belief, that the work platform was "owned" by Larry Grove's employer Siemens Building Technologies, Inc., and that Siemens Building Technologies, Inc. erected the work platform. See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71. incorporated herein by reference.    In Plaintiffs' Third Discovery Requests asking Unocal to identify the source of this information and belief, Unocal provided the names of seven people that counsel "conferred" with in providing

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the answers, including Roxanne Sinz, Paul Crapps, Archie Cook and Charles Arnett. Id.  Roxanne Sinz, Paul Crapps, Archie Cook and Charles Arnett were deposed, and all of them had no such knowledge.  The remaining three individuals, Richard Kangail, Eddie Barrett and Dan Akers likewise have no such knowledge. Id.  Management and employees of Siemens Building Technologies, Inc. have no such knowledge.  Furthermore, Unocal's Response to Plaintiffs' 15th Discovery Requests to Unocal Corporation stated as follows:

> **REQUEST FOR PRODUCTION NO. 5:** Please produce any and all documents or evidence that supports any alleged claim that anyone other than Unocal designed, constructed, maintained, repaired, authorized or approved the work platform in the filter room that is the subject of this litigation.
>
> **RESPONSE:** Objection vague, burdensome and overbroad. Unocal has been unable to locate any responsive documents.  If Unocal is able to locate any responsive documents in the future, they will be produced. (Emphasis added).  (See Exhibit 5)

In addition, counsel for defendant demanded that plaintiffs turn over the sheared bolts that plaintiff Larry Grove retrieved from the collapsed work platform, claiming it was property of Unocal.

Furthermore, Unocal knew, and the State OSHA investigation confirmed, that Unocal knew the platform was in existence well before Siemens Building Technologies, Inc. obtained the contract to do the work.  Robert Sprinkle, a Siemens technician, testified the platform was preexisting the contract with

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Siemens.  See deposition of Robert Sprinkle on April 24, 2006 at Pg. 71.  (Exhibit 6).

The platform was <u>affixed</u> to the wall in the Unocal building.  Unocal has asserted control over the remaining hardware.  Unocal <u>asserted</u> control over the platform when Unocal personnel, Roxanne Sinz, building manager, and Ken Burns, safety technician, instructed Paul Crapps to dismantle the platform in May 2003, which he did and then allegedly destroyed, thus exercise of control by Unocal.

There is <u>no evidence</u> that anyone else owned, designed, constructed, maintained, repaired, authorized or approved the platform, and Unocal should be precluded through questions, argument, implications that is so, when it has <u>no</u> evidence, and thus the only purpose would be to confuse the jury over a non-issue.

**2.    Unocal Should be Precluded From any Argument, Implication, Speculation that Larry Grove (a) Faked the Accident; (b) that the Nuts and Bolts Retrieved by Larry Grove are not Part of the Collapsed Platform; and (c) that the Platform was not Defectively Designed/Built or Maintained**

Unocal destroyed the work platform and removed all of the remaining evidence.  See Deposition of Paul Crapps of March 3, 2006 at 33, 36, 37 (Exhibit 7).[3]  The only evidence still in

---

[3] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as*

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

existence are the bolts and nuts retrieved by Larry Grove shortly after the accident.  Charles Arnett testified that he himself saw a sheared bolt immediately after the accident. Charles Arnett Deposition of April 25, 2006 at pg. 97 (Exhibit 8).

As was revealed during the deposition of Paul Crapps, taken on March 3, 2006, the work platform at issue in this case was destroyed by defendant.  Though Mr. Crapps has claimed incredulously that he destroyed the platform in September of 2002 following the accident involving Mr. Grove, in point of fact, the OSHA investigators came out and inspected the platform in March of 2003, and there are records from OSHA that reveal that Mr. Crapps destroyed the platform after consultation with Roxanne Sinz and Ken Burns, Unocal Management, following the OSHA inspection of March 2003.  What is insidious about the destruction of the platform is that at the time the parties were well aware that Mr. Grove had been injured, and that Mr. Grove had initiated the OSHA complaint.  Unocal knew, or reasonably should have known, that Mr. Grove may take further legal action.

Plaintiffs conducted discovery to find out what had happened to the rest of the work platform, including the remaining bolts and hardware, the brackets and the planks, and

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

*Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71.

it was only at the deposition of Mr. Crapps that it was finally revealed that all of this evidence had been destroyed by defendant. It is recognized that it is the inherent power of the Federal Courts to issue whatever sanctions is felt appropriate, including default judgment, or an inference of liability for the destruction of evidence. See <u>Medical Laboratory Management Consultants v. American Broadcasting Company, Inc.</u>, 306 F.3d 806 (9th Cir. 2002). Default judgment can be appropriate when a party destroys evidence that would be discoverable, and the party knew or should have known, that the evidence was relevant to pending, imminent, or reasonably foreseeable litigation. See <u>Gates Rubber Company v. Embardo Chemical Industries</u>, 167 F.R.D. 90, 101 (D.C. Colo. 1996).

Defendant destroyed the work platform and its components, which are crucial evidence in this case. The courts note that preservation of evidence, and availability of same, is essential to the orderly and expeditious disposition of litigation, and that document destruction impedes the litigation process and merits sanctions. <u>In Re: Prudential Insurance Company of AM. Sales, Practices Litigation</u>, 169 F.R.D. 598 (D.C. N.J. 1997). A proper sanction is preclusion of the defense for failure to comply with discovery, <u>Oklahoma Federated Gold and Numismatics v. Blodgett</u>, 24 F.3d 136 (10th Cir. Okla. 1994); <u>Millsap v. McDonald Douglas Corp.</u>, 162 F. Supp.2d 1262 (N.D. Okla. 2001).

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

When there has been bad faith and callous disregard of discovery, default is appropriate. <u>Winters v. Textron, Inc.</u>, 187 F.R.D. 518 (M.B. Pa. 1999). Default is appropriate for delayed and essentially inadequate responses, <u>FDIC v. Daily</u>, 973 F.2d 1525 (10th Cir. 1992). Repeated and inexcusable obstruction amounts to willfulness, and makes default judgment appropriate as a sanction under Rule 37. <u>Wanderer v. Johnson</u>, 910 F.2d 652 (9th Cir. 1990). When a plaintiff submitted false and misleading answers throughout discovery, dismissal was a proper sanction. <u>Archibeque v. Atchison,</u> J. & S.F. Ry 70 F.3d 1172 (10th Cir. 1995). Default is proper for flaunting basic discovery obligations. <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899 (9th Cir. 2002). Failure to submit complete responses supported dismissal as a sanction. <u>Henry v. Gill Industries, Inc.</u>, 983 F.2d 943 (9th Cir. 1993). Furthermore, even if the defendant in this case belatedly complies with discovery, the court is not precluded from default judgment as a sanction under its inherent power. <u>Payne v. Exxon Corporation</u>, 121 F.3d 503 (9th Cir. 1997).

It would be unfair for defendant, having failed to comply with discovery requests, having destroyed the evidence, to argue, imply, speculate and/or ask any questions to any witness in front of the jury that Larry Grove (a) faked the accident; (b) that the nuts and bolts retrieved by Larry Grove are not

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

part of the collapsed platform; and (c) that the platform was not defectively designed/built or maintained.

Defendant should not be permitted to argue, or imply, that perhaps the plaintiff had set up the claim, and that there was no actual collapse, or that it was a prefabricated claim. Comparing the bolts retained by the plaintiffs with the other bolts that have now been destroyed, could have shown that they are not planted bolts, but identical to the bolts that were not sheared off. Furthermore, the other destroyed evidence could have helped in showing the age and wear, tear, lack of maintenance of the platform and the component parts. The ability to prove same has now been hindered because the evidence has been destroyed.

### 3. Unocal Should be Prohibited From Claiming That the Sheared Bolts Retrieved by Larry Grove Did Not Come From the Collapsed Work Platform

Unocal, through its managers and employees, including Roxanne Sinz, Ken Burns, Chuck Pierce and/or Paul Crapps knew that the work platform had been dismantled in March 2003, and subsequently destroyed. Plaintiffs have moved to amend the Complaint adding a claim for spoliation of evidence. In opposition to the Motion to Amend, Unocal claimed there has been no prejudice to plaintiffs' ability to prove liability through the destruction of the work platform. As documented by the plaintiffs in the Rule 37 Motion for Default and Order

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Compelling Discovery, defendant simply refused to provide the information in possession of only defendant's employees as to the whereabouts of the work platform until early 2006.  Paul Crapps, the destroyer of the work platform, testified he did not look at the bolts/nuts he removed from the work platform before discarding.  Paul Crapps deposition at pg. 33.  The bolts/nuts still on the work platform may have been the best evidence to corroborate Larry Grove's contention that the sheared bolts came from the work platform.  Unocal should be prohibited from raising this as an issue in any manner at trial.

### 4.    Unocal Should be Precluded From Claiming Siemens at Fault

Unocal and Siemens have been represented by same counsel. Defense counsel for Unocal sought records, claiming they were counsel for Siemens.  In a letter to St. Paul Travelers Insurance, defense counsel wrote:

> … As I indicated this firm represents Siemen's Building Technologies in a lawsuit that has been file by Lawrence Grove.  The lawsuit is for damages surrounding an injury Lawrence Grove sustained on September 9, 2002.  The attorney for Siemen's is John Thorsness and I am the paralegal assigned to the case.
>
> I am writing to obtain copies of your files relating to the workers compensation claim of Lawrence Grove.  The claim number given to me by Siemen's is 133-CB-AYL2598A.  We would appreciate a copy of all records maintained in the files of St. Paul Travelers Insurance Co. relating to Lawrence Grove.  …

See Exhibit 9; Emphasis added.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

17

Unocal defense counsel represented Siemens in 30(b)(6) deposition of Siemens.  At the 30(b)(6) deposition of Doug Schutte of Siemens, attorney Liam Moran of the law firm of Clapp, Peterson, Van Flein, Tiemessen & Thorsness stated:

> I represent Unocal Corporation <u>and</u> Siemens Building Technologies, Inc.

See Exhibit 10, pg. 4 of the Deposition of Doug Schutte; emphasis added.

Unocal apparently has an indemnity agreement with Siemens (which defense counsel refused to reveal).  Unocal has been given free access to Siemens' records, which were either not disclosed to plaintiffs, and/or requiring plaintiffs' counsel to subpoena records and/or claiming the records needed redaction because of alleged privileged information (which however was made available to Unocal counsel without redaction).  Unocal was allowed to review all Siemens' information before plaintiffs' counsel was provided access to the little that was produced. Unocal has been given free access to Siemens' personnel for extensive "pre-deposition" interviews to find out everything Unocal defense counsel wanted or sought, but plaintiffs' counsel has been denied access to Siemens' employees.  See Affidavit of Michael Cohn, paragraph 12.  In short, though Siemens is Larry Grove's employer, and the employer has a lien as to third party actions when an employee is receiving worker's compensation

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

benefits, Siemens is apparently working closely with Unocal to
defeat plaintiffs' claims.  It is unfair for the same counsel to
represent Unocal and Siemens, and subverting the litigation
process in favor of Unocal while restricting discovery to
plaintiffs.

The price of tainting the litigation process and the
employer Siemens should be as follows:

1.    Having joint representation of Unocal/Siemens, Unocal
should not be permitted to argue, imply or speculate that
Siemens is at fault;

2.    Having failed to reveal any evidence or the history of
the platform and having destroyed the evidence, Unocal
should not be permitted to argue, imply or speculate that
Siemens is at fault;

3.    Having failed to reveal evidence, including the terms
of any agreements between Unocal/Siemens to the prejudice
of plaintiffs, Unocal should not be permitted to argue,
imply or speculate that Siemens is at fault; and

4.    Plaintiffs should be permitted, to the extent that
Siemens management or personnel testify for Unocal, to
impeach/cross-examine/challenge the credibility of said
witnesses by (a) revealing the joint representation of
Unocal/Siemens; (b) the cooperation/collusion between

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Siemens with Unocal; and (c) the financial advantage for Siemens to cooperate with Unocal;

### 5.   Unocal Should be Precluded From Using Alleged Violations (non-criminal Offenses) Over Ten Years Old by Larry Grove and Cynthia Grove of AS 16.05.420 in Any Manner Including But Not Limited to Impeachment/Credibility of Plaintiffs

Unocal may seek to use alleged violations by Larry Grove in 1992 and 1993 and 1994 of AS 16.05.420 and of Cynthia Grove in 1992 of AS 16.05.420 to impeach their credibility.  Federal Rule of Evidence 609(a)(2) allows evidence that any witness who has been convicted of a crime shall be admitted if it involves dishonesty or false statement, regardless of the punishment.  However, under FRE 609(b) if the conviction is more than 10 years old, it is not admissible, unless the probative value of the conviction supported by specific facts and circumstances substantially outweighs its probative effect.

Unocal has apparently run plaintiffs' names through databases and come up with alleged violations of AS 16.05.420 by Larry Grove and Cynthia Grove.  AS 16.05.420 states:

> ***AS 16.05.420. License, Tag, Permit, and Registration Violations.***
> **(a)** A false statement of a material fact in an application for a license, tag, permit, and sport fishing vessel registration issued under AS 16.05.330 – 16.05.430 voids the license, tag, permit, or registration for which the application is made.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> **(b)** A person may not make a false statement, or
> omit a material fact, in an application for a
> license, tag, permit, or sport fishing vessel
> registration issued under AS 16.05.330 -
> 16.05.430. A person who without any culpable
> mental state makes a false statement as to the
> person's identity or residency in an application
> for a license, tag, permit, or sport fishing
> vessel registration issued under AS 16.05.330 -
> 16.05.430 is guilty of a violation and upon
> conviction is punishable by a fine of not more
> than $300. A person who knowingly violates this
> subsection is guilty of a class A misdemeanor.
> **(c)** A person to whom a license, tag, or sport
> fishing vessel registration has been issued under
> this chapter may not alter, change, loan, or
> transfer the license, tag, or sport fishing vessel
> registration. A person may not use a license, tag,
> or sport fishing vessel registration that has been
> issued under this chapter to another person.

Larry Grove and/or Cynthia Grove may have been found to have made mistakes in certain applications for hunting licenses. Larry Grove could not provide rent receipts to prove residency 10 years earlier, and simply agreed to pay a fine. See Affidavit of Michael Cohn, paragraph 13. At worst, he made a mistake. AS 16.05.420(b) states "a person who without culpable mental state makes a false statement as to the person's identity or residency … is guilty of a <u>violation</u>." (Emphasis added). Thus, the statute distinguishes between "violations" punishable by a fine, without culpable mental state, and Class A misdemeanors, which require intentional <u>knowing</u> culpable mental state and is thus guilty of a Class A misdemeanor. AS 11.81.900(a)(61) defines "violation" as a <u>non-criminal offense</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

punishable by only a fine, which does not give rise to any disability or legal disadvantage based on conviction of a crime.

In <u>State v. Chang Hwan Cho</u>, 681 P.2d 1152 (Oregon 1984) it was noted that absent culpable mental state the defendant simply committed a violation of wildlife laws and not a crime.

The courts also recognize that there must be intent and not mere negligence to be admissible. <u>U.S. v. Motley</u>, 940 F.2d 1079, 1083-84 (7th Cir. 1991). There must be an element of deceit, untruthfulness or falsification bearing on the witness propensity to testify truthfully. <u>U.S. v. Mejia-Alarcon</u>, 995 F.2d 982, 989-90 (10th Cir. 1993) Cert. Den. 510 U.S. 927 (1993).

Accordingly, a <u>violation</u> and/or an offense without culpable mental state is inadmissible.

In addition, these violations were resolved over 10 years before plaintiffs' testimony. The time of trial is the most appropriate time to determine whether 10 years have elapsed. <u>Pepe v. Jayne</u>, 761 F.Supp. 338, 342-343 (D.N.J. 1991) affirmed 947 F.2d 936 (3rd Cir. 1991); <u>U.S. v. Cathey</u>, 591 F.2d 268, 274 n.13 (5th Cir. 1976).

Finally, the de minimis violations, which were resolved with a fine and are over 10 years old are subject to exclusion under FRE 403.

The defendant may seek to introduce evidence of alleged application errors resulting in inconsequential fines concerning

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Larry Grove and Cynthia Grove.  These incidents apparently occurred between 1992 and 1994.

This evidence is inadmissible because of the danger of what the trier of fact may infer from these incidents about Larry Grove and Cynthia Grove's conduct or credibility at the time of the accident; this is pure speculation, irrelevant, and highly prejudicial.  See Annotation 64 A.L.R. Fed. 648, Admissibility of Evidence of Other Crimes, Wrongs or Acts Under Rule 404(b) of Federal Rules of Evidence in Civil Cases (1983).  Evidence of alleged crimes is not admissible under Evidence Rules 404(b), 406, 608(c) or 609.  See Hibschman v. City of Valdez, 821 P.2d 1354 (Alaska 1991); Johnson v. State, 889 P.2d 1076 (Alaska App. 1995).

### 6.    Surveillance Video Tapes of Larry Grove Should be Excluded

It appears that in March and April 2003, Larry Grove was secretly videotaped by the worker's compensation insurer. Plaintiffs found out about this secret videotape in May 2006. Not content with one secret surveillance tape of Larry Grove, defense counsel then initiated at least one additional secret surveillance taping of Larry Grove in September 2006.  This secret surveillance, which included one or more individuals secretly parked near plaintiffs' home to watch/tape them, is apparently part of an unprecedented massive harassment of the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Grove family.  It is unknown by plaintiffs right now the complete extent of the secret surveillance and secret taping, including any continuing such activities, which are apparently intended to portray the Grove family in a bad light, as alleged malingerers, liars, schemers.  Plaintiffs request that the videotapes and any and all reference to same be precluded at trial.  The videotapes are not relevant or material evidence under FRE 401 and 402.  The videotapes made available to plaintiffs do not show Larry Grove engaging in any activity more strenuous than walking and driving and thus, does not advance any issue in litigation.  It is also unknown how these videotapes were edited, how much more secret surveillance tapes, notes exist, and thus, is subject to exclusion for lack of completeness.  The first videotape was concealed from plaintiffs for three years, and it would be unfair to allow said evidence to be presented in court.  The very idea of a surveillance tape is prejudicial to plaintiffs, implying that there were reasons to secretly tape Larry Grove.  Plaintiffs respectfully request that the surveillance tapes be excluded.  See also Subsection No. 29.

### 7.  **Prior Workers Compensation Claims/Incidents are Irrelevant, Immaterial, and Unduly Prejudicial**

The defendant may seek to introduce evidence of certain prior worker's compensation injuries, or claims by Larry

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Grove, either to show that he was allegedly comparatively at fault in the collapse of the work platform, to show that he is careless, or otherwise to prejudice him in front of the jury.

In <u>Johnson v. Ford Motor Company</u>, 988 F.2d 573, 578-581 (5th Cir. 1993) a party sought to introduce evidence of other accidents/claims.  This evidence was inadmissible unless there could be established any recognizable similarity between claims.  In <u>Mathis v. Phillips Chevrolet, Inc.</u>, 269 F.3d 771, 775-776 (7th Cir. 2001), the fact that the plaintiff had filed other lawsuits against other car dealerships was irrelevant.  In <u>Jones v. Wal-Mart Stores, Inc.</u>, 279 F.3d 883, 886 (9th Cir. 2002) the fact that plaintiff was fired from a job eight years earlier was unduly prejudicial in wrongful termination action.

In this case, defense counsel in questioning has explicitly indicated that Larry Grove's prior worker's compensation injuries/claims are a relevant factor in determining Unocal's fault.  Unocal must show how prior incidents, where Larry Grove may have injured a finger for example, is relevant to a collapse of a work platform/scaffold shoddily constructed/maintained by Unocal.  Defendant must show a logical connection.  Defendant must show that Larry Grove's prior worker's compensation injuries caused the accident.  There would also be mini-trials as to each injury, what part was injured, how the accident happened, how long, if at all, Larry Grove was out of work.  It

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

is also extremely prejudicial under Federal Rule of Evidence 403.

Defense counsel exhaustively questioned chiropractor Richard Ealum about prior injuries. After questioning Dr. Ealum for almost 3 hours about prior injuries, it was revealed that only <u>one</u> of these prior incidents, where Mr. Grove suffered a broken bone in his back on a slip and fall, resulted in work loss time. See Deposition of Dr. Ealum, at pages 145-187, Exhibit 11).

Insofar as the worker's compensation injuries occurred in a time period far removed from the time and place of the accident the subject of this litigation, they are irrelevant and inadmissible to establish any habit or customary behavior under Federal Rule of Evidence 406. In <u>Hibschman v. City of Valdez</u>, 821 P.2d 1354 (Alaska 1991), a prior DWI conviction/drinking was irrelevant to a loss involving a subsequent accident by the plaintiff. The court found under Rule 403 that the marginal relevance was outweighed by the danger that the jury would punish the plaintiff. In <u>Blackford v. Beckworth</u>, 265 P. 514 (Cal. App. 1928), where the prior incident occurred six months earlier on a different road, it was insufficient for relevancy in terms of habit. <u>See</u> Annotation, <u>Admissibility of Habit, Customary Behavior, or Reputation as to Care of Motor Vehicle</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Driver Occupant on Question of his Care at Time of Occurrence Giving Rise to his Injury or Death, 29 A.L.R.3d 791 (1970).

In Breimon v. General Motors Corp., 509 P.2d 398 (Wash.), evidence of an injured party's bad driving habits was excluded since it was offered to infer speed or recklessness at the time of the accident.  The evidence was not relevant and the danger of prejudice, consumption of time, and distraction outweighed questionable probative value.

The introduction of said prior worker's compensation injuries could result in mini-trials which would be irrelevant, distract the jury, and ultimately, even if marginally relevant, are far outweighed by prejudice.  The defendant cannot present through this evidence proof of a habit or customary behavior under Rule 406, or as character evidence under FRE 404, or to show relevance under FRE 401, or under FRE 402.  It is also inadmissible as for prejudice under FRE 403.

**8.  Unocal Should be Prohibited from any Argument, or Reference to a Prior Ankle Injury Over Two Years Before the Accident Subject of this Litigation Wherein Larry Grove Did Not Miss Work**

Dr. Ealum treated Larry Grove for an ankle sprain on June 6, 2000.  Dr. Ealum deposition at 160-161.  Mr. Grove was immediately released for work.  Id. at 161.  It was a moderate ankle sprain that had healed considerably in 11 days.  Id. at 162-163.  There was no fracture.  Id. at 164.  A fracture of the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

talus bone was not present at that time  Id. at 164-165.  Larry
Grove suffered a new injury on September 9, 2002, including a
broken talus bone, a chunk of which was removed in surgery in
May 2003.  The injuries in September 2002 were new, different
injuries to a reasonable degree of medical certainty.  Id. at
173.

Unocal should not be permitted to raise this prior ankle
sprain in any manner as it is irrelevant and immaterial to the
issues before the court.  It is also prejudicial to allow Unocal
to present this minor injury, which healed over two years before
the ankle injury that Larry Grove sustained in September 2002.

### 9.    Unocal Should be Prohibited From Suggesting That Larry Grove Could Return to Work for Siemens Building Technologies, Inc.

In questioning witnesses, Unocal's counsel attempted to
create the misimpression that Larry Grove could have gone back
to work for Siemens.  Yet, Unocal counsel (which is also Siemens
counsel!) has known from at least April 2005, through its
receipt of Larry Grove's worker's compensation records from the
worker's compensation insurer, that Siemens had no work for
Larry Grove and/or would not take Larry Grove back in his
original work capacity, or in an alternative position.  See
Unocal discovery 200282, 200347, 200218, and 200231.  (See
Exhibit 4)  Therefore, any suggestion to the contrary is not in

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

conformity to the evidence, and an effort to confuse the jury. It should not be permitted under FRE 401-403.

### 10. Benefits Received by the Grove Family and Property Owned by the Groves is Inadmissible

Unocal has undertaken a massive effort to unearth everything it can on the Grove family. It has searched for, and found, parcels of property owned by the Grove family, and the valuation of the property. In addition, Larry Grove and his family receive worker's compensation benefits, social security benefits, and disability benefits from his union. The defendant also has evidence that Mr. Grove received 10 checks for $250 each from six different companies (for reimbursement of travel expenses).

It is expected that defense counsel may attempt to bring up the Grove family financial condition, property, and benefits. In Eichel v. New York Central R.R. Co., 375 U.S. 253, 255 (1963) the U.S. Supreme Court held the evidence of benefits was inadmissible even though defendant was seeking to show plaintiff had "retired." The Ninth Circuit in Sheehy v. Southern Pac. Transp. Co., 631 F.2d 649, 652 (9th Cir. 1980) cited to Eichel and ruled that FRE 403 was applicable to efforts to bring up collateral sources.

Unocal should be prohibited from mentioning, referring to, or introducing into evidence, any suggestion that Larry Grove

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

has received insurance from other sources, and/or that Larry
Grove is receiving other benefits, including Social Security
benefits and worker's compensation benefits, before the jury at
trial.  Whatever collateral source rule might apply to determine
the ultimate recovery by the plaintiffs, that is a matter to be
taken up following a jury decision in this case.

### 11.  **Worker's Compensation Settlement Proposal**

Defendant has received copies of letters sent by
plaintiffs' counsel to the worker's compensation insurer to
settle the worker's compensation claims.  This is inadmissible.
FRE 408.

### 12.  **Siemens Fine**

OSHA conducted an investigation regarding the Unocal work
platform.  Ultimately, OSHA fined both Siemens and Unocal.
Unocal was recognized to be the creating employer, i.e., the one
who owned/controlled the work platform.  However, Siemens was
also found liable because its own employees were using the work
platform.

Unocal should be prohibited from utilizing the comparative
amounts of the fines levied against each entity to argue the
comparative fault of the various parties, or mentioning in any
way that Siemens was fined by OSHA.  The OSHA investigator, Jim
Scanlon, and the head of OSHA were deposed.  It is clear that,

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

for example, they did not look at the responsibility of Unocal as a landowner for hazards on its property.

### 13. __Unocal Admissions to OSHA__

Plaintiffs seek to use the admissions of Unocal personnel as to the age of the work platform, ownership of the work platform, and responsibility for the work platform, revealed to OSHA investigator Tom Scanlon.  See Exhibit 12.  Such admissions are admissible evidence, and exception to hearsay.

### 14. __Unocal Should Not be Permitted to Refer in any Manner Whatsoever to a Pre-accident Incident in Which Plaintiff Larry Grove Apparently Jumped Off a Dock in Ketchikan for Charity__

In March of 2002 Larry Grove apparently jumped off a dock in Ketchikan, Alaska.  This was a charity event that was undertaken by members of the Anchorage Moose Lodge.  It was not a secret, and numerous individuals were present at the time, and it in fact was published in the newspaper.  The jump was done in regard to a sale of raffle tickets in which over $1,000 was raised for the Moose Lodge Life Care Center near Jacksonville, Florida.  The defense has attempted to make insidious use of this photograph by showing it to a number of health care providers to allege that this is proof that Larry Grove does not take care of himself or that he doesn't follow medical advice.  On or about February 21, 2002 Larry Grove slipped and fell on the ice, sustaining a transverse vertebra fracture, which is a

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

non-weight bearing bone.  Defense counsel has implied that Mr.

Grove's actions in jumping off the dock either somehow show that

he did not have an injury and/or that he was acting in reckless

disregard for his injury and/or failing to mitigate the damages.

   This injury is irrelevant to the ankle injury that occurred

some 7 or 8 months later in September 2002 in which Mr. Grove's

ankle was severely and permanently impaired.  Therefore, it is

irrelevant and immaterial to the issues in this case.

Furthermore, the use that the defense is seeking to make of this

as part of the pattern of attacking the Grove family, and is to

take little incidents and try and malign the family in front of

the jury to lower the damages that the Grove family can recover

for the undisputable negligence of Unocal.  In fact, the defense

counsel has referred to this incident to most of the medical

providers that they have sought to depose, including

chiropractor Richard Ealum.  Dr. Ealum testified in regard to

this incident in which he diagnosed the transverse fracture

following an x-ray taken on March 1, 2002 that in fact the

incident at the dock had no effect on the recovery time of Mr.

Grove.

> Q.   In regard to the transverse vertebra fracture
> which you diagnosed after your x-ray on March 1st,
> 2002, following Mr. Grove's report that he slipped
> on ice on, I believe, February 21st, 2002, it
> appears you took him off work for about 25 days
> and then he returned to work.
> A.   Yes.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Q.   Now, you indicated the length of time for
recovery from a transverse vertebra fracture, what
was – what was the length of time you indicated?
A.   I don't treat fractures, but to the best of
my knowledge, six to eight weeks.  You know, I
mean, that's going to – that can fluctuate one way
or the other.
Q.   So if Mr. Grove was able to go back to work a
little over four weeks later, does that indicate
that he recovered rather quickly?
A.   With my limited experience and knowledge of –
concerning fractures, I would say yeah.  I would
say that would be the lower end of – of a normal
time.
Q.   And just to – I might have asked this before.
In regard to your treatment of Mr. Grove, you
found him to be cooperative in the treatment that
you were giving?
A.   For the most part, he was a very compliant
patient.
Q.   And you found him to be – and you didn't find
any evidence that he was a malingerer?
A.   No.  No.
Q.   And did you find that if he could go work,
even though he had these injuries you treated him
for, he would?
A.   Yes.
Dr. Ealum's Deposition, Pg. 185, L 23 to Pg. 187, L 6.

(Exhibit 11).


    Accordingly, defense seeks to bring up another side issue
that has no relevance in this case, and plaintiffs respectfully
request that the court order that there will be no effort to
present this matter in front of the court, no reference to it in
questioning of any witnesses, and that it not be presented to
the jury in any fashion.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

### 15. The Trial Court Should Not Permit any Scurrilous Efforts that Unocal Counsel may Utilize in Regard to Alleged Alcohol Consumption by Mr. Grove

At the deposition of Mr. Grove's family doctor, Dr. Noah Laufer, taken October 20, 2006, defense counsel attempted to cast Mr. Grove in the light of a person that disregarded doctor's orders, and recklessly drank, and therefore affecting his blood pressure. This whole subject is irrelevant, immaterial to the issues regarding ankle injuries suffered by Mr. Grove in September 2002. Furthermore, the attempt to interject other issues merely to impugn Mr. Grove and embarrass him, and that have marginal relevance to the injuries that he sustained, is highly prejudicial, and should not be permitted by this court. Specifically, the defense referred to an entry in a doctor's notes (not even the doctor that was being deposed at the time) in regard to an allegation that Mr. Grove was consuming up to 4 alcoholic beverages a day. The further implication by defense counsel was that Mr. Grove was endangering his health by drinking alcohol in conjunction with an alleged high blood pressure (the high blood pressure allegations will be dealt with in a subsequent subsection). Once again, the defendant will attempt to lead the jury down a side show with scurrilous allegations regarding alcohol use or abuse. In fact, at the deposition of Dr. Laufer where the chart notes of a colleague of Dr. Laufer was mentioned in Dr. Laufer's

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

deposition in regard to an allegation of 4 drinks a day, Dr.

Laufer testified as follows:

>    Q.   Now, in regard to the alcoholic beverage
>    consumption, it says four or more daily.  Does it
>    indicate how long that's been going on?
>    A.   No, it does not.

Id. at pg. 51.

>    …
>    Q.   What I'm – actually, one of the things I want
>    to ask about is that last sentence in there on
>    that – under No. 1.
>    A.   Of note, he recently had some?  Oh, yeah.
>    Q.   Can you read that?
>    A.   It says, "Of note, he has recently had some
>    work on the North Slope, where he went ten days
>    without any alcohol consumption and had no
>    withdrawal symptoms whatsoever."
>    Q.   In your experience, what's the significance
>    of that?
>    A.   someone who has developed a tolerance and
>    dependence on alcohol may have symptoms when they
>    stop it.  I think it may be Dr. Lanza's concern
>    that if he did ask him to stop it completely,
>    which he does, that he could have withdrawal
>    symptoms.  The DTs can actually be quite severe
>    and dangerous for people, precipitate seizures or
>    even death traditionally.  Although, we don't
>    usually see that these days.
>    Q.   Well, could it also mean if he had no
>    withdrawal symptoms whatsoever, that his alcohol
>    consumption is not that great?
>          MS. JOHNSON:  Objection.  Form.
>          THE WITNESS:  It could.

Id. at pg. 51, line 14 to pg. 52, line 13. (Exhibit
13).

There is no evidence that Mr. Grove abuses alcohol, and

alcohol should not be part of this case.  It is irrelevant and

immaterial to the injuries sustained by Mr. Grove and his

ongoing physical impairment of his ankle.  It is also highly

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

prejudicial to bring up any allegations of alcohol use or abuse, especially in this case when it is irrelevant, immaterial, and any marginal relevance is outweighed by the extraordinary prejudice of bringing alcohol into this matter.

### 16. Unocal Should Not be Permitted to Introduce any Allegations that Mr. Grove has Failed to Take Care of any Alleged High Blood Pressure

Unocal may seek to claim that Mr. Grove doesn't take care of himself, and that he has high blood pressure, and in conjunction with the high blood pressure that allegedly it is exacerbated by the alleged alcohol consumption.  In point of fact, there is no evidence of alcohol abuse.  Furthermore, there is very little evidence that Mr. Grove had blood pressure problems.  In fact, there is an issue as to whether the blood pressure is related to certain medication that he was taking. Furthermore, Dr. Laufer testified that following a visit where blood pressure was recorded as 210/118, Mr. Grove was put on certain medication by Dr. Laufer, which reduced his blood pressure significantly.  Dr. Laufer Deposition at pg. 55.  Once again, defendant attempts to divert from the main issues in this case, and bring up yet another side issue in regard to some alleged high blood pressure, which has no bearing on the issues in this case.  It is irrelevant, immaterial, and the prejudice outweighs any marginal relevance.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

### 17.  Unocal Should Not be Permitted to Raise any Allegations Regarding the Taking of Medication by Mr. Grove

At the deposition of Dr. Laufer, defense counsel raised the specter of Mr. Grove taking a Vioxx pill, which was left over from a previous prescription when he suffered a subsequent injury.  See Dr. Laufer Deposition at pg. 31-32.  There is no reference in the deposition to whether the prescription was expired, or whether the medication was expired.  The doctor indicated, that while he wouldn't recommend it, it was common practice.  Id. at 33.  In any event, there was no indication that the taking of this alleged "old" medicine impaired Mr. Grove in any way, affected his health, is relevant to any issues in this matter, has materiality to any issues in this matter, and any marginal relevance is outweighed by the prejudice, and it should not be permitted to be raised by Unocal at all.

### 18.  Unocal Should Not be Permitted to Refer to, Argue or Suggest that Mr. Grove's Injuries are due to any Alleged Missing of Appointments with Physical Therapist

There are some claims by defendant that Mr. Grove has failed to comply with medical treatment.  Some of these matters have been discussed supra, and others may be discussed infra. In this subsection, plaintiffs will discus the deposition of Hal Egbert, a physical therapist that Mr. Grove saw following ankle surgery.  The defendant is suggesting that although Mr. Grove

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

went to appointments for several months, that he allegedly
failed to finish the course of therapy, and may even claim that
he deliberately missed an appointment to go hunting.  Mr. Grove
testified, at his deposition, that he had to go back home to
help his father move from Florida.  In fact, as Mr. Grove is on
medication, and the defendant's continuing to badger him about
all sorts of different dates.  He cannot keep in his head, like
a computer, the exact dates upon which he made certain trips or
went on certain hunting trips.  Furthermore, there is no
evidence if he had attended one or two more physical therapy
sessions that his ankle would have improved.  In addition, Mr.
Grove indicated that he went back to his doctor and stopped
physical therapy because his ankle was hurting.  To allow
defendant to claim that Mr. Grove missed appointments and/or
that any of these alleged missed appointments caused his ankle
not to heal as well, is ludicrous in light of the ankle
surgeries that Mr. Grove has sustained, which defendant cannot
prove are a result of the attendance or failure to attend
physical therapy.  Furthermore, this questioning is irrelevant
and immaterial.  Any marginal relevance is clearly outweighed by
the prejudice that allowing Unocal to argue, imply or suggest
that  Mr. Grove failed to mitigate damages by allegedly failing
to follow with medical treatment, or missed appointments for a

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

reason such as hunting, would convey to the jury and should not be permitted by the Court.

### 19. Testimony of Farooz Sakota and the Physical Capacity Evaluation of 3/13/03 by Farooz Sakota

Prior to being accurately diagnosed, and prior to surgery, Larry Grove was seen by Farooz Sakota for a physical capacity evaluation (PCE). Farooz Sakota is not a medical doctor. She did not have access to all medical records. She relied on erroneous information to determine Larry Grove (contrary to his doctors) could return to his pre-injury job and to claim he was not exerting full effort on the testing.

> Q.  … Let me start in the beginning here. You did a physical capacity evaluation, which is called – is that called a PCE?
> A.  Yes.
> Q.  You did that on March 13th, 2003, for Mr. Grove?
> A.  Yes.
> Q.  Is that correct?
>     Have you seen Mr. Grove since that date?
> A.  No.
> Q.  Do you know anything at all about his medical treatment since that date?
> A.  No.
> Q.  So you don't know that he had surgery from Dr. Geitz for three major ankle injuries two months later?
> A.  No.
>     MS. JOHNSON:  Objection:  Form.
> BY MR. COHN
> Q.  Did you know he had surgery for three ankle injuries in May of 2003?
> A.  No.
> Q.  Is – and when you do your physical capacity evaluation, that is your evaluation as of March 13th, 2003; is that fair to say?
> A.  Yes.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Q.    So today you would not know what his physical
capacity is to return to his job?
A.    No.
Q.    And you don't know what his physical capacity
was to return to his job after his surgery in May
2003?
A.    No.
Q.    You don't know how his ankle is today as
compared to what it was on the date that you saw
him?
A.    No.
Q.    you don't know if it's deteriorated since May
of 2003?
A.    No.
Q.    And you are unaware that he had surgery in
2005 from Dr. Chang?
A.    Right.

Deposition of Forooz Sakata, Pg. 74, line 14 to Pg. 76, line 5.
(See Exhibit 14).

Q.    And would you say from your recollection that
Mr. Grove was one of these people that was
concerned about the lack of a definitive medical
diagnosis of his ankle?
      MS. JOHNSON:  Objection:  Form.
      THE WITNESS:  He was concerned that the MRI –
yes.
BY MR. COHN:
Q.    And –
A.    And that, within itself, is very subjective.
Because they don't have a medical degree, they
don't know – you know, that's – sometimes they
think they didn't do everything, but when you look
at the records, everything that's medically
possible has been done for them.  But they don't
look at it, you know, I'm sure…
Q.    Well, do you know if everything medically
possible had been done for Mr. Grove before he saw
you?
A.    Based on what I read up to that point, yes.
Q.    And do you know if – I believe you had – do
you know if he saw Dr. Geitz after he saw you?
A.    No.  No.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Q.    And do you know that he saw Dr. Geitz March
19th, 2003, and he diagnosed three injuries to his
ankle?
A.    No.

Deposition of Forooz Sakata, Pg. 88, line 18 to Pg. 89, line 20.

Q.    Well, the question is, so you don't know if
the next day his ankle was swollen?
A.    No.
Q.    So in terms of going back, returning to a
job, whether medium, medium heavy, say an eight-
hour-a-day job, 5 days a week, in order to do
that job, would you expect they would have to be
able to have good function of that body part for
the entire workweek?
      MS. JOHNSON:  Objection:  Form.
      THE WITNESS:  Sure.
      MR. COHN:  So even if his ankle can function
in the first couple of hours, his ankle has to
hold up for the next day, the next day and the
next day; is that fair?
      MS. JOHNSON:   Form.
      THE WITNESS:   Yes.
BY MR. COHN:
Q.    Do you know what the talus bone is?  The
talus bone?
      You've never heard of the talus bone?
A.    Yes, I have.
Q.    Do you know what the talus bones does?
A.    I don't know.
Q.    Did you know he had a fracture of his talus
bone?
A.    I don't remember. I don't remember the
medical records.  I haven't read it recently.
Q.    Do you know that Dr. Geitz removed the
fracture from his talus bone at his surgery in
May 2005—
      MS. JOHNSON:  Objection:  Foundation.
      MR. COHN:  --2003.
      THE WITNESS:  No. Because I never had any
contact with him later.
BY MR. COHN:
Q.    Is the talus bone a weightbearing bone, do
you know?
A.    Uh-huh.

Q.   And if there's a fracture of the talus bone, could that cause pain?
    MS. JOHNSON:  Objection:  Foundation.
    THE WITNESS:  Yes.  But he wouldn't be able to do what he did.
    If the pain was that excruciating, that it prevented him from doing what I was asking him to do, he's a grown up man, he should have said I can't do this.
BY MR. COHN:
Q.   Well, is there a—you're saying it's either you can do it or you can't do it.  Isn't there some mid range, where maybe you can do it but there's pain?
A.   Sure. Sure.
Q.   And you don't have any reason to disbelieve Mr. Grove if he says he had pain when he did the testing?
    MS. JOHNSON:   Objection.  Form.
    THE WITNESS:  No.

Deposition of Forooz Sakata, Pg.103, line 23 to Pg. 106, line 6.

Q.   We have talked about this before.  But are you aware, on March 13th, 2003, the day after Mr. Grove saw you – and there's a document from Defendant's files, 200453 – he went to Medical Park Family Care and they examined him and indicated that he still – he had swelling in his ankle?  Are you aware of that?
A.   No.
Q.   Or on March 19th, 2003, Mr. Grove was seen – was referred by Dr. Laufer to Dr. Geitz?
A.   Uh-huh.
    Dr. Geitz, he's a pediatric orthropod.  And most of his work is in pediatrics [As spoken].
Q.   If it's – I don't know if that's the same Dr. Geitz.
A.   Anyway.  Yeah, there's only one.
    G-e-i-t-z?
Q.   G-e-i-t-z, right.
    It says examination – this is March 19th.
"Exam today shows significant anti limp on the right side."  Do you know what that means?
A.   Anti limp, yes.  I didn't observe that when he saw me.  He had absolutely no limp.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Q.    He has a large ankle effusion.  Do you know
what an effusion is?
A.    Yes.
Q.    Is that an objective finding of swelling that
you can –
A.    Well, it depends.  He had – if he measured it
and he compared it with the other foot – some
people – yeah, yes.
        You have to ask him, though. I don't know.
Q.    He said:  He is very tender over the
posterior tibial tendon behind the medial
malleolus –
A.    Right.
Q.    -- extent of six centimeters?
        MS. JOHNSON:  Objection.  Form.
BY MR. COHN:
Q.    What does that mean?
A.    You have to ask him?
Q.    He said:  New x-rays today show osteochondral
fragments from the lateral talus and it is
unrelated (Indiscernible) tips without
impingement.
        Does that indicate that they found on x-rays
that there is a fracture of the talus bone?
        MS. JOHNSON:  Objection.  Foundation.
        THE WITNESS:  You have to ask Dr. Geitz.  I
don't know.  Those are his records.  I – yeah.
BY MR. COHN:
Q.    Well, in regard to whether –
A.    Yeah.
Q.    -- Mr. Grove could return to work, would you
defer to doctor – to a doctor that was treating
him?
A.    Sure.
Q.    Or doing his treatment?  Dr. Geitz?
A.    Sure.
Q.    Or would you also defer to Dr. Chang, his
present treating doctor?
A.    At the time I did my testing, my testing is
what it is.
Q.    Now, in regard to physical – have you seen
any physical capacity evaluations that have been
done since your physical capacity evaluation?
A.    No.

Deposition of Forooz Sakata, Pg. 108, line 23 to Pg. 111, line
14.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Q.    If, in fact, Mr. Grove has the three
injuries that Dr. Geitz found, could that be an
explanation for his self-limiting participation
in the testing that you did –
A.    Sure.
Q.    -- on March 13th, 2003?

Deposition of Forooz Sakata, Pg.123, line 15 to Pg.123, line 20.

Q.    … So you consider if there was a surgically-
addressed ankle injury that it's very serious?
A.    Uh-huh.

Deposition of Forooz Sakata, Pg. 127, line 3 to Pg. 127, line 6.

Q.    Four hours.  Based on four hours seeing this
man, you've made a determination he could go back
and do this job; and you don't even know about the
pain he was in the next day, or that his ankle
swelled up the day after, or that he had surgery
shortly thereafter?
        MS. JOHNSON:  Objection.  Form.
        THE WITNESS:  No.

Deposition of Forooz Sakata, Pg. 128, line 12 to Pg. 128, line
19.

Q.    Did you testify in the case of – the workers'
comp case of Stewart versus Providence Alaska
Medical Center?
A.    Stewart?  Oh my God. Do you know how many
years ago?  You know, it just clicked, so many
years ago.  What year was that?
Q.    1999, it looks like the decision came out.
A.    Oh, my goodness.
Q.    Well, because in that – in the decision, at
page 13, the board wrote:  In evaluating the
medical evidence, we find the May 26, 1998,
B.E.A.R. PCE report is not credible based on
Sakata's mischaracterization and omissions of
several physical requirements listed in the
applicable Dictionary of Occupational titles job
description for phlebotomist and medical
laboratory technician and give it little weight.
        Do you recall that?
A.    Just the name sounds familiar.  Nothing – no.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

44

Deposition of Forooz Sakata, Pg.130, line 6 to Pg. 130, line 25.
See <u>Stewart v. Providence</u>, P. 13 of Decision (Exhibit 14);
emphasis added.

It is interesting that Forooz Sakota had such a lack
of memory of an AWCB decision that found she mischaracterized
physical requirements in her PCE report.

> Q.    Did he have a sock on or off when you did the
> testing?  I don't remember.
> A.    I don't remember.  But believe me, I always
> take everything off; shoes and socks.  But I don't
> remember specifically.  But I do — and in regard
> to — regardless — regardless of what your physical
> capacity would have shown, as of March 13th, "03,
> in your experience and training, would — to
> determine if someone could do the job they did
> before they were injured, would it be appropriate
> for them to do another physical capacity
> evaluation following his surgery and recovery?
> A.    Oh, absolutely.  Yes.
> Q.    And so to the extent there was validity to
> your testing on March 13th, "03, that does not
> tell us anything about what his ankle could bear,
> in terms of going back to work following his ankle
> surgery, in May of "3, or his subsequent one, two
> years later?
> A.    It depends on what they did.  It really
> depends on what they did.  If they just went in
> there and released the scar, I don't see why he
> couldn't be doing just as well.  And it depends,
> you know, if they're fractured, as you say. If, in
> fact, that's true.  If it has healed, I don't see
> why he couldn't.
> Q.    Well —
> A.    I don't know.  I don't know.

Deposition of Forooz Sakata, Pg.145, line 21 to Pg.146, line 21.

> Q.    And you would defer to the opinion of Dr.
> Geitz, who did his surgery, as to what his
> capacities were after that surgery, and to Dr.
> Chang, after the second surgery?

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> A.    Yeah...

Deposition of Forooz Sakata, Pg.148, line 17 to Pg.148, line 21.

> Q.    Are you aware that Mr. Grove had been given a
> permanent partial impairment rating?
> A.    Usually they do; when they have surgeries,
> they do.  That's common.  All of them do have some
> kind of rating.  It does not mean they cannot go
> back and do their job at the time of injury, just
> the rating basically refers to the type – you
> know, the surgery – and they look at the book and
> give them a rating for – that doesn't mean
> functionally they're not capable of doing –
> Q.    Well, isn't the converse also true:  That if
> you get a rating, and the rating is not
> necessarily what someone would perceive to be a
> high rating, that doesn't mean you can go back and
> do the job?
> A.    No, that's true.

Deposition of Forooz Sakata, Pg.149, line 5 to Pg. 149, line 20.

FRE 703 does not require admission of evidence based on erroneous data.  Guillory v. Domtar, Indus., Inc., 95 F.3d 1320, 1331 (5th Cir. 1996).  A report based on erroneous information is not admissible.  Wilkinson v. Rosenthal & Co., 712 F.Supp. 474, 478-479 (E.D. Pa. 1989).  Farooz Sakota is a nurse, not a doctor.  Her report is hearsay, was done for the purpose of worker's compensation, she made a diagnosis without full facts.  As a nurse, she cannot make a diagnosis, and deferred to Dr. Geitz and Dr. Chang.  She also inappropriately commented on the credibility of Larry Grove.  See U.S. v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973); U.S. v. Whitled, 12 F.3d 782, 785-86 (8th Cir. 1993).  Comments on truthfulness in guise of medical

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

opinion is beyond scope of expert testimony.  <u>Nichols v.</u>
<u>American national Ins. Co.</u>, 154 F.3d 875, 883 (8th Cir. 1998);
<u>U.S. v. Adams</u>, 271 F.3d 1236, 1244-46 (10th Cir. 2001).

Nurse Farooz Sakota's report and testimony should be
excluded from trial.  She clearly was not a treating health care
provider, but an advocate for the worker's compensation insurer.
Furthermore, it would be prejudicial to interject any claims of
fabrication of injuries.  Her testimony is also subject to
<u>Daubert, et al. v. Merrell Dow Pharmaceuticals, Inc.</u>, 516 U.S.
869; 116 S. Ct. 189;133 L. Ed. 2d 126; 1995 U.S. LEXIS 6182
analysis.

### 20.  <u>Unocal Should Not be Permitted to Utilize or Admit any of Michael Grove's Juvenile Records</u>

Michael Grove, the teenage son of Lawrence Grove and
Cynthia Grove got into some trouble last summer and had some
juvenile proceedings in regard to same.  It is expected that the
defendant will try to emphasize this event, and claim that any
such consortium damages of the family are somehow related to his
incident, which occurred three years and nine months after Larry
Grove's ankle injury in September 2002 at the Unocal building.
The defendant has made a motion to compel these records, which
are sealed under state law.  In the event that defendant does
get these records, they should not be admissible in court and

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

any use of same should be strictly limited.  Furthermore, to the extent that the juvenile criminal matter involving Michael Grove is of marginal relevance to these proceedings, plaintiffs respectfully request that the Court order that there be no reference to same, as the prejudice clearly outweighs any marginal relevance.

### 21.  Sarah Grove's on-line Journal Should be Deleted From This Trial

Sarah Grove is a young women just finishing up college.  As a lot of young people do these days, she uses the internet, and Sarah Grove goes online to communicate with friends, which the defendants have downloaded.  The defendants have also downloaded Sarah Grove's boyfriend's diary.  While it is not *per se* private as this was published on-line mainly between friends, there is very little, if any, relevance at all that is in this journal.  The primary purpose of the use of this journal would be to embarrass Sarah Grove and her family.  Plaintiffs respectfully request that the defendant not be allowed to introduce any of this on-line journal into evidence.  This includes any use of profanity or other terms that would only be utilized by defendant to prejudice Sarah Grove's claims and the family claims.  In point of fact, this journal entry contains zero of any evidentiary value in regard to the claims of the family (other than Sarah stating her dad broke his ankle), and pertain

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

more to Sarah Grove's relationship with her friends and matters

that should not be a part of this trial.

> **22.  Unocal Should Not be Permitted to Argue, Imply,
> or Suggest to the Jury that Lawrence Grove's Africa
> Trips Somehow Indicate that he has not Suffered
> Significant Injuries, in fact, all References to
> Africa Should be Excluded From this Trial**

Larry Grove has gone on several trips to Africa.  One of

these trips occurred before his injury of September 2002. He has

Another trip he went on in the last few years was from a gift

that he had been given from his wife that he finally utilized.

Larry Grove was deposed in January 2007.  While the third

deposition of Larry Grove was ordered to be up to three hours,

the defense counsel deposed Mr. Grove for eight hours.  At least

half of the deposition was devoted to questioning Mr. Grove

about his Africa trips, including the number of animals he shot

and how many shots it took to shoot each of these animals.  It

is clear from the questioning of defense counsel, plus the wide

scope of discovery, that defendant shall attempt to make this

trial about the hunting and fishing activities of Mr. Grove, as

opposed to the negligence of Unocal in constructing and

maintaining a defective unreasonably dangerous work

platform/scaffold which collapsed severely injuring Mr. Grove's

ankle, and causing severe permanent physical impairment with

ongoing pain and swelling, and structural deformity to the

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

ankle, including loss of bone and permanent damage to ligaments and tendons.

The reality is that the guide that Mr. Grove used in Africa, Christo Kaiser, who will be available to testify at trial, if necessary, will testify that the hunting trips for individuals such as Mr. Grove are extremely sedentary. He in fact, has had individuals in their 80s and 90s go on hunting trips. He has had individuals that have had severe physical impairments go on these hunting trips. On these hunting trips to Africa, the clients are catered to by the guides, and it is a very sedentary activity as Mr. Grove testified to, and as Mr. Kaiser will testify. In fact, Mr. Kaiser may have been contacted by defense counsel who indicated that they would take his deposition, but they subsequently informed plaintiffs that they would not do so. One can only surmise that the reason for this is that they did not like the answers that they would get from Mr. Kaiser.[4]

Even though the hunting in Africa was extremely sedentary, and is irrelevant to the severe impairment sustained by Mr. Grove, and irrelevant to whether he can work or not work, and irrelevant to the negligence of the defendant, the defendant will seek to place this in front of the jury to prejudice the

---

[4] In fact, plaintiffs' counsel is aware of Unocal counsel running employees of Siemens through their "pre-deposition" mill and trying to get unfavorable statements about Mr. Grove, and failing to do so, then telling the individuals that they will not need to take their deposition.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

plaintiffs in this case.  This includes prejudice by questioning Mr. Grove extensively on his hunting and fishing activities (even though he himself has testified he is severally limited in the ability to hunt and fish as he did before his injury).  They will seek to overwhelm the jury with this testimony, and the marginal relevance of same is outweighed by the prejudice, and the plaintiffs respectfully request that the African hunting trips not be discussed or referred to in any manner in this trial.

      **23.  Plaintiffs Respectfully Request the Court to Limit the Extent of Unocal's Questioning or Referencing Larry Grove's Hunting and Fishing Activities and/or Suggesting or Implying the Fact that Mr. Grove can Engage in Limited Hunting/Fishing Activities Suggest That he Does Not Have Injury or Damages**

Mr. Grove has been an avid outdoorsmen/hunting/fishermen his entire life.  In particular, Mr. Grove is proud of his hunting skills,and over the course of his life has shot many deer and many moose,as well as other animals such as Dahl sheep. A primary reason for Mr. Grove to move to Alaska from his native state of Pennsylvania was his love of hunting, and every opportunity that he could go hunting he would do so.  Now, defendant Unocal, through the manner in which it has conducted this litigation, appears to be presenting a defense based on the fact that since Mr. Grove still continues to attempt to hunt and fish since the accident in which he severely injured his

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

ankle,that he has suffered no or very limited damages.  In fact, in a reply in support of a rule of law motion, the defendant claimed that since Mr. Grove can still walk that he has not suffered a severe permanent physical impairment for purposes of AS 09.17.010.  This statement, of course, is made without recognition of the difference in being able to walk pain free and without having your ankle swell the more that you utilize your ankle.  This statement is made without acknowledgment of the pain medication that Mr. Grove must take to alleviate and control the pain.  This statement is made without recognition of the structural damage done to Mr. Grove's ankle as shown by Exhibits 2-3 including the loss of part of his talus bone due to fracture of his ankle, causing instant arthritis, as well as damage to ligaments and tendons and build up of scar tissue, which causes pain every day, now and for the rest of his life. The irony is that Mr. Grove was not even on the schedule to work at the Unocal building on the day of September 9, 2002,and was scheduled to go on a hunting vacation,but due to the needs of Siemens, and because he was a reliable worker, he took on the assignment at the Unocal building.  If Mr. Grove had actually taken the time off as originally planned, it would be someone else that would have the claim against Unocal at this time,and Mr. Grove would not have the severe permanent physical impairment to his ankle.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Defense counsel claims that Mr. Grove still hunts.  An expert retained by the plaintiffs will testify, if necessary, (See Expert Report of Charles Hostettler attached hereto as Exhibit 16) that there is a difference between going on a hunting trip and doing the hunting that Mr. Grove did before his injury.  Mr. Grove testified extensively about how he is limited to flat terrain and staying close to camp.  He can no longer stalk prey, climb, go on long hikes, or go up and down mountains and rough terrain to hunt for animals.  He basically goes on hunting trips and if a moose or deer appears close to camp, he being a very good shot will still be able to shoot the moose or deer.  For example, individuals that live in Anchorage may have a moose appear outside their house.  If you can shoot the moose and kill it, that does not indicate that you were able to go hunt and stalk the moose for miles before shooting it.

The fact that he still cannot actually go on a hunting trip has no bearing on whether he is disabled.  On a hunting trip, Mr. Grove can stay in camp, or rest whenever he wants.  He does not have that flexibility working a job five days a week for eight or more long hours a day.  However, to interject this into this trial and make Mr. Grove have to explain over and over as to quantitatively and qualitatively the difference in his hunting will make this a trial about hunting, which is what the defense wants, which will distract the jury from the primary

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

issues in this case, which is the negligence of the defendant, and the impairment to Mr. Grove's ankle, and whether or not he can work and what work he can do. Hunting is thus, irrelevant to these issues. While the plaintiffs have claimed as a quality loss of life, the effect on Mr. Grove's ability to hunt like he used to, that is a minor component of the damages claimed by the plaintiffs. Mr. Grove has always loved hunting his entire life, and he will go hunting whether he can walk or whether he is in a wheel chair as long as he is alive. To the extend that the defense can bring up the hunting trips, the plaintiffs respectfully request that the Court limit the scope of the questioning, and also limit any suggestion without proof that Mr. Grove is able to engage in hunting activity like he used to do before his injury. The defense has had extensive access to many of the individuals that Mr. Grove has hunted with, and all these individuals will confirm that Mr. Grove is unable to hunt and fish like he did before his injury.

The defendant is trying to create an issue to basically prejudice the jury against Mr. Grove and award lower damages. Accordingly, plaintiffs respectfully request that the Court limit the extent of such questioning, unless the defendants make an offer of proof outside the jury as to Mr. Grove's hunting and/or fishing beyond the physical limitations that his ankle has imposed upon him. Simply flying to a

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

location and helping to set up the camp and sitting in camp does not qualify one as able to work a job 40 to 50 hours a week as a heating ventilation and air conditioning specialist as Mr. Grove was before his injury.

The Scope of the defendant's discovery is vast.  Indeed, the defendant has recently sought the subpoena records from a number of businesses in the Anchorage area to which Mr. Grove testified he has meats and/or fish processed.  Presumably, the defendant is seeking to learn how much such meat and fish is processed by Mr. Grove for various reasons, none of which are particularly relevant or material to this litigation.  Mr. Grove and counsel have indicated that they are not going to claim economic loss due to hunting and/or fishing needs.  The only claim that Mr. Grove is making in regard to specifically his hunting activities is the loss of the enjoyment of the type of hunting he was able to do before his injury.  Thus, how much meat and fish gets processed, or that he has obtained through the years, is irrelevant, immaterial and the prejudice is clearly outweighed by any marginal relevance to same. Furthermore, Mr. Grove and other individuals will be available to testify that Mr. Grove does not simply take his own fish or meat to be processed, but would take the meat and fish that his friends or visitors had caught to be processed.  Thus, the amount of such poundage is not a reflection on the amount that

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Mr. Grove may have caught through shooting such animals while staying close to camp, or in the personal needs fishing where he helped but did very little physical labor.  In other words, none of this information will be particularly relevant to show Mr. Grove is not physically limited, and should be excluded from this trial as it is irrelevant to all issues.  Any marginal relevance is outweighed by prejudice.

   **24.  Unocal Should Not be Permitted to Suggest, Refer,
   Question Mr. Grove Regarding an Incident in Which a
   Friend of Larry Grove, John Yenason, Shot a Moose but
   the Fish and Game Records Reflect that Mr. Grove had
   Shot the Moose**

   The defense had subpoenaed and got the Fish and Wildlife records regarding Mr. Grove. In the eight hours of questioning Mr. Grove at his recent deposition, one of the subjects that came up was the number of moose that Mr. Grove has shot in the past several years since his accident of September 9, 2002.  One of the moose that the records reflect that Mr. Grove had bagged apparently Mr. Grove testified was shot by his friend, John Yenason.  Mr. Yenason is an individual that has known Mr. Grove for many years and has come up to Alaska on occasion to go hunting with Mr. Grove.  As Mr. Grove explained at his deposition, although Mr. Yenason shot the moose, the tag that is used to reflect the individual that shot the moose did not have the name of the individual with the tag on it that was utilized was Mr. Grove as opposed to Mr. Yensaon.  Mr. Yenason had a

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

hunting permit, so there was no harm and in fact the fish and wildlife corrected that mistake since the deposition of Mr. Grove.  Both Mr. Yenason and Mr. Grove had moose hunting licenses.  Note that Mr. Grove indicated that he applies for a license every year, because if he has a license and there is the opportunity to bag a moose or deer that wanders close by where he need not walk much, that he will then be legally allowed to do so if he has a license.

The defense may attempt to utilize this minor incident as to the credibility of Mr. Grove.  This is irrelevant and immaterial, and any marginal relevance is outweighed by the prejudice, and plaintiffs respectfully request that the Court prohibit defense counsel from referring to this incident in any manner.

### 25.  **Personal Use Limits per Family**

Mr. Grove and his family, each year, have obtained a fishing personal use permit, and go down to the Kenai with several friends to catch their limit.  In questioning of Mr. Grove at this deposition in January 2007, Mr. Grove testified that when he went to get his personal fish limit license, that he was told that he could add his son, who lives in Pennsylvania, to the personal use limits to add to come up with the total number of fish that he would be allowed to take.  It may be that defense counsel will seek to magnify this incident

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

to claim that Mr. Grove has somehow attempted to lie and
misrepresent the facts to get his license.  As Mr. Grove will
testify, even though he has been told that his daughter, for
example, who is in college in Colorado, that it would be
permissible to count her in the personal use permit totals.  Mr.
Grove simply followed what was told to him, and this is
irrelevant and immaterial, and any effort to suggest that this
impacts Mr. Grove's credibility should not be permitted by
defense counsel.  Any marginal relevance, if any, is clearly
outweighed by the prejudice.

      26. **Unocal Should Not be Permitted to Refer to in any Manner Recent Trips Taken by Mr. Grove / Gambling / Recreational Visits to Shooting Range**

This category combines a number of different elements that
came up at the deposition of Mr. Grove in January 2007.  Mr.
Grove testified that he had gone on a trip to Reno, Nevada with
his wife, Cynthia.  Now, the defense counsel, showing the
extraordinary levels of intrusive discovery, is seeking to
subpoena the records of Mr. Grove's stay at the hotel.  Mr.
Grove also testified that he had been gambling while in Reno,
Nevada.  This trip, nor the gambling, has any bearing on the
injuries by Mr. Grove.  Therefore, they have no relevance and
are immaterial to any issues in this case, and any reference to
them should be excluded from this litigation.  Defendants should
not be permitted to refer to Mr. Grove's gambling activities.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The defense should not be permitted to prejudice the jury by mentioning the trips of Mr. Grove to somehow diminish the injuries and lessen the damages that the jury would award. Accordingly, the plaintiffs request that this all be excluded as irrelevant and immaterial, and even if marginally relevant, clearly outweighed by the prejudice of allowing this misinformation to be brought forth in front of the jury.

Mr. Grove was also questioned regarding his recreational shooting activities at a shooting range in the Anchorage area. The defense has perhaps, not surprisingly, now sought to subpoena the records of the shooting range. This information is irrelevant and immaterial. Any marginal relevance is outweighed by the prejudice.

### 27.  The Term Subsistence Should not be Allowed

There is an overemphasis by defendant Unocal on plaintiff Larry Grove's hunting/fishing. Plaintiffs object to the use of the term "subsistence" as they are not claiming lost economic value, but rather loss of quality of life, especially regarding hunting.

### 28.  Comparisons to Other Individuals With Injuries

Unocal may seek to claim that Siemens has an employee allegedly with an ankle fusion. In the deposition of Robert Sprinkle, a Siemens employee, there was testimony concerning a

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Siemens employee (salesman) with an alleged ankle fusion and what he can/can't do.  Mr. Sprinkle is not a doctor, there is no evidence to compare the injuries, the other individual had a different job and most importantly, Siemens had a position for him.  It is irrelevant, lack of sufficient similarity, and unduly prejudicial.

### 29.  Demonstrative Tests/Experiments of Defendant

In Fusco v. General Motors Corp., 11 F.3d 259 (1st Cir. 1993), the court noted that the effect of a demonstrative test can be misleading to jurors and placed the burden on General Motors to show that its driving test was not unduly prejudicial.  Id. at 263-264.  If the test conditions are dissimilar in fundamental and important aspects, the risk of prejudice to the plaintiffs outweighs the probative value.  See also Chase v. General Motors Corp., 856 P.2d 17, 19 (4th Cir. 1988).

The defendant must make an offer of proof to the court to document that the videotape and photographic evidence created by their own experts passes the substantial similarity requirement of Beck, and that the probative value outweighs the prejudicial effect under FRE 403 before said evidence is submitted to the jury.

The plaintiffs request that the court rule that any videotape demonstrations or photographs referring to testing or

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

experiments done by the defendants will first be ruled on by the court with the exact parameters of the admissibility of same being discussed between counsel and the court before the videotape, photograph or other demonstrative evidence or recreation evidence is presented to the jury.

### 30.  **Mitigation of Damages**

Unocal may claim that plaintiff Larry Grove has not undertaken a vocational rehabilitation plan prepared by the rehabilitation specialist in the worker's compensation system. The employer/insurer has never authorized the plan, approved payment of the plan or provided funding.  Therefore, Unocal should not be permitted to argue that Larry Grove has failed to undertake a rehabilitation plan that has not been approved by the worker's compensation carrier.

Furthermore, to the extent the defendant seeks to claim there are available jobs within Larry Grove's physical/ educational experience levels, defendant has the burden of showing same.

### 31.  **Plaintiffs Request that the Court Limit the Areas of Inquires of Unocal on Matters not Specifically Addressed Above but Likely in This Matter by Defense to Divert the Jury From the Main Issues in This Case**.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The plaintiffs have gone into detail as to a number of areas. However, it is unclear, at this point, how much further the defense will go in their questioning of Mr. Grove to deflect from the true issues in this case. One could envision questions such as: Isn't it true Mr. Grove, that you took that trip in December and not January; Isn't it true Mr. Grove that you caught six fish and not five on that occasion; Isn't it true Mr. Grove that the deer you shot had two more points than you testified to your best recollection at your deposition; Isn't it true Mr. Grove that you really walked 50 feet and not 40 feet. This questioning could go on and on unless such questioning is limited by the Court. The Court is asked to limit such questioning of defense counsel in which the prejudice outweighs any relevance.

Defendant may attempt to present irrelevant, immaterial, and highly prejudicial information regarding plaintiff Larry Grove's association with certain companies engaged in "adult oriented" businesses, and further, that some of these entities and owner, Phillip Krasner, were indicted for money laundering and mailing obscene material some 15 years ago. The court is asked to prohibit defendant from inquiring into these areas, and raising these matters in front of the jury.

Furthermore, the Court is asked to forbid the use of pejorative terms to prescribe Mr. Grove. Therefore, plaintiffs

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

respectively request that the Court prohibit the defense from calling Mr. Grove a malingerer, a fraud, greedy, falsifier, fabricator, or any other such pejorative terms that can only be limited by the imagination that defense brings to bear on this matter.

### Conclusion

In conclusion, the plaintiffs respectfully request that the motion in limine be granted as stated above.

RESPECTFULLY SUBMITTED this 29th day of March, 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs


    /s/ Michael Cohn
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail:  nbackes@weidnerjustice.com
ABA No. 8506049

CERTIFICATE OF SERVICE
I hereby certify that on March 29, 2007 a copy of the foregoing **PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.  /s/ Michael Cohn

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571