GROVE v. UNOCAL                                                                          TOM SCANLON
                                                                                          4/14/2006

Page 114

1  that.
2     Q  (By Mr. Cohn) On page LG756 it says,
3  No. 25, "Other Employer Information. The Unocal
4  manager responsible for building maintenance for
5  the previous three-and-a-half years acknowledged
6  that during an interview that he had authorized
7  overtime for the building maintenance coordinator
8  to allow him to oversee the Siemens filter
9  replacement after normal business hours."
10       And I think you indicated before that
11 that individual would be Archie Cook that told you
12 that?
13    A  Whichever was the HR consultant, or HR
14 manager that had just convinced somebody to give
15 up his building maintenance responsibilities.
16    Q  And then the next page -- the next
17 paragraph -- actually, the last sentence in that
18 paragraph. It says, "After an accident, Unocal
19 management directed the Unocal building management
20 technician to replace the work platform.'.
21       We've already talked about that; that's
22 your understanding?
23    A  Correct.
24    Q  And then it says, the next paragraph,
25 "OSHA considers the Unocal office building to be a

Page 115

1  multi-employer work site. Unocal is the creating
2  employer for this citation." And we talked about
3  that before.
4     A  Uh-huh.
5     Q  And then you go on to say -- is this
6  your language? This is what you typed up? This
7  is your report?
8     A  I'm sure it came from the federal
9  guidelines.
10    Q  And then you said, "It has the
11 responsibility and duty to Unocal" -- you said,
12 "Unocal is the creating employer for this
13 citation. It has the responsibility and duty to
14 exercise reasonable care to prevent and detect
15 safety hazards and/or violations."
16       And does that come from the guidelines
17 that you were telling us about?
18    A  I'm sure it does.
19    Q  And is it your understanding that this
20 platform was in the Unocal building?
21    A  Correct.
22    Q  And then you say, "According to the
23 March 7th memo from Roxanne Sinz, Unocal did not
24 conduct safety meetings for the office or
25 maintenance staff nor did they conduct any

Page 116

1  periodic safety inspections."
2     A  Right.
3     Q  And we talked about that before.
4        Now that I see this document, and it's
5  756; is the memo you're referring to the next
6  page, LG757?
7     A  Correct.
8     Q  And then, again, at the end you repeat
9  that part of the contract that we quoted before
10 and that you indicated earlier in the Safety
11 Narrative on Article 6, "Customer, paren, Unocal,
12 end paren, will be solely responsible for any
13 removal, replacement or refinishing of the
14 building structure or finish that may be required
15 to gain access to such equipment."
16       What's the significance of that
17 statement to you?
18    A  Simply that Unocal contractually had the
19 responsibility to provide access and the means to
20 get up there. And there is a conflict because
21 Siemens -- I remember at the time, in fact, we
22 talked about it, and I believe that I referenced
23 it. I said, well, they carry ladders with them.
24 Because if you ever see any of their trucks, they
25 have ladders on the darned things.

Page 117

1        And one of -- either Crabbe or it might
2  have been Larry, said, yeah, I tried carrying the
3  ladder up the stairs because it wouldn't fit in
4  the elevator and I scraped the side and they made
5  me come back on my own time and paint the wall.
6  So that's why he stopped taking his ladder up
7  there and used the Unocal.
8     Q  And do you recall how many levels up it
9  was? At least six flights up?
10    A  Oh, pretty -- yes. You or I would not
11 want to carry that ladder up there.
12    Q  And then even after -- do you recall
13 being in the penthouse room and having to go
14 around corners to get to the filter room?
15    A  Yes, it wasn't --
16    Q  It wouldn't be very -- I mean, would it
17 be kind of difficult to have to bring a ladder up
18 each time you did that?
19    A  Yes. You've been there, right? You
20 understand that, that it would.
21    Q  Well, yeah, we've been in the building
22 to look at it since that.
23       LG739, can you take a look at that?
24    A  I'm sorry. 739?
25    Q  Yes. Actually, before 739 let's go to

30 (Pages 114 to 117)

Page 206

1  across at the narrow point?
2       MS. JOHNSON: Objection; foundation.
3     A  I don't remember. I do -- will state
4  that when we took the pictures, we usually don't
5  go by estimate. We take pictures of the
6  measurement from a distance perspective and then
7  where we can record -- see there was X number of
8  feet, X number of inches. And for some reason I
9  did not include that, and my assumption is that it
10 was obvious in the pictures or it wasn't relevant.
11    Q  (By Mr. Cohn) It was obvious in the
12 pictures or not relevant -- oh, you mean the fact
13 that you didn't take measurements, you mean it was
14 obvious --
15    A  We did take measurements; I just didn't
16 record them.
17    Q  Oh, I see.
18    A  And I said the reason why it was either,
19 a, they were very clear in the pictures, so they
20 spoke for themselves or I did not think it was
21 necessarily relevant to this situation.
22    Q  It wasn't relevant because we know that
23 they didn't have another board so that there was
24 no side rail; is that what you're saying?
25    A  Right.

Page 207

1       MS. JOHNSON: Objection; foundation.
2     Q  (By Mr. Cohn) Do you know if -- besides
3  more hazardous lighting, do you know if it might
4  make it more difficult to actually remove the
5  filters if you have these completely walled off
6  right in the middle?
7     A  Well, obviously you could not do it that
8  way because if you remember the picture, it was
9  adjacent to the filters, but what you would...
10    Q  I'm sorry. Are you done?
11    A  Well, I mean, again, I'm not here to
12 speculate, but obviously what you would do is, to
13 do the upper ones you would put the platforms in
14 and on the lower ones you would probably take them
15 off.
16    Q  You would take the planks off you mean?
17    A  Right, or at least take the closest one
18 so that you could access it.
19    Q  Do you know how heavy the planks were?
20 Did you --
21    A  No, but by looking at them, you wouldn't
22 just flip -- I mean, they were substantial.
23    Q  Would it take -- do you think it would
24 take two people to actually put the planks in
25 place?

Page 208

1     A  I wouldn't know.
2       MS. JOHNSON: Objection; foundation.
3     A  I wouldn't know.
4     Q  (By Mr. Cohn) What is your best --
5  well, did you try and move one of the planks on
6  your own?
7     A  I did shove one back to make sure we
8  were protected, but that was sliding it across
9  that beam. It wasn't lifting.
10    Q  Well, would you consider that a
11 hazardous situation where the plank itself is
12 loosely placed on top of the bracket?
13    A  I wouldn't speculate at this point. It
14 would depend on the situation.
15    Q  Well, is it -- would it be safer if the
16 planks have some positive connection so that they
17 can't move?
18    A  Of course.
19    Q  In terms of the lighting, did anybody
20 explain to you why they couldn't have better
21 lighting in the room?
22    A  No. And it was terrible. I mean, it
23 was a major problem.
24    Q  Even using the flashlight, was it still
25 difficult to really see?

Page 209

1     A  Yes, it was difficult. And to my
2  recollection, we ended up using three flashlights
3  just to get the pictures to -- I mean, the cameras
4  to operate.
5     Q  Is it -- normally you carry flashlights
6  with you; is that why you had them?
7     A  Yes, that's standard issue for us.
8     Q  Do you know if Mr. Burns had a
9  flashlight with him at the time?
10    A  I believe either he or Roxanne stepped
11 out and got one.
12    Q  Now, I thought there was some testimony
13 previously that Ken Burns being on site might be a
14 factor to lower -- to affect the -- to be taken
15 into consideration that they had a safety
16 technician on site in terms of penalty or
17 factoring in the good faith?
18    A  It could be a factor, yes. They had
19 somebody -- Ken has strong credentials.
20    Q  But did you ask Ken how often he was at
21 the building site?
22    A  I did ask, and he said he had conducted
23 an -- had conducted an -- I don't know if it was
24 plural or not -- an inspection there, but that his
25 major responsibility was the platforms.

x
y

Page 214

1  Q  And I'm assuming many of these involve
2  you going to buildings where there may be
3  violations by the owners of the buildings and the
4  landlords or the building managers.
5  A  Right.
6  Q  Does the manager, owner, landlord of the
7  building have a duty to provide a safe place
8  for --
9     MR. MCKINSTRY: I'm going to object to
10 that. I think it's calling for a legal conclusion
11 on his part. He's not a lawyer. He's not the
12 building representative. If you're talking in
13 terms of employer, that's a whole other issue.
14 Whether it violates OSHA law, that's another
15 issue. If you're talking about the owner of a
16 building providing -- in terms of the liability of
17 the builder -- the owning of the building, that's
18 a different issue. That doesn't have anything to
19 do with employer liability. That's --
20 Q  (By Mr. Cohn) Well, in this case the
21 owner of the building is the employer of Larry
22 Grove's employer. So an -- okay -- an owner of a
23 building has contractors work in their building.
24 Does the owner of the building --
25 A  They hire contractors.

Page 215

1  Q  They hire contractors. And if they
2  supply a work platform or a scaffold or a ladder,
3  do they have a duty to provide these safe devices
4  for the contractors if they're provided by the
5  employer/owner of the building?
6     MS. JOHNSON: Objection; foundation.
7     MR. MCKINSTRY: I'm going to reimpose my
8  objection. If you're talking about liability as
9  an employer under OSHA law --
10    MR. COHN: Yes.
11    MR. MCKINSTRY: -- then I think he can
12 answer. If you're asking for liability as an
13 owner of a building, I think it's a different
14 question.
15 Q  (By Mr. Cohn) Can you answer that
16 question? As the employer --
17 A  Well, you're mixing your issues here.
18 Q  Well, explain to me.
19 A  Are we talking about an owner of a
20 building, or are we talking about a company like
21 Unocal that hires the subcontractor to do work for
22 them?
23 Q  But Unocal is the owner of the building
24 plus the hirer of the contractor. Does that make
25 any difference?

Page 216

1     MR. MCKINSTRY: And we're talking about
2  employer liability here, not landlord liability.
3  That's my point.
4  A  I refer you back to the multi-employer
5  work site policy.
6  Q  (By Mr. Cohn) Well, under the -- when
7  they talk about the general -- well, let's take a
8  look at that if it's in here.
9  A  Look under creating or controlling, to
10 make it easy.
11 Q  Well, if you look under the example for
12 creating employer under, I guess, Exhibit 11.
13 Employer that caused the hazardous condition,
14 which you stated before, that violates an OSHA
15 standard is the creating employer. And the first
16 example they give is someone that operates a
17 factory and they have contractors come in to
18 service machinery. If the company that operates
19 the factory creates a hazard, then they're the
20 creating employer liable for the hazard they have
21 created that impacts the employees of its
22 contractors; is that correct?
23 A  Correct.
24 Q  Now, in this case here we have a work
25 platform that's affixed to the -- bolted to the

Page 217

1  wall in Unocal and there's some -- and your notes
2  indicate that it may have been there since the
3  1970s.
4  A  Right.
5  Q  Now, what does -- does this convey to
6  you that Unocal as the employer or owner of the
7  building is the one responsible for this -- is
8  responsible for this work platform?
9     MS. JOHNSON: Objection; foundation.
10 A  Again, a complex issue. It could depend
11 on a couple of things. Getting back to Step 1 is,
12 they had their own ladders and they were extension
13 ladders. I would think that under the reasonable
14 man concept it might be much more prudent not to
15 use the work platform and use your own ladder just
16 to go all the way up.
17 Q  (By Mr. Cohn) And how do you get the
18 ladder into the building?
19 A  Well, he had gotten it in there several
20 times before, you know.
21 Q  Dragging it up seven flights of stairs?
22    MS. JOHNSON: Objection; argumentative.
23 Q  (By Mr. Cohn) Well, that leads to
24 another question: Your own notes indicate that
25 under the service contract between Unocal and

Page 218

1  Siemens it was the duty of Unocal to provide
2  access to the equipment that they were going to
3  replace.
4      A   Right.
5      Q   Would that indicate to you it was the
6  responsibility of Unocal to supply the ladder or
7  work platform that was to be used by Siemens to
8  access the filters to replace them?
9          MS. JOHNSON: Objection; foundation.
10     A   I'm not in a position to make that
11 judgment.
12     Q   (By Mr. Cohn) You put that down --
13 well, why did you put that down in your Safety
14 Narrative report if it's --
15     A   Because it's --
16     Q   Did you consider it important?
17     A   Yes. And I go back to my previous
18 statement that we are told to ask for the contract
19 to try to determine. It's not a cut and dry
20 situation, but we try to help determine who has
21 the responsibility.
22     Q   Was there anything in any of the
23 contracts you read between Unocal and Siemens that
24 placed the responsibility on Siemens to supply
25 ladders or work platforms to access the equipment?

Page 219

1      A   I don't remember.
2      Q   And if there was no such requirement in
3  the contract and if in fact the requirement was on
4  Unocal, you wouldn't have -- is that a factor in
5  considering Unocal's liability for the citations?
6      A   Yes.
7          MR. COHN: I don't have any further
8  questions.
9          MS. JOHNSON: Objection to the
10 foundation on the last question.
11         I don't have any other questions. You
12 are free to go. Get out quick.
13         THE VIDEOGRAPHER: This concludes the
14 deposition of Tom Scanlon. The time is 3:30.
15         (Signature waived.)
16         (Proceedings concluded at 3:30 p.m.)
17
18
19
20
21
22
23
24
25

Page 220

1              CERTIFICATE
2
3      I, LESLIE J. KNISLEY, Shorthand
4  Reporter and Notary Public in and for the State of
5  Alaska, do hereby certify that the witness in the
6  foregoing proceedings was duly sworn; that the
7  proceedings were then taken before me at the time
8  and place herein set forth; that the testimony
9  and proceedings were reported stenographically by
10 me and later transcribed by computer transcription;
11 that the foregoing is a true record of the
12 testimony and proceedings taken at that time;
13 and that I am not a party to nor have I any
14 interest in the outcome of the action herein
15 contained.
16     IN WITNESS WHEREOF, I have hereunto set
17 my hand and affixed my seal this _____ day
18 of _____ 2006.
19
20
21
          _____
22        LESLIE J. KNISLEY
          Notary Public, State of Alaska
          My Commission Expires 12/31/06
23
24
25

# STATE OF ALASKA

FRANK H. MURKOWSKI, GOVERNOR

**DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT**

3301 Eagle Street, Suite 305
Anchorage, AK 99503

OCCUPATIONAL SAFETY & HEALTH
LABOR STANDARDS & SAFETY DIVISION

PHONE: (907) 269-4940
FAX:   (907) 269-4950/269-3723

January 19, 2006

Weidner & Associates
Attn: Mr. Michael Cohn
330 L. Street, Suite 200
Anchorage, AK 99501

Re:   Freedom of Information Request
      UNOCAL/Siemens Building Technologies, Inc.
      Inspection Number: 305757510 & 305757577

Dear Mr. Cohn:

- In response to your request enclosed, please find copies of the above referenced files. Employee comments/names may have been withheld in accordance with AS 18.60.087(b). Confidential or privileged information has also been withheld.

Unfortunately, these files have already been prepared for filming, so any photos that may have been included have long since been removed from the file. We apologize for any inconvenience this may cause you.

Standard copy fees are waived.

If you have questions or are in need of further assistance, please do not hesitate to contact me at (907) 269-3727.

Sincerely,

Michelle McNair-Davis
Records Custodian

Enclosures

Cc: Foir File
    Inspection File


DEPOSITION EXHIBIT 6
SCANLON 4-14-06

LG00683

Page 2  
Unocal 76 Incorporated

Wed Apr 9, 2003 8:29am  
Inspection Nr. 305757577

| Coverage Information/Additional Comments |
|---|

## SAFETY NARRATIVE

Site Location:   909 W. 9th. Ave Anchorage Ak 99519  
                 Rooftop Mechanical Room (penthouse)

Employer:        Unocal 76 Inc.  
                 909 W. 9th. Ave.  
                 Anchorage, Ak. 99519-6247  
                 Telephone   907-263-7393  
                 Fax         907 263 7393

Roxanne Sinz       Manager, Public Affairs          Unocal  
Paul Crabbe        Building Maintenance Technician, Unocal  
Ken Burns          Safety Consultant                Unocal  
Tom Scanlon        OSHA

On Thursday February 27th I was assigned to conduct an inspection at the Unocal Corporate Office Building located at 909 West Anchorage Ave. Anchorage AK by Sue Lynn Hight (acting) Assistant Chief, OSHA Enforcement Section. A formal complaint had been filed by a Siemens Building Technology employee. Siemens is a maintenance service company specializing in HVAC systems. Siemens has serviced the Unocal HVAC system since July 1994. The complaint alleged that Siemens employees were exposed to fall hazards when replacing HVAC filters at the Unocal building. The complaint states that the employees used non-approved scaffolding when replacing filters.

On Monday March 2, 2003 Mr. Lee Zhao, CHSO trainee, and I conducted an opening conference with Siemens management. After a brief opening conference we proceeded to the Unocal building to begin the inspection. At the Unocal office we met Ms. Roxanne Sinz and Mr Ken Burns. Explained the purpose of our visit.

Ms. Sinz and Mr Burns accompanied us to the work site in question. Began inspection, photographed the work site and completed the inspection.

On March 5th OHSA made the following decisions: The work site was to be considered a multi employer location. Unocal Alaska was the creating employer for this complaint. And the structure in question was a work platform and not a scaffold.

On Thursday March 6th I conducted and opening conference with Ms. Roxanne Sinz, Manager, Public Affairs and Communication. Ms. Sinz has the responsibility for Unocal Offices Building Maintenance. She had just been assigned this responsibility the previous week. Discussed all of the items on the pre-inspection check list and inspection guide lists.

Requested copies of the OSHA 200/300 logs for 200,2001, 2002, safety program and any pertinent safety committee minutes.

Ms. Sinz and Mr. Crabbe accompanied me to the Rooftop Mechanical Room (penthouse) to take additional pictures. Interviewed Mr. Crabbe.

At this time I requested a current copy of the Unocal Siemens Service Contract.

The following individuals were interviewed during the inspection process:  
Brent Davies, Pipefitter,   Siemens  
Larry Groves, Pipefitter,   Siemens  
Dan Hartan, Bldg Maint Tech, Unocal  (former)  
Charles Arnet, Bldg Maint Coordinator, Unocal (former)  
Paul Crapps, Bldg Maint Tech, Unocal  (currently)  
Archie Cook, Uncocal Human Resources Mgr with responsibility for Bldg Maint for the previouse three and a half years.

The day after the inspection Ms. Sinz directed Paul Crabbe to dismantle the work platform and to remove a step ladder that was used to access the platform.

On September 9th 2002 the work platform had collapsed while a Siemens employee was standing on it while replacing filters. Unocal Mgt. directed Paul Crabbe, Unocal Building Maintenance Technician to replace the platform after it had collapsed.

The Siemens/Unocal Service Contract, dated May 31, 2000 stated in Article 6, Customer Responsibilities: "Customer (Unocal) will be solely responsible any removal, replacement, or refinishing of the building structure or finishes that may be required to gain access to the Equipment.

Page 3
Unocal 76 Incorporated

Wed Apr 9, 2003 8:29am
Inspection Nr. 305757577

Conducted closing conference on April 4th with Ms. Sinz and Mr. Burns. Discussed all of the items on the closing conference checklist. Discussed potential violation for unguarded work platform that was four feet or higher from the next level. Gave Ms. Sinz copy of CPL 2-0, 124 Multi employer citation policy and a copy of OSHA regulation 1910.23 (c)(1) Protection of open-sided floors, platforms, and runways. Explained that OSHA considered the worksite a multi employer location and that Unocal Alaska was the creating employer in regards to this citation. And the structure in question was a work platform rather than a scaffold.

Encouraged Ms. Sinz to use the services of OSHA Consultation and Training Section.

Ms. Sinz and Mr. Burns were cooperative and accommodating during the inspection process. Both had positive attitudes towards the inspection.

| Inspection Number | 305757577 |
|---|---|

**COVERAGE INFORMATION**

**NATURE AND SCOPE**

Check Applicable Boxes and Explain Findings:

[x] Complaint Items
Fall hazards

[ ] Referral Items

[ ] Accident Investigation Summary & Findings

[ ] LEP

[ ] Planned Inspection

**NATURE AND SCOPE -- UNUSUAL CIRCUMSTANCES** (Mark X and explain all that apply:)

[ ] None

[ ] Denial of entry (see denial memo)

[ ] Delays in conducting the inspection

[ ] Strikes

[ ] Jurisdictional Issues

[ ] Trade Secrets

[ ] Other

Comments:

**OPENING CONFERENCE NOTES:**

**RECORDKEEPING PROGRAMS**
(Other than 29 CFR 1904 requirements)

Does the employer have a recordkeeping program relating to any occupational health issues (monitoring, medical, training, respirator fit tests, ventilation measurements, etc.)?

[ ] Yes  [ ] No

LG00750

Page 4  
Unocal 76 Incorporated

Wed Apr 9, 2003 8:29am  
Inspection Nr. 305757577

Are any programs required by OSHA health standards?

☐ Yes   ☐ No

**COMPLIANCE PROGRAMS**
(engineering controls, PPE, regulated areas, emergency procedures, compliance plans, etc.)

Address any relevant compliance efforts regarding potential health hazards covered by the scope of the inspection.

**PERSONAL HYGIENE FACILITIES AND PRACTICES**
(showers, lockers, change rooms, etc.)

Are any required by OSHA health standards?

☐ Yes   ☐ No  
What Standards:

**HAZARD COMMUNICATION PROGRAM**

Written Program (complete)

☐ Yes   ☐ No

MSDS's (all)

☐ Yes   ☐ No

Labeling (adequate)

☐ Yes   ☐ No

Training (complete)

☐ Yes   ☐ No

Copy MSDS's/Program attached

☐ Yes   ☐ No

Comments:

**ACCESS TO EXPOSURE & MEDICAL RECORDS**

**FIRE PROTECTION AND EVACUATION PROCEDURES**

**SYSTEMS SAFETY AND EMERGENCY RESPONSE**

**RESPIRATOR PROGRAM**

**LOCKOUT TAGOUT/ \ELECTRICAL SAFE WORKPRACTICES**

**FIRST AID**

**ELECTRICAL SAFE WORKPRACTICES**

**EXPOSURE CONTROL PLAN**

**LABORATORY STANDARD**

**ERGONOMIC PROBLEMS**

☐ Yes   ☐ No  
If yes, complete the items 1 and 2 below.

1. Lifting (10% or more similarly exposed employees injured)

    a. Total # of employees exposed to job:

    b. Total # of cases for job:

LG00751

Page 5  
Unocal 76 Incorporated

Wed Apr 9, 2003 8:29am  
Inspection Nr. 305757577

2.  CTD's (10% or more similarly exposed employees have CTD's; 5% or more CTS cases)

   a. Total # of employees exposed to job:

   b. Total # of cases for job:

   Other significant injury/illness trends

   [ ] Yes  [ ] No
   If yes, explain.

### EVALUATION OF EMPLOYER'S OVERALL SAFETY AND HEALTH PROGRAM

General Industry:

[X] Yes  [ ] No    Employer has a Safety & Health Program

[X] Yes  [ ] No    Written

[X] Yes  [ ] No    Copy Attached

Construction Industry:

[ ] Yes  [ ] No    Accident Prevention Program

[ ] Yes  [ ] No    Written

[ ] Yes  [ ] No    Copy Attached

**Evaluation of Safety and Health Program**
(0=Nonexistent 1=Inadequate 2=Average 3=Above average)

[2] Written S&H Program

[2] Communication to Employees

[2] Enforcement

[2] Safety Training Program

[ ] Health Training Program

[ ] Accident Investigation Performed

[X] Preventive Action Taken
Work platform and ladder was removed on March 7th, 2003

Comments:

### CLOSING CONFERENCE NOTES:

Were any unusual circumstances encountered such as, but not limited to, abatement problems, expected contest and/or negative employer attitude? If yes, explain below.

[X] Yes  [ ] No

The Unocal Safety Consultant, Burns, stated during the closing conference that the citation would not go any further than the informal conference.

19. Closing Conference Checklist ("x" as appropriate)

[ ] No Violations Observed

LG00752

Page 6  
Unocal 76 Incorporated

Wed Apr 9, 2003 8:29am  
Inspection Nr. 305757577

- [X] Gave Copy Employer Rights
- [X] Reviewed Hazards & Standards
- [X] Discuss Employer Rights/Obligations
- [X] Encouraged Informal Conference
- [ ] Offered Abatement Assistance
- [X] Discussed Consultation Programs
- [ ] Employer/Employee Questionnaires

**Closing Conference Held with Employee Representative**

- [ ] Jointly  [X] Separately

| CSHO Signature | *[signature]* | Date | 4/09/03 |
|---|---|---|---|
| Accompanied By | | | |

LG00753

# Alaska Department of Labor
Occupational Safety and Health



## Worksheet

Thu Apr 10, 2003 10:40am

| | |
|---|---|
| Inspection Number | 305757577 |
| Opt. Insp. Number | 022-03 |

| | | | | | |
|---|---|---|---|---|---|
| Establishment Name | Unocal 76 Incorporated | | | | |
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 001 |
| Number Exposed | 1 | No. Instances | 1 | REC | |
| Std. Alleged Vio. | 1910.0023( c)( 1) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 15 | | | | | |

| Abatement Documentation Required | | Date Verified | |
|---|---|---|---|
| | | | |

| Substance Codes | |
|---|---|

| AVD/Variable Information | |
|---|---|

Protection of open-sided floors, platforms, and runways.
1910.23(c)(1)
(1) Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides,
STD 1-1.5

EXAMPLE: A Siemens Building Techologies Inc employee was working at the Unocal Office ~~located at 909 W. 9th Ave Anchorage Ak.~~ TB on a work platform that was four feet or more about adjacent floor or ground level that was not guarded by a rail or equivalent. The employee had changed the filters at Unocal for the past four years, once every three months. Employee was exposed to fall hazard due to the unguarded open side of platform.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| L Low | L Lesser | 01 | 1500.00 | 0 | 15 | 10 | 1125.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | Maintenance | Employer | Unocal Alaska | | |
| Nr of Employees | 1 | Duration | 4 days | Frequency | 6 hours a day |
| Employee Name | Paul Crapps | | | | |
| Address | | | Phone | | |
| Occupation | Pipefitter | Employer | Siemens Building Technologies | | |
| Nr of Employees | 1 | Duration | 4 days | Frequency | 6 hours a day |
| Employee Name | Larry Grove | | | | |
| Address | | | Phone | | |
| Occupation | Pipefitter | Employer | Siemens Building Technologies | | |
| Nr of Employees | 1 | Duration | 4 days | Frequency | 6 hours a day. |
| Employee Name | Brent Davies | | | | |

| Unocal 76 Incorporated | | Thu Apr 10, 2003 10:40am |
|---|---|---|
| | | Inspection Nr. 3●●57577 Citation Nr. 01 Item/Group 001 |
| Address | | Phone |

Instance Description:     A. Hazard    B. Equipment    C. Location    D. Injury/Illness    E. Measurements

| 4. Date/Time |
|---|
| 3/06/03 |

20. Instance Description - Describe the following:
   a) Hazards-Operation/Condition-Accident:
      Employee was working on a work platform that was more than four feet or more above adjacent floor or ground without any rail or guard protecting the open side.
   b) Equipment: Work platform
   c) Location 909 W. 9th Ave, Anchorage Ak
         Rooftop Mechanical Room (penthouse)
   d) Injury/Illness
         Bruises, contusions, fractures, broken bones, death
   e) Measurements
         7 feet 2 inches

| 21. Photo Number | Location on Video |
|---|---|
| Pix 1,2,3,4,5,6,7,8,9,10,11,12,13,14,15 | |

23. Employer Knowledge : Yes, Unocal management acknowledged during inspection and subsequent conversations with OSHA Safety Officer that the platform had been in place for "years and years" probably back to the 70's. One employee who had worked for twelve years at Unocal said that the platform had been there when he started work. During employee interview employee stated that the Unocal Building Maintenance Coordinator had visited the mechanical room on "several" occasions. And in fact had "handed" filters to a Siemens employee while he was standing on the platform.

24. Comments (Employer, Employee, Closing Conference) : Employees acknowledged during employee interviews that the work platform in Pix's 1 thru 15 were used on a regular basis ( for at least four years) to change the filters the HVAC filers.

On September 9th 2002 the work platform collapsed while a Siemens employee was standing on the platform and replacing filters. Unocal Management directed their Building Maintenance Technician to replace the platform after the fall.

After the OSHA inspection on March 3, 2003, Ms. Sinz and Mr. Burns directed the Unocal Building Maintenance Technician to remove the platform and a step ladder that was being used to access the platform.

The Siemens Technician changed the filters once every three months. It would take 5-6 hours to replace all 52 filters. There are a total of 52 filters, 24x24x2 that were replaced on a regular basis.

LG00755

Page 3  
Unocal 76 Incorporated

Thu Apr 10, 2003 10:40am  
Inspection Nr. 3● ●7577 Citation Nr. 01 Item/Group 001

25. Other Employer Information : The Unocal Manager responsible for Building Maintenance for the previous three and a half years acknowledged during an interview that he had authorized over time for the Building Maintenance Coordinator to allow him to oversee the Siemens filter replacement after normal business hours.. After an accident on September 9th, 2002 when the platform had fallen, Unocal management directed the Unocal building maintenance technician to replace the work platform.

OSHA considers the Unocal office building to be a multi-employer worksite. Unocal is the creating employer for this citation. It has the responsibility and duty to exercise reasonable care to prevent and detect safety hazards and or violations. According to the March 7th memo from Roxanne Sinz Unocal did not conduct safety meetings for the office or maintenance staff nor did they onduct any periodic safety inspections. Siemens Building Technologies Inc. has serviced the Unocal HVAC system since July 1994.

Per the Siemens Unocal Service Contract Article 6, dated May 31, 2000: Customer Responsibilities: "Customer (Unocal) will be solely responsible any removal.replacement, or refinishing of the building structure or finish that may be required to gain access to such equipment.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O? | Repeat? | Willful? |
| Serious | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
| No | No | No |

| Event Date: | Event Code | Action Code | Citation Type | Penalty | Abate Date: | Final Order |
|---|---|---|---|---|---|---|
| | Z Add transaction | A Add | S Serious | 1125.00 | | |

LG00756