Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA ) <br> GROVE, SARAH GROVE, and, ) <br> MICHAEL GROVE (DOB 1/21/88) ) <br> By and through his father ) <br> LAWRENCE H. GROVE, ) <br> ) <br> ) <br>           Plaintiffs, ) <br> ) <br>    vs. ) <br> ) <br> UNOCAL CORPORATION, ) <br> ) <br>       Defendant. ) <br> ) | Case No. 3:04-cv-0096-TMB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO DEFENDANT UNOCAL'S LIABILITY FOR
NEGLIGENCE, PUNITIVE DAMAGES, AND ALLOCATION OF FAULT**


I.    INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiffs, Larry Grove, Cynthia Grove, and their

children, Sarah Grove and Michael Grove, move this court for

summary judgment as to defendant Unocal's liability for

negligence, punitive damages and allocation of fault.  On

September 9, 2002, plaintiff Larry Grove, an employee of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Siemens Building Technologies, Inc. ("Siemens") was working in the air filter/mechanical room of the Unocal building at 909 West 9th Avenue, Anchorage, Alaska.  Siemens had a contract with defendant Unocal to service the building.  Larry Grove was changing air filters, which extended from the floor to the ceiling in the filter room.  The air filters near the ceiling necessitated Mr. Grove accessing a work platform/scaffold affixed to the wall in the filter room.  While on the work platform/scaffold, it collapsed, and Mr. Grove sustained permanent serious ankle injuries.  Among the ankle injuries he sustained was a fracture to his talus bone, a portion of which was removed in a surgery in May of 2003.  Additional damage was occurred to ligaments and tendons.  In fact, the first surgery on Mr. Grove in May 2003 involved three separate injuries to the ankle.  Mr. Grove still has a permanent severe ankle injury as a result of the collapse of the work platform/scaffold at the Unocal building.

1.    Defendant Unocal is the owner of the building and responsible for any and all structures built and attached to the building.  This includes the work platform/scaffold that collapsed injuring plaintiff Larry Grove on or about September 9, 2002.  It has been admitted by Unocal employees, and it is undisputed that the work platform/scaffold was

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

defective, unreasonably dangerous, and unsafe, and had been defectively designed, built and maintained. Furthermore, there is sufficient evidence to support that such a structure could not be built within the Unocal building without the knowledge, permission or acquiescence of Unocal.

The evidence suggests that this structure had been in the Unocal building for many years. It is also acknowledged in the record that Unocal had conducted periodic safety inspections of the building, and these safety inspection records have never been produced by defendant Unocal. Defendant Unocal, after the accident involving Mr. Grove and the OSHA inspection in March 2003, destroyed the platform and any and all evidence contained therein. Furthermore, Unocal has been unable to locate and/or produce any records concerning the design, construction or maintenance of the work platform/scaffold.

It is appropriate to find that there has been spoliation of evidence, particularly the destruction of the work platform when Unocal had knowledge, or constructive knowledge, of Mr. Grove's injury and the significant probability of a law suit arising out of his accident. The failure of Unocal to have any evidence concerning the platform, suggests that spoliation of evidence and/or an adverse inference as to the destruction of evidence is

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

warranted, further supporting summary judgment as to negligence. The testimony of former Unocal employee, Archie Cook, as well as the testimony of present employee Ken Burns, suggest that inspections were done to find hazards in the building, and that it is therefore likely that Unocal was aware of the hazard and/or negligently inspected the premises. Furthermore, Unocal employee Ken Burns, who conducted safety inspections, testified that if he had seen the platform he would have had it removed.

There is sufficient evidence to find that the platform was negligently constructed and maintained, and is the cause of the accident and injuries to plaintiff Larry Grove. Unocal has also asserted ownership over the platform/scaffold by filing a motion to require the plaintiffs to return to the possession of Unocal the sheared bolts that plaintiff Larry Grove retrieved from the filter room following the collapse of the work platform/scaffold in September 2002. Defendant Unocal's pleadings are an admission that they are the owner of the platform/scaffold.

In addition, the testing of the sheared bolts and the analysis by plaintiffs' experts, including that in regard to the bolts and the design, construction and maintenance of the platform/scaffold establish that there is no genuine issue of material fact regarding the liability of Unocal for this

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

4

defective, dangerous and unreasonable work platform/scaffold. See Expert Reports of Joseph Balser, Lindley Manning and Bob Carmichael, attached hereto as Exhibits 1-3.

Accordingly, with all the evidence presented in plaintiffs' motion, and what has been cited above, it is hereby appropriate to order that a finding of negligence against Unocal is warranted based on the standard of proof for summary judgment.

2.  Plaintiffs also seek a finding that punitive damages are warranted against defendant Unocal.  It is undisputed, based on the evidence, that the work platform was inadequately designed, constructed and maintained.  There is also sufficient evidence to find that this platform/scaffold was in such poor condition that the continuing existence of same without removing it, and without adequate maintenance and corrective action, amounts to reckless disregard to the interests of others, and safety of others, including that of contractors.  However, Unocal had a contract with contractors such as Siemens, that in certain situations would provide that contractors would indemnify Unocal for Unocal's own negligence.  Thus, it is reasonable to presume that Unocal took less of an interest in remedying a dangerous condition when the harm appeared to be most likely to fall upon that of contractor employees, and Unocal might expect to be

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

indemnified by the contractor for injuries to contractor employees. Accordingly, it is appropriate to find that this amounts to reckless indifference, and justifies the imposition of punitive damages against Unocal for the injuries sustained by the plaintiffs herein.

3. Defendant Unocal has filed a notice seeking to assert apportionment of fault against plaintiff Larry Grove's employer, Siemens. Plaintiffs also move for summary judgment precluding defendant Unocal from shifting the risk of loss from itself through apportionment of fault to Larry Grove's employer, Siemens. Under AS 09.17.080, in general there is apportionment of fault under the Alaska State law. It is also recognized that even though the employer has the benefit of the exclusive remedy provisions of AS 23.30.055, and thus cannot be found liable in tort to its own employees, that a third party tort feasor in appropriate circumstances may seek to apportion fault to the employer, with the net result that the employee cannot recover the damages that are allocated to the employer. Plaintiffs seek an order that either finds that such apportionment should not be allocated to Siemens or that Unocal should be considered jointly liable with Siemens, such that even though Siemens does not have to pay any such damages, that Unocal will still be liable for same.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

There appears to be an indemnity agreement between Siemens and Unocal wherein Siemens might need to indemnify Unocal for damages resulting from the negligence of Unocal to employees of Siemens. Thus, Siemens has an interest in seeking to place as much fault upon itself as possible to diminish the liability of Unocal, which in turn would ultimately diminish the liability for payment for any such damages on Siemens through an indemnification contract. The defendant Unocal has failed to provide the actual indemnification agreement(s) between Siemens and Unocal. To the extent that any Siemens employees testify it is appropriate to impeach the Siemens employees with the evidence that it is to the benefit of Siemens to in fact attempt to have the blame placed upon Siemens instead of Unocal. It is contrary to public policy to allow such an indemnification clause to have effect and to permit the third party tort feasor to evade responsibility by having the employer assume the responsibility for the accident. There is also joint representation of Unocal and Siemens.

The Alaska Apportionment statute is normally expected to provide that the parties will be attempting to minimize their own fault, and the purpose of the statute is not realized when two parties work together to increase the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

percentage of fault of the employer while attempting to diminish the fault of the third party tort feasor.

Siemens as the employer has a statutory lien for worker's compensation benefits paid to Larry Grove arising out of the accident that occurred while he was in the course and scope of his employment for Siemens. Yet, defense counsel representing Unocal is also the defense counsel that has been representing Siemens, at least for a large portion of this case. Accordingly, Siemens and Unocal have been working together and cooperating through defense counsel in pursuing this claim, and therefore there is no arms length distance between these two entities in regard to any apportionment of fault issues. Not only is Siemens now operating contrary to the lien that it possesses under the Worker's Compensation Act, but by cooperating with Unocal, Siemens' testimony is tainted by this collusion/joint defense. It would be contrary to public policy to allow an employer and a third party tort feasor to collude in such a manner to the detriment of the plaintiffs.

This joint cooperation includes defense counsel for Unocal representing itself as defense counsel for Siemens in seeking records from various sources. This close cooperative effort includes the efforts by defense counsel to prevent plaintiffs from interviewing witnesses from employer Siemens,

while at the same time there is full cooperation between Siemens and Unocal.

Siemens employees were sent over to Unocal defense counsels' office for "pre-deposition interviews" with Unocal defense counsel, thus Unocal learned whatever information they could from witnesses, while preventing plaintiffs' counsel from having the same access. Furthermore, this one-sided access has also resulted in the potential tainting of witnesses, and furthers the plaintiffs' theory of collusion.

Siemens has turned over to Unocal and Unocal defense counsel, which is also Siemens' defense counsel, all records that it possesses that might have any bearing on this case, while at the same time either withholding the records or redacting records that are provided to plaintiffs' counsel, after being reviewed by defense counsel.

The evidence of close cooperation between Siemens and Unocal makes apportionment of fault as to Siemens inappropriate as Unocal/Siemens have colluded and cooperated with each other to the point that they should be treated as one entity for purposes of allocation of fault.

Unocal should not get the protection of the exclusive remedy provision, while Siemens may still have the protection of the exclusive remedy provision. However, any fault that is attributable to Siemens will also be considered

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that of Unocal for purposes of this case. In other words, Unocal should not benefit by seeking, through its joint cooperation strategy with Siemens to shift responsibility in any part to Siemens. Such joint representation/strategy is contrary to the purposes of the worker's compensation lien, contrary to the purposes of the apportionment statute, and contrary to a fair and impartial trial. Any witnesses for Siemens' management who may testify and try to take some of the blame for the accident, is so tainted that such testimony should not be permitted at all, or even if permitted, not result in any allocation of fault to Siemens.

4. As to allocation of fault between Unocal and Larry Grove, there is insufficient evidence to show that Larry Grove had the training and safety credentials and knowledge of the deficiency of the manner in which the work platform/scaffold was constructed, including the deficient bolts/screws utilized, and the corrosion to the bolts/screws over the passage of time. Thus, it would be inappropriate in this case as a matter of law to assess any percentage of liability to Mr. Grove in this matter.

## II.   STATEMENT OF FACTS

It is undisputed that Larry Grove was injured when a work platform/scaffold collapsed at the Unocal building while Mr. Grove was attempting to perform services under the

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

contract between his employer Siemens and Unocal in regard to servicing the Unocal building, in this case replacing filters in the filter room on the top floor of the building, which was the mechanical room, also known as the "penthouse."

Archie Cook, a former Human Resources Consultant at the Unocal office, 909 West 9th Avenue, Anchorage, Alaska, testified as follows:

> Q.   … Were there periodic safety inspections–
> A.   Yes.
> Q.   -- of the building from the time that you arrived in 1999 through 2002?
> A.   Yes.
> Q.   What did these periodic safety inspections entail?
> A.   Involved one of our safety technicians going around the office looking for safety hazards.

*Deposition of Archie Cook, pg. 32, lines 11-20;* Emphasis added; See Exhibit 4.

> Q.   Did you observe the safety inspection at all?
> A.   I didn't observe the inspection.  I saw the report.
> Q.   You saw the report?
> A.   Yes.
> Q.   And can you tell me how detailed the report would be?
> A.   I mean it was basically telling us what things were hazardous or potentially hazardous and potentially needed fixing.

*Deposition of Archie Cook, pg. 33, line 25 to pg. 34, line 8;* Emphasis added.

> Q.   What would be the basis of your understanding that the safety technician would check each of the rooms in the building?

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> A.   My understanding is that he was brought up
> to do a safety inspection.  I would expect him – <u>it's an</u>
> <u>expectation rather than knowledge – that he did check</u>
> <u>every nook and cranny within the office</u>.

*Deposition of Archie Cook, pg. 35, lines 7-13;* Emphasis added.

Unocal employee Kenneth Burns testified that his job position is Safety Specialist (Deposition of Kenneth Burns, May 9, 2006, at page 5, Exhibit 5).  He also testified as follows:

> Q.   I mean, <u>when you put that sentence in</u>
> <u>your – in your notes here</u>, did you consider that –
> <u>why did you consider it significant enough to put</u>
> <u>into your – in your notes?</u>
> A.   <u>That there was an oversight on not having</u>
> <u>that work platform erected properly.   Someone in</u>
> <u>the past years had failed – or neglected to do</u>
> <u>their job</u>.

*Deposition of Kenneth Burns, pg. 95, lines 11-18;* Emphasis added.

Mr. Burns admitted that he did two safety inspections of the building back in 1998 and 1999.  <u>Id</u>. at 75.  He also stated:

> Q.   <u>If you had conducted the '98 and '99</u>
> <u>inspection and saw that work platform in the</u>
> <u>filter room, would you have considered that a</u>
> <u>hazard to be abated?</u>
> A.   <u>Yes</u>.

*Deposition of Kenneth Burns, pg. 94, lines 19-23;* Emphasis added; See Exhibit 5.

Note too that despite the fact that plaintiffs have requested the safety inspections for the Unocal building,

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

12

defendant has not produced either the 1998 or the 1999 Ken

Burns safety inspections, nor any other safety inspections of

the building prior to the accident of September 9, 2002.[1]

Defendant Unocal produced a document during discovery

that is labeled DEF00027, which has a date of March 3, 2003 on

the top.  That document was prepared by Ken Burns.  In that

document, Mr. Burns states "it was obvious from the structure

that it had been erected many years ago."  See Exhibit 6.

Robert Sprinkle, an employee of Siemens, at his

deposition of April 24, 2006, (Exhibit 7) testified that the

work platform/scaffold was there, i.e., affixed to the wall in

the filter room in the Unocal building, back when his employer

(and it's predecessor Gyr & Landis) took over the contract.

Id. at 71.  This was in the late 1980's.  Mr. Sprinkle also

testified that as a technician for Siemens, who goes out on

service calls to various sites, he generally uses what is on-

site, and assumes that it is safe.  Id. at 69.  "Why would it

---

[1] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71, incorporated herein by reference.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

be there if it wasn't intended to be used …"  Id.  Paul

Crapps, an employee of Unocal, at his deposition on March 3,

2006, testified that he doesn't inspect the work platforms

that he utilizes as an employee of Unocal, because he relies

on the certified personnel to put together the work platform.

Deposition of Paul Crapps, March 3, 2006 at pages 90-91;

Exhibit 8.  Ken Burns was a former employee of OSHA.  John

Stallone, the head of OSHA, testified on April 14, 2006 that a

safety technician would know that you would have to replace,

or repair, the work platform.  John Stallone deposition at pg.

62; Exhibit 9.  He also noted that the safety reports on the

Unocal building should have been given to the OSHA inspector,

Tom Scanlon.  Id. at 61-62.  Mr. Stallone furthermore

testified that Unocal was the creating employee, and therefore

should be held responsible because it was their platform.  Id.

at 65.

Tom Scanlon, a Safety Inspector/Enforcement Officer for

OSHA inspected the platform in March 2003; Exhibit 10.  He was

not told about prior safety inspections.  Tom Scanlon

deposition of April 14, 2006 at pgs. 47-48.  He had also been

told that the platform had been there for at least 12 years.

Id. at 110-111.  The platform/scaffold is located in the

Unocal building.  Id. at 115.  Mr. Scanlon noted that pursuant

to the contract between Unocal and Siemens that Unocal was to

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

provide access.  Id. at 103-105.  It was apparent to Mr. Scanlon that Siemens "decided to use what Unocal had provided."  Id.  Under the contract, Unocal had the contractual responsibility to provide access.  Id. at 115.

Charles Arnett worked for Peak Oilfield Services at the Unocal building for many years (Charlie Arnett deposition of April 26, 2006 at pg. 6; Exhibit 11).  Plaintiff Larry Grove called Charles Arnett as soon as he was injured, and Mr. Arnett came and found Mr. Grove lying in the filter room and that Larry Grove was obviously hurt.  Id. at 96.  Mr. Arnett observed that there were bolts that had obviously sheared. Id. at 97.  Under the service contract between Siemens and Unocal (i.e., *Technical Support Program Proposal*, Exhibit 3 to the Siemens 30(b)(6) deposition and Exhibit 5 to Charlie Arnett Deposition; Exhibit 12 herein), Section 6.3, specified that Unocal was to provide access to Siemens to do the work. Section 6.3 states:

> 6.3  Customer [Unocal] will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices.  Customer will be solely responsible for any removal, replacement or refinishing o the building structure or finishes that may be required to gain access to such Equipment.

Exhibit 12; Emphasis added.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The service contract between Siemens and Unocal was reviewed by both Charles Arnett and Archie Cook.  See deposition of Charlie Arnett at pgs. 125-126.

Plaintiffs have attempted to find any and all records regarding the work platform/scaffold at the Unocal building. Unocal has provided <u>nothing</u>.  Unocal has, at various times, claimed inaccurately, or deceptively, that Siemens owned the work platform.  Siemens employees have denied same, and there are no records from Siemens that indicated that they had <u>at any time</u> built or serviced the work platform/scaffold. Indeed, as counsel for Unocal is also counsel for Siemens, it is not only error, but clear misrepresentation of the facts to claim in discovery answers, which plaintiffs have subsequently learned were false, that Siemens had anything at all do with this work platform/scaffold.[2]

Charles Arnett, who had worked in the Unocal building for many years, testified that before any such work

---

[2] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71, incorporated herein by reference.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

platform/scaffold could be erected in the building, Unocal would have to give the authorization to build such a work platform. Charlie Arnett deposition at pg. 116. Mr. Arnett even testified that if he wanted to put a new chair in the building, he would need the permission of Unocal. Id. at 115-116.

Plaintiff Larry Grove, after retrieving the sheared bolts, subsequently handed said evidence over to plaintiffs' counsel for safe keeping. If Mr. Grove had not retrieved the sheared bolts, all of the evidence would have been lost, as following the OSHA inspection, Paul Crapps, an employee of Unocal, removed and destroyed all of the brackets, nuts and bolts. See Paul Crapps deposition of March 3, 2006 at pgs. 33, 36-37. The bolts were subject of litigation as Unocal claimed ownership of the bolts. The court subsequently ordered the bolts be returned to Unocal. Subsequently, the bolts were sent out-of-state for inspection. An expert metallurgist retained by plaintiffs, Dr. Joseph Balser, inspected the bolts, and he issued a report. Dr. Balser testified that the bolts were inadequate for the job.

> … The presence of an number of delaminations are good indicators of a poor, non-structural steel being used for these bolts. Clearly, they are of low strength and should not be used in a structural application.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> The shear fracture of the bolt from Exhibit #16 is
> consistent with the bolt failure to be expected in
> a loose joint on the platform. A loose joint is
> most likely to have caused the bolt to be heavily
> loaded in a shear loading, since the loose joint
> has lost its preload, shifting the entire joint
> load to the bolts in shear. …
>
> The low strength steel bolts utilized in this
> construction is a strong contributer to this joint
> failure, but so is the use of small diameter bolts
> and using cap head cap screws instead of hex head
> bolts that can be torqued to higher levels
> providing a stronger clamping force across the
> joint and a reduction of the shear loading on the
> bolts. Both the platform design and materials
> selections used in this man-platform were
> improper.

*Expert Report of Joseph D. Balser, Ph.D., page 3*; Emphasis added.

Plaintiffs' expert, Lindley Manning, also issued a report regarding the work platform/scaffold and the bolts. He stated in pertinent part:

> … To summarize, the screws were too weak to
> properly tighten, even for their size, due to the
> low material strength and did not have hex or
> other heads permitting higher tightening torque to
> be applied. The screws were subject to loosening
> in service due to the low preloads and a lack of
> any retention means, such as prevailing torque
> lock nuts, or even as a poorer last resort, lock
> washers. The screws were not corrosion resistant
> and were too small for the task.
> …
> Use of a sheet metal screw in a vibration
> environment where larger transient loads are
> occasionally encountered is poor practice because
> these fasteners would also have a tendency to work
> loose over time. …
>
> In addition to industrial engineering design
> experience which varied from engine components for

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

a nuclear powered bomber to coin handling devices
for gaming machines, I taught Machine Design to
Senior Mechanical Engineering students in a four
year degree program at a state university for
about 20 years.  Design of threaded fasteners and
the joints they formed was a major part of that
course, as it is in all such programs.  <u>The use of
undersized low quality fasteners, such as was in
this platform would not have met the design
criteria presented in the class</u>.

<u>In conclusion, I believe that this platform failed
because of improper design.  The poor preservation
of evidence has limited my ability to make a more
detailed description of the defects</u>.

*Expert Report of Lindley Manning, P.E., pg. 3*; Emphasis added.

Bob Carmichael, of Bob Carmichael & Associates, with

extensive experience in safety, including many, many years

working for oil companies in Alaska, issued a report in this

case in regard to the work platform/scaffold and bolts/screws,

which is attached hereto as Exhibit 3.  His opinion was as

follows:

…
**Opinion**
1.    Whether intended to be permanent or
temporary, <u>neither engineering nor safety
standards were applied to the construction of this
platform</u>.

2.    <u>The screws used to attach the brackets to the
walls were not appropriate for the application and
failed under load</u>.

3.    <u>Floor loading limits for the platform had not
been established and posted and the limits had not
been reviewed and approved by an engineer or
regulatory authority</u>.

*Expert Report of Bob Carmichael, Bob Carmichael & Associates,
pg. 4*; Emphasis added.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

### III. <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56; <u>Celotrex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant has the initial burden of establishing the absence of a genuine dispute of material fact in the record. *Id.* The movant is not required, however, to affirmatively negate the non-movant's case. *Id.* The movant need not present evidence; it need only point out the lack of any genuine dispute as to material fact. *Id.* at 323-25.

Where the movant has satisfied its initial burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp</u>., 475 U.S. 574, 586 (1986). The non-movant cannot rest on the allegations or denials of its pleadings; rather, it must proffer specific facts sufficient to demonstrate a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id.* at 247-48.

IV.   DISCUSSION

A.   UNOCAL IS NEGLIGENT AS A MATTER OF LAW

The evidence that has been submitted by the plaintiffs show that Unocal is negligent as a matter of law for the defective, unreasonably unsafe work platform/scaffold that was in the filter room of the mechanical floor at the Unocal building.  It is not simply the undisputable evidence of plaintiffs' experts, including Bob Carmichael, Dr. Balser and Linley Manning, that establish the negligence of the defendant.  Even defendant's own employees/agents such as Ken Burns admit that the work platform/scaffold was inadequately built and should have been removed.  Mr. Burns may claim however that he did not actually see that work platform/scaffold.  However, it was in the Unocal building, had been in the building for many years, and Unocal had conducted numerous safety inspections for the building.  None of these safety inspections have been turned over to the plaintiffs.  Mr. Archie Cook, Human Resources Consultant, testified that every nook and cranny of the building would be reviewed to determine if there were any hazards.  As the work platform/scaffold was a clearly identifiable hazard, Unocal is liable for failing to repair or replace it.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Not only is Unocal liable for failing to repair or replace it, they are liable for the installation of same within its building in the first place.  Unocal has not turned over any documentation concerning the design or construction or maintenance of the work platform/scaffold in its building. However, the undisputed testimony is that such a structure could not be build within the Unocal building without the authorization or approval of Unocal.  See deposition testimony of Charles Arnett and Siemens employee Doug Schutte.  Doug Schutte testified as the Rule 30(b)(6) individual from Siemens and was asked to produce any and all records regarding the work platform/scaffold and contracts between Unocal and Siemens.  Mr. Schutte testified as follows:

> Q.   Now, as the service manager, if there are any records that Siemens had any part in building the work platform that – I'm not sure if you're aware that there was a work platform at the building, the filter room in the mechanical room, that collapsed when Larry Grove was working there on September 9th, 2002.
>      If Siemens had any involvement in construction, the maintenance, or tearing down that platform, would you expect that those records would be part of the service work orders that are part of Exhibit 5, provided it was for the particular year involved?
> A.   Yes.

*30(b)(6) Deposition of Siemens Building Technologies, Inc.; Designee: Doug Schutte, pg. 26, line 22 to pg. 27, line 9; Emphasis added; Exhibit 13.*

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

22

The work platform/scaffold was in the Unocal building.  Both Unocal's own agents and OSHA agree that the work platform was not a properly built platform.  Plaintiffs' experts also agree that the work platform/scaffold was defectively designed, constructed and maintained.  In fact, it is undisputed that the platform/scaffold was owned by Unocal.

In a subsequent section the plaintiffs shall discuss the spoliation of evidence and/or adverse inference regarding same.  That is, the defendant Unocal has destroyed the work platform/scaffold.  Defendant Unocal has failed to turn over any of the safety inspection reports regarding the building. Defendant Unocal has failed to turn over any documents in regard to the work platform/scaffold.  It is appropriate in regard to the determination of liability of Unocal as to negligence and punitive damages to consider the failure of Unocal to either preserve evidence or reveal evidence, and combined with all the undisputed evidence and admissions that have been referenced in this Memorandum, support a finding of negligence by Unocal.

Finally, the Service Agreement between Siemens and Unocal provided that Unocal would provide the means of access to access the filter room and replace the filters that extended from the floor up to the ceiling.  Siemens employees, such as Robert Sprinkle and Larry Grove, utilized the work

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

platform/scaffold provided by Unocal for this purpose.  As even Unocal employees such as Paul Crapps testified, one should be able to depend on Unocal to properly design, build and maintain a work platform that Unocal is aware is going to be utilized by individuals working on Unocal property.

Accordingly, there is no question of fact as to the negligence of Unocal, and plaintiffs respectfully request that the court find that Unocal is negligent.

B.    NEGLIGENCE IS ALSO AN APPROPRIATE SANCTION BY THE COURT FOR THE SPOLIATION OF EVIDENCE.

In <u>Bratka v. Anheuser-Busch Co.</u>, 164 F.R.D. 448 (S.D. Ohio 1995) the court noted that if litigants are to have any faith in the discovery process, litigants must know parties cannot fail to produce, cannot fail to disclose, cannot fail to comply with discovery requests for relevant information with impunity.  "Parties cannot be permitted to jeopardize integrity of discovery process by engaging in halfhearted ineffective efforts to identify and produce relevant documents."  This is one of the many failures by defendant in the discovery process herein.  See Affidavit of Michael Cohn attached hereto.[3]

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[3] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61;

Plaintiffs are seeking sanctions of summary judgment and also Order compelling discovery pursuant to Federal Rule of Civil Procedure 37.  The predominant purpose of Rule 37 is to punish non-compliance with discovery and pretrial orders. Resolution Trust Corporation v. Wilson M. Williams, et al., 165 F.R.D. 639 (D.C. KN. 1996).  A direct order is not needed under Rule 37(a) or (b) for the court to issue sanctions under subsection (d) for willful failure to comply.  Alexander v. FBI, 186 F.R.D. 200 (D.C. Dist. Court).  The court is not required to make specific findings that counsel instructed the party to evade discovery before imposing sanctions.  The rule is sufficient to impose sanctions where the attorney advises and/or oversees the discovery responses.  DeVaney v. Continental AM. Inc. Co., 989 F.2d 1154 (11th Cir. 1993).

A party is under an obligation to produce documents that have been wrongfully withheld or to supplement discovery once the party becomes aware that there were material false statements in response to discovery.  Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198 (5th Cir. 2005) includes

---

and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71, incorporated herein by reference.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

an obligation by counsel to promptly correct misinformation provided in discovery responses. Furthermore, belated compliance with discovery by a party does not preclude appropriate sanctions for non-compliance. <u>Payne v. Exxon Corporation</u>, 121 F.3d 503 (9th Cir. 1997).

### 1.    FAILURE TO TURN OVER WORK PLATFORM/COMPONENT PARTS/SPOLIATION OF EVIDENCE

As was revealed during the deposition of Paul Crapps, taken on March 3, 2006, the work platform at issue in this case was destroyed by defendant. Though Mr. Crapps has claimed incredulously that he destroyed the platform in September of 2002 following the accident involving Mr. Grove, in point of fact, the OSHA investigators came out and inspected the platform in March of 2003, and there are records from OSHA that reveal that Mr. Crapps destroyed the platform under the advice of Roxanne Sinz and Ken Burns, Unocal Management, following the OSHA inspection of March 2003. What is insidious about the destruction of the platform is that at the time the parties were well aware that Mr. Grove had been injured, and that Mr. Grove had initiated the OSHA complaint. Unocal knew, or reasonably should have known, that Mr. Grove may take further legal action.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

In addition, what make it ironic and equally shocking is that, as the court may recall, approximately two years ago following a letter by plaintiffs' counsel that the hardware, that is bolts and other pieces that Mr. Grove had retrieved from the filter room following the collapse of the work platform, was in the possession of plaintiffs' counsel and was to be sent to plaintiffs' metallurgist for inspection to determine the cause for the failure of the bolts, defendant Unocal demanded that its property be returned at once, and also in letters and in subsequent verbal communications defense counsel claimed that Mr. Grove had stolen Unocal property.  In point of fact, as plaintiffs set out in Opposition to a Motion for Sanctions, though defendant claims this information had been concealed by plaintiffs, in fact possession of the bolts had been revealed in plaintiffs' Initial Disclosures and in response to discovery requests.  In any event, the bolts were ordered returned to the possession of Unocal.

As noted previously, following the big uproar unnecessarily created by defense counsel as to the bolts, plaintiffs conducted discovery to find out what had happened to the rest of the work platform, including the remaining bolts and hardware, the brackets and the planks, and it was only at the deposition of Mr. Crapps that it was finally

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

27

revealed that all of this evidence had been destroyed by defendant. As shall be set out in the following subsection, plaintiffs herein are seeking an order for liability as a matter of law on the basis of (1) the destruction of crucial evidence; and (2) the subversion of the discovery process.

In regard to spoliation of evidence, it is recognized that it is the inherent power of the Federal Courts to issue whatever sanctions is felt appropriate, including default judgment, or an inference of liability for the destruction of evidence. See Medical Laboratory Management Consultants v. American Broadcasting Company, Inc., 306 F.3d 806 (9th Cir. 2002). Default judgment can be appropriate when a party destroys evidence that would be discoverable, and the party knew or should have known, that the evidence was relevant to pending, imminent, or reasonably foreseeable litigation. See Gates Rubber Company v. Embardo Chemical Industries, 167 F.R.D. 90, 101 (D.C. Colo. 1996). Plaintiffs seek as a sanction summary judgment for the spoliation of evidence and the evasion of discovery, however, for purposes of any disclosure that must be made, plaintiffs request the court order the defendant to turn over any relevant documents, including memos, correspondence, and other documentation as to the decision to destroy the platform and its component parts

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

made by defendant, including but not limited to, management meetings, safety meetings, etc.

2. **PLAINTIFFS REQUEST THAT THE COURT ENTER SUMMARY JUDGMENT FOR THE SPOLIATION OF EVIDENCE/WILLFUL BAD FAITH NON-COMPLIANCE WITH DISCOVERY.**

As noted previously, defendant destroyed the work platform and its components, which are crucial evidence in this case. In addition, defendant has obstructed discovery from the outset, and has either willfully and in bad faith failed to respond and/or provided untruthful information in response to discovery, which has greatly increased the complexity of this litigation, has undermined the discovery process, and is deserving of sanctions under the law. The courts note that preservation of documents and availability of same is essential to the orderly and expeditious disposition of litigation, and that document destruction impedes the litigation process and merits sanctions. In Re: Prudential Insurance Company of AM. Sales, Practices Litigation, 169 F.R.D. 598 (D.C. N.J. 1997). A proper sanction is preclusion of defenses for failure to comply with discovery, Oklahoma Federated Gold and Numismatics v. Blodgett, 24 F.3d 136 (10th Cir. Okla. 1994); Millsap v. McDonald Douglas Corp., 162 F. Supp.2d 1262 (N.D. Okla. 2001). When there has been bad faith and callous disregard of discovery, default is appropriate.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Winters v. Textron, Inc., 187 F.R.D. 518 (M.B. Pa. 1999).
Default is appropriate for delayed and essentially inadequate
responses, FDIC v. Daily, 973 F.2d 1525 (10th Cir. 1992).
Repeated and inexcusable obstruction amounts to willfulness
and makes default judgment appropriate as a sanction under
Rule 37.  Wanderer v. Johnson, 910 F.2d 652 (9th Cir. 1990).
When a plaintiff submitted false and misleading answers
throughout discovery, dismissal was a proper sanction.
Archibeque v. Atchison, J. & S.F. Ry 70 F.3d 1172 (10th Cir.
1995).  Default is proper for flaunting basic discovery
obligations.  Fair Housing of Marin v. Combs, 285 F.3d 899 (9th
Cir. 2002).  Failure to submit complete responses supported
dismissal as a sanction.  Henry v. Gill Industries, Inc., 983
F.2d 943 (9th Cir. 1993).  Furthermore, even if the defendant
in this case belatedly complies with discovery, the court is
not precluded from default judgment as a sanction under its
inherent power.  Payne v. Exxon Corporation, 121 F.3d 503 (9th
Cir. 1997).

     For all the cases cited throughout this pleading,
and in light of the evasion, obstruction, and non-compliance
with discovery, plaintiffs respectfully submit that an order
on liability is warranted in this case.  However, defendant
should still be required to comply with discovery, as it is
still relevant to other issues, including punitive damages for

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

reckless disregard for safety.  If in fact the defendant fails to comply then plaintiffs would also request that an order be entered, not just as to liability, but also as to punitive conduct, and that the only issue that remains to be resolved in this litigation is the extent of the damages sustained by the plaintiffs herein.

>       **3.    DEFENDANT HAS FAILED TO DISCLOSE RELEVANT DOCUMENTS PURSUANT TO RULE 26(a) RELEVANT DOCUMENTS IN INITIAL DISCLOSURES AND RELEVANT DOCUMENTS RESPONSIVE TO PLAINTIFFS' DISCOVERY REQUESTS**

The defendant has not turned over many documents from the beginning of this litigation.  Defendant has failed to diligently search through their records to find <u>any</u> records regarding the work platform, and likewise failed to produce records regarding the Unocal/Siemens correspondence and work orders that would not only be in the possession of Siemens, but such work orders would have been in the Unocal records. It is unlikely that Unocal would not have copies of work orders and authorizations given to Siemens for work that Siemens performed at the Unocal building pursuant to their contracts.  None of these documents apparently have been located, or even searched for by Unocal or turned over to plaintiffs' counsel.

At the telephonic deposition of Archie Cook, former Human Resources Manager at the Unocal building, taken on March

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

31

15, 2006, Mr. Cook acknowledged that there have been management meetings every week, and that every incident, no matter how minor, would be discussed.  He also indicated that there had been follow-ups in regard to the OSHA investigation/Larry Grove accident, and that they had meetings which were attended by Roxanne Sinz, the Operations Manager, legal counsel, Asset Manager, Safety Manager (Harry Eaton), and Business Development Manager.  None of these records concerning any management meeting have been turned over to the plaintiffs.  He also acknowledged that there had been safety inspections conducted periodically on the building by safety technicians pursuant to the Health and Safety Environmental Manager, Harry Eaton.  At least one of these safety inspections had been conducted by Safety Technician Ken Burns.  The purpose of said inspections was to find out what was hazardous in the building.  Plaintiffs have not received the safety inspections for the building from the defendants.

In regard to the objects such as a work platform, Mr. Cook indicated that the Engineering Department, whose head was Scott Hansen, would determine appropriate design and "that sort of stuff" for Unocal.  Yet, there are no records that have been obtained, though requested from Unocal pertaining to the work platform, including any documentation regarding the design for the platform, whether or not said design was

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

approved, whether or not said platform was authorized by Unocal, and whether or not said platform was inspected by Unocal, etc. Unocal has simply failed to produce virtually any documentation.

Mr. Cook indicated that in regard to any activities such as building a work platform within the building would be subject to a purchase requisition, which would be translated into a purchase order, and then as the Human Resources Manager he would have to sign a purchase requisition. Whether it was done on Mr. Cook's tenure, or the tenure of the previous manager at the Unocal building, Unocal has failed to turn over any purchase requisition/purchase order forms, or any other documentation regarding the work platform. All Unocal belatedly acknowledged at the deposition of Paul Crapps, was that the work platform was destroyed, and the evidence in this case discarded. Luckily for plaintiffs, Mr. Grove had returned to the site of the accident the day after his accident, and retrieved some of the broken sheared bolts. Defendant in fact filed a Motion for Sanctions compelling plaintiffs to return the bolts to custody of defendant, while at the same time defendants have previously destroyed all the other evidence in this case. If plaintiff had not retrieved some of this evidence, all of the evidence pertaining to the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

work platform would have been destroyed and discarded by

defendant.

The defendant's actions in regard to discovery in

this matter have been an overwhelming failure to comply, and

shows willfulness and bad faith conduct in the discovery

process.  Thus, summary judgment as to liability is

appropriate.

**C.    UNOCAL IS LIABLE FOR PUNITIVE DAMAGES**

Punitive damages are appropriate under AS 09.17.020,

where the plaintiffs prove "that the defendant's conduct (1)

was outrageous, including acts done with malice or bad motive;

or (2) evidenced reckless indifference to the interests of

another person."  Under Alaska law, punitive damages are

recoverable for acts done with malice or bad motives or

reckless indifference to the interests of others.  Ace v.

Aetna Life Ins. Co., 139 F. 3d 1241 (9th Cir. 1998); U.S. v.

CNA Financial Corp., 381 F. Supp 2d 1088 (D. Alaska 2005).

The evidence in this case shows that the work

platform/scaffold was an unreasonably dangerous piece of

equipment.  It was designed poorly, it was constructed out of

inferior materials, including inadequate bolts/screws, it was

inadequately maintained, attached to thin flimsy sheetmetal

frames rather than being secured into studs or solid

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fax (907) 278-6571

structures, and ultimately Unocal simply allowed this structure to be utilized by contractors. That is, it was contractors' employees that would bear the risk of injury, and not Unocal employees. Furthermore, Unocal had an indemnity agreement with Siemens, as it apparently does with other contractors, which would require Siemens and other contractors to indemnify Unocal for the consequences of Unocal's own negligence. Thus, Unocal's actions in authorizing and building and maintaining this inadequate, defective, unreasonably dangerous work platform/scaffold shows the callus and reckless indifference of Unocal to the consequences, including the risks of injury, or worse, to employees of contractors, since Unocal had agreements whereby they would not bear the risk of damages for negligence.

Unocal is liable for punitive damages so that it will not continue to operate in reckless indifference to the safety of others, since there may be little risk to Unocal employees and Unocal has indemnity agreements. Thus, only an award of punitive damages to Unocal will have any effect. Unocal's actions warrant the imposition of punitive damages to punish and deter such conduct in the future and that Unocal should be responsible for the payment of punitive damages to the plaintiffs herein.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The evidence herein, including that of Ken Burns and others, shows that the work platform/scaffold was defective. Though Unocal may claim lack of knowledge, that argument should not be given any credence by this court, especially in light of the destruction of evidence and/or the failure to produce evidence by Unocal. This includes, as stated previously, the destruction of the work platform/scaffold in March of 2003. In addition, it is not just simply the destruction of the work platform, but the absence of other evidence that should be available, including safety records, which apparently are missing, or any and all records regarding the work platform by Unocal. This is conduct that cannot be accepted, and plaintiffs respectfully request that the court either find the spoliation evidence of bad conduct by defendant, as well as adverse inferences that would apply to the failure to produce the evidence further support punitive damages as a matter of law.

**D.    UNOCAL AS A MATTER OF LAW SHOULD NOT BE PERMITTED TO SHIFT RESPONSIBILITY FROM ITSELF TO SIEMENS**

Unocal has recently filed a notice that it intends to seek apportionment of fault under AS 09.17.080 against Larry Grove's employer, Siemens. The plaintiffs respectfully request that the court find that such an effort to shift

36

Unocal's responsibility to Siemens should not be allowed for the reasons that have been set out in the Introduction/Summary of Argument, and as set out below.

Unocal counsel represented themselves as counsel for Siemens. Liam Moran, an attorney at defense counsel for Unocal at the 30(b)(6) deposition of Siemens' employee Doug Schutte stated at page 4 of said deposition "I represent Unocal Corporation and Siemens Building Technologies, Inc." (Exhibit 13).

In a letter to Siemens Workers Compensation Insurance Carrier, defense counsel wrote:

> As I indicated this firm represents Siemen's Building Technologies in a lawsuit that has been filed by Lawrence Grove. The lawsuit is for damages, surrounding an injury Lawrence Grove sustained on September 9, 2002. The attorney for Siemen's is John Thorsness. Exhibit 14, Emphasis added.

Siemens and Unocal apparently have an indemnity agreement, and though Unocal is unwilling to produce the actual indemnity agreement reached between Siemens and Unocal, as a matter of public policy, no fault should be shifted to Siemens. That is, in an ordinary situation where the fault is being shifted to another party, the other party would not be supporting the effort to shift responsibility to itself. Even in cases where there is an absent chair, where one seeks to indemnify the employer, ordinarily the employer will not come

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

in and try and shift the blame to itself.  However, in this

case, due to the indemnity agreement, if in fact it is in

effect, Siemens management in particular, and perhaps some

employees, may seek to come in and assume blame for the work

platform/scaffold, even though they had nothing to do with the

construction of the platform, and that was a structure that

they assumed Unocal would build properly.  Since Siemens is

the employer, and no damages can be recovered against Siemens,

the effect will be to lessen Unocal's liability, and

ultimately Siemens' responsibilities since Siemens, under the

indemnity agreement (which of course as stated many times, the

defendant has been unwilling to provide to plaintiffs) will

ultimately reduce the Siemens pays.

At a minimum for purposes of impeachment it is relevant

for plaintiffs to have the indemnification agreement, and this

is a subject of a motion to compel discovery filed by the

plaintiffs.  However, in light of the serious conflict that

exists in this matter, Unocal should not be allowed to shift

responsibility to Siemens as a matter of public policy where

there is no incentive for this party to claim the fault is

that of Unocal.  That is, in an ordinary case, each party is

attempting to shift the liability to other parties, and in

that circumstance, the jury will then be able to make a

determination based on getting that information in front of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

it, where parties are truly representing their own independent positions.  In this case, Siemens and Unocal are represented by the same counsel.  Any testimony by Siemens' management to fall on the sword to protect Unocal is already tainted.  That is, Unocal and Siemens have been colluding with each other to defeat the claims of Larry Grove and the court has the power to prevent such action by Unocal, including shifting the fault of Siemens through the testimony of Siemens' employees or managers.

As explained in other motions, including the Motion to Compel Discovery and the Motion in Limine, Unocal has had unlimited access to Siemens' records and Siemens' employees, while counsel for Siemens and Unocal has attempted to preclude plaintiffs from contacting Siemens' employees and obtaining records from Siemens.  Any records obtained by plaintiffs have been after they have been reviewed and redacted by Unocal. Any documents plaintiffs were able to get from Siemens was only after needing to file a subpoena, and only after Unocal counsel had reviewed the documents, and even then it took months and months to get all of the documents plaintiffs were seeking (in fact, some documents have not been fully disclosed to this date).

The interests of both parties have been so intertwined that, as a matter of law, Unocal should be responsible for any

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

portion of fault that is assessed against Siemens through the actual identification of Unocal and Siemens as if it was a solitary entity represented by a single counsel.  Thus, while Siemens may get the exclusive worker's compensation remedy for any fault that is apportioned, if at all, to Siemens, it should also be apportioned to Unocal such that Unocal is also liable for same, but without the protection of the exclusive remedy provision of AS 23.30.055.  This is only proper in such a case.

This situation is akin to a witness being given immunity by the Federal Government to testify against another individual on trial for murder, and then getting on the witness stand and claiming after he has immunity and cannot be pursued, that he is the actual murderer, thereby resulting in both the witness and the accused escaping responsibility for the crime.

This case is similar.  Unocal's counsel represents both Unocal and Siemens.  Accordingly, Siemens is pursuing a strategy jointly with Unocal to defeat the claim of Larry Grove.  Siemens does business with Unocal.  Siemens had a contract with Unocal, and presumably wants to do business with Unocal in the future.  Siemens has clearly aligned itself with Unocal for purposes of this action.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

40

Unocal and Siemens have engaged in a civil conspiracy/collusion.  A civil conspiracy/collusion requires two or more parties' concerted effort, unlawful means and/or effort to defraud another and/or oppressive means to harm the plaintiff.  See <u>Weiss v. State</u>, 939 P.2d 380 (Alaska 1997) cert denied. 522 U.S. 948; <u>Gilbrook v. City of Westminster</u>, 177 F. 3d 839 (9th Cir. 1999); <u>Brady v. Livingood</u>, 360 F. Supp. 2d 94 (D.D.C. 2004); <u>Eicher v. Mid America Financial Invest. Corp.</u>, 702 N.W. 2d 792 (Neb. 2005); <u>McMillan v. Oconee Memorial Hospital</u>, 626 S.E. 2d 884 (S.C. 2006).

In this case, Unocal and Siemens are represented by the same counsel (See Exhibits 13 and 14).  Siemens withheld information from plaintiffs while providing complete access to defense counsel.  Unocal and Siemens are seeking to reduce plaintiffs' recovery as there appears to be an indemnity agreement which would make Siemens liable to reimburse Unocal. Therefore, Siemens' claim of fault for which it is immune under the Worker's Compensation Act would diminish its indemnity obligations.

Siemens refused to cooperate with plaintiffs.  See Plaintiffs' renewed motion to compel discovery and affidavit of Michael Cohn in support thereto with attached exhibits.

Defense counsel has improperly withheld access and discovery from Siemens and employees of Siemens.  Siemens has

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

a conflict of interest due to its statutory workers

compensation lien to be also represented by counsel for

Unocal.

There is sufficient evidence of collusion to harm

plaintiffs.

There is no apportionment of fault to Siemens.  First,

the defective, unreasonably dangerous work platform was

designed, built, maintained by Unocal.  The platform was in

the Unocal building.  Unocal is owner of the platform.  There

is no evidence that Siemens owned, built or maintained the

platform.  Unocal was required under contract to provide

access to its equipment.  There is no evidence of Siemens

fault as a matter of law.

Second, the employer is represented by same counsel as

the third party defendant to present a unified defense to

defeat plaintiffs' claims.  This is manifestly unjust.  As a

matter of law, plaintiffs respectfully request that Unocal

either be found jointly responsible for any fault that is

assessed to Siemens, and/or there be no testimony or evidence

or jury instruction permitted allocating fault to Siemens at

all in this matter for the integrity of the judicial process.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

**E.    LARRY GROVE IS ENTITLED TO SUMMARY JUDGMENT AS TO ANY APPORTIONMENT OF FAULT TO HIMSELF PERSONALLY**

Unocal has no evidence that Larry Grove was aware of the dangerous nature of the work platform/scaffold.  Ken Burns, the Safety Technician for Unocal had a great deal of experience in safety issues, and indeed had been an OSHA Safety Officer in one of his previous employments prior to being a Safety Technician for Unocal.  There was no evidence that Larry Grove was aware that the bolts that were utilized on the work platform/scaffold were defective and unreasonably dangerous, and woefully deficient for the task.  As has been testified to by a number of individuals, and by observation, the lighting in the filter room was dim, and it would be very difficult to inspect and realize that the bolts were inadequate by a technician from Siemens.  Even an employee from Unocal, Paul Crapps, testified that he would not inspect the work platform/scaffold, assuming that if it was a Unocal product that it was safely designed and constructed and maintained.  The admission by an employee from Unocal, Paul Crapps, should apply likewise to Larry Grove.  He had the right to assume, as Robert Sprinkle, another employee of Siemens testified, that Unocal, the onsite owner that is employing Siemens to service its building has safely built the structure that was used by Seimens' employees.  Accordingly,

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200 Fax (907) 278-6571

plaintiffs respectfully request that summary judgment be granted to Larry Grove on the issue of any comparative fault as to Larry Grove.

RESPECTFULLY SUBMITTED this 30th day of March, 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs

_____/s/ Michael Cohn_____
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail: nbackes@weidnerjustice.com
ABA No. 8506049

CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2007 a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT UNOCAL'S LIABILITY FOR NEGLIGENCE, PUNITIVE DAMAGES, AND ALLOCATION OF FAULT** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.  /s/ Michael Cohn

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571