John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska  99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | Case No. 3:04-cv-0096-TMB |

**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT UNOCAL'S LIABILITY FOR NEGLIGENCE, PUNITIVE DAMAGES AND ALLOCATION OF FAULT.**

Defendant Unocal Corporation, by and through counsel Clapp, Peterson, Van Flein, Tiemessen, and Thorsness LLC, opposes Plaintiffs sweeping motion for summary judgment.  Plaintiffs ask for summary judgment on their claims of negligence and punitive damages.  There are numerous genuine issues of material fact relating to the negligence claim and no summary judgment should issue.  Plaintiffs cannot meet their burden of proving punitive damages by clear and convincing evidence and

therefore summary judgment is improper.   In fact, Plaintiffs premise their punitive damages claim only upon the alleged negligence of Unocal and therefore punitive damages are improper.

Plaintiffs ask that the court prevent Unocal from apportioning fault to Siemens. Plaintiffs have included this request in each of their recently filed motions.  Siemens bears responsibility for the safety of their employee, no matter where he works.  But apportionment of fault is both required by Alaska law and is necessary for a just adjudication of the case.  Finally, Plaintiffs ask for summary judgment on allocation to Larry Grove.  Grove took no responsibility for his own safety, which is his pattern. Apportionment is proper.  Plaintiffs' motion should be denied.

## I. SUMMARY JUDGMENT STANDARDS:

Although Alaska law governs the substantive elements of this motion, "federal law governs the standard of review for summary judgment."  *Bell Lavalin, Inc. v. Simcoe and Erie General Ins. Co.,* 61 F.3d 742, 745 (9th Cir. 1995). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A defendant may move for summary judgment in his favor on all or any part of the claims asserted against him.  Fed. R. Civ. P. 56(b).

When a motion is filed that presents the lack of an evidentiary basis for a claim, to avoid summary judgment the opposing party must then present "specific facts showing that there is a genuine issue for trial" relative to each element of a claim.  Fed. R. Civ. P. 56(e).  A party may not rely on identifying some remote or theoretical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v.*

1

2

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Support for a motion for summary

judgment must be made by affidavit on personal knowledge, deposition testimony,

3

answers to interrogatories and requests for admissions.  Fed. R. Civ. P. 56.

4

Credibility determinations, weighing of evidence and drawing legitimate

5

inferences from the facts are jury functions, and not proper during consideration of

6

a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

7

248-49 (1986).

8

9

## II.  GENUINE ISSUES OF MATERIAL FACT PREVENT SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIM.

10

Plaintiff request summary judgment against Unocal as a matter of law on the

11

12

issue of whether Unocal was negligent for "the defective, unreasonably unsafe

work platform/scaffold that was in the filter room."  Plaintiffs argue factual issues in

13

14

support of their request for summary judgment.  The factual issues that are raised

require the court to make credibility determinations, to weigh the evidence and to

15

16

draw inferences.   Therefore, summary judgment would not be proper because

17

genuine issues of material fact exist as to whether Unocal was negligent.

18

**A.     Plaintiffs Argue, Contrary To Evidence, That the Platform Was a Clearly Identifiable Hazard.**

19

20

Plaintiffs argue that the platform was a clearly identifiable hazard.   This

21

argument contradicts Larry Grove's deposition testimony where he states:

22

23

> Q.  Okay.  Did you -- did you ever have any reason to suspect that that scaffolding was unsafe?
> A.  No.  Because it's been there for so long, I figured that people were using it for years.

24

25

26

Grove Deposition Vol. I, 89-90, Ex. A hereto.  He also stated that the platform structure never changed in the 5 years that he worked in the Unocal building.

> Q  (By Mr. Thorsness)  Well, who put the nuts and bolts in the angled metal shown on Exhibit 1? . . .
> A  I have no idea.  It was there since the day I started doing maintenance for them.  Approximately five years, almost.
> Q  (By Mr. Thorsness)  Okay.  **Did it change**, as you recall, in any fashion over the time you were working for them there?
> A  **None whatsoever that I'm aware of.**

Grove Deposition II, at 58-59 (emphasis added).  Plaintiffs' testimony that he never noticed anything wrong with the platform contradicts Plaintiffs' assertion that the platform was a "clearly identifiable hazard."

Another worker, who was a close friend of Mr. Grove, testified that he also stood on the platform to change filters and likewise had no problems with the platform.  Robert Sprinkle stated that he changed filters in the Unocal filter room as early as 1990 or 1991.  When asked if the platform felt unstable, Sprinkle said that it was fine.  Sprinkle Deposition at 22, Ex. B hereto, (". . .if it was that unstable, I would have did different something or called somebody.").  Mr. Sprinkle stated he returned to the Unocal filter room after the year 2000 and again stood on the platform prior to Mr. Grove's fall.  Again Robert Sprinkle encountered no problems with the platform.

> Q.  Do you remember any problems with the platform at that time?
> A.  Not that I recall.  Like I said, if I felt that it was going to be a problem, I'm not going to push it.  I would do something else or I would have went and got Charles and had him fix it.

Sprinkle Deposition at 29-30.   Robert Sprinkle's testimony does not support Plaintiffs assertion that the platform was a "clearly identifiable hazard."

Unocal's metallurgist Chuck Morin concluded that a) the combined strength of the machine screws, b) their shear strength, and  c) the "clamping" force resultant from the torque of the nuts and washers holding the horizontal perforated metal onto the vertical pieces, resulted in a structure that was more than sufficient to hold Grove's weight. Morin's expert report, attached hereto as Ex. C.  Indeed, the structure was substantially stronger than necessary, and even provided a margin for overloading and abuse that is deliberately designed into such work platforms. *Id.* This fact and the results of examination of the screws during electron microscopy, demonstrates that the work platform was subjected to a one time dynamic load that caused it to collapse.

Plaintiffs are not entitled to summary judgment as a matter of law because the testimony does not support their assertions.    Plaintiffs' own testimony contradicts the motion for summary judgment on this point.   Larry Grove and Robert Sprinkle, should have noticed the alleged "hazard" when they stood on the platform to work.   Additionally, Unocal's expert found that platform that was more than sufficient to hold Grove's weight.   The platform was not a "hazard".   The motion should be denied.

**B.     Plaintiffs Argue That Unocal Is Responsible for the Design, Construction and Maintenance of the Platform.**

Plaintiffs argue in this motion, as they have in others, that Unocal is responsible for the design, construction and maintenance of the platform.  To prove this, Plaintiffs rely on "Unocal's own agents", on statements recorded by OSHA,

and on their own expert's opinions.   However, there is ample contrary testimony and evidentiary problems with the testimony that Plaintiffs rely upon.   There are genuine issues of material fact that require a jury to determine who is responsible for the design, construction and maintenance of the platform.

> **1.     The Court Must Weigh Evidence and Draw Inferences Against Unocal To Find That Unocal Designed, Constructed and Maintained the Platform, Which Is a Function for the Jury.**

There is no evidence to prove Unocal designed, constructed or maintained the platform.   Unocal does not deny that the platform was bolted to the filter wall inside the filter room.   However, Unocal does deny that it installed, designed or constructed the platform.   Further, Unocal did not retain control over the platform.

Plaintiffs are aware and do not dispute that the platform does not appear on the original design of the building.   Plaintiffs are also aware and do not dispute that since the building was constructed, Unocal has always hired independent contractors to perform the work on the air filters, including Siemens, Landis Gyr, and Honeywell.   Grove Depo I at 74; Sprinkle deposition at 10.   These two facts alone are sufficient to raise a genuine issue of material fact as to whether Unocal designed, construction or retained control over the platform.

Plaintiffs ignore the testimony they obtained from former Unocal employees and contractors that indicates no Unocal employee ever worked inside the filter room.   See e.g. Cook Deposition 21-23, attached hereto as Ex.D.   Charles Arnett, who worked in the Unocal building as an independent contractor for 12 years as maintenance supervisor stated that he had never seen the platform until the day

Larry Grove injured himself.  Arnett Depo at 41, attached hereto as Ex. E.  Plaintiffs have stated that they talked informally with retired Unocal employees Don Akers and Eddie Barratt and have learned that they knew nothing about the platform. Despite discovery efforts, no one has discovered the owner or origin of the platform.  Therefore, the court must weigh evidence and draw inferences if the court is to find that Unocal was responsible for the design, construction and/or maintenance of the platform.  These are functions properly left to the jury.  The motion should be denied.

### 2.    The Testimony About Safety Inspections and Reports Does Not Support Summary Judgment on Plaintiffs' Negligence Claim.

Plaintiffs point to testimony from Ken Burns and Archie Cook to establish that past safety inspections "should have" identified the platform as a safety hazard.  The length of time the platform was in place is of no consequence if Unocal had no knowledge that it was there.  The factual assertions made by Plaintiffs demonstrate only a genuine issue of material fact over who designed, constructed, maintained and/or controlled the platform.

Plaintiffs argue that Ken Burns and other witnesses have stated that the platform was in place for 12 years.[1]  Plaintiffs only quote part of Ken Burns' statement, taking it out of context.  The full quote says:

> Q. I mean, when you put that sentence in your -- in your notes here, did you consider that --  why did you consider it significant enough to put into your -- in your notes?

---

[1] Twelve years places the first sight of the platform in the Landis Gyr contract years. Landis Gyr no longer exists.  Siemens acquired Landis Gyr, and assumed their work contracts, including the contract with Unocal.

A. That there was an oversight on not having that work platform erected properly.  Someone in the past years had failed -- or neglected to do their job.

Q. Oh, okay.

A. Whether it was Unocal or the company that  Mr. Grove works for. Because we don't know who erected the scaffolding.  The work platform, excuse me.

Ken Burns Deposition at 95, attached hereto as Ex. F.

Plaintiffs take the quote out of context.  The full quote proves that Ken Burns did not know who installed the platform.   Plaintiffs' quote does not support summary judgment.

Plaintiffs again argue that safety reports "should" exist or a safety investigation "should" have been performed.   Plaintiffs are fixated on finding evidence that they allege has been "withheld."   There is no evidence to support Plaintiffs' mistrust that safety reports have not been found.  The safety reports, or lack thereof, do not support summary judgment.

### 3.    OSHA's Determination That Unocal Was the "Creating Employer" Is Not Based on a Determination of Who Originally Designed or Erected the Platform, but on Who Put It Back Up After the Fall.

Plaintiffs mistakenly rely on the OSHA statement that Unocal was a "creating employer".   The OSHA statement does not establish that Unocal had any involvement in the platform prior to Grove's fall.

A complaint was made to OSHA about the platform after the accident, which OSHA investigated.   OSHA cited Unocal for not having a "toe board" on the platform.  This was not the cause of the accident.  The OSHA investigator had no opinion on whether the lack of a toe board affected the accident.

> Q  Did you make any determination whether Larry Grove's injury would have occurred if the platform had had the proper railings and the toe board?
> A  No.
> Q  Do you have any basis to say that it would not have -- do you have any evidence to say that it would not have happened if the railing had been up?
> MR. COHN:  Objection to the form of the question; foundation.
> A   No, I don't have.

Scanlon Deposition at 178-179, attached hereto as Ex. G.

During its investigation, OSHA determined that Unocal had "created" the hazardous condition caused by the lack of a toe board because OSHA determined that Unocal "management"[2] had instructed Paul Crapps to **put the platform back up** after the accident.  Scanlon Deposition at 191-192.  Therefore, OSHA made no determination that the platform as it existed before the fall was designed, constructed, maintained or "created" by Unocal.  OSHA's speculation that Unocal had "created" the platform was based upon Paul Crapps' actions of re-installing the platform, not upon the original design and installation of the platform.  *Id*.

Plaintiffs rely upon information that does not prove that Unocal was the "creating employer" of the platform as originally installed or at the time that Grove fell from it.  The OSHA statement is not admissible evidence and does not support summary judgment.

---

[2] Paul Crapps' testimony was that Charles Arnett, another, non-Unocal contract employee, told him to replace the platform.  Crapps Depo at 29, attached hereto as Ex. H.  Arnett never informed anyone at Unocal about Grove's fall, so no Unocal employee knew the platform was down. Arnett Deposition at 62.  Sinz said she first learned of the incident when OSHA contacted her.  Sinz Deposition at 19, attached hereto as Ex. I.  Archie Cook said that he did not know of the incident prior to his

**4.    Plaintiffs' Experts' Opinions Are Countered by Unocal's Experts' Opinions, Creating a Genuine Issue of Fact.**

Plaintiffs cite their experts' opinions on the design and construction of the platform.   But, Unocal also has retained experts to testify on the same topics. Unocal's expert states:

> In summary, the strength of the fasteners used to make up the end connections of the horizontal steel angles in this case was substantial. The fact that commonly available hardware was used in the assembly of this framework is not a causative factor in this case.  The fracture of the hardware examined was a consequence of a one time overload as opposed to a failure under normal and expected conditions.   The hardness and strength of the fasteners used in this case was more than capable of supporting the static weight of an adult person.

Chuck Morin's report at 5.   From this opinion, the court could conclude that the design, construction, and maintenance had no bearing on cause of the accident. If there is no causation, then Unocal would not be negligent.

The competing opinions require the court to determine which is more credible, which is the function of a jury, not a function that a court may undertake in deciding summary judgment.   The motion should be dismissed.

**C.    Plaintiffs Ask The Court To Improperly Impose Liability on Unocal as a Sanction for Alleged Spoliation of Evidence.**

Plaintiffs ask that the court sanction Unocal by imposing negligence upon it. The request is improper.   Unocal disputes that any spoliation occurred, and preserves its rights to argue such at any other time.   But Plaintiffs have failed to establish spoliation and they grossly overreach in their request for a remedy.

---

retirement.  Cook Deposition at 10.  Therefore, despite the OSHA statement, it was not "Unocal Management" who authorized the reinstallation of the platform.

To establish negligent spoliation, *Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995) requires: a) "a plaintiff must first establish to the satisfaction of the court that the absence of [the missing evidence] hinders his ability to establish a prima facie case" and b) the essential evidence is missing through the negligence of the defendant. Then, a burden shifting remedy is applied. The relief for a plaintiff is provided in the form of a rebuttable presumption, imposed by shifting the burden of the negligence cause of action to the defendant to prove the non-existence of the fact presumed. This is done via a jury instruction.

### 1. No Spoliation Occurred: Plaintiffs Experts State That the Cause of the Accident Was Failure of the Fasteners, Plaintiffs Had Access to the Fasteners.

Plaintiffs do not state in their motion how the loss of the platform has hindered them in establishing a prima facie case on their claim of negligence. The expert's opinion is that the fasteners failed and caused the platform to collapse. The experts agree they had the fasteners to examine. He also had photographs of the platform to look at. Plaintiffs' expert states that "poor preservation of evidence has limited my ability to make a more detailed description of the defects." See Motion at 19. The expert does not state what part(s) of the platform he needed, or what detail he needed in order to render his opinion. In fact, Plaintiffs' expert does not state that he is unable to render an opinion, just that he would have liked to have more evidence.

There was no actual spoliation of evidence. No essential evidence is missing. Plaintiffs are not able to establish for the court that the missing evidence

hinders their ability to establish a prima facie case. Plaintiffs have not met their burden of proof as to spoliation of evidence.

### 2. Taking the Platform Down and Disposing of It Was Not Spoliation.

Taking the platform apart and disposing of it did not constitute spoliation for several reasons.

First, the platform was abated as part of the response to an OSHA citation, and Unocal's actions should have immunity as a result. Unocal was cited for not having a "toe board" on the platform. Rather than trying to "fix" the problem underlying the citation, Unocal simply removed the platform, an appropriate action in response to an OSHA citation. See generally, 29 C.F.R. §1903.19, as adopted by 08 AAC 61.142(a). The OSHA supervisor stated:

> Q Going back to the affidavit. The affidavit states that the platform, which was the subject matter of the inspection, had been dismantled.
> A Right.
> Q Is that an acceptable abatement, to dismantle?
> A Absolutely. Yeah, yeah. I mean, as long as you get rid of whatever your problem is and you don't expose anybody else to it down the road, then it's been abated. . . .

John Stallone Deposition at 37, attached hereto as Ex. J. Removal and disposal of the pieces of the platform was not spoliation but a reasonable action in response to the OSHA citation.

Second, defendant had no notice that Plaintiffs would file a lawsuit. Grove came back to "visit" Unocal and its contract workers at least one time. Grove First Deposition at 128; Grove Second Deposition at 114, attached hereto as Ex. K. However, he never mentioned, not even to the maintenance contractors, that he

was contemplating a lawsuit. There was no demand from a plaintiff's lawyer to Unocal. There was no hint while Grove was working on his Workers Compensation issues that he would sue.

At the heart of any spoliation of evidence claim, is the need to establish a legal or contractual duty to preserve evidence in a civil action. In the absence of a contract or agreement between the parties to preserve evidence, or a special relationship recognized by law which would require one of the parties to do so, there can be no claim for spoliation of evidence without creating a common-law duty on the part of the defendant to preserve that evidence.

A New York state case, *Montiero v. R.D. Werner Co., Inc.*, 754 N.Y.S.2d 328, 301 A.D.2d 636 (2003), has addressed this very issue. Even though the case is not binding, it sets out an example of how this issue has been applied elsewhere. In *Montiero*, a municipal employee sued the city for failing to preserve a scaffold involved in an accident on city property. The New York court found that the city had no duty to preserve the scaffold and that the city was not on notice that the scaffold might be needed for future litigation. The court found that Montiero did not ask the city to preserve the scaffolding nor did he tell the city that he intended to sue the scaffold manufacturer. Most persuasively, the court found that neither the plaintiff's injury nor the OSHA investigation conducted at the work site put the city on notice of future litigation or a need to preserve the scaffold.

The New York case is instructive in determining the issues in this case. Unocal was not on notice that it should preserve the platform just because Grove

was injured.  Grove did not tell anyone at Unocal or even any Unocal contractor that he intended to file a lawsuit against Unocal.  Grove did not report his injury to Unocal.  Grove Deposition I, at 127.  Grove did not disclose that he had surreptitiously re-entered the Unocal building using his Unocal security access to pilfer the bolts and take photos.  *Id.*

The OSHA investigation did not place Unocal on notice of a potential lawsuit either.  The OSHA investigation was conducted for a completely different purpose than private litigation.  Additionally, the citation by OSHA was for no "toe board", not for any failure to construct or maintain the platform properly, as is alleged by plaintiffs.  The OSHA investigation was not a herald of future litigation.

Unocal had no notice and therefore had no duty to preserve the platform.  The request to sanction Unocal by imposing liability against it should be denied.

### 3.    Sanctions in the Form of Summary Judgment on Liability Would Violate *Sweet.*

If a sanction were to be imposed after a finding of spoliation, it should be via the remedies prescribed in *Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995), which allows the court to impose a rebuttable presumption, imposed by shifting the burden of the negligence cause of action to the defendant to prove the non-existence of the fact presumed.  This is done via a jury instruction.  Obviously, summary judgment would violate the requirement for a rebuttable presumption.

Plaintiffs have not proven spoliation and their requested remedy would be improper.  The motion should be denied.

### III.    PLAINTIFFS MOTION FOR SUMMARY JUDGMENT ON PUNITIVE DAMAGES MUST BE DENIED.

#### 1.    Mere Negligence Is an Insufficient Basis Upon Which To Justify an Award of Punitive Damages.[3]

Alaska law governs the determination of punitive damages as acknowledged by the Ninth Circuit.  *See Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1246 (9th Cir. 1998) (To support punitive damages under Alaska law, a plaintiff must prove by clear and convincing evidence that the wrongdoer's conduct "was outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another person.") *citing State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1158 (Alaska 1989) (quoting *Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 46 (Alaska 1979), *modified on reh'g,* 615 P.2d 621 (Alaska 1980), *overruled on other grounds by Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985)).

The parameters of evidence necessary to sustain a claim for punitive damages are strictly defined in the Alaska Statutes:

> (a) In an action in which a claim of punitive damages is presented to the fact finder, the fact finder shall determine, concurrently with all other issues presented, whether punitive damages shall be allowed by using the standards set out in (b) of this section.  If punitive damages are allowed, a separate proceeding under (c) of this section shall be conducted before the same fact finder to determine the amount of punitive damages to be awarded.
>
> (b) The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct

---

[3] Unocal intends to file its own motion for partial summary judgment to dismiss punitive damages claim as a matter of law on the basis that Plaintiffs prove by clear and convincing evidence that Unocal acted with reckless indifference.

(1) was outrageous, including acts done with malice or bad motives; or

(2) evidenced reckless indifference to the interest of another person.

AS 09.17.020.  The statute codified existing case law and the standards required for submission of punitive damages to the finder of fact.  *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 612 (Alaska 2003). ("Since the advent of tort reform in 1986, punitive damages have been governed by statute. They may be awarded only on proof by clear and convincing evidence that a defendant's conduct was either outrageous, including acts done with malice or bad motives, or evidenced reckless indifference to the interests of another.")

Alaska law requires that Plaintiffs prove their punitive damages by clear and convincing evidence, the highest burden of proof in civil law.[4]  Clear and convincing evidence means the proponent must "produce in the trier of fact a firm belief or conviction about the existence of a fact to be proved." See *Alaska Marine Pilots v. Hendsch* 950 P.2d 98, 111 (Alaska 1997) citing *Buster v. Gale,* 866 P.2d 837, 844 (Alaska 1994) and *Castellano v. Bitkower,* 216 Neb. 806, 346 N.W.2d 249, 252 (1984).

Under Alaska law, the Court must review the factual basis supporting a punitive damage claim to ascertain whether sufficient evidence exists to support submitting the claim to the jury.  The complaint "should, at a minimum, allege

---

[4]  Clear and convincing is a much higher standard than the preponderance of the evidence standard, which is met if the proponent of a proposition merely satisfies the fact-finder that the asserted facts are "more likely than not true." *Saxton v. Harris,* 395 P.2d 71, 72 (Alaska 1964).

conduct that meets the legal standard for the award of punitive damages." *Great Divide Insurance Co. v. Carpenter*, *ex rel. Reed*, 79 P.3d 599, 612 (Alaska 2003). If there is no evidence giving rise to an inference of actual malice, or reckless indifference equivalent to actual malice, the trial court need not and indeed should not submit the issue of punitive damages to the jury. *Robles v. Shoreside Petroleum, Inc,* 29 P.3d 838, 846 (Alaska 2001) (upholding trial court's dismissal of punitive damage claim.)

The availability of punitive damages turns on the alleged wrongdoer's motive, state of mind and degree of culpability. *Chizmar*, 896 P.2d at 209 (citing *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska 1982)). A showing of actual malice is not required; however, the plaintiff must establish that the defendant's conduct demonstrated a reckless indifference to the rights of others and a conscious action in deliberate disregard of those rights. *Chizmar*, 896 P.2d at 210. Alaska has adopted the definition of reckless disregard as set forth in the comments to the Restatement (Second) of Torts § 500. *Id.*

> <u>Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended</u>, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others. It is reckless for a driver of an automobile *intentionally* to cross a through highway in defiance of a stop sign if a stream of vehicles *is seen* to be closely approaching in both directions, but if his failure to stop is due to the fact that he has *permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless.*

*Chizmar* at 210 (quoting Restatement (Second) of Torts § 500 comment (b) (1964))(emphasis added).

**Mere negligence is an insufficient basis upon which to justify an award of punitive damages**.  *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1376 (Alaska 1995).  "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence [but are restricted to] conduct involving some element of outrage similar to that usually found in [a] crime."  *State v. Hazelwood,* 946 P.2d 875, 889 (Alaska 1997) (quoting Restatement (Second) Of Torts § 908 cmt. b.  Additionally:

> [W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, **the trial court need not, and indeed should not**, submit the issue of punitive damages to the jury.

*Weiford*, 831 P.2d at 1266 (emphasis added).   Even though the determination as to whether certain specified conduct is outrageous may implicate a question of fact, it is still subject to summary disposition.

> [P]unitive damages are not proper… unless the offensive conduct was outrageous, as acts done with malice, bad motives, or reckless indifference to the interests of another.  **Although these are factual questions, if there is no evidence that gives rise to an inference of outrageousness, the court will not allow the issue of punitive damages to go to the jury.**

*Wein Air Alaska v. Bubbel*, 723 P.2d 627, 630-31 n.5 (Alaska 1986)(emphasis added)[5].

### 2.     Plaintiffs Have Not Met Their Burden.

In the instant case, even if one were to assume for purposes of this motion

---

[5] *Wein Air* is incorrectly listed as overruled in Westlaw.

only that Unocal was in some fashion liable, [6] given the underlying facts, Plaintiffs are not entitled to punitive damages <u>as a matter of law</u>.  Plaintiffs cannot identify any genuine issues of material fact of the requisite level of outrageousness or recklessness on Unocal's part to permit pursuit of punitive damages.

Plaintiffs argument in support of their summary judgment motion is based first upon their assumption that Unocal authorized, build, and maintained a platform that was "inadequate, defective [and] unreasonably dangerous" the only evidence Plaintiffs have to prove their string of adjectives is the fact that the platform existed and that it fell.  As shown in the first section of this brief, negligence itself cannot be established.   The mere existence of the platform does not establish reckless indifference.   Since punitive damages cannot simply be based upon negligence, however, Plaintiffs request for summary judgment on their punitive damages claim must be denied.

### 3.    The Remedy For Spoliation of Evidence Is Not Summary Judgment On Punitive Damages.

Plaintiffs make the argument that spoliation of evidence is sufficient to justify punitive damages.   Even if Plaintiffs were able to prove spoliation, which they cannot, the remedy is not to impose punitive damages.   *Sweet* dictates that if spoliation is proven, a burden shifting remedy is applied. See above.  It would be reversible error for the court to impose punitive damages for alleged spoliation.

---

[6]  Unocal specifically denies the validity of the underlying liability claims. Unocal does not concede liability and presents this argument in the context of this motion only. Unocal reserves all rights to argue these issues later.

**4.    The Unocal-Siemens Indemnity Agreement Does Not Support Punitive Damages.**

Plaintiffs argue that punitive damages are warranted because Unocal has an indemnity agreement with Siemens.    The indemnity agreement itself is not sufficient to impose punitive damages upon Unocal.    In fact, the indemnity agreement entered into is called a "knock for knock" and is common and accepted in law.[7]  A knock for knock agreement is one in which each party will indemnify the other for claims brought by its employees or subcontractor's employees.  See e.g. *Weathersby v. Conoco Oil Company,* 752 F.2d 953, 955-957 (5th Cir. 1984).  The provision includes reciprocal indemnity provisions embodying the maxim "I'll take care of mine and you take care of yours", because that is the easiest, least confusing way for the parties to a contract to apportion responsibilities.

Indemnity does not prove reckless indifference by any standard, let alone by clear and convincing evidence.  The argument is spurious.

Plaintiffs' motion for summary judgment on punitive damages must be denied.

**IV.    APPORTIONMENT OF FAULT IS A RECOGNIZED, LEGAL DEFENSE.**

Plaintiffs object to Unocal apportioning fault to Siemens.[8]  Allocation of fault is a standard defense and one that is approved by the Ninth Circuit.  The Ninth

---

[7] Knock for knock agreements have been common provisions for years.  See e.g. *British Transport Commission v. U.S.*, 354 U.S. 129, 132 n.1, 77 S.Ct. 1103 (1957).

[8] Siemens cannot be sued directly for their fault based on the workers compensation exclusionary rule.  See AS 23.30.055.

Circuit long ago agreed that apportionment should be brought to the attention of the jury. In *Sears v. Southern Pac. Co.,* 313 F.2d 498 (9th Cir. 1963) the court said:

> We share the view of the Sixth Circuit that no fair appraisal of the fault of the party can be made unless all incidents of an act of negligence, as well as the act itself, are presented to the jury for its consideration.

*Id.* at 502.

Given the long-standing approval from the Ninth Circuit, apportionment is appropriate as a matter of law.

### 1. Indemnity Does Not Prevent Apportionment.

Plaintiffs also argue that Unocal should not be allowed to allocate fault to Siemens because Siemens is required by contract to indemnify Unocal. In this case, there is a standard oil company "knock-for-knock" indemnity agreement. The indemnity agreement was disclosed to Plaintiffs in Unocal's initial disclosures. In fact, the document has been in Plaintiffs possession so long that its first page is Bates numbered 0013. Knock for knock is not an unusual provision, and even the U.S. Supreme Court has recognized it for years. See *British Transport Commission v. U.S.,* 354 U.S. 129, 132 n.1, 77 S.Ct. 1103 (1957). As a matter of law, the indemnity agreement does not prevent Unocal from apportioning fault to the employer.

Plaintiffs express fear that Siemens will "assume blame" for the work platform. Unocal is unsure exactly what Plaintiffs are arguing. If they are arguing that Siemens will find a witness who claims he designed or constructed the platform, then Unocal is not aware of any such witness. If Plaintiffs are arguing that a Siemens employee will testify that Siemens received two OSHA citations for

their failure to provide a safe workplace for their employee, then that is entirely possible, since it is true.   In the case before the court, Siemens bears some responsibility as Grove's employer.[9]   The OSHA investigator, Tom Scanlon, stated that Siemens had a legal responsibility as Grove's employer to provide a safe workplace for him.

> Q   As the actual employer of Mr. Grove, does Siemens have a duty to provide him a safe place to work?
> MR. COHN:  Objection to form of the question; foundation.
> A  Yes.
> Q    (By Ms. Johnson) Okay. And is that provided for in OSHA regulations?
> A  Yes, under the general duty clause, 5A  -- 5A?  . . . .

Scanlon Deposition at 138.  To the extent that Grove blames his injury on a poorly designed, constructed and maintained platform, his employer had a duty to ensure that the platform that Grove was standing on to perform his work was safe.  There is no developed testimony that Siemens took any responsibility for Grove's safety inside Unocal.

Plaintiffs wish the court to view as nefarious the work contract between Unocal and Siemens.  Plaintiffs go so far as to speculate that Unocal and Siemens have "conspired" to "defraud" Plaintiffs.  Plaintiffs should be precluded from arguing this unfounded slander before the jury.[10]   Plaintiffs have no right to expect that

---

[9] The amount of apportionment is a jury question.

[10] The reciprocal argument could be made about Plaintiffs.    Plaintiffs' counsel represents Larry Grove individually in the workers compensation case.    Plaintiffs counsel has aided Larry Grove in refusing to close out his workers compensation case, stretching out Larry Grove's compensation.  Plaintiff counsel has also aided Larry Grove in avoiding a rehabilitation plan which would have reduced Grove's damages in his tort case.  If Plaintiffs are allowed to make their spurious argument,

Siemens will "cooperate: with Plaintiffs in discovery without a subpoena, especially in light of the on-going workers compensation case.

Plaintiffs' motion should be dismissed.

### 2.    Plaintiff Had No Right To Demand Voluntary Cooperation from Siemens.

Plaintiffs complain about their inability to informally interview Siemens' witnesses.  During discovery, Plaintiffs had the right to depose as many of Siemens employees as they wished.  They chose to only depose one Siemens employee via a 30(b)(6) deposition.  Plaintiffs do not have a legal "right" to informally talk to Siemens employees, especially in light of the fact that Larry Grove has an open workers compensation case against Siemens.  The federal rules provide for the use of subpoenas to gain cooperation with non-party witnesses.  During discovery, Plaintiffs did not seek to depose any other Siemens witness.

### 3.  Workers Compensation Exclusive Remedy Is Not Akin To Immunity.

Plaintiff analogize Siemens' role in this case to a witness given immunity by the government in order to testify.[11]  It is an inept comparison.   The workers' compensation exclusionary rule found in AS 23.30.055 is not "immunity."  As stated in *Gunter v. Kathy-O-Estates*, 87 P.3d 65 (Alaska 2004):

> The exclusiveness of the remedy reflects a *quid pro quo* exchange of rights and liabilities for both workers and employers. Workers gain an assured remedy without the burden of proving fault, but lose the right

---

Unocal may have no choice but to make the reciprocal argument, each of which are irrelevant to the central issues.

[11] Plaintiffs' comparison to a person accused of murder is over the top outrageous and goes beyond zealous representation.  Plaintiffs should be reminded of the duty to act professionally and not directly and needlessly slander the opposition.

> to sue their employers in tort. Employers gain relief from large tort damage awards and enjoy an absolute limit on liability under the Act, but are liable without fault for injuries covered under the Act.

*Id*. at 70, quoting *Suh v. Pingo Corp.,* 736 P.2d 342, 344 (Alaska 1987).  Under the workers compensation law, Siemens has not been granted "immunity".  Instead their forum is just shifted to the workers compensation arena.  Siemens workers compensation case is on-going in that arena, as Plaintiffs well know.

### 4.    Joint and Several Liability Is Contrary To Current Alaska Law.

Plaintiffs ask that Unocal be found "jointly responsible" for all damages.  The court has no basis in law to rule that Unocal be "jointly responsible" for any fault assessed to Siemens, because the argument is the exact opposite of the law.  Alaska is a pure comparative negligence state.  The Alaska Supreme Court first adopted pure comparative negligence in 1975.  See *Kaatz v. State*, 540 P.2d 1037, 1049 (Alaska 1975).  Joint and several liability was then made part of Tort Reform, and codified by the legislature.  See AS 09.17.060 and 09.17.080.

It would be reversible error for the court to impose joint and several liability upon Unocal in light of the existing Alaskan law.  Plaintiffs' motion must be dismissed.

### V.    PLAINTIFFS ARGUMENT AGAINST APPORTIONMENT TO LARRY GROVE RAISES GENUINE ISSUES OF MATERIAL FACT THAT MUST BE LEFT TO A JURY.

Plaintiffs argue that apportionment claims as to Larry Grove should be dismissed as a matter of law.  However, Plaintiffs only argue facts and do not cite

any legal proposition that would require the court to dismiss apportionment to Grove.

Plaintiffs argued at the beginning of their motion that the platform was a "clearly identifiable hazard." However, in this section, they argue that Grove was unable to identify the bolts as "inadequate" or identify that the platform was "dangerous."

Plaintiffs argue for a double standard. They want the court to find summary judgment as a matter of law against Unocal because of the alleged "clearly identifiable hazard", but in the same brief argue that Grove could not have identified the platform as a hazard because the light was so dim that "it would be very difficult to inspect and realize that the bolts were inadequate."[12] Grove had more opportunity than any Unocal employee to inspect the platform and the bolts because he was the contractor who worked inside the filter room. Plaintiffs' arguments are patently contradictory.

Grove stated that he had a "right to assume" that the platform was sound. Plaintiffs cite no law for this proposition. They are apparently referring to a factual right, which should be determined by a jury, not as a matter for summary judgment.

_____

[12] Unocal does not concede that the bolts were inadequate. Plaintiffs argue that the bolts were "defective and unreasonably dangerous". However, in contrast, Unocal's expert, Chuck Morin, said that the fracture of the hardware was "a consequence of a one time overload as opposed to a failure under normal and expected conditions. The hardness and strength of the fasteners used in this case was more than capable of supporting the static weight of an adult person." Chuck Morin's report at 5.

Larry Grove had a duty to safely perform his work.  He had a duty to watch out for his own safety.  Even his friend, another HVAC worker, stated that he did not just blindly use the platform:

> Q.  Did you assume that this work platform on site was safe for use?
> MS. JOHNSON:  Objection; speculation.
> A.  Yeah.  Of course, you go check it out, walk out on it and make sure you felt okay. . . .

Sprinkle Deposition at 69.  Grove denied that he ever checked the platform before working on it:

> Q.  So you -- did you ever perform inspections of this scaffolding?
> A.  Not part of my job description.  My job was in there to change the filters, get the job done, and get on my next -- next task.

Grove Depo I, at 108-109.  He also said:

> Q.  Did you ever look at the – the mechanism that that scaffolding was -- was bolted to the wall?
> A.   No.  You don't have time to do that on every job.  If you did that, you wouldn't get any work done.

*Id.* at 89.

Larry Grove took no responsibility for his own safety.  He blindly went about his job.  *National Bank of Alaska v. McHugh,* 416 P.2d 239 (Alaska 1966) found that the question of whether an employee exercised proper care for his own safety was a question of fact for the jury.

There is a large body of evidence that Larry Grove routinely fails to exercise proper case for his own safety.  Grove's seven prior workers compensation cases illustrate Larry Grove's carelessness.  See Unocal's Opposition to Plaintiff's Motion in Limine.  Further, Grove's actions in disregard to his medical condition also

illustrates his disregard for his safety. See *Id.*, arguments on consumption of out-dated medication (without a doctor's authorization); drinking to excess in violation of doctor's orders, disregarding medical advice on physical therapy, hunting and injuring himself after surgery, etc. There is considerable evidence to prove that Grove does not follow proper safety practices.

Apportionment of fault to Grove is required for the just administration of this case. *Sears v. Southern Pac. Co.,* 313 F.2d 498 (9th Cir. 1963). The summary judgment request should be denied.

## VI.    CONCLUSION.

For all the above named reasons, the motion should be denied.

DATED at Anchorage, Alaska, this _____ day of May 2007.

> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS, LLC
> Attorneys for Defendant Unocal
>
>
> s/ Linda J. Johnson_____
> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS LLC
> 711 H Street, Suite 620
> Anchorage, AK  99501-3454
> Phone:  (907) 272-9631
> Fax:  (907) 272-9586
> Direct email:  ljj@cplawak.com
> Alaska Bar No. 8911070

<u>Certificate of Service</u>

I hereby certify that on May 4, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

> s/ Linda J. Johnson