GROVE v. UNOCAL                                           CHARLIE ARNETT
                                                              4/25/2006

                                                                  Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF ALASKA
 3   _____
 4   LAWRENCE H. GROVE, CYNTHIA GROVE,       )
     SARAH GROVE and MICHAEL GROVE (DOB      )
 5   1/21/88) by and through his father      )
     LAWRENCE H. GROVE,                      )
 6                                           )
              Plaintiffs,                    )
 7                                           )
     vs.                                     )
 8                                           )
     UNOCAL CORPORATION,                     )
 9                                           )
              Defendants.                    )
10   _____)
11   Case No. A04-0096 CV (JKS)
12
13
14   _____
15        VIDEOTAPED DEPOSITION OF CHARLIE ARNETT
16   _____
17              Tuesday, April 26, 2006
                       9:30 a.m.
18
19          Taken by Counsel for Defendant
                         at
20   Clapp, Peterson, Van Flein, Tiemessen & Thorsness
                 711 H Street, Suite 620
21                   Anchorage, Alaska
22
23                                        EXHIBIT    E
24                                        PAGE   1  OF  5
25
```

EXHIBIT E
PAGE 1 OF 5

Page 2

```
 1            A-P-P-E-A-R-A-N-C-E-S
 2
 3   For Plaintiffs:
 4     Michael Cohn, Esq.
       PHILLIP PAUL WEIDNER & ASSOCIATES
 5     330 L Street, Suite 200
       Anchorage, Alaska 99501
 6     (907) 276-1200
 7
 8   For Defendant:
 9     Linda J. Johnson, Esq.
       CLAPP, PETERSON, VAN FLEIN, TIEMESSEN & THORSNESS
10     711 H Street, Suite 620
       Anchorage, Alaska 99501
11     (907) 272-9272
12
13   Videographer:
14     Eric Cossman
       ALASKA LEGAL VIDEO
15     645 G Street, #892
       Anchorage, Alaska 99501
16     (907) 276-8601
17
18   Court Reporter:
19     Sonja L. Reeves, RPR
       PACIFIC RIM REPORTING
20     711 M Street, Suite 4
       Anchorage, Alaska 99501
21
22
23
24
25
```

Page 3

```
 1              I-N-D-E-X
 2
 3   EXAMINATION BY                            PAGE
 4     Ms. Johnson                             5
 5     Mr. Cohn                                90
 6
 7   FURTHER EXAMINATION
 8     Ms. Johnson                             131
 9     Mr. Cohn                                137
10
11   EXHIBITS
12   1   Schematic (1 pg.)                     35
13   2   Copies of Photos (10 pgs.)            36
14   3   Copies of Photos (12 pgs.)            57
15   4   Personnel File (63 pgs.)              75
16   5   Technical Support Proposal (10 pgs.)  123
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1         ANCHORAGE, ALASKA; APRIL 25, 2006
 2              9:30 A.M.
 3                 -oOo-
 4        VIDEOGRAPHER:  We're on record at 9:30.
 5   This is the video deposition of Charles Arnett taken by
 6   the plaintiff in the matter of Grove, et al. versus
 7   Unocal Corp., Case Number A04-0096 CV (JKS), in the
 8   United States District Court for the District of Alaska.
 9        This deposition is being held in the offices
10   of Clapp, Peterson, Van Flein, Tiemessen & Thorsness,
11   located at 711 H Street, Suite 620, Anchorage, Alaska,
12   on April 25, 2006.
13        My name is Eric Cossman from Alaska Legal
14   Video, mailing address 645 G Street, #892, Anchorage,
15   Alaska 99501.  The court reporter is Sonja Reeves from
16   the firm of Pacific Rim Reporters.
17        Will counsel please identify themselves for
18   the record?
19        MS. JOHNSON:  Linda Johnson from Clapp
20   Peterson for Unocal.
21        MR. COHN:  And Michael Cohn from the Law
22   Offices of Phillip Paul Weidner & Associates on behalf
23   of the plaintiffs.
24        One technical correction, the deposition is
25   being taken by the defendant, just for the record.
```

Page 5

```
 1             CHARLIE ARNETT,
 2     deponent herein, being sworn on oath,
 3      was examined and testified as follows:
 4                EXAMINATION
 5   BY MS. JOHNSON:
 6     Q.  Mr. Arnett, would you be sure and spell your last
 7   name?
 8     A.  A-r-n-e-t-t.
 9     Q.  Can you tell us what your educational background
10   is, please?
11     A.  My educational background?
12     Q.  Right.  Graduate from high school?
13     A.  Yeah, I finished high school, some college.
14     Q.  What were you working towards in college?
15     A.  Nothing specific, just generalized.
16     Q.  Did you do any trade schools, anything like that?
17     A.  No.
18     Q.  Where are you working now?
19     A.  I work for All Star Realty, Inc.
20     Q.  When did you start working there?
21     A.  I want to say June '03.
22     Q.  And what do you do for them?
23     A.  I take care of the maintenance department.  It's
24   a property management company.
25     Q.  How many properties are there?
```

EXHIBIT E
PAGE 2 OF 5

Page 38

1  Q. I'm just asking for your memory, so if you don't
2  remember it, that's fine. I wanted to show you the
3  pictures to see if this helped bring anything back for
4  you.
5      Turn to the last page. Do you recall walking all
6  the way inside the filter room and looking back towards
7  the door? Did you ever do that?
8  A. No.
9  Q. I guess this is kind of an odd question. Why
10 would you -- for what reason would you ever go into the
11 filter room?
12 A. Normally, I wouldn't have a reason to go. But
13 the only time that I was ever in there was to go inside
14 this encasement with Larry because inside this
15 encasement on a wall are the control mechanisms for the
16 air louvers. And that's where the problem was, and, of
17 course, everything is dark in there.
18 Q. So you believe you went under the metal casing?
19 A. I went inside the metal casing.
20 Q. Okay.
21 A. The sheet metal casing.
22 Q. Did you ever go inside the filter room and crawl
23 up on top of the sheet metal casing?
24 A. No. It was a little taller than I could get up
25 on.

Page 39

1  Q. Do you recall, looking at the schematic, do you
2  recall where you would have entered to get underneath
3  the casing?
4  A. Somewhere in here.
5  Q. You thought there was a door inside the filter
6  room itself?
7      MR. COHN: Objection; leading, and I want to
8  -- this is not an accurate depiction of what the thing
9  looks like.
10     MS. JOHNSON: Let him testify to his memory,
11 please.
12     MR. COHN: You are leading him to say
13 something that is not there.
14     MS. JOHNSON: I'm asking what his memory is.
15 If his memory is that there's one in there, then that's
16 his memory, whether it is correct or not.
17 Q. All I'm asking is for your best memory.
18 A. Well, I don't remember a door per se. More like
19 a panel.
20 Q. How often did Larry Grove come inside the Unocal
21 building?
22     MR. COHN: Objection; foundation.
23 A. I don't know.
24 Q. Did you meet Larry Grove at the front desk each
25 and every time that he came to the building, are you

Page 40

1  aware?
2      MR. COHN: Objection; foundation.
3  A. No.
4  Q. Why do you think that you didn't do that?
5  A. There were times when he would come in and do
6  scheduled maintenance. There was times when I was
7  taking care of other projects in the building. I didn't
8  always have time to meet and greet everyone that came
9  in.
10 Q. How did he get in if you weren't at the front
11 desk?
12     MR. COHN: Objection; foundation.
13 A. How did he get in? He had a code to get in.
14 Q. And how do you know he had a code to get in?
15 A. I issued him the code.
16 Q. Did he also have a key?
17 A. I don't remember if he did or not. He may have.
18 I don't know.
19 Q. Did you issue keys as well?
20 A. I did when I started taking over some of Eddie
21 Barrett's duties, but prior to that, no.
22     MS. JOHNSON: Do you want to take a break?
23 Let's take a break.
24     THE WITNESS: Yeah. It's getting close.
25     VIDEOGRAPHER: Going off record. The time

Page 41

1  is 10:33.
2      (There was a short break.)
3      VIDEOGRAPHER: Back on the record. The time
4  is 10:45.
5  Q. I know you said that you don't recall seeing the
6  platform inside the filter room prior to the accident.
7  Do you recall anybody ever talking about the platform?
8  A. No.
9  Q. If the platform was there prior to the accident,
10 let's just assume that it was, and if there was a
11 problem with it, who would have been the person to
12 inspect that particular platform?
13 A. I would assume that I would have been instructed
14 to go up and have a look at it.
15 Q. How would that come to your attention?
16 A. Through the person I report to, Eddie Barrett, or
17 it could have been one of the service personnel.
18 Q. So if the service personnel reported it, who
19 would the service personnel report to?
20     MR. COHN: Objection; foundation.
21 A. Since I usually worked with them, probably me.
22 Q. Did you ever receive any sort of --
23 A. Uh-huh. Concerning the platform, no.
24 Q. No complaints about the platform prior to the
25 injury?

EXHIBIT E
PAGE 3 OF 5

GROVE v. UNOCAL

CHARLIE ARNETT
4/25/2006

Page 62

1  back inside the building.
2  Q. Then once you were inside the building, what did
3  you do?
4  A. I think I went back to my office.
5  Q. What were you doing in your office, do you
6  recall?
7  A. No.
8  Q. And did you report the accident to anyone at
9  Unocal?
10  A. No.
11  Q. Who was your supervisor at the time?
12  A. Archie Cook.
13  Q. And you do not recall specifically telling Archie
14  Cook about the injury?
15  A. I don't recall it, no.
16  Q. Are you aware whether Unocal had any forms that
17  needed to be filled out when an injury occurred?
18  A. I was vaguely aware of them.
19  Q. Had you ever filled out any forms for any other
20  injury?
21  A. Not for injuries, no.
22  Q. Had you filled them out for any other purpose?
23  A. I can't even remember what they were called now,
24  but, yes, I did.
25  Q. What did you do with those forms after you filled

Page 63

1  them out?
2  A. I gave them to Archie Cook.
3  Q. Did you make a conscious decision not to report
4  Larry Grove's injury?
5       MR. COHN: Objection; form.
6  A. No.
7  Q. Do you recall now why you didn't tell anyone?
8  A. No.
9  Q. Do you know whether it was Unocal's policy that
10  injuries needed to be reported to a supervisor?
11  A. I'm sure it was Unocal's policy. It is most
12  company's policies for that sort of thing, but I didn't
13  know how bad Larry was hurt regardless of that.
14      I tried a couple of times to get ahold of
15  Mr. Cook and never could get ahold of him.
16  Q. About the injury?
17  A. Yeah. And after that, it just -- I continued
18  with other work.
19  Q. How did you try to contact him?
20  A. Cell phone.
21  Q. Did you leave a voice mail message?
22  A. I don't know if I did or not.
23  Q. Did he have a voice mail message on his cell
24  phone?
25  A. Yes, I believe so.

Page 64

1  Q. Did you contact anybody at Siemens to tell them
2  about Larry's injury?
3  A. Huh-uh.
4  Q. Did you contact anybody at Peak to tell them
5  about the injury?
6  A. No.
7  Q. When you tried to contact Archie Cook, what day
8  was it that you tried to contact Archie Cook?
9  A. It was right after the accident.
10  Q. You called his cell phone?
11  A. Yes.
12  Q. Why would --
13  A. I tried his office. I tried his cell phone.
14  Q. But you don't recall leaving a voice mail?
15  A. No, I don't recall.
16  Q. Did you send an e-mail to anyone?
17  A. No.
18  Q. Did you ever go back upstairs to the filter room
19  after the injury?
20  A. I may have. I don't recall it.
21  Q. Do you recall ever instructing Paul Crapps to go
22  back upstairs to the filter room?
23  A. I don't know if I did or not.
24  Q. Do you have any idea what happened to the wooden
25  platform or the wooden piece?

Page 65

1  A. No.
2  Q. What about the metal piece that was hanging down
3  when you saw it, do you recall what happened to that?
4  A. No.
5  Q. Do you recall ever instructing Paul Crapps to
6  repair the platform?
7  A. No, I don't remember if I did or not.
8  Q. Would that have been part of your job duties to
9  do that?
10      MR. COHN: Objection; form.
11  A. I don't know if it would have been or not. My
12  job duties were pretty vague, to say the least. I did
13  what Archie Cook asked me to do.
14  Q. Okay. Well, in this particular case, since
15  Archie didn't know what had happened in this room, he
16  wouldn't have been able to instruct you on anything,
17  correct?
18  A. Correct.
19  Q. Were you worried about leaving the pieces where
20  they were?
21  A. No.
22      MR. COHN: Objection; form.
23  Q. Why not?
24  A. Why would I be worried about leaving them there?
25  Q. Did you think they were a hazard to anyone else?

17 (Pages 62 to 65)

EXHIBIT E
PAGE 4 OF 5

**Page 138**

1  which are Exhibit No. 2 to your deposition, if these --
2  I'm going to represent to you that these are pictures
3  that were taken in March of '03. So you would not have
4  been around the building at the time of these pictures?
5     A. Correct.
6     Q. But in any event, Ken Burns, which is entitled
7  "Notes Concerning Visits by State of Alaska OSHA
8  Inspectors compiled by Ken Burns, Drilling Safety
9  Advisor," one of the notes he writes here is, "It was
10 obvious from the structure that it had been erected many
11 years ago."
12      Would you have any reason to disagree with
13 Mr. Burns' statement?
14      MS. JOHNSON: Objection; foundation.
15    A. No.
16    Q. I noted -- when you came into the filter room
17 after Larry Grove was injured, were you more concerned
18 with Mr. Grove than with examining the structure? Would
19 that be fair to say?
20    A. Yes.
21    Q. In showing you this document, not necessarily for
22 the content, does that appear to be -- I don't know if
23 that would appear to be like if you used the intranet at
24 Unocal, whether that would be the font, the print that
25 would come out?

**Page 139**

1        MS. JOHNSON: Objection; foundation.
2     A. That I wouldn't know.
3     Q. In the OSHA investigation, in the narrative
4  compiled by the OSHA inspector, he said, in regard to
5  employer knowledge, "Unocal management acknowledged
6  during inspections, subsequent conversations with OSHA
7  safety officers that the platform has been in place for
8  years and years, probably back to the seventies."
9        Would you have any knowledge of who in Unocal
10 management would have provided that statement?
11       MS. JOHNSON: Objection; foundation.
12    A. Who would have provided that statement?
13    Q. Yes, or that information.
14    A. I do not know.
15    Q. Has anybody at Unocal management ever told you
16 that that platform had been there for years and years?
17    A. No.
18    Q. You haven't talked to Unocal management regarding
19 the accident?
20    A. No.
21       MR. COHN: I don't have any further
22 questions.
23       VIDEOGRAPHER: This concludes the deposition
24 of Charles Arnett. The time is 2:20.
25       (Proceedings concluded at 2:20 p.m.)

**Page 140**

1        (Signature reserved.)
2              -o0o-

**Page 141**

              CERTIFICATE

   I, SONJA L. REEVES, Registered Professional Reporter
and Notary Public in and for the State of Alaska, do
hereby certify that the witness in the foregoing
proceedings was duly sworn; that the proceedings were
then taken before me at the time and place herein set
forth; that the testimony and proceedings were reported
stenographically by me and later transcribed by computer
transcription; that the foregoing is a true record of
the testimony and proceedings taken at that time; and
that I am not a party to nor have I any interest in the
outcome of the action herein contained.
   IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my seal this 9th day of May 2006.

                    _____
                    SONJA L. REEVES, RPR
                    My Commission Expires 8/7/07

EXHIBIT E
PAGE 5 OF 5