GROVE v. UNOCAL                                                KENNETH BURNS
                                                                    5/9/2006

                                                                      Page 1

1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF ALASKA
2
3

    LAWRENCE H. GROVE, et al.,    )
4                                 )
              Plaintiffs,         )
5                                 )
    vs.                           )
6                                 )
    UNOCAL CORPORATION,           )
7                                 )
              Defendant.          )
8   _____)
    Case No. A 04-0096 CV (JKS)
9
10
11
12  _____

          VIDEOTAPED DEPOSITION OF KENNETH BURNS
13
14  _____
15
                    Pages 1 - 146
16              Tuesday, May 9, 2006
                    9:00 A.M.
17
18
                          at
19              WEIDNER & ASSOCIATES
              330 L Street, Suite 200
20              Anchorage, Alaska
21
22
23                                    EXHIBIT  F
24                                    PAGE  1  OF  4
25

RECEIVED BY:
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
Date Rec'd/Initials: 5/23/06/JKK
Response Due:
Distribution: JBT/LJJ/VBH

GROVE v. UNOCAL                                                KENNETH BURNS
                                                                    5/9/2006

Page 2

A-P-P-E-A-R-A-N-C-E-S

For the Plaintiffs:
Michael Cohn
WEIDNER & ASSOCIATES
330 L Street, Suite 200
Anchorage, Alaska 99501
(276-1200)

For the Defendants:
John Thorsness
CLAPP PETERSON VAN FLEIN TIEMESSEN & THORSNESS
711 H Street, Suite 620
Anchorage, Alaska 99501
(272-9272)

The Videographer:
Eric R. Cossman
ALASKA LEGAL VIDEO
645 G Street, Suite 892
Anchorage, Alaska 99501
(276-8601)

Court Reporter:
Diane M. (Preece) Bondeson
PACIFIC RIM REPORTING
711 M Street, Suite 4
Anchorage, Alaska 99501

Page 3

INDEX

EXAMINATION BY:                         Page

Mr. Cohn                                5
                                        135

Mr. Thorsness                           129

EXHIBITS

1   Burns' Notes of State OSHA Visit (1 pg)       36

2   Unocal's Ninth Supplement to Initial          55
    Disclosures (126 pgs)

3   Additional Documents from Initial             56
    Disclosures (19 pgs)

4   Plaintiffs' Rules 26 (Fifth) Supplemental     77
    Disclosures (93 pgs)

5   Photocopies of Photographs (5 pgs)            99

6   Siemens Safety Evaluation (14 pgs)            123

Page 4

1    ANCHORAGE, ALASKA; TUESDAY, MAY 9, 2006
2            9:11 A.M.
3            -o0o-
4        THE VIDEOGRAPHER: Okay. We're on the
5   record at 9:11. This is the video deposition of Ken
6   Burns, taken by the plaintiffs in the matter of
7   Grove, et al, vs. Unocal Corp., Case No. A 04-0096 CV
8   (JKS) in the United States District Court for the
9   District of Alaska.
10        This deposition is being held in the
11  offices of Weidner & Associates, located at 330 L
12  Street, Suite 200, Anchorage, Alaska, on May 9, 2006.
13        My name is Eric Cossman from Alaska Legal
14  Video, mailing address 645 G Street, No. 892,
15  Anchorage, Alaska 99501. The court reporter is Diane
16  Bondeson from the firm Pacific Rim Reporters.
17        Will counsel please identify themselves for
18  the record.
19        MR. COHN: My name is Michael Cohn. I'm an
20  attorney at the law offices of Weidner & Associates,
21  Inc. I'm here on behalf of the plaintiffs.
22        MR. THORSNESS: John Thorsness for
23  defendant Unocal.
24        THE VIDEOGRAPHER: Thank you. Would the
25  reporter please swear in the witness.

Page 5

1        MR. THORSNESS: Excuse me. And
2   representing the witness as well.
3            KENNETH BURNS
4        witness herein, being sworn on oath was
5          examined and testified as follows:
6                EXAMINATION
7   BY MR. COHN:
8   Q.  Good morning, Mr. Burns.
9   A.  Good morning.
10  Q.  Are you here pursuant to a deposition
11  notice? Have you seen the deposition notice in this
12  case?
13  A.  No, I don't recall seeing it.
14  Q.  Well, how did you know you had a deposition
15  today?
16  A.  I was notified by paralegal for Chevron.
17  Q.  Where do you work?
18  A.  For Chevron.
19  Q.  What is your job position?
20  A.  My job position is safety specialist.
21  Q.  And how long have you worked for Chevron?
22  A.  Chevron recently purchased Unocal,
23  approximately six months ago. I joined Unocal in
24  September 1997, continuous employment till the merger
25  of Chevron and Unocal.

2 (Pages 2 to 5)

EXHIBIT F
PAGE 2 OF 4

Page 94

1  after he was --
2   A. No, I did not.
3   Q. Was there any reason why instead of just
4  destroying or dismantling the platform you couldn't
5  have built side rails and toe kicks?
6   A. A proper work platform could have been
7  constructed, yes.
8   Q. Did you consider that a proper work
9  platform?
10  A. No.
11  Q. Previously you said that you -- that you
12 may not have gone up to the penthouse before when you
13 did your '98 and '99 inspections. If you had, would
14 that be reflected on the '98 and '99 inspection, what
15 areas you inspected?
16  A. Only if there would have been a violation
17 or an item that needed abatement. If we found
18 nothing, then it would not have been mentioned.
19  Q. If you had conducted the '98 and '99
20 inspection and saw that work platform in the filter
21 room, would you have considered that a hazard to be
22 abated?
23  A. Yes.
24  Q. Now, in Exhibit 1 you indicated -- at least
25 — in Exhibit 1 you indicated that the platform, the --

Page 95

1  you had stated, quote: It was obvious from the
2  structure that it had been erected many years ago.
3      Do you remember that from your notes, that
4  that's in the next-to-last paragraph?
5   A. Yes.
6   Q. Would you be -- would you be in a position
7  to dispute testimony that the platform had been there
8  for at least 12 years before the accident?
9   A. I would not comment on how long it had been
10 there.
11  Q. I mean, when you put that sentence in
12 your -- in your notes here, did you consider that --
13 why did you consider it significant enough to put
14 into your -- in your notes?
15  A. That there was an oversight on not having
16 that work platform erected properly. Someone in the
17 past years had failed -- or neglected to do their
18 job.
19  Q. Oh, okay.
20  A. Whether it was Unocal or the company that
21 Mr. Grove works for. Because we don't know who
22 erected the scaffolding. The work platform, excuse
23 me.
24  Q. When you say we don't know who, did you
25 have conversations about this with other Unocal

Page 96

1  individuals?
2   A. Paul Crapps.
3   Q. Paul Crapps. And do you know how long Paul
4  Crapps had been working in the building?
5   A. Well, as far as I know, when I first met
6  Paul was back when I went to Kenai the first time in
7  '98, '99 time frame. I can't be sure. And he was
8  the building maintenance supervisor.
9   Q. In previous discovery requests, there have
10 been some indications when defendant has answered
11 that they indicated that information and belief,
12 Siemens Building Technology, Inc., may have been the
13 owner of the building or creator of the platform. Do
14 you have any information as to that?
15  A. No.
16  Q. I think previously -- in your -- in Exhibit
17 1, you indicated that Tom Scanlon had presented the
18 complaint form from it, and I believe in your prior
19 testimony you indicated you might have looked at
20 the -- seen the complaint form.
21     Can you take a look at -- and it's Exhibit
22 4, I believe. And it would be LG 700.
23  A. I have that.
24  Q. Is this the complaint form that you would
25 be referring to? I mean, there is a couple other

Page 97

1  pages to it. Yeah, on the top it has a complaint
2  number, and it lists Siemens Building Technology as
3  the employer, and it says the hazard description,
4  "Using homemade, nonapproved scaffolding, cross
5  support fastener sheared when stepped on, causing
6  ankle injury." Do you recall that?
7      MR. THORSNESS: Mike, I'm sorry, what Bates
8  number?
9      MR. COHN: I'm sorry. It's 700, LG 700.
10     MR. THORSNESS: LG 700. Thank you.
11     THE WITNESS: This is an internal
12 Department of Labor document.
13 BY MR. COHN:
14  Q. That wouldn't be the complaint form --
15  A. No.
16  Q. -- that you said you saw?
17  A. No. This is Notice of Alleged Safety and
18 Health Hazard. That's his worksheet.
19  Q. Okay. That would be -- I'll take a look
20 separately for that document on a break, then.
21     But had you at some point been aware of the
22 fact that the -- that the allegation was that a bolt
23 had sheared, causing the collapse of the platform?
24  A. No. Sheared bolt, first time I heard that
25 was right there.

EXHIBIT F
PAGE 3 OF 4

Page 142

1  was it your understanding that Mr. Arnett reported to
2  Archie Cook?
3     A.  He did at that time.
4     Q.  So Archie Cook was -- do you recall if
5  Archie Cook was a supervisor?
6     A.  Indirectly.
7     MR. THORSNESS:  Let's take a break for a
8  second.
9     MR. COHN:  Okay.
10    THE VIDEOGRAPHER:  Going off record. The
11 time is 1:56.
12    (Recess held.)
13    THE VIDEOGRAPHER:  Back on the record. The
14 time 1:59.
15 BY MR. COHN:
16    Q.  In regard to the OSHA inspection and the
17 conference that you had where they reduced the
18 penalty?
19    A.  Yes, sir.
20    Q.  The penalty was reduced, but it wasn't
21 eliminated; is that correct?
22    A.  That's correct.
23    Q.  And when you worked for OSHA, did you on
24 occasion reduce penalties?
25    A.  I never did as compliance officer. It was

Page 143

1  the responsibility of the chief of the compliance
2  section to do that.
3     Q.  Okay. So like Tom Scanlon, is it your
4  understanding he was a compliance officer and not --
5  and that would have been John Stallone's job?
6     A.  That's correct.
7     Q.  And do you have any idea why there was both
8  a federal and a state OSHA person involved?
9     A.  The state program comes under the federal
10 jurisdiction, if I may use the word, because of the
11 funding. Feds provide 50 percent of the funding for
12 state programs. So they monitor very close.
13    Q.  And I think you might have indicated
14 before. When did you find out about this lawsuit
15 yourself?
16    A.  Tracie Howard called me. I'm not sure when
17 it was.
18    Q.  And when you were safety manager in other
19 places or project -- did you work as a project
20 manager in some cases?
21    A.  Safety manager.
22    Q.  Safety project manager. Is it your
23 understanding that the -- that the facility owner is
24 responsible for all the apparatus in that -- in their
25 buildings?

Page 144

1     A.  Sure. Generally true, yes.
2     MR. COHN:  I don't have any further
3  questions.
4     MR. THORSNESS:  No questions. Thank you.
5     MR. COHN:  Okay. Thank you, Mr. Burns.
6     THE WITNESS:  You're welcome.
7     THE VIDEOGRAPHER:  This concludes the
8  deposition of Ken Burns. The time is 2:01.
9     (Proceedings concluded at 2:01 p.m.)
10    (Signature reserved.)
11          * * * * *

Page 145

CERTIFICATE

I, DIANE M. BONDESON, Registered
Professional Reporter and Notary Public in and for
the State of Alaska, do hereby certify that the
witness in the foregoing proceedings was duly sworn;
that the proceedings were then taken before me at the
time and place herein set forth; that the testimony
and proceedings were reported stenographically by me
and later transcribed by computer transcription; that
the foregoing is a true record of the testimony and
proceedings taken at that time; and that I am not a
party to nor have I any interest in the outcome of
the action herein contained.

IN WITNESS WHEREOF, I have hereunto set my
hand and affixed my seal, this _____ day
of _____, 2006.


_____
Diane M. Bondeson, RPR
My Commission Expires 9/6/06

EXHIBIT F
PAGE 4 OF 4