Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, et al.,    )
                              )
                Plaintiffs,   )
                              )
vs.                           )
                              )
UNOCAL CORPORATION,           )
                              )
                Defendant.    )
_____)

Case No. A 04-0096 CV (JKS)

COPY

---

VIDEOTAPED DEPOSITION OF ROXANNE SINZ

---

Pages 1 - 82
Wednesday, May 10, 2006
9:30 A.M.


at
WEIDNER & ASSOCIATES
330 L Street, Suite 200
Anchorage, Alaska

EXHIBIT I
PAGE 1 OF 5

GROVE v. UNOCAL                                     ROZANNE SINZ
                                                    5/10/2006

                                                           Page 2

```
 1              A-P-P-E-A-R-A-N-C-E-S

 2
     For the Plaintiffs:
 3   Michael Cohn
     WEIDNER & ASSOCIATES
 4   330 L Street, Suite 200
     Anchorage, Alaska   99501
 5   (276-1200)

 6
     For the Defendants:
 7   John Thorsness
     CLAPP PETERSON VAN FLEIN TIEMESSEN & THORSNESS
 8   711 H Street, Suite 620
     Anchorage, Alaska   99501
 9   (272-9272)

10
     The Videographer:
11   Eric R. Cossman
     ALASKA LEGAL VIDEO
12   645 G Street, Suite892
     Anchorage, Alaska   99501
13   (276-8601)

14
     Court Reporter:
15   Diane M. (Preece) Bondeson
     PACIFIC RIM REPORTING
16   711 M Street, Suite 4
     Anchorage, Alaska   99501
17

18

19

20

21

22

23                               EXHIBIT    I
                                 PAGE  2  OF 5
24

25
```

GROVE v. UNOCAL  
ROZANNE SINZ  
5/10/2006

Page 4

1  ANCHORAGE, ALASKA; WEDNESDAY, MAY 10, 2006
2  9:39 A.M.
3  -o0o-
4  THE VIDEOGRAPHER: Okay. We're on the
5  record at 9:39. This is the video deposition of
6  Roxanne Sinz, taken by the plaintiff in the matter of
7  Grove, et al, vs. Unocal Corp., Case No. A 04-0096 CV
8  (JKS) in the United States District Court for the
9  District of Alaska.
10  This deposition is being held in the
11  offices of Weidner & Associates, located at 330 L
12  Street, Suite 200, Anchorage, Alaska, on May 10,
13  2006.
14  My name is Eric Cossman from Alaska Legal
15  Video, mailing address 645 G Street, No. 892,
16  Anchorage, Alaska 99501. The court reporter is Diane
17  Bondeson from the firm Pacific Rim Reporters.
18  Will counsel please identify themselves for
19  the record.
20  MR. COHN: Michael Cohn from the law
21  offices of Weidner & Associates, here on behalf of
22  the plaintiffs.
23  MR. THORSNESS: John Thorsness for the
24  defendant, Unocal, and for the witness, Ms. Sinz.
25  THE VIDEOGRAPHER: Thank you. Would the

Page 5

1  reporter please swear in the witness.
2  ROXANNE SINZ
3  witness herein, being sworn on oath was
4  examined and testified as follows:
5  EXAMINATION
6  BY MR. COHN:
7  Q. Good morning, Ms. Sinz.
8  A. Good morning.
9  Q. Once again, I just want to let you know my
10  name is Michael Cohn. I'm an attorney with the law
11  firm of Weidner & Associates, and we're representing
12  the plaintiffs, Larry Grove, Cynthia Grove, Sarah
13  Grove and Michael Grove, out of an accident that
14  occurred on September 9, 2002, at the Unocal building
15  at 909 West Ninth Avenue.
16  Are you familiar with the accident or are
17  you aware of the accident?
18  A. I'm aware of it.
19  Q. And first let me start, what is your --
20  where do you work?
21  A. I work at, well, what is now known as
22  Chevron.
23  Q. And where do you work?
24  A. I'm sorry?
25  Q. Where do you work? What's your physical

Page 6

1  location?
2  A. 909 West Ninth Avenue, Anchorage, Alaska.
3  Q. So you still work in that same -- in the
4  same building where the accident happened?
5  A. That is correct.
6  Q. And you say it's now Chevron. What was it
7  previously?
8  A. It was Unocal.
9  Q. And by Unocal -- because I know there are
10  several different names. Is it Union Oil Company of
11  California --
12  A. That is correct.
13  Q. -- specifically?
14  A. Um-hum.
15  Q. Do you know if Union Oil Company of
16  California will still -- is still in existence today?
17  A. Union Oil Company of California is still in
18  existence, that's correct.
19  Q. Do you know if it's going to -- there was
20  some indication from Mr. Burns' deposition yesterday
21  that it would no longer exist after July 2006. Do
22  you know anything about that?
23  A. As of July of 2006, Unocal is no -- Unocal
24  is defunct.
25  Q. When you say Unocal, you mean Unocal

Page 7

1  Corporation, the parent company of Union Oil?
2  A. I'm not clear on that, sir.
3  Q. All right. So when you say Unocal is
4  defunct, is Union Oil Company of California still
5  going to be a -- do you know if it's still going to
6  be a separate company but operating under -- as a
7  subsidiary of Chevron?
8  A. I'm not clear on that.
9  Q. Okay. How long did you work for Union Oil
10  Company of California? When did you start?
11  A. I'm not sure on the day. It was October --
12  I've been there approximately 24 years.
13  Q. And was it -- were you always working for
14  Union Oil Company of California until Chevron took
15  control?
16  A. That is correct.
17  Q. And now are you an employee of Chevron?
18  A. I'm an employee of Chevron.
19  Q. Now, you know, the videotape -- that this
20  deposition is being videotaped. Have you had your
21  deposition taken before?
22  A. I've never had a deposition.
23  Q. Did you have the -- what a deposition is
24  explained to you by anyone?
25  A. Yes, I'm aware of what a deposition is.

EXHIBIT 1  
PAGE 3 OF 5

4 (Pages 4 to 7)

GROVE v. UNOCAL                                                                        ROZANNE SINZ
                                                                                        5/10/2006

Page 16
1  Q. Did you have anything to do with locating
2  the records for -- in this -- in regards to discovery
3  in this case, in the Larry Grove case?
4  A. I didn't.
5  Q. Did you review any documents before this
6  deposition today?
7  A. Yes.
8  Q. And what did you review?
9  A. My documents.
10 Q. And when you say "my documents," what are
11 those?
12 A. I had some hard copy documents that I kept.
13 Q. And where are those hard copy documents?
14 A. In my files.
15 Q. And where are your files located?
16 A. In my desk.
17    MR. COHN: And have those documents been
18 produced to us, Counsel?
19    MR. THORSNESS: In my understanding, they
20 have been.
21 BY MR. COHN:
22 Q. And how did you --
23    MR. THORSNESS: I'll say this. All the
24 documents that Ms. Sinz and I reviewed during our
25 meeting last Monday were Bates stamped, and my copies

Page 17
1  were Bates stamped and had been accordingly produced
2  to you.
3     MR. COHN: Do those include -- well, let me
4  ask. Do those include what's in the ninth
5  supplemental discovery, supplement to discovery that
6  we got on Friday?
7     MR. THORSNESS: Mike, I don't know.
8     MR. COHN: Okay.
9     MR. THORSNESS: It's very possible that
10 they do.
11 BY MR. COHN:
12 Q. So you had some separate files of your own
13 where there were documents that you looked through?
14 A. Yes.
15 Q. Do you know if those -- had anyone ever
16 asked you about documents prior to -- when did you
17 look through these -- for these documents?
18 A. Prior to this meeting.
19 Q. And how long ago was that? Was that
20 yesterday or --
21 A. This morning.
22 Q. This morning?
23 A. Um-hum.
24 Q. Prior to this morning, has anyone ever
25 asked you about these documents?

Page 18
1  A. Yes.
2  Q. And who has asked you?
3  A. Tracie Howard.
4  Q. And who is Tracie Howard?
5  A. Paralegal.
6  Q. Paralegal where?
7  A. At Unocal slash Chevron.
8  Q. When did she ask you for these documents
9  before?
10 A. Before this meeting.
11 Q. Within the last week?
12 A. No. A few months back.
13 Q. And had you previously been contacted by
14 anyone from Unocal or counsel to look for records
15 that you might have compiled or kept?
16 A. Yes.
17 Q. And when did that occur?
18 A. When the situation came up.
19 Q. When you refer to the situation, you're
20 referring to this lawsuit?
21 A. Yes.
22 Q. When did you become aware of the lawsuit?
23 A. A few months ago.
24 Q. Did you ever talk to any -- did you ever
25 see any of the discovery requests by the plaintiffs?

Page 19
1  Were you ever shown copies of the discovery requests?
2  A. No.
3  Q. Were you ever asked to provide any
4  information in regard to discovery requests?
5     Let me rephrase that. Do you have any
6  knowledge as to whether -- do you know -- do you know
7  that there was a work platform or scaffold up in the
8  filter room in the penthouse?
9  A. OSHA made me aware of it.
10 Q. You were unaware of that before OSHA --
11 A. No.
12 Q. -- came over?
13 A. No.
14 Q. Do you know who -- whether Siemens built
15 that --
16 A. I don't know.
17 Q. -- work platform? Do you have any idea who
18 built that platform?
19 A. I don't know.
20    MR. THORSNESS: Excuse me. Roxanne, be
21 sure and let him finish his question --
22    THE WITNESS: Okay.
23    MR. THORSNESS: -- before you answer.
24    THE WITNESS: Okay.
25    MR. THORSNESS: Okay. Thank you.

7 (Pages 16 to 19)

EXHIBIT 4
PAGE 4 OF 5

GROVE v. UNOCAL                                                    ROZANNE SINZ
                                                                   5/10/2006

Page 80

1  correct.
2    Q.  Okay.  And lasted about six months?
3    **A.  Approximately six months, um-hum.**
4       MR. THORSNESS:  Okay.  Those are all the
5  questions I have.  Thank you.
6          FURTHER EXAMINATION
7  BY MR. COHN:
8    Q.  The only question I have -- few questions.
9  Have you ever been deposed before?
10   **A.  Have not, no.**
11   Q.  No.  Okay.  I don't have any further
12 questions.
13      THE VIDEOGRAPHER:  Okay.  This concludes
14 the deposition of Roxanne Sinz.  The time is 11:45.
15      (Proceedings concluded at 11:45 a.m.)
16      (Signature reserved.)
17           * * * * *
18
19
20
21
22
23
24
25

EXHIBIT 1
PAGE 5 OF 5

23 (Page 80)