GROVE v. UNOCAL                                                JOHN STALLONE
                                                              4/14/2006

Page 1

1                UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF ALASKA
2

3    LAWRENCE H. GROVE, et al.,     )
                                    )
4              Plaintiffs,          )
                                    )
5    vs.                            )
                                    )
6    UNOCAL CORPORATION,            )
                                    )
7              Defendant.           )
     _____)
8    Case No. A 04-0096 CV   (JKS)
9    _____
10         VIDEOTAPED DEPOSITION OF JOHN STALLONE

     _____
11
12                   Pages 1 - 70
                 Friday, April 14, 2006
13                    3:46 p.m.
14            Taken by Counsel for Plaintiffs
                         at
15   The Offices of Department of Labor & Workforce
                    Development
16          3301 Eagle Street, Suite 209
                 Anchorage, Alaska
17
18
19
20
21
22
23                                    EXHIBIT____J_____
24                                    PAGE__I__OF__4___
25

GROVE v. UNOCAL

JOHN STALLONE
4/14/2006

Page 2

```
1          A-P-P-E-A-R-A-N-C-E-S
2
      For Plaintiffs:
3       Michael Cohn
        PHILLIP PAUL WEIDNER & ASSOCIATES
4       330 L Street, Suite 200
        Anchorage, Alaska 99501
5       907/276-1200
6
      For Defendant:
7       Linda J. Johnson
        CLAPP PETERSON VAN FLEIN TIEMESSEN THORSNESS, LLC
8       711 H Street, Suite 620
        Anchorage, Alaska 99501-3654
9       907/272-9272
10
      For the State of Alaska:
11      Larry A. McKinstry
        Assistant Attorney General
12      Department of Law, Civil Division
        1031 West 4th Avenue, Suite 200
13      Anchorage, Alaska 99501-1994
        907/ 269-6612
14
      Also Present:
15      Eric R. Cossman, JD, CLVS
16    Court Reporter:
        Leslie J. Knisley
17      PACIFIC RIM REPORTING
        711 M Street, Suite 4
18      Anchorage, Alaska 99501
19
20
21
22
23
24
25
```

Page 3

```
1              I-N-D-E-X
2
   EXAMINATION BY               PAGE
3
     Mr. Cohn              5, 56
4    Ms. Johnson             35
5
   EXHIBITS
6
     12   Notice of Taking Video Deposition    4
7         Duces Tecum of John Stallone and
          Subpoena
8         (3 pages)
9   Exhibits referred to from deposition of Tom Scanlon:
10   3    Unocal 76 Incorporated File      35
          (48 pages)
11
     6    Bates stamped OSHA files       14
12        (91 pages)
13   8B   Photographs, LG848 through LG858    58
          (11 pages)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1    ANCHORAGE, ALASKA; FRIDAY, APRIL 14, 2006
2              3:46 P.M.
3               -o0o-
4    (Exhibit 12 marked.)
5        THE VIDEOGRAPHER:  We're on the record
6    at 3:46.  This is the video deposition of John
7    Stallone taken by the plaintiff in the matter of
8    Grove, et al. versus Unocal Corp., Case No.
9    A04-0096 CV (JKS), In the United States District
10   Court for the District of Alaska.
11       This deposition is being held in the
12   offices of OSHA located at 3301 Eagle Street,
13   Suite 304, Anchorage, Alaska on April 14th, 2006.
14   My name is Eric Cossman from Alaska Legal Video,
15   mailing address 645 G Street, No. 892, Anchorage,
16   Alaska 99501.  The court reporter is Leslie
17   Knisley from the firm Pacific Rim Reporting.
18       Would counsel please identify themselves
19   for the record?
20       MR. COHN:  My name is Michael Cohn.  I'm
21   here from the law firm of Phillip Paul Weidner and
22   Associates on behalf of the plaintiffs, Larry
23   Grove, Cynthia Grove, Sarah Grove and Michael
24   Grove.
25       MS. JOHNSON:  My name is Linda Johnson.
```

Page 5

```
1    I'm from Clapp Peterson.  We represent Unocal.
2        MR. MCKINSTRY:  I'm Larry McKinstry.
3    I'm an assistant attorney general.  I represent
4    the Department of Labor.
5        THE VIDEOGRAPHER:  Thank you.  Would the
6    reporter please swear in the witness?
7        JOHN STALLONE,
8    deponent herein, being duly sworn under oath,
9        was examined and testified as follows:
10           EXAMINATION
11   BY MR. COHN:
12    Q   Good afternoon, Mr. Stallone.  Thank you
13   for staying to attend the deposition that we
14   started a lot later than we intended.
15       Can you first give us a little bit about
16   your background, and specifically when you started
17   with OSHA and how long you've been here and when
18   you became the head of the agency?
19    A   I started in June of '96.  I was a CHSO
20   for approximately four years, and I -- then I went
21   to discrimination training in Chicago and came
22   back and did the discrimination for the section
23   for approximately two years.  And I was -- let's
24   see.  In March of -- let me think here.  Wait a
25   minute.  A little less than two years.  Anyway,
```

EXHIBIT ___
PAGE 2 OF 4

GROVE v. UNOCAL

JOHN STALLONE
4/14/2006

Page 34

1  before.
2      A   Well, that's what --
3      Q   LG744.
4      A   Let me take a look at that, because that
5  looks more familiar to what I -- it's been a while
6  since we've used those old forms.  Oh, there you
7  go.  That's what we required, yeah.  So I -- to be
8  honest with you, I'm not sure who created that.
9      Q   Okay.  Are you aware of Unocal having
10 eventually paid the fine?
11     A   Yes.  There's proof of a check in here I
12 was just looking at.
13     Q   Can you take a look at LG734?
14     A   Okay.  734.  Yep, that's the same one I
15 just looked at.
16     Q   And it looks like a receipt -- it looks
17 like it's signed by somebody, Kevin -- I'm not
18 sure what the middle initial is -- Tabler.
19     A   Yeah, looks like an S maybe.
20     Q   It says, Unocal 76 and Unocal Oil
21 Company of California disbursing, and then the
22 receipt is signed by Donna Kurka.  Is Donna Kurka
23 an employee here?
24     A   Yes, she is.  She's one of our
25 administrative clerks.

Page 35

1      Q   And so your only involvement was to look
2  over what Mr. Scanlon had done and you agreed with
3  his findings and the citations and then you had
4  the informal conference?
5      A   That's correct, and I did sign off on
6  that.  Is that the Siemens one now in front of
7  you?
8      Q   Right now, this is the Unocal one.
9      A   Okay.  I signed off on it.
10     Q   Oh, right.  I didn't see it.  Date by
11 which violation must be abated, May 18th.  This is
12 LG743.
13     A   Right.
14         MR. COHN:  You know, I don't have any --
15 since Mr. Stallone was -- didn't conduct the
16 investigation and went through everything with
17 Mr. Scanlon, I think I'm done.  I'm done.
18         MS. JOHNSON:  You're done?  Okay.
19             EXAMINATION
20 BY MS. JOHNSON:
21     Q   The covers of both of those red files in
22 front of you have forms on them, and the one on
23 Exhibit 3, is that for Unocal or is that for
24 Siemens?
25     A   That is Unocal.  Exhibit 3 is, yes.

Page 36

1      Q   And under the section that says,
2  Abatement, what does that say?
3      A   It says, "Per informal."
4      Q   Per informal?
5      A   Right.
6      Q   And who wrote that?
7      A   Kind of looks like Donna's writing, but
8  I couldn't swear to it.  She didn't initial off
9  after it.
10     Q   And what would "per informal" mean?  Do
11 you know?
12     A   Well, let me take another quick look at
13 that abatement form that was provided.
14     Q   What page are you looking at?  739?
15     A   Well, I'm sorry.  I guess I should get
16 your exhibit number out. I'm not sure what
17 exhibit --
18     Q   739, I think?
19         MR. COHN:  Are you looking at the
20 abatement affidavit?  I think that's 739.
21     A   I don't know if this brings some clarity
22 to your question, but I think what happened is
23 that he brought this in the day of the informal,
24 if I remember, and that's why it would say per
25 informal.  Otherwise, I do it differently than

Page 37

1  that.  I don't put per informal.  I usually put --
2  I usually put -- I usually put, Action to take,
3  none, and then I initial off on it and I put my --
4  I put the date on it afterwards, and that was not
5  done on this Unocal file.  I think that this
6  Exhibit 739 came in at the date of the informal,
7  and that's why she said -- she put down on here
8  per informal.
9      Q   Okay.  Going back to the affidavit.  The
10 affidavit states that the platform, which was the
11 subject matter of the inspection, had been
12 dismantled.
13     A   Right.
14     Q   Is that an acceptable abatement, to
15 dismantle?
16     A   Absolutely.  Yeah, yeah.  I mean, as
17 long as you get rid of whatever your problem is
18 and you don't expose anybody else to it down the
19 road, then it's been abated.  Or you can abate it
20 by location, by locking the place out and getting
21 ahold of the key, for example, if that's how
22 you're locking it out.  That's another way of
23 doing it.
24     Q   Or doing the actual fix --
25     A   Or actually fixing it and letting people

EXHIBIT 5
PAGE 3 OF 4

10 (Pages 34 to 37)

GROVE v. UNOCAL

JOHN STALLONE
4/14/2006

Page 66

1    A   I wouldn't go there, no. I mean, if you
2   asked me my own personal opinion, maybe. But from
3   an OSHA standpoint, I've got to look at this
4   thing, who is the responsible parties here? And I
5   saw two responsible parties. I saw the party that
6   provided the platform, and I saw the party that
7   provided the employee who was standing on the
8   platform. Somebody should have gone over and made
9   sure that this employee was on a good piece of
10  equipment.
11    Q   I know you're talking about technically
12  under the OSHA regs. Like, Siemens has a contract
13  with Unocal to service their building or do other
14  work for them and they go up to this platform,
15  which is provided by Unocal, and then if they
16  complain to Unocal about the equipment and they
17  lose the contract, then they don't have the work.
18    MS. JOHNSON: Objection; foundation.
19    A   I mean, I can't --
20    MR. COHN: I'm just asking if that
21  might --
22    A   I'm sure in the real world that happens,
23  but I can't look at those kind of things when I'm
24  looking at these case files.
25    Q   Well, I'm saying -- and then I'll be

Page 67

1   done -- but when you go -- like, for instance,
2   when you go to Mr. McKinstry's house, you gave the
3   example of defective stairs. If the stairs
4   collapse at the Unocal building while the Siemens
5   employee is on it, would that be the
6   responsibility of Siemens?
7    A   Okay. Let's say -- let's take that
8   example, because I've had this happen in the past.
9   Like I said, Siemens' responsibility is to make
10  sure the equipment their employee is using is up
11  to par, as well as the person who's providing it,
12  the employer who's providing the equipment plus
13  the employer who is providing the employee. I'll
14  go back to that.
15    Now, in a scenario where this employee
16  is coming down the fire escape staircase and
17  there's a chunk of the concrete out of the step
18  and he twists his foot and falls downstairs and
19  gets seriously hurt, is that the employer's fault
20  now? Siemens should have gone and made sure that
21  the fire escapes -- no, because that wasn't part
22  of the original contract work.
23    The employee was up there to replace
24  filters. He's coming down the stairs, he falls
25  down the stairs because the stairs are

Page 68

1   inadequately maintained by who? The owner of the
2   building. If that happens to be Unocal, then
3   Unocal would be the responsible party, as far as
4   I'm concerned, as far as OSHA regulations. I
5   couldn't really go after Siemens on that because
6   it wasn't part of the original contract. He's
7   just using this as a means of getting from Point A
8   to Point B.
9    Q   It wasn't part of their contractual
10  responsibility?
11    A   Right. I mean, this is -- I mean,
12  how -- is Siemens supposed to go in now and follow
13  this guy to make sure that the rest rooms are
14  sanitized and the floor is okay and there's no
15  holes in the floor and the staircase is in good
16  shape? No, no, we're not going that far with
17  this.
18    Q   So, ultimately, if it's not Siemens'
19  contractual responsibility to do that, then it
20  wouldn't be their responsibility --
21    A   As far as I'm concerned, it would fall
22  on the third party which would be the owner of the
23  building.
24    MR. COHN: I don't have any further
25  questions.

Page 69

1    MS. JOHNSON: I don't have any
2   questions.
3    THE VIDEOGRAPHER: This concludes the
4   deposition of John Stallone. The time is 5:06.
5    (Signature waived.)
6    (Proceedings concluded at 5:06 p.m.)

18 (Pages 66 to 69)

EXHIBIT  5
PAGE 4 OF 4