Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA )
GROVE, SARAH GROVE, and MICHAEL )
GROVE (DOB 1/21/88) by and )
through his father LAWRENCE )
H. GROVE, )
                                )
       Plaintiffs, )
                                )
    vs. )
                                )
UNOCAL CORPORATION, )
                                )
       Defendant. )
_____)
Case No. A04-0096 CV (JKS)

VIDEOTAPED DEPOSITION OF LAWRENCE H. "LARRY" GROVE

Pages 1 - 121
Thursday, December 15, 2005
9:21 a.m.

Taken by Counsel for Defendant
at
The Law Offices of Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska

EXHIBIT K
PAGE 1 OF 7

GROVE v UNOCAL                                                         LARRY GROVE
                                                                        12/15/2005

Page 2

1              A-P-P-E-A-R-A-N-C-E-S

2    For Plaintiffs:

3      PHILLIP PAUL WEIDNER
       MICHAEL COHN
4      PHILLIP PAUL WEIDNER & ASSOCIATES
       330 L Street, Suite 200
5      Anchorage, Alaska  99501
       907/276-1200
6
     For Defendant:
7
       JOHN B. THORSNESS
8      CLAPP, PETERSON, VAN FLEIN, TIEMESSEN & THORSNESS
       711 H Street, Suite 620
9      Anchorage, Alaska  99501
       907/272-9273
10
     Also Present:
11
       ERIC BALDWIN, PROFESSIONAL BUSINESS VIDEO
12
     Court Reporter:
13
       Leslie J. Knisley
14     PACIFIC RIM REPORTING
       711 M Street, Suite 4
15     Anchorage, Alaska  99501

16

17

18

19

20

21

22

23                                          EXHIBIT  K
                                            PAGE  2  OF  7
24

25

GROVE v UNOCAL

LARRY GROVE
12/15/2005

Page 3

```
 1                    I-N-D-E-X

 2   EXAMINATION BY                              PAGE

 3   Mr. Thorsness                                 6

 4   EXHIBITS

 5    1 - 12    Black and white photographs,       4
               12 pages
 6
      13       Manila envelope                    10
 7             (Retained by Mr. Thorsness)

 8    14       Manila envelope                    10
               (Retained by Mr. Thorsness)
 9
      15       Cardboard box with sticky          17
10             (Retained by Mr. Thorsness)

11    16       Ziploc bag with machine screws,    18
               washers and nut
12             (Retained by Mr. Thorsness)

13    17       Hand-drawn diagram, 1 page         22

14    18 - 23  Color photographs, 2 per page,     39
               6 pages
15

16

17

18

19

20

21

22

23
                                        EXHIBIT  K
24                                      PAGE 3 OF 7

25
```

EXHIBIT K
PAGE 3 OF 7

GROVE v UNOCAL                                                                                         LARRY GROVE
                                                                                                      12/15/2005

Page 4

1  ANCHORAGE, ALASKA; THURSDAY, DECEMBER 15, 2005
2                         9:21 A.M.
3                           -o0o-
4       (Exhibits 1 through 12 marked.)
5       THE VIDEOGRAPHER: We're on record at
6  approximately 21 minutes past 9:00 a.m. This is
7  the deposition of Lawrence Grove taken by
8  defendants in the matter Grove, et al. versus
9  Unocal Corporation, Case A04-0096 Civil.
10      We are in the offices of Clapp Peterson,
11 711 H Street, Anchorage, Alaska on Thursday,
12 December 15th, 2005. The court reporter is Leslie
13 Knisley with Pacific Rim Reporting of Anchorage,
14 Alaska. My name is Eric Baldwin with Professional
15 Business Video of Anchorage.
16      I'll now invite counsel to identify
17 themselves for the record.
18      MR. WEIDNER: Good morning, everyone.
19 My name is Phillip Paul Weidner. I'm here on
20 behalf of the plaintiff. With me today is Michael
21 Cohn, my associate.
22      MR. THORSNESS: John Thorsness for the
23 defendant.
24      THE VIDEOGRAPHER: Would our reporter
25 please swear the witness?

Page 5

1              LAWRENCE H. "LARRY" GROVE,
2       deponent herein, being duly sworn under oath,
3            was examined and testified as follows:
4       MR. WEIDNER: Mr. Thorsness, remind me
5  again. I just want to note for the record that
6  we're here today pursuant to Judge Singleton's
7  Order of 6/24/05 in this matter, which provided
8  that there will be a limited supplemental
9  deposition. It read in part, Grove should submit
10 to a second deposition limited to an inquiry
11 regarding the circumstances in which he found the
12 bolts, comma, the condition at the time, comma,
13 and the chain of custody since that time, period.
14      If it, comma, as appears likely, comma,
15 Grove gave the bolts to his attorney and does not
16 know what happened to them after that, comma, the
17 Court expects that counsel can agree upon the
18 further chain of custody without deposing lawyers.
19      The Order also provided that we were to
20 meet and confer prior to argument and attempt to
21 reach an agreement for a second deposition of
22 Grove limited to the issues identified in the
23 Order.
24      We have done that and that's what we're
25 here to discuss. Of course I'll allow you some

Page 6

1  reasonable latitude in that regard, but I just
2  want to note it's a limited deposition.
3                      EXAMINATION
4  BY MR. THORSNESS:
5     Q   Okay. Good morning, Mr. Grove.
6     A   Good morning.
7     Q   We've been introduced, and I represent
8  Unocal in this case; I'm their lawyer, I guess
9  you'd say.
10       You've been deposed previously in this
11 case; is that right?
12    A   Yes.
13    Q   Okay.
14       MR. THORSNESS: And have we gone through
15 our -- finished our preamble?
16       THE VIDEOGRAPHER: Yes, we have.
17       MR. THORSNESS: Did you swear the
18 witness?
19       THE REPORTER: I did.
20       MR. THORSNESS: You did? I wasn't
21 listening. Forgive me. All right.
22    Q   You've been deposed before, correct?
23    A   Yes.
24    Q   And this is the same sort of a -- this
25 is just a continuation of the deposition, and so

Page 7

1  the same rules apply. The most important rule is
2  you tell the truth.
3        Do you understand that?
4     A   (Witness nods head.)
5     Q   You have to answer audibly.
6     A   Yes, I understand.
7     Q   Okay. And, secondly, it's very
8  important that before you answer my question, you
9  understand my question. Okay?
10    A   Yes.
11    Q   Okay. And believe me, you will not hurt
12 my feelings if you ask me to rephrase or restate,
13 and it's very important that you do that if you
14 have any doubt about the question.
15       Understand?
16    A   Yes.
17    Q   Okay. And you agree if you have any
18 problem with my question for whatever reason,
19 you'll ask me to rephrase or restate it?
20    A   Yes.
21    Q   Okay.
22       MR. THORSNESS: Counsel, I'd like to
23 start with a housekeeping matter and I'd like to
24 open this box that I'm told the bolts, or some
25 bolts reside in.

EXHIBIT K
PAGE 4 OF 7

4 (Pages 4 to 7)

Page 56

1  Q  Were the nuts and bolts on top of the
2  scaffolding planks or underneath them?
3     MR. WEIDNER: Objection; vague.
4  A  They were on the floor.
5  Q  (By Mr. Thorsness) Okay. Were they
6  underneath the scaffolding planks or on top of
7  them?
8  A  On the concrete floor. We moved the
9  planks to get me out. So anything that would have
10 been on top, would apparently fall to the floor.
11 Q  Okay.
12 A  All I can say -- they were on the floor.
13 That's all I can tell you.
14 Q  When you first saw them and you picked
15 them up, they were resting on the concrete floor?
16 A  Yes.
17    MR. WEIDNER: Objection; vague.
18 Q  (By Mr. Thorsness) And when you say "we
19 moved the planks"; that would be you and
20 Mr. Arnett?
21 A  We had to move one so I could get out
22 the door.
23 Q  That would be you and Mr. Arnett?
24 A  Right.
25 Q  All right. Thank you. When you moved

Page 57

1  that plank, do you recall whether or not there was
2  anything, including nuts and bolts, on top of that
3  plank that you moved?
4  A  I know there wouldn't be because I was
5  standing on them prior to them going down. I
6  would know if there was something on the planks.
7  Q  Well, I understand your logic, I think,
8  but my question is: When you moved the plank so
9  you could get out of the fan room, you and
10 Mr. Arnett, was there anything, including nuts and
11 bolts, sitting on top the planking?
12 A  Not that I could recall.
13 Q  Okay. Exhibit 1, where is the door to
14 the fan room in relation to Exhibit 1?
15 A  The door would be right underneath here,
16 I think (indicating).
17 Q  Okay. Right underneath what's shown
18 there?
19 A  Yes.
20 Q  Tell you what. Take a pen and just draw
21 a door and an arrow in the direction of the door.
22 A  The top of the door would be --
23 Q  Go ahead and draw the top of the door,
24 if you want to.
25 A  This would be the top of the door and I

Page 58

1  don't -- if I remember correctly.
2  Q  Just keep drawing. I'm going to get a
3  better marker here.
4     MR. WEIDNER: Counsel, can we take a
5  break? We've been in session quite a while.
6     MR. THORSNESS: Sure. Let's take a
7  break. Good time for one.
8     THE VIDEOGRAPHER: Off record 10:28.
9     (Break taken.)
10    THE VIDEOGRAPHER: We're on record
11 10:35.
12 Q  (By Mr. Thorsness) Okay. Mr. Grove, do
13 you have any idea -- do you have any idea who
14 constructed this structure we've been discussing
15 as shown in Exhibit 1, the angled perforated
16 metal?
17    MR. WEIDNER: Counsel, that's clearly
18 outside the Order.
19 Q  (By Mr. Thorsness) Well, who put the
20 nuts and bolts in the angled metal shown on
21 Exhibit 1?
22    MR. WEIDNER: It's still outside the
23 Order.
24 A  I have no idea. It was there since the
25 day I started doing maintenance for them.

Page 59

1  Approximately five years, almost.
2  Q  (By Mr. Thorsness) Okay. Did it
3  change, as you recall, in any fashion over the
4  time you were working for them there?
5  A  None whatsoever that I'm aware of.
6     MR. WEIDNER: Would you please return to
7  the subject matter of the Order, Counsel?
8     MR. THORSNESS: Yeah, I'm just doing
9  that here. Phil, you know, I want to take the
10 contents of the bag, Exhibit 16, and put them on a
11 white sheet of paper just so they're easier to
12 look at.
13    MR. WEIDNER: I don't want to do that,
14 not until the experts have had a chance to examine
15 them.
16    MR. THORSNESS: How about this? We
17 won't touch them. We pour them out on the --
18    MR. WEIDNER: I don't --
19    MR. THORSNESS: Let me finish. You
20 might agree to this. We put them on a white sheet
21 of paper. We'll use like the tip of this pen to
22 move them around to separate them out just to look
23 at them, and I can point to them and ask the
24 witness about them, then we can fold the paper up
25 and just slide -- and just let them slide back

EXHIBIT K
PAGE 5 OF 7

17 (Pages 56 to 59)

GROVE v UNOCAL                                              LARRY GROVE
                                                            12/15/2005

Page 112

1  location of any of the scaffolding support
2  material shown in any of these photographs as we
3  sit here today?
4      A   To the best of my knowledge, I do not.
5  It was demoed by Unocal personnel.
6      Q   Say again.
7      A   It was demolished, demoed by Unocal
8  personnel.
9      Q   How do you know that?
10     A   That's what I was told.
11     Q   Who told you that?
12     A   I think Mr. Paul Crapps, C-r-a-p-p-s. I
13 stopped in to say hello one day and --
14     Q   And what?
15     A   I think he mentioned he was the one that
16 was instructed to remove it.
17     Q   Did he tell you who instructed him to
18 remove it?
19     A   I don't recall exactly. I don't know
20 who would have told him to do that. Possibly --
21 he was working for Charles at that time, so...
22     Q   Did he tell you what he did with it?
23     A   No, he didn't go into any detail.
24     Q   Have you been back to the building since
25 you -- since the day after your accident when you

Page 113

1  removed the machine screws from the building?
2      A   Once or twice to say hi to Charles, but
3  just front office type visit.
4      Q   Did you ever do any work at the Unocal
5  building after the day of your accident?
6      A   No, I did not.
7      Q   Where were you horizontally on the
8  scaffolding when you fell?
9      A   Just about midsection.
10     Q   Okay.
11         MR. WEIDNER: Counsel, that's obviously
12 outside the scope of the Order. It was also asked
13 in the previous deposition.
14     Q   (By Mr. Thorsness) What were you doing
15 when you fell?
16     A   Reaching for a filter.
17     Q   Okay. So were both your hands above
18 your head?
19     A   Yes.
20         MR. WEIDNER: Again, Counsel, that was
21 asked in a previous deposition. That's outside
22 the scope of the Order.
23     Q   (By Mr. Thorsness) In addition to the
24 scaffolding planks that were on top of these
25 horizontal supports we've talked about --

Page 114

1      A   Uh-huh.
2      Q   -- did the planking also continue on to
3  this ledge here, like shown in Exhibit 1?
4      A   I think it was just abutted up to it. I
5  don't think it extended past it.
6      Q   Okay. So the scaffolding planks were
7  all supported by these horizontal pieces, then?
8      A   Correct.
9      Q   You said there may have been twice after
10 your visit to the fan room where you collected
11 these machine screws that you stopped in to the
12 Unocal building. Remember that conversation?
13     A   And spoke to Charles or Paul, yeah.
14     Q   Okay. Do you remember anything about
15 this -- if there was a second time and, if so,
16 what you may have done then when you were there?
17     A   Just basically a social call to say hi.
18 That's all. In the neighborhood.
19     Q   Okay. Did you inspect the condition of
20 any of the machine screws and nuts that were still
21 affixed to any of these angle -- perforated angle
22 pieces when you went back and you collected these
23 machine screws?
24     A   Just looked at them and took a picture
25 of them. I didn't tamper with anything.

Page 115

1      Q   Did you notice any that were loose or
2  the nuts were missing?
3      A   Not to my knowledge. I didn't tamper
4  with anything else. I just took some pictures and
5  that was it.
6      Q   Okay. Okay. Those are -- did you talk
7  to anybody besides your lawyers about these pieces
8  in Exhibit 16?
9      A   In what regards?
10     Q   Well, with -- anything about them, their
11 condition, their -- whether or not -- anything
12 about them.
13     A   No, I didn't.
14     Q   Okay.
15         MR. THORSNESS: Those are all the
16 questions I have. If you have -- do you have any
17 questions?
18         MR. WEIDNER: No.
19         MR. THORSNESS: Okay.
20         MR. WEIDNER: That will terminate the
21 deposition?
22         MR. THORSNESS: Yes, it will.
23         THE REPORTER: Do you want to stay on
24 the record?
25         MR. WEIDNER: Well, we need to seal

31 (Pages 112 to 115)

EXHIBIT K
PAGE 6 OF 7

GROVE v UNOCAL

LARRY GROVE
12/15/2005

Page 116

1  those bolts back up. If I could just look at them
2  for a second before we do that, and let's just
3  seal them up on the record.
4       MR. THORSNESS: Let me -- I've got to
5  run downstairs and talk to somebody for a second
6  and --
7       MR. WEIDNER: Sure.
8       MR. THORSNESS: But I'll send somebody
9  in here.
10      (Mr. Thorsness leaves the proceedings
11 and Mr. Moran enters the proceedings.)
12      MR. WEIDNER: All right.
13      THE VIDEOGRAPHER: We are on record.
14      MR. WEIDNER: Yeah, let's stay on
15 record.
16      MR. COHN: Do we want to seal them up on
17 the record?
18      MR. WEIDNER: Yeah, I want to seal them
19 up on the record.
20      Do you know when John's going to be
21 back?
22      MR. MORAN: Could be momentarily.
23      MR. WEIDNER: Let's just stay on the
24 record.
25      MR. THORSNESS: Okay. I'm back.

Page 117

1       MR. WEIDNER: Okay. I'd just like to
2  seal these up again in a similar fashion. I
3  suggest that we --
4       MR. THORSNESS: Natalie, would you get
5  some strapping tape, please, that clear tape for
6  sealing boxes?
7       MR. WEIDNER: Could I suggest that we
8  put the plastic bag back inside Exhibit 13, put 13
9  back in 14 and seal it up?
10      MR. THORSNESS: Okay. I agree. I'm
11 doing it, for the record. Are we on the record?
12      MR. WEIDNER: Yeah. We stayed on the
13 record while you were gone.
14      MR. THORSNESS: Thank you. Hey,
15 Natalie, I need a Magic Marker. Yeah, just like
16 that.
17      Phil, you stop me if I'm not doing this
18 right.
19      MR. WEIDNER: You're doing great.
20      MR. THORSNESS: Just for the record,
21 we've left the old tape on and we're basically
22 just taping over it.
23      MR. WEIDNER: Wrap it under there. Why
24 don't you sign over it, John, and date it.
25      MR. THORSNESS: And I'm putting my

Page 118

1  initials over the top. Today is the 15th of
2  December. You want to put your initials down
3  below there, too?
4       MR. WEIDNER: Sure.
5       MR. THORSNESS: Okay. And I want to
6  make sure our court reporter gets our exhibits.
7       MR. WEIDNER: I'm just going to hold
8  that up for a second.
9       MR. THORSNESS: That's a good idea.
10 Thank you. Okay.
11      MR. WEIDNER: I think you caught that
12 sticky with a little bit of tape. Actually, could
13 you take a little piece of tape and tape over
14 that?
15      MR. THORSNESS: Yeah, we were going to
16 tape over that sticky.
17      MR. WEIDNER: All right.
18      MR. THORSNESS: All right. We done?
19      MR. WEIDNER: Yeah. Let's go off
20 record.
21      MR. THORSNESS: Okay.
22      THE VIDEOGRAPHER: Close the record at
23 11:55.
24      (Videotaped proceedings concluded at
25 11:55 a.m.)

Page 119

1       MR. WEIDNER: Let's go back on the
2  stenographic record for a second.
3       MR. THORSNESS: Yeah, yeah, just the
4  stenographic record for a second.
5       MR. WEIDNER: The record should reflect
6  that the contents of Exhibit 15, that is the two
7  envelopes and the bolts that have been marked, are
8  going to be returned to the possession of Mr.
9  Thorsness, who is the appropriate agent for this
10 firm, with our understanding that it won't be
11 opened until we have either an agreed or a court
12 Order of protocol for its inspection at the
13 appropriate time.
14      MR. THORSNESS: Right.
15      MR. WEIDNER: Okay.
16      MR. THORSNESS: We're done.
17      (Proceedings concluded at 11:56 a.m.)

EXHIBIT K
PAGE 7 OF 7

32 (Pages 116 to 119)