John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | Case No. 3:04-cv-0096-TMB |

## OPPOSITION TO RULE 37 MOTION FOR ORDER COMPELLING DISCLOSURE/DISCOVERY

Defendant Unocal Corporation, by and through counsel Clapp, Peterson, Van Flein, Tiemessen, and Thorsness LLC, opposes Plaintiffs motion to compel. Plaintiffs motion is a diversionary tactic. Unocal has revealed unsavory aspects of Larry Grove's business dealings and Plaintiffs therefore are attacking Unocal in an attempt to deflect attention from that matter.

## 1.    VERIFICATION OF DISCOVERY ANSWERS.

Plaintiffs claim that they do not have verification for the First, Third, Third (sic) Fifth, Supplemental to the Fifth, Second Supplemental to the Fifth, Ninth and Tenth Discovery Requests.   It is interesting that Plaintiffs have continued to demand the verifications even though Plaintiffs have not provided all of their verifications.  The allegations are addressed below.

**First, Second and Third Set Verifications.**

Plaintiffs complain about the verifications to the First, Second, and Third discovery responses.  It does not appear from the files that a verification of the responses was completed.  They will be completed.

**"Fourth" Set Verification.**

Plaintiffs complain about the verification of the Fourth set of discovery, inadvertently labeled "third" by Plaintiffs.  This complaint is without merit.   The verification has been provided to Plaintiffs in the past and another copy is attached hereto as Ex. A.

**Fifth Set and Supplemental Set Verifications and Seventh Set.**

The Fifth set of discovery has a long history.

The first response to the Fifth Response was a legal objection and no factual verification was required.

The next two supplemental responses to the Fifth Set should be withdrawn based upon the Plaintiffs own discovery failure, as set forth below.  No verification should be required for those withdrawn responses.  Plaintiffs' complaints stem from

their own duplicitous behavior in failing and refusing to disclose the three OSHA files to Unocal.

Plaintiffs submitted a Freedom of Information Act (FOIA) request to OSHA and received on December 22, 2004 a copy of an OSHA file directly related to Grove's injury.  Letter from OSHA dated December 22, 2004, attached hereto as Ex. B, LG 782.  The OSHA file discusses OSHA's investigation efforts at Unocal of the platform and the file references statements allegedly made to OSHA investigators by Unocal witnesses.  This file was never produced to Unocal nor was its existence disclosed.

On January 7, 2005, Plaintiff received a copy of photographs from OSHA. Letter from OSHA dated January 7, 2005, Ex. B, LG 848.

July 8, 2005, Unocal submitted its own FOIA request to OSHA requesting the entire OSHA file, with witness statements and photographs.  Ex. C, attached hereto.   OSHA responded on August 8, 2005 to Unocal's FOIA request by stating that only a copy of the complaint existed in the file and they did not have any photos or witness statements.  Ex. D, attached hereto.

Unocal responded to the Fifth Set of Discovery, but the answer only consisted of a legal objection by Unocal: no substantive response was made. Therefore, no verification was necessary.

Thereafter, the supplemental responses to the Fifth Set were made without the benefit of the information contained in the OSHA files since Plaintiffs wrongfully kept it from Unocal. Unocal therefore relied upon the memory of its employees,

who did not have the opportunity to review the OSHA filed to refresh their recollection. Unocal's answers to the discovery request may have been materially different if Unocal had the benefit of reviewing the OSHA documents that Plaintiffs had in their possession.

On December 21, 2005, Plaintiff filed a motion to compel an answer to its Fifth Set of Discovery, Interrogatory #1, without disclosing that they already had the answer to this Interrogatory in the form of OSHA documents. Plaintiffs claimed that Unocal knew the answer but had failed to timely provide it. Actually, Plaintiffs knew the answer and failed to provide the OSHA documents upon which they relied.

On January 19, 2006, Plaintiffs received a copy of a third OSHA file. Ex. E, LG 683, attached hereto. The new file contained a copy of Paul Crapps' March 8, 2003 affidavit and the OSHA investigator's notes regarding its alleged conversations with Unocal employees. This file was even more material than the first.

Contained within the new file were copies of the Unocal request to OSHA and the response back to Unocal indicating that OSHA had no documents or photographs. See Ex. F, LG 726-727, attached hereto. Therefore, Plaintiffs <u>knew</u> that Unocal did not have the OSHA documents and Plaintiffs <u>knew</u> Unocal did not have the knowledge about the platform Plaintiffs requested.

Plaintiffs' Seventh Set of Discovery was propounded on December 15, 2005, and answered on January 26, 2006. Ex. G, attached hereto. Interrogatory #1 was answered by Unocal, again without the benefit of the OSHA files. The answer may

have been materially different if Unocal had the benefit of reviewing the OSHA files that were already in Plaintiffs possession.

Paul Crapps' deposition was noticed for February 15, 2006.  Due to notice deficiencies, Mr. Crapps' deposition was postponed and rescheduled.  On March 3, 2006, Mr. Crapps testified under oath at a videotaped deposition consistent with the earlier answers provided by Unocal, which were based upon Mr. Crapps' recollection of events that had occurred more than three years prior to the deposition.   See generally Crapps deposition, Ex. H, attached hereto.

Prior to disclosing the existence of the affidavit or the OSHA documents during the deposition, Plaintiffs questioned Mr. Crapps about his memory of events. Mr. Crapps answered based on his best memory that he dismantled the platform at issue about "a couple of days" after Grove reported that he had fallen.  *Id.* at 29. Mr. Crapps testified that his supervisor, Charles Arnett, had instructed him to dismantle the platform. *Id.*

He confirmed under oath that he had provided the answer for the last supplement to Plaintiff's Fifth Discovery Request and to the Seventh Discovery request.  *Id.* at 58-59, 61.  Plaintiff's counsel asked Mr. Crapps if he had taken the platform down after OSHA came in, and Mr. Crapps answered no.  *Id.* at 36.  No affidavit or OSHA photographs were offered to refresh Mr. Crapps memory. Plaintiffs asked if the platform was present when OSHA inspected Unocal.  *Id.* at 38.   Mr. Crapps responded no without the benefit of seeing the OSHA investigator's statements in the OSHA files.  Again, Plaintiff asked a question that

1  could only have come from the OSHA documents: Did Roxanne Sinz direct you to

2  do anything in the filter room?  *Id.* at 39.  Mr. Crapps responded no.  *Id.*

3      At each of these points, Plaintiffs knew that the OSHA files containing the

4  investigator statements, the photographs, and the Crapps affidavit were different

5  from Mr. Crapps' recollection.  However, instead of providing Mr. Crapps a copy of

6  the OSHA files and photographs, Plaintiffs' waited for that "ah-ha, gotcha"

7  moment.[1]  Plaintiffs **knowingly withheld** the documents and photographs that

8
9  would have allowed Mr. Crapps the ability to recall the incidents contained within.

10     It was only after Plaintiffs forced Mr. Crapps to testify as to his best memory

11 regarding an event that occurred more than three years earlier, that Plaintiffs

12 revealed for the first time that they had an affidavit wherein Paul Crapps stated that

13 he had dismantled the platform as an abatement action in response to the OSHA

14 investigation.  *Id.* at 68 and 69.

15     On the record, when asked if the affidavit had been disclosed to Unocal,

16
17 Plaintiffs' attorney admitted he had not yet done so.

18     Q.  Mr. Crapps, I want to show you what's been marked as Exhibit No.
   9.  And, first, do you recognize that document?
19     A.  I must have.  I signed it, but not off the top of my head, but yeah.
   Q.  So that is your signature on the document?
20     A.  Yes.
   MR. THORSNESS:  What's the Bates number at the bottom here?
21     MR. COHN:  It's LG00739.  That's Larry Grove.  That will be
   supplemental --
22     MR. THORSNESS:  **Has been this been produced yet**?
   MR. COHN:  **It is going to be produced**, but
23     this is a document that I would assume that Unocal would
   have possession of.
24

25
   _____
26 [1] Reciprocal discovery was created to do away with "ambush" litigation.

1

       MR. THORSNESS:  Right, **but you have not produced it yet**?
       MR. COHN:  **No, but it is coming**.

2

3

Deposition of Paul Crapps, at 68, emphasis added.  Plaintiffs were fully aware that

4

the affidavit and OSHA documents had not been produced to Unocal.   They

5

intentionally used the affidavit to "sandbag" Paul Crapps.  Paul Crapps deposition

6

was taken March 3, 2006.  Plaintiffs had possession of the affidavit for months and

7

the full OSHA file for years.

8

       After the deposition, Unocal sent a letter to Plaintiffs demanding:

9

       a copy of any document that you intend to use with [deponents

10

       scheduled for the next week] that you have not already produced.
       Indeed, we demand that you produce any document relevant to this

11

       case that you have not yet produced or are intentionally withholding.

12

Letter dated March 3, 2006, attached as Ex. I, attached hereto.  In response to the

13

letter, Plaintiffs produced the OSHA files, which included the affidavit used at the

14

deposition.

15

       Plaintiffs amended their witness list on March 8, 2006 and added

16

descriptions of witnesses they expect to call, finally disclosing that Plaintiffs intend

17

to rely upon the OSHA investigation documents.  Plaintiffs' witness list, filed with

18

the court as Document #41 stated Plaintiffs' rationale for amending their witness

19

list:

20

21

       **In light of the state of discovery at the present time**, including the

22

       responses to discovery requests of plaintiffs, and information revealed
       in State of Alaska OSHA records, plaintiffs herein, by and through

23

       counsel, Phillip Paul Weidner & Associates, APC, hereby supplement
       their preliminary witness [sic] with the following individuals, including

24

       any and all individuals listed in the State of Alaska OSHA investigative
       reports, including State of Alaska OSHA investigators, and any and all

25

       individuals    from    defendant    Unocal    and    Siemens    Building

26

> Technologies, Inc., who are listed in the OSHA records as having participated in the investigation and/or were interviewed as well as other individuals revealed during discovery . . .

*Id.* The "state of discovery" was that Plaintiffs' deception about the OSHA files had been revealed.

Because Unocal did not have the OSHA photographs or the OSHA investigator statements, it answered the discovery based on the information it did have at the time. The OSHA files were critical to Unocal's ability to completely respond to Plaintiffs' motion to compel and otherwise properly defend against this litigation.

Based upon Plaintiffs' duplicitous discovery actions, Unocal should be allowed to withdraw all it's responses to the Fifth and Seventh Set of discovery regarding the platform and replace the answers with updated responses. The updated responses will be verified.

**Ninth Set Verification**

Finally, only one Interrogatory was answered in the Ninth response because Plaintiffs had already asked 25 interrogatories. 25 interrogatories is the limit imposed in Fed. R. Civ. P. 33. The remaining interrogatories posed beyond the limit were not answered. From a review of the file, it does not appear that the one interrogatory was verified, which was an oversight. This will be produced.

**Tenth Set Verification**

No Interrogatory was answered in the Tenth Request because Plaintiffs had asked more than 25 interrogatories.  No verification for the interrogatories was necessary.  The Court should deny the motion for sanctions against Unocal.

**Plaintiffs Have Failed To Provide Verifications For Discovery Answers.**

It appears that Plaintiffs have failed to provide verifications for discovery answers.  They did not provide a verification for

1) Response To Second Discovery Requests to Plaintiff Sarah Grove, dated February 6, 2006;

2) Response to Second Discovery Requests to Plaintiff Michael Grove, dated May 11, 2006.

Plaintiffs should provide the proper verifications for their own discovery responses.

**2.    RELATIONSHIP BETWEEN UNOCAL AND SIEMENS.**

Plaintiffs are aware that Unocal tendered defense of this case to Siemens.  The tender letter was produced to Plaintiffs long ago.  See Letter at Ex. J, attached hereto.  No formal letter was issued by Siemens to accept the tender of defense.  Plaintiffs refuse to believe that no agreement outside the initial work contract exists, and therefore they are frustrated by Unocal's response.

The Siemens-Unocal[2] work contract contained a "knock for knock" indemnity agreement that is commonplace in the oil business.  The contract was produced to

---

[2] The contract is between Landis Gyr and Unocal.  Siemens acquired Landis Gyr and with it acquired its work contracts.

Plaintiffs during initial disclosures back in 2004.  DEF 00013-18, Ex. K attached hereto.  No other information about the relationship between Unocal and Siemens is discoverable.  Defense information is privileged.  Details and information about legal representation of Siemens is privileged.

Unocal has objected to the production of any attorney client or work product information to Plaintiffs.  Plaintiffs are not entitled to know the details of privileged defense information.  Plaintiffs wish to show "bias" on the part of Siemens, but already have all the information they need or that is discoverable.

Plaintiffs complain that the "playing field" has not been "even" vis-a-vis discovery.  However, the only complaint that Plaintiffs really articulate is that they have not been afforded the right to contact Siemens current employees directly for pre-deposition interviews.  The restriction is common, which is why the federal rules provide for the right to subpoena witnesses.  Siemens has the right to choose who it grants the favor of talking to their employees.  This is especially true since Plaintiffs are represented by the same legal counsel in the workers compensation case which Siemens is a party to.  The access restrictions are proper.

The motion for sanctions should be denied.

### 3.    PLAINTIFFS' BELIEF THAT DOCUMENTS "MUST" EXIST IS IRRATIONAL.

**Platform documents:**

Plaintiffs assert that there "must be" documents regarding the construction of the platform inside Unocal.  They use circumstantial evidence to argue the certainty of their position.  From alleged conversations with unidentified people, Plaintiffs

believe that Unocal must have known about the construction, and authorized the construction. However, despite thorough investigation, Unocal has been unable to determine when the platform was built, who built it, and when.[3] In fact, it is even possible that Mr. Grove could have built it for Siemens when he began working in the building in 1999. The only statement made to date that indicates that the platform has been in place for years, is a hearsay statement in the recently disclosed OSHA files that was presumably made by Charles Arnett, a Peak employee who worked as a Unocal contractor.

Plaintiffs assume that Unocal has not diligently searched for records that would support Plaintiffs' theory of the construction of the platform in the filter room. This argument presumes that: Unocal knew and/or approved of the construction of the platform and that Unocal has documents that relate to that knowledge and/or approval.

So far, no one has uncovered the identity of the person or persons who constructed the platform. The Unocal building was erected in 1968. Thereafter, it appears that the HVAC work for the building was always contracted to an outside firm. Grove Depo I at 74, Ex. L attached hereto; Sprinkle deposition at 10, Ex. M attached hereto. Unocal employees would have had no reason to want or need the platform constructed.

---

[3] If Unocal could have identified the person or entity that designed and built the platform it certainly would have, since Unocal would have then filed a third party action.

The platform was not fancy or elaborate. It appears to be merely a functional attachment that was added for the convenience of the person changing the filters, which occurred 2-4 times per year. There is no other known use for the platform. There is no reason to believe that Unocal was consulted prior to the time the platform was installed in the filter room. Therefore, it is not surprising that a document search for construction or maintenance records for the platform has not resulted in Unocal finding the documents that Plaintiffs demand.

Plaintiffs may want platform related documents. However, Unocal has been unable to find those documents so far. Unocal continues to search its records and will produce any document that it finds. However, Unocal cannot produce what it does not have.

**Meeting Minutes:**

Plaintiffs believe that there were "minutes" from meetings that have not been turned over to Plaintiffs. This assumption is premised upon Archie Cook's deposition testimony. Archie Cook speculated that there were management meetings. He does not state that minutes were taken. Further, Cook states that he retired and turned his job duties over to Roxanne Sinz, so how he knows that these meetings took place at all, is not established. In short, Cook lacked foundation for his speculation and it should not be relied upon.

Finally, Unocal produced a document in redacted form. Plaintiffs have attached the document and response to the request for production to their motion at Ex. 7. As shown, the document is entitled "Staff Meeting, March 3, 2003, Notes

and Action Items."  The only relevant and non-proprietary item on the agenda was #21, which discussed the OSHA building inspection.  The entirety of that entry was disclosed.

**Safety Reports:**

Ken Burns recently affirmed that he had conducted a safety inspection of the building back in the late 1990's.  He does not know where the results of that inspection are, however.  Plaintiffs deposed Mr. Burns already, and had the ability to test his memory for themselves.

The remaining issues on the agenda were redacted due to either attorney-client privilege or proprietary work privilege.  Unocal was an oil and gas company with legitimate protectable interests.  Their proprietary business interests are of no evidentiary value in this case and are not likely to lead to the discovery of admissible evidence.  The motion for sanctions should be denied.

### 4. PLAINTIFFS' REQUEST FOR UNFETTERED ACCESS TO UNOCAL'S RECORDS IS UNSUPPORTABLE.

Plaintiffs request that they be allowed to enter Unocal premises and look through any previously underproduced records that they believed would be relevant. No federal rule requires Unocal to open its doors and allow the Plaintiffs unfettered access to its records.  Plaintiffs have not cited a single rule or case that would allow them to do so because no federal rule or case has ever supported such a request.

Plaintiffs' are entitled to look at the original documents that have been produced to date.  Unocal has been and continues to be willing to comply with any request to look at originals, and their willingness has been communicated to

Plaintiffs.  However, documents that have not been produced are off limits.  Unocal will not agree to grant Plaintiffs access to documents that are proprietary, attorney-client privileged, work product protected, or otherwise completely non-responsive to any request or issue in this case.

Plaintiffs wish to ransack Unocal's unproduced documents in a vain attempt to discover a relevant document.  Their accusation of "bad faith, willful evasion and non-compliance" because Unocal refuses Plaintiffs' unfettered access is outrageous and unsupported.  Plaintiffs' motion for sanctions on this issue is without merit and should be denied.

### 5. PLAINTIFFS' ALLEGATION THAT UNOCAL HAS NOT THOROUGHLY SEARCHED FOR WORK PLATFORM DOCUMENTS IS NOT BASED ON EVIDENCE AND IS UNTRUE.

Plaintiffs charge that Unocal has failed to thoroughly search for documents relating to the work platform.  This allegation is false and is not supported by evidence.  Plaintiffs base their allegation merely upon their belief of what documents should have been produced.  Plaintiffs' unfulfilled desire for a document to prove their theory does not equate to discovery violations by Unocal.

Searches for the specific records requested by Plaintiffs have been made.[4] Those that exist have been produced.  But, documents like the Ken Burns' safety reports have not been located.  Plaintiffs took Ken Burns' deposition and he agreed that he did not have a copy of his prior safety inspection reports and that no copy

---

[4] Plaintiffs failed to notice up or take a 30(b)(6) deposition of Unocal's records custodian.

could be located.  Burns deposition at 70, Ex. N attached hereto.  There was no reason to disbelieve Mr. Burns.  There is no reason to believe that Mr. Burns didn't look for the reports.

Plaintiffs have asked several witnesses whether a platform built inside the Unocal building required authorization from Unocal.  Each witness has said yes. Plaintiffs use this response as proof that Unocal should have documents regarding the platform.  But the Plaintiffs' question is premised upon the unstated assumption that Unocal knew that the platform was going to be built.  No one has ever found any evidence to prove that Unocal knew the platform was built or what Grove used it for.   Unocal cannot prove a negative unless someone steps forward and confesses that they built the platform without permission.   The assumption that Unocal knew and approved of the platform's construction is an unproven boot strap assumption.  Sanctioning Unocal for what Plaintiffs believe should be true would be reversible error.

### 6.    FEDERAL RULE 33 LIMITS INTERROGATORY REQUESTS TO 25, INCLUDING "ALL DISCRETE SUBPARTS."

Prior to answering the Ninth set of Discovery Requests, Unocal gave Plaintiff notice via letter that they would only answer the 25 interrogatories required and allowed under Fed. R. Civ. P. 33.  When Plaintiffs protested, Unocal set out its calculation of 25 interrogatories in detail.   Letter dated March 8, 2006, Ex. O attached hereto.

Fed. R. Civ. P. 33 states that the 25 interrogatories include "parts and subparts".    Plaintiffs have in some cases identified interrogatory subparts

themselves.  However, in at least one interrogatory, Plaintiffs simply set forth a run on sentence asking for broad categories of information.  Interrogatory #1, found in Plaintiffs' Seventh Set of Discovery Requests asks:

> **<u>INTERROGATORY NO. 1</u>**:  Please identify each and every Unocal employee and/or any other persons, who went into the mechanical room at the Unocal building where the accident, the subject of this litigation, occurred from the time of the accident on September 9, 2002 until the scaffolding/work platform was removed, and as to each Unocal employee or person, provide name, address, job position and responsibility at time of entry into the room, why they went into the room, what they did in the room, whether they recorded or documented the visit, if any photographs or videotaping was done, what they observed in the room in regard to the scaffolding/work platform, bolts or machine screws, nuts, washers, planks, vertical or horizontal supports, and whether they moved anything, and if so, what was moved and where was it moved to?

Unocal objected to the Interrogatory as a "multi-part question".  The Interrogatory should have been drafted to include the subparts of the question, so that it read:

> 1. Please identify each and every Unocal employee and/or any other persons, who went into the mechanical room at the Unocal building where the accident, the subject of this litigation, occurred from the time of the accident on September 9, 2002 until the scaffolding/work platform was removed, and as to each Unocal employee or person, provide name, address, job position and responsibility at time of entry into the room;
>    a. Why they went into the room;
>    b. What they did in the room;
>    c. Whether they recorded or documented the visit, if any photographs or videotaping was done;
>    d. What they observed in the room in regard to the scaffolding/work platform, bolts or machine screws, nuts, washers, planks, vertical or horizontal supports; and
>    e. Whether they moved anything, and if so, what was moved and where was it moved to.

The interrogatory as properly drafted contained a primary question about the person or persons who may have entered the room and their identity, plus five subparts not necessary to answer the primary question.  Plaintiffs added multiple discrete questions in one long run-on sentence.

At least one other court has ruled on a similar issue.  *Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D.Cal. 2006) held that an interrogatory, which was must less onerous than those composed by the Plaintiffs in this case, was actually at least three separate interrogatories.  That interrogatory stated: "Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion and the expert's qualifications."  *Id.* at 615.  The *Trevino* court broke down a much smaller question, but one which also asked discrete subjects.

The court in this case should read Plaintiffs' interrogatory #1 as containing discrete subparts.  The separate parts of the interrogatory are not logically or factually subsumed within the first, and primary part of the questions, which asked for the identity and other factual information regarding anyone who had entered the room.   See e.g. *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D.Cal.1998), (Although there is no bright-line test as to whether a subpart should be counted as an interrogatory, Rule 33(a) appears to require examining whether the subparts are " '... logically or factually subsumed within and

necessarily related to the primary question.' ") quoting, *Ginn v. Gemini Inc.*, 137 F.R.D. 320, 322 (D.Nev.1991).

Unocal counted the subparts of this question when it counted up the 25 interrogatories.  The run-on portion of the sentence does contain subparts that are not related to the primary question, regardless of whether Plaintiffs designated them so.  Unocal should not be required to answer more than 25 Interrogatories.

Plaintiffs ask in the alternative for permission to pose more Interrogatories.  No additional Interrogatories should be imposed.   Leave to serve additional interrogatories should not be granted where: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* Fed.R.Civ.P. 26(b)(2).  Plaintiffs have issued **fifteen** sets of discovery **and** Unocal has voluntarily provided **twenty** supplements to initial disclosures.  Most of Plaintiffs' requests are unreasonably duplicative simply because Plaintiffs do not like the responses Unocal provide, not because they are new questions.  Plaintiffs have not provided the court with a list of questions that are new or even that are required.

Plaintiffs have had ample opportunity to obtain discovery of the information sought via depositions or document production. They do not need more interrogatories to discovery facts, and indeed have not listed the questions they have not yet posed. Plaintiffs do not need more interrogatories in order to discover facts.

The discovery burden placed upon Unocal after 15 sets of discovery is simply too much. For example, in the 14th Set of Discovery, Plaintiffs posed 34 separate requests for production. The burden on Unocal if Plaintiffs are allowed more interrogatories far outweighs any potential benefit to Plaintiffs.

The sanction requested should be denied and Plaintiffs should not be granted new interrogatory requests.

### 7. FAILURE TO PROVIDE THE DISCOVERY ANSWERS PLAINTIFFS WANT TO HEAR, DOES NOT SUPPORT SANCTIONS.

Plaintiffs argue that Unocal purposely "misdirected" them in their discovery of the platform's origins. This is untrue. In its initial discovery answers, Unocal believed only Siemens could have erected the platform because Unocal knew from talking to its employees that no Unocal employee worked in the filter room. Indeed, no Unocal employee recalled seeing the platform prior to Larry Grove's fall. Deposition testimony from Unocal's current and former employees has since confirmed Unocal's first discovery answers. Only one person has stated that he saw the platform prior to 1999: Robert Sprinkle, a Siemens employee and a friend of Larry Grove.

To date, no one has discovered who created or built the platform.  Despite the thorough discovery efforts by Unocal and after exhausting its internal resources, Unocal voluntarily subpoenaed records from Honeywell, Peak, and Kelley Services.  These records were disclosed to Plaintiffs.  None of these entities produced names or evidence that would aid Unocal in determining who built the platform in the filter room, when it was built, or why.  Plaintiffs ignore Unocal's discovery efforts when placing blame on Unocal for failing to find the answer to who built the platform.  Now, at the end of discovery, neither party has discovered who erected the platform.  Unocal has not purposely "misdirected" Plaintiffs.

Plaintiffs state that Unocal admitted to OSHA that the platform had been in existence before Siemens took over as a contractor.  This, too, is untrue.  Tom Scanlon stated that he was directed by his supervisor not to identify the employee who made a statement during his investigation.  Therefore, he attributes the statements generically.  Scanlon Deposition at 151-152, attached hereto as Ex. P. Tom Scanlon wrote the OSHA statements and listed Charles Arnett as "the Unocal Manager responsible for Building Maintenance…."  Exhibit 12 to Plaintiff's Motion in Limine, at LG 756.  There are numerous alleged quotes that OSHA attributes to Unocal "management."

But Charles Arnett was never a Unocal employee.  He was never management.  Because the OSHA investigator did not make any notation of who made each comment, there is no way to know if the statement was made by Unocal or a Unocal contractor so there is no way to test the veracity of the

statement the statement is inadmissible hearsay.  Plaintiffs have grasped onto the statement because they wish it to be true.

Unocal has complied with its discovery requirements.  It cannot produce what it does not have.  The motion should be denied.

## 8.    PLAINTIFFS COMPLAINTS ABOUT THE "SECRET SURVEILLANCE" OF LARRY GROVE ARE UNFOUNDED.

Plaintiffs continue their objection to public surveillance of Larry Grove.  They have repeatedly asked the court to order Unocal to refrain from videotaping their client's activities, which occur in public.   Public surveillance is not improper. *McLain v. Boise Cascade Corp.,* 271 Or. 549, 533 P.2d 343, 345-46 (1975) (Surveillance of workers' compensation claimant by filming his activities outside his home does not give rise to invasion of privacy claim), <u>cited with favor</u> in *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1137 (Alaska 1989).  Plaintiffs have not pointed to any impropriety by Unocal.   In fact, they must admit that all surveillance conducted by Unocal has been conducted in public areas.

Plaintiffs ask for notes, contracts, and other information about the "secret agents."  The information that they seek is attorney work product privileged.  The videotapes were produced in complete, unedited form and there is nothing more to disclose.

Plaintiffs lump the surveillance conducted by Unocal with the surveillance conducted by the workers compensation carrier.   Surveillance in workers compensation cases appears to be routinely accepted by the Alaska Supreme

Court for the purposes of detecting fraud and malingering.[5]  See, e.g., *DeNuptiis v. Unocal Corp.,* 63 P.3d 272, 280 n. 32 (Alaska 2003).

Unocal was unaware of the 2003 videotape until it subpoenaed documents from workers compensation, which disclosed its existence.  At that time, Unocal demanded that the workers compensation carrier turn over a copy of the tape and then Unocal immediately disclosed a copy to Plaintiffs.  Unocal is not involved in the workers compensation case and Unocal does not have any control over the tape made in 2003.  Unocal has disclosed to Plaintiffs every video it received in discovery.

Plaintiffs' are represented in the workers compensation case by the same counsel as are present in this matter.  If Plaintiffs' wish to challenge the videotape made for workers compensation or wish to obtain further discovery thereon, they are able to do so.   Plaintiffs have not issued a subpoena in the workers compensation case demanding further discovery of the tape.  Unocal should not be required to subpoena documents from workers compensation for evidence that Plaintiffs believe exists.

The motion to compel discovery should be denied.

**CONCLUSION:**

For all the above stated reasons, Plaintiffs motion to compel discovery should be denied.

---

[5] Ironically, these are the same purposes for which Unocal sought to videotape Larry Grove.

DATED at Anchorage, Alaska, this ____4th____ day of May 2007.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal


s/ Linda J. Johnson_____
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9631
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar No. 8911070

Certificate of Service

I hereby certify that on May 4, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

s/ Linda J. Johnson