Page 1

```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF ALASKA


LAWRENCE H. GROVE, et al.,      )
                                )
              Plaintiffs,       )
                                )
vs.                             )
                                )
UNOCAL CORPORATION,             )
                                )
              Defendant.        )
_____)
Case No. A 04-0096 CV (JKS)
```

RECEIVED BY:
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
Date Rec'd/Initials: 5/23/06 /WKK
Response Due:
Distribution: JBT/LJJ/WBH

VIDEOTAPED DEPOSITION OF KENNETH BURNS

Pages 1 - 146
Tuesday, May 9, 2006
9:00 A.M.

at
WEIDNER & ASSOCIATES
330 L Street, Suite 200
Anchorage, Alaska

EXHIBIT  N
PAGE  1  OF  4

GROVE v. UNOCAL                                                            KENNETH BURNS
                                                                           5/9/2006

Page 2

```
 1         A-P-P-E-A-R-A-N-C-E-S
 2
     For the Plaintiffs:
 3   Michael Cohn
     WEIDNER & ASSOCIATES
 4   330 L Street, Suite 200
     Anchorage, Alaska  99501
 5   (276-1200)
 6
     For the Defendants:
 7   John Thorsness
     CLAPP PETERSON VAN FLEIN TIEMESSEN & THORSNESS
 8   711 H Street, Suite 620
     Anchorage, Alaska  99501
 9   (272-9272)
10
     The Videographer:
11   Eric R. Cossman
     ALASKA LEGAL VIDEO
12   645 G Street, Suite 892
     Anchorage, Alaska  99501
13   (276-8601)
14
     Court Reporter:
15   Diane M. (Preece) Bondeson
     PACIFIC RIM REPORTING
16   711 M Street, Suite 4
     Anchorage, Alaska  99501
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1              I N D E X
 2
     EXAMINATION BY:                 Page
 3
     Mr. Cohn                        5
 4                                 135
 5
     Mr. Thorsness                 129
 6
 7
     EXHIBITS
 8
     1   Burns' Notes of State OSHA Visit (1 pg)   36
 9
     2   Unocal's Ninth Supplement to Initial      55
10       Disclosures (126 pgs)
11
     3   Additional Documents from Initial         56
12       Disclosures (19 pgs)
13
     4   Plaintiffs' Rules 26 (Fifth) Supplemental 77
14       Disclosures (93 pgs)
15
     5   Photocopies of Photographs (5 pgs)        99
16
     6   Siemens Safety Evaluation (14 pgs)       123
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1        ANCHORAGE, ALASKA; TUESDAY, MAY 9, 2006
 2                  9:11 A.M.
 3                   -o0o-
 4        THE VIDEOGRAPHER:  Okay.  We're on the
 5   record at 9:11.  This is the video deposition of Ken
 6   Burns, taken by the plaintiffs in the matter of
 7   Grove, et al, vs. Unocal Corp., Case No. A 04-0096 CV
 8   (JKS) in the United States District Court for the
 9   District of Alaska.
10        This deposition is being held in the
11   offices of Weidner & Associates, located at 330 L
12   Street, Suite 200, Anchorage, Alaska, on May 9, 2006.
13        My name is Eric Cossman from Alaska Legal
14   Video, mailing address 645 G Street, No. 892,
15   Anchorage, Alaska 99501.  The court reporter is Diane
16   Bondeson from the firm Pacific Rim Reporters.
17        Will counsel please identify themselves for
18   the record.
19        MR. COHN:  My name is Michael Cohn.  I'm an
20   attorney at the law offices of Weidner & Associates,
21   Inc.  I'm here on behalf of the plaintiffs.
22        MR. THORSNESS:  John Thorsness for
23   defendant Unocal.
24        THE VIDEOGRAPHER:  Thank you.  Would the
25   reporter please swear in the witness.
```

Page 5

```
 1        MR. THORSNESS:  Excuse me.  And
 2   representing the witness as well.
 3              KENNETH BURNS
 4        witness herein, being sworn on oath was
 5        examined and testified as follows:
 6              EXAMINATION
 7   BY MR. COHN:
 8   Q.  Good morning, Mr. Burns.
 9   A.  Good morning.
10   Q.  Are you here pursuant to a deposition
11   notice?  Have you seen the deposition notice in this
12   case?
13   A.  No, I don't recall seeing it.
14   Q.  Well, how did you know you had a deposition
15   today?
16   A.  I was notified by paralegal for Chevron.
17   Q.  Where do you work?
18   A.  For Chevron.
19   Q.  What is your job position?
20   A.  My job position is safety specialist.
21   Q.  And how long have you worked for Chevron?
22   A.  Chevron recently purchased Unocal,
23   approximately six months ago.  I joined Unocal in
24   September 1997, continuous employment till the merger
25   of Chevron and Unocal.
```

EXHIBIT 2
PAGE 2 OF 4

2 (Pages 2 to 5)

Page 70

1  Q. Do you recall doing the inspections back in
2  1998/1999?
3  A. Yup.
4  Q. Have you reviewed a copy of those
5  inspections before?
6  A. No, I -- I have no idea where the location
7  of those are.
8  Q. Is it normal practice for Unocal to keep
9  safety inspections?
10 A. Yes, it is.
11 Q. And if you did -- you first worked for
12 Unocal starting in '97; is that correct?
13 A. That's correct, in Kenai.
14 Q. Would you have any knowledge of -- had you
15 ever reviewed any prior safety inspections for the
16 building at 909 --
17 A. No.
18 Q. -- West Ninth Avenue? Do you know if any
19 prior inspections had been done for the building?
20 A. No.
21 Q. And you -- and would it be your assumption
22 that if you did these inspections, that they should
23 have copies of these inspections still in the Unocal
24 records?
25 A. Archie Cook was the action person on this.

Page 71

1  The reports were sent to Archie for his disposition,
2  whatever he wanted to do with those, and I'm sure he
3  had them.
4  Q. Now, in terms of the inspections in '98 and
5  '99, what would the -- what would you -- what were
6  you supposed to do in these inspections, if you
7  recall?
8  A. Basically walk through the building floor
9  by floor as previously stated in the '03 inspection.
10 The building custodian person at the time was a
11 Mr. Charles Arnett. He accompanied on that
12 inspection.
13 Q. And did you start -- would you start in the
14 basement or -- I mean, was there a certain
15 methodology?
16 A. The only -- the only criteria for what I
17 have when I do inspections, I go from left to right
18 whether we start in the penthouse or in the basement,
19 and I don't recall specifically whether we even went
20 into the penthouse. I was not -- I was not familiar
21 with the Anchorage office.
22 Q. Well, if you were not familiar -- did you
23 ask any -- did you expect someone to tell you what
24 was in the building or guide you if you weren't
25 familiar with the office?

Page 72

1  A. That's why I was with Charles Arnett, yes.
2  He was my guide.
3  Q. Would it be fair to say that the inspection
4  was to identify hazardous conditions?
5  A. That's the only purpose.
6  Q. And would it be fair to say that the
7  penthouse with the equipment and the -- that operates
8  up there, the boiler and other faculties, that that
9  would be an important part of the inspection, to
10 examine the penthouse?
11 A. No.
12 Q. Why not?
13 A. Lack of exposure. Employees don't work up
14 there. Lack of exposure, limited exposure.
15 Q. Then why did you examine the penthouse on
16 the March 3rd, 2000 -- March 5th, 2003 inspection?
17 A. An accident happened in 2002 with
18 Mr. Grove.
19 Q. So do you have a specific recollection of
20 not examining the penthouse in your safety
21 inspections in '98 and '99?
22 A. I don't recall going to the penthouse. In
23 fact, I was rather surprised when I went to the
24 penthouse in 2003, what was up there.
25 Q. Why were you surprised? You said --

Page 73

1  A. I had never been in the penthouse before.
2  Q. Do you recall what you saw up there? I
3  mean, can you recall right now what was up in the
4  penthouse?
5  A. Besides the mechanical rooms, air
6  conditioner, there was rooms where certain items were
7  kept but not normally for public view, in the sense
8  of Unocal clothing and so forth. Logo type stuff
9  that was kept pretty well under lock and key.
10 Q. Let's see. Do you know who Patty Bielawski
11 is?
12 A. Patty Bielawski.
13 Q. Bielawski?
14 A. Yes.
15 Q. Who was she?
16 A. She was acting health, environmental,
17 safety office -- safety manager, excuse me. HES
18 manager.
19 Q. Do you know when she was the health and
20 safety manager?
21 A. She was a contract employee, not a direct
22 Unocal employee. She came on board shortly after the
23 reorganization of Unocal, which would have been
24 December -- January -- December '02, January '03.
25 Q. And here on No. 33 where Sinz was asking

Page 142

1 was it your understanding that Mr. Arnett reported to
2 Archie Cook?
3     A. He did at that time.
4     Q. So Archie Cook was -- do you recall if
5 Archie Cook was a supervisor?
6     A. Indirectly.
7     MR. THORSNESS: Let's take a break for a
8 second.
9     MR. COHN: Okay.
10    THE VIDEOGRAPHER: Going off record. The
11 time is 1:56.
12    (Recess held.)
13    THE VIDEOGRAPHER: Back on the record. The
14 time 1:59.
15 BY MR. COHN:
16    Q. In regard to the OSHA inspection and the
17 conference that you had where they reduced the
18 penalty?
19    A. Yes, sir.
20    Q. The penalty was reduced, but it wasn't
21 eliminated; is that correct?
22    A. That's correct.
23    Q. And when you worked for OSHA, did you on
24 occasion reduce penalties?
25    A. I never did as compliance officer. It was

Page 143

1 the responsibility of the chief of the compliance
2 section to do that.
3     Q. Okay. So like Tom Scanlon, is it your
4 understanding he was a compliance officer and not --
5 and that would have been John Stallone's job?
6     A. That's correct.
7     Q. And do you have any idea why there was both
8 a federal and a state OSHA person involved?
9     A. The state program comes under the federal
10 jurisdiction, if I may use the word, because of the
11 funding. Feds provide 50 percent of the funding for
12 state programs. So they monitor very close.
13    Q. And I think you might have indicated
14 before. When did you find out about this lawsuit
15 yourself?
16    A. Tracie Howard called me. I'm not sure when
17 it was.
18    Q. And when you were safety manager in other
19 places or project -- did you work as a project
20 manager in some cases?
21    A. Safety manager.
22    Q. Safety project manager. Is it your
23 understanding that the -- that the facility owner is
24 responsible for all the apparatus in that -- in their
25 buildings?

Page 144

1     A. Sure. Generally true, yes.
2     MR. COHN: I don't have any further
3 questions.
4     MR. THORSNESS: No questions. Thank you.
5     MR. COHN: Okay. Thank you, Mr. Burns.
6     THE WITNESS: You're welcome.
7     THE VIDEOGRAPHER: This concludes the
8 deposition of Ken Burns. The time is 2:01.
9     (Proceedings concluded at 2:01 p.m.)
10    (Signature reserved.)
11         * * * * *

Page 145

1             CERTIFICATE
2     I, DIANE M. BONDESON, Registered
3 Professional Reporter and Notary Public in and for
4 the State of Alaska, do hereby certify that the
5 witness in the foregoing proceedings was duly sworn;
6 that the proceedings were then taken before me at the
7 time and place herein set forth; that the testimony
8 and proceedings were reported stenographically by me
9 and later transcribed by computer transcription; that
10 the foregoing is a true record of the testimony and
11 proceedings taken at that time; and that I am not a
12 party to nor have I any interest in the outcome of
13 the action herein contained.
14    IN WITNESS WHEREOF, I have hereunto set my
15 hand and affixed my seal, this _____ day
16 of _____, 2006.

                              _____
                              Diane M. Bondeson, RPR
21                            My Commission Expires 9/6/06

EXHIBIT N
PAGE 4 OF 4