GROVE v. UNOCAL

TOM SCANLON
4/14/2006

Page 1

1       UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF ALASKA
2

3

LAWRENCE H. GROVE, et al.,      )
4                               )
            Plaintiffs,         )
5                               )
vs.                             )
6                               )
UNOCAL CORPORATION,             )
7                               )
            Defendant.          )
8       _____)
        Case No. A 04-0096 CV   (JKS)
9

10      _____

        VIDEOTAPED DEPOSITION OF TOM SCANLON
11      _____

12
                Pages 1 - 220
13           Friday, April 14, 2006
                 9:16 a.m.
14
        Taken by Counsel for Plaintiffs
15                    at
The Offices of Department of Labor & Workforce
16                Development
        3301 Eagle Street, Suite 209
17           Anchorage, Alaska

18

19

20

21

22

23                                  EXHIBIT P

24                                  PAGE 1 OF 5

25

GROVE v. UNOCAL                                                    TOM SCANLON
                                                                    4/14/2006

Page 2

```
 1              A-P-P-E-A-R-A-N-C-E-S

 2

      For Plaintiffs:
 3       Michael Cohn
         PHILLIP PAUL WEIDNER & ASSOCIATES
 4       330 L Street, Suite 200
         Anchorage, Alaska 99501
 5       907/276-1200

 6

      For Defendant:
 7       Linda J. Johnson
         CLAPP PETERSON VAN FLEIN TIEMESSEN THORSNESS, LLC
 8       711 H Street, Suite 620
         Anchorage, Alaska 99501-3654
 9       907/272-9272

10

      For the State of Alaska:
11       Larry A. McKinstry
         Assistant Attorney General
12       Department of Law, Civil Division
         1031 West 4th Avenue, Suite 200
13       Anchorage, Alaska  99501-1994
         907/ 269-6612

14

      Also Present:
15       Eric R. Cossman, JD, CLVS

16    Court Reporter:
         Leslie J. Knisley
17       PACIFIC RIM REPORTING
         711 M Street, Suite 4
18       Anchorage, Alaska 99501

19

20

21

22

23

24

25
```

EXHIBIT $P$
PAGE $2$ OF $5$

GROVE v. UNOCAL                                                    TOM SCANLON
                                                                   4/14/2006

Page 5

1    ANCHORAGE, ALASKA; FRIDAY, APRIL 14, 2006
2              9:16 A.M.
3              -o0o-
4    (Exhibit 1 marked.)
5         THE VIDEOGRAPHER:  We're on the record
6    at 9:16.  This is the video deposition of Tom
7    Scanlon taken by the plaintiffs in the matter of
8    Grove, et al. versus Unocal Corp., Case No.
9    A-04-0096 CV (JKS), In The United States District
10   Court For The District of Alaska.
11        This deposition is being held in the
12   offices of OSHA located at 3301 Eagle Street,
13   Suite 209, Anchorage, Alaska on April 14th, 2006.
14   My name is Eric Cossman from Alaska Legal Video,
15   mailing address, 645 G Street, No. 892, Anchorage,
16   Alaska 99501.  The court reporter is Leslie
17   Knisley from the firm Pacific Rim Reporting.
18        Will counsel and all present please
19   identify themselves for the record?
20        MR. COHN:  My name is Michael Cohn from
21   the offices of Phillip Paul Weidner and Associates
22   here on behalf of the plaintiffs.
23        MS. JOHNSON:  Linda Johnson.  I'm from
24   Clapp Peterson and we represent Unocal.
25        MR. MCKINSTRY:  I'm Larry McKinstry.

Page 6

1    I'm an assistant attorney general and I represent
2    the Department of Labor.
3         THE VIDEOGRAPHER:  Thank you.  Would the
4    reporter please swear in the witness?
5              TOM SCANLON,
6    deponent herein, being duly sworn under oath,
7         was examined and testified as follows:
8              EXAMINATION
9    BY MR. COHN:
10    Q    Good morning, Mr. Scanlon.
11    A    Good morning.
12    Q    Once again, my name is Michael Cohn.
13   I'm here on behalf of the plaintiffs --
14    A    Okay --
15    Q    -- Larry Grove, Cynthia Grove, and their
16   children, Sarah Grove and Michael Grove.  And
17   we're here because of an accident that occurred on
18   September 9th, 2002 when a work platform collapsed
19   at the Unocal building at 909 West 9th Avenue.
20    A    Right.
21    Q    This deposition is being videotaped, and
22   I know sometimes it's a little awkward.  You'll be
23   looking at me.  It probably -- I don't know how
24   that usually works with deponents, but you'll be
25   videotaped straight ahead there.

Page 7

1    A    So, should I be looking at you or should
2    I --
3    Q    Well, you'll probably do what's natural,
4    and I think you probably should be facing the
5    person you're looking at.  But even though we have
6    it videotaped, you should still answer "yes" or
7    "no" to a question as opposed to shaking your
8    head -- there's also a transcript being made --
9    A    No, I understand.
10    Q    -- to a yes or no question.
11        Have you ever had your deposition taken
12   before?
13    A    Not that I remember, no.
14    Q    Do you understand -- have you had
15   explained to you what a deposition is?
16    A    Actually, no.
17    Q    A deposition is -- this is a proceeding
18   that under the Federal Rules of Civil Procedure we
19   take your deposition under oath.  And the
20   deposition can be used sometimes -- sometimes in
21   place of your testimony if we go to trial if
22   you're not available.  And the videotape, we might
23   agree to just use your deposition, or even if you
24   would appear, we might be able to use your
25   deposition in questioning you or in

Page 8

1    cross-examining you or confirming what you said
2    previously.
3         So there's a possibility that this
4    videotape is as if you're talking to the jury and
5    the jury is listening to you as if you were in
6    court.  Now, there may be some times when -- if
7    you don't understand the question that I'm asking
8    or, you know, you're confused, just let me know
9    because --
10    A    I'll ask for a reclarification.  Again,
11   this is my first time and I want to --
12    Q    Right.  And the other thing is, if I'm
13   asking you a question or Ms. Johnson's asking you
14   a question, it's easier for the court reporter to
15   first let us finish the question and then we try
16   and let you finish the answer without interrupting
17   you so that we don't have two voices at the same
18   time.
19        In addition, Ms. Johnson, and then when
20   she's questioning you, I might make objections to
21   certain questions.  We're just preserving that for
22   the record.  There's certain times where there's
23   questions that the Court may rule on as to whether
24   or not it's admissible in court.  Then we're just
25   preserving the objections, but you should still go

5 (Pages 5 to 8)

EXHIBIT 4
PAGE 3 OF 5

GROVE v. UNOCAL

TOM SCANLON
4/14/2006

Page 149

1 you talked to him a second time, if you're having
2 him look at pictures?
3    A   If it was, again, I stated I wasn't sure
4 if it was Larry or if it -- but from that
5 perspective, I would think it was probably Paul
6 Crabbe.
7    Q   So this could have been Paul Crapps that
8 you were talking to?
9    A   Not Paul Crabbe.  The other -- the
10 fellow that replaced Larry doing the filter
11 replacement.
12    Q   So, okay.  That is something I wanted to
13 talk to you.  You talked to more than one person
14 at Siemens; is that correct?
15    A   That is correct.
16    Q   And who else did you interview?
17    A   It's on my list in my narrative, I
18 believe.  I talked to -- Hoover was the services
19 manager.  Tom Lake was the supervisor.
20    Q   What page are you looking at?
21    A   Well, I'm looking at --
22    Q   808?
23    A   808, but I'm looking also for -- it
24 usually lists it on the form.  I talked to --
25    Q   What page is that you're looking at?

Page 150

1 I'm sorry.
2    A   Okay.  I'm looking at 807.
3    Q   Okay.  So, who else could this employee
4 have been?
5    A   Well, I didn't list it on here, but I
6 believed I had -- let me refer to my notes.  Brent
7 Davies was a pipefitter.
8    Q   Okay.  And he was from Siemens; is that
9 correct?
10    A   I believe so.
11    Q   If you look at page 808, his name shows
12 at the bottom of page 808.
13    A   808?
14    Q   Uh-huh.  That was the earlier one you
15 were just looking at.
16    A   Okay.  Okay.
17    Q   When did you talk to Mr. Davies?
18    A   It was the first or second day of -- at
19 the Siemens office.  They set it up where he came
20 back in.
21    Q   Okay.  And what did he tell you?  Do you
22 recall?
23    A   I don't remember.
24    Q   Did he tell you he had been in the room?
25       MR. COHN:  Objection; asked and

Page 151

1 answered.
2    A   I don't remember.
3    Q   (By Ms. Johnson)  Okay.  Was he somebody
4 that you asked to speak to or somebody that
5 Siemens told you might be helpful?
6    A   I asked who else had been in there, et
7 cetera.  And, again, I don't remember
8 specifically.  My assumption is Mr. Davies is the
9 one that had filled in while Larry was out on a
10 medical.
11    Q   Okay.  So, going back to 822.  When
12 you're referring to "the employee," I'm still
13 trying to figure out who you might have been
14 referring to, because all you said was "employee"
15 rather than Grove or Davies.  Does looking back at
16 that help you remember who that might be?
17    A   No, I don't remember.  And we are
18 specifically not -- are told not to put their
19 names.
20    Q   And why is that?
21    A   For confidentiality.
22    Q   Okay.  And who tells you not to put
23 names in a report?  Is that --
24    A   OSHA.
25    Q   OSHA, Federal OSHA tells you --

Page 152

1    A   Well, I don't know.  My boss tells me.
2    Q   Okay.  And your boss at the time was
3 Bernicke?
4    A   Bernicke at the time, yes.
5    Q   Okay.  And so he had directed you use
6 generic descriptions of people --
7    A   Right.
8    Q   -- that you interview?
9    A   Right.  You know, and since then
10 Mr. Stallone has modified it obviously so that we
11 don't face a problem like this three years later,
12 is that in the back we have -- and we refer to
13 employee No. 1, employee No. 2, employee No. 3,
14 and there's then a confidential list of the
15 employees by name.  Because the problem we're
16 facing now was --
17    Q   Okay.  So Mr. Stallone changed that
18 policy?
19    A   Right -- well, instead of saying a
20 generic, you put employee No. 1, employee No. 2
21 and then you put somewhere that -- in the back of
22 the file...
23    Q   Who specifically is each of those?
24    A   Right, No. 1, No. 2 and No. 3.
25    Q   Okay.  On the second sentence it says

41 (Pages 149 to 152)

GROVE v. UNOCAL

TOM SCANLON
4/14/2006

Page 217

1  wall in Unocal and there's some -- and your notes
2  indicate that it may have been there since the
3  1970s.
4      A   Right.
5      Q   Now, what does -- does this convey to
6  you that Unocal as the employer or owner of the
7  building is the one responsible for this -- is
8  responsible for this work platform?
9          MS. JOHNSON:  Objection; foundation.
10     A   Again, a complex issue.  It could depend
11 on a couple of things.  Getting back to Step 1 is,
12 they had their own ladders and they were extension
13 ladders.  I would think that under the reasonable
14 man concept it might be much more prudent not to
15 use the work platform and use your own ladder just
16 to go all the way up.
17     Q   (By Mr. Cohn)  And how do you get the
18 ladder into the building?
19     A   Well, he had gotten it in there several
20 times before, you know
21     Q   Dragging it up seven flights of stairs?
22         MS. JOHNSON:  Objection; argumentative.
23     Q   (By Mr. Cohn)  Well, that leads to
24 another question:  Your own notes indicate that
25 under the service contract between Unocal and

Page 218

1  Siemens it was the duty of Unocal to provide
2  access to the equipment that they were going to
3  replace.
4      A   Right.
5      Q   Would that indicate to you it was the
6  responsibility of Unocal to supply the ladder or
7  work platform that was to be used by Siemens to
8  access the filters to replace them?
9          MS. JOHNSON:  Objection; foundation.
10     A   I'm not in a position to make that
11 judgment.
12     Q   (By Mr. Cohn)  You put that down --
13 well, why did you put that down in your Safety
14 Narrative report if it's --
15     A   Because it's --
16     Q   Did you consider it important?
17     A   Yes.  And I go back to my previous
18 statement that we are told to ask for the contract
19 to try to determine.  It's not a cut and dry
20 situation, but we try to help determine who has
21 the responsibility.
22     Q   Was there anything in any of the
23 contracts you read between Unocal and Siemens that
24 placed the responsibility on Siemens to supply
25 ladders or work platforms to access the equipment?

Page 219

1      A   I don't remember.
2      Q   And if there was no such requirement in
3  the contract and if in fact the requirement was on
4  Unocal, you wouldn't have -- is that a factor in
5  considering Unocal's liability for the citations?
6      A   Yes.
7          MR. COHN:  I don't have any further
8  questions.
9          MS. JOHNSON:  Objection to the
10 foundation on the last question.
11         I don't have any other questions.  You
12 are free to go.  Get out quick.
13         THE VIDEOGRAPHER:  This concludes the
14 deposition of Tom Scanlon.  The time is 3:30.
15         (Signature waived.)
16         (Proceedings concluded at 3:30 p.m.)
17
18
19
20
21
22
23
24
25

EXHIBIT P
PAGE 5 OF 5

PACIFIC RIM REPORTING   907-272-4383
www.courtreportersalaska.com