Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE DISTRICT OF ALASKA AT ANCHORAGE

 3       _____

 4       LAWRENCE H. GROVE, ET AL.,    )
                                       )
 5                 Plaintiffs,         )
                                       )
 6         vs.                         )
                                       )    COPY
 7       UNOCAL CORPORATION,           )
                                       )
 8                 Defendant.          )
                                       )
 9       _____

10       Case No. A-04-0096 CV (JKS)

11

12

13       _____

14              VIDEOTAPED DEPOSITION OF PAUL CRAPPS

15       _____

16                       March 3, 2006
                         11:00 a.m.
17

18              Taken by Counsel for Plaintiffs
                             at
19                 330 L Street, Suite 200
                      Anchorage, Alaska
20

21

22                                      HD 4pm
                                        6200-1
23                                      MAR 2 1 2006

24              EXHIBIT  A
25              PAGE  1 OF 5
```

Page 5

1
2            ANCHORAGE, ALASKA; MARCH 3, 2006
                     11:00 A.M.
3       VIDEOGRAPHER: My name is Martha Enslow of
4   Media Impressions, P.O. Box 112181, Anchorage, Alaska
5   99511. I am the videographer representing Pacific Rim
6   Reporting.
7       It is the 3rd day of March the year 2006.
8   We're on record 11:08 a.m. We're at the offices of Phil
9   Weidner in Anchorage, Alaska to take the deposition of
10  Paul Crapps in Case Number 04-0096 Civil, Lawrence H.
11  Grove, et al. versus Unocal Corporation.
12      This deposition is being taken on behalf of
13  the plaintiff. At this time, I would like everyone in
14  the room to identify themselves verbally.
15      MR. COHN: My name is Michael Cohn. I am an
16  attorney with the law firm of Phillip Paul Weidner &
17  Associates. I'm here representing the plaintiffs, Larry
18  Grove; his wife, Cynthia Grove; his children, Michael
19  Grove and Sarah Grove. And alongside me is plaintiff,
20  Larry Grove.
21      MR. THORSNESS: John Thorsness here for the
22  defendant, Unocal, and representing the witness.
23      MR. CRAPPS: My name is Paul Crapps.
24      MR. WEIDNER: The record should reflect, my
25  name is Phillip Weidner. I am here with Mr. Cohn. I am

Page 6

1   also here on behalf of the plaintiffs. I'll be here for
2   portions of the deposition.
3       VIDEOGRAPHER: Are there any stipulations?
4       MR. COHN: None.
5       MR. THORSNESS: No.
6                    -oOo-
7                  PAUL CRAPPS,
8        deponent herein, being sworn on oath,
9        was examined and testified as follows:
10                  EXAMINATION
11  BY MR. COHN:
12  Q. Good morning, Mr. Crapps.
13  A. Good morning.
14  Q. You understand that we're here to take your
15  deposition?
16  A. Yes.
17  Q. And you understand that this deposition is being
18  videotaped?
19  A. Yes.
20  Q. And you understand that we're taking your
21  deposition in a lawsuit against Unocal filed by the
22  plaintiffs?
23  A. Yes.
24  Q. Do you understand that anything you say here can
25  be used -- may be used in court?

Page 7

1   A. Yes.
2   Q. And you understand this is a formal proceeding?
3   A. Yes.
4   Q. And you understand that in certain instances this
5   deposition may be used instead of your live testimony at
6   trial if appropriate?
7   A. Yes.
8   Q. Are you taking any medication?
9   A. No.
10  Q. So there is nothing that would affect your
11  ability to understand the questions that I ask you other
12  than the way I phrase my questions?
13  A. No.
14      MR. THORSNESS: Paul, if there is anything
15  you don't understand about Mr. Cohn's questions, just
16  ask him to rephrase it. He'll be happy to do that.
17  Q. If for some reason you need to take a break, and
18  sometimes deponents don't realize that they are allowed
19  to take a potty break if they need one and they don't
20  have to wait for the lawyers to say, "Time for a break,"
21  just let us know and I will be happy to accommodate you.
22      And another thing which is a lot of times
23  deponents sometimes do not answer "yes" or "no" and they
24  go "uh-huh," but even though we're on videotape, if you
25  can, instead of shaking your head, give us a "yes" or a

Page 8

1   "no" if that's the appropriate response.
2   A. Okay.
3   Q. That will make a more complete and better record
4   to follow. Even though it is videotaped, there is also
5   a transcript that will be made.
6       Have you done anything to prepare for this
7   deposition today?
8   A. Yes.
9   Q. What did you do?
10  A. We met earlier.
11  Q. When you say "we" --
12  A. My lawyer or Unocal's lawyer, Mr. -- I'm sorry.
13      MR. THORSNESS: Thorsness.
14  Q. Have you talked to anyone else besides Mr.
15  Thorsness about your deposition today?
16  A. Yes, Tracy Howard.
17  Q. Who is Tracy Howard?
18  A. She is our legal department of Unocal.
19  Q. Did you review any papers or notes?
20  A. Yes.
21  Q. And what did you review?
22  A. I reviewed the OSHA inspections, some photos and
23  some of the questions. I don't know what the legal term
24  is for them.
25  Q. Questions, are you talking about discovery

Page 65

1  A. Yes.
2  Q. And does this help recollect your memory as to
3  who was there with you?
4  A. No. I mean, I know that Ken Burns went up there
5  with me and there was some OSHA inspectors, but I
6  couldn't put a name to a face.
7  Q. It says here -- now, previously you indicated
8  that the platform had been removed before OSHA conducted
9  their inspection. Do you recall that testimony?
10  A. Yes.
11  Q. Now, if you look at the last paragraph here it
12  says, "Both Tom Scanlon and Lee Zhao climbed the ladder
13  and exposed themselves to the open-sided platform."
14     Does that refresh your memory that the platform
15  had not yet been removed at the time of the inspection
16  by OSHA?
17     MR. THORSNESS: Object to the form of the
18  question.
19  A. No. Where exactly --
20     MR. THORSNESS: Where are you reading from,
21  Mike?
22  Q. Take a look at the next to the last paragraph.
23     MR. THORSNESS: Beginning with "Tom Scanlon
24  and Lee Zhao"?
25     MR. COHN: Yeah.

Page 66

1     MR. THORSNESS: Where are you reading from
2  again, just so I am clear, Mike?
3     MR. COHN: It is about -- starting --
4     MR. THORSNESS: "Both Tom Scanlon"?
5     MR. COHN: Yes.
6  A. That's just how he worded it. The platform was
7  no longer there.
8  Q. So when it says, "Exposed themselves to the
9  open-sided platform," do you have any idea what that
10  refers to?
11  A. There is a pony wall that was constructed and I
12  think what he was referring to is that they crawled up a
13  ladder exposing themselves to that, the wall that it was
14  attached to.
15  Q. Are you talking about the wall opposite the
16  filter wall?
17  A. Yes.
18  Q. And then can you read the next sentence as to
19  about the open-sided platform?
20  A. "One significant question was asked. Who erected
21  the scaffolding? No one knew the answer. It was
22  obvious from the structure that it had been erected many
23  years ago.
24  Q. So you are saying that this structure that they
25  are talking about and that they are referring to -- that

Page 67

1  Mr. Burns is referring to in these notes wasn't even
2  there at the time of that inspection?
3     MR. THORSNESS: Objection; foundation. The
4  witness has testified he didn't write this document.
5     MR. COHN: Well, he was present in the room
6  at the time.
7  A. No, I wasn't.
8     MR. COHN: Well, I have written a letter. I
9  do want to depose Mr. Burns.
10     MR. THORSNESS: Sure, of course, but
11  Mr. Burns is not here today.
12  Q. Tom Scanlon, Lee Zhao, Tome Lake, Paul Crapps,
13  and I, which I am assuming the author went to the
14  penthouse. Did you stay outside the room at that time?
15  A. I escorted them to the penthouse and then I left.
16  Q. So you don't have any explanation as to why they
17  are referring to scaffolding that is not there?
18  A. I was just going on knowing the area itself. I
19  escorted them and then I left.
20  Q. It looks like the date of this inspection is
21  March 3rd, 2003; is that correct?
22  A. If that's what the date says on top of the paper.
23     MR. COHN: Can we go off record one second?
24  I want to make a copy of an exhibit. I don't want to
25  look through the papers to find it.

Page 68

1     VIDEOGRAPHER: Off record 1:05 p.m.
2     (There was a short break.)
3     VIDEOGRAPHER: On record 1:07 p.m.
4     (Exhibit No. 9 marked.)
5  Q. Mr. Crapps, I want to show you what's been marked
6  as Exhibit No. 9. And, first, do you recognize that
7  document?
8  A. I must have. I signed it, but not off the top of
9  my head, but yeah.
10  Q. So that is your signature on the document?
11  A. Yes.
12     MR. THORSNESS: What's the Bates number at
13  the bottom here?
14     MR. COHN: It's LG00739. That's Larry
15  Grove. That will be supplemental --
16     MR. THORSNESS: Has been this been produced
17  yet?
18     MR. COHN: It is going to be produced, but
19  this is a document that I would assume that Unocal would
20  have possession of.
21     MR. THORSNESS: Right, but you have not
22  produced it yet?
23     MR. COHN: No, but it is coming.
24  Q. Now, does this refresh your memory as to when the
25  platform was dismantled?

EXHIBIT A
PAGE 3 OF 5

20 (Pages 65 to 68)

GROVE v UNOCAL                                                                     PAUL CRAPPS
                                                                                    3/3/2006

Page 101
1  A. No.
2  Q. Where was the storage area that the plank was
3  stored in?
4  A. As you come into the entrance of the penthouse,
5  there is a big open shaft. I would almost -- it is
6  like, almost like a crawl space, and I just slid it in
7  there.
8  Q. Have you ever seen this document?
9  A. Yes.
10 Q. And what is this?
11 A. This is a schematic from the penthouse of the
12 Unocal building.
13        MR. COHN: Can we mark this as the next
14 exhibit?
15        (Exhibit No. 14 marked.)
16 Q. Could you first identify where the filter room
17 is?
18 A. I would say access door -- access door would be
19 right here. That's the door going into the filter room.
20 So that would be the filter room.
21 Q. Could you put just a one next to it?
22 A. Right here? Just a one?
23 Q. Yeah. So where you placed the one, that would be
24 right where the door is inside the filter room?
25 A. Yes.

Page 102
1  Q. And could you indicate on here where, first of
2  all, where the plank was stored?
3  A. Probably there is an empty room. It is either
4  here -- it's in this area right here. There is a
5  concrete kind of pad here. This is showing
6  mechanical --
7  Q. Just put a big circle there and write a number
8  two. That would be the approximate area where the plank
9  was stored?
10 A. Yes.
11 Q. And you indicated there was a trash can -- well,
12 before we get to that. How difficult is it to move that
13 12-foot plank from the filter room to the storage area,
14 because you have been up there. Is it like --
15 A. It's a little bit of a maze, yeah.
16 Q. You have to maneuver around corners?
17 A. Yeah, but I mean it is not impossible.
18 Q. Did you carry it yourself or did you have
19 somebody else help you?
20 A. No, I carried it myself.
21 Q. Where was the trash can that the brackets and
22 remaining pieces were thrown away?
23 A. Right inside the door as you come in. There is
24 two doors, so right here.
25 Q. So can you just put a three there. So that would

Page 103
1  be the area -- where you marked the three is where the
2  brackets and the nuts and bolts, and if there were any
3  washers, were thrown away?
4  A. Yes.
5  Q. And that's fairly close to where the plank was
6  stored?
7  A. Yes.
8  Q. And when did you have an opportunity to review
9  this particular document?
10 A. When I started as the building services
11 coordinator.
12 Q. That's after you became a Unocal employee?
13 A. Yes.
14 Q. So before that, you wouldn't have had --
15 A. Access, no.
16 Q. I just want to blow this up just to identify for
17 the videographer exactly where you indicated. If you
18 can point out number one where the filter room is. And
19 number two, where the plank was stored. You got number
20 two. And that also probably has number three in the
21 picture where the trash can was where the parts were
22 discarded.
23        Do you know if the trash can was just thrown into
24 regular garbage afterwards?
25 A. Yeah.

Page 104
1  Q. Now, have you had discussions with anyone about
2  the Larry Grove accident other than your attorneys?
3  A. Discussions? Legal or just -- there was mention
4  of what had happened with other -- the other Siemens
5  employees, the other maintenance guys that came on, but
6  nothing legal, but just that he was hurt and stuff like
7  that.
8  Q. You mean you had discussions with other Siemens
9  people who came to service the filter room after?
10 A. Yes.
11 Q. Did you have discussions with Mr. Tabler, for
12 example, Kevin Tabler?
13 A. Not that I can recall, no.
14 Q. And how many -- did you talk to Roseanne Sinz
15 about this? How many conversations have you had with
16 Roseanne Sinz regarding the accident?
17 A. I don't know. She was my supervisor at that
18 point, so I couldn't put a number on it. It was, you
19 know, it was quite an issue after OSHA came of what had
20 happened, so it was probably a lot of meetings or
21 discussions about it.
22 Q. There were meetings or discussions about the
23 accident?
24 A. Just about everything leading up to -- everything
25 that -- with the OSHA investigation.

29 (Pages 101 to 104)

EXHIBIT 4
PAGE 4 OF 5

GROVE v UNOCAL                                                      PAUL CRAPPS
                                                                     3/3/2006

```
                                                    Page 121
 1          MR. THORSNESS:  We are not going to sit here
 2   and listen to you accuse him of this.
 3          MR. COHN:  I'm not accusing him of anything.
 4          MR. THORSNESS:  Let's go.  We're out of
 5   here.
 6          MR. COHN:  Good-bye, John.  Would you like
 7   your witness to sign his affidavit -- sign his
 8   deposition or not, John?  Good-bye, John.
 9          VIDEOGRAPHER:  Off record?
10          MR. COHN:  No, we're not off record yet.
11   Mr. Thorsness has decided to leave the deposition and
12   abruptly get up and walk out with the witness before
13   this deposition has been concluded.
14          I am taking the position that I have not
15   finished this deposition and have the right to redepose
16   Mr. Crapps at a later date.
17          Mr. Thorsness's actions were uncalled for
18   and, therefore, this deposition is not yet concluded.
19          I would like a copy of the transcript myself
20   and the videotape.  And I thank you.  And that's it.
21          VIDEOGRAPHER:  Off record 2:37 p.m.
22          (Proceedings concluded at 2:37 p.m.)
23              (Signature reserved.)
24
25
```

EXHIBIT A
PAGE 5 OF 5