GROVE v. UNOCAL                                                          TOM SCANLON
                                                                          4/14/2006

Page 1

```
 1              UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF ALASKA
 2

 3

    LAWRENCE H. GROVE, et al.,    )
 4                                )
              Plaintiffs,         )
 5                                )
    vs.                           )
 6                                )
    UNOCAL CORPORATION,           )
 7                                )
              Defendant.          )
 8  _____)
    Case No. A 04-0096 CV  (JKS)
 9

10  _____

          VIDEOTAPED DEPOSITION OF TOM SCANLON
11  _____

12
                    Pages 1 - 220
13              Friday, April 14, 2006
                     9:16 a.m.
14
              Taken by Counsel for Plaintiffs
15                         at
    The Offices of Department of Labor & Workforce
16                    Development
          3301 Eagle Street, Suite 209
17              Anchorage, Alaska

18

19

20

21

22

23

24                                          EXHIBIT  H

25                                          PAGE  1  OF  7
```

```
                                                              Page 2
 1                    A-P-P-E-A-R-A-N-C-E-S

 2
       For Plaintiffs:
 3        Michael Cohn
          PHILLIP PAUL WEIDNER & ASSOCIATES
 4        330 L Street, Suite 200
          Anchorage, Alaska 99501
 5        907/276-1200

 6
       For Defendant:
 7        Linda J. Johnson
          CLAPP PETERSON VAN FLEIN TIEMESSEN THORSNESS, LLC
 8        711 H Street, Suite 620
          Anchorage, Alaska 99501-3654
 9        907/272-9272

10
       For the State of Alaska:
11        Larry A. McKinstry
          Assistant Attorney General
12        Department of Law, Civil Division
          1031 West 4th Avenue, Suite 200
13        Anchorage, Alaska  99501-1994
          907/ 269-6612
14
       Also Present:
15        Eric R. Cossman, JD, CLVS

16     Court Reporter:
          Leslie J. Knisley
17        PACIFIC RIM REPORTING
          711 M Street, Suite 4
18        Anchorage, Alaska 99501

19

20

21

22

23
                                           EXHIBIT   H
24
                                           PAGE  2  OF  7
25
```

EXHIBIT H
PAGE 2 OF 7

Page 5

1  ANCHORAGE, ALASKA; FRIDAY, APRIL 14, 2006
2              9:16 A.M.
3              -o0o-
4       (Exhibit 1 marked.)
5       THE VIDEOGRAPHER: We're on the record
6  at 9:16. This is the video deposition of Tom
7  Scanlon taken by the plaintiffs in the matter of
8  Grove, et al. versus Unocal Corp., Case No.
9  A-04-0096 CV (JKS), In The United States District
10 Court For The District of Alaska.
11      This deposition is being held in the
12 offices of OSHA located at 3301 Eagle Street,
13 Suite 209, Anchorage, Alaska on April 14th, 2006.
14 My name is Eric Cossman from Alaska Legal Video,
15 mailing address, 645 G Street, No. 892, Anchorage,
16 Alaska 99501. The court reporter is Leslie
17 Knisley from the firm Pacific Rim Reporting.
18      Will counsel and all present please
19 identify themselves for the record?
20      MR. COHN: My name is Michael Cohn from
21 the offices of Phillip Paul Weidner and Associates
22 here on behalf of the plaintiffs.
23      MS. JOHNSON: Linda Johnson. I'm from
24 Clapp Peterson and we represent Unocal.
25      MR. MCKINSTRY: I'm Larry McKinstry.

Page 6

1  I'm an assistant attorney general and I represent
2  the Department of Labor.
3       THE VIDEOGRAPHER: Thank you. Would the
4  reporter please swear in the witness?
5              TOM SCANLON,
6  deponent herein, being duly sworn under oath,
7       was examined and testified as follows:
8              EXAMINATION
9  BY MR. COHN:
10   Q  Good morning, Mr. Scanlon.
11   A  Good morning.
12   Q  Once again, my name is Michael Cohn.
13 I'm here on behalf of the plaintiffs --
14   A  Okay --
15   Q  -- Larry Grove, Cynthia Grove, and their
16 children, Sarah Grove and Michael Grove. And
17 we're here because of an accident that occurred on
18 September 9th, 2002 when a work platform collapsed
19 at the Unocal building at 909 West 9th Avenue.
20   A  Right.
21   Q  This deposition is being videotaped, and
22 I know sometimes it's a little awkward. You'll be
23 looking at me. It probably -- I don't know how
24 that usually works with deponents, but you'll be
25 videotaped straight ahead there.

Page 7

1    A  So, should I be looking at you or should
2  I --
3    Q  Well, you'll probably do what's natural,
4  and I think you probably should be facing the
5  person you're looking at. But even though we have
6  it videotaped, you should still answer "yes" or
7  "no" to a question as opposed to shaking your
8  head -- there's also a transcript being made --
9    A  No, I understand.
10   Q  -- to a yes or no question.
11      Have you ever had your deposition taken
12 before?
13   A  Not that I remember, no.
14   Q  Do you understand -- have you had
15 explained to you what a deposition is?
16   A  Actually, no.
17   Q  A deposition is -- this is a proceeding
18 that under the Federal Rules of Civil Procedure we
19 take your deposition under oath. And the
20 deposition can be used sometimes -- sometimes in
21 place of your testimony if we go to trial if
22 you're not available. And the videotape, we might
23 agree to just use your deposition, or even if you
24 would appear, we might be able to use your
25 deposition in questioning you or in

Page 8

1  cross-examining you or confirming what you said
2  previously.
3       So there's a possibility that this
4  videotape is as if you're talking to the jury and
5  the jury is listening to you as if you were in
6  court. Now, there may be some times when -- if
7  you don't understand the question that I'm asking
8  or, you know, you're confused, just let me know
9  because --
10   A  I'll ask for a reclarification. Again,
11 this is my first time and I want to --
12   Q  Right. And the other thing is, if I'm
13 asking you a question or Ms. Johnson's asking you
14 a question, it's easier for the court reporter to
15 first let us finish the question and then we try
16 and let you finish the answer without interrupting
17 you so that we don't have two voices at the same
18 time.
19      In addition, Ms. Johnson, and then when
20 she's questioning you, I might make objections to
21 certain questions. We're just preserving that for
22 the record. There's certain times where there's
23 questions that the Court may rule on as to whether
24 or not it's admissible in court. Then we're just
25 preserving the objections, but you should still go

EXHIBIT 4
PAGE 3 OF 7

GROVE v. UNOCAL                                           TOM SCANLON
                                                          4/14/2006

Page 109

1  this the citation that was issued to Unocal 76
2  Incorporated?
3    A   Correct.
4    Q   And that was for violation of a standard
5  having a platform four feet or more above the
6  adjacent floor that was not guarded by a rail or
7  equivalent?
8    A   Correct.
9    Q   And it says, "Employee was exposed to
10 fall hazard due to unguarded open side of
11 platform." Is that what it says there?
12   A   Correct.
13   Q   And there's something -- is it crossed
14 out or you just highlighted? It says, Located 909
15 West 9th Avenue.
16   A   Tom Bernicke was, again, my immediate
17 supervisor at the time and he crossed the address
18 out. Don't ask me why.
19   Q   But TB is --
20   A   Tom Bernicke.
21   Q   Oh, okay. It's with a B. I was
22 spelling it with a V before. Bernicke.
23       On the next page, LG755, under No. 23 it
24 says, "Employer knowledge, colon, yes, comma,
25 Unocal management acknowledged during inspection

Page 110

1  and subsequent conversations with OSHA safety
2  officer" -- would that be you?
3    A   Correct, and/or Lee, but I'm sure it was
4  me.
5    Q   "That the platform had been in place
6  for, quote, years and years, unquote, probably
7  back to the '70s. One employee who had worked for
8  Unocal -- worked for 12 years at Unocal said the
9  platform had been there when he started work."
10       And this is information that Unocal
11 management told you?
12   A   Yes.
13   Q   If Siemens had began this contract less
14 than 12 years before, would that indicate to you
15 that Siemens hadn't built that platform?
16       MS. JOHNSON: Objection; foundation.
17   A   Rephrase the question.
18   Q   (By Mr. Cohn) Let me start over. Do
19 you have any information that Siemens itself built
20 that platform?
21   A   None. I believe Siemens -- when did
22 their contract go into place? Was it '94?
23   Q   Possibly.
24   A   I don't think they could -- they weren't
25 sure that -- there was no current status because

Page 111

1  nobody could find their records on Siemens part or
2  whatever. But somebody speculated it was '94,
3  '96, but it was purely speculation.
4    Q   I forget. What document is the
5  DEF 0027, Leslie? Is it No. 7 possibly. Here it
6  is. No. 7, I just want to show you. This is from
7  Mr. Burns' notes here and in the next-to-last
8  paragraph it said -- three lines from the bottom
9  of that paragraph, "It was obvious from the
10 structure that it had been erected many years
11 ago." That's from Ken Burns' notes.
12   A   Okay.
13   Q   Did that -- is that consistent with what
14 you'd been told by Unocal management, that the
15 structure had been in place for years and years?
16   A   Correct.
17   Q   And on the bottom of 755. We talked
18 about the closing conference. Where it says --
19 after the next-to-last paragraph it said, well,
20 actually before that under Comments. The second
21 paragraph in 24, it says, On September 9th the
22 platform collapsed. And then it says, "Unocal
23 management directed their building maintenance
24 technician to replace the platform after the
25 fall."

Page 112

1        Is that your understanding of what
2  happened?
3    A   Again, yes.n.
4    Q   And then the next paragraph it says,
5  "After the OSHA inspection on March 3rd, 2003,
6  Ms. Sinz and Mr. Burns directed the Unocal
7  building maintenance technician to remove the
8  platform and the stepladder that was being used to
9  access the platform."
10       And was this told to you by Ms. Sinz,
11 you've indicated?
12   A   Again, I'm not sure. Speculation, I
13 think Roxanne called me and told me that. She was
14 extremely proactive, concerned that something like
15 this was happening and she -- I mean, I think
16 Mr. Burns had told her that when you have an OSHA
17 inspection, you do -- be as proactive and
18 responsive as you can.
19   Q   And the last paragraph on there. I just
20 want to talk about this just for a second, because
21 you mentioned -- we were trying to figure out the
22 measurements.
23   A   Right.
24   Q   It looks like it says there -- it says,
25 "There are a total of 52 filters, 24 by 24 by 2,

**Page 137**

1    MR. COHN: Yes, it's 8A and 8B.
2    Q  (By Ms. Johnson) Okay. So Exhibit 8A
3  is what I want you to look at, please.
4    A  8A?
5    Q  Uh-huh. And I'm going to refer to page
6  797 and 798, those two pages together.
7    A  Okay.
8    Q  Did you create this document?
9    A  Yes.
10   Q  Both of these? 797 and 798?
11   A  Right. If that is the -- oh, did I
12  create these? No, this is not -- this is done,
13  again, after I turn it in. This is nothing that
14  we --
15   Q  Not something that you did?
16   A  No.
17   Q  Okay. You agree that you came up with
18  two violations for Siemens; is that correct?
19   A  I believe so, yes.
20   Q  And the first one looks like it's the
21  same citation that Unocal received; is that
22  correct?
23   A  Correct.
24   Q  And you found that this was a serious
25  violation from Siemens' aspect?

**Page 138**

1    A  Right.
2    MR. COHN: Objection; form of the
3  question.
4    Q  (By Ms. Johnson) Why did you find that
5  Siemens had also violated this?
6    MR. COHN: Objection; foundation; form.
7    A  I refer back to the multi-employer work
8  site where you can be the creating, exposing.
9    Q  (By Ms. Johnson) And which one was
10  Siemens? Do you recall?
11   A  The exposing.
12   Q  Okay. As the actual employer of
13  Mr. Grove, does Siemens have a duty to provide him
14  a safe place to work?
15   MR. COHN: Objection to form of the
16  question; foundation.
17   A  Yes.
18   Q  (By Ms. JOhnson) Okay. And is that
19  provided for in OSHA regulations?
20   A  Yes, under the general duty clause, 5A
21  -- 5A? I'm looking to Larry for clarification
22  there.
23   MR. MCKINSTRY: I can't answer the
24  question. You've got to answer it if you know it.
25  If you don't...

**Page 139**

1    THE WITNESS: Okay.
2    Q  (By Ms. Johnson) You think that it
3  could be 5A, but you know that it's in there
4  somewhere?
5    A  General duty clause, yes, where every
6  employer has the responsibility to provide a safe
7  and health --
8    Q  Can Siemens contract away that duty?
9    MR. COHN: Objection to the foundation.
10   A  I don't know. It would be pure
11  speculation on my part.
12   Q  (By Ms. Johnson) Okay. So the
13  regulations don't say one way or another whether
14  somebody could contract away their specific
15  regulatory duty to provide a safe workplace?
16   A  Well, again, I refer back to the
17  multi-employer work site where it says different
18  employers can be cited for the same violation
19  depending on if you're the controlling, the
20  creating, the exposing, correcting employer.
21   Q  Looking at page 798, there was another
22  citation that was issued apparently. Can you tell
23  me what this was for?
24   A  That was for the portable ladder.
25   Q  And that was specifically to Siemens; is

**Page 140**

1  that correct?
2    MR. COHN: Objection to form of the
3  question.
4    A  Yes.
5    Q  (By Ms. Johnson) And you didn't find
6  the citation -- you didn't give a citation to
7  Unocal for a ladder; is that right?
8    A  No.
9    Q  Why did you cite Siemens for a ladder
10  violation?
11   A  Because their employee was using it to
12  access an area without it being three feet above,
13  which is a requirement.
14   Q  Did it make a difference to you that
15  this particular ladder, if you look at these
16  pictures -- and you're welcome to refer back to
17  these pictures -- does it make a difference to you
18  whether the ladder had two legs or four legs?
19  That's the best I can describe it to you.
20   A  No, but if you do use a stepladder, you
21  are not supposed to use the top rung to access
22  anyplace.
23   Q  Okay. So, would it matter to you that
24  Mr. Grove as a Siemens employee was using a
25  stepladder or a four-legged ladder in a leaning

EXHIBIT 4, PAGE 5 OF 7

Page 149

1  you talked to him a second time, if you're having
2  him look at pictures?
3     A   If it was, again, I stated I wasn't sure
4  if it was Larry or if it -- but from that
5  perspective, I would think it was probably Paul
6  Crabbe.
7     Q   So this could have been Paul Crapps that
8  you were talking to?
9     A   Not Paul Crabbe. The other -- the
10 fellow that replaced Larry doing the filter
11 replacement.
12    Q   So, okay. That is something I wanted to
13 talk to you. You talked to more than one person
14 at Siemens; is that correct?
15    A   That is correct.
16    Q   And who else did you interview?
17    A   It's on my list in my narrative, I
18 believe. I talked to -- Hoover was the services
19 manager. Tom Lake was the supervisor.
20    Q   What page are you looking at?
21    A   Well, I'm looking at --
22    Q   808?
23    A   808, but I'm looking also for -- it
24 usually lists it on the form. I talked to --
25    Q   What page is that you're looking at?

Page 150

1  I'm sorry.
2     A   Okay. I'm looking at 807.
3     Q   Okay. So, who else could this employee
4  have been?
5     A   Well, I didn't list it on here, but I
6  believed I had -- let me refer to my notes. Brent
7  Davies was a pipefitter.
8     Q   Okay. And he was from Siemens; is that
9  correct?
10    A   I believe so.
11    Q   If you look at page 808, his name shows
12 at the bottom of page 808.
13    A   808?
14    Q   Uh-huh. That was the earlier one you
15 were just looking at.
16    A   Okay. Okay.
17    Q   When did you talk to Mr. Davies?
18    A   It was the first or second day of -- at
19 the Siemens office. They set it up where he came
20 back in.
21    Q   Okay. And what did he tell you? Do you
22 recall?
23    A   I don't remember.
24    Q   Did he tell you he had been in the room?
25        MR. COHN: Objection; asked and

Page 151

1  answered.
2     A   I don't remember.
3     Q   (By Ms. Johnson) Okay. Was he somebody
4  that you asked to speak to or somebody that
5  Siemens told you might be helpful?
6     A   I asked who else had been in there, et
7  cetera. And, again, I don't remember
8  specifically. My assumption is Mr. Davies is the
9  one that had filled in while Larry was out on a
10 medical.
11    Q   Okay. So, going back to 822. When
12 you're referring to "the employee," I'm still
13 trying to figure out who you might have been
14 referring to, because all you said was "employee"
15 rather than Grove or Davies. Does looking back at
16 that help you remember who that might be?
17    A   No, I don't remember. And we are
18 specifically not -- are told not to put their
19 names.
20    Q   And why is that?
21    A   For confidentiality.
22    Q   Okay. And who tells you not to put
23 names in a report? Is that --
24    A   OSHA.
25    Q   OSHA, Federal OSHA tells you --

Page 152

1     A   Well, I don't know. My boss tells me.
2     Q   Okay. And your boss at the time was
3  Bernicke?
4     A   Bernicke at the time, yes.
5     Q   Okay. And so he had directed you use
6  generic descriptions of people --
7     A   Right.
8     Q   -- that you interview?
9     A   Right. You know, and since then
10 Mr. Stallone has modified it obviously so that we
11 don't face a problem like this three years later,
12 is that in the back we have -- and we refer to
13 employee No. 1, employee No. 2, employee No. 3,
14 and there's then a confidential list of the
15 employees by name. Because the problem we're
16 facing now was --
17    Q   Okay. So Mr. Stallone changed that
18 policy?
19    A   Right -- well, instead of saying a
20 generic, you put employee No. 1, employee No. 2
21 and then you put somewhere that -- in the back of
22 the file...
23    Q   Who specifically is each of those?
24    A   Right, No. 1, No. 2 and No. 3.
25    Q   Okay. On the second sentence it says

41 (Pages 149 to 152)

Page 217

1  wall in Unocal and there's some -- and your notes
2  indicate that it may have been there since the
3  1970s.
4     A   Right.
5     Q   Now, what does -- does this convey to
6  you that Unocal as the employer or owner of the
7  building is the one responsible for this -- is
8  responsible for this work platform?
9         MS. JOHNSON:  Objection; foundation.
10    A   Again, a complex issue.  It could depend
11 on a couple of things.  Getting back to Step 1 is,
12 they had their own ladders and they were extension
13 ladders.  I would think that under the reasonable
14 man concept it might be much more prudent not to
15 use the work platform and use your own ladder just
16 to go all the way up.
17    Q   (By Mr. Cohn)  And how do you get the
18 ladder into the building?
19    A   Well, he had gotten it in there several
20 times before, you know
21    Q   Dragging it up seven flights of stairs?
22        MS. JOHNSON:  Objection; argumentative.
23    Q   (By Mr. Cohn)  Well, that leads to
24 another question:  Your own notes indicate that
25 under the service contract between Unocal and

Page 218

1  Siemens it was the duty of Unocal to provide
2  access to the equipment that they were going to
3  replace.
4     A   Right.
5     Q   Would that indicate to you it was the
6  responsibility of Unocal to supply the ladder or
7  work platform that was to be used by Siemens to
8  access the filters to replace them?
9         MS. JOHNSON:  Objection; foundation.
10    A   I'm not in a position to make that
11 judgment.
12    Q   (By Mr. Cohn)  You put that down --
13 well, why did you put that down in your Safety
14 Narrative report if it's --
15    A   Because it's --
16    Q   Did you consider it important?
17    A   Yes.  And I go back to my previous
18 statement that we are told to ask for the contract
19 to try to determine.  It's not a cut and dry
20 situation, but we try to help determine who has
21 the responsibility.
22    Q   Was there anything in any of the
23 contracts you read between Unocal and Siemens that
24 placed the responsibility on Siemens to supply
25 ladders or work platforms to access the equipment?

Page 219

1     A   I don't remember.
2     Q   And if there was no such requirement in
3  the contract and if in fact the requirement was on
4  Unocal, you wouldn't have -- is that a factor in
5  considering Unocal's liability for the citations?
6     A   Yes.
7         MR. COHN:  I don't have any further
8  questions.
9         MS. JOHNSON:  Objection to the
10 foundation on the last question.
11        I don't have any other questions.  You
12 are free to go.  Get out quick.
13        THE VIDEOGRAPHER:  This concludes the
14 deposition of Tom Scanlon.  The time is 3:30.
15        (Signature waived.)
16        (Proceedings concluded at 3:30 p.m.)

EXHIBIT # 7
PAGE 7 OF 7