Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF ALASKA
 3
 4   LAWRENCE H. GROVE, CYNTHIA       )
     GROVE, SARAH GROVE, and MICHAEL  )      COPY
 5   GROVE (DOB 1/21/88) by and       )
     through his father, LAWRENCE H.  )
 6   GROVE,                           )
                                      )
 7            Plaintiffs,             )
                                      )
 8   vs.                              )
                                      )
 9   UNOCAL CORPORATION,              )
                                      )
10            Defendant.              )
                                      )
11   Case No. 3:04-cv-0096-TMB
12
13
14   _____
15       VIDEOTAPED DEPOSITION OF NOAH LAUFER, M.D.
16   _____
17
18                     Pages 1 - 67
                 Friday, October 20, 2006
19                     12:30 P.M.
20
21                         at
                 MEDICAL PARK FAMILY CARE
22       2211 East Northern Lights Boulevard, Suite 101
                     Anchorage, Alaska
23
24
25
```

EXHIBIT 9
PAGE 1 OF 6

Page 2

1                    A-P-P-E-A-R-A-N-C-E-S

2
     For the Plaintiffs:
3    Michael Cohn
     WEIDNER & ASSOCIATES
4    330 L Street, Suite 200
     Anchorage, Alaska   99501
5    (276-1200)

6
     For the Defendants:
7    Linda J. Johnson
     CLAPP PETERSON VAN FLEIN TIEMESSEN & THORSNESS
8    711 H Street, Suite 620
     Anchorage, Alaska   99501
9    (272-9272)

10
     Videographer:
11   Eric R. Cossman

12
     Court Reporter:
13   Diane M. (Preece) Bondeson
     PACIFIC RIM REPORTING
14   711 M Street, Suite 4
     Anchorage, Alaska   99501

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 9
PAGE 2 OF 6

Page 4

1  ANCHORAGE, ALASKA; FRIDAY, OCTOBER 20, 2006
2           12:37 P.M.
3              -o0o-
4        THE VIDEOGRAPHER: Okay. We're on the
5  record at 12:37. This is the video deposition of
6  Noah Laufer, M.D., taken by the Defendant in the
7  matter of Grove vs. Unocal Corporation, Case No.
8  3:04-cv-0096-TMB in the United States District Court
9  for the District of Alaska.
10       This deposition is being held in the
11 offices of Medical Park Family Care located at 2211
12 East Northern Lights Boulevard, Suite 101, Anchorage,
13 Alaska, on October 20, 2006.
14       My name is Eric Cossman, here today on
15 behalf of Pacific Rim Reporting, located at 711 M
16 Street, Suite 4, Anchorage, Alaska 99501. The court
17 reporter is Diane Bondeson, also with the firm
18 Pacific Rim Reporting.
19       Will counsel please identify themselves for
20 the record.
21       MS. JOHNSON: My name is Linda Johnson.
22 I'm from Clapp Peterson, and I'm here on behalf of
23 the defendant, Unocal.
24       MR. COHN: My name is Michael Cohn, from
25 the law firm of Phillip Paul Weidner & Associates,

Page 5

1  and I'm here on behalf of the plaintiffs, Larry
2  Grove, Cynthia Grove, Sarah Grove and Michael
3  Grove.
4        THE VIDEOGRAPHER: Thank you. Will the
5  reporter please swear in the witness.
6        (Witness sworn.)
7        THE VIDEOGRAPHER: Counsel.
8        MS. JOHNSON: Okay. Thank you.
9            NOAH LAUFER, M.D.
10    witness herein, being sworn on oath was
11       examined and testified as follows:
12              EXAMINATION
13 BY MS. JOHNSON:
14   Q.  Have you ever had your deposition taken
15 before?
16   A.  I have. Only once.
17   Q.  Okay. So you're familiar with the fact
18 that this will all be transcribed, you'll get a
19 chance to look over the words that are transcribed,
20 and you can make corrections?
21   A.  Okay.
22   Q.  And you're under oath. If you need a
23 break, just let us know. This is not a marathon, and
24 we can stop anytime you need to.
25   A.  Thank you.

Page 6

1    Q.  And if you don't understand one of my
2  questions, please let me know.
3    A.  Okay.
4    Q.  I'm interested to know your educational
5  background, just that you graduated from high school
6  and then college.
7    A.  High school, college, medical school, and a
8  medical residency --
9    Q.  Okay.
10   A.  -- in family medicine.
11   Q.  And where did you graduate from medical
12 school?
13   A.  Hahnemann University in Philadelphia.
14   Q.  What year was that?
15   A.  1997.
16   Q.  Okay. And where did you do your residency?
17   A.  In Seattle, a program in Renton through the
18 University of Washington.
19   Q.  And what year did you complete that?
20   A.  2000.
21   Q.  Okay. Are you licensed in Alaska, I
22 assume?
23   A.  Yes.
24   Q.  Are you licensed anywhere else?
25   A.  I think my license in Washington has

Page 7

1  lapsed.
2    Q.  You needed that for your residency?
3    A.  Yes.
4    Q.  Okay. And are you board certified?
5    A.  Yes.
6    Q.  And what are you -- what board
7  certification?
8    A.  Academy of Family Practice. American
9  Academy of Family Practice.
10   Q.  Since your residency in Seattle, where have
11 you worked?
12   A.  I worked for a year in Seattle in an
13 emergency room type setting, and then I worked here
14 exclusively.
15   Q.  Here being the Medical Park Family?
16   A.  Medical Park Family Care.
17   Q.  Okay. Oh, family care. I have it as
18 clinic. Okay. And what sort of a practice do you
19 have here?
20   A.  Family medicine. It's similar to general
21 medicine. We don't do obstetrics or surgery or
22 hospital admissions now.
23   Q.  You treat both adults and children?
24   A.  Um-hum.
25   Q.  Is it -- this is a pretty big clinic. It

4 (Pages 4 to 7)

EXHIBIT 9
PAGE 3 OF 6

Page 36

1    Q. Okay. Who is Dr. Lanza?
2    A. He's another family doctor who has since
3 left Medical Park.
4    Q. Do you know where he is now?
5    A. He has a new practice. I think it's called
6 Alyeska Family Care or something like that.
7    Q. So he's still in town?
8    A. He's still in town.
9    Q. Okay. And he is doing a follow-up for you;
10 is that correct?
11   A. Well, that's -- I don't know why he saw Dr.
12 Lanza. He had seen Dr. Lanza prior to seeing me.
13   Q. Okay.
14   A. So it may have been preference, or it may
15 have been that I was not available. I don't know.
16 We do see each other's patients, though, fairly
17 frequently.
18   Q. So you cover for each other --
19   A. Yeah.
20   Q. -- when necessary?
21   A. Um-hum.
22   Q. Okay.
23   A. Looks like the next time I saw Lawrence --
24 that was one of your questions, right?
25   Q. Right.

Page 37

1    A. Oh, looks like 8/28 of 2002.
2    Q. Okay. So let's go back to Dr. Lanza's just
3 for a minute. Here he's confirming that the patient
4 has a significant alcohol consumption of four or more
5 alcoholic beverages daily. Did you review this note
6 before today?
7    A. I did see it yesterday evening.
8    Q. Okay. Can you tell us why alcohol
9 consumption would be relevant to blood pressure?
10       MR. COHN: Objection to form, foundation.
11       THE WITNESS: Can I answer the question
12 or --
13 BY MS. JOHNSON:
14   Q. Yes, please do.
15   A. One of the causes of high blood pressure is
16 drinking, and it's actually -- it would definitely be
17 relevant.
18   Q. And how does alcohol affect blood pressure?
19   A. That's a good question.
20   Q. Okay.
21   A. But certainly very frequently we'll see
22 elevated blood pressures the day after drinking or in
23 someone who is drinking too much.
24   Q. Are there any studies that you've read on
25 that?

Page 38

1    A. I can't cite a specific study, no.
2    Q. Okay. Where did you -- do you know where
3 you acquired that knowledge?
4        MR. COHN: Objection. Foundation.
5        MS. JOHNSON: That's what I'm looking for
6 is the foundation.
7        MR. COHN: Form.
8        THE WITNESS: I think it's fairly commonly
9 known among doctors. Certainly I heard about it in
10 medical school and saw it in residency and have seen
11 it since.
12 BY MS. JOHNSON:
13   Q. Have you seen that in your own patients,
14 then? You've confirmed that?
15   A. Yes. Yeah.
16   Q. Okay. So what would be a -- to you, what
17 would be an amount of alcohol that might have an
18 effect on someone's blood pressure?
19       MR. COHN: Form, foundation.
20       THE WITNESS: I couldn't tell you that, and
21 it would depend on the person.
22 BY MS. JOHNSON:
23   Q. Okay.
24   A. Yeah. It's not, you know, necessarily a
25 direct correlation. It's just one of these things we

Page 39

1 look for when we're trying to care for people and
2 help them live healthier.
3    Q. So Dr. Lanza has written that the patient
4 told him that there was four or more alcoholic
5 beverages daily and asked him to discontinue alcohol
6 completely.
7    A. Yes.
8        MR. COHN: Objection to the form,
9 foundation.
10       MS. JOHNSON: There is not a question yet,
11 Mike. Let me -- let me finish.
12       MR. COHN: Well, you're --
13       MS. JOHNSON: Hold on. Let me finish.
14       MR. COHN: -- saying what is said. This is
15 what's written down in here. We don't know what was
16 actually said.
17       MS. JOHNSON: Okay. Let me finish.
18       THE WITNESS: That's true.
19 BY MS. JOHNSON:
20   Q. If you saw someone with alcohol consumption
21 of four or more beverages daily, would you recommend
22 discontinuing alcohol --
23       MR. COHN: Objection. Form, foundation.
24 BY MS. JOHNSON:
25   Q. -- if they had high blood pressure?

EXHIBIT 9
PAGE 4 OF 6

Page 40

1    MR. COHN: Form, foundation.
2    THE WITNESS: That's a good question. I
3  would certainly tell them that there was an issue
4  there and might ask them to -- I have a very
5  different style from Dr. Lanza, and I wouldn't have
6  the expectation that someone who drinks could stop
7  immediately.
8  BY MS. JOHNSON:
9    Q. Okay. What kind of advice would you give
10 that person?
11   A. I would try to help them towards the same
12 goal.
13   Q. Which would be? What goal would that be?
14   A. Drinking less if I felt it was an issue.
15   Q. Okay.
16   A. Which I do think that that would be an
17 issue.
18   Q. Drinking four or more?
19   A. Yes.
20   Q. Okay. So --
21   MR. COHN: Objection. Form, foundation.
22 We haven't established what type of drinks, the
23 amount of alcohol in a drink.
24   MS. JOHNSON: You know, I don't --
25   THE WITNESS: That's true.

Page 41

1    MS. JOHNSON: -- need the speaking
2  objections, Mike. Just form and foundation.
3    THE WITNESS: Okay.
4  BY MS. JOHNSON:
5    Q. Okay. So going back to your earlier visit,
6  did -- are you aware of or did -- let's see how I'm
7  going to phrase this. Did Mr. Grove give you any
8  indication that he was getting ready to go out of
9  town?
10   MR. COHN: Objection. Form, foundation.
11   THE WITNESS: I don't recall.
12   MS. JOHNSON: Okay. I'd like to mark this
13 as Exhibit 2. Exhibit 1 will be his chart. And
14 you'll get the original.
15   (Exhibit 2 marked.)
16   MS. JOHNSON: Thank you. Okay.
17   MR. COHN: Does it have a date somewhere on
18 here?
19   MS. JOHNSON: It did on the original. Did
20 I bring that? You have a copy of the original. It's
21 been produced to you.
22   MR. COHN: I don't have it with me, so I
23 don't know what the date is.
24   MS. JOHNSON: The date for this document is
25 March 12, 2002.

Page 42

1    Q. Mr. Grove did not tell you that he was
2  going to Ketchikan, correct?
3    A. I don't think so.
4    MR. COHN: Objection.
5    THE WITNESS: I don't know.
6  BY MS. JOHNSON:
7    Q. Okay. So you didn't --
8    MR. COHN: Form, foundation.
9  BY MS. JOHNSON:
10   Q. You didn't note it in your chart?
11   A. No, I did not note it.
12   Q. Okay. And if you had known that he was
13 going to participate in a dip into the Tongass
14 Narrows in the month of March, what would you have
15 advised him?
16   MR. COHN: Objection. Form, foundation,
17 speculation.
18   MS. JOHNSON: That's form and foundation.
19   MR. COHN: No, form is not foundation.
20   THE WITNESS: I don't -- I don't know that
21 I would have advised him either way. I really don't.
22 You know, I think that people have to be to some
23 degree responsible for what they do, and, you know,
24 if your back hurts, obviously you probably shouldn't
25 do something to make it worse. But I really wouldn't

Page 43

1  have told him what he should do or shouldn't do.
2  BY MS. JOHNSON:
3    Q. Could a jump into water from -- like Mr.
4  Grove is doing, could that have aggravated his back
5  injury?
6    MR. COHN: Form, foundation.
7    THE WITNESS: I suppose. I don't -- you
8  know, it's a good question. If it were shallow
9  water, it definitely could, but I don't know.
10 BY MS. JOHNSON:
11   Q. Okay.
12   A. This is -- how many days after the injury
13 was this?
14   Q. Well, you had last seen him on the 4th, and
15 this was on the 12th.
16   A. Yeah.
17   MR. COHN: Just going to object on
18 foundation as to the date.
19   THE WITNESS: Just my -- a question.
20 Sorry.
21   MS. JOHNSON: Take a break. Go off record
22 for a minute.
23   THE VIDEOGRAPHER: Going off record. The
24 time is 1:19.
25   (Off record.)

GROVE v. UNOCAL                                                    NOAH LAUFER, M.D.
                                                                        10/20/2006

Page 64

1  had the reported eight out of ten.
2      You indicated you had given him Percocet as
3  a prescription. And the -- what was the reason for
4  that?
5      A. For pain.
6      Q. Is it a -- was it a good pain --
7      A. **It is a reasonably good pain medication,**
8  **yes.**
9      Q. And even though he had reported eight out
10 of ten, that was before you had prescribed him the
11 Percocet?
12     A. **That is true.**
13     Q. And the fact that he jumped into the water,
14 one, that doesn't indicate whether he has pain. But
15 if his pain was gone, that might indicate the
16 Percocet was working to relieve his pain. Would that
17 be fair to say?
18         MS. JOHNSON: Objection. Form.
19         THE WITNESS: You could say that.
20 BY MR. COHN:
21     Q. I mean, I could say that. Could you say
22 that?
23     A. **Yes. If he were on pain medications, he**
24 **would have less pain.**
25         MR. COHN: I don't have any further

Page 65

1  questions.
2          MS. JOHNSON: Okay. No.
3          THE VIDEOGRAPHER: Okay. Well, then this
4  concludes the deposition of Dr. Noah Laufer. The
5  time is 1:50.
6          (Exhibit 1 marked.)
7          (Proceedings concluded at 1:50 p.m.)
8          (Signature reserved.)
9              * * * * *

EXHIBIT 9
PAGE 6 OF 6

19 (Pages 64 to 65)