Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA          )
GROVE, SARAH GROVE, and,            )
MICHAEL GROVE (DOB 1/21/88)         )
By and through his father           )
LAWRENCE H. GROVE,                  )    Case No. 3:04-CV-0096-TMB
                                    )
                                    )
           Plaintiffs,              )
                                    )
       vs.                          )
                                    )
UNOCAL CORPORATION,                 )
                                    )
           Defendant.               )
_____)

**REPLY IN SUPPORT OF RULE 37 ORDER COMPELLING
DISCLOSURE/DISCOVERY**

INTRODUCTION

Plaintiff Larry Grove was injured on September 9, 2002 when a platform/scaffold,

permanently affixed in the Unocal building at 909 West 9th Avenue, Anchorage, Alaska

collapsed while he was on a service call as an employee of Siemen's Building Technologies, Inc.

("Siemens").  His right ankle was severely injured, and he has had two surgeries on his ankle

(the first surgery found three separate significant injuries).  He is in chronic pain, and unable to

return to the job he did before his injury.  Unocal employees, including Safety Technician Ken

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Burns, acknowledge that the platform/scaffold should not have been utilized.  It was Unocal's property, in Unocal's building, poorly constructed and maintained, and unsafe.  Liability is clear.

Attorneys should represent their own clients zealously and ethically, while treating other parties with professional courtesy and respect.  Unfortunately, defense counsel resorts to pejorative comments and profound disrespect of the plaintiffs, perhaps to divert the court from the clear liability of defendant, and the failure of defendant to comply with discovery.  For example, see Opposition, page 1, which is irrelevant to the issues in the Motion to Compel wherein defendant claims it has revealed "unsavory aspects of Larry Grove's business dealings." Defense counsel has threatened (see Exhibit 1, pg. 2 of defendant's Opposition) to file a bar grievance against plaintiffs' counsel for using a document at a deposition that defendant had in its possession, but concealed from plaintiffs, and which defendant allegedly was unaware that plaintiffs had obtained from another source.  The defendant's efforts to misdirect the court from the merits of plaintiffs' Motion to Compel should be rejected.

A.  DEFENDANT UNOCAL CORPORATION[1] FAILS TO EXPLAIN THE REPEATED WILLFUL FAILURE TO VERIFY DISCOVERY REQUESTS

Federal Rule of Civil Procedure 33(b) requires  interrogatories to be verified under oath. Defendant admits that it has failed to verify the first, third, and ninth discovery responses.[2]  The defendant now claims that these discovery responses will be verified.  There is no explanation as to why it took a Motion to Compel to verify discovery responses as required under FRCP 33(b), and as repeatedly requested by plaintiffs' counsel.  Furthermore, even if it was an "oversight"

---

[1] It has been agreed to between the parties that Union Oil Company of California shall be substituted in as a defendant in this action.  Defendant shall be referred to as Unocal.
[2] Defendant mistakenly claims it has not verified the second discovery responses.  These in fact have been previously verified and plaintiffs make no request for verification as to same.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

there is no explanation as to why defendant did not do what it is required to do when plaintiffs filed the Motion to Compel in March 2006 setting out the same failure(s). [3]

The defendant seeks to excuse its repeated discovery failures by claiming the Motion to Compel is a "diversionary tactic." This "diversionary tactic" compelled defendant to verify discovery responses after repeated refusals to do so when asked by plaintiffs' counsel.

Defendant claims that "Unocal has revealed unsavory aspects of Larry Grove's business dealings and plaintiffs therefore are attacking Unocal in an attempt to deflect from that matter." Defendant's Opposition, pg. 1. What do personal attacks on Larry Grove have to do with the obligations of Unocal to comply with discovery? It is irrelevant to the Motion to Compel before the Court.[4]

In fact, it is Unocal that seeks to divert this Court from its own discovery failures. Unocal states at pg. 2 of its Opposition that "[i]t is interesting that plaintiffs have continued to demand the verifications even though plaintiffs have not provided all of their verifications." It is interesting that defendant acknowledged the <u>continued</u> failure by defendant to comply with the discovery rules. However, Unocal then attempts to divert the Court from its failure by claiming (<u>falsely</u>) that plaintiffs have not provided all of their verifications.

First, it is irrelevant to the plaintiffs' Motion to Compel what was or was not done by plaintiffs. Second, Unocal has never requested verification (perhaps because plaintiffs' responses <u>have</u> been verified) and thus, is distinguishable. Third, the assertion by defendant is demonstrably <u>false</u>. Unocal states at pg. 9 of its Opposition:

**Plaintiffs Have Failed To Provide Verifications For Discovery Answers.**
It appears that Plaintiffs have failed to provide verifications for discovery answers. They did not provide a verification for:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[3] These dilatory tactics of defendant are characteristic of the actions of defendant throughout this litigation.
[4] Plaintiffs deny that Larry Grove has engaged in unsavory business dealings.

1)  Response to Second Discovery Requests to Plaintiff Sarah Grove, dated February 6, 2006;

2)  Response to Second Discovery Requests to Plaintiff Michael Grove, dated May 11, 2006.

Plaintiffs should provide the proper verifications for their own discovery responses.

In fact, on February 6, 2006, plaintiffs wrote to Sarah Grove to verify the responses and on March 2, 2006 signed and notarized Verification page to Response to Second Discovery Requests to Sarah Grove was sent to defense counsel via facsimile and via U.S. Mail.  See Exhibit 1 to Affidavit of Michael Cohn.

On May 19, 2006, plaintiffs sent to defense counsel the Verification page to Unocal's Sixth Set of Discovery to Lawrence Grove and Unocal's Second Set of Discovery to Plaintiff Michael Grove.  See Exhibit 2 to Affidavit of Michael Cohn.  Note that it was mailed to Unocal counsel and defense counsel does not claim it did not get the Verification to Larry Grove's Sixth Set of Discovery, which was sent along with the Verification for the minor Michael Grove, signed by his father, Larry Grove.

In contrast, defendant claims (falsely) that verification to plaintiffs' Third (sic) Discovery Requests was provided to plaintiffs.  Attached hereto as Exhibit 3 is the blank verification sent to plaintiffs' counsel.  The copy of the verification attached as Exhibit 4 herein, and which is Exhibit A to Unocal's Opposition, has a <u>blank</u> space on the verification of Service.  <u>No</u> such document has been located in plaintiffs' discovery or correspondence files.  It appears the document was received by the law firm of Clapp, Peterson, Van Flein, Tiemesson and Thorsness on June 28, 2005.  However, receipt by Unocal counsel is not imputed to plaintiffs.

There was a lack of due diligence to comply with discovery.  Thus, defendant now claims it will "verify" the one interrogatory it partially and incompletely answered on the Ninth

Response to Discovery.  See defendant's Opposition at pg. 8.  In fact, given the lack of

responsiveness by defendant, the Court is requested to deem all the interrogatory responses of

Unocal as "verified."

The defendant has raised a number of excuses such as "oversight," diversionary tactic,"

or that "plaintiffs have not provided all of their verifications" [FALSE].  To this list, defendant

claims no verification is required for the response and supplemental responses to the Fifth Set of

Discovery Requests and to the response to the Seventh Discovery Requests for plaintiffs'

alleged "own duplicitous behavior in failing to disclose the three OSHA files to Unocal."

Opposition at pg. 3.  The Opposition at pgs. 3-8 repeats the same intellectually dishonest, and

personal attacks made against plaintiffs' counsel in defendant's Motion Rule 37 Sanctions

(Docket No. 63) made last year.  See Affidavit of Michael Cohn hereto; see also plaintiffs'

Surreply to Motion to Compel, and plaintiffs' Opposition to Defendant's Motion for Rule 37

Sanctions (Docket No. 74) filed last year.  These personal attacks include a threat to file a bar

complaint against counsel (see Exhibit I to Linda J. Johnson's Affidavit) over an Affidavit of

Paul Crapps, which defendant claims was concealed by plaintiffs' counsel, which alleged

concealment is continuously repeated, even though it is <u>false</u> and defense counsel knows it is

<u>false</u> because defendant had possession of the Paul Crapps Affidavit since March 2003, and

concealed its existence from plaintiffs, which plaintiffs only learned about through another

source, because of defendant's failure to comply with discovery.

The genesis of Plaintiffs' Fifth Discovery Request to Defendant began innocuously in

March 2005, when plaintiffs' counsel notified defense counsel that the sheared bolts from the

collapsed platform/scaffold in which caused the injuries to Larry Grove, were going to be sent to

plaintiffs' expert metallurgist, Dr. Joseph Balser, for non-destructive examination and testing.  At

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that point, defense counsel demanded the return of the sheared bolts (claiming the bolts were the property of defendant) and filed a motion in court for return of the evidence.  Defense counsel incorrectly claimed that the plaintiffs had concealed their possession of the sheared bolts (while defendants assertion was clearly false, the plaintiffs do not presume to state herein, that at the time that the false statements were made, that the defense counsel knew that it was false because presumably, it could have been a mere oversight on defense counsel to fail to review plaintiffs' initial disclosure statement and discovery responses in which it was set out that the plaintiffs had possession of the bolts).  Despite the false claims by defense counsel, the court did allow them to obtain possession of the bolts (totally unnecessary litigation that presumably cost their clients thousands of dollars in hourly fees, when whoever had possession of the bolts at that point should not have mattered).  This triggered the Fifth Discovery Requests by Plaintiffs to find out what had happened to the <u>remainder</u> of the platform/scaffold, other than the few bolts that the plaintiff had retrieved following his accident.

The fifth discovery requests merely ask the defendant to explain what had happened to the work platform and its parts after the removal of same from the premises where it was obvious for all to see who inspected the site, that it was no longer there, and who had taken down and removed the work platform and its component parts.  Defense counsel at first improperly refused to even answer the question in June 2005, which violated Federal Rule of Procedure 33.  Then, Unocal submitted a supplemental response in December of 2005, which was not verified, in which Unocal stated that it did not currently know the whereabouts of the platform or the identity of the person who removed it and a second supplement on March 1, 2006, likewise not verified, in which Unocal acknowledged the platform had apparently been discarded by Paul Crapps, but claimed that this had happened a few days after the accident in September of 2002.  A similar

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

response was given to Interrogatory No. 1 in Defendant's Responses to Plaintiffs' Seventh Discovery Request, likewise, which has also not been verified. Now defendant seeks to withdraw its answers and claim the right to do so on the basis of OSHA files that defense counsel claims was withheld by plaintiffs' counsel.

In filing this Reply, plaintiffs will, in most part, refer the Court back to prior pleadings that have been filed on this subject in response to the same claims that have been made by defense, as well as the Affidavits of Michael Cohn attached thereto, and the Affidavit of Michael Cohn included herein. However, the gist of the argument of the defense, is that the defendant claims now it was deprived of information that would have allowed it to answer the Fifth and Seventh Discovery Requests. It boils down to two specific sets of documents. One is an Affidavit of Paul Crapps, in which he acknowledges taking down the platform in March of 2003, and not in September of 2002, as alleged in the Second Supplement to the Fifth Discovery Responses and in Response to the Seventh Discovery Request. At the time of the discovery responses, and specifically the Supplement to the Fifth Discovery Responses, it was already known by the plaintiffs' counsel that the platform was not taken down in September 2002, and that Unocal was incorrect, and not on the basis of any OSHA records. The OSHA records, in fact, do not indicate at all what happened to the work platform and its component parts after the removal by Mr. Crapps. None of the OSHA records shed any light on what happened to the platform after it was removed by Mr. Crapps.

The only thing the Affidavit of Mr. Crapps does is establish who, in fact, removed the platform and that it was done in March of 2003. This information was already in possession of Unocal in a number of ways. First, the individuals with personal knowledge that the platform was in existence in March 2003 include Unocal employees Roxanne Sinz, Ken Burns and Paul

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Crapps. It was known that when OSHA went and inspected the platform in March 2003, that there was a platform there to inspect, therefore, the platform could not have been taken down in September of 2002. This is further supported by a document (one of the rare and few documents of any relevance produced by Unocal) in the initial disclosures labeled DEF00027 which is entitled *notes concerning visit by State of Alaska OSHA Inspector as compiled by Ken Burns, Drilling Safety Advisor*, which clearly notes that he, along with Paul Crapps and OSHA Inspector, and others, went to the room where the work platform was located and saw the work platform. See Exhibit 5. None of these individuals could have seen the work platform in March 2003 if, in fact, it had been removed in September 2002. Paul Crapps at his deposition testified that he had reviewed Unocal document DEF00027, the notes of Ken Burns regarding the March 2003 inspection by OSHA of the work platform at the Unocal building. This document, alone, should have refreshed Mr. Crapps' memory that he could not have taken down and destroyed the platform in September 2002 since the document clearly refers to March 2003 and that the platform was still in existence as of that date. Therefore, the claim that Mr. Crapps needed his Affidavit (which affidavit as stated previously was always in the possession of Unocal but concealed from plaintiff) is simply untenable.

Finally, the Affidavit of Paul Crapps, which defendant continues to assert was concealed by plaintiffs' counsel, <u>had always been in possession of Unocal</u>. And Unocal, in fact, had failed to disclose this document to plaintiffs as it was supposed to do under the Federal Rules of Civil Procedure. Thus, the complaint of defendant boils down to the fact that while they concealed the document from the plaintiffs, the plaintiffs were able to obtain the concealed document from another source allegedly unbeknownst to the defendant. Thus, the whole argument by defendant is a red herring and does not excuse their failure to comply.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The only other documents specifically discussed are photographs that were taken of the work platform on March 2003 by OSHA. The photographs showed that the work platform was there, which was <u>already known by Unocal,</u> as shown by Ken Burns, notes, DEF00027, and thus, while the photographs may show what the structure looked like, that itself was irrelevant to answer the questions which were posed in Plaintiffs' Fifth Discovery Requests, and which were falsely answered by defendant, and which were not verified. Therefore, Unocal's whole line of reasoning on this ground is not only incorrect, but it subverts the truth and changes what really happened in this case. See also Affidavit of Michael Cohn, attached hereto.

Note that in the discussion in regard to whether or not plaintiffs had produced the Crapps Affidavit, certain portions of the deposition is underlined. What is not underlined on page 6 of the opposition is the portion of the deposition where Mr. Cohn states that while it was not produced by plaintiffs "<u>this is a document that I would assume that Unocal would have possession of.</u>" In fact, Unocal <u>did</u> have possession of this document, but <u>failed to disclose it</u> and <u>concealed</u> it from plaintiffs. Thus, Unocal's complaint is that the plaintiffs did not disclose that they had located a document that had been concealed by defendant, which had been in the possession of defendant, but had been hidden from plaintiffs for several years.[5]

_____

[5] In fact, plaintiffs' counsel have been informed by former manager at Siemens, that he had a stack of OSHA records that he had reviewed and when plaintiffs did a 30 (b)(6) deposition of Siemens, which is also represented by Unocal counsel, <u>none</u> of these OSHA records were ever turned over to plaintiffs. Furthermore, as seen by the Paul Crapps Affidavit, Unocal had a number of documents from OSHA that they did not turn over to plaintiffs' counsel. In regard to the OSHA records that were received by the plaintiffs, the first two files had been mistakenly filed separate from discovery files, and was not located by plaintiffs' counsel until searching for verifications to Interrogatory answers to be sure a verification had not been misfiled at the time the plaintiffs were preparing to file the Motion to Compel last year. The third set of OSHA records that were received shortly before the deposition of Mr. Crapps contained the Affidavit of Paul Crapps. Plaintiffs were not obligated to necessarily turn over documents that were in the possession of the defendants in the first place, but concealed from plaintiffs; only required to make disclosure at reasonable times even if required to make disclosure; had already been the subject of a records request by defense counsel and plaintiffs' counsel had naturally assumed that defense counsel already had these records. See Affidavit of Michael Cohn. Therefore, given the failure of defense counsel to truthfully respond to plaintiffs' discovery requests to that date, counsel assumed (correctly) that the document had been received by defense counsel but simply were withheld by defense counsel. Finally, as public records, these were as easily accessible to defense counsel as to plaintiffs' counsel. See Affidavit of Michael Cohn.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The Ninth Set of Plaintiffs' Discovery and the Tenth Set of Plaintiffs' Discovery defendant raises the claim that the plaintiffs have already exceeded the number of Interrogatories allowed under the Rules, as a basis for refusing to comply with discovery requests.  As stated previously, defendant has taken a very unfair interpretation of what are considered separate Interrogatories as opposed to sub-parts, and plaintiffs' additional discovery requests were dictated by the failure of the defendant to truthfully answer discovery that had preceded it. Accordingly, plaintiffs would respectfully request that the Court provide that the questions that are unanswered be answered and/or that the plaintiffs be given permission to exceed the limitations under the Civil Rules.  It is interesting that when the Civil Rules have a certain limitation, Unocal becomes a strict constructionist of Rules when it is to their benefit, but when they are supposed to comply with rules such as verification of Interrogatories, which is clearly set out under Federal Rule of Civil Procedure 33, Unocal simply ignored the Rule, despite repeated requests from plaintiffs' counsel to answer same.

B.  PLAINTIFFS ARE ENTITLED TO (1) DUE DILIGENCE AND REASONABLENESS IN COMPLYING WITH DISCOVERY; AND (2) ACCESS TO UNOCAL RECORDS

Unocal contends that the plaintiffs' motion to compel is irrational.  The Unocal supports that proposition by making numerous misstatements that can be clearly demonstrated to be false. At page 11 of the defendant's opposition in regard to plaintiffs trying to find out how long the platform had been up, and who built the platform, defense counsel makes this untruthful and knowingly false statement;

In fact, it is even possible that Mr. Grove could have built it for Siemens when he began working in the building in 1999.  The only statement made to date that indicates that the platform had been in place for years, is a hearsay statement in the recently disclosed OSHA files that was presumably made by Charles Arnett, a Peak employee, who worked as a Unocal Contractor.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

That is patently untrue, and Unocal knows it because in a separate opposition to the

Motion for Partial Summary Judgment, Unocal stated at page 4;

> …another worker, who was a close friend of Mr. Grove's, testified that he also
> stood on the platform to change filters and likewise, had no problem with the
> platform.  Robert Sprinkle stated that he changed filters in the Unocal filter room
> as early as 1990 or 1991.  (Emphasis added).

It is unsupportable and clearly untrue for Unocal to even raise the suggestion that plaintiff

Larry Grove could have built the work platform for Siemens when he began working in the

Unocal building in 1999.  Though Unocal claims the only evidence that the platform was in

existence before 1999 is an alleged hearsay statement from Charles Arnett (see opposition at

page 11), in fact, there is much, much more than simply Charles Arnett's testimony.  There is the

testimony of Robert Sprinkle.  While the defendant ignores Robert Sprinkle's testimony at page

11 of the opposition, later on Unocal tries to discount Robert Sprinkle's testimony by stating that

he was a friend and co-worker of Larry Grove.  The defendant neglects to mention that Mr.

Sprinkle has been an acquaintance of defense attorney, John Thorsness.  There is no indication

that Mr. Sprinkle has testified untruthfully.  Furthermore, the testimony of Arnett and Sprinkle is

corroborated by others.  There are the notes of Ken Burns, DEF00027, where he indicated that

obviously the platform had been in the Unocal building affixed to that wall for obviously a long

time.  See Exhibit 5.  It is also not just Robert Sprinkle, a "friend" of Larry Grove.  Defendant

has done pre-depositions of numerous Siemens employees and is well aware of the fact that the

platform was in existence before Siemens got the contract for the Unocal building in the early

1990's.  Several Siemens employees acknowledge the platform was in existence for a long time.

See Affidavit of Michael Cohn.  Defense counsel has acknowledged same in conversations with

plaintiffs' counsel that the platform was in existence in the 1980's or 1970's.  Furthermore,

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

plaintiffs' counsel through conversation with former Siemens employees is also aware that the platform was in existence well before Larry Grove became an employee for Siemens, thus the statement that is thrown up just to confuse the issues and create a misimpression with the Court should be rejected, and it also reflects poorly on Unocal that such a statement can even be made when it is well known that it is simply untrue.

Unocal says that plaintiffs assume that Unocal has not diligently searched for records. Plaintiffs have shown in the Motion to Compel filed this year, and the previous Motion to Compel filed last year, and the Affidavits of Michael Cohn submitted in support of both motions, numerous responses to discovery answers including responses to discovery requests numbers one, two and three alleging that Siemens either owned or maintained the platform even though Unocal has no evidence to support that position, and even though all of the individuals listed as having the knowledge of same, in fact, did not have <u>any</u> knowledge that Siemens had built or maintained the platform that collapsed injuring Larry Grove. This alone would raise suspicion in any ordinary person that the defendant has not been diligently answering discovery requests.

In addition, <u>all</u> of the safety records for the building including the safety inspections that have been conducted yearly, prior to the accident have somehow disappeared and are unable to be located by Unocal. Unocal also suddenly produces documents in May 2006, after several depositions of Unocal personnel have been taken, that were apparently generated in July 2004 at the time of the initial disclosures, but never turned over to plaintiffs. See Exhibit 7. Unocal counsel admits in Unocal's Motion for Rule 37 Sanctions filed last year, after they had falsely claimed that the plaintiffs had concealed a document, i.e. the Affidavit of Paul Crapps which Unocal, in fact, had possession of for many years but concealed from plaintiffs, but claimed it had been separated from the Unocal <u>main file</u>.

Unocal has apparently been separating documents and placing them in different files. Plaintiffs have not been provided access to these files. Plaintiffs know documents have not been disclosed, such as safety reports, building and maintenance records. There have been no records produced as to this platform from Unocal. And there apparently has been no diligent search for records and Unocal has continued to provide information that was false in response to discovery requests, perhaps due to lack of reasonable diligence in compiling information. Unocal has lost, or has been unable to find, all the safety records.

The platform collapsed in September 2002. It was finally removed in March 2003. Unocal has produced no records of what they did with the platform between September 2002 and March 2003. Where was the authorization to fix or re-attach the platform? Where are any records regarding the platform from Unocal at any time? Where are any safety records of Unocal? Where are all the records from the Unocal main files and the other files that have become separated?

The testimony of Charles Arnett, and Doug Schutte (the 30(b)(6) records deposition designee of Siemens), and communication with former management of Siemens by plaintiffs' counsel, show that anything that was going to be built in the Unocal building would need the prior authorization by Unocal, that there would have to be invoices and work orders. Whoever built that structure should have a trail of documentation, that simply has not been turned over to plaintiffs. Former Unocal Manager, Archie Cook, confirmed the need for authorization/approval for such a structure in the Unocal building.

Unocal's claim in opposition that Unocal would have no reason to want or need the platform constructed is simply untrue. It also deflects what the real question is. First, Unocal may have constructed the platform to change the air filters themselves after the building was

constructed.  The air filters go from the floor up to the ceiling.  Thus, one needs either a tall

ladder or a platform to access the higher areas of the room.  Prior to the time that Unocal may

have contracted with outside contractors, (the term today would be out-sourcing) Unocal could

have had the platform constructed so that its own employees could access the air filters.  In any

event, whether Unocal employees would utilize the platform or have a need is irrelevant to the

policy of Unocal to require authorization for anything that would be done in its building, whether

it's done by a contractor or a Unocal employee.  See testimony of Charles Arnett; testimony of

Archie Cook; and Affidavit of Michael Cohn.

The plaintiffs simply have the history of what has occurred in this case.  First, Larry

Grove retrieved some of the sheared bolts from the building.  The defendant, Unocal indicates

that it destroyed the rest of the structure and evidence after the March 2003 inspection by OSHA.

Unocal had in its possession an Affidavit of Paul Crapps, which it had never produced to

plaintiffs.  Unocal has been unable locate and produce any of the safety records, pre-accident, for

the building.  Unocal provided incorrect answers to numerous discovery requests as set forth in

prior pleadings by plaintiffs, and also see the accompanying Affidavits of Michael Cohn,

especially in regard to the allegations that Siemens had something to do with the structure when

the defense counsel, who represents both Siemens and Unocal, knew Siemens had nothing to do

with the work platform.  Defendant acknowledges that the files have been separated and put into

different locations, including the Paul Crapps Affidavit.  Unocal had numerous documents at the

time of initial disclosures in July 2004 which were not produced to plaintiffs until May 2006.

Unocal's answers, and changes to answers, indicate an unwillingness to exercise due

diligence to find records.  Plaintiffs have a right to find out why certain safety records do not

exist.  Plaintiffs have a right to find out where the records are showing the approval of the work

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

14

platform, or the payments for the work platform, or the purchase of materials for the work platform. Unocal has sought and obtained thousands upon thousands of pages in regard to Larry Grove, but has been reticent about turning over any information regarding Unocal and its building and the work platform, safety records, or any other records that may be relevant to the matters in this litigation. Thus, there is a basis for the plaintiffs' request that discovery be compelled.

In addition, since defense counsel is counsel for both Unocal and Siemens, they have actual access to all the Unocal <u>and</u> Siemens records. Plaintiffs have a right to suspect that the records have not been diligently searched, or that they have been scattered into different files and a less than strenuous search has been made for records that could reveal the source of the platform, the approval of the building of the platform, any requisition or payments for parts for the platform, maintenance for the platform, for re-attaching the platform. None of these records are apparently available. Yet, the absence of records and the absence of any evidence whatsoever, did not prevent Unocal from answering untruthfully plaintiffs' first discovery requests, plaintiffs' second discovery requests, plaintiffs' third discovery request, plaintiffs' fifth discovery requests, plaintiffs' sixth discovery requests, plaintiffs' seventh discovery requests, as well as other discovery requests.

Over and over, plaintiffs were misled by the defendant as to the role of Siemens in the construction or ownership of this platform, when in fact, Unocal and all the individuals that it listed as people with knowledge, had no knowledge that Siemens had anything to do with the construction of this platform, and many knew that Siemens did not take this platform apart. Unocal also knew Larry Grove, for that matter, had nothing to do with the construction or maintenance of the platform.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal claims that page 19 of its opposition that its discovery answers are not misdirected because "in its initial discovery answers, Unocal believed only Siemens could have erected the platform because Unocal knew from talking to its employees that no Unocal employee worked in the filter room". Again, this is a misleading statement in that the responses to the initial discovery requests were not simply that Unocal employees did not work in the filter room, but that on information and belief it was Siemens that <u>owned</u> and <u>maintained</u> and <u>built</u> the work platform. Indeed, the individuals with that information that were contacted by plaintiffs' counsel, or deposed, could not state any belief or information that Siemens had anything to do with the construction, maintenance, or ownership of this platform. Furthermore, counsel for Unocal conveniently forgets, that not only does it represent Unocal but is also counsel for Siemens, and therefore, it has open access to Unocal and Siemens and would have knowledge that Siemens, through Siemens' own employees and managers, had nothing to do with the construction, ownership or maintenance of the work platform. Therefore, to continue to insist that Siemens had something to do with the platform was incorrect, and known to be incorrect.

When Unocal claims that its employees would have no reason to want or need the platform constructed, that is a disingenuous argument. Charles Arnett testified, nothing could be constructed in that building without the approval of Unocal. Siemens could not build anything without Unocal's authorization and approval. This was a large structure. It would not go unnoticed by Unocal. The platform was needed to access the air filters that needed to be changed up to four times a year.

Unocal claims that no Unocal employee recalls ever seeing the platform in the filter room. The Unocal employees testified that they did safety inspections of the building. The safety inspection of the building was not limited to only certain portions of what was supposed to

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

be an inspection of the entire building. See deposition of Archie Cook. It is simply untrue as implied by Unocal counsel, that Unocal employees had no reason to be up in the filter room or in the mechanical room on the top floor of the building.

Unocal claims it has voluntarily subpoenaed records from prior contractors. Yet, regardless of whether those records would exist from these other entities, these records should also be in Unocal's own files. Furthermore, it is known that Unocal has had other entities review/inspect the building. Plaintiffs obtained documents in regard to inspections of the building (which documents Unocal refused to disclose saying they were irrelevant). Thus, in a letter from TRA Architecture Engineering Planning Interiors, dated February 3, 1992, it was stated "TRA has been engaged by Unocal to assist in an evaluation of their six story office building located at 909 W. 9th Ave…." See Exhibit 8. Any such records regarding this inspection have not been produced by Unocal.

Unocal has had many problems with the building including asbestos. None of the records regarding the asbestos abatement and the inspection of the building have been produced to the plaintiffs.

There is a report of inspection from Wormald Fire Systems, Inc. dated February 21, 1990, in which it is indicated that they conferred with Don Akers (Unocal Building Manager). There is a report from an entity called Cache Barner Usher, Architects, with a letter addressed to Don Akers dated October 16, 1990, concerning a certificate of occupancy. Cross-copied in that report are other entities, including the Department of Public Works, the Anchorage Fire Department, Honeywell, Inc., and another company called KHO Construction Company.

It is also inconceivable that in hiring contractors to do work in the Unocal building, that Unocal building managers and employees would simply not know what was in their own

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

building.  Presumably, when an entity is hired to do contract work, that someone from the

Unocal building would need to take the contractor around the building to show them what they

would have to do, and what they would have to service, in order first for the contractor to even

submit an intelligent bid as to the cost of the service, which in turn would require agents of

Unocal to be aware of what was in the particular sections of the buildings.  Unocal, itself, has

asserted ownership over the platform and its component parts, including the sheared bolts.  Now

for Unocal to claim it has no knowledge of anything in regard to the building, including a

platform that it has acknowledged has been in existence for many, many years before Siemens

ever appeared on the scene, is simply misdirection.  The Unocal records have been destroyed,

lost, concealed, or misplaced. However, plaintiffs cannot answer which one applies in light of the

apparent lack of effort to even locate said records.

There is no contradictory evidence to Charles Arnett that nothing could be done in that

building without the approval of Unocal.  Why should the plaintiffs be expected to rely upon

Unocal's answer when the statements that Unocal makes, such as those that have been set out in

their opposition, are demonstratively false.

The plaintiffs ask the Court for permission to do what plaintiffs are allowed to do under

the Rules of Civil Procedure, which is to conduct an inspection of records.  In regard to meeting

minutes, and the testimony of Archie Cook, it is just unconceivable that a top management

official would not know whether minutes were kept at a management meeting.  It is also

inconceivable that a company conducts management meetings, and everything is oral, and there

are no safety records or minutes kept.  In fact, Unocal produces a document in redacted form; see

Unocal's Opposition at page 13.  Unocal claims that, except for one tiny little entry, everything

else is proprietary items and that therefore Unocal has the right to self-edit everything and is sole

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

arbiter of all the discovery that will be disclosed to the plaintiffs.  Unfortunately for Unocal, that is not how discovery works in the real world.  The Court is the final arbiter of what information will be disclosed.  The plaintiffs respectfully request that the document entitled Staff Meeting March 3, 2003 notes and action items, be produced to the Court in unredacted form for an in camera review, and that anything that has any connection to the work platform, Larry Grove, or OSHA building inspection be made available to the plaintiffs.

In regard to safety reports, Unocal seems to imply that there was only one safety inspection conducted in the building back in the late 90's.  In fact, there had been many safety inspections, and none of these records are available.  It is inconceivable that these safety records of a major oil company should simply disappear.  The only way future inspectors of the building can determine what was done previously, what was corrected, and what remains uncorrected, is to have the previous safety reports to review when conducting a subsequent safety inspection.  It is just inconceivable that a company the size of Unocal would not keep records of their safety inspections of their property.  These safety records obviously would be important documents for use in finding what problems have been found and alleviated and what remains to be done.  Again, in regard to any records, Unocal cannot simply invoke attorney/client privilege or proprietary work privilege, and stonewall plaintiffs.  The scope of discovery is broad and the defendant cannot simply hide behind privilege and seek to prevent plaintiffs obtaining legitimate discovery.  Plaintiffs also request the Court order Unocal to make available the person or persons most knowledgeable concerning the search made for records in the record keeping system of Unocal.

C.   THE PLAINTIFFS HAVE NOT EXCEEDED THE PERMITTED NUMBER OF INTERROGATORIES

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal unilaterally decreed plaintiffs exceeded the number of interrogatories permitted under the Federal Rules of Civil Procedure.  It is interesting that Unocal apparently utilizes the rules only when it suits their purposes but ignores blatantly certain rules such as verification when they simply do not comply.  Unocal took certain interrogatories and split them into numerous questions when they all relate to the same topic.  Second, many of the interrogatories that were asked were needed to follow up and to have more sub-parts due to the failure of Unocal to answer previous requests or to mince words in response to a request.  For example, if the plaintiffs ask about employees, Unocal has simply answered about "current" employees, without answering about former employees.  The manner in which the defendant has interpreted interrogatory responses has been set out in plaintiffs' previous pleadings and affidavits.  The plaintiffs respectfully request that even if the Court finds that the Interrogatory numbers had been exceeded, that they be permitted to exceed the number and have the defendants answer the questions they have been unwilling to answer to this date.

D.   SECRET SURVEILLANCE TAPES

Unocal claims that any questions directed to the secret surveillance tapes done by Siemens should be directed to the worker's compensation arena.  However, counsel represents both Unocal and Siemens.  Any alleged secret surveillance of Mr. Grove that was done in 2003, or at any other time by Siemens, which is also represented by Unocal, should be produced by Unocal.  Unocal refuses to produce the complete records of any secret surveillance done on Mr. Grove, including that by Unocal, claiming some sort of attorney/client or work product privilege. Unocal claims to have produced the un-edited versions of certain taping of Mr. Grove in 2006. There are two separate times amounting to a few minutes each time.  It is unknown by plaintiffs whether or not these two "un-edited" tapes are the entire history of all the taping that was done of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Mr. Grove, and whether tapes that are unfavorable to Unocal simply have not been produced.

Furthermore, it is improper of Unocal to claim attorney/client or work product privilege for

investigators who came and went and looked at and secretly taped Larry Grove.  This is all

discoverable.  Included in that discovery is the correspondence and instructions to the secret

surveillors, and notes by the secret surveillors, as well as any sound for the tapes.  Plaintiffs are

entitled to know what was done, the instructions, the notes, and the memoranda of the people

doing the secret surveillance.  Unocal cannot simply arbitrarily and unilaterally determine what it

will permit plaintiffs to have.

<u>CONCLUSION</u>

Accordingly, plaintiffs respectfully request the Motion to compel be granted.

RESPECTFULLY SUBMITTED this 12th day of June, 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs


_____/s/ Phillip Paul Weidner_____
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail:  nbackes@weidner-justice.com
ABA No. 7305032


CERTIFICATE OF SERVICE
I hereby certify that on June 12, 2007 a copy of the foregoing **REPLY IN SUPPORT OF RULE 37 ORDER COMPELLING DISCLOSURE/ DISCOVERY** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.

<u>/s/ Phillip Paul Weidner</u>

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571