Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE, | ) ) ) ) ) ) | Case No. 3:04-CV-0096-TMB |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| UNOCAL CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE**

### I.    Introduction

Plaintiff Larry Grove was injured on September 9, 2002 when a poorly constructed and maintained platform at the Unocal building at 909 West 9th Avenue in Anchorage, Alaska collapsed while he was on a service call for his employer, Siemens Building Technologies, Inc. It is undisputed that Larry Grove injured his right ankle in the collapse of the work platform, cannot return to the work that he did at the time of his injury, fractured a bone, had ligament and tendon damage, and had surgery in May 2003 and May 2005 for his ankle injuries.  It is also

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

undisputed that he has a permanent partial impairment as a result of his ankle injury. Defendant Unocal, is responsible for the work platform that was located in its own building for many years.

   1.  **Unocal Designed, Constructed, and Maintained, the Work Platform**.  Unocal has no evidence that anyone other than Unocal designed, constructed, maintained, repaired, authorized, approved or owned the work platform at the Unocal building that collapsed injuring plaintiff Larry Grove.

   The work platform that collapsed, injuring Larry Grove, was in the Unocal building. Unocal has admitted, as set out in plaintiffs' initial motion, that they have absolutely no evidence that Larry Grove's employer, Siemens Building Technologies, Inc. (hereinafter Siemens), or any other contractor of Unocal, had anything to do with the design, construction, maintenance or repair of the work platform.

   Unocal demanded the return of the sheared bolts that Larry Grove had retrieved after the collapse of the platform, claiming ownership of the bolts.  Unocal exerted ownership by destroying the platform.  Furthermore, the platform was in the Unocal building, and there is substantial evidence that nothing could be done in that building without the authorization or approval of Unocal.  Since defendant Unocal has come up with no evidence that anyone else has exerted ownership or control over the work platform, as a matter of law, as part of Unocal's building, it is Unocal's property.

   Unocal conducted safety inspections of the building. None of these safety records apparently exist anymore.  How could they all be gone?  Now, by the convenience of the absence of these records, Unocal comes in and says we don't even know that the platform existed.  That is unacceptable.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal has lost or destroyed evidence, including all records in regard to the safety records for the building, and the platform itself, or approval of the platform. The burden of proof should be on Unocal, at a minimum to establish that it did not own, build, authorize or maintain the structure. In <u>Lyndon Transport, Inc. v. Haragan</u>, 623 P.2d 789 (Alaska 1981), *Res Ipsa Loquitur* was properly invoked in the collapse of a trailer and the court found it unfair to place the burden on the plaintiff when the defendant had destroyed the evidence. In the absence of the ability to do that through the destruction or loss of evidence, the plaintiffs' request is perfectly reasonable, and plaintiffs respectfully request that it be granted.

**2/3. Sheared Bolts Part of Platform; Platform Negligently Designed, Built, Maintained; and a Real Accident**. Unocal claims it did not know that Larry Grove was going to file a lawsuit, and therefore it had no duty to preserve the work platform and its component parts. It is not simply the work platform and its component parts, but this fact combined with all the other evidence that apparently is missing, including the safety inspections and records for the building. Thus, Unocal's reliance on <u>Sweet v. Sisters of Providence in Washington</u>, 895 P.2d 484 (Alaska 1995) is misplaced. Unocal, at page 4 of its Opposition, notes that <u>Sweet</u> required that the absence of the evidence hinders the ability to establish a prima facia case (not that it precludes the ability to do so, but just hinders it), and (2) that the evidence is missing through the fault of the adverse party.[1] The platform and its component parts are further evidence of negligent design, construction and maintenance. The condition of the parts, would be relevant. There has been no explanation given why safety inspection records are unobtainable by defendant. There would be every reason for Unocal to retain these records

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] The case of <u>Montiaero v. R.D. Werner Co., Inc.</u>, 754 N.Y.S. 2d 328 (2003) did not involve the pervasive discovery noncompliance as is involved in this case by the original tortfeasor. It was strictly as to whether the city would be liable for failing to preserve the scaffold. Furthermore, in this case, it was clear that this was a poorly constructed platform, and that Unocal could reasonably expect litigation.

because they would be useful to find out what hazards have been identified in the building by Unocal safety technicians, including Ken Burns, which ones had been addressed, which ones remain to be addressed, and thus, the failure to have prior safety inspections is negligent by Unocal. Those records should be kept regardless of any lawsuit.

Thus, we have crucial evidence that could establish the knowledge of Unocal as to the existence of the structure that are missing. We have crucial evidence regarding what actions were taken by Unocal in regard to hazards in the building that are missing. We have crucial evidence regarding evidence as to the platform that are missing. On top of that, we have the fact that Unocal repeatedly falsely provided responses to plaintiffs' discovery requests for years, which impeded plaintiffs' discovery in this case. Furthermore, since defendant Unocal is unwilling to release other evidence that they possess under various claims of privilege, or allow plaintiffs to inspect records, the plaintiffs are again impeded in obtaining evidence that would be useful in this matter. The bottom line is that Unocal has no evidence to support a claim of faking the accident or that the nuts and bolts are not part of the platform, or that the platform was not defectively designed, built or maintained, and this is an appropriate case for the court to shift the burden to defendant (see <u>Lynden Transport, Inc.</u>, <u>supra</u>, 623 P.2d 789), and since Unocal has no evidence to the contrary, Unocal should not be allowed to profit from the loss of the evidence and present such allegations in front of the jury.

Unocal has presented no evidence that the sheared bolts that were examined by plaintiffs' expert, Dr. Joseph Balser, and by defense experts, were not part of the platform. A disinterested witness, Charles Arnett, testified that he himself saw the sheared bolts immediately after the accident when he went to the aid of Mr. Grove. Mr. Grove then retained custody of the bolts until he handed them over to plaintiffs' counsel. Since Unocal has thrown away the rest of the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

platform and the rest of the bolts, it would be unfair to allow them to even suggest that the sheared bolts that Mr. Grove retained did not come from the platform, since the other evidence has been thrown away by Unocal.  Unocal refers to Larry Grove "surreptitiously" coming back into the building to "pilfer" the bolts.  The irony is that since Unocal asserted ownership over and destroyed the rest of the evidence, if Larry Grove had not taken possession of these bolts all the evidence would have been destroyed.  Now, Unocal attacks Larry Grove for preserving some of the evidence in this matter.

It is also significant that while Unocal claims the chain of custody is suspect, it has not alleged, or even suggested, that it will claim that the bolts that were retrieved by Mr. Grove and that have been examined by plaintiffs and defense experts are not the bolts that sheared at the time of the work platform collapse.  Since Unocal is unwilling to even make that claim, than it is appropriate for the Court to then not allow them to prejudice the jury by making chain of custody arguments unless it has evidence that the bolts in question are not authentic.

**4.  Siemens**.  In this case, the defendant may seek to place the blame on Siemens, despite the fact that under the contract, Unocal was the one responsible for providing a safe means of access to the equipment.

Unocal is seeking to prevent the plaintiffs from, at a minimum, mentioning the indemnification arrangement between Unocal and Siemens, would be an unfair advantage to Unocal, and since Unocal counsel will be coordinating the defense on behalf of both Unocal and Siemens, and therefore Siemens employees are not free agents, but subject to the defense strategy in this case, which may be to place the blame on Siemens to lessen the amount that Unocal would have to pay, and therefore lessen the indemnity that Siemens would have to pay to Unocal.  This is especially pertinent herein since plaintiffs will not be able to recover from

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Siemens due to the exclusive remedy provision.[2]  At a minimum, plaintiffs are entitled to utilize the indemnity agreement for impeachment purposes.

The State of Alaska OSHA investigator testified he is only concerned within the confines of the OSHA regulations.  OSHA citations to Siemens are inadmissible and irrelevant and will be addressed in other pleadings  Defendant's Opposition on this point is inadequately briefed.

Mr. Scanlon's testimony is not admissible or relevant in regard to Siemens' obligations.

The closeness of the relationship between Unocal and Siemens is relevant.  It is relevant in this case that Unocal counsel is directing this case on behalf of both Unocal and Siemens.  It is relevant in this case that such close cooperation results in the tainting of any of the evidence presented by Siemens that would be favorable to Unocal, and thus, it is appropriate in this case for the Court to either rule that there will be no apportionment to Siemens due to the tainting of such evidence, or, at a minimum, allow impeachment of Siemens through allowing all the evidence of cooperation between Siemens and Unocal, and that defense counsel is directing defense on behalf of Unocal and Siemens.

**5.  Prior Offenses**.  Unocal fails to address the law, or arguments raised by plaintiffs, and therefore plaintiffs' position is unopposed.  Unocal fails to recognize that violation of AS 16.05.420 were offenses, not crimes, and thus, Federal Rule of Evidence 609 does not even apply.  There was no crime, only an offense, and under the law stated by plaintiffs, this evidence is inadmissible.  Unocal should be precluded from arguing in any way that there has been conviction of a crime for false statement, as that is unduly prejudicial, and is contrary to the law.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[2] Unocal cites <u>Sears v. Southern Pacific Company</u>, 313 F.2d 498 (9th Cir. 1963). That 44 year old case is distinguishable.  There does not appear to be any indication of the use for impeachment purposes, only for purposes of notice/knowledge, which was proven through other evidence.  Furthermore, the decision was left to the discretion of the court.

6. **Surveillance Tapes**.  Unocal claims that it does not have information in regard to the workers compensation video.  Unocal counsel is attorney is for Unocal and Siemens.  Siemens is the employer for purposes of workers compensation, so that information is available and accessible to Unocal.  Second, Unocal says it has provided uncut videos that were made with Unocal's authorization.  These videos are only a few minutes long, and do not provide a lot of the information that was requested by plaintiffs.

Unocal claims that Larry Grove claims that he limps all the time, and that supposedly one of the videos shows that he is walking on a concrete surface and down a stair (down one step) without visible limping.  Then Unocal concludes the video shows Grove is clearly not limping or in pain.  What the video would not show obviously is how much pain medication Mr. Grove was taking at that time.  What the video does not show is that he is wearing an ankle brace at that time.

The videos will, themselves, invite a great deal of trial time and litigation on the amount of pain medication Larry Grove was taking at the time, on what he was doing right before or after the video was shot, how much pain he was in, how much limping he was doing or didn't do, and the ankle brace he was wearing.  The activities of simple walking that are on this tape do not show that Mr. Grove can return to his job.  In fact, it is undisputed that Mr. Grove cannot return to the work he was doing at the time of his injury. The fact that he can function for limited periods of time with an ankle brace and with pain pills does not justify an argument that Mr. Grove is not disabled or is able to work.  The video, itself, does not show that Mr. Grove is capable of working and at what job he is capable of doing.   Any marginal relevance is outweighed by prejudice.

7.  **Prior Worker's Compensation Claims**.  Unocal claims it wants to introduce the prior worker's compensation claims as proof that Larry Grove does not take care of his own safety.  How these other injuries can relate to the collapse of a platform when the bolts shear off is not explained by Unocal.  The fact is that most of these injuries described by Unocal apparently did not result in any loss of work other than the one that is the subject of this litigation.  None of these injuries have any relevance to the accident in this case. Unocal ignores the case law that plaintiffs cite, which establishes that the prior claims are not admissible at trial. Since Unocal fails to respond to the legal argument, it should be deemed unopposed.

The only injury that has marginal relevance is an <u>ankle sprain in May of 2000.</u>  However, as explained by Dr. Ealum, the treating chiropractor, that injury has <u>no</u> <u>relationship at all</u> to the injury occurred in September 2002.  Indeed, Mr. Grove  could not have worked for over 2 years with a broken ankle. This previous ankle sprain of May 25, 2000, did not result in the loss of a single day of work.

It is unfair for Unocal to be able to present prior worker's compensation claims, and to make inflammatory statements such as "the prior worker's compensation cases demonstrate that Grove had a pattern or habit of failing to take care of himself and failed to look out for his own safety".  Allowing this evidence would result in litigation of each and every injury.

8.  **Ankle Sprain of May 2000**.  Larry Grove had a minor ankle sprain in May 2000.  He did not lose any time from work.  Two years and four months later, Larry Grove sustained a severe ankle injury when a work platform collapsed in the Unocal Building.  Now, Unocal claims the ankle sprain that occurred in May 2000 is proof that Mr. Grove's alleged failure to mention a minor injury for which he lost no time from work and had minor chiropractic manipulation should  be presented to the jury as proof that Larry Grove is not credible.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Secondly, Unocal counsel presents this information to Dr. Geitz and gets some answers back which are of a general nature that if he had told about, it would have useful for the Dr. to know, and if there had been films, it would have been useful for the Dr. to see. However, none of this general questioning changed any of Dr. Geitz's opinions. Dr. Michael Geitz fully set out the scope of the injuries that he saw and treated in his deposition of October 10, 2006 at pages 79-137.    In fact, if the defendant had a Dr. that would testify that the earlier films that they obtained from Dr. Ealum, the chiropractor, had any bearing on this injury, Unocal would have already presented same. The fact is that Unocal has no evidence that these films show anything relevant.

Unocal mischaracterizes Dr. Geitz's testimony at page 138-139 of his deposition. In the Opposition, Unocal states:

> "in fact, Dr. Geitz could not affirmatively state that his post-traumatic arthritis
> stem from the 2000 or the 2002 injury to the right ankle";

Dr. Geitz did say he could see changes from an x-ray taken <u>after</u> the injury in 2002 and the change that has occurred since the 2002 injury to the time of the more current x-rays. See Dr. Geitz' testimony at pages 138-140 for completeness. Exhibit 1.

In regard to the relevance of the 2000 injury and even if relevant, whether prejudice outweighs any marginal relevance, plaintiff refers the reader to Dr. Ealum's testimony and Dr. Geitz's testimony to show that there is no relationship between the two incidents. This is just another effort to lead the jury down a path that needs not go, increase the scope of the trial and then result in more testimony needlessly about peripheral matters which have no bearing on a traumatic injury that occurred in 2002.

9. **Work for Siemens**.  Unocal writes at page 19 of its Opposition:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

As one means of mitigating his damages, Larry Grove could have, but did not, pursue alternative positions at Siemens, including applying for open clerk, supervisor of other jobs. There is no evidence whether Siemens would have found Grove qualified, since Grove has made no effort what so ever to apply for any job with any company since his injury September 9, 2002. Therefore, if there were openings at Siemens other than as in HVAC worker, Grove should have applied for those positions.

This is a mischaracterization of the facts. The worker's compensation records contain many references that Siemens' had no job for Mr. Grove. In fact, Mr. Grove has been told in no uncertain terms by Siemens to never, ever come back to their premises. Indeed, the worker's compensation attorney for the insurance adjuster in the worker's compensation arena has told plaintiffs counsel that if Siemens would have taken Mr. Grove back to work, then the worker's compensation case would have been over a long time ago. See Affidavit of Michael Cohn. Furthermore, AS 23.30.041, eligibility for vocational re-employment benefits worker's compensation is based in part on whether or not there are jobs available from the employer to return an employee to work. That is why the vocational rehabilitation reports reference communication in which Siemens says there is no work for Mr. Grove. Furthermore, Unocal/Siemens does not even present any evidence that there was such a position at Siemens and accordingly, plaintiffs' Motion on this point should be approved by the Court.

**10. <u>Financial Information of Plaintiffs</u>.** Plaintiffs legal authority is unopposed by defense counsel. Defense has not presented any counter argument why financial information is relevant and admissible.

**11. <u>Worker's Compensation Settlement Proposals</u>.** Unocal does not oppose this Motion.

**12. <u>Siemens Citation</u>.** Unocal/Siemens claims that the Siemens citations should be admissible in this matter. First, there is no evidence that Siemens fought the citations such as to make the citations admissible in Court. Second, the failure of the platform leading to its collapse

had nothing to do with toe boards or any ladder. There is not even any proof that a ladder was being used at the time of the collapse. The OSHA violations don't even involve the particular negligence that caused the collapse of the platform which is the basis for the liability against Unocal. Therefore, all these violations would do is to confuse the jury is irrelevant and also prejudicial. The citations that are issued to Siemens are inadmissible under the Law.

13. **Unocal Admissions**. Unocal claims that there are no admissions that can be utilized against Unocal because, supposedly, many of the statements in the OSHA investigators, Tom Scanlon's reports cannot be definitively attributed to a specific Unocal employee. There are a number of documents in the OSHA files that can be attributed to specific individuals. For example, Tom Scanlon was informed by Roxanne Sinns, then Unocal Building Manager, that there had been no safety inspections for the building. In fact, this has been proven to be incorrect. In a March 7, 2003 letter to OSHA investigator Tom Scanlon from Roxanne M. Sinns, Building Manager, she stated in regard to a list of items that had previously been discussed that as "periodic safety inspections: nothing provided. A system for the Anchorage Office will be implemented." (Emphasis added). See Exhibit 2. In fact, as was confirmed in the deposition testimony of Archie Cook, a former manager at the Unocal Building, and Ken Burns, Unocal Safety Technician, there had been periodic safety inspections of the building. John Stallone, head of OSHA, testified that would be significant if that had not been revealed to the OSHA investigator. See John Stallone deposition at page 22-23. See Exhibit 3.

Unocal claims that the certain admissions cannot be utilized because the specific person is not identified. Under Federal Rule of Evidence 801(d)(2), admissions can be accepted if it is a statement upon which a party manifested on adoption or belief in its truth. Mr. Scanlon had opening conferences with Unocal representatives and a closing conference with Unocal

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

representatives. The closing conference was with Roxanne Sinz, Ken Burns and Unocal counsel

Mark Bond. At neither the opening conference nor closing conference did Unocal Management

disavow any of the findings by Tom Scanlon, the OSHA Investigator. Furthermore, under a

Federal Rule of Evidence 807, there is an exception for hearsay if the Court determines that the

statement is offered as evidence of material fact. The statement is more probative on the point for

which it is offered that any other evidence which the proponent can procure through reasonable

efforts and the general purpose of these rules in the interest of justice will best be served by the

admission of the statement into evidence.

   Thus, there has been the loss, destruction, or concealment of certain information

including safety inspection reports, and any and all records of the work platform. Unocal to

attacks the veracity of the source of the information, claiming that it is Charles Arnett, a former

worker at the Unocal Building (and Unocal seeks to evade the admission of such statements by

claiming that Charles Arnett was simply a contract employee and/or his employment had

terminated by the time of the OSHA investigation), the information is actually supported by

other evidence. For example, a statement by Tom Scanlon to the effect that the work platform

had been in the Unocal building for over 12 years which Unocal claims could only have been

made probably by Charles Arnett, is supported by testimony of other individuals, such as Robert

Sprinkle, who testified that the work platform was there when he was changing filters in early

1990's. Other statements in regard to the age of the platform are supported by the notes of Ken

Burns', DEF00027 (Exhibit 4).

   Plaintiffs do concede that certain of the statements contained in Mr. Scanlon's report will

need to be addressed later given the scope of the evidence and testimony that comes out at trial

as to whether there is sufficient identity of the individuals which certain statements are attributed to and/or ratification by Unocal and/or corroborative evidence.

14. **Habit Evidence; Dock Incident**.  Unocal has presented a photograph taken in the newspaper of Mr. Grove jumping off of a dock for charity and presented to all of the healthcare providers.  That incident occurred after he had suffered an injury to his back (non-weight bearing bone).  Healthcare provider, Dr. Ealum, testified that despite Mr. Grove jumping off of the dock, his recovery from that injury was in the minimum time that one would expect to recover, thus, it did not cause any damage to Mr. Grove.  Furthermore, regardless of whether or not it had any alleged potential to exacerbate the back injury, in fact, the back injury has nothing to do with his ankle injury, at all.

Unocal stated that Mr. Grove took a "personal trip" to Ketchikan while allegedly too injured to work.  The fact that an individual can travel does not mean that he can do the heavy duty work that he was doing as a heating, ventilation, and air conditioning specialist for Siemens. There is no question that Mr. Grove's ankle injury prevents him from doing this work in the future.

The statements that Unocal makes in Opposition on this point and this alleged "habit" under Federal Evidence 406 are without foundation.  The advisory committee notes to Rule 406 show that the effort by Unocal to present all this pejorative, prejudicial, irrelevant testimony under the guise of one of the evidence rules is without foundation.

Unocal claims "the jury should here that Groves behavior has been repeated during other worker's compensation claims, because it is his "habit" to take advantage of paid time off to pursue recreational activities" is a blatantly unfair and incorrect statement.  As shown in the testimony of Dr. Ealum, after defense counsel spent 2 1/2 hours grilling Dr. Ealum about

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

irrelevant matters including all of the other worker's compensation claims, <u>it only came out on cross-examination by Mr. Grove's counsel, that in virtually all of these claims, there had been no time off or lost time from work.</u>  This statement by defense implies that Mr. Grove had repeatedly taken time off from work from other worker's compensation injuries to pursue recreational activities.  It is a blatant falsehood.

Furthermore, having a weak argument under Federal Rule of Evidence 406, Unocal argues that under Federal Rule of Evidence 404(b), the conduct in these other worker's compensation claims (most of which had no time loss), is proof of modus operandi, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  There is no relevance. No proof of connection and instead of greatly expanding trial, the alleged evidence should be excluded.

**15/16.  <u>Alcohol Consumption; High Blood Pressure</u>**.  Unocal ominously states "alcohol consumption and continued alcohol purchases by Grove are relevant to the circumstances surrounding his injury and whether Grove takes responsibility for his own safety".  This is hyperbole without foundation.  Unocal cites purchases at businesses that sell alcohol, but has no proof whether or not all this alleged alcohol was consumed by Mr. Grove, or as gifts, or purchased for gatherings of friends, or that large purchases are made at one time that will be used for future occurrences.  Unocal should not be allowed to present this "evidence" to prejudice the jury against Mr. Grove when there is no relevance to them and no proof that can be associated with them on any issue involved in this litigation.

In regard to whether or not a treating doctor stated that Mr. Grove was consuming 4 alcoholic beverages per day for many years in March or April of 2002, has no relevance to the injury of September 9, 2002.  There is no suggestion or proof that has any bearing on the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

accident or that the amount of alcohol that Mr. Grove allegedly consumed caused his ankle injury or made the ankle injury worse. There is no indication in the records that Mr. Grove was ever not able to do his job. The statement about the alleged number of alcoholic beverages per day for many years isn't even from a doctor that was deposed in this case and it is simply in a note. It is unclear whether the doctor accurately reported the note and it is not even relevant to any matter in this case. There is no indication in any of the records or any of the testimony that Mr. Grove is an excessive drinker, or that his drinking has created any problems in terms of work, or with family.

The amount of alleged alcohol consumption is belied by the fact that Mr. Grove was able to work on the North Slope for 10 days or more at a time without any alcohol and without any withdrawal symptoms. Dr. Lauffer testified at page 52, it could indicate that his alcohol consumption was not that great. Dr. Lauffer states in his deposition:

> Question: and how does alcohol affect blood pressure?
>
> Answer: That's a good question.

Id. at 37. (See Exhibit 5).

> Question: Okay. So what would be a-to you, what would be an amount of alcohol that might have an effect on someone's blood pressure?
>
> Mr. Cohn: Form, foundation.
>
> The Witness: I couldn't tell you that, and it would depend on the person.

Id. at 38.

In short, to go into the alcohol consumption of Mr. Grove is certainly a side issue and needless foray into an unproven allegation that Mr. Grove's alleged alcohol consumption caused high blood pressure. Likewise, there is no proof by Unocal as to the amount of alcohol Mr. Grove was drinking at the time that Dr. Geitz testified in his deposition at page 20 that Mr.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Grove's blood pressure was somewhat high and the allegation by Unocal that this delayed surgery. In fact, there is no inquiry by Unocal as to the medication Mr. Grove was taking for his painful ankle injury and the effect of this other medication causing any increase of blood pressure. Thus, to speculate that alcohol caused a delay in surgery in 2003 is unproven, and furthermore, there is no proof that any alleged delay in surgery increased the injuries to Mr. Grove and any marginal relevance is clearly outweighed by the prejudice.

      **17. <u>Prescription Drugs</u>**. Unocal presents some alleged evidence that on once occasion, Mr. Grove consumed leftover Vioxx from a prescription he had, which presumably was to be used as needed. Unocal claims that this is indicative of Mr. Grove's carelessness and that he does not properly take care of his own safety and health. It is irrelevant, and should be excluded.

      **18. <u>Physical Therapy</u>**. Larry Grove had completed almost all of his physical therapy sessions with physical therapist Hal Egbert by September 2003 following his initial ankle surgery in May of 2003. However, Mr. Grove stopped going and missed one or two appointments that were still scheduled. Because Mr. Grove missed/cancelled one appointment, Unocal claims Mr. Grove is a liar. In regard to why Mr. Grove did not return for physical therapy, Mr. Egbert testified that he did not know why. Deposition of Hal Egbert at 86 (Exhibit 6).

      The additional physical therapy would not have cured Mr. Grove. Unocal fails to mention that Mr. Egbert testified he would have expected only a little more progress." <u>Id</u>. at p. 92. Thus, there was not going to be a cure for Larry Grove. Furthermore, Mr. Egbert testified at p. 86:

> Question: In your opinion—I think you stated previously with your expertise as a physical therapist, expected even if he physical therapy that these injuries will remain.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> Answer:  Yes, that's my impression.

<u>Id.</u> at 86.

Thus, it is a red herring to claim that missing a couple of physical therapy sessions had any bearing on the injury of Mr. Grove.  Larry Grove had a second surgery with Dr. Chang, Mr. Egbert said at p. 85:

> Question:  Is it significant to you that he has had a second ankle surgery for some of his injuries.
>
> Answer:  Yes, it's significant.

Furthermore, Unocal misleads the court when it states Dr. Geitz implied that hunting on the tundra could have caused a reinjury.  <u>See</u> Opposition at p. 28.  Dr. Geitz stated it would simply be a temporary aggravation and not a permanent reinjury.

Whether Mr. Grove went to Florida, or intended to go to Florida on that occasion is another issue.  Whether he actually told that to Mr. Egbert or Mr. Egbert misinterpreted what Mr. Grove said is also another issue.  In fact, Larry Grove did go at some point to help his father move from Florida.  That is not a lie, despite Unocal's misrepresentations.  Furthermore, these alleged misrepresentations of Larry Grove's "true activities" was not material to any issue in this case.  Thus, there is no evidence that Mr. Grove "lied," there is no proof that missing a few physical therapy sessions changed the course of his ankle injury, and this is just simply another area of inquiry that would increase the length of trial and result in a mini trial on another matter that need not be presented in this court.

**19.    <u>Farooz Sakota</u>**.  Unocal wants to present Farooz Sakota's testimony that Larry Grove, who had a broken ankle, gave sub-maximal effort in a physical capacity assessment done by her in March of 2003.  Unocal ignores the argument that has been made by plaintiffs, and ignores the legal authority cited therein.  Since Unocal does not respond to plaintiffs' legal

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

authority, it should be deemed that Unocal has accepted the legal authority cited by plaintiffs. Farooz Sakota simply had insufficient evidence, and did not know the full extent of Larry Grove's injuries. Thus, she based her interpretation of Mr. Grove's medical condition without the full facts. Her subjective opinion, which does not meet the rigors of <u>Daubert</u> and is based on a lack of the full facts, and is based on one brief encounter with Mr. Grove, over four years ago, has marginal relevance and should be excluded by this court. Ms. Sakota's conclusion was that Larry Grove could return to the work he was doing, which is contradictory to the medical evidence. Since her opinion is wrong, to allow her testimony would be a gross injustice in this case. Plaintiffs' motion should be approved.

20. **Michael Grove Juvenile Records**. Unocal claims that Michael Grove's juvenile records as to a July 2006 incident are admissible to impeach him about his consortium claims. Thus, Unocal states, "If the alleged changed in relationship between Larry Grove and his son was due not to Larry Grove's injury, but instead due to bad behavior by Michael, then Unocal is entitled to present that evidence to the jury." The incident in July 2006 is <u>almost four years</u> after the accident involving Michael Grove. It has marginal relevance to the issues in this case. To permit Unocal to make a mini trial out of this matter would greatly expand the scope of the trial on a tangential matter and the prejudice clearly outweighs the marginal relevance.

21. **Sarah Grove Diaries**. Unocal has downloaded Sarah Grove's MySpace page and also apparently sought to download the MySpace page of her boyfriend. It is clear that in terms of questioning Larry Grove about some entries in Sarah Grove's MySpace page, including one involving clam digging, that Sarah Grove was not even on this clam digging episode and therefore would have no personal knowledge of what activities Larry Grove did or did not do. There is very little, if anything, of substance in the MySpace page other than Sarah Grove's

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

expression of displeasure over finding out that Unocal had appropriated the MySpace page for its own insidious purposes. Going through and exposing the MySpace page of a young woman in court for its own nefarious purposes does not serve the purposes of this trial and should be excluded.

Unocal mischaracterizes this information when it claims that the MySpace page and live journal contain relevant information about Larry Grove's activities, which Larry Grove had not disclosed to Unocal.[3]

**22/23.  Hunting/Fishing**.  Sections 22 and 23 are closely related; therefore, they will be addressed at the same time. The number of airplane trips that Larry Grove has taken, his fishing and hunting, present no evidence that he has engaged in any strenuous activities or that he can return to the job he did at the time of his injury. None of this alleged evidence refutes the fact that Larry Grove suffered a severe ankle injury and has a permanent disability due to his ankle injury.

Unocal wants to claim that Larry Grove traveled to Africa twice and therefore he is not disabled or he can engage in more activities than he claims. An air flight to African or anywhere involves sitting in a seat. Regardless of whether Larry Grove traveled on an airplane once or 50 times since his injury, that in itself is irrelevant to whether he can work. Indeed, the trip to Africa was a lot more sedentary than most hunting trips normally are. The number of animals that were shot is irrelevant. Mr. Grove testified that most of the animals were shot while sitting

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[3]  In regard to allegations that Sarah Grove has improperly overstated expenses and failed to disclose the existence of a roommate in college, the submission of responses to interrogatories Second Set of Discovery dated February 6, 2006 does not prove the case by defendant. There is no indication in there whether those are the expenses of Sarah Grove, whether she had a roommate at the specific time she answered those discovery requests, or the amount that the roommate may have contributed. Those responses, without the corresponding excerpts that Unocal claims prove that Sarah Grove overstated her expenses should not be accepted. It is insufficient in and of itself and therefore should be deemed denied by the court.

in a vehicle -- very sedentary activity indeed.  The hunting guide, Cristo Kaiser, has taken paraplegics and octogenarians on these trips.  The African hunts are side issues that have no bearing on the liability of Unocal and on whether Mr. Grove can return to work.

Mr. Grove has been a lifetime hunter.  His life revolved around hunting activities when he was off of work.  The fact that he continues to hunt after his injury is irrelevant to whether he was injured.  Mr. Grove has an ankle injury that prevents him from returning to the job he was doing at the time of his injury and there is no dispute on this point from all of the medical testimony or from the worker's compensation carrier.

To bring up all of these hunting and fishing trips is simply to prejudice the jury.  That has no bearing on the liability of Unocal and has marginal relevance to other issues.  It is irrelevant to the fact that Mr. Grove cannot return to the job he was doing and lost a huge amount of his union benefits that he possessed and the ability to continue to build his pension.  All of this hunting and fishing activity is just an effort to divert the jury from the issues in this case.

Unocal says that Mr. Grove's "uncanny ability to always shoot a trophy evidence the jury should hear in order to assess Mr. Grove's claim of 'disability'" is without merit.  Mr. Grove is not claiming that he injured his hand in the accident.  Mr. Grove is not claiming that his eyesight was affected in the accident.  The fact that Mr. Grove can sit in a vehicle and shoot and kill an animal with one shot does not mean that he did not injure his ankle.  The marginal relevance of the hunting and fishing is outweighed by prejudice.

**24.  <u>The Moose Tag Incident</u>**.  Unocal claims that the moose tag incident is an example of "Grove's on-going deceptive behavior."  Mr. Grove was with a friend, John Yenason.  John Yenason shot the moose.  Mr. Yenason, if necessary, can fly in from Pennsylvania and testify that he shot the moose.  However, the allegedly "deceptive behavior" of Grove is due to the fact

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that Mr. Grove submitted to Fish and Game the moose tag that had been issued to Mr. Grove and not the tag that had been issued to Mr. Yenason. Since both Mr. Yenason and Mr. Grove had a license to hunt moose, it was a de minimus violation. In fact, Mr. Grove has had the records corrected by Fish and Game. The moose tags did not have the name of the individual on it, only a number. So when Mr. Grove submitted his moose tag as opposed to Mr. Yenason's moose tag, it was recorded as a moose killed by Mr. Grove and not Mr. Yenason. It should be excluded.

25. **Fishing Permits**. Mr. Grove named his oldest son on a personal use fishing permit, which enabled the Grove family to obtain ten more fish in one year. In getting the personal use fishery, Mr. Grove was told that he could name his son and therefore assumed that it was okay to add his son onto the personal use fishery. Unocal states that the permit clearly states that fish may only be taken for household members and that the person must be present while fishing, and they attach as proof Exhibit L. An examination of Exhibit L does not indicate that every household member must be present during fishing. So this statement by Unocal is absolutely false. It also does not say that it must be taken only for household members. Mr. Grove is willing to admit that this was a misunderstanding. The fact that he did it one year and not in other years indicates that there was a miscommunication. This personal use issue that occurred three years after the injury to Mr. Grove and has no bearing on liability and no bearing on damages and is irrelevant for all maters should not even be permitted in court.

26. **Trips**. Unocal sought records of Larry Grove as to trips he has taken to Nevada, including hotel and casino records. It claims the trips and gambling are relevant to Larry Grove's activity level. Undersigned counsel is unaware that the ability to sit at a table or actually pull the handle of a slot machine is relevant to establishing that Mr. Grove can return to the work he did before his injury. Neither are plaintiffs aware of any testimony by any doctor as to the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

fact that Mr. Grove might be able to travel in an airplane proves that he can go back to the work he was doing at the time of his injury. Nor do these trips have any bearing on whether Mr. Grove is disabled. The fact that Mr. Grove has taken a couple of trips with his wife to Nevada and may have engaged in gambling on a few occasions has no bearing of any issue in this case. It should be excluded

27. **Subsistence**. The term "subsistence" has a meaning much different from "personal use." Subsistence clearly implies more of an economic loss than personal use, and therefore plaintiffs respectfully request that that term be excluded from trial.

28. **Other Injured Individuals**. This issue is now moot pursuant to Unocal's representation.

29. **Demonstrative Evidence**. Plaintiffs concede that this issue should be taken up only if Unocal seeks to utilize demonstrative evidence or experiments.

30. **Burden of Proof Regarding Mitigation**. Unocal must show that there are jobs available that Mr. Grove is capable of doing before it attacks Mr. Grove for failing to try and get the training in order to qualify for a different job. The burden is on Unocal to show that this has occurred. Unocal has ignored its burden of proof in its Opposition.

31. **Pejorative Terms/Personal Attacks**. Unocal counsel cannot resist one final effort to make pejorative and mean-spirited comments in regard to Mr. Grove. Unocal states that "Larry Grove has proven himself to be a malinger by failing and refusing to even try and get a job for five years and that term should be allowed." Pejorative terms should not be allowed.

Mr. Grove is friends with Phillip Krasner. Mr. Krasner is the owner of businesses on the East Coast. Mr. Grove received ten checks for $250 each, which Mr. Grove considered as reimbursement for expenses for traveling to Pennsylvania. Mr. Grove's father lives in

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Pennsylvania.  His brother lives in Pennsylvania.  His in-laws live in Pennsylvania.  His older son lives in Pennsylvania.  His grandchildren live in Pennsylvania.  However, after obtaining thousands of cancelled checks from Mr. Grove's bank accounts and obtaining all sorts of other financial records of Mr. Grove, Unocal is checking to see if this $2,500 is an alternative source of income for Mr. Grove.

Unocal stated in another pleading it discovered "unsavory aspects of Larry Grove's business dealings."  There is nothing to be discovered.  Mr. Grove did a favor for a friend.  In fact, in conversation with Unocal counsel, Unocal counsel claimed that Mr. Grove goes back to Pennsylvania every month.  See Affidavit of Michael Cohn.  Mr. Grove did go back to Pennsylvania in August of 2006.  His brother's wife died.  Is that not allowed?  Mr. Grove did go back to Pennsylvania at the end of November, 2006 at the time of Thanksgiving.  Is it all right for Mr. Grove to visit his family during Thanksgiving?  Plaintiffs respectfully request that the Motion in Limine be granted.

RESPECTFULLY SUBMITTED this 12th day of June, 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs


_____/s/ Michael Cohn_____
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail:  nbackes@weidnerjustice.com
ABA No. 8506049


## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2007 a copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.  /s/ Michael Cohn

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571