# VERIFICATION



STATE OF ALASKA            )
                           ) ss.
THIRD JUDICIAL DISTRICT    )

I, Chris Pecci, the Information Technology, Procurement & Logistics, and Building Services Manager of the Alaska Operations of defendant Unocal Corporation, being first duly sworn upon oath, depose and state:

1. I have read the foregoing discovery requests propounded by plaintiff and understand the contents thereof;

2. I have responded to the foregoing discovery requests, and signed this Verification freely and voluntarily for the purposes set forth therein in my official capacity on behalf of defendant;

3. I verify that the information contained herein is true and to the best of my knowledge; and

4. I verify that I have provided all the information known to me at this time and that I am under an obligation to up-date and supplement my responses in the future if any answer is found to be incorrect or I gain additional information

Exhibit 4
page 1 of 2

EXHIBIT A
PAGE 1 OF 2

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Defendant's Responses to Plaintiff's 3rd (sic) Discovery Requests
Grove v. Unocal, Case No. A04-0096 CV (JKS)
Page 11 of 12

which would change any answer.

DATED at Anchorage, Alaska, this 27th day of June, 2005.

*/s/ Christina L. Perri*

SUBSCRIBED AND SWORN to before me this 27th day of June 2005.

_____
Notary Public in and for the State of Alaska
My Commission Expires: **8·29·06**

Certificate of Service:

I certify that a copy of this
document was mailed _____,
faxed _____, hand delivered _____ on
June _____, 2005, to the following:

Phillip P. Weidner Esq.
330 L Street, Suite 200
Anchorage AK 99501

By:_____

Exhibit __4__
page __2__ of __2__

EXHIBIT __A__
PAGE __2__ OF __2__

Defendant's Responses to Plaintiff's 3rd (sic) Discovery Requests
Grove v. Unocal, Case No. A04-0096 CV (JKS)
Page 12 of 12

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Notes concerning visit by State of Alaska OSHA Inspector as compiled by Ken Burns, Drilling Safety Advisor

03/03/03 – Monday

State OSHA Inspectors Tom Scanlon and Lee Zhao (Trainee) came to the reception desk asking for Siemens. OSHA was advised that Siemens was not at this building. Both inspectors departed.

After lunch, Paul Crapps received a call from Tome Lake, Siemens Supervisor that State OSHA was at their office investigating a complaint from one of their employees regarding conditions (scaffolding) here at Unocal. Lake further advised that OSHA was on their way to Unocal.

I received a call from Roxanne that she wanted my assistance upon the arrival of OSHA.

At approximately 1440 hrs, I was notified by Paul Crapps that State OSHA was at the reception desk to conduct a Complaint Inspection. Paul further explained that several months ago a Siemens employee fell and hurt himself while working in the penthouse.

I responded to the front desk (reception) and was met by Paul Crapps, Tom Scanlon and Lee Zhao from State OSHA and Tom Lake, Siemens Supervisor. Tom Scanlon presented credentials and business card and explained that he was here to conduct a complaint inspection. He introduced Lee Zhao as a trainee. Mr. Zhao did not have either a business card or credentials. Tom Scanlon presented the complaint form from a confidential source. The complaint alleged that Unocal had improper scaffold erected in the penthouse. I escorted OSHA and others previously mentioned to Roxanne's office. Together we discussed the complaint. Scanlon stated that he wanted to view the location listed on the complaint and to take some photographs of the scaffolding. I asked Tom if he was going to conduct an Opening Conference and he replied that he had some papers but he would do an opening conference later. He made reference that the paper work was too detailed or lengthy to do at that time.

Tom Scanlon, Lee Zhao, Tom Lake, Paul Crapps and I went to the Penthouse and allowed the inspectors to view the area of the complaint. Prior to entering, Paul had to shut the air conditioner down because of the noise and wind velocity in the filter chamber. Tom Scanlon and trainee Lee Zhao entered the chamber and proceeded to take photograph and measurements. Both Tom Scanlon and Lee Zhao climbed the ladder and exposed themselves to the open-sided platform. One significant question was asked. "Who erected this scaffolding?" No one knew the answer. It was obvious from the structure that it had been erected many years ago. At approximately 3:35 pm, the party departed for the reception area. The OSHA inspectors signed out at 3:43 and departed. Prior to departing, I asked Scanlon if he was going to conduct a closing and he replied "No."

Later in the afternoon, after briefing Roxanne, I was requested (e-mail) by the Law Department and Roxanne to

REDACTED

Exhibit 5
page 1 of 1

**Exhibit 15**

DEF 00027
*Grove v. UNOCAL*

FILE COPY

Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE,<br><br>           Plaintiffs,<br><br>     v.<br><br>UNOCAL CORPORATION<br><br>           Defendant | ) ) ) ) ) ) ) ) Case No. 3:04-CV-0096TMB ) ) ) ) ) ) ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF RULE 37 MOTION FOR DEFAULT AGAINST DEFENDANT AS SANCTION FOR WILLFUL BAD FAITH NON-COMPLIANCE WITH DISCOVERY AND/OR ORDER COMPELLING DISCLOSURE/DISCOVERY, AND OPPOSITION TO DEFENDANT'S SURREPLY TO MOTION TO COMPEL AND DEFENDANT'S MOTION FOR RULE 37 SANCTIONS**

A.   <u>THE CRAPPS AFFIDAVIT</u>

Defendant, Unocal, has filed a Motion for Rule 37 Sanctions in response to plaintiffs' Motion for Rule 37 Sanctions, claiming that plaintiffs concealed and failed to disclose

Exhibit 6
page 1 of 11

4-6-06

possession of an affidavit of Unocal employee, Paul Crapps, which document had been in possession of Unocal for years, and which Unocal failed to disclose to plaintiffs for three years. Defense counsel, Linda Johnson, threatened to file a Bar grievance against one of plaintiffs' attorneys, Michael Cohn, for the alleged failure to produce the Paul Crapps Affidavit, which, as it turns out, was always in the possession of Unocal, but not released or revealed to plaintiffs.

In defendant's Surreply to Motion to Compel and Memorandum in Support of Motion for Rule 37 Sanctions the defendant makes numerous allegations concerning the plaintiffs' alleged failure to disclose the affidavit of Paul Crapps, including references on page 2, 3, 5, 6, 7, and 8, before the astonishing admission on page 9 <u>that in fact defendant had possession of the Paul Crapps Affidavit all along</u>, but apparently had concealed this document from plaintiffs, which plaintiffs first learned about at the end of January, 2006.

Defendant states at page 3 "plaintiffs had the affidavit in their possession long before the deposition [of Paul Crapps] but failed to produce it." On page 7, defendant asserts that plaintiffs disclosed for the first time during the Crapps deposition that they had the Affidavit of Paul Crapps. See Defendant's Memorandum at page 7. At page 8, defendant again asserts that plaintiffs were fully aware that the affidavit …

Page 2

Exhibit 6
page 2 of 11

had not been produced [by plaintiffs]. Defendant asserts incorrectly, (as it is not reviewing the records carefully), that plaintiffs had had possession of the affidavit since December, 2004. See Defendant's Memorandum at page 8 (in fact, the previous OSHA records received by plaintiffs did not contain any affidavit of Paul Crapps). The first notice to plaintiffs as to the Paul Crapps Affidavit was the end of January, 2006 through newly received OSHA records, at which time plaintiffs rightfully believed defendant already had possession of this affidavit, which simply had not been produced to plaintiffs. See Michael Cohn's original affidavit supporting Motion for Default, attached hereto as Exhibit A to Affidavit of April 5, 2006.

Defendant's main attack against plaintiffs in defendant's Motion to Compel is the failure to produce the Paul Crapps Affidavit, despite the astonishing admission at page 9, when Unocal states:

> Finally, when Unocal was provided with a copy of Paul Crapps Affidavit, <u>it was able to locate a copy of the Affidavit that had been separated from the Unocal's main file</u>.

Defendant's Memorandum at p. 9; (emphasis added). In fact, this document was revealed only after plaintiffs' counsel asked Unocal to submit an affidavit that it did not possess the Crapps Affidavit, which it was unable to do because Unocal <u>had</u> the Crapps Affidavit. Though the defendant, even in

Exhibit 6
page 3 of 11

Page 3

this admission, buried at page 9 of its memorandum, and only after at least 9 references to the failure of the plaintiffs to produce a document that defendant had possession of for years but failed to produce to plaintiffs, and which should have been produced to plaintiffs in initial disclosures, and further should have been produced in response to numerous plaintiffs' discovery requests, finally make this grudging admission. Even this admission is halfhearted as Unocal somehow claims that it is only because Unocal got a copy of the affidavit from the plaintiffs that Unocal was able to locate Paul Crapps' Affidavit in its own files. The admission by Unocal itself in turn creates numerous questions that plaintiffs respectfully request the court require Unocal to answer. These include, but are not limited to, the following:

1. What is in the Unocal main file? That file should be produced at once to plaintiffs;
2. Who put together the Unocal main file?
3. How did this affidavit somehow become separated from the Unocal main file?
4. Who separated the affidavit from the Unocal main file?
5. How was someone able to find the affidavit that had been separated from the Unocal main file?
6. How was it that defendant was able to locate files that plaintiffs for years have been requesting, but

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 6
page 4 of 11

      defendant apparently has been unable to locate previously?

7. Who located the affidavit, and how did they know where to find this affidavit?

8. What other files were with that affidavit, and what other files have been separated from the Unocal main file, and who has knowledge of where all these files are, and why haven't they been produced to plaintiffs?

Defendant's counsel said that they might take legal action against one of plaintiffs attorneys, Michael Cohn, for the alleged failure to produce a document which defendant already possess, and which it had failed to disclose to plaintiffs for years.  The Affidavit of Paul Crapps was located by Unocal only after one of plaintiffs' counsel wrote back demanding an affidavit from defendant that it did not have the Affidavit of Paul Crapps.  Defendant finally and grudgingly revealed, at page 9 of its memorandum, that Unocal has been in possession of the Crapps Affidavit, which had (for many years) been withheld from plaintiffs' counsel.  Yet, despite this conduct of defendant, defendant still has the nerve to seek a motion for sanctions against plaintiffs based primarily on the Crapps Affidavit.

Defendant seeks to preclude the use of the Paul Crapps' Affidavit for the alleged egregious conduct by plaintiffs. Defendant claims that if Mr. Crapps had this affidavit available

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 6
page 5 of 11

before his deposition (which affidavit was available because Unocal had possession of same) that Mr. Crapps could have refreshed his memory as to when he had in fact dismantled the work platform that collapsed injuring Larry Grove on September 9, 2002. Mr. Crapps testified in his deposition that the dismantling occurred a few days after Mr. Grove's accident of September 9, 2002. Plaintiffs' counsel who was questioning Mr. Crapps was frankly surprised at this statement since there was numerous evidence, including that of Unocal employees' own knowledge and Unocal documents, including documents reviewed by Mr. Crapps before his deposition, which showed that his statement was simply incorrect. That is, Mr. Crapps testified at his deposition that he had reviewed one of the few documents of any materiality that had been produced by Unocal in this case, that is DEF00027, produced in Initial Disclosures. This document is as follows:

> <u>Notes concerning visit by State of Alaska OSHA Inspector as complied by Ken Burns, Drilling Safety Advisor</u>
>
> 03/03/03 - Monday
> . . .
> After lunch, Paul Crapps received a call from Tom Lake, Siemens Supervisor that State OSHA was at their office investigating a complaint from one of their employees regarding conditions (scaffolding) here at Unocal. Lake further advised that OSHA was on their way to Unocal.
> . . .
> At approximately 1440 hrs, I was notified by Paul Crapps that State OSHA was at the reception desk

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 6
page 6 of 11

> to conduct a Complaint Inspection. Paul further explained that several months ago a Siemens employee fell and hurt himself while working in the penthouse.
>
> I responded to the front desk (reception) and was met by Paul Crapps, Tom Scanlon and Lee Zhao from State OSHA and Tom Lake, Siemens Supervisor. . . . Scanlon stated that he wanted to view the location listed on the complaint and to take some photographs of the scaffolding. . . .
>
> Tom Scanlon, Lee Zhao, Tom Lake, Paul Crapps and I went to the Penthouse and allowed the inspectors to view the area of the complaint. Prior to entering, Paul had to shut the air conditioner down because of the noise and wind velocity in the filter chamber. Tom Scanlon and trainee Lee Zhao entered the chamber and proceeded to take photograph and measurements. <u>Both Tom Scanlon and Lee Zhao climbed the ladder and exposed themselves to the open-sided platform. One significant question was asked. "Who erected this scaffolding?"</u> No one knew the answer. It was obvious from the structure that it had been erected many years ago. . . .
>
> Later in the afternoon, after briefing Roxanne, I was requested (e-mail) by the Law Department and Roxanne to **REDACTED** (Exhibit 15; emphasis added).

This document, which has a date of March 3, 2003, clearly shows (see highlighted portion) that the OSHA inspectors came out and inspected the platform. Obviously, they could not have inspected this platform if it had been dismantled and destroyed in September, 2002, which Mr. Crapps claimed at his deposition, despite his knowledge of this document, which he reviewed before his deposition. Furthermore, this information as to dismantling the work platform was in the possession of Unocal from the

Exhibit 6
page 7 of 11

Page 7

beginning of this litigation. The OSHA records, which will be discussed in more detail in this memorandum, are second hand summaries by the OSHA inspectors of information that was supplied by the primary source, that is the Unocal personnel, including individuals such as Roxanne Sinz, Paul Crapps, and other Unocal personnel. The OSHA records reveal that this knowledge was obtained from Roxanne Sinz, Paul Crapps, Archie Cook, Charles Arnett, all individuals that are listed in response to Plaintiffs' Third Discovery Requests as individuals that Unocal counsel conferred with in answering discovery requests. Yet, despite conferring with these individuals, the information that they knew, was not revealed to plaintiffs' counsel for years.

The plaintiffs did not need an affidavit from Paul Crapps to know that the work platform had been dismantled. Everyone knew the work platform had been dismantled. When the filter room where the work platform collapsed was examined by plaintiffs' counsel and plaintiffs' expert, the platform was gone. Unocal personnel knew the platform was gone. In fact, Larry Grove testified in his deposition in November 2004 that the platform had been removed after the OSHA inspection:

> A. . . . After OSHA inspected it [the work platform] it all disappeared.
> Q. After they inspected it?

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 6
page 8 of 11

      A.  Well, after OSHA showed up, it was all gone after that.

Deposition of Lawrence H. Grove of 11/12/04 at pg. 130 (Exhibit 17).

    DEF00027 clearly and definitively establishes that the work platform was still in the filter room at the Unocal building in March of 2003 when the OSHA inspectors came out and inspected the work platform. Individuals who had told Mr. Crapps to remove the work platform, including Roxanne Sinz, the building manager who conferred with Unocal counsel in completing discovery requests to plaintiffs, and Ken Burns, a safety official with Unocal, who is the source for DEF00027, were well aware that the platform had been dismantled, and when it was dismantled.

    The affidavit of Mr. Crapps was simply an affidavit of abatement and posting. There was no advantage to be gained from allegedly concealing this document from Unocal. All it was, was a confirmation that Mr. Crapps had personal knowledge of the dismantling of the work platform (which finally had been admitted by defendant before the deposition in 2006), and that he had posted citations and notifications of penalty. Thus, Mr. Crapps was simply asked his personal knowledge of the dismantling of the work platform.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 6
page 9 of 11

It is important for the court to go through plaintiffs' original Motion to Compel, and the Affidavit of Michael Cohn, which has been validated by the admission of defendant that it had possession of the Paul Crapps Affidavit for years, but failed to disclose it to the plaintiffs. On March 17, 2006, in Exhibit 13-DD to the Affidavit of Michael Cohn (Exhibit A herein) to the initial Motion to Compel by plaintiffs, in a letter to defense counsel, it was stated:

> Please provide an affidavit from Unocal that Unocal did not possess or have knowledge of the Paul Crapps affidavit. It appears unlikely that Mr. Crapps would have signed any affidavit concerning the OSHA investigation without Unocal management and/or counsel reviewing the affidavit, and have retained a copy of the affidavit, and indeed, already had possession of the entire OSHA file.

This letter, which is quoted in Para. 51 of Mr. Cohn's Affidavit in support of the Motion to Compel, has now been proven to be correct through the admission by defense counsel, buried at page 9 of Unocal's memorandum. See also Affidavit of Michael Cohn (Exhibit A), Para. 45. In paragraph 43 (Exhibit A), Mr. Cohn states that it is his belief that this information, including the Paul Crapps Affidavit, is already in the possession of defendant. Furthermore, the fact that following the challenge laid out in Mr. Cohn's letter of March 13, 2006 (Exhibit 13-GG) as to the Paul Crapps Affidavit, resulted, apparently, in Unocal finding the Affidavit of Paul Crapps had always been in their possession, confirms the statements by Mr. Cohn in his affidavit (Exhibit A) at Para. 23 and 48 that the defendant has engaged in

Exhibit 6
page 10 of 11

half-hearted efforts to search for records previously. That is apparent now, since it did not appear to have taken much time to find the Affidavit of Paul Crapps.

The defendant makes many false misrepresentations in defendant's Surreply. For example, Unocal claims that when plaintiffs asked in discovery what happened to the work platform, that plaintiffs already knew what happened to the work platform because of OSHA records. <u>None</u> of the OSHA records indicate what happened with the work platform. The OSHA records merely indicate that the work platform was dismantled. That was already obvious, even without OSHA records, because it was not in the filter room. What the plaintiffs' counsel wanted to know is, what happened to the dismantled work platform and it's components, and where the parts are now located. That is the information that defendant has personal knowledge of, but concealed from the plaintiffs for years.

B.  UNOCAL MISREPRESENTATIONS

Following the maneuver by defendant to obtain possession of the broken sheared bolts that Mr. Grove had retrieved shortly after the accident (which luckily had been retrieved by Mr. Grove as we now know defendant destroyed the rest of the evidence), plaintiffs then sent a letter, to which there was no response, asking defendant to account for the work platform. The failure to respond to the letter

Exhibit 6
page 11 of 11

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571