FILE COPY

Bob Carmichael, CSP OHST CHST
Bob Carmichael & Associates HSE
200 West 34th Avenue, #47
Anchorage, AK 99503
907-561-9977
r.j.carmichael@att.net

July 29, 2006

Michael Cohen.
Weidner and Associates
330 "L" Street, Suite 200
Anchorage, Alaska 99501

Re:   Lawrence H. GROVE, et al. v. UNOCAL CORPORATION
      Case No. A04-0096-CV (JKS)

Dear Mr. Cohen,

Per your request, I have reviewed the available facts of the above referenced case. Information was supplemented by a personal visit to the accident site on April 12, 2006 by myself and on January 24, 2006 by my associate Sally Ann Carey.

In preparing my opinion, I have reviewed the following documents:

   Plaintiff's rule 26(A)(1) Initial Disclosures (Bates numbers LG000001 to LG00508)
      (Cohen 07-20-04)
   Defendant's initial disclosures (Bates numbers DEF 00001 to DEF 00063) (Jamieson
      07-28-04)
   Complaint (04-16-04)
   Answer (05-17-04)
   Deposition of Cynthia H. Grove
   Deposition of Lawrence H. Grove
   Photographs of mechanical room and work platform
   OSHA records Bates stamp LG000025 to LG 000030
   Scheduling and Planning Order (07-08-04 Judge Singleton)
   Stipulation for extension of time to prepare expert reports (Judge Singleton 06-08-05)
   Joint motion to extend discovery and modify the scheduling and planning conference
      report (08-23-05 Thorsness)
   Response to first discovery requests to plaintiff Cynthia Grove (Cohen 08-30-04)
   Response to first discovery requests to plaintiff Michael Grove (Cohen 08-30-04)
   Response to first discovery requests to plaintiff Sarah Grove (Cohen 08-30-04)
   Response to first discovery requests to plaintiff Lawrence Grove / Photographs
      (Cohen 08-30-04 Bates stamp LG00509 to LGA00528)
   Responses to plaintiff's second discovery requests (Martin 11-11-04)
   Defendant's first supplemental disclosures (Martin 11-11-04)

EXHIBIT  2
PAGE  1  OF  5

Responses to plaintiff's third discovery request (Martin 11-0-04 Bates stamp DEF 01032 to DEV 01040)
Defendant UNOCAL Alaska's second supplement to Initial disclosures (Thorsness 05-31-05)
Plaintiff's rule 26 supplemental disclosures (Cohen 06-09-05 Bates stamp LG 00529 to LG 00572)
Plaintiff Larry Grove's responses to defendant's second discovery requests (Cohen 06-09-05). Documents are not Bates stamped.
Plaintiff's rule 26 2nd supplemental disclosers (Cohen 06-24-05)
Defendant's responses to plaintiff's third (sic) discovery requests (Thorsness 06-27-04)
Defendant's responses to plaintiff's fifth discovery requests (Thorsness 06-27-05)
State of Alaska, Department of Labor and Workforce Development, Occupational Safety & Health Labor Standards & Safety Division (OSHA) (Bates stamp numbers LG00782 to LG00858)
Grove v. UNOCAL photos (Bates stamped LG00859 to LG00873)

### Incident History

The UNOCAL Anchorage office is located at 909 West 9th Avenue. The top level of the building contains air conditioning equipment and other utilities. The air conditioning system includes a bank of filters which can be exposed to outside air through a set of louvers mounted in an outside wall. Each individual filter is set into a vertical frame thus creating a filter bank. These filters require periodic maintenance.

The filter bank is contained in a service room at the top of the building. The service room is entered through a hatchway from a utility corridor. The top row of filters in the rack is too far above the floor to be reachable by an average-sized person. At some time prior to the accident to Mr. Grove, a work platform had been installed in the filter room to allow access to the upper rows of filters. According to statements made in the case, it was the collapse of this platform that resulted in the injuries to Mr. Grove.

### Platform Condition Factors

To my knowledge, no engineering diagrams, as-builts, or photos of the work platform exist. However, based on deposition statements and physical inspection of the filter room, the platform consisted of metal brackets which were attached to the sheetmetal of the filter frame on one side and sheetmetal ductwork on the other using screws. The brackets did not appear to extend to the floor and were thus suspended by the screws. The brackets were then used to support wooden planks which partially spanned the working surface. The platform was accessed by using a ladder.

Examination of the mounting holes where the brackets had been installed indicated that none of the screws had penetrated into any solid structural element and it was the strength

EXHIBIT 2
PAGE 2 OF 5

of the screw-to-sheetmetal interface that was intended to support the weight of the platform and whatever load was placed on it.

The platform boards, when installed, created a work platform that was approximately at the same level as the top of the ductwork located next to the exterior wall of the building. This would make the elevation of the work platform greater than six feet above the floor of the filter room. There has been no evidence that guardrails were installed on the open sides of the work platform. There was also no evidence or statements made that the individual planks had ever been secured to the brackets.

### *Regulatory Considerations*

The following U.S. Occupational Safety and Health Administration (OSHA) citations are from the general industry regulations in 29 CFR 1910.

29 CFR 1910.21(a)(4)
*"Platform." A working space for persons, elevated above the surrounding floor or ground; such as a balcony or platform for the operation of machinery and equipment.*

29 CFR 1910.21(f)(27)
*"Scaffold." Any temporary elevated platform and its supporting structure used for supporting workmen or materials or both.*

1910.22(d)(1)
*In every building or other structure, or part thereof, used for mercantile, business, industrial, or storage purposes, the loads approved by the building official shall be marked on plates of approved design which shall be supplied and securely affixed by the owner of the building, or his duly authorized agent, in a conspicuous place in each space to which they relate. Such plates shall not be removed or defaced but, if lost, removed, or defaced, shall be replaced by the owner or his agent.*

1910.23(c)(1)
*Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides, . . .*

29 CFR 1910.28(a)(4)
*Scaffolds and their components shall be capable of supporting without failure at least four times the maximum intended load.*

29 CFR 1910.28(a)(10)

EXHIBIT 2
PAGE 3 OF 5

> *Nails or bolts used in the construction of scaffolds shall be of adequate size and in sufficient numbers at each connection to develop the designed strength of the scaffold. Nails shall not be subjected to a straight pull and shall be driven full length.*

**Safety Considerations**

Whenever a person is on a surface where areas of lower elevation are nearby, there is a danger of falling to that lower level. This can occur from a slip or trip resulting in a loss of balance; from inattention to surroundings (such as stepping off the edge of a roof during construction work); or physical collapse of the working surface.

In safety practice, there are four general methods of controlling this risk: elimination of the need to work at height, engineering of the work platform, guardrails and other forms of fall prevention and protection, and education and awareness for the workers.

In the case of the work being performed on these filters, it may have been possible to design the filter tray so that it could be lowered to allow floor-level access to all the filters that needed maintenance.

In this particular case, a platform was built to allow access to the upper row of filters. The expectation is that the platform would be able to support its own weight, plus the weight of the worker and his materials, plus a suitable safety factor. In the practice of safety, it would be expected that the platform would be designed by a suitably competent engineer and installed by suitably competent workers. The platform would be subject to regular inspection and maintenance. The specifications for the brackets and their attachment to the structure, the size and strength of the planking and the spacing of their supports, and the maximum working load of the platform would all be specified.

**Opinion**

1. Whether intended to be permanent or temporary, neither engineering nor safety standards were applied to the construction of this platform.

2. The screws used to attach the brackets to the walls were not appropriate for the application and failed under load.

3. Floor loading limits for the platform had not been established and posted and the limits had not been reviewed and approved by an engineer or regulatory authority.

It is my professional opinion that had any of these three elements been eliminated, that, although the platform still might not have been considered safe, it would not have collapsed under the load applied at the time of the accident.

EXHIBIT 2
PAGE 4 OF 5

Since discovery is still ongoing at the time this report is submitted, I reserve the right to supplement this report as additional information is received throughout the discovery process.

_____     _____
Bob Carmichael, CSP

EXHIBIT 2
PAGE 5 OF 5