John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska  99501
(907) 272-9292
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA
GROVE, SARAH GROVE, and MICHAEL
GROVE (DOB 1/21/88) by and through his
father LAWRENCE H. GROVE,

                Plaintiffs,

    vs.

UNOCAL CORPORATION,

                Defendant.

Case No. 3:04-cv-0096-TMB

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

Defendant Unocal Corporation moves this court for a motion in limine to preclude certain evidence from being used during trial.

### Factual Background

Plaintiffs Larry Grove, Cynthia Grove, Sarah Grove and Michael Grove sued Unocal Corporation for negligence, products liability, punitive damages and loss of consortium for an injury Larry Grove allegedly sustained while working inside the Unocal building for his former employer, Siemens Building Technology. Larry Grove

was hired at Siemens in 1998 as a heating, ventilation, and air conditioning (HVAC) mechanic. Siemens had the HVAC contract for the Unocal building. From 1999 until his injury, Grove worked inside the Unocal building on repairs and maintenance jobs whenever necessary. Plaintiffs allege that a platform Larry Grove was standing on while working collapsed, causing a fracture to the talus bone in his right ankle on September 9, 2002.

Grove sought medical treatment for his injury and filed a workers' compensation claim. He had seven prior workers' compensation claims in the past, including one for a previous sprain of his right ankle which he concealed from his treating doctors. Geitz Deposition at 12-13, attached as Exhibit A.

Since his injury, Grove has neither worked nor applied for a single job due to his alleged ankle injury. However, he is capable of hunting big game in Alaska and Africa as well as participating in many other recreational activities. Unocal seeks to exclude certain evidence which Unocal anticipates Plaintiffs will attempt to use in court.

## **Relevant Authority**

**Exclusion of Irrelevant Evidence, Generally**

Federal Rule of Rule of Evidence 402 states, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. Evidence which is not relevant is not admissible." Relevant Evidence is defined by Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." See *Huddleston v. United States*, 485 U.S. 681, 682-92 (1988); *Alyeska Pipeline Service Co. v. Aurora Air Service, Inc.*, 604 P.2d 1090 (Alaska 1979).

**Exclusion of Hearsay Evidence, Generally**

Federal Rule of Evidence 801(c) states: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See U.S. v. Dorsey*, 418 F.3d 1038 (9th Cir. 2005).

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 814-15, 110 S. Ct. 3139, 111 L.Ed.2d 638 (1990); *Ryan v. State*, 899 P.2d 1371 (Alaska App. 1995).

## I.   Plaintiff should be precluded from making any reference, comment or any other evidentiary introduction of Unocal's indemnity contract with Siemens.

Unocal's indemnity agreement with Siemens is called a "knock for knock" and is common and accepted in law.[1]   A knock for knock agreement is one in which each party will indemnify the other for claims brought by its employees or subcontractor's employees. See e.g. *Weathersby v. Conoco Oil Company,* 752 F.2d 953, 955-957 (5th Cir. 1984).   The provision includes reciprocal indemnity provisions embodying the maxim "I'll take care of mine and you take care of yours",

---

[1] Knock for knock agreements have been common provisions for years.   See e.g. *British Transport Commission v. U.S.***,** 354 U.S. 129, 132 n.1, 77 S. Ct. 1103 (1957).

because that is the easiest, least confusing way for the parties to a contract to apportion responsibilities. It is very familiar to courts in Alaska since the oil industry is so prominent in the state's economy.

Plaintiffs speculate that Siemens will "assume blame" for the subject work platform. Since no person or entity has been found who has verified that they designed or constructed the platform, Plaintiffs' fearful speculation is without foundation. If Plaintiffs are arguing that a Siemens employee will testify that Siemens received two OSHA citations for their failure to provide a safe workplace for their employee, then that is entirely possible, since it is true.

In the case before the court, Siemens bears responsibility as Grove's employer. The OSHA investigator, Tom Scanlon, stated that Siemens had a legal responsibility as Grove's employer, and according to OSHA regulation, to provide a safe workplace for Grove.

> Q    As the actual employer of Mr. Grove, does Siemens have a duty to provide him a safe place to work?
> MR. COHN:  Objection to form of the question; foundation.
> A    Yes.
> Q    (By Ms. Johnson) Okay. And is that provided for in OSHA regulations?
> A    Yes, under the general duty clause, 5A  -- 5A?  . . . .

Scanlon Deposition at 138, attached hereto as Exhibit B.  To the extent that Grove blames his injury on a poorly designed, constructed and maintained platform, his employer had a duty to ensure that the platform that Grove was standing on to

perform his work was safe.[2]  At this time, there is no developed testimony that Siemens took any responsibility for Grove's safety inside Unocal.

Plaintiffs insinuate as nefarious the contract between Unocal and Siemens. Plaintiffs indulge in the speculation that Unocal and Siemens have "conspired" to "defraud" Plaintiffs. *See* Plaintiffs' Memorandum in Support of a Motion for Partial Summary Judgment at page 41.  Plaintiffs should be precluded from publishing this slander to the jury.

### 1.    Exclusion of Evidence of Liability Insurance/Collateral Benefits

When a party is accused of acting wrongfully, evidence of liability insurance coverage is generally not admissible because of the probability of confusion between insurance and inference of fault.  FRE Rule 411; *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751, 757 (3d. Cir. 1976); *See also Larez v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) ( It has long been the rule in our courts that evidence of insurance <u>or other indemnification</u> is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction") (emphasis added).

### 2.    Plaintiffs should be precluded from introducing any evidence of Unocal's indemnity agreement with Siemens

Under this contract, Unocal tendered defense to Siemens and Siemens accepted the tender.   The "knock for knock" indemnity agreement is neither relevant to the Plaintiffs' claim nor admissible in trial.    Just as evidence of

---

[2] Unocal's expert, Michael Van Bree, has issued a report wherein he states expert opinion to this effect.

insurance is inadmissible under Fed. R. Evid. 411, so is Siemens' acceptance of Unocal's tender in this case.

The indemnity agreement between Unocal and Siemens should be excluded from evidence. The Ninth Circuit has stated:

> Evidence of the type represented by the indemnity agreement is so easily misused and its purpose so likely to be misunderstood that, even if relevant, reasons of policy may well dictate its exclusion.

*Sears v. Southern Pacific Co.,* 313 F.2d 498, 504 (9th Cir. 1963). *See also Nor-West Cable Communications Partnership v. City of St. Paul*, 924 F.2d 741, 752 (8th Cir. 1991) (District court had excluded evidence of indemnity agreements under Federal Rules of Evidence 403 and 411).

The indemnity agreement is likely to be both misunderstood by the jury and misused by the Plaintiffs. Plaintiffs seek to mislead the jury in believing Plaintiffs' baseless allegation of skullduggery concerning Unocal's indemnity agreement with Siemens. Because the indemnity agreement is not an issue in the litigation and thus not relevant, and because Plaintiffs' misuse of the agreement would mislead the jury and create undue delay, unfair prejudice, and confusion of the issues, the agreement should be excluded from evidence using the Federal Rule of Evidence 403 balancing test.

The indemnity agreement should also be excluded because it is evidence of insurance liability, thus Federal Rule of Evidence 411 should bar its introduction into evidence.

## II. **Plaintiff should be precluded from alleging or inferring that Unocal's surveillance of Larry Grove within legally protected bounds, is illegal, unethical, or otherwise inappropriate.**

Plaintiffs have alleged that Unocal's surveillance of Larry Grove, even though within legally protected bounds, is an attempt to harass the Grove family. Unocal seeks to have this court preclude Plaintiffs from introducing any evidence which portrays Unocal's surveillance as illegal, unethical, or otherwise inappropriate.

### 1. **Surveillance Video of Larry Grove Is Not "Harassment."**

Plaintiffs seek to exclude the video surveillance of Larry Grove.[3] There were two surveillance incidents. One was authorized and/or performed by workers' compensation personnel. That video was not known or produced to Unocal. Unocal reviewed workers' compensation records and found a reference to the video. Unocal then asked for the video and it was produced. Unocal produced the video to Plaintiffs.

The second video was taken in 2006 with Unocal's authorization. That video was likewise produced voluntarily to Plaintiffs. The video was uncut and shows Larry Grove at an air carrier warehouse retrieving cargo that was shipped back to Anchorage after one of his many big game hunts. Grove is wearing a short pair of rubber boots and walks back and forth on a concrete surface and up and down a stair without visible limping. The video tapes are probative of Grove's true physical abilities and will be used for impeachment. They are material to Unocal's

---

[3] Plaintiffs' Motion in Limine, dated March 29, 2007 at page 23.

contention that Grove's failure to work a single day since his alleged accident is a failure to mitigate his damages.

Notwithstanding, Plaintiffs object to public surveillance of Larry Grove. Substantially shrill protest for reasoned legal argument, they have repeatedly asked the court to order Unocal to refrain from videotaping their client's activities, which occur in public.

Public surveillance is not improper. *McLain v. Boise Cascade Corp.,* 271 Or. 549, 533 P.2d 343, 345-46 (1975) (Surveillance of workers' compensation claimant by filming his activities outside his home does not give rise to invasion of privacy claim), <u>cited with favor</u> in *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1137 (Alaska 1989). Plaintiffs have not pointed to any impropriety by Unocal. In fact, they must admit that all surveillance conducted by Unocal has been conducted in public areas.

Plaintiffs lump the surveillance conducted by Unocal with the surveillance conducted by the workers' compensation carrier. Surveillance in workers' compensation cases appears to be routinely accepted by the Alaska Supreme Court for the purposes of detecting fraud and malingering.[4] See, e.g., *DeNuptiis v. Unocal Corp.,* 63 P.3d 272, 280 n. 32 (Alaska 2003). Plaintiffs complaints have no basis in the law.

### 2.     Exclusion of Prejudicial Evidence, Generally

Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Old Chief v. United States*, 519 U.S. 172, 180-92 (1997); U.S. v. Allen, 341 F.3d 870 (9th Cir. 2003); *Marsingill v. O'Malley*, 128 P.3d 151 (Alaska 2006).

"Unfair prejudice," in turn, means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *See Old Chief*, 519 U.S. 172, 180; *U.S. v. Allen*, 341 F.3d 870 (9th Cir. 2003).

Alaska case law "recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance." Alaska R. Evid. 403 advisory committee's note; *see also Yukon Equip. v. Gordon*, 660 P.2d 428, 436 (Alaska 1983); *Lerchenstein v. State*, 697 P.2d 312 (Alaska App.1985); *City of Kodiak v. Samaniego*, 83 P.3d 1077 (Alaska 2004).

### 3. Plaintiff's presentment of video surveillance as unethical, inappropriate or illegal should be precluded.

The court should preclude Plaintiffs from inferring that Unocal's public surveillance of Grove is unethical, inappropriate or illegal. Plaintiffs have attacked Unocal as mounting an "unprecedented massive harassment of the Grove family," evidenced by the public surveillance of Larry Grove. Plaintiffs' Motion in Limine at 24. Because public surveillance is legal, appropriate for purposes of suspected malingering in workers' compensation claims, and within Unocal's discovery right, any reference or depiction of Unocal in an unethical, inappropriate or illegal light for engaging in surveillance of Larry Grove would be contrary to Federal Rule of Evidence 403, which states that for evidence to be admissible, the probative value

---

[4] Ironically, these are the same purposes for which Unocal sought to videotape Grove.

must outweigh the danger of unfair prejudice. In this case, the probative value of arguing Unocal's surveillance of Plaintiff is zero.

A jury would be misled, confused and distracted through any mischaracterization of Unocal's surveillance, skirting the real issues. Plaintiff's portrayal is frivolous. Therefore, to avoid misleading the jury, further casting undue prejudice on Unocal, and unduly distracting, the court should preclude Plaintiffs from any reference, comment, or portrayal of Unocal's surveillance as illegal or otherwise inappropriate.

### III. Plaintiffs should be precluded alleging or inferring that Unocal is illegal, unethical, or otherwise inappropriate for usage of Sarah Grove's publicly-accessible online website/journal.

Plaintiffs have alleged that Unocal has unfairly accessed Sarah Grove's on-line journal, acting in an inappropriate manner. Unocal seeks to have this court preclude any introduction of Unocal's usage of Sarah Grove's publicly-accessible online website/journal as being illegal or inappropriate.

### 1. Sarah Grove's On-line Journal Was Public and Contains Information Relevant to the Claims Made in This Case.

Larry Grove's daughter, Sarah Grove, is a plaintiff in this case. She has brought her own consortium claim, alleging in the complaint that she should be awarded in excess of $250,000.00 in damages.

During discovery, Unocal found that Sarah Grove had a "Myspace" page, which was public and published on the Web for anyone to view. Sarah did not place privacy restrictions upon her Myspace page, which means that anyone in the world, literally, with a computer and internet access was able to view her

documents.  Unocal printed and disclosed only those pages of Sarah's journal which were relevant, not the entire journal.  No subpoena was necessary to obtain the documents. Inside her public Myspace pages, Sarah published a link to her LiveJournal, inviting any visitor to her Myspace page to also read her on-line journal. Unocal did not invade Sarah's privacy. It merely printed and disclosed publicly available documents that Sarah voluntarily placed on the web for anyone to view.

Information about Sarah's relationship with her father is relevant to her consortium claim.  *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991 (Alaska 1987).  Further, information about other stresses in her life that may have caused or contributed to the very injury she alleges is also relevant.  Sarah's own statements are probative of issues that have been alleged in this case, such as how much she spent on her education and living expenses and how much Larry Grove contributed to her living expenses and tuition[5].  Both of those claims have been included in Sarah Grove's consortium claim and she discusses both in her on-line journal.

Both the Myspace pages and LiveJournal contain relevant information about Larry Grove's activities, which Larry Grove did not disclose to Unocal, including at least one photo of him halibut fishing.  Several of the LiveJournal pages were used in the discovery deposition of Larry Grove and are probative of his typical activities and abilities as well.

---

[5] For example, it is clear from her journal that Sarah Grove overstated her expenses and failed to disclose the existence of a roommate at college with whom she shared expenses.  See Response to Interrogatory #2 to Second Set of Discovery to Sarah Grove, dated February 6, 2006.

### 2. Plaintiffs inference or allegation of illegality or inappropriateness for using Sarah Grove's public online journal should be precluded.

The Plaintiffs' unhappiness with Unocal's discovery of public documents does not bar the use of those records during trial. Plaintiff has already alleged that any use of the Myspace page or live journal would be "to embarrass Sarah Grove and her family." *See* Plaintiffs' Motion in Limine at 48. However, Plaintiffs should be precluded from inferring that Unocal acted illegally or inappropriately for using information Sarah Grove posted publicly on the Internet. Not only would Plaintiff's allegation or presentment of Unocal in this light be untrue, but it would mislead the jury to believe that Unocal had done something morally wrong or inappropriate. This is contrary to Federal Rule of Evidence 403 which states that relevant evidence should not be admitted if the probative value is outweighed by the danger of misleading the jury. Plaintiffs' portrayal of Unocal as unethical or otherwise inappropriate for using her online journal triggers the Federal Rule of Evidence 403 balancing test. There is simply no value to alleging Unocal acted wrongfully here. Therefore, the court should preclude Plaintiffs' from making a reference, comment, or presenting Unocal as inappropriate for use of Sarah Grove's online journal/Myspace page.

### IV. Plaintiff should be precluded from making any reference, comment or any other evidentiary introduction of alleged spoliation by Unocal.

Plaintiffs have alleged that Unocal has engaged in spoliation by wrongfully destroying critical evidence to the case. This allegation is false. For this reason,

1
2

Unocal moves for this court to preclude Plaintiffs from introducing evidence of accused spoliation by Unocal.

3
4
5
6

Plaintiffs have asked that the court sanction Unocal by imposing negligence upon it for Plaintiffs' accusation that Unocal has engaged in spoliation. Plaintiffs' request illustrates their incorrect belief that Unocal has engaged in spoliation. Unocal disputes that any spoliation occurred.

7
8
9
10
11
12
13
14
15
16

To prove negligent spoliation, *Sweet v. Sisters of Providence*, 895 P.2d 484 (Alaska 1995) requires: a) "a plaintiff must first establish to the satisfaction of the court that the absence of [the missing evidence] hinders his ability to establish a prima facie case" and b) the essential evidence is missing through the negligence of the defendant.  Then, a burden shifting remedy is applied. The relief for a plaintiff is provided in the form of a rebuttable presumption, imposed by shifting the burden of the negligence cause of action to the defendant to prove the non-existence of the fact presumed.  This is done via a jury instruction.

17
18

### 1.    No Spoliation Occurred: Plaintiffs Experts State That the Cause of the Accident Was Failure of the Fasteners; Plaintiffs Had Access to the Fasteners.

19
20
21
22
23
24

Plaintiffs do not state how the absence of the platform has hindered them in establishing a prima facie case on their claim of negligence.  The Plaintiffs' expert's opinion is that the fasteners failed and caused the platform to collapse.   The experts agree Grove provided the fasteners for them to examine.[6]  He also had photographs of the platform to look at.    Plaintiffs' expert states that "poor

25
26

---

[6] These nuts and bolts were thoroughly examined by electron microscopy at a first inspection.

preservation of evidence has limited my ability to make a more detailed description of the defects."  See Motion at 19. The expert does not state what part(s) of the platform he needed, or what detail he needed in order to render his opinion. He is otherwise not specific. In fact, Plaintiffs' expert does not state that he is unable to render an opinion—just that he would have liked to have more evidence.

There was no actual spoliation of evidence.   No essential evidence is missing.  Plaintiffs are not able to establish for the court that the missing evidence hinders their ability to establish a prima facie case (Defendant makes no such assertion).   Plaintiffs have not met their burden of proof as to spoliation of evidence.

### 2.    Taking the Platform Down and Disposing of It Was Not Spoliation.

Taking the platform apart and disposing of it did not constitute spoliation for several reasons.

First, the platform was abated as part of the response to an OSHA citation and fine of Unocal, and Unocal's actions should have immunity as a result.  Unocal was cited for not having a "toe board" on the platform.  Rather than trying to "fix" the problem underlying the citation, Unocal simply removed the platform, an appropriate action in response to an OSHA citation.   See generally, 29 C.F.R. §1903.19, as adopted by 08 AAC 61.142(a). The OSHA supervisor stated:

> Q Going back to the affidavit.  The affidavit states that the platform, which was the subject matter of the inspection, had been dismantled.
> A  Right.
> **Q  Is that an acceptable abatement, to dismantle?**

A  **Absolutely.**  Yeah, yeah.  I mean, **as long as you get rid of whatever your problem is and you don't expose anybody else to it down the road, then it's been abated. . . .**

John Stallone Deposition at 37, attached hereto as Exhibit C (emphasis added).

Removal and disposal of the pieces of the platform was not spoliation but a

reasonable action in response to the OSHA citation.

Second, defendant had no notice that Plaintiffs would file a lawsuit.  Grove

came back to "visit" Unocal and its contract workers' at least one time.   Grove First

Deposition at 128, attached hereto as Exhibit D;  Grove Second Deposition at 114,

attached hereto as Exhibit E. However, he never mentioned, not even to the

maintenance contractors, that he was contemplating a claim or a lawsuit against

Unocal.  There was no demand from a plaintiff's lawyer to Unocal.  There was no

hint while Grove was working on his Workers' Compensation issues that he would

sue Unocal.

At the heart of any spoliation of evidence claim, is the need to establish a

legal or contractual duty to preserve evidence in a civil action. In the absence of a

contract or agreement between the parties to preserve evidence, or a special

relationship recognized by law which would require one of the parties to do so,

there can be no claim for spoliation of evidence without creating a common-law

duty on the part of the defendant to preserve that evidence. *See* cases below.

A New York state case, *Montiero v. R.D. Werner Co., Inc.*, has addressed

this very issue.  754 N.Y.S.2d 328, 301 A.D.2d 636 (2003). Even though the case

is not controlling law in Alaska, it sets out an example of how this issue has been

addressed elsewhere.  In *Montiero*, a municipal employee sued the city for failing

to preserve a scaffold involved in an accident on city property.  *Id.* at 637*.* The New York court found that the city had no duty to preserve the scaffold and that the city was not on notice that the scaffold might be needed for future litigation.  *Id.* The court found that Montiero did not ask the city to preserve the scaffolding nor did he tell the city that he intended to sue the scaffold manufacturer. *Id.*   Most persuasively,  the court found that neither the plaintiff's injury nor the OSHA investigation conducted at the work site put the city on notice of future litigation or a need to preserve the scaffold. *Id.*

The New York case is instructive in determining the issues in this case.  Unocal was not on notice that it should preserve the platform just because Grove was injured.   Grove did not tell anyone at Unocal or even any Unocal contractor that he intended to make a claim or file a lawsuit against Unocal.   Grove did not report his injury to Unocal.   Exhibit D at 127.   Grove did not disclose that he had surreptitiously re-entered the Unocal building using his Unocal security access to pilfer[7] the bolts and take photos.  *Id.*

In *Lewis v. J.C. Penney, Inc.*, an employee hurt herself on a ladder with a bent leg. 12 F. Supp. 2d 1083 (E.D. Cal. 1998) (applying California law). The manager instructed the ladder to be thrown out because it was no longer operational. *Id.* at 1086-1088. The employee sued the employer later for negligent spoliation of the ladder in her attempt to sue the manufacturer. The Court found that the employer's belief that the workers' compensation claim for the injury would

---

[7] It is clear Larry Grove took the bolts knowing they didn't belong to him. Only after a motion to compel did Grove return Unocal's property.

provide for the employee's claim rather than needing to preserve the ladder absent any notice was reasonable. *Id.* In the absence of either a request to preserve the evidence or knowledge of the existence of a third–party suit, the court said, the department store had no duty to take care of the stepladder. *Id.* at 1087. ("Here, J.C. Penney had no statutory duty to retain evidence for an employee's use in a third party lawsuit; nor did it have a general common law duty to preserve evidence without knowledge of a third party suit or a request to preserve evidence; nor did it voluntarily undertake such a duty.").

Several other cases that have dealt with spoliation of evidence have found no duty to preserve evidence where there was no notice of a lawsuit and where there was no request to preserve the evidence. *See Dunham v. Condor Ins. Co.,* 57 Cal. App. 4th 24, 66 Cal. Rptr. 2d 747 (1st Dist. 1997); *Chidichimo v. University of Chicago Press*, 681 N.E.2d 107 (1st Dist. 1997) (absent workers' compensation statutory requirement, not foreseeable that records would need to be preserved, thus no duty); *Murphy v. Target Products*, 580 N.E.2d 687 (Ind. Ct. App. 3d Dist. 1991), *reh'g denied*, (Jan. 16, 1992) *and transfer denied*, (May 20, 1992) (in the absence of an independent tort, a contract, agreement, subpoena, or special relationship, employer owed no duty to preserve evidence); *McCool v. Beauregard Memorial Hosp.*, 814 So. 2d 116 (La. Ct. App. 3d Cir. 2002) (hospital under no duty to preserve broken stool from which employee fell); *Panich v. Iron Wood Products Corp.*, 179 Mich. App. 136, 445 N.W.2d 795 (1989) (employer under no duty to preserve electrical box which injured employee, no statutory language in worker's compensation statute required preservation of evidence); *Wilson v. Beloit Corp.*,

921 F.2d 765 (8th Cir. 1990) (applying Arkansas law) (employer under no duty to preserve parts of machine that injured him because company had not assumed a duty to keep the parts and had not agreed orally or by writing).

Plaintiffs argue that the duty to preserve evidence is heightened, if the actual tortfeasor is also the spoliator of the evidence. *See* Plaintiff's Response to Defendant's Opposition of Plaintiff's Motion for Partial Summary Judgment, page 10. However, Plaintiff's cite no case law for this proposition. The case law reference above is to the contrary.

None of the cases mentioned earlier distinguish between the duty to preserve evidence requirements by a party who is not the direct tortfeasor and the duty to preserve evidence requirements if the party *is* the direct tortfeasor. *See Chidichimo v. University of Chicago Press*, 681 N.E.2d 107 (1st Dist. 1997) (absent workers' compensation statutory requirement, not foreseeable that records would need to be preserved, thus no duty for an employer who destroyed its own records) (employer was tortfeasor); *McCool v. Beauregard Memorial Hosp.*, 814 So. 2d 116 (La. Ct. App. 3d Cir. 2002) (hospital under no duty to preserve broken stool from which employee fell) (hospital was being sued as tortfeasor). The duty and notice requirements under spoliation standards don't change depending on whether the party was the original alleged tortfeasor in the action, because many states recognized alleged spoliation as an independent tort, including Alaska. *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 353 (Ind. 2005); *Nichols v. State Farm Fire & Cas. Co.*, 6 P.3d 300 (Alaska 2000).

Under the circumstances at bar, the OSHA investigation did not place Unocal on notice of a potential lawsuit. It was conducted for a completely different purpose than private litigation. Additionally, the citation by OSHA was for no "toe board", not for any failure to construct or maintain the platform properly, as is alleged by plaintiffs. The OSHA investigation was not a herald of future litigation.

Unocal was required by law to comply with OSHA regulation, which required abatement of the problem, including the option of eliminating the platform. *See supra* Exhibit C at 37. Like other cases which held that there was no spoliation without a notice, Unocal was simply abating an OSHA concern, discarding the platform which had resulted in a fine.

Finally, there was no duty to preserve the evidence by agreement, subpoena, or special relationship/duty between the Plaintiffs and Unocal. Therefore there was no duty on Unocal's part to preserve the platform.

### 3. Unocal did not engage in spoliation in regards to alleged safety records of the Unocal building.

Ken Burns recently affirmed that he had conducted a safety inspection of the building back in the late 1990's. Plaintiffs argue that safety reports "should" exist or a safety investigation "should" have been performed. Plaintiffs are fixated on finding evidence that they allege has been "withheld." However, there is no evidence to support Plaintiffs' speculation that safety reports used to exist. Again, Plaintiff cites no law in support of their proposition that Unocal had a duty to conduct safety inspections of the building and that its failure to do so constitutes spoliation.

Plaintiffs continue to attack Unocal, accusing Unocal of spoliation. Because Plaintiffs have failed to establish spoliation, their claim of spoliation is unfounded and any reference, comment, or accusation should be precluded from being mentioned to the jury. Any mischaracterization of Unocal through Plaintiffs' accusation will mislead the jury and unduly prejudice Unocal. Federal Rule of Evidence 403. Therefore, the court should preclude any mention from Plaintiffs of Unocal's alleged spoliation.

## V.   <u>Plaintiff should be precluded from making any reference, comment or introduction of evidence of Unocal's alleged failure to comply with discovery.</u>

### 1.   Plaintiffs' belief that documents "must" exist is irrational.

#### a.   Platform documents:

Plaintiffs assert that there "must be" documents regarding the construction of the platform inside Unocal.  They use unsubstantiated hearsay to argue their position.  From alleged conversations with unidentified people, Plaintiffs believe that Unocal must have known about the construction, and authorized the construction.  However, despite thorough investigation, Unocal has been unable to determine when the platform was built, who built it, and when.[8]  In fact, it is possible that Mr. Grove could have built it for Siemens when he began working in the building in 1999.  The only statements made to date that indicates that the platform has been in place for years, is a hearsay statement in the recently

---

[8] If Unocal could have identified the person or entity that designed and built the platform it would have, since Unocal would have filed a third party action against them. *Benner v. Wichman*, 874 P.2d 949 (Alaska 1994).

disclosed OSHA files. It was presumably made by Charles Arnett, a Peak employee who worked as a Unocal contractor, and one by Grove's friend, Robert Sprinkle.

So far, no one has uncovered the identity of the person or persons who constructed the platform. The Unocal building was erected in 1968. Thereafter, it appears that the HVAC work for the building was always contracted to an outside firm. Exhibit D at 74; Sprinkle deposition at 10, attached hereto as Exhibit F. Unocal employees would have had no reason to want or need the platform constructed.

The platform was not fancy or elaborate. It appears it could have been a functional attachment added for the convenience of the person changing the filters, which occurred 2-4 times per year. There is no other known use for the platform. There is no evidence that Unocal was consulted when the platform was installed in the filter room. Therefore, it is not surprising that a document search for construction records pertaining to the platform has not resulted in discovery of the documents that Plaintiffs demand.

Plaintiffs charge that Unocal has failed to thoroughly search for documents relating to the work platform. This allegation is, again not supported by evidence. Plaintiffs base their allegation merely upon their belief of what documents should have been produced. Plaintiffs' unfulfilled desire for a document to prove their theory does not equate to discovery violations by Unocal.

Plaintiffs have asked several witnesses whether a platform built inside the Unocal building required authorization from Unocal. Each witness has said yes.

Plaintiffs use this response as proof that Unocal should have documents regarding the platform. But the Plaintiffs' question is premised upon the unstated assumption that Unocal knew that the platform was going to be built. No one has ever found any evidence to prove that Unocal knew the platform was built or what Grove used it for. The contention that Unocal knew and approved of the platform's construction is only speculation.

### b.   Meeting Minutes:

Plaintiffs believe that there were "minutes" from meetings that have not been turned over to Plaintiffs. This assumption is premised upon Archie Cook's deposition testimony, where Archie Cook speculated that there were management meetings. He does not state that minutes were taken. Further, Cook states that he retired and turned his job duties over to Roxanne Sinz, so how he knows that these meetings took place at all is not established. In short, Cook lacked foundation for his speculation and it should not be relied upon.

Upon diligent search, Unocal found one meeting during which the platform was discussed, and Unocal produced a document in redacted form. Plaintiffs attached the document and response to the request for production to their motion. As shown, the document is entitled "Staff Meeting, March 3, 2003, Notes and Action Items." The only relevant and non-proprietary item on the agenda was #21, which discussed the OSHA building inspection. The entirety of that entry was disclosed.

### c.    Safety Reports:

Searches for the specific records requested by Plaintiffs have been made.[9] Those records that exist have been produced.  But, as mentioned before, documents like the Ken Burns' safety reports have not been located.  Plaintiffs took Ken Burns' deposition and he agreed that he did not have a copy of his prior safety inspection reports and that no copy could be located.  Burns deposition at 70, attached hereto as Exhibit G.  There was no reason to disbelieve Mr. Burns.  There is no reason to believe that Mr. Burns didn't look for the reports. Plaintiffs deposed Mr. Burns already, and had the ability to test his memory for themselves.

### d.    Interrogatories:

Prior to answering the Ninth set of Discovery Requests, Unocal gave Plaintiff notice via letter that they would only answer the 25 interrogatories required and allowed under Fed. R. Civ. P. 33.  When Plaintiffs protested, Unocal set out its calculation of 25 interrogatories in detail.  Letter dated March 8, 2006, attached hereto as Exhibit H.

Fed. R. Civ. P. 33 states that the 25 interrogatories include "parts and subparts".  Plaintiffs have in some cases identified interrogatory subparts themselves.  However, in at least one interrogatory, Plaintiffs simply set forth a run on sentence asking for broad categories of information.  Interrogatory #1, found in Plaintiffs' Seventh Set of Discovery Requests asks:

> INTERROGATORY NO. 1:  Please identify each and every Unocal
> employee and/or any other persons, who went into the mechanical

---

[9] Plaintiffs failed to notice up or take a 30(b)(6) deposition of Unocal's records custodian.

room at the Unocal building where the accident, the subject of this litigation, occurred from the time of the accident on September 9, 2002 until the scaffolding/work platform was removed, and as to each Unocal employee or person, provide name, address, job position and responsibility at time of entry into the room, why they went into the room, what they did in the room, whether they recorded or documented the visit, if any photographs or videotaping was done, what they observed in the room in regard to the scaffolding/work platform, bolts or machine screws, nuts, washers, planks, vertical or horizontal supports, and whether they moved anything, and if so, what was moved and where was it moved to?

Unocal objected to the Interrogatory as a "multi-part question".   The Interrogatory should have been drafted to include the subparts of the question, so that it read:

1. Please identify each and every Unocal employee and/or any other persons, who went into the mechanical room at the Unocal building where the accident, the subject of this litigation, occurred from the time of the accident on September 9, 2002 until the scaffolding/work platform was removed, and as to each Unocal employee or person, provide name, address, job position and responsibility at time of entry into the room;
 a. Why they went into the room;
 b. What they did in the room;
 c. Whether they recorded or documented the visit, if any photographs or videotaping was done;
 d. What they observed in the room in regard to the scaffolding/work platform, bolts or machine screws, nuts, washers, planks, vertical or horizontal supports; and
 e. Whether they moved anything, and if so, what was moved and where was it moved to.

The interrogatory as properly drafted contained a primary question about the person or persons who may have entered the room and their identity, plus five subparts not necessary to answer the primary question.  Plaintiffs added multiple discrete questions in one long run-on sentence.

At least one other court has ruled on a similar issue. *Trevino v. ACB American, Inc.*, 232 F.R.D. 612 (N.D. Cal. 2006) held that an interrogatory, which was much less onerous than those composed by the Plaintiffs in this case, was actually at least three separate interrogatories. That interrogatory stated: "Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion and the expert's qualifications." *Id.* at 615. The *Trevino* court broke down a much smaller question, but one which also asked discrete subjects.

The court in this case should read Plaintiffs' interrogatory #1 as containing discrete subparts. The separate parts of the interrogatory are not logically or factually subsumed within the first and primary part of the questions, which asked for the identity and other factual information regarding anyone who had entered the room. See e.g. *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D. Cal. 1998), (Although there is no bright-line test as to whether a subpart should be counted as an interrogatory, Rule 33(a) appears to require examining whether the subparts are " '... logically or factually subsumed within and necessarily related to the primary question.' ") quoting, *Ginn v. Gemini Inc.*, 137 F.R.D. 320, 322 (D. Nev. 1991).

Unocal counted the subparts of this question when it counted up the 25 interrogatories. The run-on portion of the sentence does contain subparts that are

not related to the primary question, regardless of whether Plaintiffs designated them so.  Unocal should not be required to answer more than 25 Interrogatories.

Plaintiffs asked in the alternative for permission to pose more Interrogatories.  No additional Interrogatories should be imposed.  Leave to serve additional interrogatories should not be granted where: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See* Fed. R. Civ. P. 26(b)(2).  Plaintiffs have issued **fifteen** sets of discovery **and** Unocal has voluntarily provided **twenty** supplements to initial disclosures.  Most of Plaintiffs' requests are unreasonably duplicative simply because Plaintiffs do not like the responses Unocal provide, not because they are new questions.  Plaintiffs have not provided the court with a list of questions that are new or even that are required.

Plaintiffs have had ample opportunity to obtain discovery of the information sought via depositions or document production.  They have not demonstrated a need for more interrogatories, and indeed have not even listed the questions they claim they need to ask.

## CONCLUSION

For all the reasons set forth above, Defendant's motion in limine should be granted.

DATED at Anchorage, Alaska, this ____29th____ day of June 2007.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal


s/ John B. Thorsness
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9273
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar No. 8211154


Certificate of Service

I hereby certify that on June 29, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

s/ John b. Thorsness