Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA )
GROVE, SARAH GROVE, and )
MICHAEL GROVE (DOB 1/21/88) )
by and through his father )
LAWRENCE H. GROVE, )
                                          )
       Plaintiffs, )
                                          )
  vs. )
                                          )
UNOCAL CORPORATION, )
                                          )
       Defendant. )
_____)

Case No. 3:04-cv-0096-TMB

COPY

---

VIDEOTAPED DEPOSITION OF MICHAEL GEITZ, M.D.

---

Pages 1 - 143
Tuesday, October 10, 2006
9:12 A.M.

Taken by Counsel for Defendant
at
C Tower, Regional Hospital
2741 DeBarr Road, Suite 415-C
Anchorage, Alaska

### Page 12

1  Q  What is posterior tibial tendonitis?
2  A  It's inflammation of the posterior tibial
3  tendon, which is a major tendon that supports your
4  medial arch.
5  Q  And your recommendation, when you said you
6  agreed with his previous treatment and restrictions,
7  what did that consist of?
8  A  He was in a cast, and then he subsequently
9  had physical therapy and progressive weight bearing.
10 Q  Did he tell you that he had gone to physical
11 therapy, or did you see physical therapy notes?
12 A  There were physical therapy notes.
13 Q  And you actually saw him before you made this
14 recommendation; is that right?
15 A  Yes.
16 Q  He was physically in your office?
17 A  Yes.
18 Q  Okay. And did you ask him about prior
19 injuries?
20 A  If I did, I did not note it.
21 Q  So you have no independent recollection of
22 him telling you of a prior injury to his ankle in
23 2000?
24 A  No. If he had told me, I would have put that
25 in there.

### Page 13

1  Q  Would that have been important to you?
2  A  Yes.
3  Q  And if he had films from his prior right
4  ankle injury, would you have wanted to look at those?
5  A  Yes.
6  Q  Do you recall if you ever saw any old films
7  from the year 2000?
8  A  I don't believe I did.
9  Q  And you would have wanted to see those films,
10 right?
11 A  Yes.
12 Q  Okay. So when is the next time that you saw
13 Mr. Grove?
14 A  I saw him three months later, on 3/19/03.
15 Q  And why did you see him at that time?
16 A  He was again referred by Dr. Laufer.
17 Q  And at this time your notes state that he is
18 no longer seeing Dr. Nolan; is that correct?
19 A  That's what I was told, yes.
20 Q  Did you then consider him to be your patient?
21 A  Yes.
22 Q  And you stated that he is not getting any
23 better. Why would you make that notation?
24 A  He told me.
25 Q  Did you see anything in his ankle that would

### Page 14

1  lead you to conclude he was not getting any better?
2  A  Yes.
3  Q  What was that?
4  A  He was limping and he had a large effusion of
5  his ankle joint. He also had tenderness over his
6  posterior tibial tendon, he had pain on doing a heel
7  rise, and he was tender over his anterior lateral
8  ligaments.
9  Q  Okay. Did you say a large effusion?
10 A  Yes.
11 Q  And what is that?
12 A  Swelling in the joint.
13 Q  And this is something that you could see?
14 A  Yes.
15 Q  And you looked at new x-rays; is that
16 correct?
17 A  Yes.
18 Q  Did you order the x-rays?
19 A  I believe I did, yes. I'll have to check
20 those, the x-ray report.
21    Yes, I did.
22 Q  And who -- did somebody read the x-rays for
23 you, or do you do that yourself?
24 A  I read them and I review the radiologist's
25 report.

### Page 15

1  Q  Who was the radiologist on that one?
2  A  Benis Babusis.
3  Q  And do you recall if you agreed with the
4  radiologist's report?
5  A  Yes.
6  Q  And what examination -- other than you said
7  he had tenderness, so you must have been touching his
8  ankle, what else did you do in your examination that
9  day?
10 A  I checked his heel rise and I checked the
11 angulation of his ankle.
12 Q  And when you say angulation, what do you mean
13 by that?
14 A  Whether the ankle is rolling in or out, both
15 when he's standing and when he lifts up onto his toes.
16 Q  What did you find?
17 A  With his heel rise, he can pull his heel into
18 varus, which is inversion, and the hind foot remains
19 flexible.
20 Q  What did that mean to you?
21 A  It means he has a Stage I chronic posterior
22 tibial tendon rupture.
23 Q  And that's your impression, that No. 1 --
24 A  Yes.
25 Q  -- on, I have document 302516, but it's

Page 140

1  you saw a previous x-ray early in the course of
2  treatment after his injury, which was 3 millimeters,
3  and then you saw this x-ray of 2.5, your diagnosis was
4  posttraumatic arthritis; is that correct?
5     A  Yes.
6     Q  What's your level of certainty on that?
7        MS. JOHNSON:  Objection.  Foundation and
8  form.
9  BY MR. WEIDNER:
10    Q  Are you confident in that opinion?
11    **A  I think it's posttraumatic arthritis.  I**
12 **cannot absolutely date the onset of the trauma.**
13    Q  What do you see the significance of the fact
14 that early in the course of treatment there was
15 3 millimeters and then it went to 2.5?  What's the
16 medical implications of that?
17    **A  There's been wear and tear on the joint.**
18       MR. WEIDNER:  All right.  Nothing further.
19       VIDEOGRAPHER:  Are we concluded, Counsel?
20 Off record --
21       MR. WEIDNER:  Right.
22       VIDEOGRAPHER:  -- at 12:17.
23       (Off the record.)
24       (Back on record - stenographically recorded.)
25       MR. WEIDNER:  The record should reflect that

Page 141

1  we're back on the record of Dr. Geitz's deposition.
2        We had previously agreed - we still are
3  agreeing - that the court reporter can take his
4  original file, which has been marked as an exhibit,
5  and copy it and substitute a copy for the original.
6        The doctor has expressed a concern that the
7  appropriate procedures are followed under the HIPAA
8  Act, so I'm going to address a letter to the doctor,
9  to counsel for the defendants, and the court reporter,
10 enclosing a copy of the appropriate release so he can
11 then allow the court reporter to take the file out of
12 the office and copy it.
13       MS. JOHNSON:  Thank you.
14       (Proceedings concluded at 12:22 p.m.)
15       (Signature reserved.)
16       (Exhibit No. 1 marked.)
17              -o0o-