John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska  99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | Case  3:04-cv-0096-TMB |

**OPPOSITION TO RENEWED MOTION FOR PROTECTIVE ORDER**

Defendant Unocal Corporation opposes, again, the motion for protective order. Plaintiffs dislike discovery into their financial records, and discovery into Larry Grove's travel and hunting activities.  Plaintiffs ask that the court prevent Unocal from conducting discovery into facts that the Plaintiffs have put into issue. The discovery has been made relevant and necessary based upon Plaintiffs' continued refusal to fully divulge the answers to the questions asked both in written discovery and in deposition.

Further, the court ordered Plaintiffs to provide Unocal with documents from the six companies for which Larry Grove serves as President. Plaintiffs have refused to cooperate, despite the court's order. Therefore, Unocal has made the attempt to "help itself" without court intervention, despite Plaintiffs' disregard for the court's order.

## I. **Factual Background**.

Plaintiffs' complaint names Larry Grove, Cynthia Grove, Sarah Grove, and Michael Grove as plaintiffs. See Complaint. Each has a separate claim for damages. Larry Grove's claim states that Unocal was negligent and its alleged negligence caused him to fall and break his ankle. He then asks for considerable monetary damages, as do his family members.

Larry Grove has failed and refused to work since his injury, despite his clear legal requirement to mitigate his damages. Plaintiffs explain his failure and refusal to do so with the unsupported statement that he is "disabled." Larry Grove's activities belie that assertion. Grove has hunted and traveled extensively since his injury. His recreational activity is inconsistent with his claims of disability. Subpoenas are related to these issues.

Plaintiffs failed to disclose that Larry Grove is the president of six adult-oriented businesses venued in Pennsylvania. Unocal discovered this fact only recently. Financial data obtained via subpoena will aid Unocal in determining whether Larry Grove has undisclosed income from the six businesses.

## II. Unocal's Discovery Has Not Been Unlimited or Abusive.

Plaintiffs ask that the court order Unocal to cease its efforts to investigate the Plaintiffs' damages claims and to cease discovery of Larry Grove's claims of disability. Unocal is entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26. The information requested need only be reasonably calculated to lead to the discovery of admissible evidence.

As set forth below, none of the measures taken by Unocal has been oppressive or burdensome. The efforts have been neither unlimited nor abusive. Unocal has simply pursued discovery via subpoena. The court should deny the Plaintiffs' motion.

## III. The Recent Subpoenas Were Follow-up Requests for Relevant Information and/or Likely To Lead to the Discovery of Admissible Evidence.

Larry Grove protests the subpoenas issued by Unocal for further discovery. The subpoenas were issued after the last deposition of Larry Grove and followed up on several topics that he testified to. Unocal held off with most of its intended subpoenas, pursuant to court order, until after the mediation. When the case did not settle, Unocal sent out its subpoenas.

Unocal has not pursued discovery simply to harass the Plaintiffs. Such a suggestion has no basis in fact. As shown below, the subpoenas have a relevant and reasonable purpose. The subpoenas are intended to obtain evidence related to Plaintiffs'' claims of consortium, disability, and damages.

Further, Unocal has not used derogatory references while engaged in discovery. Plaintiffs apparently refer to the use of the term "malingering" used in Unocal's Opposition to Plaintiff's Motion in Limine. The term is not perjorative. "Malingering" is actually a medical term of art used in the <u>Diagnostic and Statistical Manual of Mental Disorders</u> 4th ed., and is defined as: "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as . . . avoiding work, [or ] obtaining financial compensation . . . ." <u>Diagnostic and Statistical Manual of Mental Disorders</u> 4th ed., at 683, attached hereto as Exhibit A.

Grove's behavior in this case fits the definition of malingering. Grove lawsuit demands that all his wages and benefits be paid by Unocal since his injury, despite his failure to seek a job. Inasmuch as Grove has failed to even submit a resume since the time of his injury, yet has traveled frequently and extensively for recreational activities, Grove has demonstrated strong external incentives to malinger, just as the <u>Diagnostic and Statistical Manual of Mental Disorders</u> defines. Add the evidence that Grove has increased his recreational pursuits since his injury even though he claims he is "disabled," and any evidence related to his activities is highly relevant and probative of the claims he has raised.

**A.  Subpoenas for Travel-Related Information Have Revealed Numerous Undisclosed Trips.**

Plaintiffs protest the subpoenas for airline and other travel related documents. Grove's injury occurred September 9, 2002. Since the incident, Grove has not applied for a job, has not submitted a resume, and has not even tried to get
OPPOSITION TO RENEWED MOTION FOR PROTECTIVE ORDER
*Grove v. Unocal,* Case  3:04-cv-0096-TMB                                                                               Page 4 of 11

a job interview. Grove deposition III, attached hereto as Exhibit B, at 315-316. Despite his failure to mitigate his damages, Grove has pursued <u>more</u> recreational activities than before his injury.

Larry Grove was been asked about his travel in discovery:

> INTERROGATORY 8: Please list all vacations you have taken since 2002 or any travel outside the State of Alaska for any reasons, include the date, destination, length of stay, hotel or other accommodations, travel accommodations and any companions.
>
> RESPONSE: See Response to Interrogatory 1.[1] I left the State for 4 funerals; mother, aunt, and 2 uncles. I visited my father in the hospital. I do not keep travel journals, but can get exact funeral dates if they are necessary.

Response to Third Discovery Requests to Plaintiff Lawrence Grove, dated December 9, 2005, attached hereto as Exhibit C. Unocal now knows that there were many more than 5 trips Grove knew he had made, but which he did not disclose in his response.

The documents that Unocal has received via subpoena to date confirm that Plaintiffs have failed to disclose numerous airlines trips made by Larry Grove. Plaintiffs have disclosed a very limited amount of travel activity, and the failure to disclose the trips is itself material to Unocal's defense.

Despite Unocal's request that Larry Grove disclose "any travel," he has repeatedly failed to do so and avoids directly answering questions by virtue of craftily worded answers. For example, after Unocal discovered Larry Grove's association with six adult-oriented businesses, Unocal asked whether Larry Grove had attended the

---

[1] The response to interrogator referred to few of Larry Grove's many hunts.

AVN convention (an annual adult-oriented business convention).  Plaintiffs first addressed the questions via letter from Michael Cohn dated March 28, 2007.  Exhibit D.  In the letter, at p. 3, ¶13, Plaintiffs stated, "Mr. Grove has not attended any seminars, conferences, conventions or business meetings related to any of the six companies."

It was not until Plaintiffs were confronted with specific facts that they finally admitted that Larry Grove had in fact attended the AVN convention.  Grove has recently, but reluctantly, admitted:

> REQUEST FOR ADMISSION  11:  Please admit that since your injury in 2002, you attend or have attended conventions such as the AVN or Adult Entertainment Expo.
> RESPONSE: I have traveled to Las Vegas with my wife and met with my friend Mr. Philip Krasner.  While there, we attended the AVN convention as Mr. Krasner's guests.

Response to Request for Admission 11, Seventh Discovery Requests, dated April 9, 2007, attached hereto as Exhibit E.

Despite that admission, Larry Grove still side-stepped giving an answer to the direct question or providing any details of his trip by saying:

> INTERROGATORY  13:  Please describe with specificity all travel between 2002 to the present where you attended any convention or seminar related to the business of any of the six companies identified.
> ANSWER: I did not attend any conventions for any business purposes related to any of the six companies.

*Id.*  Grove qualifies his denial to the above Interrogatory with the phrase "for any business purpose."  Grove admitted that while in Vegas, he met with Philip Krasner, the man he claims is the "true owner" of the six companies and that he attended the AVN convention.  Regardless, he craftily refuses to acknowledge that

the convention is related to the adult-oriented businesses for which he is President. This hair splitting is the reason that Unocal has had to expend effort to discover the real facts. Because of Plaintiffs' refusal to directly answer the question, Unocal must search elsewhere for proof of the dates that Grove has attended the convention and how many times he has attended. Therefore, evidence of airlines flights have become more important than before. It is clear, however, that Grove has taken more than the 5 trips he originally disclosed.

Larry Grove's extensive recreational travel is not activity consistent with his claims of disability and goes directly to the heart of his failure to mitigate his damages. The subpoenas issued are directly caused by Plaintiffs failure to properly disclose the information requested. Unocal has been forced to expend effort to prove that which Plaintiffs should have voluntarily disclosed. The subpoenas are not meant to "harass"; instead, they are meant to aid Unocal in its quest for the truth. The motion should be denied.

**B. Hotel and Gambling Records Are Inconsistent with Plaintiffs' Testimony of Financial Worries.**

Plaintiffs complain about the subpoenas for the Grove's hotel and gambling records. The records are directly related to his damages claim as well as his wife's consortium claim.

Larry Grove testified that he had gone to the Safari Club International hunting conventions in Reno, Nevada in 2005 and 2006 and he intended to go in 2007. Larry Grove stated that he won a significant amount of money gambling while he was in Reno and was therefore "comp'd" his room by Circus–Circus.

Ex. B, at 164-166. When the Circus–Circus records were received, they confirmed the dated Larry Grove stayed there in 2005-2007, but also revealed that Larry Grove had gone to the same convention and stayed in the same hotel in 2003 and 2004 as well, which he did not disclose. (See above response to Interrogatory 8 asking for all trips.) The records from the hotel show that Larry Grove gambled, won, and lost a <u>significant</u> amount of money during these trips. Exhibit F, attached hereto.

Gambling is of particular interest in relation to Mrs. Grove's consortium claim, because during her deposition, she alleged great concern about money in November 2004. Cynthia Grove deposition at 33, 41-44, attached hereto as Exhibit G. However, during that same period of time, the hotel gambling records show that Larry Grove staked a large amount of money gambling, an action inconsistent with someone whose spouse is highly concerned about money to pay bills. The discovery of the Circus–Circus hotel and gambling records is relevant to the defense of the claims by both Larry Grove and Cynthia Grove.

The hotel and gambling records are just one very good example of the follow-up discovery being conducted by Unocal. The other subpoenas are equally valid and relevant to prove or disprove a fact alleged by the Groves. The subpoenas are not for purposes of harassment, but are legitimate tools used to pursue relevant discovery. The motion should be denied.

### C. Financial Records Are Relevant and Necessary.

After Unocal's discovery that Larry Grove is the president of six companies whose primary business is adult entertainment,[2] Unocal began investigating whether Larry Grove had unreported income from those entities, given their reputation as cash industries. Grove denies that he was paid "corporate officer fees", categorizing the money from the checks as travel reimbursement. He does not, however, disclose what travel he is being reimbursed for. Ex. E, Responses to Request for Admission Nos. 1-6.

Larry Grove was ordered by the court produce the discovery on the six adult-oriented businesses requested by Unocal in its motion to compel. Order dated April 2, 2007, docket number 167. Larry Grove has refused to provide any documents relating to his involvement with the six companies, despite court order to do so. Larry Grove has flatly refused to even describe the types of documents he signs as President, a fact that is within Grove's control. Ex. E, Response to Interrogatory No. 14. Larry Grove has refused to request documents from these six companies, even though as President of the companies, they should be within his custody and control.

Plaintiffs allege that Grove's involvement with the six companies is irrelevant. However, there are several indicia which indicate that Larry Grove may indeed have a cash income that he has neither declared nor disclosed. For

---

[2] Every time Unocal references Larry Grove's involvement with adult-oriented businesses, Plaintiffs claim that Unocal is engaging in "personal attacks." The mere mention of his business association is not a personal attack.

OPPOSITION TO RENEWED MOTION FOR PROTECTIVE ORDER
*Grove v. Unocal,* Case 3:04-cv-0096-TMB                                                                 Page 9 of 11

example, the checks Larry Grove cashed from the six companies bear Larry Grove's signature. Exhibit H, attached hereto. Grove denies that he has access to the money or funds of any of the six companies, but the use of his signature on the company checks would indicate otherwise. Likewise, another indication is that one of the companies may have been sold in 2004, and during that same year, Grove claims, without proof, that a friend "gave" him the expensive hunt for free. The coincidence is uncanny.

In order to ascertain the magnitude of Larry Grove's compensation from the six companies, Unocal has subpoenaed financial records of Larry Grove. These include his bank records, his credit card statements, and his mortgage records including records of several properties purchased after his injury. Unocal has also subpoenaed the six companies' bank records. A forensic analysis may be necessary depending upon what the financial records show.

Plaintiffs do not enjoy the extra scrutiny of their financial records, but the subpoenas would not be necessary if Plaintiffs had either voluntarily disclosed the information or would cooperate as ordered by the court. Since neither has occurred, Unocal has had to expend its resources to investigate the facts.

The financial records are directly relevant to the issues of damages and will also shed further light on Larry Grove's credibility. The motion should be denied.

## IV. Conclusion

For the above-stated reasons, Plaintiffs' renewed motion for protective order should be denied.

DATED at Anchorage, Alaska, this _____ day of July 2007.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal


s/ Linda J. Johnson
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9631
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar  8911070

### Certificate of Service

I hereby certify that on July 6, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

s/ Linda J. Johnson