LAW OFFICES
# PHILLIP PAUL WEIDNER AND ASSOCIATES
A PROFESSIONAL CORPORATION
330 L STREET, SUITE 200
ANCHORAGE, ALASKA 99501

E-Mail:
phillipweidner@weidner-justice.com

907/276-1200
FAX 907/278-6571

March 28, 2007

Linda Johnson
Clapp, Peterson, Van Flein,
  Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454

*Via Facsimile to 272-9586
and U.S. Mail*

RECEIVED
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
Date Rec'd/Initials: 3/29/07
6200-1
Distribution: PV

Re: <u>Grove v. Unocal</u>; Case No. A04-0096 CV (JKS)

Dear Ms. Johnson:

We have just received your Reply to the Opposition to Motion to Compel Production. I find it very interesting that you are threatening to pull the mediation unless you get answers to the questions that you asked in your Reply to Opposition to Motion to Compel Production. I also find it interesting insofar as you have been made aware of, and already know, that Mr. Grove is out of town, and will not be back until April 2, 2007, as we previously disclosed that he was traveling from Colorado to Kentucky with his daughter. It is astonishing that in obtaining all these records from Mr. Grove, you have come up with 10 checks for a total of $2,500, and then attempt to mislead the court in regard to some alleged alternative source of income. You also ignore the fact that this alleged income was not in fact income, but reimbursement for travel expenses, and therefore is not income on his income tax returns. The fact that you also indicate, "suspiciously," that the checks were written from different bank accounts is ridiculous, insofar as you know that there are six different companies, and the companies have different bank accounts, and these checks have been written over the course of a couple of years. If you are attempting to find an alternative source of income for Mr. Grove due to obtaining $2,500 in income, that is ludicrous. As you also know, Mr. Grove's family lives in Pennsylvania, and it is convenient to travel back and see his family, and at the same time, sign certain paperwork. Your attempt to smear Mr. Grove by mentioning that these are "adult oriented businesses" and that the true owner has been indicted in the past for money laundering, which you have underlined, (without revealing the date of the indictments for money laundering, or whether or not there was any conviction for same), while citing a 14 year old decision, is also an attempt to prejudice the court. None of this information is of any relevance to Mr. Grove's mediation, and will be inadmissible at trial.

Your Reply is full of half-truths and innuendos, and does not aid in trying to settle this matter at mediation, as it is just another attack on the Grove family. In looking at your Reply, I note that you refer to a case, which was decided in 1993, over 9 years before Mr.

EXHIBIT D
PAGE 1 OF 3

Linda Johnson
March 28, 2007
Page 2

Grove's injuries, and 14 years before the present time. Your claim that "full disclosure of the companies is imperative before Unocal can determine Mr. Grove's true damages" is pure nonsense.

You are quick to indicate in the Reply that there is no reason to believe that an individual from Unocal is untruthful when he said he performed safety inspections inside the building, but did not keep a copy of his own report, and the report cannot be located. That is incredible insofar as whether or not the Safety Inspector, Ken Burns, kept a report, it had been distributed to numerous people at Unocal, and it is hard to believe they all could not keep a report. However, you expect us to accept your representations on your word, and I would request that you accept the representations that we are making, which are truthful. Thus, despite the fact that this information is totally irrelevant to any issue in this case, I am going to give you the answers that I have, and you can do with them as you will, and if you decide you do not want to do mediation, then that is a decision that will have to be made by the defendant. However, in regard to the answers to the specific questions, to the best that Mr. Grove and I have been able to determine, the answers are as follows:

1. Mr. Grove does not know the owners of the six Pennsylvania companies for which Mr. Grove was a figurehead/president. If that cannot satisfy you, then I suggest that you contact Mr. Krasner, or his attorneys, to obtain full information in regard to same. Mr. Grove cannot give you any more information than he knows;

2. Mr. Grove is not involved in the operations of the individual companies, though he knows generally that they are involved in videos, distribution, and real estate, among other matters;

3. Mr. Grove does not have any job duties, as hard as that may be for you to believe, other than what we have previously stated in previous letters;

4. Mr. Grove does not know if the companies are subsidiaries of other companies, and whether or not you believe it, that's the best we can provide to you;

5. Mr. Grove is not even sure of the physical location of each company, but he assumes it is in Allentown, Pennsylvania;

6. In regard to the dates and purpose and activities of Mr. Grove's travel to Pennsylvania "or any other location for business purposes" Mr. Grove has family in Pennsylvania, and he would attempt to travel back to visit his family. He did not go back to operate any business entities;

7. In regard to producing copies of corporate papers that Mr. Grove signs, as you are aware, Mr. Grove lives in Anchorage, Alaska. He does not keep any of

EXHIBIT _D_
PAGE _2_ OF _3_

Linda Johnson
March 28, 2007
Page 3

these records. He is traveling right now. He does not possess these records. These corporate papers have no relevance to anything in this case, and you did not even <u>ask</u> for these records in your March 8, 2007 letter;

8. Despite your continued requests to find out how much Mr. Grove has received from these companies, including what he was paid "pursuant to the sale of one or more of the companies" Mr. Grove has not received a dime. We don't know how we can prove a negative to your satisfaction, but Mr. Grove has not received a dime from any sale of any of these companies;

9. As far as Mr. Grove knows, any indictment of one or more of these companies occurred a long time ago;

10. Mr. Grove has no access to the monies of the companies, and as stated previously, despite the fact that we will have to continue to repeat it to you, and despite your obtaining all of Mr. Grove's bank accounts and financial records, you have only been able to come up with $2,500 in ten separate checks for $250 each. As stated previously, Mr. Grove received these checks in reimbursement of travel expenses when he came from Anchorage to Pennsylvania. Where did the money come from – obviously from the bank account of the companies;

11. Mr. Grove does not hold any "adult oriented business licenses;"

12. In regard to "business associates" or "owners" or "partners" or "employees" of the six companies, Mr. Grove admits that his friend, Phillip Krasner, has visited him in Alaska as much as every other year over the years, and that the visit was as a friend;

13. Mr. Grove has not attended any seminars, conferences, conventions or business meetings related to any of the six companies.

This information is provided in good faith and in an effort to satisfy your curiosity, but not as an admission that this information is either relevant, or material, or even admissible at trial.

Sincerely,

WEIDNER & ASSOCIATES, Inc.
*A Professional Corporation*

*[signature: Michael C.]*

Michael Cohn
Attorney at Law

MC/ngb

EXHIBIT __D__
PAGE __3__ OF __3__