Michael Cohn
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE,<br><br>  Plaintiffs,<br><br>  vs.<br><br>UNOCAL CORPORATION,<br><br>  Defendant. | Case No. 3:04-cv-0096 TMB |

**REPLY IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PROTECTIVE ORDER**

I. <u>INTRODUCTION</u>

The Unocal Opposition is full of speculation, innuendos, half-truths, misrepresentations, and outright fabrication. Since the date that the plaintiffs filed their *Renewed Motion for Protective Order*, defense counsel for Unocal has continued, unabated, and undeterred, in continuing to issue and reissue flurries of subpoenas and notices for records depositions,

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Page 1

cancellations, re-notices, in regard to Larry Grove, which now number over 200 for 2007 alone!  See Exhibits 1 and 2.  In Wright and Miller Federal Practice and Procedure (1994) Section 2036 it is noted that the liberal discovery allowed under Federal Rule of Civil Procedure 26 has potential for abuse, and that the Federal Rules confer broad discretion on the District Court on whether a protective order is appropriate and the degree to which a protective order will be granted.  See also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket No. 2, 197 F.3d 922 (8th Cir. 1999).  In Seattle Times v. Rhinehart, 467 U.S. 20 (1984) the U.S. Supreme Court recognized that there is a significant potential for abuse in the discovery process, and that oppressive discovery, expensive discovery, privacy concerns, all can be abused and result in impeding access to the courts.  See Id. at pg. 34-35 and note 22.  The government has a substantial interest in protecting the integrity of the discovery process.  Id. at note 20.

   In this case, Unocal has sent out hundreds of record notices in 2007, including numerous subpoenas that were improperly issued, contrary to the grave responsibility entrusted to private attorneys in being granted the subpoena power under Federal Rule of Civil Procedure 45.  See Theofel v. Farey Jones, 341 F.3d 978, (9th Cir. 2003).  In Theofel it was stated:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Page 2

>Subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused.

Plaintiffs have filed a separate Motion for Sanctions. However, it is worth reiterating in this Reply that the hundreds of records depositions that have been noticed and re-noticed are oppressive and burdensome and harassing and invade other privacy interests and are in denigration of proper discovery in this case. First, none of these depositions have been coordinated with plaintiffs' counsel, who then is required to calendar and schedule time for these depositions. There are literally hundreds of these depositions that have been scheduled and rescheduled in this case. Furthermore, the extent of the discovery is extraordinary insofar as it constitutes harassment and an actual attack on the Grove family for pursuing this litigation. It is unending and relentless. Not only is it continuous and still ongoing, but as shown in plaintiffs' Motion for Sanctions, Unocal counsel does not feel it is bound by the laws or needs to comply with the requirements for issuing proper subpoenas by noticing all of the depositions for 711 H Street in Anchorage, Alaska regardless of where the entities are located, be it other areas of Alaska, Washington, Colorado, Nevada, California, Missouri, Pennsylvania, Florida, and on and on.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The discovery sought by Unocal is either inadmissible, irrelevant, or has marginal relevance to any of the issues involved in this case. In the introduction to the Opposition, Unocal claims that the plaintiffs have refused to cooperate in providing Unocal with documents regarding six companies in Pennsylvania where Larry Grove served in a figurehead capacity on behalf of the companies. Unocal counsel continues to misrepresent the true state of discovery on this matter. As Unocal counsel well knows, and as documented in two letters from counsel for the companies, Larry Grove does not have access, or permission to obtain any of these records. See Exhibits 3 and 4. He does not have these records in Alaska, and he does not have the right to these records according to the attorney representing the companies. See also Affidavit of Michael Cohn. Thus, for Unocal's counsel to claim that the plaintiffs are disregarding a Court Order is irresponsible, untruthful, and a gross misrepresentation of the facts.

Unocal in its "Factual Background" claims that Larry Grove has failed and refused to work since his injury despite his requirement to mitigate damages. Mr. Grove is now receiving Social Security Disability benefits. Mr. Grove is still receiving worker's compensation disability benefits. If Mr. Grove had been able to go back and work, and had not cooperated with the worker's compensation system, he would have been cut

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

off from benefits. Unocal neglects to mention that Mr. Grove was medically unstable for years, had major ankle surgeries in May 2003 and May 2005, and that Mr. Grove is cooperating with the workers compensation reemployment benefits system, and has been cooperating with a Reemployment Benefits Specialist to come up with a suitable plan which would require in all likelihood years of schooling and retraining, with no guarantee of success. Unocal also fails to mention that his employer said there was no work available for Mr. Grove.

Unocal claims that because Mr. Grove is able to travel in an airplane that he is able to work. It is undisputed, and even Unocal counsel cannot dispute that Mr. Grove's health care providers have stated that Mr. Grove cannot return to the work that he had done his entire life. If he had been able to return to this job, he would not still be receiving workers compensation benefits since 2002. Unocal states, without any support, that Mr. Grove's activities belie any assertion of disability. Plaintiffs are unaware of any expert that the defense has employed that will say that if Mr. Grove has the capacity to fly on an airplane that he can return to the job he was doing, or other jobs. Nor does the fact that Mr. Grove is able to shoot a gun show evidence that Mr. Grove is able to return to work. Nor does Unocal have <u>any</u> evidence that the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

light or sedentary "recreational" pursuits of Mr. Grove prove he cannot return to suitable gainful employment.

Unocal continues to raise the red herring regarding certain compensation that Mr. Grove received from the owner of six businesses located in Pennsylvania. The businesses are owned by a close friend of Mr. Grove. Mr. Grove received a <u>total</u> amount of $2,500 from these businesses. There is no proof of any other additional funds received, and yet, Unocal counsel continues to engage in oppressive, harassing discovery.

As Unocal counsel well knows, and in fact their secret surveillance people can tell them, Mr. Grove lives in Anchorage, Alaska, and these businesses operate in Pennsylvania. Though Unocal counsel claims that Larry Grove returns to Pennsylvania every month, and told plaintiffs' counsel that the proof is in documents that they disclosed recently, in fact, the documents showed that Mr. Grove returned to Pennsylvania in August, 2006 at the time his sister-in-law died, and in November, 2006 around the holidays. His brother lives in Pennsylvania. His father lives in Pennsylvania. His son lives in Pennsylvania. His grandchildren live in Pennsylvania. His father is old and ailing. He also has many other relatives and in-laws living in Pennsylvania. The fact that Mr. Grove has returned to visit his ailing father, to visit his son and grandchildren, to visit his other relatives and his friends, does not metamorphose into

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

another line of work.  This is all harassment, speculation, innuendo, and untrue.

Unocal has subpoenaed personal private records of Larry Grove, including investment records of the family, e-trade records of Larry Grove's wife, credit card records, bank records, obtained my-space diary of the daughter, Sara Grove, sought to obtain juvenile records of minor son Michael Grove, gone and subpoenaed hotel records for any hotel that Larry Grove has stayed in, inside and outside of Alaska, sausage company records, airline records, and other records.  They have literally obtained tens of thousands of pages on Larry Grove.  This has gone far beyond the norm in personal injury cases, and at some point the court should order this conduct to cease.

II   UNOCAL'S DISCOVERY HAS BEEN UNLIMITED AND ABUSIVE

Unocal claims that Unocal has simply pursued discovery via subpoena.  Unocal has set and reset hundreds of record depositions in the first half of 2007 alone.  At some point, there is a limit to the number of depositions, and there is a limit to the discovery.  This discovery is ongoing, even past the discovery cut-off point.  This discovery continues at this date with a flurry of new record depositions and subpoenas on a daily basis.  Unocal's counsel's conduct in this case, including its failure to comply with the requirements of Federal Rule of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Civil Procedure 45, and its continuing tactics are oppressive and should be stopped.

> III. THE SUBPOENAS ARE NOT FOLLOW-UP REQUESTS FOR RELEVENT INFORMATION AND/OR LIKELY TO LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE

Larry Grove has been deposed three times in this case. After the first deposition, Unocal counsel falsely told this court that plaintiffs had not revealed that Larry Grove had possession of sheared bolts when the Unocal work platform collapsed in the Unocal building on September 9, 2002, severely damaging Larry Grove's ankle. Due perhaps to this misrepresentation, the court allowed Unocal counsel to depose Larry Grove a second time as to the custody of the sheared bolts. That deposition went on for hours and of course went beyond the parameters of the Court Order giving permission for Unocal to depose Mr. Grove. As this case has gone on, Unocal sought a third deposition of Mr. Grove allegedly because it was needed for "mediation." The court allowed Unocal counsel three hours to conduct this follow-up deposition, which supposedly was to enable Unocal to get further information in regard to potential settlement in this case. Unocal counsel promptly deposed Mr. Grove for almost nine hours, including over half of that time on a specific hunting trip to Africa and how many animals he shot and how many shots did it take to kill each animal. In fact, to the disappointment of Unocal counsel, most

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

of these animals were shot while Mr. Grove was sitting in a vehicle and therefore does not provide any evidence that Mr. Grove is able to return to work.

Unocal claims that the discovery is not pursued simply to harass the plaintiffs. At this point, having obtained tens of thousands of pages on Larry Grove and his family, the defense should have more than enough information in regard to Larry Grove and his family and further discovery at this point is harassment.

### IV.   UNOCAL REFERRS TO LARRY GROVE IN PEJORATIVE TERMS

Unocal counsel has called Larry Grove a liar. Unocal counsel has stated that Larry Grove is engaged in unsavory business practices. Unocal counsel has called Larry Grove a malingerer. Yet, Unocal counsel astonishingly claims it is not using pejorative terms in regard to Larry Grove.

Unocal counsel, at page 4 of its Opposition to Renewed Motion for Protective Order, claims disingenuously that its use of the term malingering is not a pejorative term, but actually a medical term of "art" used in the *Diagnostic and Statistical Manual of Mental Disorders for Physicians*. There is no medical evidence or expert that has diagnosed Mr. Grove with "malingering" as a medical term of "art" in the *Diagnostic and Statistical Manual of Mental Disorders for Physicians*. Thus, for Unocal counsel to disingenuously try and couch their use of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

the word "malingering" in terms of a medical definition is just ridiculous.  Furthermore, such a medical term of art would probably be lost on the jury.  The connotation of the use of the word "malingering" is pejorative and one can simply look up the words "malingering" and "pejorative" in Webster's Dictionary.  Even the definition utilized by Unocal is inflammatory and prejudicial.[1]  Furthermore, if Unocal only intends to use it as a "medical term" it is inadmissible as there is no medical proof of a diagnosis of "malingering" and Unocal has no such expert.

Plaintiffs are unaware of Unocal counsel being allowed to testify as an expert on psychological injuries and on the medical term of malingering and on the *Diagnostic and Statistical Manual of Mental Disorders for Physicians* Unocal counsel makes the conclusory statement that "Grove's behavior in this case fits the definition of malingering."  This is not evidence, but inadmissible legal conclusions.  Defense counsel cannot make such a statement, and defense counsel cannot make such an argument in front of the court or the jury.  This is a conclusory statement without any medical foundation, and is again just another attack on Mr. Grove.  In fact, the nature of this argument in terms of malingering just shows the vindictive nature of Unocal counsel's attacks on Mr. Grove and his family

---

[1] Unocal states the definition of malingering as "the <u>intentional</u> production of <u>false</u> or <u>grossly exaggerated</u> symptoms … motivated by … avoiding work [or] obtaining financial compensation. Emphasis added.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Page 10

in this case, and supports the plaintiffs' position that in fact what is going on here is oppressive and harassment.

V. THE TRAVEL OF LARRY GROVE HAS NOTHING TO DO WITH THIS CASE

Unocal is relentlessly pursuing any and all records regarding travel of Mr. Grove. This includes subpoenaing airlines, including Alaska Airlines, Delta Airlines, Northwest Airlines, and now Southwest Airlines, among other airlines. As stated previously, Mr. Grove has family in Pennsylvania, including his father, his brother, his son and grandchildren. Numerous relatives have died in the last several years, including his mother, aunt and two uncles. His sister-in-law died in August of 2006. His father deteriorated since Larry Grove's mother's death in the summer of 2003. He traveled to Florida to help his father, including helping his father move back to Pennsylvania, and he has traveled to visit his family and father on many occasions.[2] This is irrelevant to this

[2] Mr. Grove has gone back to Pennsylvania every November for many years, well before his injury, to visit family and friends. He has also traveled to yearly conventions as a member of the Loyal Order of Moose Lodge (including the last convention (6/26/06 – 7/1/07, and in 2006 and in prior years, both before and after his injury). He also attends a Safari Club Int'l Show every year, and has done so for over ten years. Originally, the show was in Las Vegas, but eventually was moved to Reno, Nevada. He also has gone to Colorado to help his daughter settle into school in Colorado, and went to visit his daughter in Colorado, and traveled with her from Colorado to Kentucky for an internship in March/April 2007. In May 2007 he met his daughter, went to Pennsylvania for the christening of a grandchild, went back to Kentucky and then traveled with his daughter back to Colorado. The defendant makes a big deal out of an interrogatory answer in December 2005 for travel between September 2002 and December 2005 out of state. Mr. Grove did not mention his routine yearly trips to family each November and/or the yearly trips to Reno. There was no sinister motive for these irrelevant trips. The trips were

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

lawsuit. All it shows is that Larry Grove is a loving, caring family member. Yet, this does not prevent defendant from speculation without evidence to imply that because Mr. Grove is able to fly in an airplane he can work. This is irrelevant to any issue in this case.

Mr. Grove has also traveled to help his daughter to settle in at college in Colorado and, as defense counsel knows, has traveled with his daughter from Colorado to Lexington, Kentucky for an internship she did in Kentucky. Mr. Grove has not hidden his flying on airlines. All of this is irrelevant and inadmissible and is not pertinent to this lawsuit. The airline trips of Larry Grove have no relevance to this lawsuit.

The fact that Larry Grove met his friend, Phillip Krasner, in Las Vegas is irrelevant to the fact that he suffered a severe ankle injury and cannot go back to the work he was doing at the time of his injury.[3] Mr. Krasner is a lifelong friend, and Mr.

---

just so routine/automatic after many years that he attached no significance to them or thought to them when responding. There was no intentional hiding of this irrelevant and inadmissible evidence. The oversight is meaningless.

[3] Without waiving the attorney/client privilege, Mr. Grove had gone to an Adult Video Network Convention in Las Vegas as a friend of Mr. Krasner, but does not recall the year, except to note that the Safari International Convention used to be in Las Vegas and it was possibly while he was in Las Vegas for the Safari International Convention and <u>not</u> for purposes of the adult entertainment business. Apparently, at least since January 2003, this yearly Safari International Convention is held in Reno, Nevada. Therefore it is possible that Mr. Grove met Mr. Krasner <u>pre-injury</u> in Las Vegas and as his guest attended an Adult Network Video Convention. It may have even been well before his injury in September 2002, and well before he had any tangential involvement in Mr. Krasner's business affairs for which he received the whopping total of $2,500. Nothing sinister or earth-shattering despite the language used by Unocal counsel that

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200   Fax (907) 278-6571

Page 12

Grove should be allowed to see a friend. The fact that he was able to travel to Las Vegas with his wife does not show that he has failed to mitigate his damages or that he can return to work. The bogus reason that Unocal counsel puts out for why they must obtain records of airline flights is simply untenable.

Unocal has obtained all of Larry Grove's cancelled checks, his credit card records, and virtually everything about Larry Grove and his family. The continuous hounding of the family has past the point of any common decency, and should stop.

VI. DEFENDANT GROSSLY DISTORTS THE TRUTH ABOUT THE MODEST GAMBLING RECORDS WHICH ARE IRRELEVANT TO THIS CASE

Larry Grove was injured in September, 2002. Unocal counsel claims the hotel and gambling records are relevant to consortium claims and are inconsistent with "financial woes." Mr. Grove was injured in September 2002. Until such time as he was able to start collecting other benefits from his Union and Social Security, his main source of income was his worker's compensation disability payments. Since the other benefits started, Mr. Grove's financial situation is not the same as it was when he was initially injured and initially deposed in 2004.

In regard to the fact that Mr. Grove has, infrequently, gone to Reno, Nevada once a year every January, and gambled on occasion, does not belie the claim that the family did not have

---

Mr. Grove was "confronted with "specific facts" "finally admitted … reluctantly." This is pure rubbish.

financial concerns.  Furthermore, the assertion that there was a significant amount of money gambled during that time is a gross distortion and untrue.  The records disclosed by defense show <u>totals played in and out</u>.  In other words, if Mr. Grove played the slot machines for a few hours, the total gambled does not reflect the total amount that was at risk, won or lost, which is obviously a lot less than the totals for in and out.  In fact, a review of the records that are Exhibit F by defense counsel show the net amounts involved show the Grove family won and/or lost a few hundred dollars in any year.  This belies the assertion of "significant" or large amount gambling pursuits by Mr. Grove.

The gambling records show:

| DATE | | SLOT MACHINES |
|---|---|---|
| January 2003 | Est. W/L | $ 167 – |
|  | Theo. Win | 1,170 |
| January 2004 | Est. W/L | 695 – |
|  | Theo. Win | 291  +  18 |
| January 2005 | Est. W/L | 254 – |
|  | Theo. Win | 103  +  17 |
| January 2006 | Est. W/L | 1,413 – |
|  | Theo. Win | 944  +  51 |
| January 2007 | Est. W/L | 889 – |
|  | Theo. Win | 698  +  55 |

The estimated Est. W/L equals $3,418 for five years.  Adding in the "Theo" win for five years, the net total lost on slot machines is <u>$212</u> for five years![4]   This is not large,

---

[4] Theo win is compensation <u>returned</u> to a guest as a discount on room and food based on a percentage of the <u>total</u> gambled, not the total amount risked by a player.  Adding in the "Theo

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

significant or irresponsible.  It shows the Grove family was very responsible.  However, it does not prevent Unocal counsel from misrepresenting the truth to this court.

Furthermore, the customer number is a card that was used by both Mr. Grove and his wife.  It is an outright fabrication to claim that "the hotel gambling records show that Larry Grove staked a <u>large amount of money gambling</u>" (Opposition at pg. 8), or that Larry Grove gambled, won or lost "a significant amount of money during these trips" (Opposition at pg. 8).  In an opposition to Motion in Limine, Unocal counsel called Larry Grove "irresponsible."  Perhaps Unocal counsel will claim this is a medical term of art and not a pejorative statement.

The gambling is irrelevant to this case, and is just simply another red herring.  It is untrue when Unocal counsel claims that there was a large amount of money gambling.  The fact that Unocal counsel delves into the hotel and gambling records is just another example of their oppressiveness and vexatious conduct in this litigation, and beyond the pale of reasonable and respectful litigation practices by opposing counsel.

VII. <u>FINANCIAL RECORDS</u>

Larry Grove has not stood in the way of proper discovery by Unocal counsel in this case.  It is a misrepresentation to claim

---

win" the Theo equals $3,206 for the <u>slot</u> machines <u>alone</u>.  Subtracting $3,206 from $3,418 shows a net loss of $212 for five years!  See Exhibit 6.

that Larry Grove refuses to produce documents.  Unocal counsel is claiming that Larry Grove is not producing his unreported income from six companies.[5]  Unocal counsel has obtained all of Larry Grove's financial records and has discovered the total of $2,500 in fees/reimbursements obtained by Larry Grove from these six companies over the past several years.

The attorneys representing the companies have told plaintiffs' counsel, as well as Unocal counsel, that Larry Grove does not run these businesses, has no access to these records, and yet, despite this knowledge, Unocal attempts to deceive the court about Larry Grove's alleged failure to comply.  There has simply been no proof and no evidence, even though Unocal counsel has obtained tens of thousands of pages on Larry Grove, to support this vexatious conduct by Unocal counsel.

Despite the fact that the attorneys for these six companies have indicated that Larry Grove does not control the companies, have access to the records, and despite the fact that both Mr. Grove and the companies' representative have informed Unocal counsel that Mr. Grove has no interest in any of these companies, Unocal continues to engage in speculation and innuendos.  Thus, on page 10 of Unocal's Opposition Unocal

---

[5] Unocal continues to make sure to mention that these six businesses are adult entertainment businesses, which one surmises reflects more on the moral judgments of Unocal counsel than on any point of relevancy to this litigation.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

Page 16

counsel states that even though Grove claims that he doesn't have access to the money, that "one of the companies may have been sold in 2004 and during that same year Grove claims without proof that a friend "gave" him the expensive hunt for free. The coincidence is uncanny." This statement is another one of the conclusory, speculative and unsupported statements that are made to denigrate Mr. Grove and prejudice the court against Mr. Grove. In fact, this trip was given to him by a worker at the Anchorage Daily News who had won this trip, but was unable to take it and therefore gave it to Mr. Grove. See Affidavit of Donald L. Ostrom, Jr. attached hereto as Exhibit 5. The coincidence is not "uncanny." There is no "coincidence." In fact, Mr. Grove got zero out of the sale of this company, and Unocal counsel knows it because they have all of Mr. Grove's financial records. Their continued misrepresentations and falsehoods to this court should cease because they know the truth and they are continuing to mislead this court.

Unocal claims a "forensic" analysis may be necessary depending what the financial records show. Well, they have Mr. Grove's financial records, and they know that they don't show anything that requires a "forensic accountant." Though Unocal named an unnamed "forensic accountant" on a Supplemental Witness List, and even though the date for expert disclosures are long gone, such unnamed forensic accountant has still not been named

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

at this date.  One would think that having obtained tens of thousands of documents regarding Mr. Grove's financial records that their "forensic accountant" could now reconstruct the source of all the funds of Mr. Grove.

It is certainly an irony in this case that whereas Unocal counsel has now obtained tens of thousands of pages in regard to the Grove family, Unocal has destroyed the work platform and the component parts, has lost or been unable to locate <u>any</u> records for the work platform, has lost, destroyed or is unable to locate <u>any</u> of the safety inspection reports and records for the building, and has simply not allowed the plaintiffs access to documents that might reveal the source of the work platform or the authorization for the work platform.  Thus, at the same time where Unocal has stonewalled plaintiffs' discovery efforts, they have engaged in an oppressive witch hunt against Larry Grove and his family.  The extent of discovery here certainly warrants a protective order.  A protective order is permitted under Federal Rule of Civil Procedure 26(c) even if there is some theoretical relevance for the discovery.

There is a substantial government interest in approving Plaintiffs' Renewed Motion for Protective Order to protect the integrity of the discovery process and prevent the abuse of discovery as has occurred in this case.  Plaintiffs therefore

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

respectfully request that their *Renewed Motion for Protective Order* be granted.

    RESPECTFULLY SUBMITTED this 16th day of July, 2007.

                  WEIDNER & ASSOCIATES, INC.
                  Counsel for Plaintiffs


                  /s/ Michael Cohn
                  330 L Street, Suite 200
                  Anchorage, AK  99501
                  Phone (907) 276-1200
                  Fax (907) 278-6571
                  E-mail:  nbackes@weidnerjustice.com
                  ABA No. 8506049



*CERTIFICATE OF SERVICE*
I hereby certify that on July 16, 2007 a copy of the foregoing **REPLY IN SUPPORT OF  PLAINTIFFS' RENEWED MOTION FOR PROTECTIVE ORDER** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.
s/ Michael Cohn

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571