Michael Cohn
Phillip Paul Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE, | ) ) ) ) ) | Case No. 3:04-cv-0096-TMB |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| UNOCAL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' OPPOSITION TO UNOCAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES**

I.    **INTRODUCTION**

Plaintiff Larry Grove suffered a severe and permanent injury to his right ankle on September 9, 2002 when a work platform collapsed while he was changing air filters in the filter room of the mechanical floor of the Unocal building.  Mr. Grove was an employee of Siemens Building Technologies, Inc. ("Siemens"), performing routine service work pursuant to a Unocal/Siemens

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

1

contract.  Unocal has admitted, through the testimony of its employees, including Safety Specialist Ken Burns, that (1) the work platform was not constructed properly; (2) that the work platform was a rudimentary make-shift platform; (3) that it was a hazard; and (4) Mr. Burns admitted that it should have been taken down.  Mr. Burns also admitted that he conducted two safety inspections on the building to identify hazards.  All pre-accident safety inspections are missing.  Mr. Burns also admitted he did not inspect the mechanical floor for hazards because of the low to no risk to Unocal employees.

Unocal apparently conducted no investigation of the collapsed work platform, and simply had it reattached without finding out the cause of the collapse until OSHA told Unocal to take it down in March 2003.  Unocal then exercised complete control over the structure and destroyed all the evidence (other than the sheared bolts Larry Grove had retrieved right after the accident).

Unocal has also, without any proof, claimed that Siemens owned, maintained and/or constructed the structure.  Yet, Unocal exercised control over the platform by destroying it.

Now, Unocal has moved for partial summary judgment as to punitive judgment, throwing out a number of arguments, including a bizarre contention that plaintiffs have not proven the work platform was intended for individuals to stand on, and therefore

defendant should prevail.  See Unocal's Memorandum at p. 18-19
in which Unocal stated:

> Carmichael's opinion assumes without evidence
> that the platform was constructed for a human to
> stand upon.  While Grove did stand upon it, there
> is no evidence that the platform was originally
> constructed for that purpose.  If the platform was
> not to be used to stand upon, the safety and
> engineering standards Carmichael cites are
> inapplicable.

Yet, in the accompanying Memorandum in Support of Motion in
Limine, Unocal writes at p. 21:

> The platform was not fancy or elaborate.  It
> appears it could have been a functional attachment
> added for the convenience of the person changing
> the filters, which occurred 2-4 times per year.
> There is no other known use for the platform.

(Emphasis added).

Unocal admits there is no other known use for the platform.
Nowhere in the record, including the OSHA investigation, the
OSHA citation to Unocal, and the deposition of Safety Specialist
Ken Burns (who constantly referred to the structure as a work
platform) is there any allegation that the work platform was for
hanging plants, or shelving, or some other unknown reason.  It
was a work platform, and Unocal knows it.

Plaintiffs rely on the expert report and Affidavit of Dr.
Joseph Balser (Exhibit 1), the expert report and Affidavit of
Lin Manning (Exhibit 2), and the expert report and Affidavit of
Mr. Robert Carmichael (Exhibit 3), as well as the deposition of
Ken Burns (Exhibit 5), and other evidence contained herein to

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

establish that there is at lease a genuine issue of material

fact as to the reckless indifference of Unocal to the

safety/interests of others, to warrant the submittal of punitive

damages to the jury.  The briefing of Unocal argues matters that

go to the weight of the evidence and in a summary judgment

motion, the court does not weigh the evidence. Plaintiffs have

presented substantial evidence of a genuine issue of material

fact.  Accordingly, plaintiffs respectfully request that

defendant's Motion for Summary Judgment be denied.

**II.  <u>SUMMARY OF EVIDENCE/ARGUMENT</u>**

The evidence and inferences viewed in favor of the

plaintiffs based on the evidence show:

1.  Improper design, construction, approval and/or
    ratification of the work platform, including use of
    improper fasteners not designed/suitable for use in
    a work platform.  See Unocal Safety Specialist Ken
    Burns' deposition at 95 (Exhibit 5), Charles
    Arnett's deposition at 116 (Exhibit 11), and former
    Unocal Resources Manager Archie Cook's deposition at
    23-24 (Exhibit 4); Reports of Dr. Balser, Mr.
    Manning and Carmichael & Associates; Affidavits of
    Dr. Balser, Lindley Manning and Bob Carmichael
    (Exhibits 1-3);

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

4

2.    A structure, such as a work platform, could not be
      designed, constructed, and built in the Unocal
      building without the authorization, approval and/or
      ratification of Unocal.  See depositions of Charles
      Arnett at 116, and Archie Cook at 23-24, and
      Affidavit of Michael Cohn;

3.    The structure did not meet the standards for a work
      platform (deposition of Ken Burns at p. 49; Reports
      of Balser, Manning and Carmichael, and Affidavits of
      Dr. Balser, Lindley Manning and Bob Carmichael);

4.    The work platform was not a proper work platform
      (see deposition of Ken Burns as p. 94);

5.    The work platform was not erected properly (see
      deposition of Ken Burns at p. 95);

6.    The work platform was a hazard to be abated (see Ken
      Burns deposition at p. 94);

7.    There were safety inspections done on the building,
      the sole purpose of which was to find and abate
      hazards.  At least two of these inspections were
      done by Ken Burns (see Ken Burns deposition at pgs.
      69, 72);

8.    It is normal practice of Unocal to keep safety
      inspection records.  See deposition of Ken Burns at
      p. 70; Prior inspection reports are utilized to see

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

what hazards have been identified and abated or still unabated.  <u>Id</u>. at 91-92.  <u>All</u> the pre-accident Unocal safety inspection reports are missing.  See Ken Burns deposition at p. 70-71;

9.   The safety inspections were supposed to check for hazards or potentially hazardous conditions throughout the entire building.  See Archie Cook deposition at 32-35;

10.  Work platforms for Unocal are supposed to be built by certified personnel; properly built, and sufficient to sustain the weight of a person.  See Unocal employee Paul Crapps' deposition at 81-82 (Exhibit 8).  Paul Crapps does not need to check because certified personnel build the platform. <u>Id</u>.;

11.  Unocal as the landowner/building owner has a responsibility to maintain premises in a safe condition, see Exhibits 3 and 12.  Technical Specification, Section 6.3, states:

> 6.3  <u>Customer [Unocal] will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices. Customer will be solely responsible for any removal, replacement or refinishing of the building structure or finishes that may be required to gain access to such Equipment</u>.

Exhibit 12; Emphasis added.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

12. Unocal, under the Unocal-Siemens contract, had an obligation to provide the means of access to the equipment;

13. As the safety records are "missing" a presumption that the records show notice and knowledge of an unabated hazard.  See Argument, <u>infra</u> at p. 33-34;

14. Ken Burns claims that he did not inspect the mechanical floor and/or the filter room where the accident occurred.  This statement is subject to credibility determination in light of the expressed purpose to identify building hazards;

15. Even if Ken Burns did not inspect the penthouse (mechanical floor) and the filter room, the reason he gives for the alleged failure to inspect that "Employees don't work up there" (Ken Burns deposition at 72), supports a reasonable inference of reckless disregard of the interests or safety of individuals encountering hazards in the penthouse and filter room.

    Q.  <u>Would it be fair to say that the inspection was to identify hazardous conditions</u>?
    A.  <u>That's the only purpose</u>.
    Q   And would it be fair to say that the penthouse with the equipment and the—that operates up there, the boiler and other faculties, that

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> that would be an important part of the
> inspection, to examine the penthouse?
> A.   No.
> Q.   Why not?
> A.   Lack of exposure.  <u>Employees don't work up</u>
> <u>there</u>.  Lack of exposure, limited exposure.

(Emphasis added)

Ken Burns appears to claim first "that employees don't work up there" [therefore Unocal employees are not at risk] and then says "lack of exposure, limited exposure."  This appears to be a risk/benefit analysis such as was done for the Ford Pinto or other hazards where the exposure is limited or not continuous.  Reasonable inference in favor of plaintiffs show <u>reckless indifference</u> to the safety of others; especially non-Unocal employees exposed to the hazard, i.e., shows reckless indifference to the safety of <u>non</u>-Unocal personnel such as employees of Siemens who must service the penthouse and the filter room, especially as <u>Unocal</u> is indemnified for injuries to contract employees <u>caused</u> by Unocal's negligence from the injured employee's employer, therefore providing even less incentive to abate hazards in the penthouse or filter room.

Furthermore, it is reckless to not even determine what hazards are present, even if one

8

believes Ken Burns that he did not inspect an entire floor of the Unocal building, which is the floor containing the mechanical supports for the entire building.  If the risk is high, even limited exposure could require action.  See Affidavit of Robert Carmichael.  How can one assess the hazard/risk if one makes the conscious decision to ignore the entire floor (at least twice according to Mr. Burns);

16.    Though Unocal claims lack of notice or knowledge, the following inferences apply:  Unocal Human Resource Manager Archie Cook admits that when he began working in the building he was given an orientation of the entire building by Unocal Building Manager Eddie Barrett.  Though Mr. Cook does not recall seeing the work platform:

    a.  this is a credibility determination.  Numerous individuals before and after Archie Cook's orientation saw the work platform, including Robert Sprinkle (Exhibit 7), Larry Grove, Leverette Hoover, Gordon Woodard.  Therefore, it is a jury issue;

    b.  Unocal fails to recognize that it acknowledges that orientation for employees included visits to the penthouse (mechanical floor) and filter room.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal employees/management are therefore going into the filter room where the work platform is located.  It is preposterous for Unocal to claim no knowledge of the work platform that had been in their building at least <u>12</u> years before the accident.  Therefore, lack of notice/knowledge is a question of fact

c.  There has been extensive work done in the "penthouse," including asbestos abatement, and thus it is not credible that Unocal employees would never see the work platform;

d.  All records regarding the platform and/or safety inspections, including known safety inspection reports, are <u>gone/missing!</u>  Inference applies against Unocal.

17.  Given the improper design/construction/fasteners the work platform would inevitably fail, thereby making inspections/maintenance even more important.  The failure to do <u>any</u> maintenance, shows reckless indifference.  See reports and Affidavits of Balser, Manning and Carmichael.

III. <u>STATEMENT OF FACTS</u>

It is undisputed that Larry Grove was injured when a work platform/scaffold collapsed at the Unocal building while

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Mr. Grove was attempting to perform services under the contract between his employer Siemens and Unocal in regard to servicing the Unocal building, in this case replacing filters in the filter room on the top floor of the building, which was the mechanical room, also known as the "penthouse."

Archie Cook, a former Human Resources Consultant at the Unocal office, 909 West 9th Avenue, Anchorage, Alaska, testified as follows:

> Q. … Were there periodic safety inspections–
> A. Yes.
> Q. -- of the building from the time that you arrived in 1999 through 2002?
> A. Yes.
> Q. What did these periodic safety inspections entail?
> A. Involved one of our safety technicians going around the office looking for safety hazards.

*Deposition of Archie Cook, pg. 32, lines 11-20;* Emphasis added; See Exhibit 4.

> Q. Did you observe the safety inspection at all?
> A. I didn't observe the inspection. I saw the report.
> Q. You saw the report?
> A. Yes.
> Q. And can you tell me how detailed the report would be?
> A. I mean it was basically telling us what things were hazardous or potentially hazardous and potentially needed fixing.

*Deposition of Archie Cook, pg. 33, line 25 to pg. 34, line 8;* Emphasis added.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

11

Unocal employee Kenneth Burns testified that his job position is Safety Specialist (Deposition of Kenneth Burns, May 9, 2006, at page 5, Exhibit 5). Mr. Burns acknowledged that the work platform was a rudimentary makeshift work platform. Id. at 102. "I didn't feel it met the standards for a work platform" Id. at 49. He also testified as follows:

> Q.    I mean, <u>when you put that sentence in your – in your notes here</u>, did you consider that – <u>why did you consider it significant enough to put into your – in your notes?</u>
> A.    <u>That there was an oversight on not having that work platform erected properly. Someone in the past years had failed – or neglected to do their job.</u>

*Deposition of Kenneth Burns, pg. 95, lines 11-18*; Emphasis added.

Mr. Burns admitted that he did two safety inspections of the building back in 1998 and 1999. Id. at 75. He also stated:

> Q.    <u>If you had conducted the '98 and '99 inspection and saw that work platform in the filter room, would you have considered that a hazard to be abated?</u>
> A.    <u>Yes</u>.

*Deposition of Kenneth Burns, pg. 94, lines 19-23*; Emphasis added; See Exhibit 5.

Note too that despite the fact that plaintiffs have requested the safety inspections for the Unocal building, defendant has not produced either the 1998 or the 1999 Ken Burns

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

safety inspections, nor any other safety inspections of the building prior to the accident of September 9, 2002.[1]

Defendant Unocal produced a document during discovery that is labeled DEF00027, which has a date of March 3, 2003 on the top. That document was prepared by Ken Burns. In that document, Mr. Burns states "it was obvious from the structure that it had been erected many years ago." See Exhibit 6.

Robert Sprinkle, an employee of Siemens, at his deposition of April 24, 2006, (Exhibit 7) testified that the work platform/scaffold was there, i.e., affixed to the wall in the filter room in the Unocal building, back when his employer (and it's predecessor Gyr & Landis) took over the contract. Id. at 71. This was in the late 1980's. Mr. Sprinkle also testified that as a technician for Siemens, who goes out on service calls to various sites, he generally uses what is on-site, and assumes that it is safe. Id. at 69. "Why would it be there if it

---

[1] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery,* and *Opposition to Defendant's Surreply to Motion to Compel* and *Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in Support of Plaintiffs' Reply in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery,* and *Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71, and *Plaintiffs' Memorandum in Support of Plaintiffs' Renewed Rule 37 Motion for Order Compelling Discovery* at Docket No.163, and *Reply* at Docket No. 190, incorporated herein by reference.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

wasn't intended to be used …" Id. Paul Crapps, an employee of
Unocal, at his deposition on March 3, 2006, testified that he
doesn't inspect the work platforms that he utilizes as an
employee of Unocal, because he relies on the certified personnel
to put together the work platform. Deposition of Paul Crapps,
March 3, 2006 at pages 90-91; Exhibit 8. Ken Burns was a former
employee of OSHA. John Stallone, the head of OSHA, testified on
April 14, 2006 that a safety technician would know that you
would have to replace, or repair, the work platform. John
Stallone deposition at pg. 62; Exhibit 9. He also noted that
the safety reports on the Unocal building should have been given
to the OSHA inspector, Tom Scanlon. Id. at 61-62. Mr. Stallone
furthermore testified that Unocal was the creating employee, and
therefore should be held responsible because it was their
platform. Id. at 65.

Tom Scanlon, a Safety Inspector/Enforcement Officer for
OSHA inspected the platform in March 2003; Exhibit 10. He was
not told about prior safety inspections. Tom Scanlon deposition
of April 14, 2006 at pgs. 47-48. He had also been told that the
platform had been there for at least 12 years. Id. at 110-111.
The platform/scaffold is located in the Unocal building. Id. at
115. Mr. Scanlon noted that pursuant to the contract between
Unocal and Siemens that Unocal was to provide access. Id. at
103-105. It was apparent to Mr. Scanlon that Siemens "decided

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

14

to use what Unocal had provided." Id.  Under the contract, Unocal had the contractual responsibility to provide access. Id. at 115.

Charles Arnett worked for Peak Oilfield Services at the Unocal building for many years (Charlie Arnett deposition of April 26, 2006 at pg. 6; Exhibit 11).  Plaintiff Larry Grove called Charles Arnett as soon as he was injured, and Mr. Arnett came and found Mr. Grove lying in the filter room and that Larry Grove was obviously hurt.  Id. at 96.  Mr. Arnett observed that there were bolts that had obviously sheared.  Id. at 97.  Under the service contract between Siemens and Unocal (i.e., *Technical Support Program Proposal*, Exhibit 3 to the Siemens 30(b)(6) deposition and Exhibit 5 to Charlie Arnett Deposition; Exhibit 12 herein), Section 6.3, specified that Unocal was to provide access to Siemens to do the work.  Section 6.3 states:

> 6.3  Customer [Unocal] will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices.  Customer will be solely responsible for any removal, replacement or refinishing of the building structure or finishes that may be required to gain access to such Equipment.

Exhibit 12; Emphasis added.

The service contract between Siemens and Unocal was reviewed by both Charles Arnett and Archie Cook.  See deposition of Charlie Arnett at pgs. 125-126.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Plaintiffs have attempted to find any and all records regarding the work platform/scaffold at the Unocal building. Unocal has provided <u>nothing</u>. Unocal has, at various times, claimed inaccurately, or deceptively, that Siemens owned the work platform. Siemens employees have denied same, and there are no records from Siemens that indicated that they had <u>at any time</u> built or serviced the work platform/scaffold. Indeed, as counsel for Unocal is also counsel for Siemens, it is not only error, but clear misrepresentation of the facts to claim in discovery answers, which plaintiffs have subsequently learned were false, that Siemens had anything at all do with this work platform/scaffold.[2]

Charles Arnett, who had worked in the Unocal building for many years, testified that before any such work platform/scaffold could be erected in the building, Unocal would have to give the authorization to build such a work platform. Charlie Arnett deposition at pg. 116. Mr. Arnett even testified

---

[2] See *Plaintiffs' Memorandum in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 49; and *Affidavit of Michael Cohn in Support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery* at Docket No. 61; and *Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 70; and *Affidavit of Michael Cohn in support of Plaintiffs' Reply in support of Rule 37 Motion for Default Against Defendant as Sanction for Willful Bad Faith Non-Compliance with Discovery and/or Order Compelling Disclosure/Discovery, and Opposition to Defendant's Surreply to Motion to Compel and Defendant's Motion for Rule 37 Sanctions* at Docket No. 71, incorporated herein by reference.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that if he wanted to put a new chair in the building, he would need the permission of Unocal. Id. at 115-116.

Plaintiff Larry Grove, after retrieving the sheared bolts, subsequently handed said evidence over to plaintiffs' counsel for safe keeping. If Mr. Grove had not retrieved the sheared bolts, all of the evidence would have been lost, as following the OSHA inspection, Paul Crapps, an employee of Unocal, removed and destroyed all of the brackets, nuts and bolts. See Paul Crapps deposition of March 3, 2006 at pgs. 33, 36-37. The bolts were subject of litigation as Unocal claimed ownership of the bolts. The court subsequently ordered the bolts be returned to Unocal. Subsequently, the bolts were sent out-of-state for inspection. An expert metallurgist retained by plaintiffs, Dr. Joseph Balser, inspected the bolts, and he issued a report. Dr. Balser testified that the bolts were inadequate for the job.

> … The presence of an number of delaminations are good indicators of a poor, non-structural steel being used for these bolts. Clearly, they are of low strength and should not be used in a structural application.
>
> The shear fracture of the bolt from Exhibit #16 is consistent with the bolt failure to be expected in a loose joint on the platform. A loose joint is most likely to have caused the bolt to be heavily loaded in a shear loading, since the loose joint has lost its preload, shifting the entire joint load to the bolts in shear. …
>
> The low strength steel bolts utilized in this construction is a strong contributer to this joint failure, but so is the use of small diameter bolts

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

<u>and using cap head cap screws instead of hex head
bolts that can be torqued to higher levels providing
a stronger clamping force across the joint and a
reduction of the shear loading on the bolts.  Both
the platform design and materials selections used in
this man-platform were improper</u>.

*Expert Report of Joseph D. Balser, Ph.D., page 3*; Emphasis added.

Dr. Balser has also done an affidavit as to the conduct of Unocal:

## AFFIDAVIT OF JOSEPH d. Balser, Ph.D.

STATE OF ALASKA            )
                           )  ss.
THIRD JUDICIAL DISTRICT  )

JOSEPH d. Balser, Ph.D. being first duly sworn under oath, deposes and states as follows:

1.    I have personal knowledge of the matters contained herein, and I am competent to testify to same.

2.    I received a Bachelor of Science Degree in Mechanical Engineering from Marquette University in Milwaukee, Wisconsin in 1964, a Masters Degree in Mechanical Engineering from Marquette University in Milwaukee, Wisconsin in 1967, and a Ph.D. Degree in Metallurgy and Materials Science from Marquette University in 1970.

3.    A comprehensive list of my qualifications is contained in my curriculum vitae that is attached hereto as Exhibit "1."

4.    With regard to the current matter, I conclude from the appearance of the structural platform and all information provided to me that the platform was used by Mr. Grove and others as a working platform to stand on while changing the filters. In this application, it is clear that the use of perforated angle iron and common non-structural ¼-20 bolts and square nuts for the construction of a man-safe scaffold would not

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

conform to any known engineering safety standards that I can recall going back as far as the 1960's. Further, the lack of safety railings and kick plates attests to a complete disregard for engineering safety standards. Having such a structure utilized as a man safe platform is with certainty a careless and irresponsible act and any safety review of this structure over the intervening years should have spotted these dangerous conditions for rectification.

   5. Although the improper bolted joints were likely to have been tight at the time of initial installation, the unpredictable vibrations from the air filtration unit to which the scaffold was attached and the multiple uses of the platform would foreseeably loosen the bolted joints over time and lead to a sudden collapse. Only intervening maintenance inspections could have detected the loosening joints. The observation that the square nut on the failed joint had completely become detached from the bolt indicates that either the maintenance interval was too long or non-existent for the condition to have progressed to the state at which the joint failed.

   6. <u>The apparent lack of adequate design and maintenance for this scaffold reveals a careless indifference toward the safety of anyone using this scaffold</u>.

  FURTHER AFFIANT SAYETH NAUGHT.


_____

____

    JOSEPH d. BALSER,
PH. D.
(Emphasis added).


 Plaintiffs' expert, Lindley Manning, also issued a report regarding the work platform/scaffold and the bolts. He stated in pertinent part:

> … <u>To summarize, the screws were too weak to properly tighten, even for their size, due to the low material strength and did not have hex or other heads permitting higher tightening torque to be</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

<u>applied</u>.  The screws were subject to loosening in service due to the low preloads and a lack of any retention means, such as prevailing torque lock nuts, or even as a poorer last resort, lock washers. <u>The screws were not corrosion resistant and were too small for the task</u>.
…
<u>Use of a sheet metal screw in a vibration environment where larger transient loads are occasionally encountered is poor practice because these fasteners would also have a tendency to work loose over time</u>. …

In addition to industrial engineering design experience which varied from engine components for a nuclear powered bomber to coin handling devices for gaming machines, I taught Machine Design to Senior Mechanical Engineering students in a four year degree program at a state university for about 20 years.  Design of threaded fasteners and the joints they formed was a major part of that course, as it is in all such programs.  <u>The use of undersized low quality fasteners, such as was in this platform would not have met the design criteria presented in the class</u>.

<u>In conclusion, I believe that this platform failed because of improper design.  The poor preservation of evidence has limited my ability to make a more detailed description of the defects</u>.

*Expert Report of Lindley Manning, P.E., pg. 3*; Emphasis added.

Mr. Manning also has done an affidavit:


### ***AFFIDAVIT OF LINDLEY MANNING, P.E.***


STATE OF ALASKA            )
                           )    ss.
THIRD JUDICIAL DISTRICT  )

          LINDLEY MANNING, P.E., being first duly sworn under oath, deposes and states as follows:
          1.  I am a Registered Professional Mechanical Engineer in the States of Ohio and Nevada;

2.    I have submitted a report in this matter.  See Exhibit 1;

3.    The fasteners and structural members utilized for the work platform were improper and inadequate for the application of workmen standing on the work platform, in addition to other safety omissions, rails, etc.  I have seen no evidence that the work platform was intended to be used for any other purpose.  The information available appears to show that workmen such as Larry Grove used the work platform as a structure to stand on to change filters in the filter room;

4.    The fasteners that were utilized were not structural fasteners designed to hold a worker, nor for any other application where significant load is to be carried.  The fasteners appear to be light weight fasteners inadequate for the application used in this case, and would be instantly recognized by anyone with any design experience as what are commonly called "stove bolts."  The use of these fasteners, with their attendant thin square nuts, in this structure was extremely cavalier and irresponsible;

5.    Improper design and inadequate materials were utilized.  If any engineering standards were applied, they were inadequate, and applied in an extremely irresponsible manner;

6.    It appears that an inadequate design was utilized and safety considerations were either inadequately addressed, or not considered at all;

7.    The improper and inadequate design, construction and materials made structural failure inevitable at a time that could not be predicted and without prior warning, i.e., an accident waiting to happen;

8.    This in turn makes it even more important that periodic inspections and maintenance occur to prevent structural collapse or to ascertain any weakening of the structure increasing the danger to those utilizing the structure;

9.    There appears to be unprotected small bolts with a substantial certainty of inevitable failure by one or more of multiple means; and

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

    10.  There appears to be little if any consideration given to designing, or maintaining, a structure for the safety of the users.
              FURTHER AFFIANT SAYETH NAUGHT.


    _____
    LINDLEY MANNING
(Emphasis added).

    Bob Carmichael, of Bob Carmichael & Associates, with extensive experience in safety, including many, many years working for oil companies in Alaska, issued a report in this case in regard to the work platform/scaffold and bolts/screws, which is attached hereto as part of Exhibit 3.  His opinion was as follows:

              …
              **Opinion**
              1.  Whether intended to be permanent or temporary, neither engineering nor safety standards were applied to the construction of this platform.

              2.  The screws used to attach the brackets to the walls were not appropriate for the application and failed under load.

              3.  Floor loading limits for the platform had not been established and posted and the limits had not been reviewed and approved by an engineer or regulatory authority.
*Expert Report of Bob Carmichael, Bob Carmichael & Associates, pg. 4*; Emphasis added.

    Mr. Carmichael has completed an affidavit.  It states:

              *AFFIDAVIT OF ROBERT J. CARMICHAEL,*
                *CERTIFIED SAFETY PROFESSIONAL*

              STATE OF ALASKA              )
                                          )    ss.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

THIRD JUDICIAL DISTRICT  )

      ROBERT J. CARMICHAEL, CSP being first duly sworn under oath, deposes and states as follows:

      1. I have personal knowledge of the matters contained herein, and I am competent to testify to same.  This Affidavit supplements my Opinion dated July 29, 2006;

      2. I am currently employed as a Safety Specialist for BP Exploration in Baku, Azerbaijan.  This position involves providing safety advice to supervisors, employees, and contractors, as well as coaching for the development of Azeri National staff, and training on a variety of safety topics;

      3. My prior work history is set out in my Resume, which is attached hereto as Exhibit 1;

      4. I currently hold the following national safety certifications:

      a.  CSP – Certified Safety Professional;

      b.  OHST – Occupational Health and Safety Technologist; and

      c.  CHST – Construction Health and Safety Technologist.

      All three of these certifications are current, and in force as of the date of this Affidavit;

      5. My experience and training includes general safety, safety processes, safety risk analysis and control, safety inspections, safety record keeping, safety training and accident investigation;

      6. Safety quality control includes proper safety design, erection, maintenance, inspection, and repair.  It also includes a prompt, complete, and documented investigation of any accident in order to learn and ensure that such accidents don't happen in the future;

      7. I have in my career inspected many buildings and facilities.  My opinion, based

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

upon my training and experience is that it is a responsibility of a building owner to provide a reasonably safe environment for its own employees, contractors, visitors and members of the general public who may access said premises;

8. Also in my career, I have reviewed many contracts which contain the requirement for the property owner to provide safe and usable access for performance of work by contractors;

9. I have seen contract documents between Unocal and Siemens Building Technologies, Inc. (see Exhibit 2). Under Article 6.3, Customer Responsibilities, it states:

> Customer will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices. Customer [Unocal] will be solely responsible for any removal, replacement or refinishing of the building structure or finishes that may be required to gain access to such Equipment.

It is my opinion, based upon my training and experience, that Unocal had a responsibility to provide Seimens' workers with a safe means of accessing the equipment for which they were contracted to service. The work platform involved in this accident was part of the building structure, and appears not to have met the qualifications of a safe access. It also appears, under Article 6.3 to be the responsibility of Unocal;

10. I have seen no evidence of proper design, erection, maintenance, inspection or repair of the work platform;

11. The purpose of a proper safety inspection is to identify hazards, and the risks of those hazards. Once those have been identified, appropriate controls can be developed and implemented. One form of this

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

process is referred to as a quantitative risk assessment;

12.    It appears from the deposition testimony of Unocal employee, Ken Burns, that he conducted at least two safety inspections of the Unocal building where the accident occurred, one in 1998 and one in 1999. It appears those safety inspection records have not been found or provided to the plaintiffs. Although I have not been provided with copies of these inspections, it appears that the hazards and risks inherent in this work platform were either not identified or not adequately controlled;

13.    It appears that Mr. Burns has claimed that he did not inspect the floor in the building where the incident occurred. It also appears that he claims that Unocal workers did not regularly access that floor, and therefore, his assessment was that there was no, or limited, risk. It is my experience that it is impossible to make an appropriate, usable assessment of hazard and risk, without inspecting the area;

14.    Unocal cannot fail to undertake safety inspections simply because the risk of encountering hazard will fall primarily on contract employees performing services in Unocal's building;

15.    It is my experience that records of safety inspections, and the corrections made as a result of those inspections, must be kept in order to ensure that hazardous and risky conditions are not repeated unnecessarily. Such records are useful to review when conducting subsequent inspections to determine what hazards were previously identified, whether they were remedied, and whether control measures which were implemented are still in place and effective;

16.    There appears to be little or no evidence of any investigation of the collapse of the platform to determine the mode of failure and that the platform may have been

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

simply reinstalled without determining the cause of failure. In my experience, this is unacceptable from a safety standpoint. There appears to be no records that Unocal conducted any such inspection;

17.    It appears that the components were destroyed by Unocal without any investigation or analysis to determine the cause of the failure.

18.    It appears from evidence which I have reviewed that this platform had been in place in the Unocal building for at least 12 years prior to the accident;

19.    It seems difficult for me to accept that an area of the building such as this HVAC room, would have not been subject to safety inspections for that long a period. Therefore, I would have expected someone in the Unocal organization to have known about this platform, and that it would then have been subject to an appropriate safety inspection;

20.    Lack of records, lack of investigation, and lack of inspection, points to, in my opinion, a systemic failure to manage hazards and risks in a prudent and organized way;

21.    In summary, in my expert opinion, I would consider the methods used, or in this case, not used, by Unocal to demonstrate a reckless disregard for standard, generally accepted, safety practices meant to prevent injury to their own employees, as well as to contract employees asked to perform work on the Unocal premises. I have seen no evidence of the application of engineering, or safety standards in the construction, inspection, maintenance, or control of the work platform involved in this incident.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this ___ day of August, 2007.

_____
ROBERT J. CARMICHAEL, CSP

(Emphasis added).

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

IV.  **STANDARD OF REVIEW AS TO SUMMARY JUDGMENT UNDER FEDERAL
RULE OF CIVIL PROCEDURE 56**

        All reasonable inferences are drawn in favor of the
non-moving party.  Anderson v. Libert Lobby, Inc., 477 U.S. 242,
255 (1986) disputed issues of fact are resolved in favor of the
non-moving party on a motion for summary judgment.  General
Electric Company v. Joiner, 522 US. 136 (1997); Hunt v.
Cromartie, 526 U.S. 541 (1999).  The court does not weigh the
evidence.  Sullivan v. U.S. Department of Navy, 365 F.3d 827 (9th
Cir. 2004).

Regardless of the standard of proof (clear and convincing versus
preponderance of the evidence) the court does not judge the
"weight" of the evidence or determine credibility.

    Where there are material issues of fact, summary judgment
is not appropriate.  Nodine v. Shiley, Inc., 240 F.3d 1149 (9th
Cir. 2001); U.S. v. Shumway, 199 F3d 1093 (9th Cir. 1999);
Chaffin v. U.S., 176 F.3d 1208 (9th Cir. 1999); Kaelia v. Globe
Communications Corporation, 162 F.3d 1036 (9th Cir. 1998);
Citicorp Real Estate v. Smith, 155 F.3d 1097 (9th Cir. 1998);
Martinez v. City of Los Angeles, 141 F.3d 1373 (9th Circ. 1998).

    Unocal's motion for partial summary judgment on punitive
damages relies on numerous statements by counsel.  Statements by
counsel in motions are not evidence and cannot sustain a motion

for summary judgment.  <u>Certain Underwriters at Lloyd's of</u> <u>London</u> <u>v. Inlet Fisheries, Inc</u>., 370 F Supp.2d 974 (D. Alaska 2004).

**V.    <u>PUNITIVE DAMAGE LEGAL STANDARDS</u>**

Punitive damages are warranted where the evidence shows that the defendant's conduct <u>merely evidenced reckless</u> <u>indifference to the safety or interests of others</u>.  <u>Alaskan</u> <u>Village, Inc. v. Smalley</u>, 720 P.2d 945 (Alaska 1986); <u>Laidlaw</u> <u>Transit, Inc. v.</u> <u>Crouse</u>, 53 P.3d 1093 (Alaska 2002).  Actual motive, or specific intent, or intentional malice, or bad motives, <u>is not required,</u> and willful or reckless indifference is sufficient.  The facts presented and discussed in this memorandum shows at a minimum substantial evidence of willful and/or reckless indifference to the safety of others.

<u>Sturm Ruger & Co., Inc. v. Day</u>, 594 P.2d 38 (Alaska 1979) is the preeminent Alaska case on the issue of punitive damages [and establishes clearly that intentional, or malicious conduct or malfeasance (as Unocal incorrectly argues) is not required, merely reckless <u>indifference</u> (i.e., malfeasance is sufficient).  Relying in part on <u>Sturm Ruger</u>, the court in <u>Alaska Village Inc.</u> <u>v. Smalley</u>, upheld the award of punitive damages for personal injuries.  *Restatement (Second) of Torts § 908(2)* states:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive <u>or</u> his reckless indifference to the rights of others.  (Emphasis added).

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Thus, if the plaintiffs present (as they have done here) evidence tending to show that Unocal acted, or failed to act, with reckless indifference to the possible consequences of its actions, Unocal can be held liable for punitive damages. A.S. 09.17.020 accurately sets forth, and codifies some of the criteria used in the Alaska case law, and set out in the *Restatement(Second) of Torts* to determine the appropriateness of punitive damages. That statute states, in part:

> The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct was
> (1)  was outrageous, including acts done with malice or bad motives; **or**
> (2)  **evidenced reckless indifference to the interest of another person**.

Alaska Stat. § 09.17.020 (emphasis added).

Note the "or."

Thus, the plaintiff need not show actual malice, or even that Unocal had actual notice of the defect and the consequences, or acted with intent, or for bad motive, or for financial gain. Rather, plaintiffs must only prove that it acted with reckless indifference to the interest of others. The evidence submitted herein, including the reports and affidavits of Dr. Balser, Mr. Manning, and Mr. Carmichael, the admissions by Unocal through employees, including Ken Burns, create at a minimum, a question of fact as to punitive damages.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

## VI.  UNOCAL BREACHED MULTIPLE DUTIES; CONSCIOUSLY DISREGARDED ITS DUTIES AND OBLIGATIONS AND WAS RECKLESS

AS 09.17.020 only requires reckless <u>indifference</u> to the interests of others.  Indifference is the "lack of interest or concern." *The Random House Dictionary of the English Language (Unabridged Edition 1973)*.  <u>Indifference</u>, <u>unconcern</u>, listlessness, <u>apathy</u> and <u>insensibility</u> are all synonyms.  <u>Id</u>. Unconcern is defined as "an absence of concern or solicitude, a calm or cool indifference in the face of what might be expected to cause uneasiness or apprehension."  <u>Id</u>.  Unocal, through Safety Specialist ken Burns, has admitted the work platform was not constructed properly, that it was a makeshift rudimentary work platform, and that it was a hazard that should have been removed.

Unocal had a duty as a landowner to exercise reasonable prudence in providing safe premises for visitors, including foreseeable and expected service employees of contractors.  A landowner who claims not to know about a large, unsafe structure in its building for over 12 years, has displayed remarkable "indifference."  Furthermore, in entering into contracts with service companies, which provide that Unocal shall provide reasonable means of access to equipment to be serviced, Unocal had a duty to know the "reasonable means of access" and again,

even if Unocal allegedly did not "know" about the work platform, it has again displayed appalling indifference.

Unocal admits that it conducted safety inspections on the building to reveal hazards. See depositions of Archie Cook and ken Burns. Yet, ken Burns, allegedly failed to inspect an entire floor of the building – the mechanical floor – because Unocal employees would rarely go to that floor. Thus, Mr. Burns' testimony, even if true, shows extraordinary indifference to those foreseeable contractor employees who would encounter any hazards. Thus, Mr. Burns claims he did not even know what the hazards and risks were there because he allegedly did not look (of course, we cannot verify what was in the safety reports because they are <u>all</u> missing). Mr. Burns thus made the conscious decision to <u>not</u> check for hazards where he perceived the risk to fall mainly on non-Unocal contract workers. Once he looked, <u>after</u> the accident, Mr. Burns testified he knew it was a hazard, and the hazard was removed – too late for Larry Grove.

Unocal made sure to have indemnity provisions that would shift the liability from Unocal (despite Unocal's fault) to the contract employee's own employer. Thus, it is at least a question of fact as to whether Unocal's "indifference" is reckless, and also based on lack of concern as to its own liability for hazards encountered by contractors, despite its own responsibilities as a landowner and under contract.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

31

Unocal had systemic safety failures that showed reckless indifference, including improper construction of a rudimentary make-shift platform, no maintenance, inadequate record-keeping, indifferent inspections, and lack of concern for non-Unocal personnel.

Even after the work platform collapsed injuring Larry Grove, Unocal and/or its agents, apparently simply reattached the same hazardous work platform.  There are no records of any accident investigation to find the cause of the collapse.  After all, if it collapsed again, the ones injured would be contract employees, and Unocal would not pay for its own fault due to the indemnification agreement.

Plaintiffs punitive damages are a jury question.  Unocal's motion should be denied.

There was conscious decisions by Unocal to ignore its responsibilities as a building owner, under the Unocal/Siemens contract, in conducting proper safety inspections, in failing to investigate the accident, in allowing the structure to be reattached, thereby exposing contract employees subsequent to Larry Grove to injury, in failing to properly construct, maintain, inspect, repair, abate the hazard.  Conscious decisions need not be action; they can also be inaction or omission.  Unocal need not know that Larry Grove specifically would be injured.  The conscious decisions grossly increased the

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

risk of injury by failing to take safety measures to reduce danger. The fact that Unocal apparently inspected the parts of the building mainly utilized by Unocal employees to identify and abate hazards, but displayed a conscious decision to not do so where contractors primarily worked on servicing the building, exhibits reckless indifference to the interests of non-Unocal people and warrants the submission of punitive damages to the jury.

The cases cited by Unocal do not address the factual situation herein and are distinguishable. Plaintiffs refer to the Unocal contention that cases require intention to injury and/or that defendant knew plaintiff would be injured defendant's indifference/unconcern. There were multiple duties that Unocal decided not to do. This case is not a negligent failure to competently perform a duty as happened in Hagen Insurance Inc. v. Roller, 139 P.3d 1216 (Alaska 2006) and Chizman v. Mackie, 896 P.2d 196 (Alaska 1995). Unocal simply did not ever attempt to fulfill its landowner and contractor responsibilities.

Unocal also claims that plaintiffs' expert reports do not support punitive damages. While this is incorrect, the plaintiffs are also attaching Affidavits of plaintiffs' experts Dr. Balser, Mr. Manning, and Mr. Carmichael,, which have been

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

previously quoted in full, which support plaintiffs' position as to punitive damages.

Furthermore, plaintiffs are entitled to an inference/ presumption for missing evidence against Unocal. There should be an inference/presumption that the missing safety inspection records, work platform records, and the destruction of the platform contain evidence that would support punitive damages. Unocal employee Ken Burns admitted that it is normal procedure to keep safety records and both Mr. Burns and Mr. Carmichael agreed that keeping safety inspection records is important to determine what has been inspected before, what hazards have been discovered, and what still remains to be abated. Thus, it is not simply whether Unocal knew Larry Grove had a potential claim as Unocal had a separate responsibility to hold onto safety inspections records. A mere failure to keep such records is enough to create an adverse inference. Vodusek v. Baylines Marine Corp, 71 F.3d 148 (4th Cir. 1995). Where it is not part of standard procedures to destroy the evidence an adverse inference presumption is warranted. See Wadju v. Kingsbury, 652 N.W. 2d 856 (Minn 2002) rev. denied 11/19/02; Stanton v. National R.R. Passenger Corp. 849 F.Supp 1524 (M.D. Ala 1994); Kurszy v. St. Joseph Veterans Ass'n, Inc., 820 P.2d 929 (R.I. 2003); Tancrelle v. Friendly Ice Cream Corp. 756 P.2d 744 (R.I. 2000).

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Burden shifting has been recognized in Alaska for absence of records. <u>Patrick v. Sedwick</u>, 391 P.2d 453 (Alaska 1984); <u>Sweet v. Sisters of Providence in Wash</u>., 895 P.2d 484 (Alaska 1995).

Unocal showed reckless indifference to the interests of others by failing to fulfill many duties and obligations. First, Unocal was a landowner. A landowner has a duty to exercise reasonable care to maintain its premises for visitors. See <u>Kremer v. Carr's Food Center, Inc.</u>, 462 P.2d 747 (Alaska 1969). There is an implied representation that land is made ready and safe for use. *Restatement (Second) of Torts*, § 343, comment b, n. 22 at pg. 751. In <u>Kmart Corporation v. Peak</u>, 757 So.2d 1138, 1144 (Ala. 1999) the court noted that Kmart owed plaintiff "a duty to exercise reasonable care to maintain its premises in a reasonably safe condition."

Unocal, in dereliction of its landowner duties, claims to be unaware of a large structure, i.e., a work platform, in the filter room of the mechanical floor in its building, for at least a <u>decade</u>. The structure was Unocal's responsibility. It was erected improperly, and apparently <u>not</u> inspected or maintained. It is simply not credible, or at least a question of fact, as to whether Unocal was aware of the platform. Despite Unocal denials, Unocal employees and agents went <u>into</u> that room.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal conducted building safety inspections (the reports, though supposed to be kept in the normal course of business, have disappeared) to find and remedy hazards. It is reckless to ignore an entire floor, i.e., the mechanical floor containing the filter room, as Ken Burns claimed in his deposition. Thus, a conscious decision was made to omit to fulfill the duties of a landowner to provide reasonable safe premises as to the mechanical floor and filter room, where employees of contractors, such as plaintiff Larry Grove of Siemens Building Technologies, Inc., would be exposed to hazards left un-inspected and premises left un-maintained.

Unocal, according to testimony of Charles Arnett and Archie Cook, assumed the duty to approve and/or ratify anything, be it a new chair or structure, within the premises. It recklessly failed to comply with its duties and obligations by approving and/or ratifying and/or permitting and/or failing to inspect and/or failing to maintain and/or failing to remove the improperly constructed/maintained work platform.

Unocal undertook a duty to inspect the premises for hazards. It cannot consciously ignore an entire section of the building as Mr. Burns, the Unocal Safety Specialist, appears to admit at his deposition. It is reckless to consciously fail to fulfill the duty of safety inspections by ignoring a large part of the premises.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

36

Even after the collapse of the work platform on September 9, 2002, the systemic reckless failures of Unocal continued. It failed to conduct any accident investigation to ascertain why the work platform failed (or if it did, such investigation has not been provided to plaintiffs). Unocal apparently had its then contract employee, Paul Crapps, simply reattach the collapsed work platform, thereby allowing the recklessly built and maintained structure to remain. It was only removed after an OSHA inspection in March of 2003.

Furthermore, despite the normal practice to keep safety inspection reports, <u>none</u> of such pre-March 2003 reports have been located. It is good safety practice, in maintaining safe premises to retain safety reports, as both Mr. Burns and Mr. Carmichael agree.

Punitive damages are appropriate under AS 09.17.020, where the plaintiffs prove "that the defendant's conduct (1) was outrageous, including acts done with malice or bad motive; or (2) evidenced reckless indifference to the interests of another person." Under Alaska law, punitive damages are recoverable for acts done with malice or bad motives <u>or</u> reckless indifference to the interests of others. <u>Ace v. Aetna Life Ins. Co.</u>, 139 F. 3d 1241 (9th Cir. 1998); <u>U.S. v. CNA Financial Corp</u>., 381 F. Supp 2d 1088 (D. Alaska 2005).

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The evidence in this case shows that the work platform/scaffold was an unreasonably dangerous piece of equipment. It was designed poorly, it was constructed out of inferior materials, including inadequate bolts/screws, it was inadequately maintained, attached to thin flimsy sheetmetal frames rather than being secured into studs or solid structures, and ultimately Unocal simply allowed this structure to be utilized by contractors. That is, it was contractors' employees that would bear the risk of injury, and not Unocal employees. Furthermore, Unocal had an indemnity agreement with Siemens, as it apparently does with other contractors, which would require Siemens and other contractors to indemnify Unocal for the consequences of Unocal's own negligence. Thus, Unocal's actions in authorizing and building and maintaining this inadequate, defective, unreasonably dangerous work platform/scaffold shows the callus and reckless indifference of Unocal to the consequences, including the risks of injury, or worse, to employees of contractors, since Unocal had agreements whereby they would not bear the risk of damages for negligence.

Unocal is liable for punitive damages so that it will not continue to operate in reckless indifference to the safety of others, since there may be little risk to Unocal employees and Unocal has indemnity agreements. Thus, only an award of punitive damages against Unocal will have any effect. Unocal's

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

actions warrant the imposition of punitive damages to punish and deter such conduct in the future and that Unocal should be responsible for the payment of punitive damages to the plaintiffs herein.

The evidence herein, including that of Ken Burns and others, shows that the work platform/scaffold was unsafe. Though Unocal may claim lack of knowledge, that argument should not be given any credence by this court, especially in light of the destruction of evidence and/or the failure to produce evidence by Unocal, and the length of time the structure was in the building, and the admissions that Unocal personnel went into the room (and it would be reckless for a landowner such as Unocal to claim lack of knowledge of its premises, or what structures are in there), and inspections to identify hazards where the mechanical floor was _ignored_. The landowner and contractual duties of Unocal were ignored or disregarded.

There are absence of safety records, and recklessness in simply re-attaching the dangerous platform _after_ Larry Grove's injury, until ordered by OSHA to abate the hazard. Then, Unocal, asserting ownership over the work platform, simply destroyed the work platform in March of 2003. In addition, it is not just simply the destruction of the work platform, but the absence of other evidence that should be available, including safety records, which apparently are missing, or any and all

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

39

records regarding the work platform by Unocal.  This is conduct

that cannot be accepted, and plaintiffs respectfully request

that the court either find the spoliation evidence of bad

conduct by defendant, as well as adverse inferences that would

apply to the failure to produce the evidence further support

punitive damages as a matter of law.

**IX.  <u>CONCLUSION</u>**

Accordingly, for the reasons set forth herein, plaintiffs

respectfully request that Unocal's Motion for Partial Summary

Judgment be denied.

RESPECTFULLY SUBMITTED this 6th day of August, 2007.

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs


/s/ Michael Cohn
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail:  nbackes@weidnerjustice.com
ABA No. 8506049



<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on August 6, 2007 a copy of the foregoing
**PLAINTIFFS' OPPOSITION TO UNOCAL'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PUNITIVE DAMAGES** was served electronically on John
B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen &
Thorsness, LLC.
<u>s/ Michael Cohn</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571