Bob Carmichael, CSP OHST CHST<br>
Bob Carmichael & Associates HSE<br>
200 West 34th Avenue, #47<br>
Anchorage, AK 99503<br>
907-561-9977<br>
r.j.carmichael@att.net

July 29, 2006

Michael Cohen.
Weidner and Associates
330 "L" Street, Suite 200
Anchorage, Alaska 99501

Re: Lawrence H. GROVE, et al. v. UNOCAL CORPORATION
Case No. A04-0096-CV (JKS)

Dear Mr. Cohen,

Per your request, I have reviewed the available facts of the above referenced case. Information was supplemented by a personal visit to the accident site on April 12, 2006 by myself and on January 24, 2006 by my associate Sally Ann Carey.

In preparing my opinion, I have reviewed the following documents:

- Plaintiff's rule 26(A)(1) Initial Disclosures (Bates numbers LG000001 to LG00508) (Cohen 07-20-04)
- Defendant's initial disclosures (Bates numbers DEF 00001 to DEF 00063) (Jamieson 07-28-04)
- Complaint (04-16-04)
- Answer (05-17-04)
- Deposition of Cynthia H. Grove
- Deposition of Lawrence H. Grove
- Photographs of mechanical room and work platform
- OSHA records Bates stamp LG000025 to LG 000030
- Scheduling and Planning Order (07-08-04 Judge Singleton)
- Stipulation for extension of time to prepare expert reports (Judge Singleton 06-08-05)
- Joint motion to extend discovery and modify the scheduling and planning conference report (08-23-05 Thorsness)
- Response to first discovery requests to plaintiff Cynthia Grove (Cohen 08-30-04)
- Response to first discovery requests to plaintiff Michael Grove (Cohen 08-30-04)
- Response to first discovery requests to plaintiff Sarah Grove (Cohen 08-30-04)
- Response to first discovery requests to plaintiff Lawrence Grove / Photographs (Cohen 08-30-04 Bates stamp LG00509 to LGA00528)
- Responses to plaintiff's second discovery requests (Martin 11-11-04)
- Defendant's first supplemental disclosures (Martin 11-11-04)

Exhibit __3__
page __1__ of __26__

  Responses to plaintiff's third discovery request (Martin 11-0-04 Bates stamp DEF
      01032 to DEV 01040)
  Defendant UNOCAL Alaska's second supplement to Initial disclosures (Thorsness
      05-31-05)
  Plaintiff's rule 26 supplemental disclosures (Cohen 06-09-05 Bates stamp LG 00529
      to LG 00572)
  Plaintiff Larry Grove's responses to defendant's second discovery requests (Cohen
      06-09-05). Documents are not Bates stamped.
  Plaintiff's rule 26 2nd supplemental disclosers (Cohen 06-24-05)
  Defendant's responses to plaintiff's third (sic) discovery requests (Thorsness 06-27-
      04)
  Defendant's responses to plaintiff's fifth discovery requests (Thorsness 06-27-05)
  State of Alaska, Department of Labor and Workforce Development, Occupational
      Safety & Health Labor Standards & Safety Division (OSHA) (Bates stamp
      numbers LG00782 to LG00858)
  Grove v. UNOCAL photos (Bates stamped LG00859 to LG00873)

### *Incident History*

The UNOCAL Anchorage office is located at 909 West 9th Avenue. The top level of the building contains air conditioning equipment and other utilities. The air conditioning system includes a bank of filters which can be exposed to outside air through a set of louvers mounted in an outside wall. Each individual filter is set into a vertical frame thus creating a filter bank. These filters require periodic maintenance.

The filter bank is contained in a service room at the top of the building. The service room is entered through a hatchway from a utility corridor. The top row of filters in the rack is too far above the floor to be reachable by an average-sized person. At some time prior to the accident to Mr. Grove, a work platform had been installed in the filter room to allow access to the upper rows of filters. According to statements made in the case, it was the collapse of this platform that resulted in the injuries to Mr. Grove.

### *Platform Condition Factors*

To my knowledge, no engineering diagrams, as-builts, or photos of the work platform exist. However, based on deposition statements and physical inspection of the filter room, the platform consisted of metal brackets which were attached to the sheetmetal of the filter frame on one side and sheetmetal ductwork on the other using screws. The brackets did not appear to extend to the floor and were thus suspended by the screws. The brackets were then used to support wooden planks which partially spanned the working surface. The platform was accessed by using a ladder.

Examination of the mounting holes where the brackets had been installed indicated that none of the screws had penetrated into any solid structural element and it was the strength

of the screw-to-sheetmetal interface that was intended to support the weight of the platform and whatever load was placed on it.

The platform boards, when installed, created a work platform that was approximately at the same level as the top of the ductwork located next to the exterior wall of the building. This would make the elevation of the work platform greater than six feet above the floor of the filter room. There has been no evidence that guardrails were installed on the open sides of the work platform. There was also no evidence or statements made that the individual planks had ever been secured to the brackets.

### *Regulatory Considerations*

The following U.S. Occupational Safety and Health Administration (OSHA) citations are from the general industry regulations in 29 CFR 1910.

29 CFR 1910.21(a)(4)
> *"Platform." A working space for persons, elevated above the surrounding floor or ground; such as a balcony or platform for the operation of machinery and equipment.*

29 CFR 1910.21(f)(27)
> *"Scaffold." Any temporary elevated platform and its supporting structure used for supporting workmen or materials or both.*

1910.22(d)(1)
> *In every building or other structure, or part thereof, used for mercantile, business, industrial, or storage purposes, the loads approved by the building official shall be marked on plates of approved design which shall be supplied and securely affixed by the owner of the building, or his duly authorized agent, in a conspicuous place in each space to which they relate. Such plates shall not be removed or defaced but, if lost, removed, or defaced, shall be replaced by the owner or his agent.*

1910.23(c)(1)
> *Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides, . . .*

29 CFR 1910.28(a)(4)
> *Scaffolds and their components shall be capable of supporting without failure at least four times the maximum intended load.*

29 CFR 1910.28(a)(10)

> *Nails or bolts used in the construction of scaffolds shall be of adequate size and in sufficient numbers at each connection to develop the designed strength of the scaffold. Nails shall not be subjected to a straight pull and shall be driven full length.*

### Safety Considerations

Whenever a person is on a surface where areas of lower elevation are nearby, there is a danger of falling to that lower level. This can occur from a slip or trip resulting in a loss of balance; from inattention to surroundings (such as stepping off the edge of a roof during construction work); or physical collapse of the working surface.

In safety practice, there are four general methods of controlling this risk: elimination of the need to work at height, engineering of the work platform, guardrails and other forms of fall prevention and protection, and education and awareness for the workers.

In the case of the work being performed on these filters, it may have been possible to design the filter tray so that it could be lowered to allow floor-level access to all the filters that needed maintenance.

In this particular case, a platform was built to allow access to the upper row of filters. The expectation is that the platform would be able to support its own weight, plus the weight of the worker and his materials, plus a suitable safety factor. In the practice of safety, it would be expected that the platform would be designed by a suitably competent engineer and installed by suitably competent workers. The platform would be subject to regular inspection and maintenance. The specifications for the brackets and their attachment to the structure, the size and strength of the planking and the spacing of their supports, and the maximum working load of the platform would all be specified.

### Opinion

1. Whether intended to be permanent or temporary, neither engineering nor safety standards were applied to the construction of this platform.

2. The screws used to attach the brackets to the walls were not appropriate for the application and failed under load.

3. Floor loading limits for the platform had not been established and posted and the limits had not been reviewed and approved by an engineer or regulatory authority.

It is my professional opinion that had any of these three elements been eliminated, that, although the platform still might not have been considered safe, it would not have collapsed under the load applied at the time of the accident.

Since discovery is still ongoing at the time this report is submitted, I reserve the right to supplement this report as additional information is received throughout the discovery process.

_____         _____
Bob Carmichael, CSP

Michael Cohn
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE, <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br> UNOCAL CORPORATION <br><br>　　　　　Defendant | ) ) ) ) ) ) ) ) Case No. A04-0096 CV (TMB) ) ) ) ) ) ) ) ) |

**AFFIDAVIT OF ROBERT J. CARMICHAEL, CERTIFIED SAFETY PROFESSIONAL**

STATE OF ALASKA         )
                        )  ss.
THIRD JUDICIAL DISTRICT )

　　　　ROBERT J. CARMICHAEL, CSP being first duly sworn under oath, deposes and states as follows:

　　　　1.　I have personal knowledge of the matters contained herein, and I am competent to testify to same.  This Affidavit supplements my Opinion dated July 29, 2006;

2. I am currently employed as a Safety Specialist for BP Exploration in Baku, Azerbaijan. This position involves providing safety advice to supervisors, employees, and contractors, as well as coaching for the development of Azeri National staff, and training on a variety of safety topics;

3. My prior work history is set out in my Resume, which is attached hereto as Exhibit 1;

4. I currently hold the following national safety certifications:

    a. CSP - Certified Safety Professional;

    b. OHST - Occupational Health and Safety Technologist; and

    c. CHST - Construction Health and Safety Technologist.

All three of these certifications are current, and in force as of the date of this Affidavit;

5. My experience and training includes general safety, safety processes, safety risk analysis and control, safety inspections, safety record keeping, safety training and accident investigation;

6. Safety quality control includes proper safety design, erection, maintenance, inspection, and repair. It also includes a prompt, complete, and documented investigation of any

accident in order to learn and ensure that such accidents don't happen in the future;

7. I have in my career inspected many buildings and facilities. My opinion, based upon my training and experience is that it is a responsibility of a building owner to provide a reasonably safe environment for its own employees, contractors, visitors and members of the general public who may access said premises;

8. Also in my career, I have reviewed many contracts which contain the requirement for the property owner to provide safe and usable access for performance of work by contractors;

9. I have seen contract documents between Unocal and Siemens Building Technologies, Inc. (see Exhibit 2). Under Article 6.3, Customer Responsibilities, it states:

> Customer will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices. Customer [Unocal] will be solely responsible for any removal, replacement or refinishing of the building structure or finishes that may be required to gain access to such Equipment.

It is my opinion, based upon my training and experience, that Unocal had a responsibility to provide Seimens' workers with a safe means of accessing the equipment for which they were contracted to service. The work platform involved in this accident was part of the building structure, and appears

not to have met the qualifications of a safe access. It also appears, under Article 6.3 to be the responsibility of Unocal;

10. I have seen no evidence of proper design, erection, maintenance, inspection or repair of the work platform;

11. The purpose of a proper safety inspection is to identify hazards, and the risks of those hazards. Once those have been identified, appropriate controls can be developed and implemented. One form of this process is referred to as a quantitative risk assessment;

12. It appears from the deposition testimony of Unocal employee, Ken Burns, that he conducted at least two safety inspections of the Unocal building where the accident occurred, one in 1998 and one in 1999. It appears those safety inspection records have not been found or provided to the plaintiffs. Although I have not been provided with copies of these inspections, it appears that the hazards and risks inherent in this work platform were either not identified or not adequately controlled;

13. It appears that Mr. Burns has claimed that he did not inspect the floor in the building where the incident occurred. It also appears that he claims that Unocal workers did not regularly access that floor, and therefore, his assessment was that there was no, or limited, risk. It is my

experience that it is impossible to make an appropriate, usable assessment of hazard and risk, without inspecting the area;

14. Unocal cannot fail to undertake safety inspections simply because the risk of encountering hazard will fall primarily on contract employees performing services in Unocal's building;

15. It is my experience that records of safety inspections, and the corrections made as a result of those inspections, must be kept in order to ensure that hazardous and risky conditions are not repeated unnecessarily. Such records are useful to review when conducting subsequent inspections to determine what hazards were previously identified, whether they were remedied, and whether control measures which were implemented are still in place and effective;

16. There appears to be little or no evidence of any investigation of the collapse of the platform to determine the mode of failure and that the platform may have been simply reinstalled without determining the cause of failure. In my experience, this is unacceptable from a safety standpoint. There appears to be no records that Unocal conducted any such inspection;

17. It appears that the components were destroyed by Unocal without any investigation or analysis to determine the cause of the failure.

18. It appears from evidence which I have reviewed that this platform had been in place in the Unocal building for at least 12 years prior to the accident;

19. It seems difficult for me to accept that an area of the building such as this HVAC room, would have not been subject to safety inspections for that long a period. Therefore, I would have expected someone in the Unocal organization to have known about this platform, and that it would then have been subject to an appropriate safety inspection;

20. Lack of records, lack of investigation, and lack of inspection, points to, in my opinion, a systemic failure to manage hazards and risks in a prudent and organized way;

21. In summary, in my expert opinion, I would consider the methods used, or in this case, not used, by Unocal to demonstrate a reckless disregard for standard, generally accepted, safety practices meant to prevent injury to their own employees, as well as to contract employees asked to perform work on the Unocal premises. I have seen no evidence of the application of engineering, or safety standards in the construction, inspection, maintenance, or control of the work platform involved in this incident.

FURTHER AFFIANT SAYETH NAUGHT.

Affidavit of Robert J. Carmichael, CSP                                  Page

DATED this _3rd_ day of August, 2007.

_____
ROBERT J. CARMICHAEL, CSP


SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned, a Notary Public in and for the State of Alaska, duly commissioned as such, this _3rd_ day of August, 2007.

_____
Notary Public in and for the State of Alaska
My Commission Expires: _7-25-09_

Affidavit of Robert J. Carmichael, CSP                                Page

Robert Jay Carmichael, CSP, OHST, CHST

200 West 34th Avenue #47, Anchorage, AK  99503    (907) 561-9977
Business Phone:  994-12-4979835 (Azerbaijan – GMT +4)

## QUALIFICATIONS SUMMARY

More than 33 years of injury prevention experience with an emphasis in **Loss Prevention, Safety Training, Program Design and Maintenance**, and the use of **Computers** to support safety programs. Drug free, U.S. Citizen, current passport

* Extensive experience in hazard recognition and control, emergency care, safety training and records keeping. Experienced with all sections of the Federal OSHA codes and related guidelines.

* Specialized skills in the set-up of safety and loss control programs, safety program monitoring, safety and skills training, safety incentive programs, and performance reporting.

## PROFESSIONAL WORK HISTORY

**Safety Operations Manager** -    BP Exploration (Caspian Sea)
April 2004 to Present. Support Azerbaijan Business Unit central safety processes with a team of two ex-pat and 6 National employees and contractors. Key supported functions include: data acquisition, analysis and reporting; centralized training support and quality control; audit and inspection; Performance Unit support; and development of National staff.

**Wells Group HSE and Training Advisor** -    BP Exploration (Alaska)
November, 2000 to April 2004. Provide complete HSE support for BP well maintenance operations in Prudhoe Bay. Position includes extensive field work and oversight of contractor HSE programs. Determine health, safety and environmental training requirements for BP's Greater Prudhoe Bay operations. Position includes assessment of training needs, development of training materials, selection of delivery methods, conduct of training, and coordination of training vendors.

**Corporate HSET Manager** -  Alaska Petroleum Contractors
November, 1982 (with predecessor companies) to November 2000. Assigned as project safety specialist (9 years) in support of work for B.P. Exploration (Alaska) at their Prudhoe Bay and Endicott operating areas and as Corporate HSET Manager. Assignments include risk analysis and control, safety training and program development, record keeping, and performance auditing. Additional duties at other locations have included computerized accounting support and computer programming. National certification as an OHST, CHST and CSP. North Slope Training Cooperative instructor for both the orientation and "high risk" topics. First aid and CPR instructor.

**Mud Engineer** -    IMCO Services, Anchorage, Alaska
October, 1981 to November, 1982. Assigned to drilling sites throughout Alaska to monitor the composition and condition of drilling fluids. Regularly worked with engineers and technicians to insure a safe environment. Performed maintenance checks, materials ordering and inventory, and maintained numerous logs and reports. Experience includes sites in Kuparuk, the Kenai Gas Fields and Cook Inlet.

**Paramedic** -    Medical Park Family Group, Anchorage, Alaska
March, 1979 to October, 1981. Sole on-site medical support on isolated North Slope drilling and construction sites with populations up to 250. Performed all treatment procedures, medical evacuation coordination, report writing, treatment documentation, supply ordering and narcotics inventory. Also performed the functions of the Safety Engineer. This work occasionally involved work in dangerous locations and toxic atmospheres.

EXHIBIT 1

**Hill Chief** - Alyeska Ski Resort, Girdwood, Alaska
March, 1976 to March, 1979. Directed and supervised members of the professional ski patrol during hill maintenance, avalanche control, rescue, first aid, lift safety and crowd control functions. Facilitated related training courses. Maintained all rescue equipment.

**Lead Medic / Training Director of Service**, Girdwood Volunteer Ambulance Service, Municipality of Anchorage.
November, 1976 to February, 1984. Directed patient care and medic training for this volunteer ambulance service covering Seward Highway communities, mile 50 to 107.

## Education

- Certified Safety Professional (CSP), certificate number 15312, 1998
- Occupational Health and Safety Technologist (OHST), certificate number 1808, 1996
- Construction Health and Safety Technologist (CHST), certificate number C301, 1998
- CAOHC certified in Occupational Hearing Conservation, 1994
- North Slope Training Cooperative Instructor Evaluator (orientation and high risk), 1998
- First Aid and CPR instructor, 1996
- Clean Water Act compliance, 2002
- Clean Air Act compliance, 2002
- Introduction to Environmental Management, 2003
- Enhanced Organizational Teamwork Training
- Ergonomic Workstation Evaluation, 1997
- Tools for Continual Improvement, 2003
- U.S. Environmental Laws and Regulations, 2003
- Criterion Referenced Instructional Methodology, 2001
- Industrial Scientific Calibration and Maintenance of hydrogen sulfide monitors, 1997
- OSHA Institute courses 510, 521, 503, 222A, 501 and 201A
- BS, Biology, Alaska Pacific University, 1972 with one additional year of post-graduate work in chemistry
- IMCO Drilling Mud School, Houston, Texas, 1981
- Emergency Medical Technician, Level 2, Ambulance, 1978
- Emergency Medical Technician Instructor, 1982
- NIOSH Approved Spirometry Testing and Respiratory Surveillance Training Program, 1994
- Hazardous Waste Operations and Emergency Response General Site Worker (62.5 hr.), 2003
- Crane/Sling Inspection and Operation, 1994
- State of Alaska, Level - 1 Fire Extinguisher Inspector, 1997

## Memberships

- Fire Safety Officers Association, 2002
- American Society of Safety Engineers, 1998
- Human Factors and Ergonomics Society, 1998
- National Fire Protection Association, 1998
- National Safety Council

EXHIBIT 1