Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, et al.,    )
                              )
              Plaintiffs,     )
                              )
vs.                           )
                              )
UNOCAL CORPORATION,           )
                              )
              Defendant.      )
_____)
Case No. A 04-0096 CV   (JKS)

---

VIDEOTAPED DEPOSITION OF JOHN STALLONE

---

Pages 1 - 70
Friday, April 14, 2006
3:46 p.m.

Taken by Counsel for Plaintiffs
at
The Offices of Department of Labor & Workforce
Development
3301 Eagle Street, Suite 209
Anchorage, Alaska

RECEIVED
MAY 0 9 2006
WEIDNER & ASSOCIATES
COPY

Exhibit 9
page 1 of 3

Page 60

1  A  If there were, they would be in this
2  case file.
3  Q  And if there aren't, then the statement
4  by Michelle McNair-Davis on the previous page,
5  LG726, is correct. She says, "I can report there
6  are no witness statements to pass on to you."
7  A  Right. I would say that's a correct
8  statement, yeah.
9  Q  Now, this statement itself does not say
10 that the rest of the file has not been passed on
11 to the requesting party.
12 A  No. It's a request to pass it on to the
13 requesting party. You're referring to --
14 Q  I'm talking about 726 now. I'm back to
15 726. 726 doesn't say that the file isn't being
16 sent to them; it's just telling them, however --
17 to enlighten them that there are no written
18 statements in those files?
19 A  Right.
20 Q  So this document itself, does that tell
21 you that you did not send these documents?
22 A  No, no, it doesn't say that at all.
23 Q  Okay. And the -- and there was some --
24 I just wanted to read -- Archie Cook was one of
25 the witnesses that is identified in the Safety

Page 61

1  Narrative that was done by Mr. Scanlon in regard
2  to Unocal, and Mr. Cook was deposed on March 15,
3  2006. And remember we had the discussion about
4  the lack of any safety reports indicated in
5  Mr. Scanlon's report. And Mr. Cook on page 32 of
6  his deposition -- this is what happened.
7         I asked him this question in regard to
8  the building: "Were there periodic safety
9  inspections?"
10        "Answer: Yes."
11        "Question: Of the building from the
12 time you arrived in 1999 through 2002?"
13        "Answer: Yes."
14        "What did these periodic safety
15 inspections entail?"
16        "Answer: It involved one of our safety
17 technicians going around the office looking for
18 safety hazards."
19        And then later on I asked him: "Did you
20 observe the safety inspection at all?"
21        And he said -- "Answer: I didn't
22 observe the inspection; I saw the report."
23        "Question: You saw the report?"
24        "Answer: Yes."
25        "Can you tell me how detailed the report

Page 62

1  would be?"
2         "Answer: I mean, it was basically
3  telling us what things were hazardous or
4  potentially hazardous and potentially needed
5  fixing."
6         And he also indicated later on his
7  understanding was that they would check every nook
8  and cranny within the building.
9         Now, you saw those pictures of that
10 platform. In your opinion as an experienced OSHA
11 investigator and as chief of OSHA, if a safety
12 technician inspected and saw that platform, should
13 he recognize that that was hazardous and should be
14 replaced or repaired?
15        MS. JOHNSON: Objection; foundation.
16 A  Yes.
17 Q  (By Mr. Cohn) Okay. And if there was
18 such safety reports, would that have been
19 something important to share with Mr. Scanlon when
20 he was conducting his investigation, if he asked
21 them for -- if they had any safety reports on the
22 building?
23 A  Well, if he asked them for it, yes, I
24 would expect them to give it to him, yes.
25 Q  And the last subject and then I'm done.

Page 63

1  There was some questioning before about whether or
2  not Siemens could pass on liability to someone
3  else for -- that was their own responsibility. In
4  this case Siemens has an employee and let's say as
5  an employee, a contractor goes to the place of
6  employment of some entity such as Unocal, whether
7  it be their building or on their platform, and
8  they're being supplied the equipment by Unocal,
9  whether it be a ladder or work platform or
10 scaffold.
11        Would it be your opinion that the person
12 responsible for ensuring that the equipment that
13 is used by a contractor is the person providing
14 the equipment for their use?
15 A  It's a dual role there. The
16 contractor -- for example, if Mr. McKinstry wanted
17 me to come over to his house and paint and I'm a
18 contractor and he's hiring me and he says, I'll
19 provide you with the equipment, and I'm going to
20 have an employee with me, I better make sure that
21 the equipment that he's giving me is suitable for
22 my employee to use. So, if I don't and I have
23 this wording that you're talking about in a
24 contract that I say, I'm going to assume all the
25 responsibility of the equipment, I don't know if

Page 64

1  it -- I'm not a lawyer, so I don't know if it
2  completely exonerates Mr. McKinstry, but I would
3  say that I have -- I guess it's how good you write
4  these things, so I don't know.
5       But from an OSHA standpoint, it is
6  always the responsibility of the employer to make
7  sure that the employee is working with safe
8  equipment, albeit from the employee himself. We
9  have cited employers for having employees with bad
10 equipment, which infuriates them, because they go,
11 it's not even mine. I said, well, I don't care.
12 He's got it on the job site, he's using it, and
13 you're the responsible party so you have to make
14 sure that the equipment they're using is up to par
15 and meets the regulations. I don't know if that
16 answers your question, but...
17    Q   Well, in a case such as this -- where
18 you said you want to Mr. McKinstry's house to
19 paint his house --
20    A   Yeah.
21    Q   I don't know if I want to use that
22 specific example.
23    A   Well, use whatever one you want. I
24 don't care.
25    Q   If there's a work platform up in the

Page 65

1  filter room where this accident happened and an
2  individual such as Mr. Grove gets up on that work
3  platform, which is provided by Unocal, does he
4  have a right to expect that Unocal has constructed
5  and maintained this structure properly so that the
6  bolts won't shear off and him fall?
7     A   There's a dual responsibility. I'll go
8  back to that again. He also has the -- he should
9  also expect his employer to go inspect what he's
10 about to climb onto to make sure that that is --
11 that platform is secure and will withstand his
12 weight.
13      But, yes, the creating employer in this
14 case, Unocal, was also, we felt, to be held
15 responsible because it was their building, it was
16 their platform. And they're saying, you can come
17 in and use our equipment, okay, fine. But it's
18 also the employer's -- under OSHA now. I'm not
19 here under any other circumstance. Under OSHA
20 regulations that's why we're able to cite both
21 parties.
22    Q   So you're not saying, for example, in a
23 court of law how -- the fines that you issued,
24 what the percentage of fault should be apportioned
25 to each party?

Page 66

1     A   I wouldn't go there, no. I mean, if you
2  asked me my own personal opinion, maybe. But from
3  an OSHA standpoint, I've got to look at this
4  thing, who is the responsible parties here? And I
5  saw two responsible parties. I saw the party that
6  provided the platform, and I saw the party that
7  provided the employee who was standing on the
8  platform. Somebody should have gone over and made
9  sure that this employee was on a good piece of
10 equipment.
11    Q   I know you're talking about technically
12 under the OSHA regs. Like, Siemens has a contract
13 with Unocal to service their building or do other
14 work for them and they go up to this platform,
15 which is provided by Unocal, and then if they
16 complain to Unocal about the equipment and they
17 lose the contract, then they don't have the work.
18      MS. JOHNSON:  Objection; foundation.
19    A   I mean, I can't --
20      MR. COHN:  I'm just asking if that
21 might --
22    A   I'm sure in the real world that happens,
23 but I can't look at those kind of things when I'm
24 looking at these case files.
25    Q   Well, I'm saying -- and then I'll be

Page 67

1  done -- but when you go -- like, for instance,
2  when you go to Mr. McKinstry's house, you gave the
3  example of defective stairs. If the stairs
4  collapse at the Unocal building while the Siemens
5  employee is on it, would that be the
6  responsibility of Siemens?
7     A   Okay. Let's say -- let's take that
8  example, because I've had this happen in the past.
9  Like I said, Siemens' responsibility is to make
10 sure the equipment their employee is using is up
11 to par, as well as the person who's providing it,
12 the employer who's providing the equipment plus
13 the employer who is providing the employee. I'll
14 go back to that.
15      Now, in a scenario where this employee
16 is coming down the fire escape staircase and
17 there's a chunk of the concrete out of the step
18 and he twists his foot and falls downstairs and
19 gets seriously hurt, is that the employer's fault
20 now? Siemens should have gone and made sure that
21 the fire escapes -- no, because that wasn't part
22 of the original contract work.
23      The employee was up there to replace
24 filters. He's coming down the stairs, he falls
25 down the stairs because the stairs are