Page 28

1  Q  Well, the reason I'm asking that question is
2  because, you know, part of what's involved in this
3  case has to do about the work platform, you know, how
4  it came to be there and what's been done to it from
5  the time it was there.
6      So this request also encompasses Landis & Gyr
7  records as far back as Landis & Gyr was servicing the
8  building too, you know, because we're just trying to
9  reconstruct the records as far as we can. It may be
10 something that happened before even Landis & Gyr, the
11 platform, but the only way to know for sure is to
12 actually examine all the records that are there.
13      And I know that that might encompass more
14 work, and I appreciate you appearing here. But I'd
15 request that those records be searched, the same
16 records that you produced here for Siemens and then
17 for Landis & Gyr, even though they're in archives.
18 You indicated that they're kept by contract; they
19 should be locatable. That was a long preamble.
20      MR. COHN: Is that all right, Liam?
21      MR. MORAN: I don't know. We'll take your
22 request under advisement.
23      MR. COHN: Well, he already indicated how
24 they were stored, up in the archives. I mean, to the
25 effect that they're still in existence, they should be

Page 29

1  locatable up in archives.
2  BY MR. COHN:
3  Q  Do you know if any of the documents were put
4  on like microfiche?
5  A  They're not.
6  Q  They're not. They just stored the hard
7  copies.
8      And the request also is for e-mails too. Any
9  electronic data, including e-mails.
10     I'm almost done.
11     No. 10, when I asked for -- requested safety
12 protocols regarding the Siemens/Unocal contract, did
13 you understand what was meant by that request?
14 A  What we have with -- yes.
15 Q  And what was your understanding?
16 A  What we have with respect to safety protocol
17 as between Siemens and Unocal is included in the terms
18 and conditions and in our contract. That's all the
19 documentation I have on safety protocols.
20 Q  The reason I was asking that is because you
21 indicated you were service manager/operational person
22 in charge of execution of service contracts. What I'm
23 assuming, though it may be incorrect, is that if you
24 get a service contract for a building -- heating,
25 ventilation, air conditioning -- they may have certain

Page 30

1  protocols or rules or requirements.
2      Do they normally -- would they normally, like
3  Unocal, provide you documents as to what you can and
4  can't do, or what you need to do if you're going to do
5  something? Like if you want to put up, let's say, a
6  platform, how would you know what you can do? Is it
7  based solely on the contract that you presented?
8  A  My experience over the last year and a half
9  shows that that would be determined through the
10 proposal, through the terms and conditions of the
11 contract, and the remainder of that would have been
12 done verbally.
13 Q  Who would be the verbal person on the Siemens
14 side? Would that be the service manager?
15 A  It would have been the people doing the work,
16 performing the work in the field.
17 Q  Well, if there's a verbal performing of the
18 work in the field, is there then some written
19 documentation of what's been done that eventually is
20 produced?
21 A  If there would, it would be included in this,
22 in the file. It would be saved in the file.
23 Q  So if it's not in the file, then your
24 assumption is that it wasn't done?
25 A  Correct.

Page 31

1  Q  Is there anyone else that helped you gather
2  the material that you brought today?
3  A  Pam Spence.
4  Q  And who is Pam Spence?
5  A  Pam Spence is -- she is an admin person in
6  our office.
7  Q  Were you the one that directly asked her to
8  gather up documents?
9  A  Ben Seitz instructed Pam and I together.
10 Q  Oh, so you were both together when he gave
11 you the instruction. And what did he tell you to do?
12     MR. MORAN: Object to the form.
13 BY MR. COHN:
14 Q  What did he say?
15     MR. MORAN: It assumed that they were both
16 together.
17 BY MR. COHN:
18 Q  Well, were you both together at the time? I
19 thought that's what you said, that you and Pam were
20 together when Ben Seitz instructed you to comply with
21 this records deposition. Is that correct?
22 A  Ask the question again.
23 Q  Well, when Ben Seitz told you what to do, was
24 Pam there?
25 A  No.

Page 32

1  Q  Well, how do you know what Pam was told to
2  do?
3  A  Because Pam told me that Ben told her to help
4  me prepare the documents.
5  Q  And what did -- did you tell Pam what to do
6  to help you prepare the documents?
7  A  Did I tell Pam what to do to help me prepare
8  the documents?
9  Q  Well, in other words, you said that she told
10 you that Ben told her to help you prepare the
11 documents. Did you then give her any instructions of
12 what to do, what to look for?
13 A  Yes.
14 Q  And what did you do -- tell her to do? Well,
15 let me ask you. What documents did you specifically
16 ask her to look for?
17 A  Pam and I sat down together with this
18 document and went over the Items 1 through 15, and
19 together we discussed where these would be kept and we
20 got the documents. Does that answer your question?
21 Q  For the most part. Did you divvy it up?
22 Like, for example, who physically went to the contract
23 file and pulled out those documents?
24 A  I did.
25 Q  And did you already know where to go, or did

Page 33

1  Pam tell you where to find them?
2  A  I already knew where to go.
3  Q  And that, you indicated, had the contract,
4  correspondence, it would have the work orders,
5  invoices. So most of the documents that you brought
6  were in that contract file?
7  A  Uh-huh.
8  Q  Did you or Ms. Spence or someone else find
9  the Larry Grove file?
10 A  The Larry Grove file was in a box of
11 documents that we had already provided to Liam's
12 company, which was sitting on my credenza.
13 Q  So had you gathered up that box of documents
14 that was provided? When you say Liam's company,
15 you're talking about the Clapp Peterson firm?
16 A  Yes.
17    MR. COHN: I don't know; you changed your
18 name now that John's here.
19 BY MR. COHN:
20 Q  You said the box of documents was already on
21 your --
22 A  Credenza, my desk.
23 Q  Your desk. But did you put the box on your
24 desk or some -- how did it get on your desk, the box
25 of documents?

Page 34

1  A  How did it get on my desk. It was delivered
2  from Clapp Peterson.
3  Q  It was delivered from Clapp Peterson. The
4  contract file that you pulled out, that wasn't in that
5  box of documents?
6  A  It was not in the box of documents.
7  Q  And how big a box of documents are we talking
8  about?
9  A  It was just [indicating].
10 Q  It looks like you're describing about 2
11 feet by --
12 A  Yeah, 2 feet by 1 foot.
13 Q  And was it --
14 A  A box like that [indicating].
15 Q  Like that in the back there that's filled
16 with paper?
17 A  Uh-huh, it was a box that size.
18 Q  So this was -- so the Larry Grove file was in
19 a box of documents that was delivered by Clapp
20 Peterson and ended up on your desk?
21 A  Yes.
22 Q  So you're providing us the personnel file,
23 but you can't tell us if that's the complete file of
24 Mr. Grove; is that correct?
25 A  Correct.

Page 35

1  Q  Because you don't know who handled it before
2  you got it?
3  A  Correct.
4  Q  Were there other documents that were pulled
5  out of that box of documents on your desk and
6  provided, that you brought here today?
7  A  This is the only document that came out of
8  the -- Exhibit 10 is the only document that came out
9  of that box.
10 Q  Now, that box of documents, are those Siemens
11 documents?
12 A  Yes.
13 Q  And do you have any idea of who gathered up
14 the documents that were in that box of documents on
15 your desk?
16 A  Yes. Pam Spence.
17 Q  So I take it there are a bunch of documents
18 in that box of documents that was provided to Clapp
19 Peterson, that have not been provided here today?
20 A  Correct.
21 Q  And the reason for that is you -- did you
22 look through that box of documents to determine if it
23 complied with the records deposition request?
24 A  Yes, I did.
25 Q  And did Pam Spence go through that box also

11 (Pages 32 to 35)

**Page 36**

1  with you, or separately, to determine if it met the
2  request that brings us here today?
3      A   Yes, she did.
4      Q   And it was determined that the only document
5  that met the request was the Larry Grove file?
6          THE WITNESS: May I?
7      A   No. We also determined that perhaps this
8  document [indicating] may meet the request as well.
9  In that box, there was our -- oh, what is it
10 called? -- Alaska Pipe Trades correspondence. And I
11 believe it's payroll information for the last six
12 years, probably, was in that box. And that is an
13 example of what was in that box.
14 BY MR. COHN:
15     Q   What is Alaska Pipe Trades Local 367?
16     A   That's the union that Larry belonged to and
17 all of our service mechanics are part of. And this is
18 payroll information for all of our service mechanics
19 as part of that union. There's a lot of information
20 about all of the other mechanics in there as well.
21         MR. COHN: Can we mark this as the next
22 exhibit in order?
23         MR. MORAN: I don't want to do that.
24         MR. COHN: Well, you know, some of the
25 information -- I understand that the information about

**Page 37**

1  other people may be confidential, but the information
2  about Larry is pertinent in terms of his lost
3  earnings.
4          MR. MORAN: Well, there's no doubt about
5  that, but we don't want to give you the records unless
6  the information regarding the other employees is
7  redacted.
8          MR. COHN: I think that that's -- now, how
9  can we go about doing that? Can we have the court
10 reporter just redact the other information?
11         MR. MORAN: No. We'll have to find somebody
12 to do it. So we'll have the documents redacted. This
13 is just an exemplar to show you what these records
14 look like. We'll have somebody go through them and do
15 the redactions and then we'll have them marked.
16         MR. COHN: Well, the only concern I have is
17 if you're going to use the information about other
18 people somehow to challenge Larry's lost earnings in
19 comparison. But if all the other information is
20 irrelevant and it's just Larry's information, can
21 we -- let's see. Is there any problem with copying
22 the front page? I don't think it indicates a name of
23 an individual.
24         MR. MORAN: That shouldn't be a problem,
25 should it?

**Page 38**

1          THE WITNESS: It's not a problem for me.
2          MR. COHN: So we copy at least the front page
3  and mark that as Exhibit 11, and this is --
4          MR. MORAN: Let me make a copy first.
5          MR. COHN: And what do you refer to those
6  documents as? What are they?
7          THE WITNESS: We call it payroll information.
8          MR. COHN: And Mr. Moran has indicated that
9  they will provide the information in Exhibit 11 that
10 relates to Larry Grove, and redact the information
11 about the other individuals. Is that a fair and
12 correct interpretation?
13         MR. MORAN: Well, it needs to be redacted. I
14 don't know how we're going to go about doing that or
15 who's going to pay for it.
16         MR. COHN: Well, you're not going to allow me
17 to take the document, so I'm assuming that someone
18 either -- that your firm has these records and could
19 provide us the information in regard to Larry. It
20 seems to me, in looking at it, if there's a section on
21 Larry and several other individuals, just put Scotch
22 tape or something, or just make a copy and then white
23 out the remainder and just leave Larry Grove in there,
24 and then put that as part of Exhibit 11.
25         MR. MORAN: I think that's what you would do.

**Page 39**

1          MR. COHN: Well, I want a copy of the Larry
2  Grove stuff. We can talk about who's going to --
3          MR. MORAN: Yeah, we don't have any problem
4  giving you the Larry Grove stuff. It's the stuff that
5  pertains to other employees that we're concerned
6  about.
7          MR. COHN: Right, right. And I've accepted
8  that.
9          (Exhibit No. 11 marked.)
10 BY MR. COHN:
11     Q   Now, the box that you got which contained --
12 well, is the problem in turning over this document to
13 us the confidentiality of these records?
14     A   Yes.
15     Q   Then why were these records turned over to
16 Clapp Peterson?
17     A   I don't know the answer to that.
18     Q   Now, you showed a description of a box that
19 had an enormous number of pages in it. This payroll
20 information that you provided is a fraction of an inch
21 thick, so there was a big pile of documents beyond the
22 Larry Grove file and that payroll information. Can
23 you describe what was in the box?
24     A   There was this [indicating], which comprised
25 probably three-quarters of the information. There was

Page 40

1  a copy of our corporate -- our union -- the union
2  agreement that Siemens has with National Union, the
3  mechanical union. That was it.
4     Q   But in terms of the information regarding
5  Larry Grove, is that the only information in that box
6  that related to Larry Grove?
7     A   Yes. There's, I'd say, at least six years'
8  worth of -- I believe this is weekly payroll. So it's
9  a lot of paper.
10    Q   So there would be a lot of -- you said
11 there's a lot of paper. Is this all of the ones for
12 Larry, or are Larry's records contained within that
13 whole mass of documentation?
14    A   Larry's are contained within the whole mass.
15    Q   So that's just a representative of the entire
16 summary of Larry Grove records. Well, I'll have to
17 deal with Mr. Moran and Mr. Thorsness about getting
18 the wage information in regard to Mr. Grove.
19        The union agreement is something that we
20 would also want to have a copy of, because that's also
21 relevant in terms of determining economic damages.
22 And I guess we can get it from your firm, if you have
23 a copy of it. Is that the most current agreement
24 that's in effect today?
25    A   I'm not aware.

Page 41

1     Q   And you've just described to me all the
2  documents that were in that box?
3     A   Yes.
4         MR. COHN: I don't have any further questions
5  at this time. Thank you for your time.
6         (Off the record.)
7         MR. COHN: Back on record.
8  BY MR. COHN:
9     Q   Mr. Moran just brought in a document, which I
10 believe is the -- is this the union agreement,
11 Mr. Schutte, the union agreement that you were
12 referring to that was in the box of documents that was
13 somehow on your desk?
14    A   Yes.
15        MR. COHN: We mark this as the next exhibit.
16        (Exhibit No. 12 marked.)
17 BY MR. COHN:
18    Q   And I note that on the first page it says
19 effective January 1st, 2000. Do you know if there's a
20 more recent agreement?
21    A   I don't know if there is a more recent
22 agreement.
23    Q   I just want to ask you one other, because
24 when we were talking about the wage information, is
25 there a record kept of all the W-2s for the employees

Page 42

1  through the years? Some one location where you can
2  see if -- let's say someone has worked for Siemens for
3  five years. You can go here and see how much Siemens
4  has paid them for five years, or do you have to go
5  through all of the weekly payroll and add them all up?
6     A   I don't know the answer to that question. I
7  do know it's not kept in our office. I don't know if
8  it's kept someplace else or not.
9     Q   Well, are there -- now that you've mentioned
10 that they're not kept in your office, so there are
11 other locations where Siemens' records are kept; is
12 that correct?
13    A   You're referring to payroll. We have a
14 separate payroll division that's in some part of the
15 country. They may have payroll records for Larry
16 Grove, but I'm speculating.
17    Q   Because if there are separate payroll
18 records, then we can get the list of everything he's
19 earned from Siemens, beyond just looking through that
20 mass of documents. Then if it was per employee, I
21 would like to get those records, if there's any way
22 for you inquiring to find out if they have such
23 records for him.
24        MR. MORAN: Are you asking for those records
25 in addition to the payroll records that we --

Page 43

1  BY MR. COHN:
2     Q   Well, if those payroll records -- well, you
3  indicated it's a mass of payroll records. Do those --
4  do you know if those go back from the -- are supposed
5  to go back from the time that Larry Grove first
6  started working for Siemens?
7     A   I don't know.
8     Q   Do you know how many years back those records
9  go, that pile in the boxes?
10    A   We're beyond my area of expertise.
11    Q   No, I'm not asking your area of expertise.
12 I'm asking if you -- you looked at the box of
13 documents, and those were payroll records and they
14 were weekly payroll records?
15    A   Okay.
16    Q   And did you check to see for what years those
17 payroll records were for?
18    A   The files are labeled with the years on them,
19 and I saw, I think back as far as '97 we have these
20 records.
21    Q   And how far forward did they go?
22    A   I believe I saw 2004 in the box.
23        MR. COHN: Well, in regard to the records,
24 somehow we need to figure out how to separate out
25 Larry's records in those payroll records that are

Page 44
1  there from '97 till the point in which he was no
2  longer on the payroll, and we'll probably have it to
3  deal with that separate from this deposition, figure
4  that out later.
5          Thank you for your time. No further
6  questions.
7          MR. MORAN: No questions.
8          (Proceedings concluded at 3:13 P.M.)
9          (Signature reserved.)
10                 -oOo-
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

14 (Page 44)

Page 45

```
 1                        CERTIFICATE

 2

 3         I, LISA L. SHAFFER, Certified Shorthand

 4   Reporter, and Notary Public in and for the State of

 5   Alaska, do hereby certify that the witness in the

 6   foregoing proceedings was duly sworn; that the

 7   proceedings were then taken before me at the time

 8   and place herein set forth; that the testimony

 9   and proceedings were reported stenographically by

10   me and later transcribed by computer transcription;

11   that the foregoing is a true record of the

12   testimony and proceedings taken at that time;

13   and that I am not a party to nor have I any

14   interest in the outcome of the action herein

15   contained.

16         IN WITNESS WHEREOF, I have hereunto set

17   my hand and affixed my seal this _____ day

18   of _____ 2006.

19

20

21                            _____
                              LISA L. SHAFFER, CSR
22                            My Commission Expires 8/29/06

23

24

25
```

```
                                                              Page 46
 1                      WITNESS CERTIFICATE

 2   RE:  GROVE, ET AL. v UNOCAL CORPORATION
     CASE NO.:  A04-0096 CV (JKS)
 3   30 (b)(6) DEPOSITION OF SIEMENS BUILDING TECHNOLOGIES
              DESIGNEE:  DOUG SCHUTTE
 4   DATE TAKEN:  2/3/06
     FILE ORIGINAL WITH:  MICHAEL COHN
 5
        I hereby certify that I have read the foregoing
 6   deposition and accept it as true and correct, with
     the following exceptions:
 7   ==========================================================
     Page    Line      Description/Reason for Change
 8   ==========================================================

 9   ____    ____      _____

10   ____    ____      _____

11   ____    ____      _____

12   ____    ____      _____

13   ____    ____      _____

14   ____    ____      _____

15   ____    ____      _____

16   ____    ____      _____

17   ____    ____      _____

18   ____    ____      _____

19   ____    ____      _____

20   ____    ____      _____

21   ____    ____      _____

22                     _____  _____

23                             SIGNATURE                DATE

24   Please sign your name and date it on the above line.
     (As needed, use additional paper to note corrections,
25    dating and signing each page.)                    (LLS)
```