Michael Cohn
Phillip Paul Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) By and through his father LAWRENCE H. GROVE, | ) ) ) ) ) | Case No. 3:04-cv-0096-TMB |
| Plaintiffs, | ) ) ) ) | |
| vs. | ) ) | |
| UNOCAL CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' OPPOSITION TO UNOCAL'S MOTION IN LIMINE**

**I.    INTRODUCTION**

Plaintiff Larry Grove was injured on September 9, 2002 when a poorly constructed and maintained platform at the Unocal building at 909 West 9th Avenue in Anchorage, Alaska collapsed while he was on a service call for his employer, Siemens Building Technologies, Inc.  It is undisputed that Larry Grove injured his right ankle in the collapse of the work platform, cannot return to the work that he did at the time of his injury,

1

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

fractured a bone, had ligament and tendon damage, and had surgery in May 2003 and May 2005 for his ankle injuries. It is also undisputed that he has a permanent partial impairment as a result of his ankle injury. Defendant Unocal, is responsible for the work platform that was located in its own building for many years.

Plaintiffs oppose Unocal's Motion in Limine, which continues to recycle old arguments and claims even when previous pleadings show the falsity of the contention.[1] One glaring example is Unocal's assertion "there is no evidence to support plaintiffs' speculation that safety records used to exist" (Unocal Memorandum at p. 19). In fact, Unocal employee Ken Burns admitted that he conducted safety inspections and prepared safety reports on the Unocal building and Unocal manager Archie Cook testified he reviewed a Ken Burns safety report. See Plaintiffs' memorandum, infra, at p. 18-21.

Unocal also falsely claims, again as in a previous pleading, "it is possible that Mr. Grove could have built it [the work platform] when he began working in the building in 1999, and then compounds this falsehood by falsely claiming (again) that the only evidence is a "hearsay" statement by

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] Plaintiffs incorporate in this Opposition, *Plaintiffs' Renewed Rule 37 Motion for Order Compelling Disclosure/Discovery, Plaintiffs' Motion in Limine, Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs' Opposition to Unocal's Motion for Partial Summary Judgment on Punitive Damages*, and *Plaintiffs' Renewed Motion for Protective Order*, and all supporting memoranda, affidavits and exhibits. Docket Nos. 163, 156, 157, 160, 161, 162, 229, 230, and 201.

Charles Arnett, who worked in the building many years.  This statement was contradicted by Unocal in other pleadings and shows to be untrue previously.  See Plaintiffs' Memorandum, _infra_, at p. 32-34.  Given Unocal's misrepresentations, all of its contentions should be closely scrutinized. [2]

Unocal also falsely claims that Larry Grove did not apply for a single job since his "alleged ankle injury."  The record shows Larry Grove was rebuffed by Siemens in his efforts to return to work with Siemens.  Larry Grove is on Social Security disability, and is in the vocational rehabilitation process with worker's compensation.

Unocal has Larry Grove's medical records.  Larry Grove had ankle surgery in May 2003, and again in May 2005.  It is undisputed from the medical records, and testimony of health care providers, including Dr. Geitz and Dr. Ealum, as well as the testimony of Larry Grove, Robert Sprinkle, and others, that Larry Grove suffered an ankle injury and _not_ an "alleged" ankle injury.  See for example _Plaintiffs' Motion in Limine_ and attached exhibits, incorporated herein by reference.  Unocal's statement is without merit.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[2] Unocal falsely claims that Larry Grove "concealed" from Dr. Geitz a minor ankle sprain two and one-half years earlier, which was fully resolved when Dr. Geitz first saw Mr. Grove.  Dr. Geitz did not note asking about prior injuries.  Dr. Geitz deposition (Exhibit A), pg. 2 of Unocal's Memorandum.  The treating chiropractor testified that the ankle sprain had no connection to the September 9, 2002 injury.  See Dr. Ealum's testimony, attached as an exhibit to _Plaintiffs' Motion in Limine_ (Docket Nos. 156 and 157).  It is also irrelevant to this motion.  Likewise, Unocal notes that Mr. Grove had seven prior worker's compensation claims (most of which he did not lose one day from work), which is irrelevant to any issues raised in this motion.  See _Plaintiffs' Motion in Limine_.

Unocal claims that Larry Grove is "capable of hunting big game in Alaska and Africa" and "participating in many other recreational activities." Unocal memorandum at p. 2. It is undisputed that Larry Grove cannot return to the job he had done for almost thirty years when he was injured. People can hunt "big game" with assistance even when disabled. People can be disabled and go halibut fishing. Unocal engages in misinformation and attempts to divert the court. In any event, Larry Grove's activities are totally irrelevant to Unocal's conduct, which concern three of the five areas that Unocal seeks the motion in limine.

Plaintiff Larry Grove suffered a severe and permanent injury to his right ankle on September 9, 2002 when a work platform collapsed while he was changing air filters in the filter room of the mechanical floor of the Unocal building. Mr. Grove was an employee of Siemens Building Technologies, Inc. ("Siemens"), performing routine service work pursuant to a Unocal/Siemens contract. Unocal has admitted, through the testimony of its employees, including Safety Specialist Ken Burns, that (1) the work platform was not constructed properly; (2) that the work platform was a rudimentary make-shift platform; (3) that it was a hazard; and (4) Mr. Burns admitted that it should have been taken down. Mr. Burns also admitted that he conducted two safety inspections on the building to identify hazards. All

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

4

pre-accident safety inspections are <u>missing</u>.  Mr. Burns also admitted he did not inspect the mechanical floor for hazards because of the allegedly low to no risk to employees.

Unocal apparently conducted no investigation of the collapsed work platform, and simply had it reattached without finding out the cause of the collapse until OSHA told Unocal to take it down in March 2003.  Unocal then exercised complete control over the structure and destroyed all the evidence (other than the sheared bolts Larry Grove had retrieved right after the accident).

As to the substance of Unocal's motion, these are already either subject to *Plaintiffs' Motion in Limine* and/or *Renewed Rule 37 Motion For Order Compelling Disclosure/Discovery* and *Plaintiffs' Memorandum In Support Of Renewed Rule 37 Motion For Order Compelling Disclosure/Discovery,* and other pleadings.  See Docket Nos. 156, 157, 160, 161, 162, 163.  Some of the issues are premature.  Others are without any merit.  All of these matters have been addressed in other pleadings pending before the court.

## II.  UNOCAL'S INDEMNITY CONTRACT WITH SIEMENS

Plaintiffs do not seek the introduction of the Unocal/Siemens indemnification agreement to show that Unocal has insurance coverage.  In the context of this case, it is not

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

prejudicial.  Everyone is aware that Unocal was a large oil
company quite capable of satisfying any judgment in this action.

However, it is relevant for other reasons that Unocal
utilizes contract employees, including employees of Siemens, to
service the building.  Though Unocal conducted safety
inspections of the building, Unocal Safety Specialist Ken Burns
claims he did not inspect the mechanical floor of the Unocal
building (where the work platform was located) because of
limited or no risk to Unocal employees, even though the purpose
of the inspection was to identify and eliminate hazards, and Mr.
Burns also admitted the work platform was a hazard he would have
removed if he saw it.  Thus, the indifference or unconcern or
lack of interest of Unocal to safety of contract employees is
relevant as to both negligence and reckless indifference.

The evidence and inferences viewed in favor of the
plaintiffs based on the evidence show:

> 1.    Improper design, construction, approval and/or
>        ratification of the work platform, including use of
>        improper fasteners not designed/suitable for use in
>        a work platform.  See Unocal Safety Specialist Ken
>        Burns' deposition at 95 (Exhibit 5), Charles
>        Arnett's deposition at 116 (Exhibit 11), and former
>        Unocal Resources Manager Archie Cook's deposition at
>        23-24 (Exhibit 4); Reports of Dr. Balser, Mr.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Manning and Carmichael & Associates; Affidavits of
Dr. Balser, Lindley Manning and Bob Carmichael
(Exhibits 1-3);

2.    A structure, such as a work platform, could not be
designed, constructed, and built in the Unocal
building without the authorization, approval and/or
ratification of Unocal.  See depositions of Charles
Arnett at 116, and Archie Cook at 23-24, and
Affidavit of Michael Cohn;

3.    The structure did not meet the standards for a work
platform (deposition of Ken Burns at p. 49; Reports
of Balser, Manning and Carmichael, and Affidavits of
Dr. Balser, Lindley Manning and Bob Carmichael);

4.    The work platform was not a proper work platform
(see deposition of Ken Burns as p. 94);

5.    The work platform was not erected properly (see
deposition of Ken Burns at p. 95);

6.    The work platform was a hazard to be abated (see Ken
Burns deposition at p. 94);

7.    There were safety inspections done on the building,
the sole purpose of which was to find and abate
hazards.  At least two of these inspections were
done by Ken Burns (see Ken Burns deposition at pgs.
69, 72);

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

8.  It is normal practice of Unocal to keep safety inspection records.  See deposition of Ken Burns at p. 70; Prior inspection reports are utilized to see what hazards have been identified and abated or still unabated.  Id. at 91-92.  All the pre-accident Unocal safety inspection reports are missing.  See Ken Burns deposition at p. 70-71;

9.  The safety inspections were supposed to check for hazards or potentially hazardous conditions throughout the entire building.  See Archie Cook deposition at 32-35;

10. Work platforms for Unocal are supposed to be built by certified personnel; properly built, and sufficient to sustain the weight of a person.  See Unocal employee Paul Crapps' deposition at 81-82 (Exhibit 8).  Paul Crapps does not need to check because certified personnel build the platform.  Id.;

11. Unocal as the landowner/building owner has a responsibility to maintain premises in a safe condition, see Exhibits 3 and 12.  Technical Specification, Section 6.3, states:

> 6.3  Customer [Unocal] will provide SBTI with reasonable means of access to the Equipment and shall make any necessary provisions to

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

8

> reach the Equipment and peripheral devices.
> Customer will be solely responsible for any
> removal, replacement or refinishing of the
> building structure or finishes that may be
> required to gain access to such Equipment.

Exhibit 12; Emphasis added.

12. Unocal, under the Unocal-Siemens contract, had an obligation to provide the means of access to the equipment;

13. As the safety records are "missing" a presumption that the records show notice and knowledge of an unabated hazard.  See Argument, _infra_ at p. 18-22;

14. Ken Burns claims that he did not inspect the mechanical floor and/or the filter room where the accident occurred.  This statement is subject to credibility determination in light of the expressed purpose to identify building hazards;

15. Even if Ken Burns did not inspect the penthouse (mechanical floor) and the filter room, the reason he gives for the alleged failure to inspect that "Employees don't work up there" (Ken Burns deposition at 72), supports a reasonable inference of reckless disregard of the interests or safety of individuals encountering hazards in the penthouse and filter room.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Q.   <u>Would it be fair to say that the inspection
     was to identify hazardous conditions</u>?
A.   <u>That's the only purpose</u>.
Q    And would it be fair to say that the penthouse
     with the equipment and the—that operates up
     there, the boiler and other faculties, that
     that would be an important part of the
     inspection, to examine the penthouse?
A.   No.
Q.   Why not?
A.   Lack of exposure.  <u>Employees don't work up
     there</u>.  Lack of exposure, limited exposure.

(Emphasis added)

Ken Burns appears to claim first "that employees don't work up there" [therefore Unocal employees are not at risk] and then says "lack of exposure, limited exposure."  This appears to be a risk/benefit analysis such as was done for the Ford Pinto or other hazards where the exposure is limited or not continuous.  Reasonable inference in favor of plaintiffs show <u>reckless indifference</u> to the safety of others; especially non-Unocal employees exposed to the hazard, i.e., shows reckless indifference to the safety of <u>non</u>-Unocal personnel such as employees of Siemens who must service the penthouse and the filter room, especially as <u>Unocal</u> is indemnified for injuries to contract employees <u>caused</u> by Unocal's negligence from the injured employee's employer, therefore

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

providing even less incentive to abate hazards in the penthouse or filter room.

Furthermore, it is reckless to not even determine what hazards are present, even if one believes Ken Burns that he did not inspect an entire floor of the Unocal building, which is the floor containing the mechanical supports for the entire building. If the risk is high, even limited exposure could require action. See Affidavit of Robert Carmichael (Exhibit 3). How can one assess the hazard/risk if one makes the conscious decision to <u>ignore</u> the entire floor (at least twice according to Mr. Burns);

It is relevant and admissible as to whether indifference and/or the lack of concern is related to the absence of monetary exposure by Unocal for injuries to contract employees who are exposed to risks Unocal ignored. It is relevant that Unocal had an indemnification agreement for both liability and punitive damages. It is relevant as to bias/credibility of Siemens.

The indemnity agreement is relevant as to credibility of Siemens' witnesses, wherein Siemens is protected by the exclusive remedy provisions of the Alaska Workers Compensation Act, and thus, any fault against Siemens lessens Unocal's share

of fault and thus, lessens Siemens' ultimate amount of indemnification.

Federal Rule of Evidence 411 as to liability insurance allows the introduction of evidence of insurance when offered for "bias or prejudice of a witness."

Second, the indemnity agreement is relevant as to the alleged complete failure to properly construct, maintain, inspect or repair the work platform that apparently was to be used primarily by contract employees where the contractors must indemnify Unocal for Unocal's own fault.  It is thus relevant as to liability of Unocal for its indifference to the hazards encountered by contract employees, and as to punitive damages for reckless indifference.  Unocal cites Posttape Associates v. Eastman Kodak Co., 537 F.2d 751, 757-758 (3rd Cir. 1976) which overturned a lower court ruling excluding evidence of indemnity as evidence of knowledge of limitation of liability for defects in film and credibility.  The court ruled that if the evidence is admissible for another purpose other than proof of insurance, it may be admitted under FRE 411.  The court also found exclusion of the evidence was far more prejudicial to the party seeking its admission than to the party seeking exclusion.

In Larez v. Holcomb, 16 F.3d 1513, 1518-19 (9th Cir. 1994) the court noted an indemnification agreement is not admissible on damages, but quoting another case, added "[u]nless the fact

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that the plaintiff is insured or otherwise indemnified is a material issue in this case. …"  It is a material issue herein on negligence, punitive damages and credibility.

In Nor-West Cable Communications Partnership v. City of St. Paul, 924 F.2d 741, 752-753 (8th Cir. 1991) bias was not a ground for allowing the indemnity agreement into evidence because both parties were defendants, and the city's expert witness was not more biased because of the agreement.  Second, the indemnity agreement was not probative as to a material fact in issue.

Finally, Unocal cites Sears v. Southern Pacific Company, 313 F.2d 498 (9th Cir. 1963).  In that case, the indemnity agreement could be separated from a document that was relevant as to knowledge of the danger and the Appellate Court upheld the discretion of the trial court to exclude the indemnity agreement.  However, a careful reading of the Opinion (which reversed the trial verdict and ordered remand) shows the Appellate Court recognized that the agreement had probative value and would have upheld the discretion of the court if it ruled to admit the evidence.  At p. 503, n. 5 it was stated:

> FN5.  An indemnity agreement is in many respects unlike a policy of liability insurance.  However, both serve to insulate a holder from liability and thus, for purposes of this case, they may be treated as the same.

At page 505 it was stated:

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

> … such an agreement ordinarily lacks probative
> value where knowledge is the issue.  However, here
> defendant required the agreement as the price of
> its acquiescence in Evans' application to the
> Public Utilities Commissioner for a variance from
> positive safety regulations.  Under these
> circumstances, <u>the fact that defendant required
> the agreement renders it more probable that
> defendant believed the machine was dangerous than
> without the evidence</u>.  Mutual Life Ins. Co. v.
> Hillmon, 145 U.S. 285, 296, 12 S.Ct. 909, 36 L.Ed.
> 706 (1892); Insurance Co. v. Weide, 11 Wall. 438,
> 78 U.S. 438, 20 L.Ed. 197 (1870); McCromick,
> Evidence, § 152 at 318 (1954).  (Emphasis added).

Unocal required the indemnification clause in its service contracts.

Accordingly, plaintiffs respectfully request that the agreement be admissible and Unocal's motion be denied.[3]

### III. THE SECRET SURVEILLANCE TAPES OF LARRY GROVE

The introduction of surveillance tapes of Larry Grove (there have been at least two) are presently the subject of plaintiffs' Motion in Limine.  The plaintiffs incorporate the Plaintiffs' Motion in Limine herein.  Furthermore, the secret surveillance tapes are presently subject of Plaintiffs' Renewed Rule 37 Motion for Order Compelling Disclosure/Discovery.

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[3] Unocal was responsible as a landowner, and by contract, to provide a reasonably safe premises, and to provide safe access to equipment.  Unocal, however, implies that Siemens will testify about citations it received, which are irrelevant and prejudicial.  The citations issued to Siemens are inadmissible and are not relevant to the motion by Unocal.  State OSHA did not apply the standards for a building owner, nor analyze the contract in terms of Siemens' responsibilities.  Siemens simply agreed to accept the citations, which did not impose penalties that result in admissibility in court, nor did OSHA analyze the cause of the collapse of the work platform.

The first now known surveillance of Larry Grove occurred in 2003 when Larry Grove had a fractured ankle, and ligament and tendon damages, for which he subsequently underwent surgery. This surveillance of Larry Grove did not prevent the worker's compensation carrier from continuing to pay Mr. Grove worker's compensation benefits.

The second (now known) surveillance of Mr. Grove occurred in 2006 after Unocal unilaterally pulled out of mediation (which it had agreed to) as part of a strategy to go and exhaustively investigate the entire Grove family. Some of the surveillance shows the Unocal authorized surveillor staking out the Grove home.

While it is true that Unocal turned over surveillance tapes, Unocal refuses to produce complete records of any secret surveillance done on Mr. Grove, claiming some sort of attorney/client or work product privilege. Unocal claims to have produced un-edited versions of certain taping of Mr. Grove in 2006. There are two separate incidents amounting to a few minutes each time. It is unknown whether these tapes are the entire extent of the videotaping of Larry Grove, or whether other tapes have simply not been produced. Unocal refuses to produce legitimate discovery, including correspondence and instructions to the secret surveillors, and notes, as well as any sound on the tapes. These are discoverable. Plaintiffs are

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

entitled to know what was done, the instructions, notes, correspondence, in regard to the surveillance. Unocal cannot simply arbitrarily and unilaterally determine what it will permit plaintiffs to see, while withholding other discoverable material. Thus, the motion is also premature until Unocal complies with discovery.

Unocal misleads the court by implying that plaintiffs allege that the unprecedented massive harassment of the Grove family is evidenced only by the surveillance of Larry Grove. There have been literally hundreds of records depositions set to obtain hotel records, sausage company records, bank records, credit card records, airline records, mortgage records, investment records, etc. See plaintiffs' *Renewed Motion for Protective Order.* This is extraordinary overkill, and exceeds by at least a factor of 10 any such undertaking in any other civil case involving plaintiffs' counsel.

The Motion in Limine is premature pending other motions. However, plaintiffs do not intend to claim that the surveillance was illegal.

**IV.   SARAH GROVE'S ON-LINE JOURNAL**

Sarah Grove's on-line journal is subject of plaintiffs' own Motion in Limine.

Unocal grossly exaggerates the relevancy of the journal.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Sarah Grove is a young woman just finishing up college. As a lot of young people do these days, she uses the internet, and Sarah Grove goes online to communicate with friends, which the defendants have downloaded. The defendants have also downloaded Sarah Grove's boyfriend's diary. While it is not *per se* private as this was published on-line mainly between friends, there is very little, if any, relevance at all that is in this journal. The primary purpose of the use of this journal would be to embarrass Sarah Grove and her family. Plaintiffs respectfully request that the defendant not be allowed to introduce any of this on-line journal into evidence. This includes any use of profanity or other terms that would only be utilized by defendant to prejudice Sarah Grove's claims and the family claims. In point of fact, this journal entry contains very little evidentiary value in regard to the claims of the family (other than Sarah stating her dad broke his ankle), and pertain more to Sarah Grove's relationship with her friends and matters that should not be a part of this trial.

Unocal has downloaded Sarah Grove's MySpace page and also apparently sought to download the MySpace page of her boyfriend. It is clear that in terms of questioning Larry Grove about some entries in Sarah Grove's MySpace page, including one involving clam digging, that Sarah Grove was not even on this clam digging episode and therefore would have no personal knowledge of what

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

17

activities Larry Grove did or did not do.  There is very little, if anything, of substance in the MySpace page other than Sarah Grove's expression of displeasure over finding out that Unocal had appropriated the MySpace page for its own insidious purposes.  Going through and exposing the MySpace page of a young woman in court for its own nefarious purposes does not serve the purposes of this trial and should be excluded.

Unocal mischaracterizes this information when it claims that the MySpace page and live journal contain relevant information about Larry Grove's activities, such as a picture of Larry Grove halibut fishing, which allegedly Larry Grove had not disclosed to Unocal.[4]

Plaintiffs do not intend to claim that Unocal counsel's downloading of the diary was illegal.

**V.    PLAINTIFFS SHOULD BE ALLOWED TO COMMENT ON MISSING EVIDENCE AND UNOCAL'S DISCOVERY FAILURES**

**A.    SAFETY INSPECTION REPORTS**

The sole basis for Unocal to claim that plaintiffs cannot bring up missing safety inspection reports is the astonishing claim by Unocal that "there is no evidence to support

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[4] In regard to allegations that Sarah Grove has improperly overstated expenses and failed to disclose the existence of a roommate in college, the submission of responses to interrogatories Second Set of Discovery dated February 6, 2006 does not prove the case by defendant.  There is no indication in there whether those are the expenses of Sarah Grove, whether she had a roommate at the specific time she answered those discovery requests, or the amount that the roommate may have contributed.  Those responses, without the corresponding excerpts that Unocal claims prove that Sarah Grove overstated her expenses should not be accepted.  It is insufficient in and of itself and therefore should be deemed denied by the court.

plaintiffs' speculation that safety reports used to exist."
Unocal Memorandum at p. 19; emphasis added.  This same claim was
made by Unocal previously, and thoroughly refuted in previous
pleadings by plaintiffs.  Yet, Unocal continues to repeat an
absolute lie, as if repeating untruthful statements enough will
somehow change the truth.  Ken Burns, Unocal Safety Specialist,
testified that he conducted two safety inspections and prepared
reports.  Archie Cook, Unocal health and human Resources
Manager, testified he saw at least one report!  Thus, when
Unocal states that "plaintiffs belief that documents "must"
exist is irrational" (see Unocal's Memorandum at p. 20), the
fact that Unocal can claim that even where Unocal employees
admit the documents did exist, that said documents never existed
shows that plaintiffs' "belief" is not a subjective "irrational"
based "belief" but rationally based on evidence.  Furthermore,
in light of Unocal's blatant falsehood, irrespective of what the
evidence shows, Plaintiffs' Motion to Compel and plaintiffs'
motion regarding summary judgment, should be granted, and
Unocal's Motion in Limine denied.  Plaintiffs are entitled to
comment on missing records.  Plaintiffs are also entitled to an
adverse inference/presumption.

    Archie Cook, a former Human Resources Consultant
at the Unocal office, 909 West 9th Avenue, Anchorage, Alaska,
testified as follows:

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

19

> Q.    ... Were there periodic safety inspections–
> A.    Yes.
> Q.    -- of the building from the time that you arrived in 1999 through 2002?
> A.    Yes.
> Q.    What did these periodic safety inspections entail?
> A.    Involved one of our safety technicians going around the office looking for safety hazards.

*Deposition of Archie Cook, pg. 32, lines 11-20;* Emphasis added; See Exhibit 4.

> Q.    Did you observe the safety inspection at all?
> A.    I didn't observe the inspection.  I saw the report.
> Q.    You saw the report?
> A.    Yes.
> Q.    And can you tell me how detailed the report would be?
> A.    I mean it was basically telling us what things were hazardous or potentially hazardous and potentially needed fixing.

*Deposition of Archie Cook, pg. 33, line 25 to pg. 34, line 8;* Emphasis added.

Mr. Burns admitted that he did two safety inspections of the building back in 1998 and 1999.  Id. at 75.  He also stated:

> Q.    If you had conducted the '98 and '99 inspection and saw that work platform in the filter room, would you have considered that a hazard to be abated?
> A.    Yes.

*Deposition of Kenneth Burns, pg. 94, lines 19-23;* Emphasis added; See Exhibit 5.

There were safety inspections done on the building, the sole purpose of which was to find and abate hazards.  At least two of

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

these inspections were done by Ken Burns (see Ken Burns deposition at pgs. 69, 72).

It is normal practice of Unocal to keep safety inspection records. See deposition of Ken Burns at p. 70; Prior inspection reports are utilized to see what hazards have been identified and abated or still unabated. Id. at 91-92. All the pre-accident Unocal safety inspection reports are missing. See Ken Burns deposition at p. 70-71; see Carmichael Affidavit.

There should be an inference/presumption that the missing safety inspection records, work platform records, and the destruction of the platform contain evidence that would support punitive damages. Unocal employee Ken Burns admitted that it is normal procedure to keep safety records and both Mr. Burns and Mr. Carmichael agreed that keeping safety inspection records is important to determine what has been inspected before, what hazards have been discovered, and what still remains to be abated. Thus, it is not simply whether Unocal knew Larry Grove had a potential claim as Unocal had a separate responsibility to hold onto safety inspections records. A mere failure to keep such records is enough to create an adverse inference. Vodusek v. Baylines Marine Corp, 71 F.3d 148 (4th Cir. 1995). Where it is not part of standard procedures to destroy the evidence an adverse inference presumption is warranted. See Wadju v. Kingsbury, 652 N.W. 2d 856 (Minn 2002) rev. denied 11/19/02;

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Stanton v. National R.R. Passenger Corp. 849 F.Supp 1524 (M.D. Ala 1994); Kurszy v. St. Joseph Veterans Ass'n, Inc., 820 P.2d 929 (R.I. 2003); Tancrelle v. Friendly Ice Cream Corp. 756 P.2d 744 (R.I. 2000).

Burden shifting has been recognized in Alaska for absence of records. Patrick v. Sedwick, 391 P.2d 453 (Alaska 1984); Sweet v. Sisters of Providence in Wash., 895 P.2d 484 (Alaska 1995).

**B.**    **THE WORK PLATFORM**

Unocal has cited several cases regarding failure to preserve evidence. Virtually all of these cases did not involve the tort feasor, but an employer or other entity failing to preserve evidence for a third party action. See for example, Dunham v. Candor Ins. Co., 66 Cal.Rptr. 2d 747, 749 (Cal. App. 1997). The plaintiff cited a case which set the precedent for the recognition of spoliation torts in California but found it distinguishable because "the defendant never had possession or control over the evidence and was not the one who destroyed it." Id. at 750. In this case, Unocal as the landowner had possession and control and furthermore, was the one who destroyed the evidence.

In this case, Unocal employees such as Ken Burns recognized that the work platform was not properly constructed, and was a hazard. Unocal knew Larry Grove was injured in the collapse of

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

22

the work platform.  Unocal had a common law duty to Larry Grove to provide reasonably safe premises and by contract to provide safe access to the equipment he was servicing.  Thus, Unocal was in control of the platform, and the negligent tort feasor had inquiry notice of a potential claim when it destroyed the platform.

The cases cited by Unocal also recognize a wide array of circumstances in which there is an obligation to preserve evidence, including statutory duties, contract, agreement, independent tort against the spoliator, etc.  See Murphy v. Target Products, 580 N.E.2d 687 (Ind.App. 1991) (Murphy in turn cites Hazen v. Municipality of Anchorage, 718 P.2d 456 (Alaska 1986)).

In this case, Unocal apparently failed to even investigate the cause of the platform collapse, and simply re-erected the same dangerous, unsafe platform, until the OSHA inspection seven months later.  There are at lease customary practices in the oil industry to investigate the causes of accidents.  See Affidavit of Robert Carmichael.  There were independent common law duties on a landowner, and by contract on Unocal.  In regard to safety reports, it is customary and normal practice to preserve safety reports.  Imposing a duty on Unocal to preserve the platform and records does not impose any additional duties on Unocal.  The cases cited by Unocal do not preclude the plaintiffs from

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

raising the destruction of evidence at trial, and seeking an adverse inference against the defendant.

In light of the flat out denial of safety inspection reports by Unocal, despite the evidence of same, why should the plaintiffs and the court accept the allegations of Unocal that there were and/or are absolutely no records by Unocal as to the work platform.  Unocal has stonewalled plaintiffs' efforts to obtain safety inspection reports, and refused to allow plaintiffs to inspect records.  While Unocal alletges it has conducted a search for records, Unocal has admitted that it separated records and in fact, documents that should have been produced were produced years later and/or never produced (such as the Paul Crapps Affidavit, which was never revealed to plaintiffs by Unocal, but finally independently located by plaintiffs after which Unocal claimed plaintiffs' counsel hid evidence from Unocal even after Unocal admitted it had the Crapps Affidavit all along, but never revealed the existence of same to plaintiffs).  As shown in plaintiffs' original *Motion to Compel*, and *Renewed Rule 37 Motion for Order Compelling Disclosure/Discovery,* incorporated herein by reference), and *Plaintiffs' Motion for Summary Judgment*, incorporated herein by reference), and *Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment Re: Punitive Damages*, incorporated

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

herein by reference, there has been non-compliance and/or evasion of discovery.  See footnote 1, <u>supra</u>.

Unocal claims that there was no evidence that Unocal designed, constructed or maintained the platform.  Unocal does not deny that the platform was bolted to the filter wall inside the filter room in the Unocal building.  Unocal however denies that it installed, designed or constructed the platform, and that it did not retain control over the platform.  It was in the Unocal building.  It had been in the Unocal building for many years.  Unocal has asserted control over the bolts, and claimed that they owned the bolts in moving the Court to have the plaintiffs return the property to the possession of Unocal. Unocal has asserted ownership over the property.  Unocal also asserted ownership over the property when they took it upon themselves to remove the platform and destroy it.  Unocal did not go back to Siemens and ask Siemens to remove the platform. Unocal did not ask Siemens to take the platform back.  Unocal asserted control of the platform.

Unocal has admitted it has not one shred of evidence that any other entity, whether it be Siemens or any other contractors, had designed, constructed or maintained the platform.  Furthermore, under the rule of *Res Ipsa Loquitur*, the platform is in the Unocal building, it has been in the building for many years, Unocal continued to assert control over the

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

property, and this control also consisted of believing it had the power to throw the platform and all its component parts away, then thus, Unocal is the owner of the platform. Under the rule of *Res Ipsa Loquitur*, without any contrary evidence, Unocal is the owner, designer, constructor, and maintainer of the platform. See <u>Lynden Transport, Inc. v. Haragan</u>, 623 P.2d 789 (Alaska 1981) regarding application of *Res Ipsa Loquitur* under Alaska law.

This is further supported by the fact that the contract between Siemens and Unocal provided that Unocal would provide the means of access for the equipment. Siemens employees went to the filter room in the Unocal building to change air filters. The platform was there for them to use. The platform, under the contract, was part of the building structure to gain access to the job they were doing, and was the responsibility of Unocal.

Unocal is going to bury its head in the sand and claim that due to the fact that it either outsourced a lot of its own work and there is no evidence that Unocal had anything to do with this platform, despite the contract with Siemens and Unocal that provides that Unocal will provide the means of access for Siemens employees to do the work that they were hired to do such as replacing air filters. It is incredible that Unocal has not, for example, kept or has lost or destroyed all of their safety reports for the building. Thus, Ken Burns testified he did at

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

least two different safety reports, however, mysteriously none of these reports are locatable. A large oil company such as Unocal does not keep its safety inspection reports! These safety inspection reports would be useful to determine what has been found in previous inspections, and what has been rectified, and what remains to be done. Archie Cook, a former manager of Unocal in that building testified that the object of the safety inspectors from Unocal was to check the building to find clearly identifiable hazards that needed to be remedied. The failure of such inspections to adequately go through the entire building would not excuse that failure. Further, we don't even know if that happened in this case because none of the records have been located, and all of them were under the control of Unocal. Unocal should not be allowed to hide behind the failure to produce any documentation to make this into a genuine issue of material fact. The platform was owned by Unocal. It was in the Unocal building for many years. It was their structure. It was their responsibility under the Siemens/Unocal contract. Furthermore, as was testified to by Charles Arnett and Archie Cook, among others, nothing could be done in that building without the approval of Unocal. It just goes against reason to believe that a structure of this size could have built in the Unocal building without Unocal's permission, ratification, and final approval after the structure was built. This is a non

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

issue.  It was Unocal's structure, Unocal's responsibility, and they are liable for same.

Unocal makes this incredible statement when it says "there was no evidence to support plaintiffs' mistrust that safety records have not been found."  This is not simply plaintiffs' mistrust, this is a fact.  There were safety inspections and reports done for the building, and they have not been turned over to the plaintiffs.

There is an interesting issue involving Unocal employee Paul Crapps.  Mr. Crapps originally testified at his deposition that he had removed the platform in September 2002, despite the fact that the Unocal records show that the platform was still in existence in March 2003 when OSHA came and inspected the platform.  However, in the accident of September 9, 2002 the platform had collapsed causing the injuries to Larry Grove.  Mr. Charles Arnett, a contract employee of Peaks, under the direct supervision and control of Unocal management had gone up to the filter room after a telephone call from Mr. Grove, and found Mr. Grove in a tremendous amount of pain, laying in the filter room. Mr. Arnett also clearly testified that he saw at least one sheared bolt.  Now, Unocal is going to hide behind the fact that a contract employee such as Charles Arnett and then Paul Crapps (at the time he was not an employee of Unocal, but under the supervision and control of Unocal) were involved in putting the

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

platform back up in September 2002.  These individuals, Charles Arnett and Paul Crapps were under the supervision of Unocal management.  Mr. Arnett testified that he could not do anything in that building without the permission of Unocal management.

Paul Crapps testified he may have been confused as to some of the sequence of events.  Since the platform had been put back up at the time of the OSHA inspection in March 2003, and there is some testimony that Paul Crapps had put the platform back up in September 2002, what may have happened is that Paul Crapps put the platform back together in September 2002 and then after the OSHA inspection in March 2003 was directly told by Unocal management, including Roxanne Sinz and Ken Burns, to take the platform down for good.  However, what is interesting is the absence of any records of these activities.  There are no records of any activities that have been produced by Unocal to the plaintiffs in regard to this platform at all.

Why did the platform collapse?  It collapsed, according to plaintiffs' experts, because it was not strong enough.  It collapsed because the bolts were of an inadequate strength, and the manner in which the platform was constructed, was insufficient to maintain the strength over time for the purpose it was designed, constructed and built.  In Lynden Transport, Inc., supra, 623 P.2d at 794, involving the collapse of a trailer, the court noted that in a case involving the

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

destruction of the evidence that *Res Ipsa Loquitur* was
applicable where a collapse would normally not occur without
negligence shifting the burden to the defendant.

Thus, virtually no evidence of significance has been
disclosed by Unocal.  The motion by Unocal is also premature
pending plaintiffs' motion regarding discovery.  It is also
subject of *Plaintiffs' Motion in Limine* and *Plaintiffs' Motion
for Partial Summary Judgment*.  Unocal's motion should be denied.

### C.    UNOCAL'S FAILURE TO COMPLY WITH DISCOVERY

Unocal's motion is premature.  There is presently pending
*Plaintiffs' Renewed Rule 37 Motion for Order Compelling
Disclosure/Discovery.*  Unocal again makes the same
misrepresentations in the Motion in Limine dated June 29, 2007
that were shown to be false in plaintiffs' Reply in Support of
Rule 37 Order Compelling Disclosure/Discovery dated June 12,
2007.  In particular, Unocal throws up (without any proof and
despite the absolute falsity of the statement) the allegation
made in opposition to plaintiffs' Motion to Compel, that Larry
Grove could have put up the work platform in 1999, and the only
evidence that the platform was in existence before 1999 is an
alleged hearsay statement by Charles Arnett.  This is ABSOLUTELY
UNTRUE.

Ironically, Unocal claims without proof, that it conducted
a "thorough investigation" and has been unable to determine when

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the platform was built, who built it, and when.  Unocal failed to investigate the cause of the accident in which Larry Grove was injured, and apparently simply reattached the same deficient work platform until OSHA told Unocal to remove it seven months later.  See also Affidavit of Robert Carmichael, Exhibit 3.

Unocal also claims "[f]rom alleged conversations with unidentified people; plaintiffs believe that Unocal must have known about the construction, and authorized the construction." Once again, Unocal misstates plaintiffs' position.  Plaintiffs' counsel has had many conversations with individuals, including individuals that Unocal claimed as source of information that Siemens owned and/or constructed the work platform, and none would say that.  Unocal has admitted it has no evidence that Siemens constructed the work platform.  Plaintiffs' "belief" is not based on hearsay or unidentified people, but the testimony of Charles Arnett, a contract employee who testified nothing could be done without the authorization/ratification of Unocal, Archie Cook, a former Unocal manager, and Doug Schutte, a Siemens 30(b)(6) witness.  In addition, Leverette Hoover, has told plaintiffs' counsel that a work platform could not be constructed in the Unocal building without authorization or approval of Unocal.

Furthermore, Unocal has refused for years to verify discovery requests in violation of the Federal Rules of Civil

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Procedure.  See *Plaintiffs' Motion for Rule 37 Order Compelling Disclosure/Discovery* and the *Reply in Support of Rule 37 Order Compelling Disclosure/Discovery,* incorporated herein by reference.

### D.    PLAINTIFFS ARE ENTITLED TO (1) DUE DILIGENCE AND REASONABLENESS IN COMPLYING WITH DISCOVERY; AND (2) ACCESS TO UNOCAL RECORDS

Unocal contends that the plaintiffs' claim that Unocal has failed to comply with discovery is irrational.  Unocal supports that proposition by making numerous misstatements that can be clearly demonstrated to be false.  Unocal claims that plaintiffs speculate safety reports used to exist, despite admissions of Unocal employees.  See, <u>supra</u> at p. 18-21.  At page 11 of *Unocal's Opposition to Plaintiffs' Motion for Rule 37 Order Compelling Disclosure/Discovery*, and further repeated in Unocal's *Motion in Limine* at p. 20, defense counsel makes this <u>untruthful and knowingly false statement</u>;

> In fact, it is even possible that Mr. Grove could have built it for Siemens when he began working in the building in 1999.  <u>The only statement made to date that indicates that the platform had been in place for years, is a hearsay statement in the recently disclosed OSHA files that was presumably made by Charles Arnett, a Peak employee, who worked as a Unocal Contractor</u>. (Emphasis added).

That is patently untrue, and Unocal knows it, because in a separate opposition to the Motion for Partial Summary Judgment, Unocal stated at page 4;

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

…another worker, who was a close friend of Mr. Grove's, testified that he also stood on the platform to change filters and likewise, had no problem with the platform. Robert Sprinkle stated that he changed filters in the Unocal filter room <u>as early as 1990 or 1991</u>. (Emphasis added).

It is unsupportable and clearly untrue for Unocal to even raise the suggestion that plaintiff Larry Grove could have built the work platform for Siemens when he began working in the Unocal building in 1999. Though Unocal claims the only evidence that the platform was in existence before 1999 is an alleged hearsay statement from Charles Arnett (see Unocal Memorandum at pages 20-21), in fact, there is much, much more than simply Charles Arnett's testimony. There is the testimony of Robert Sprinkle. There is no indication that Mr. Sprinkle has testified untruthfully. Furthermore, the testimony of Arnett and Sprinkle is corroborated by others. There are the notes of Ken Burns, DEF00027, where he indicated that obviously the platform had been in the Unocal building affixed to that wall for obviously a <u>long time</u>. See Exhibit 6. Defendant has done pre-depositions of numerous Siemens employees and is well aware of the fact that the platform was in existence before Siemens got the contract for the Unocal building in the early 1990's. Several Siemens employees acknowledge the platform was in existence for a long time. See Affidavit of Michael Cohn. Defense counsel has acknowledged same in conversations with

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

plaintiffs' counsel that the platform was in existence in the 1980's or 1970's.  Furthermore, plaintiffs' counsel through conversation with former Siemens employees is also aware that the platform was in existence well before Larry Grove became an employee for Siemens, thus the statement that is thrown up just to confuse the issues and create a misimpression with the Court should be rejected, and it also reflects poorly on Unocal that such a statement can even be made when it is well known that it is simply untrue.

Unocal says that plaintiffs assume that Unocal has not diligently searched for records.  Plaintiffs have shown in their *Renewed Motion for Rule 37 Order Compelling Disclosure/Discovery* filed this year, and the previous Motion to Compel filed last year, and the Affidavits of Michael Cohn submitted in support of both motions, numerous responses to discovery answers including responses to discovery requests numbers one, two and three alleging that Siemens either owned or maintained the platform even though Unocal has <u>no</u> evidence to support that position, and even though all of the individuals listed as having the knowledge of same, in fact, did not have <u>any</u> knowledge that Siemens had built or maintained the platform that collapsed injuring Larry Grove.  This alone would raise suspicion in any ordinary person that the defendant has not been diligently answering discovery requests.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

In addition, <u>all</u> of the safety records for the building,
including the safety inspections that have been conducted
yearly, prior to the accident have somehow disappeared and are
unable to be located by Unocal.  Unocal also suddenly produces
documents in May 2006, after several depositions of Unocal
personnel have been taken, that were apparently generated in
July 2004 at the time of the initial disclosures, but never
turned over to plaintiffs.  Unocal counsel admits in Unocal's
Motion for Rule 37 Sanctions filed last year, after they had
falsely claimed that the plaintiffs had concealed a document,
i.e. the Affidavit of Paul Crapps that Unocal, in fact, had
possession of for many years but concealed from plaintiffs, but
claimed it had been separated from the Unocal <u>main file</u>.

Unocal apparently separated documents and placed them in
different files.  Plaintiffs have not been provided access to
these files.  Plaintiffs know documents have not been disclosed,
such as safety reports, building and maintenance records.  There
have been no records produced as to this platform from Unocal.
And there apparently has been no diligent search for records and
Unocal has continued to provide information that was false in
response to discovery requests, perhaps due to lack of
reasonable diligence in compiling information.  Unocal has lost,
or has been unable to find, any of the safety records.  Yet,

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Unocal still misrepresents the facts when it claims, despite the evidence, that there were no safety reports.

The platform collapsed in September 2002. It was finally removed in March 2003. Unocal has produced no records of what they did with the platform between September 2002 and March 2003. Where was the authorization to fix or re-attach the platform? Where are any records regarding the platform from Unocal at any time? Where are any safety records of Unocal? Where are all the records from the Unocal main files and the other files that have become separated?

The testimony of Charles Arnett, and Doug Schutte (the 30(b)(6) records deposition designee of Siemens), Exhibit 13, and communication with former management of Siemens by plaintiffs' counsel, show that anything that was going to be built in the Unocal building would need the prior authorization by Unocal, that there would have to be invoices and work orders. Whoever built that structure should have a trail of documentation, that simply has not been turned over to plaintiffs. Former Unocal Manager, Archie Cook, confirmed the need for authorization/approval for such a structure in the Unocal building.

Unocal's claim that Unocal would have no reason to want or need the platform constructed is simply untrue. It also deflects what the real question is. First, Unocal may have

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

constructed the platform to change the air filters themselves
after the building was constructed.  The air filters go from the
floor up to the ceiling.  Thus, one needs either a tall ladder
or a platform to access the higher areas of the room.  Prior to
the time that Unocal may have contracted with outside
contractors, (the term today would be out-sourcing) Unocal could
have had the platform constructed so that its own employees
could access the air filters.  In any event, whether Unocal
employees would utilize the platform or have a need is
irrelevant to the policy of Unocal to require authorization for
anything that would be done in its building, whether it's done
by a contractor or a Unocal employee.  See testimony of Charles
Arnett and testimony of Archie Cook.

The plaintiffs simply have the history of what has occurred
in this case.  First, Larry Grove retrieved some of the sheared
bolts from the building.  The defendant, Unocal indicates that
it destroyed the rest of the structure and evidence after the
March 2003 inspection by OSHA.  Unocal had in its possession an
Affidavit of Paul Crapps, which it had never produced to
plaintiffs.  Unocal has been unable locate and produce any of
the safety records, pre-accident, for the building.  Unocal
provided incorrect answers to numerous discovery requests as set
forth in prior pleadings by plaintiffs, and also the
accompanying Affidavits of Michael Cohn, especially in regard to

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the allegations that Siemens had something to do with the structure when the defense counsel, who represents both Siemens and Unocal, knew Siemens had nothing to do with the work platform.  Defendant acknowledges that the files have been separated and put into different locations, including the Paul Crapps Affidavit.  Unocal had numerous documents at the time of initial disclosures in July 2004 which were not produced to plaintiffs until May 2006.

Unocal's answers, and changes to answers, indicate an unwillingness to exercise due diligence to find records. Plaintiffs have a right to find out why certain safety records do not exist.  Plaintiffs have a right to find out where the records are showing the approval of the work platform, or the payments for the work platform, or the purchase of materials for the work platform.  Unocal has sought and obtained thousands upon thousands of pages in regard to Larry Grove, but has been reticent about turning over any information regarding Unocal and its building and the work platform, safety records, or any other records that may be relevant to the matters in this litigation. Thus, there is a basis for the plaintiffs' request that discovery be compelled.

In addition, since defense counsel is counsel for both Unocal and Siemens, they have actual access to all the Unocal and Siemens records.  Plaintiffs have a right to suspect that

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

the records have not been diligently searched, or that they have been scattered into different files and a less than strenuous search has been made for records that could reveal the source of the platform, the approval of the building of the platform, any requisition or payments for parts for the platform, maintenance for the platform, for re-attaching the platform. None of these records are apparently available. Yet, the absence of records and the absence of any evidence whatsoever, did not prevent Unocal from answering untruthfully plaintiffs' first discovery requests, plaintiffs' second discovery requests, plaintiffs' third discovery request, plaintiffs' fifth discovery requests, plaintiffs' sixth discovery requests, plaintiffs' seventh discovery requests, as well as other discovery requests.

Over and over, plaintiffs were misled by the defendant as to the role of Siemens in the construction or ownership of this platform, when in fact, Unocal and all the individuals that it listed as people with knowledge, had no knowledge that Siemens had anything to do with the construction of this platform, and many knew that Siemens did not take this platform apart. Unocal also knew Larry Grove, for that matter, had nothing to do with the construction or maintenance of the platform.

Unocal claimed in page 19 of its Opposition to Plaintiffs' Rule 37 Motion, that its discovery answers are not misdirected because "in its initial discovery answers, Unocal believed only

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Siemens could have erected the platform because Unocal knew from talking to its employees that no Unocal employee worked in the filter room". Again, this is a misleading statement in that the responses to the initial discovery requests were not simply that Unocal employees did not work in the filter room, but that on information and belief it was Siemens that owned and maintained and built the work platform. Indeed, the individuals with that information that were contacted by plaintiffs' counsel, or deposed, could not state any belief or information that Siemens had anything to do with the construction, maintenance, or ownership of this platform. Furthermore, counsel for Unocal conveniently forgets, that not only does it represent Unocal but is also counsel for Siemens, and therefore, it has open access to Unocal and Siemens and would have knowledge that Siemens, through Siemens' own employees and managers, had nothing to do with the construction, ownership or maintenance of the work platform. Therefore, to continue to insist that Siemens had something to do with the platform was incorrect, and known to be incorrect.

When Unocal claims that its employees would have no reason to want or need the platform constructed, that is a disingenuous argument. Charles Arnett testified, nothing could be constructed in that building without the approval of Unocal. Siemens could not build anything without Unocal's authorization

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

and approval.  This was a large structure.  It would not go
unnoticed by Unocal.  The platform was needed to access the air
filters that needed to be changed up to four times a year.

Unocal claims that no Unocal employee recalls ever seeing
the platform in the filter room.  The Unocal employees testified
that they did safety inspections of the building.  The safety
inspection of the building was not limited to only certain
portions, but was supposed to be an inspection of the entire
building.  See deposition of Archie Cook.  Furthermore, Unocal
employees went on an orientation of the building, including the
filter room.  It is simply untrue as implied by Unocal counsel,
that Unocal employees had no reason [ever] to be up in the
filter room or in the mechanical floor of the building.

Unocal claims it has voluntarily subpoenaed records from
prior contractors.  Yet, regardless of whether those records
would exist from these other entities, records should also be in
Unocal's own files.  Furthermore, it is known that Unocal has
had other entities review/inspect the building.  Plaintiffs
obtained documents in regard to inspections of the building
(which documents Unocal refused to disclose saying they were
irrelevant).  Thus, in a letter from TRA Architecture
Engineering Planning Interiors, dated February 3, 1992, it was
stated "TRA has been engaged by Unocal to assist in an
evaluation of their six story office building located at 909 W.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

9th Ave….."  See Exhibit 8 to Plaintiffs' Motion to Compel, filed

December 20, 2005.  Any such records regarding this inspection

have not been produced by Unocal.

Unocal has had many problems with the building including

asbestos.  None of the records regarding the asbestos abatement

and the inspection of the building have been produced to the

plaintiffs.

There is a report of inspection from Wormald Fire Systems,

Inc. dated February 21, 1990, in which it is indicated that they

conferred with Don Akers (Unocal Building Manager).  There is a

report from an entity called Cache Barner Usher, Architects,

with a letter addressed to Don Akers dated October 16, 1990,

concerning a certificate of occupancy.  Cross-copied in that

report are other entities, including the Department of Public

Works, the Anchorage Fire Department, Honeywell, Inc., and

another company called KHO Construction Company.

It is also inconceivable that in hiring contractors to do

work in the Unocal building, that Unocal building managers and

employees would simply not know what was in their own building.

Presumably, when an entity is hired to do contract work, someone

from the Unocal building would need to take the contractor

around the building to show them what they would have to do, and

what they would have to service, in order first for the

contractor to even submit an intelligent bid as to the cost of

the service, which in turn would require agents of Unocal to be aware of what was in the particular sections of the buildings.

Unocal, itself, has asserted ownership over the platform and its component parts, including the sheared bolts. Now for Unocal to claim it has no knowledge of anything in regard to the building, including a platform that it has acknowledged has been in existence for many, many years before Siemens ever appeared on the scene, is simply misdirection. The Unocal records have been destroyed, lost, concealed, or misplaced. However, plaintiffs cannot answer which one applies in light of the apparent lack of effort to even locate said records.

In regard to safety reports, Unocal seems to imply that there was only one safety inspection conducted in the building back in the late 90's. In fact, there had been many safety inspections, and none of these records are available. It is inconceivable that these safety records of a major oil company should simply disappear. The only way future inspectors of the building can determine what was done previously, what was corrected, and what remains uncorrected, is to have the previous safety reports to review when conducting a subsequent safety inspection. It is just inconceivable that a company the size of Unocal would not keep records of their safety inspections of their property. These safety records obviously would be important documents for use in finding what problems have been

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

found and alleviated and what remains to be done.  Again, in regard to any records, Unocal cannot simply invoke attorney/client privilege or proprietary work privilege, and stonewall plaintiffs.  The scope of discovery is broad and the defendant cannot simply hide behind privilege and seek to prevent plaintiffs from obtaining legitimate discovery. Plaintiffs also requested the Court order Unocal to make available the person or persons most knowledgeable concerning the search made for records in the record keeping system of Unocal.

### THE PLAINTIFFS HAVE NOT EXCEEDED THE PERMITTED NUMBER OF INTERROGATORIES

Unocal unilaterally decreed plaintiffs exceeded the number of interrogatories permitted under the Federal Rules of Civil Procedure.  It is interesting that Unocal apparently utilizes the rules only when it suits their purposes but ignores blatantly certain rules such as verification when they simply do not comply.  Unocal took certain interrogatories and split them into numerous questions when they all relate to the same topic. Second, many of the interrogatories that were asked were needed to follow up and to have more sub-parts due to the failure of Unocal to answer previous requests or to mince words in response to a request.  For example, if the plaintiffs ask about employees, Unocal has simply answered about "current" employees,

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

without answering about former employees.  The manner in which the defendant has interpreted interrogatory responses has been set out in plaintiffs' previous pleadings and affidavits.  The plaintiffs requested that even if the Court finds that the Interrogatory numbers had been exceeded, that they be permitted to exceed the number and have the defendants answer the questions they have been unwilling to answer to this date.

Furthermore, Unocal's Motion in Limine is premature.  These issues are presently before the court in Plaintiffs' Rule 37 Motion for Order Compelling Disclosure/Discovery.  The outcome of said motion will be pertinent as to the issues raised in Unocal's Motion regarding discovery and the use of Unocal's discovery responses at trial.  The Motion in Limine is premature and/or without merit.

## VI.  CONCLUSION

Unocal's Motion in Limine should be denied.

RESPECTFULLY SUBMITTED this 9th day of August, 2007.

<div style="margin-left:3em">

WEIDNER & ASSOCIATES, INC.
Counsel for Plaintiffs


/s/ Michael Cohn
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail:  nbackes@weidnerjustice.com
ABA No. 8506049

</div>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2007 a copy of the foregoing **PLAINTIFFS' OPPOSITION TO UNOCAL'S MOTION IN LIMINE** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC.
s/ Michael Cohn

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571