John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska  99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | Case No. 3:04-cv-0096-TMB |

## REPLY TO OPPOSITION TO MOTION IN LIMINE

Defendant Unocal Corporation filed its motion in limine requested a ruling on the following issues: 1) the indemnity contract with Siemens, 2) the surveillance of Larry Grove; 3) Sarah Grove's publicly-accessible online website/journal; 4) alleged spoliation; and 5) Plaintiffs' complaints of Unocal's alleged failure to comply with discovery.  Plaintiffs have opposed the motion.

## I. INDEMNITY CONTRACT

**A.  Indemnity Agreements Are Standard in the Industry, and Mutual to Each Party.**

As stated in Unocal's motion, the indemnity clause reciprocal indemnity provisions embodies the maxim "I'll take care of mine and you take care of yours". A "knock for knock" indemnity agreement requires that each party be responsible for injuries to its employees and damage to its equipment, even if the other party was at fault. This way, the parties know from the outset who will pay for any accident. This generally reduces the number of lawyers involved and expenses incurred in litigation.  These are rational and logical goals for businesses to accomplish.

Because it suits their purpose, Plaintiffs focus upon only one-half of the indemnity contract between Siemens and Unocal.  Plaintiffs emphasize that the contract requires Siemens to indemnify Unocal when a contractor is injured on Unocal property.  However, the contract obligates each to indemnify the other for injury to employees.  For example, if a Unocal employee had been injured and sued Siemens because of its alleged negligent work or the negligence of a Siemens employee, Unocal would have been required to indemnify Siemens, regardless of fault.  Plaintiffs ignore the mutuality of the contract in order to inflate their punitive damages argument.  The indemnity agreement is a standard provision and does not support Plaintiff's claims.

Just as evidence of insurance is inadmissible under Fed. R. Evid. 411, evidence of Siemens' acceptance of Unocal's tender in this case should also be

inadmissible. There is no valid reason to present the indemnity contract to the jury other than to condemn and disparage Unocal in a manner that would not otherwise be admissible. The court should exclude evidence or inference of the indemnity contract.

**B.     Mutual Indemnity Does Not Create Reckless Indifference.**

Mutual indemnity does not create reckless indifference. Likewise, the indemnity agreement does not support a reason for Unocal to ignore contractors' safety.

Plaintiffs speculate that an issue of fact exists as to the "reckless indifference" of Unocal in 2002 because Ken Burns testified that "I don't recall specifically whether we even went into the penthouse" in 1998 or 1999. Burns deposition at 71, attached hereto as Exhibit A. Plaintiffs allege that the "absence of monetary exposure" caused Unocal not to inspect the penthouse and to be indifferent to Grove's safety. The allegation is without merit.

Safety reports from 1999 and 2000 have been located. The reports show that Ken Burns did enter the" penthouse" both years. Exhibit B, attached hereto. His notation about his findings are cursory, but it is clear that he did enter the penthouse and inspect.

But even if Burns did not inspect, the reciprocal nature of the mutual indemnity agreement does not create reckless indifference. "Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of

REPLY TO OPPOSITION TO MOTION IN LIMINE
*Grove v. Unocal,* Case 3:04-cv-0096-TMB                                               Page 3 of 14

others." *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995). The facts alleged by Plaintiffs, even if taken as true, do not amount to reckless indifference,[1] since no one, not even Ken Burns, knew of any fact that would have led a reasonable man to realize there was any risk, let alone an extreme risk, present in the filter room. If it amounts to anything, a failure to inspect was negligence.

Plaintiffs strive to create reckless indifference from Ken Burns' testimony as support for their punitive damage claim. However, even if Burns did not inspect the filter room during his building inspections, there are no facts to support that it amounted to reckless indifference. There is no evidence of any complaint about the construction or maintenance of the platform. There is no evidence that Unocal had any knowledge of a problem with the platform in the filter room. Plaintiffs have no evidence that the platform was unstable prior to Grove's fall, or even that it was becoming unstable. In fact, Larry Grove stated that he had no problem standing on the platform until the day it fell. See Grove deposition I, at 91, attached as Exhibit C. The lack of notice of a problem with the platform in the filter room does not support reckless indifference.[2] The alleged failure to inspect the filter room was not an omission that would be recognized as involving a high degree of probability that serious harm will result from the omission, especially since <u>no problem had ever been reported in the filter room</u>.

The indemnity agreement does not create reckless indifference. The

---

[1] Plaintiffs are required to prove reckless indifference by clear and convincing evidence before the court should allow the claim to be presented to the jury.
[2] If it supports anything, it is negligence.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

indemnity agreement does not help prove that anyone knew that a failure to inspect the platform in the filter room was an "extreme risk". Plaintiffs brandish the indemnity agreement as proof of "financial incentive" but then recite facts that only lead to a possible negligence claim. Plaintiffs' conclude that the platform was poorly designed and not maintained. Plaintiffs claim the platform's poor design was itself reckless. But Plaintiffs do not allege that the poor design was intended or that Unocal knew of an extreme risk that the platform design posed. Plaintiffs' "facts" are no more than negligence, not reckless indifference and they do not relate to the indemnity agreement.

No mention of the indemnity agreement should be permitted.

**C.      Indemnity Agreement Cannot Be Used as "Preemptive Strike."**

Plaintiffs claim that they wish to use the indemnity agreement against Siemens to refute any "bias or prejudice of a witness." Plaintiffs do not elaborate on what testimony Siemens employees might give, but Plaintiffs have in the past discussed the possibility that Siemens might testify to all responsibility for the platform. To date, there is no developed testimony on this fact. If Plaintiffs have discussed this testimony with Siemens employees, they have not shared it with Unocal.

Given that the testimony is not developed and appears to only be a theory that Plaintiffs anticipate, the indemnity agreement should not be allowed in for the sole purpose of preventing Siemens' employees from testifying. The indemnity agreement by itself does not prove or disprove any fact in this case and should not be admitted into evidence or referred to by Plaintiffs.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## II. NO COMMENTS SHOULD BE ALLOWED ON HOW UNOCAL OBTAINED THE SURVEILLANCE VIDEOS.

Unocal seeks an order precluding Plaintiffs from introducing any evidence which portrays Unocal's surveillance of Plaintiff Larry Grove as illegal, unethical, or otherwise inappropriate. In Plaintiffs' response, the very title of the section illustrates the continued mocking and derisive manner that Plaintiffs have referred to surveillance; i.e., "Secret Surveillance". Opp. at 14. That phrase should not be allowed before the jury, as it creates a prejudicial inference that Unocal did something wrong in its surveillance of Larry Grove.

Plaintiffs' characterization of the surveillance has always been accompanied by fanciful motives ascribed to Unocal. Unocal denies that it "staked out" the Grove home or "exhaustively investigated the entire Grove family." Unocal has, however, conducted normal discovery into each of the Plaintiffs' claims, the scrutiny of which has apparently caused Plaintiffs' discomfort. Plaintiffs' unhappiness at the exposure of the true facts underlying their claims does not justify their portrayal of discovery efforts as part of an "unprecedented massive harassment."[3] This is exactly the type of reference that should be excluded from trial. It is an unnecessary, untrue and prejudicial characterization of Unocal's right to discovery of the facts underlying Plaintiffs' claims.

Unocal only had control over the surveillance video made for Unocal and disclosed in Defendant's 15th Supplement Disclosures, dated December 5, 2006. The second video was produced to Unocal from the workers compensation file,

**Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

pursuant to a subpoena. Plaintiffs were free to pursue their own discovery on the workers compensation video. Predictably, however, they have melded the two videos into one issue, presumably accusing Unocal of "conspiring" with Siemens. Unocal does not have control of the workers compensation video and did not "conspire" with Siemens. Unocal freely and quickly disclosed the workers compensation video to Plaintiffs when they received it via subpoena from workers compensation.

Plaintiffs assert that they do not believe that they have all discovery on the video made for Unocal, but have no facts upon which to base that statement. Regardless, the unsupported assertion is not one that should be dragged before the jury.

The court should preclude Plaintiffs from inferring that Unocal's public surveillance of Grove is unethical, inappropriate or illegal. Public surveillance is legal, appropriate for purposes of suspected malingering, and within Unocal's discovery right.[4] Any reference or depiction of Unocal in an unethical, inappropriate or illegal light for engaging in surveillance of Larry Grove would be contrary to Federal Rule of Evidence 403, and the prejudice to Unocal far outweighs any probative value.

---

[3] This is especially true, since so much admissible discovery was obtained by Unocal through the very subpoenas that Plaintiffs complain of.
[4] Surveilling a Plaintiff is especially called for where, as here, the Plaintiff's travel and recreational activities since his September 2002 accident are so inconsistent with his failure to so much as apply for a single job since his accident.

### III. PLAINTIFFS SHOULD BE PROHIBITED FROM ASSERTING THAT DISCOVERY OF SARAH GROVE'S LIVE JOURNAL AND MYSPACE DOCUMENTS WAS IN ANY MANNER IMPROPER.

Plaintiffs grudgingly concede that Sarah Grove's MySpace and LiveJournal computer based documents were "not per se private". They maintain, however, that Sarah Grove's diary was "published on-line, mainly between friends." This assertion ignores the undeniable fact that nothing is private or "just between friends" when openly published on the Internet. The name "World-Wide-Web" is an accurate depiction of the notoriously open nature of the Internet.

Plaintiffs argue that the diary "contains very little evidentiary value". But there is actually a great deal of evidentiary value to the diary, much of which has already been discussed in other pleadings: a photo of Larry Grove fishing, documentation of Larry Grove's recreational activities; Sarah Grove's relationship with her father and her friends; other stresses in Sarah Grove's life; and Sarah Grove's unvarnished living expenses and roommates.  These are all clear examples of admissible evidence.

Plaintiffs refuse to admit that Sarah's contemporaneous diary contained a photo of Larry Grove that had not been produced in discovery.  The photo is relevant to the activity level of Larry Grove, as is Sarah's description of his activities on the halibut charter and subsequent clam dig. Although Sarah was not with Larry at the beach during the clam dig, Larry refused to even acknowledge his participation until confronted with the diary account.  Its impeachment value alone makes it relevant and admissible.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

In a footnote, Plaintiffs argue about the evidentiary value of the diary. Opp. at 18, n. 4. It is irrefutable that in her diary, Sarah Grove states her living expenses at a much smaller amount than she stated in discovery or during her deposition. Plaintiffs argument is not to relevance, rather to the weight of the evidence. The impeachment value of the diary is undeniable.

Other stress in Sarah Grove's life that may have caused or contributed to the injury she alleges is relevant and admissible. Sarah discusses at length in her diary that she is stressed about school, work, her relationship with her boyfriend and her friends. Significantly she spends little to no time discussing any stress related to her father's injury or his alleged lack of ability to spend time with her. This very omission is relevant and admissible to her consortium claim.

As shown above, Unocal has not overstated the evidentiary value of the public diary. Plaintiffs should be precluded from stating or inferring that Unocal acted illegally or inappropriately when it downloaded information that Sarah Grove posted publicly on the Internet.

### IV. SPOLIATION HAS NOT BEEN PROVEN, AND SHOULD NOT BE ADDRESSED BEFORE THE JURY.

Plaintiffs devote a substantial portion of their brief to the last two issues: spoliation and compliance with discovery. They repeat the same arguments that they have made in numerous other briefs, attacking Unocal for perceived violations.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiffs characteristically focus on two items: safety inspection reports from the 1990s, and the actual work platform itself. Plaintiffs should be <u>precluded</u> from referring to "spoliation" or Unocal as having wrongfully destroyed evidence.

**A.   Pre-Injury Safety Reports Have Been Found.**

Unocal has found and produced pre-injury safety reports from 1999 and 2000. There is no spoliation claim for these documents. Production of the pre-injury safety reports should end any argument about spoliation. Plaintiffs should be precluded from discussing spoliation of records.

**B.   Work Platform.**

Plaintiffs have no legitimate claim for spoliation of the work platform. The platform was dismantled as abatement, in response to an OSHA citation, and Unocal's actions should have immunity as a result. In its Memorandum, Unocal cited the deposition of OSHA investigator John Stallone, who said that Unocal's response was appropriate. Based upon the OSHA citation, the removal and disposal of the pieces of the platform was not spoliation but a reasonable action in response to the OSHA citation.

Plaintiffs cite no authority to prove that Unocal was required to keep the pieces of the platform after the abatement. At the heart of any spoliation of evidence claim, is the need to establish a legal or contractual duty to preserve evidence in a civil action. Plaintiffs merely claim that Unocal "should have known" that Grove was injured and Unocal was thereby required to keep the pieces of the platform. But there was no duty to preserve the evidence by agreement,

REPLY TO OPPOSITION TO MOTION IN LIMINE
*Grove v. Unocal,* Case 3:04-cv-0096-TMB                                                                 Page 10 of 14

subpoena, or special relationship/duty between the Plaintiffs and Unocal. Therefore there was no duty on Unocal's part to preserve the platform.

Finally, Plaintiffs have not proven that the absence of platform hinders their ability to establish a prima facie case. Plaintiffs have failed to state that they are unable to make a prima facie case of negligence without the platform pieces. They have not cited a single fact that they cannot prove without the platform. Plaintiffs' experts each refer to the platform and opine that they'd "like to" see the pieces. However, no expert asserts that he was unable to formulate his opinion in the absence of the platform pieces. See, e.g., Manning deposition at 47-48, stating that the information provided was sufficient to render an opinion, attached hereto as Exhibit D.

Plaintiffs have failed to establish a need for the platform, they have no evidence of spoliation, and Plaintiffs should be precluded from discussing or inferring to spoliation before the jury.

## V.  COMPLIANCE WITH DISCOVERY.

Unocal moved for the exclusion of references to platform documents, meeting minutes, safety reports, and interrogatories. Plaintiffs do not limit their response to the topics Unocal moved to exclude, instead broadening the scope in their opposition to cover their own complaints, including Unocal's refusal to allow Plaintiffs unfettered access to every document in Unocal's building, which would include privileged and proprietary documents. Much of Plaintiff's response is irrelevant and off-point, so Unocal will address only the salient points.

**Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

### A. Platform Documents.

Unocal has not yet located any documents referring or relating to anyone building the platform. Unocal continues to search and has recently located and produced documents relevant to work performed by Landis Straefa inside the Unocal filter room in the late 1990's. Consistent with its discovery requirements, Unocal will continue to pursue documents related to the construction of the platform.

However, since Plaintiffs have no evidence that Unocal build, authorized or condoned the erection of a platform in the filter room, Plaintiffs should be precluded from arguing or inferring that Unocal failed to provide documents. There is no spoliation and no proof that platform documents once existed but no longer exist.

Although it is an irrelevant argument in their opposition, Plaintiffs accuse Unocal of failing to investigate the cause of the platform collapse. Opp. at 23. It is undisputed that Unocal did not know of the collapse until OSHA informed Unocal about 7 months later. Larry Grove says that he only talked to Charles Arnett, a Peake contract worker, about the incident. Ex. C, Grove deposition I, at 127-128. Charles Arnett, the Peake contractor who testified that he carried Grove out of the building after the fall, stated that he did not inform anyone at Unocal of the injury, even though he knew he was required to do so. Arnett deposition at 62-63, attached hereto as Exhibit E. Unocal did not know of the platform incident until OSHA inspectors arrived at Unocal's front door. Cook deposition at 10, attached hereto as Exhibit F.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiffs accuse Unocal of reinstalling the platform after the incident without regard to its cause. But the same facts apply and are undisputed: Unocal did not know of the incident and the platform was fixed by contract workers who did not consult any Unocal employee first. Unocal did not know that the platform had collapsed nor did it know that it had been reinstalled. Therefore, Plaintiff's reliance upon these facts as evidence of spoliation is misplaced.

**B.    Meeting Minutes.**

It does not appear that Plaintiffs addressed this issue. Plaintiffs should not be permitted to speculate to the jury that there were "minutes" from meetings that have not been turned over to Plaintiffs.

**C.    Safety Reports.**

These documents have been located and produced. No further issue over a "failure to produce the reports should remain. No reference to the location or discovery issues pertaining to safety reports should ensue.

**D.    Interrogatories.**

Plaintiffs present their argument, again, on why more than 25 Interrogatories were desired. But Plaintiffs do not support that desire with an actual need. The questions asked after 25 Interrogatories were duplicative of prior requests. Plaintiffs state the duplication was necessary because they did not receive the answers they desired to the first 25. But mere duplication is unnecessary and Plaintiffs do not provide the court with a coherent delineation of what answers they needed from discovery that weren't ever asked in the first 25 Interrogatories.

**Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

REPLY TO OPPOSITION TO MOTION IN LIMINE
*Grove v. Unocal,* Case 3:04-cv-0096-TMB                                                                    Page 13 of 14

Plaintiffs should be precluded from discussing, arguing or inferring that the Interrogatories were deficient.

## VI. CONCLUSION.

For all the above stated reasons, the motion in limine should be granted.

DATED at Anchorage, Alaska, this 25th day of September 2007.

    CLAPP, PETERSON, VAN FLEIN,
    TIEMESSEN & THORSNESS, LLC
    Attorneys for Defendant Unocal

    s/ Linda J. Johnson
    CLAPP, PETERSON, VAN FLEIN,
    TIEMESSEN & THORSNESS LLC
    711 H Street, Suite 620
    Anchorage, AK  99501-3454
    Phone:  (907) 272-9631
    Fax:  (907) 272-9586
    Direct email: ljj@cplawak.com
    Alaska Bar No. 8911070

### Certificate of Service

I hereby certify that on September 25, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

    s/ Linda J. Johnson

REPLY TO OPPOSITION TO MOTION IN LIMINE
*Grove v. Unocal,* Case 3:04-cv-0096-TMB    Page 14 of 14