Michael Cohn
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska 99501
(907) 276-1200

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>UNOCAL CORPORATION<br><br>　　　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>) Case No. A04-0096 CV (TMB)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF LINDLEY MANNING, P.E.**

STATE OF ALASKA           )
                          ) ss.
THIRD JUDICIAL DISTRICT   )

　　　　LINDLEY MANNING, P.E., being first duly sworn under oath, deposes and states as follows:

　　　　1.　　I am a Registered Professional Mechanical Engineer in the States of Ohio and Nevada;

　　　　2.　　I have submitted a report in this matter. See Exhibit 1;

1

Exhibit 1
page 1 of 6

3. The fasteners and structural members utilized for the work platform were improper and inadequate for the application of workmen standing on the work platform, in addition to other safety omissions, rails, etc. I have seen no evidence that the work platform was intended to be used for any other purpose. The information available appears to show that workmen such as Larry Grove used the work platform as a structure to stand on to change filters in the filter room;

4. The fasteners that were utilized were not structural fasteners designed to hold a worker, nor for any other application where significant load is to be carried. The fasteners appear to be light weight fasteners inadequate for the application used in this case, and would be instantly recognized by anyone with any design experience as what are commonly called "stove bolts." The use of these fasteners, with their attendant thin square nuts, in this structure was extremely cavalier and irresponsible;

5. Improper design and inadequate materials were utilized. If any engineering standards were applied, they were inadequate, and applied in an extremely irresponsible manner;

6. It appears that an inadequate design was utilized and safety considerations were either inadequately addressed, or not considered at all;

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 1
page 2 of 6

7. The improper and inadequate design, construction and materials made structural failure inevitable at a time that could not be predicted and without prior warning, i.e., an accident waiting to happen;

8. This in turn makes it even more important that periodic inspections and maintenance occur to prevent structural collapse or to ascertain any weakening of the structure increasing the danger to those utilizing the structure;

9. There appears to be unprotected small bolts with a substantial certainty of inevitable failure by one or more of multiple means; and

10. There appears to be little if any consideration given to designing, or maintaining, a structure for the safety of the users.

FURTHER AFFIANT SAYETH NAUGHT.

_____
LINDLEY MANNING

CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2007 a copy of the foregoing **AFFIDAVIT OF LINDLEY MANNING, P.E.** was served electronically on John B. Thorsness at Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC

s/ Michael Cohn

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Exhibit 1
page 3 of 6

3

# Lindley Manning, P.E.

FORENSIC ENGINEERING PRACTICE LIMITED TO: ACCIDENT RECONSTRUCTION AND FAILURE ANALYSIS
Federal Tax ID #86-0224722

P.O. Box 13392
Reno, Nevada 89507
Phone (775) 786-2711
Fax (775) 329-6906
E-mail: Lin@gbis.com

November 7, 2006

Re.: Grove vs. Unocal

**RECEIVED**

NOV 1 4 2006

WEIDNER & ASSOCIATES

To whom it may concern,

On September 9, 2002, Mr. Lawrence H. Grove was replacing the air filters of an air conditioning system in a Unocal Building in the course of his employment with an air conditioning contractor. To accomplish a part of this task he was standing on a scaffold-like platform approximately 8 feet above a floor. The platform collapsed resulting in Mr. Grove falling to the floor and sustaining injury.

I was asked to provide what analysis I could of the failure of the platform from an engineering standpoint. A vast amount of written material was provided, of which typically very little bore on my task. Photographs of the platform, platform components and area were provided. I have also had discussions with Dr. Joseph Balser, metallurgist/engineer regarding his inspection of the components above. I am familiar with the competency of Dr. Balser.

The State of Alaska OSHA type department considered the platform to be in violation of railing and ladder regulations and took appropriate action. As the ladder was not being used by Mr. Grove at the time of the failure, it seemed unlikely to have played any direct part in this specific incident.

The lack of a railing may have played a part, in that a proper and properly anchored railing might have assisted in preventing and/or reducing the severity of Mr. Grove's fall. Note that this latter consideration is only a possibility, not a probability due to lack of evidence, thus the conditions leading to the OSHA actions may or may not have played a part in the injury. They are a general indication of the quality of the platform design.

The platform framework had been constructed of formed, rather than rolled, steel angle members. The size appeared to have been legs of 2 inches and 3 inches. Slots approximately 3/8 inch wide were provided in the legs for fasteners. Material thickness was not provided, but it appeared to have been substantially less than 1/8 inch. Note that to my knowledge at this time, these members themselves did not fail, one or more of the fasteners did, either by breaking, loosening or both.

The walking surface of the platform was a wooden plank resting freely on top of the steel angle members described above. While such a surface was likely not a safe working surface, that, to my present knowledge, did not appear to have been a cause of the failure nor of the injury to Mr. Grove.

Exhibit 1
page 4 of 6

Fellow, National Academy of Forensic Engineers (NAFE)
President NAFE, 1990

Re.: Grove vs. Unocal
November 7, 2006

Page 2.

Fasteners found loose and damaged at the site shortly after the accident and similar appearing ones depicted in photographs were 1/4 - 20 round head screws with a slot for a blade type screwdriver. The nuts used were common square nuts.

The screws and nuts bore no markings as to strength grade nor other identifying markings of any type. These screws and nuts appeared to be common inexpensive hardware store fasteners, often called "Stove Bolts." SAE Grade 2 might have come close to describing the screw strength. Dr. Balser's work in a scanning electron microscope confirmed the visual grade of the fasteners and typical low quality of the steel used in their manufacture.

The failed screw found shortly after the accident had failed in shear. The only external load expected on such a screw would have been due to Mr. Grove's weight or that of prior users plus whatever was carried with them. Thus it is probable that the screw failed due to the weight of a person or persons using the platform. The proximity in time of the finding of the screw to the fall makes it probable that the sheared screw or screws were sheared at the time of the fall.

The slotted head screws and thin square nuts would not permit tightening the screw sufficiently to provide proper pretensioning for a structural fastener even had the screw and nut material been strong enough to sustain such load, which it clearly was not. There was no prevailing torque locking means built into the nut, so combined with the low preload and the vibration during use and possibly at other times, it would have been highly probable that many of the nuts used to hold the structural members together would loosen over time, leading to improper load carrying in the joints as well as wear as the platform was used.

A moist corrosive environment likely existed in the area of the platform. The rusted condition of the bolts found at the site indicated that they were not of a corrosion resisting material nor were they adequately protected from corrosion. Use of 1/4 inch diameter screws of this type in corrosive conditions to carry a structural load supporting persons, even though two screws were used for most joints, should have been considered highly likely to lead to screw failure.

The slots in the angle members surely would have accommodated 5/16 inch diameter screws and very likely would have taken 3/8 inch screws without taking the time to drill or file the slots for such clearance, although that would have been good design. We thus note that the screw diameters were smaller than should have been used with the angle members.

Exhibit 1
page 5 of 6

Re.: Grove vs. Unocal
November 7, 2006

Page 3.

To summarize, the screws were too weak to properly tighten, even for their size, due to the low material strength and did not have hex or other heads permitting higher tightening torque to be applied. The screws were subject to loosening in service due to the low preloads and a lack of any retention means, such as prevailing torque lock nuts, or even as a poorer last resort, lock washers. The screws were not corrosion resistant and were too small for the task.

A subsequent scene examination after the platform had been removed produced a larger number of fasteners. There were screws and bolts, both intact and damaged or broken. In addition, there were self taping, or sheet metal screws. By using the photos of the air conditioning unit, it appeared that these sheet metal screws had been used to attach the platform frame to the air conditioner, at least in part. It appeared likely that the damaged screws found at this time had been damaged during the removal of the platform.

Use of a sheet metal screw in a vibration environment where larger transient loads are occasionally encountered is poor practice because these fasteners would also have a tendency to work loose over time. There is no way with the evidence I know of at this time to determine if these screws did loosen, nor to determine of there were loosening that it contributed to the platform collapse.

In addition to industrial engineering design experience which varied from engine components for a nuclear powered bomber to coin handling devices for gaming machines, I taught Machine Design to Senior Mechanical Engineering students in a four year degree program at a state university for about 20 years. Design of threaded fasteners and the joints they formed was a major part of that course, as it is in all such programs. The use of undersized low quality fasteners, such as was in this platform would not have met the design criteria presented in the class.

In conclusion, I believe that this platform failed because of improper design. The poor preservation of evidence has limited my ability to make a more detailed description of the defects.

Very truly yours,

*[signature]*

Lindley Manning, P.E., NV, OH

Exhibit 1
page 6 of 6