John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA
GROVE, SARAH GROVE, and MICHAEL
GROVE (DOB 1/21/88) by and through his
father LAWRENCE H. GROVE,

        Plaintiffs,

      vs.                                             Case No. 3:04-cv-0096-TMB

UNOCAL CORPORATION,

        Defendant.

## REPLY TO OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNTIVE DAMAGES, AND REPLY TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO UNOCAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES

Defendant Unocal Corporation filed for partial summary judgment on punitive

damages claim.  Plaintiffs have filed a basic negligence claim for Larry Grove's

alleged fall and injury inside the Unocal building.  Essentially Plaintiffs assert, in

their opposition and their supplemental opposition that the mere presence of the

platform inside the building rises to the level of reckless indifference.  Plaintiffs'

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

cannot meet the "clear and convincing" burden of proof required to maintain a punitive damage claim and it should be dismissed.

## I.  ARGUMENTS OF COUNSEL DO NOT DEMONSTRATE RECKLESS INDIFFERENCE.

In their opposition, Plaintiffs list 17 separate arguments.[1]  Opp. at pp. 4-10. The arguments do not, however, support reckless indifference; at most the argument spells out a negligence theory of liability.  AS 09.17.020(b) requires that a plaintiff prove by "clear and convincing" evidence that the defendant's conduct was either was outrageous, including acts done with malice or bad motives; or evidenced reckless indifference to the interest of another person.  See, also, *Ace v. Aetna Life Ins. Co.,* 139 F.3d 1241, 1246 (9th Cir. 1998).

The summary of "arguments" by Plaintiffs at 17 lists the problems they perceive with the design, manufacture and maintenance of the platform.  See summary of argument #1-12.  These are all negligence arguments that serve to show, if anything, that the platform was poorly built.  The evidence presented does not meet the standard of proving reckless indifference to the interest of another person by clear and convincing evidence, as required in AS 09.17.020(b). "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence [but are restricted to] conduct involving some element of outrage similar to that usually found in [a]

---

[1] The summary is much more clear than the remaining 30 pages, and easier to address.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

crime." *State v. Hazelwood,* 946 P.2d 875, 889 (Alaska 1997) (quoting *Restatement (Second) of Torts* § 908 cmt. b.

In their supplemental opposition, plaintiffs advise the court that it must assume all of the non-movants' allegations are true. This, however, is an incorrect statement of the law. The standard requires a non-movant to come forward with admissible evidence in order to establish a genuine issue of material fact. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002). Much of plaintiffs' allegations are inadmissible and therefore cannot be used to defeat this summary judgment motion.

Plaintiffs rely for their opposition upon numerous assumptions which are not based on fact, let alone admissible evidence. The more prominent are:

> 1) Unocal designed/built the platform structure or Unocal knew it was created;
> 2) the angle iron was installed as structure for a platform for a worker to stand upon;
> 3) Unocal knew contractors used the structure to stand upon while changing air filters;
> 4) Unocal knew or should have known that the platform was built with inadequate materials.

None of these assumptions can be proven, and Plaintiffs' reliance thereon is mere speculation, without admissible evidence. Accordingly, Plaintiffs cannot sustain the basis for reckless indifference. Without these assumptions Plaintiffs have failed their burden of coming forward with such admissible evidence as to create a genuine issue of material fact to stand in the way of summary judgment.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

The court should grant the summary judgment motion. Plaintiffs do not have sufficient admissible evidence to justify presenting the claim of punitive damages to a jury. The complaint "should, at a minimum, allege conduct that meets the legal standard for the award of punitive damages." *Great Divide Insurance Co. v. Carpenter*, *ex rel. Reed*, 79 P.3d 599, 612 (Alaska 2003). If there is no evidence giving rise to an inference of actual malice, or reckless indifference equivalent to actual malice, the trial court need not submit the issue of punitive damages to the jury. *Robles v. Shoreside Petroleum, Inc,* 29 P.3d 838, 846 (Alaska 2001) (upholding trial court's dismissal of punitive damage claim.)

**A.    Plaintiffs' Do Not Have Proof of Notice and Therefore Fail To Establish a "Duty" To Act.**

For negligence to rise to the level of reckless indifference, plaintiffs must prove reckless indifference equivalent to actual malice. *Ace v. Aetna*, 139 F.3d 1241, 1246 (9th Cir. 1998).

Plaintiffs allege in their opposition at 30, that Unocal had a generalized duty as a landowner to provide a safe premises for visitors. Plaintiffs provide no citation for this statement. Plaintiffs come back to "duty" on page 35. There they again address the issue of "duty", this time citing to *Kremer v. Carrs Food Center, Inc.*, 462 P.2d 747 (Alaska 1969). Although Plaintiffs only cite the case for a generic reference to a landowner's duty of reasonable care to maintain its premises, the specific language in the opinion is quite helpful. *Kremer* cites the *Restatement (Second) of Torts* §343 (1965) which states:

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, <u>and should realize</u> that it involves an unreasonable risk of harm to such invitees, **and**
> (b) should expect that <u>they will not discover or realize</u> the danger, or will fail to protect themselves against it, **and**
> (c) fails to exercise reasonable care to protect them against danger.

*Kremer* at 749 (emphasis added).

First, the filter room was in a locked, restricted area, where only trained contract workers such as the plaintiff went, perhaps, 3–4 times a year. It was an area of the building neither open to the public nor open to the vast majority of Unocal employees. In their Opposition, Plaintiffs do not dispute that Unocal had no actual notice, as set forth in Unocal's Memorandum at 17. Instead, Plaintiffs rely on what they argue Unocal "should have" done. Plaintiffs allege Unocal should have inspected and therefore should have known about the condition of the platform.[2] These 'should haves' are allegations of negligence, not admissible evidence of reckless indifference. Plaintiffs have not come forward with any evidence that Unocal knew or should have known that the platform presented an unreasonable risk to an experienced HVAC technician such as Mr. Grove. Further, Plaintiffs do not even allege that Unocal intended any actionable act or omission, as is also required for reckless indifference.

---

[2] Plaintiffs also allege that Unocal should have investigated the accident after it happened and not allowed the platform to be re-attached. There is no factual dispute that Charles Arnett failed to inform Unocal of the accident and order the platform reattached without Unocal ever becoming aware

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Second, Unocal had no reason to expect that an experienced HVAC worker like Larry Grove would not inspect the simple and easily checked structure that he was about to climb up on. Nor, is there any showing that Unocal was unjustified in relying on the experience and expertise of someone such as Mr. Grove to take the minimal steps necessary to check to see if the structure was loose, and if so, have Unocal fix the problem or even correct it himself. In fact, according to the Siemens-Unocal contract, Siemens and Grove had a duty to inspect the equipment they used at Unocal. *See* argument below. Unocal, reasonably relying on this contract, expected that Grove <u>would</u> discover or realize the danger and protect himself against that danger. It is unreasonable for plaintiffs to ask the court to find evidence of reckless indifference by Unocal when Grove was and his employer were contractually required to inspect the platform and take minimal steps to make sure it was safe. Asked if he would agree that he should have done this, Grove testified it was not his job. Exhibit I, Grove deposition I at 108-109.

Third, without proof of knowledge of the platform's condition, Plaintiffs cannot prove that Unocal failed to exercise reasonable care. Conduct cannot be in reckless disregard for the safety of others unless the act or omission is itself intended. *Chizmar v. Mackie,* 896 P.2d 196, 210 (Alaska 1995*).*

### 1. The Siemens-Unocal Contract Created a "Duty" Which Was Not Discharged by Either Siemens or Grove.

Any duty for Unocal to maintain the platform did not arise from a contract, as alleged by Plaintiffs. Siemens, and Grove as its employee, had the contractual duty to inspect and maintain the platform.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

In claiming that Unocal had a contractual duty, plaintiffs focus on one small sentence in the Siemens-Unocal contract requiring Unocal to provide a "reasonable means of access." But they ignore other relevant and more germane provisions in the contract.

**a.** First, the "Services and Drilling Master Contract" between Unocal and Siemens required that Siemens would "perform its activities under this Contract in a safe manner. . . ." Exhibit B, Contract at paragraph 21.[3]  In paragraph 13.1, Siemens agreed that:

> The performance of the work herein contemplated, contractor is an independent contractor, with the authority to **control and direct the performance and safety of the details of the work.**

*Id.* at 2 (emphasis added). Notwithstanding it's contractually assumed duties, there is no evidence that Siemens, at any time, set foot in the filter room, or inspected the platform that its employee Grove stood upon.  Nor is there any evidence that Siemens provided any other means, such as a safety harness, to keep Grove from falling. Indeed Plaintiffs own expert agreed during cross-examination by counsel for Unocal, that he could think of no reason why such a safety harness could not have been provided by Grove's employer.  Exhibit C, Carmichael deposition at 64 (stating that available safety measures were: guardrails, safety harness, a guard to stand watch).

---

[3] OSHA regulations likewise require Siemens to provide their employees a safe place to work, even if the work site is not at a Siemens owned facility.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

**b.**    Another contractual provision ignored by the plaintiff appears in Contract paragraph 13.6, where Siemens specifically agreed to keep and maintain equipment in good condition.

> Contractor shall **keep and maintain equipment furnished by company in good condition**, at contractor's expense and upon the termination of the use of such equipment, turn over same to company in as good condition as when received, subject, however, to ordinary wear and tear.

Ex. B at 3 (emphasis added).  It was Siemens' contractual duty to maintain the platform that Grove stood on.  There is no evidence they did so.

**c.**    Next, Siemens contractually obligated themselves to inspect any equipment and supplies furnished by Unocal and report defects therein:

> Contractor **shall examine before using** all materials, equipment and supplies furnished by company for performance directed pursuant to this contract, and will exercise reasonable diligence to **report to company any defects therein** in time to allow company to replace same without delaying operations.

Ex. B at paragraph 13.7 (emphasis added). There is no evidence that Siemens examined any "equipment" in the fan room or reported a defect.

Questions of contract interpretation are questions of law for this court to decide.  *Davis v. Yageo Corp.*, 481 F.3d 661, 673 (9th Cir. 2007).  This court should find that in signing the contract, Siemens agreed that, as Grove's employer, it would be responsible for the safety of its employee Grove.  Siemens' failure to "control and direct the performance and safety of the details of the work" including inspect the platform and discover any defects therein cannot be imputed to Unocal

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

under any cognizable legal theory and does not translate into an award of punitive damages against Unocal.

According to the plaintiffs, neither Siemens nor its employee Larry Grove, complied with Siemens' contractual obligations.  Siemens and its employees were exclusively and contractually responsible for the inspection, maintenance and repair work in the filter room, including that on the equipment furnished.  Neither inspected the platform nor reported any defect that would have allowed Unocal to replace or repair the platform.[4]

Reckless indifference cannot be found against Unocal, since it was Siemens' who breached its contractual obligations.  Unocal contracted with Siemens to monitor the safety of Siemens' own employees, because Unocal's own employees did not work in areas like the filter room.  Contractors who worked in those areas regularly were in the best position to find and report problems with equipment like the platform.  Unocal did not fail to provide for the inspection and maintenance of the platform, as Plaintiffs allege.  Instead, they hired Siemens to perform that work and Siemens agreed in the contract that it would be responsible to ensure a safe work environment for it's employee Grove.

**2.     Siemens had a statutory duty to provide a safe workplace for Grove.**

OSHA investigator, Tom Scanlon, stated that Siemens had a non-delegable responsibility, as Grove's employer, to provide a safe workplace for Grove.

---

[4] Grove stated that it was not his job to inspect the platform.  Ex. 4 at 89-90, attached to Memo; also Ex. 9 at 87, attached to Memo.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1
2
3
4

Q   As the actual employer of Mr. Grove, does Siemens have a duty to provide him a safe place to work?
MR. COHN:  Objection to form of the question; foundation.
A   Yes.
Q  (By Ms. Johnson) Okay. And is that provided for in OSHA regulations?
A   Yes, under the general duty clause, 5A  -- 5A?  . . . .

5
6
7
8
9
10

Exhibit A, Scanlon deposition at 138.   Dovetailed with its contractual obligations, were Siemens' statutory duties imposed by OSHA statues. The general duty clause requires that an employer, in this case Siemens, ensure that the workplace its employees are using is a safe one. Again, there is no evidence this was done.

11
12
13
14
15
16

Given Siemens' contractual and statutory obligations to attend to the safety of its employee Mr. Grove, plaintiffs have not established that Unocal demonstrated conscious action in deliberate disregard of the rights of others, as required in Alaska law (*Chizmar* at 210), and therefore their  punitive damages claim should be dismissed.  No presumption of notice is called for.

**B.     Pre-Injury Safety Reports Do Not Amount to Reckless Indifference.**

17
18
19
20
21
22
23
24

Plaintiffs focus in their Opposition upon the pre-injury safety reports, which have been located and produced to Plaintiffs.   See Opp. at 7, argument #13. Before the records were located, Plaintiffs asked for a "presumption that the records show notice and knowledge of an unabated hazard."  Opp. at 7.   Since these reports have been found and produced to plaintiffs, the argument is moot and the requested presumption is not appropriate.

25
26

**C.    Ken Burns' Speculation Does Not Amount to Reckless Indifference.**

Plaintiffs' arguments in #15-16 are focused on a small portion of Ken Burns deposition testimony taken out of context.  Plaintiffs claim Burns did not perform an inspection of the mechanical floor only because no Unocal employees worked there.   Plaintiffs claim this is reckless indifference.    Plaintiffs not only fail to set forth Burns' entire testimony, their allegation is wrong on the facts. Plaintiffs focus only upon **speculation** by Burns on why he <u>might not</u> have gone into the penthouse at all during his inspection of the Unocal building.[5]   That his testimony is speculation is clear when one reads the question/answer previous to the portion cited by Plaintiff:

> Q.  And did you start -- would you start in the basement or -- I mean, was there a certain methodology?
> A.  The only -- the only criteria for what I have when I do inspections, I go from left to right whether we start in the penthouse or in the basement, and <u>I don't recall specifically whether we even went into the penthouse.</u>  I was not -- I was not familiar with the Anchorage office.

Exhibit D, Burns deposition at 71 (emphasis added).    It is axiomatic that speculation is not admissible into evidence and therefore cannot be used to defeat summary judgment.  *See* Fed. R. Evid. 602 (lack of personal knowledge).

After Burns said he didn't specifically recall going into the penthouse during his inspection, Burns was then asked to speculate on why he might not have entered the penthouse.   The speculative answer is what Plaintiffs have fastened onto to support their argument of reckless indifference.  But because the argument

_____

[5] The inspection report shows Burns did go onto the maintenance floor during his inspection.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

is based upon speculation, it is subject to proof.  And now that the inspection reports have been located, one can clearly see that Burns did enter the penthouse during the inspection.  He did not "ignore an entire floor" during his safety inspection, as asserted by Plaintiffs.  Therefore, Burns' speculation on why he might not have gone inside the penthouse to perform his safety inspection does not support reckless indifference.  The reports demonstrate the speculative nature of Burns' testimony, and further, as often is the case, that his speculation was incorrect.

**D.      Unocal Had No Notice of a "Danger" in the Filter Room.**

Resorting to hyperbole, Plaintiffs assert in their argument #16 that it is "preposterous" for Unocal to assert lack of knowledge of the platform or its use.  Once again, their argument, bereft of either factual foundation or admissible evidence does not support their claim for punitive damages.

Plaintiffs rely upon the assertions of their attorney, Mike Cohn, for the argument that Unocal employees saw the platform prior to Grove's injury.  To prove that fact, Plaintiffs' cite their attorney's affidavit.  Setting aside the issue of whether Mr. Cohn has improperly made himself a witness, clearly, this is not admissible evidence. Instead, it's a self-serving statement which is hearsay repeated by a non-witness[6] who can never be subjected to cross examination.

The affidavit of Michael Cohn is not admissible evidence.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment,"

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

*Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002); *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988) (only admissible evidence under Rule 56(e) may be considered in ruling on summary judgment); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   Mr. Cohn submitted a self-serving affidavit based on hearsay from alleged conversations with various witnesses. Mr. Cohn's affidavit and the statements made therein are inadmissible for the purposes of preventing summary judgment, since hearsay statements are not admissible.  Fed. R. Evid. 802.

Further, Civil Rule 56 requires that an affidavit affirmatively show that the affiant has sufficient personal knowledge of fact such that his affidavit demonstrates that he has the requisite foundation to make the statements he does. Nowhere in attorney Cohn's affidavit is there any verbiage which begins to establish this foundation. See Fed. R. Civ. P. 56.

Plaintiffs theorize that the person who erected the platform "should have known" by the materials used that it was inadequate for a man to stand on.  To bolster this theory, Plaintiffs cite their experts who claim that the platform was inadequate as built to withstand long term use.  First, the experts assume the platform was built as a surface for a man to stand upon.  Plaintiffs must prove this fact, not just assume it.  Plaintiffs assume that the angle iron was erected for a platform because that's how Larry Grove used it.   Unocal expects that the

---

[6] Unocal assumes Mike Cohn does not mean to insert himself into the case as a witness.

REPLY TO OPPOSITION,  & TO SUPPLEMENTAL OPPOSITION, TO MPSJ ON PUNITIVE DAMAGES
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 13 of 26

admissible evidence will show that the perforated angle iron was intended to augment the filter wall structure, and Grove just rigged it as a work platform for his convenience.

Their experts' opinions are based upon *ipso facto* reasoning and hindsight. They say that the platform failed, therefore it was inadequately built. The experts view the platform construction only from a current perspective. The experts state that because the platform failed, it was inadequately designed, constructed and maintained. See section F, below.

In addition, Plaintiffs' experts freely admit that, unlike Unocal's experts, they did not perform any calculations or testing nor did they even refer to a learned treatise in order to apply the "scientific method" to their analysis. See section F, below. They do grudgingly endorse the calculations and testing that was performed by Unocal's expert however and even conceded after some questioning that the platform, as originally built, was strong enough to hold a man of Mr. Grove's weight. See section F, below

Plaintiffs argue that the length of time the platform allegedly resided inside the filter room should somehow be construed to Unocal's prejudice. Plaintiffs appear to argue that time alone provided notice of a defect. This assertion is contrary to *Restatement (Second) of Torts* §343, and the contractual and statutory allocation of safe workplace duties discussed above.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiffs state in their pleading that the platform had "obviously" been erected many years ago. Opp. at 13. However, Plaintiffs' own expert's testimony refutes this assumption. Joseph Balser testified:

> A.   From the environment, particularly a fracture surface because during the process of failing, they -- there's local deformation of the metal on the surface of the fracture. There's a certain amount of stored energy in that strained metal on the surface. That stored energy leads to an accelerated rate of corrosion on a fractured surface, so in a relatively short period of time a fractured surface can become heavily rusted, and it is not an indication of how long this steel has been exposed to a corrosive atmosphere.

Ex. E, Balser deposition at 85 (emphasis added). Thus, based upon their own expert's testimony, there is no evidence that the platform had been erected many years ago, since the evidence relied upon (rust) could have occurred "in a relatively short period of time."

Plaintiffs do not cite any testimony or evidence that shows any Unocal employee (let alone a management employee) saw or knew about the platform. Again, Plaintiffs rely on the bald allegation of their lawyers that independent contractor work was performed in the area, therefore Unocal must have known about the platform. Without some admissible evidence to prove Unocal knew the platform was in the filter room and what it was used for, Plaintiffs cannot ask the court to draw a prejudicial inference against Unocal as to "notice," especially in light of the Siemens-Unocal contract and the OSHA statutes, which required Grove and Siemens to inspect and maintain the equipment. Unocal did not recklessly ignore

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

any complaint since one was never made;[7] it did not ignore any warning because none was ever given;[8] it did not ignore any problem since there is no evidence it inspected the fan room.[9]  Instead, Unocal (at most) allowed a structure to remain on its premises, relying on the expertise of a Siemens' multi-national corporation that had contractually assumed an obligation to make the work area safe and was otherwise bound by OSHA regulations.

**E.    Failure To Maintain the Platform Was Not Reckless Indifference.**

Plaintiffs state in argument #17 that: "the failure to do any maintenance, shows reckless indifference."  Opp. at 10.  The sentence is nothing more than an argument for punitive damages to be imposed for alleged negligence. *Restatement (Second) of Torts* §908 cmt. b (1965) ("Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence [but are restricted to] conduct involving some element of outrage similar to that usually found in crime.").

In order to find reckless indifference, Plaintiffs need to show that Unocal knew the platform was in the filter room, Unocal knew the platform was inadequately built, that Unocal knew contractors stood upon the platform to change filters, and that the platform needed to be monitored for safety.  Without admissible evidence establishing these elements, Unocal had no "duty" to maintain the

---

[7] See Defendant's Memorandum at 6.
[8] See Defendant's Memorandum at 6-8.
[9] Even Grove stated he did not notice any problem with the platform until it fell.  See Defendant's Memorandum at 7.

REPLY TO OPPOSITION,  & TO SUPPLEMENTAL OPPOSITION, TO MPSJ ON PUNITIVE DAMAGES
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 16 of 26

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

platform. The absence of this duty on Unocal's part is only underscored by the aforementioned contract and OSHA regulations.

Plaintiffs claim that their expert Balser will testify that it was "foreseeable" that vibration from the air filtration unit would loosen the bolted joints and lead to a sudden collapse. Opp. at 19. Balser says that the platform should have been built with better materials. This is a negligence theory. Plaintiff's own quote confirms that Balser cannot provide actual facts that support reckless indifference. Balser, when questioned by Plaintiffs' own attorney, equivocated:

> I don't know if this is irresponsible or not or really reckless. I know that it's careless and it is irresponsible from the looks of the structure itself.

See Plaintiffs' Supp. Opp. at 5, quoting Balser depo. at 113. Balser's statement only supports a negligence theory, not reckless indifference.

Plaintiffs' insurmountable hurdle is that during his deposition Balser freely conceded to Unocal's lawyer that he had no foundation for his speculation that it was foreseeable that the bolts would loosen. Balser admitted he had not conducted any experiment to determine whether his hypothesis about vibration was even possible, let alone whether the bolts in the joints of the structure would act as he claims they would. Ex. E, Balser depo. at 56: ("Q. Have you ever conducted any tests to determine the presence or extent of vibration that these joints might have been subjected to? A. No, I have not.") Again, Plaintiffs rely upon inadmissible argument of counsel and old fashioned 'bootstraping' in order to convert speculation about negligence into reckless indifference.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiffs incorrectly attribute to Unocal, actions that were taken by other contractors. Plaintiffs assert over and over that at Unocal's behest, Paul Crapps, a contract worker, re-attached the platform after the incident. This is demonstrably wrong. Charles Arnett, a contract worker, stated that he never informed anyone at Unocal about Grove's accident in the filter room. Exhibit F, Arnett deposition at 62. Therefore, since no Unocal employee knew that the platform had collapsed, it is impossible for anyone at Unocal to have instructed Paul Crapps to re-attach the platform. In their recitation of facts supporting reckless indifference, Plaintiffs rely heavily upon the re-construction of the platform. The facts do not support reckless indifference and should be set aside by the court.

Plaintiffs also claim that it was reckless for Unocal to fail to conduct an accident investigation **after** the collapse and before the platform was re-attached. Opp. at 37. But as Charles Arnett has testified, Unocal did not know that the accident occurred. Therefore, Unocal had no opportunity to conduct an investigation prior to Crapps' reattaching the platform. The court should reject this argument as well. It goes without saying that post-accident conduct is not probative of any fact that plaintiff must establish by clear and convincing evidence.

## F.    The Design/Construction Did Not Amount to Reckless Indifference.

Plaintiffs claim Unocal built the platform. This has not yet been proven by anyone. In fact, since no Unocal employee worked in the filter room, the only logical inference to be drawn is that a contractor built it.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiffs rely heavily upon their experts to create evidence of reckless indifference.  Plaintiffs' experts based their opinion not on evidence, but on hindsight or speculation. Plaintiffs' experts failed to conduct any testing to support their opinions.  Lindley Manning states:

> Q.  All right.  Have you conducted any testing in the course of your investigation in this case?
> A.  No.  The testing was done the day of the accident.  The day before a test.  It failed.  That's all I need to know.

Exhibit G, Manning deposition at 21 (emphasis added).  Manning had no evidence that the platform was poorly designed or construction.  He had no theory of failure that would imply that Unocal was reckless indifference to Grove's safety.

Bob Carmichael also stated that "It's the fact the system failed that's the basis for the opinions I've rendered."  Ex. C, Carmichael depo. at 104.  Bob Carmichael stated that for his opinion, he relied upon three things: 1) the platform did not have a toe board or handrails; 2) the structure did not have a label indicating the allowable loading limit; and 3) the mere fact of its failure.  Ex. C, Carmichael depo. at 202.  Neither of the first two caused the platform's failure. Carmichael did not have any factual support for his opinion, he just assumed that the platform was not designed, constructed or maintained well because it failed.

Finally, Joseph Balser agreed that he did not conduct any tests to determine the presence or extent of vibration that these joints might have been subjected to.  Ex. E, Balser depo. at 56.  Therefore, Balser's conclusion that the platform fell apart due to vibration of the screws is unsupported.  His theory of failure is merely

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

speculation.  His opinion that the platform was improperly designed, constructed, and maintained is not supported either.

The experts opine that the platform failed, therefore it was improperly designed and constructed.  But since they have no facts to base their opinions upon, their opinions certainly cannot be used to establish reckless indifference. Speculation about the possible cause of the accident does not defeat summary judgment.

During their depositions, the experts did not want to agree that as originally constructed, the platform was "good enough," but they had no facts to argue with that conclusion:

> Q.  Do you have any opinion whether or not any machine screws utilized in this work platform were of adequate size and in sufficient numbers?
> A.  My <u>presumption</u> is that they were not, because the system failed.
> Q.  Other than the fact the system apparently failed --
> A.  I have no other information.
> Q.  -- no other information, correct?
> A.  That's correct.  I have no other information other than retrospective evidence that the system failed.

Carmichael at 129-130.  Carmichael's opinion that the construction was insufficient is not based on facts or testing, just his own ipse dixit statement.

> Do you have any quarrel with Mr. Morin's calculation of the <u>safety</u> factor presented by this platform <u>as it was originally constructed</u>?
> MR. COHN: Objection.  Form of the question.  Speculation.
> THE WITNESS:  I have <u>not reviewed</u> numerically his calculation; so -- however, the man is educated.  I have no quarrel.  Now, I'm not implying that I'm saying  that if he said it was adequate that I agree with that, but that isn't what you asked, but I want to make sure that we don't infer that I am answering that other question too.  I'm not.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ex. G, Manning depo. at 102 (emphasis added).  Manning refused to admit that Chuck Morin's studies were right, even though he had no factual or scientific basis upon which to deny it.

Balser likewise refused to acknowledge Unocal's expert Charles Morin's findings:

> Q.  Dr. Balser, would you agree generally that even common 1/4-20 machine screws have significant strength . . . When they're loaded in shear?
> MR. COHN:  Objection to the form of the question.
> THE WITNESS:  What do you call significant strength?
> Q.  1,000 to 1,200 pounds.
> A.  That's not the strength of the material. That's the load that you're applying.
> Q.  Right.  But they'll sustain 1,000 to 1,200 pounds.
> A.  On most typical 1/4-20 bolts that I know of, especially if they're the higher grade material will hold that.  Whether or not any individual bolt of a low grade will hold that load, I can't answer that question.
> Q.  You've not done any testing along to confirm that, have you?
> A.  No, I have not.
> Q.  And if Mr. Morin has done that testing, do you have any quarrel with his testing results?
> MR. COHN:  Objection. Form. Foundation. Speculation.
> Q.  In terms of this load-bearing capacity?
> MR. COHN:  Same objection.
> THE WITNESS:  As a hypothetical joint in terms of its integrity and strength, I have no objection to the fact that if he's run some tests, I'll accept those tests.  I still would question his relevance to this failure.

Ex. E, Balser depo. at 79-80.  Balser, who admittedly has not performed any tests to prove his own theory, denied the adequacy of the original construction as found by Unocal's expert.  Balser had no factual or scientific basis to deny the adequacy.

Therefore, despite their advocacy for the Plaintiffs position, Plaintiffs' own experts could not state that as built the platform and its component parts was insufficient to hold a man.  In fact, the only real criticism the experts had was that

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

the screws in the joints "loosened" over time from vibration. This theory only impugns maintenance and is a pure negligence issue, not one of reckless indifference.[10]

Finally, in their affidavits, Plaintiffs' experts use inflammatory and conclusory language to determine that the design and maintenance of the platform was "careless indifference". Opp. at 19. A party opposing summary judgment "must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Under cross-examination, Lindley Manning disavowed the language in his affidavit, stating that words such as "cavalier" and "irresponsible" were not engineering words, and were written by Plaintiffs' counsel, not him.[11]

Plaintiffs' experts' conclusory opinions are not based upon any factual or scientific basis. Instead, they espouse advocacy positions, not expert opinions. Plaintiffs' experts' conclusory statements that the platform demonstrates reckless indifference should be disregarded.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

---

[10] *See* discussion of Siemens' contractual and statutory duties discussed above at p. 6.
[11] Manning stated:
> Q. Was that part of the verbiage that was presented by Mr. Cohn in the first draft he gave to you?
> A. Well, I'm sure the word "cavalier" was. As far as "irresponsible," I don't remember.
Ex. G, Manning depo. at 42.

**G.    OSHA Testimony Does Not Support Punitive Damages.**

Plaintiffs cite OSHA as support for their punitive damages claim.   But the OSHA statements that Plaintiffs rely upon are hearsay[12] statements made to and repeated by the OSHA investigator.   Plaintiffs want to use the statements as proof of age of the platform, ownership of the platform and responsibility for the platform.  The statements are hearsay because Plaintiffs intend to use the statements to prove the truth of the matter asserted.

Hearsay is not admissible unless an exception exists.  Fed. R. Evid. 802. One exception, which Plaintiffs appear to rely upon, is found in Fed. R. Evid. 801(d)(2):

> (2)   Admission by party-opponent.—The statement is offered against a party and is
> (A)  the party's own statement, in either an individual or a representative capacity or
> (B)  a statement of which the party has manifested an adoption or belief in its truth, or
> (C)  a statement by a person authorized by the party to make a statement concerning the subject, or
> (D  a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

The statements cannot be directly attributed to a Unocal employee with authority to bind Unocal.  The OSHA quotes are not reliable and there is no way to verify who made the statements.  In fact, Tom Scanlon stated that he was directed by his supervisor not to identify the employee who made a statement, and

---

[12] Fed. R. Evid. 801(c) Hearsay.—"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

therefore he attributes the statements generically in his report. Ex. A, Scanlon depo. at 151-152. Tom Scanlon wrote the OSHA statements and listed Charles Arnett as Building Maintenance Coordinator, Unocal. Exhibit H, Safety Narrative. Thereafter, Scanlon attributes numerous alleged quotes to Unocal "management." Examining the actual wording, however, it appears that Charles Arnett could have made the statements to the OSHA inspector:

> Q  "That the platform had been in place for, quote, years and years, unquote, probably back to the '70s. One employee who had worked for Unocal -- worked for 12 years at Unocal said the platform had been there when he started work."  And this is information that Unocal management told you?
> A  Yes.

Ex. A, Scanlon depo. at 110. Arnett could be the "one employee" who worked for Unocal for 12 years, since he began working on contract to Unocal in about 1990 and the interview was conducted in early 2003. Ex. F, Arnett depo. at 8.

Charles Arnett was never a Unocal employee. He was never management. From the OSHA report, it is impossible to determine who made the alleged statement, since Tom Scanlon purposely left out the witness identification. Therefore, because OSHA did not note who made each comment, there is no way to know if the statement was made by Unocal or a Unocal contractor.

If a statement was made by Charles Arnett, Arnett did not have any authority to bind Unocal. Arnett was a contract employee, and at the time of the OSHA interview, Arnett no longer worked for Peake and no longer worked inside the Unocal building. Ex. F, Arnett depo. at 128. Fed. R. Evid. 801(d)(2)(d) does not

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

apply to any statement made by Arnett, since he was not in a position to be a "representative" of Unocal.

The unidentified OSHA statements are hearsay and unreliable. They must be excluded. Therefore, Plaintiffs cannot use the statement to defeat summary judgment, because only admissible evidence may be relied upon. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).

## II.    CONCLUSION

The court should dismiss Plaintiffs' punitive damages claim. Plaintiffs have not come forward with admissible evidence that proves, to a clear and convincing standard, that Unocal's conduct was recklessly indifferent. Unocal's motion for partial summary judgment should be granted.

DATED at Anchorage, Alaska, this _____ day of November 2007.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal

s/ Linda J. Johnson_____
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9631
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar No. 8911070

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1

## Certificate of Service

2

I hereby certify that on November 30, 2007, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

3

s/ Linda J. Johnson

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

REPLY TO OPPOSITION,  & TO SUPPLEMENTAL OPPOSITION, TO MPSJ ON PUNITIVE DAMAGES
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 26 of 26