Page 1

1        UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF ALASKA
2

3

   LAWRENCE H. GROVE, et al.,     )
4                                  )
           Plaintiffs,             )
5                                  )
   vs.                             )
6                                  )
   UNOCAL CORPORATION,             )
7                                  )
           Defendant.              )
8  _____ )
   Case No. A 04-0096 CV   (JKS)
9

10
         VIDEOTAPED DEPOSITION OF TOM SCANLON
11  _____

12
               Pages 1 - 220
13          Friday, April 14, 2006
                 9:16 a.m.
14
        Taken by Counsel for Plaintiffs
15                    at
   The Offices of Department of Labor & Workforce
16                Development
         3301 Eagle Street, Suite 209
17            Anchorage, Alaska

18

19

20

21

22

23

24                                  EXHIBIT ___A___
25                                  PAGE _1_ OF _4_

GROVE v. UNOCAL                                    TOM SCANLON
                                                   4/14/2006

Page 109

1  this the citation that was issued to Unocal 76
2  Incorporated?
3      A   Correct.
4      Q   And that was for violation of a standard
5  having a platform four feet or more above the
6  adjacent floor that was not guarded by a rail or
7  equivalent?
8      A   Correct.
9      Q   And it says, "Employee was exposed to
10 fall hazard due to unguarded open side of
11 platform." Is that what it says there?
12     A   Correct.
13     Q   And there's something -- is it crossed
14 out or you just highlighted? It says, Located 909
15 West 9th Avenue.
16     A   Tom Bernicke was, again, my immediate
17 supervisor at the time and he crossed the address
18 out. Don't ask me why.
19     Q   But TB is --
20     A   Tom Bernicke.
21     Q   Oh, okay. It's with a B. I was
22 spelling it with a V before. Bernicke.
23         On the next page, LG755, under No. 23 it
24 says, "Employer knowledge, colon, yes, comma,
25 Unocal management acknowledged during inspection

Page 110

1  and subsequent conversations with OSHA safety
2  officer" -- would that be you?
3      A   Correct, and/or Lee, but I'm sure it was
4  me.
5      Q   "That the platform had been in place
6  for, quote, years and years, unquote, probably
7  back to the '70s. One employee who had worked for
8  Unocal -- worked for 12 years at Unocal said the
9  platform had been there when he started work."
10         And this is information that Unocal
11 management told you?
12     A   Yes.
13     Q   If Siemens had began this contract less
14 than 12 years before, would that indicate to you
15 that Siemens hadn't built that platform?
16         MS. JOHNSON: Objection; foundation.
17     A   Rephrase the question.
18     Q   (By Mr. Cohn) Let me start over. Do
19 you have any information that Siemens itself built
20 that platform?
21     A   None. I believe Siemens -- when did
22 their contract go into place? Was it '94?
23     Q   Possibly.
24     A   I don't think they could -- they weren't
25 sure that -- there was no current status because

Page 111

1  nobody could find their records on Siemens part or
2  whatever. But somebody speculated it was '94,
3  '96, but it was purely speculation.
4      Q   I forget. What document is the
5  DEF 0027, Leslie? Is it No. 7 possibly. Here it
6  is. No. 7, I just want to show you. This is from
7  Mr. Burns' notes here and in the next-to-last
8  paragraph it said -- three lines from the bottom
9  of that paragraph, "It was obvious from the
10 structure that it had been erected many years
11 ago." That's from Ken Burns' notes.
12     A   Okay.
13     Q   Did that -- is that consistent with what
14 you'd been told by Unocal management, that the
15 structure had been in place for years and years?
16     A   Correct.
17     Q   And on the bottom of 755. We talked
18 about the closing conference. Where it says --
19 after the next-to-last paragraph it said, well,
20 actually before that under Comments. The second
21 paragraph in 24, it says, On September 9th the
22 platform collapsed. And then it says, "Unocal
23 management directed their building maintenance
24 technician to replace the platform after the
25 fall."

Page 112

1      Is that your understanding of what
2  happened?
3      A   Again, yes.n.
4      Q   And then the next paragraph it says,
5  "After the OSHA inspection on March 3rd, 2003,
6  Ms. Sinz and Mr. Burns directed the Unocal
7  building maintenance technician to remove the
8  platform and the stepladder that was being used to
9  access the platform."
10         And was this told to you by Ms. Sinz,
11 you've indicated?
12     A   Again, I'm not sure. Speculation, I
13 think Roxanne called me and told me that. She was
14 extremely proactive, concerned that something like
15 this was happening and she -- I mean, I think
16 Mr. Burns had told her that when you have an OSHA
17 inspection, you do -- be as proactive and
18 responsive as you can.
19     Q   And the last paragraph on there. I just
20 want to talk about this just for a second, because
21 you mentioned -- we were trying to figure out the
22 measurements.
23     A   Right.
24     Q   It looks like it says there -- it says,
25 "There are a total of 52 filters, 24 by 24 by 2,

31 (Pages 109 to 112)

Page 137

1    MR. COHN: Yes, it's 8A and 8B.
2    Q  (By Ms. Johnson) Okay. So Exhibit 8A
3    is what I want you to look at, please.
4    A  8A?
5    Q  Uh-huh. And I'm going to refer to page
6    797 and 798, those two pages together.
7    A  Okay.
8    Q  Did you create this document?
9    A  Yes.
10   Q  Both of these? 797 and 798?
11   A  Right. If that is the -- oh, did I
12   create these? No, this is not -- this is done,
13   again, after I turn it in. This is nothing that
14   we --
15   Q  Not something that you did?
16   A  No.
17   Q  Okay. You agree that you came up with
18   two violations for Siemens; is that correct?
19   A  I believe so, yes.
20   Q  And the first one looks like it's the
21   same citation that Unocal received; is that
22   correct?
23   A  Correct.
24   Q  And you found that this was a serious
25   violation from Siemens' aspect?

Page 138

1    A  Right.
2    MR. COHN: Objection; form of the
3    question.
4    Q  (By Ms. Johnson) Why did you find that
5    Siemens had also violated this?
6    MR. COHN: Objection; foundation; form.
7    A  I refer back to the multi-employer work
8    site where you can be the creating, exposing.
9    Q  (By Ms. Johnson) And which one was
10   Siemens? Do you recall?
11   A  The exposing.
12   Q  Okay. As the actual employer of
13   Mr. Grove, does Siemens have a duty to provide him
14   a safe place to work?
15   MR. COHN: Objection to form of the
16   question; foundation.
17   A  Yes.
18   Q  (By Ms. JOhnson) Okay. And is that
19   provided for in OSHA regulations?
20   A  Yes, under the general duty clause, 5A
21   -- 5A? I'm looking to Larry for clarification
22   there.
23   MR. MCKINSTRY: I can't answer the
24   question. You've got to answer it if you know it.
25   If you don't...

Page 139

1    THE WITNESS: Okay.
2    Q  (By Ms. Johnson) You think that it
3    could be 5A, but you know that it's in there
4    somewhere?
5    A  General duty clause, yes, where every
6    employer has the responsibility to provide a safe
7    and health --
8    Q  Can Siemens contract away that duty?
9    MR. COHN: Objection to the foundation.
10   A  I don't know. It would be pure
11   speculation on my part.
12   Q  (By Ms. Johnson) Okay. So the
13   regulations don't say one way or another whether
14   somebody could contract away their specific
15   regulatory duty to provide a safe workplace?
16   A  Well, again, I refer back to the
17   multi-employer work site where it says different
18   employers can be cited for the same violation
19   depending on if you're the controlling, the
20   creating, the exposing, correcting employer.
21   Q  Looking at page 798, there was another
22   citation that was issued apparently. Can you tell
23   me what this was for?
24   A  That was for the portable ladder.
25   Q  And that was specifically to Siemens; is

Page 140

1    that correct?
2    MR. COHN: Objection to form of the
3    question.
4    A  Yes.
5    Q  (By Ms. Johnson) And you didn't find
6    the citation -- you didn't give a citation to
7    Unocal for a ladder; is that right?
8    A  No.
9    Q  Why did you cite Siemens for a ladder
10   violation?
11   A  Because their employee was using it to
12   access an area without it being three feet above,
13   which is a requirement.
14   Q  Did it make a difference to you that
15   this particular ladder, if you look at these
16   pictures -- and you're welcome to refer back to
17   these pictures -- does it make a difference to you
18   whether the ladder had two legs or four legs?
19   That's the best I can describe it to you.
20   A  No, but if you do use a stepladder, you
21   are not supposed to use the top rung to access
22   anyplace.
23   Q  Okay. So, would it matter to you that
24   Mr. Grove as a Siemens employee was using a
25   stepladder or a four-legged ladder in a leaning

38 (Pages 137 to 140)

GROVE v. UNOCAL

TOM SCANLON
4/14/2006

Page 149

1  you talked to him a second time, if you're having
2  him look at pictures?
3      A   If it was, again, I stated I wasn't sure
4  if it was Larry or if it -- but from that
5  perspective, I would think it was probably Paul
6  Crabbe.
7      Q   So this could have been Paul Crapps that
8  you were talking to?
9      A   Not Paul Crabbe. The other -- the
10 fellow that replaced Larry doing the filter
11 replacement.
12     Q   So, okay. That is something I wanted to
13 talk to you. You talked to more than one person
14 at Siemens; is that correct?
15     A   That is correct.
16     Q   And who else did you interview?
17     A   It's on my list in my narrative, I
18 believe. I talked to -- Hoover was the services
19 manager. Tom Lake was the supervisor.
20     Q   What page are you looking at?
21     A   Well, I'm looking at --
22     Q   808?
23     A   808, but I'm looking also for -- it
24 usually lists it on the form. I talked to --
25     Q   What page is that you're looking at?

Page 150

1  I'm sorry.
2      A   Okay. I'm looking at 807.
3      Q   Okay. So, who else could this employee
4  have been?
5      A   Well, I didn't list it on here, but I
6  believed I had -- let me refer to my notes. Brent
7  Davies was a pipefitter.
8      Q   Okay. And he was from Siemens; is that
9  correct?
10     A   I believe so.
11     Q   If you look at page 808, his name shows
12 at the bottom of page 808.
13     A   808?
14     Q   Uh-huh. That was the earlier one you
15 were just looking at.
16     A   Okay. Okay.
17     Q   When did you talk to Mr. Davies?
18     A   It was the first or second day of -- at
19 the Siemens office. They set it up where he came
20 back in.
21     Q   Okay. And what did he tell you? Do you
22 recall?
23     A   I don't remember.
24     Q   Did he tell you he had been in the room?
25         MR. COHN: Objection; asked and

Page 151

1  answered.
2      A   I don't remember.
3      Q   (By Ms. Johnson) Okay. Was he somebody
4  that you asked to speak to or somebody that
5  Siemens told you might be helpful?
6      A   I asked who else had been in there, et
7  cetera. And, again, I don't remember
8  specifically. My assumption is Mr. Davies is the
9  one that had filled in while Larry was out on a
10 medical.
11     Q   Okay. So, going back to 822. When
12 you're referring to "the employee," I'm still
13 trying to figure out who you might have been
14 referring to, because all you said was "employee"
15 rather than Grove or Davies. Does looking back at
16 that help you remember who that might be?
17     A   No, I don't remember. And we are
18 specifically not -- are told not to put their
19 names.
20     Q   And why is that?
21     A   For confidentiality.
22     Q   Okay. And who tells you not to put
23 names in a report? Is that --
24     A   OSHA.
25     Q   OSHA, Federal OSHA tells you --

Page 152

1      A   Well, I don't know. My boss tells me.
2      Q   Okay. And your boss at the time was
3  Bernicke?
4      A   Bernicke at the time, yes.
5      Q   Okay. And so he had directed you use
6  generic descriptions of people --
7      A   Right.
8      Q   -- that you interview?
9      A   Right. You know, and since then
10 Mr. Stallone has modified it obviously so that we
11 don't face a problem like this three years later,
12 is that in the back we have -- and we refer to
13 employee No. 1, employee No. 2, employee No. 3,
14 and there's then a confidential list of the
15 employees by name. Because the problem we're
16 facing now was --
17     Q   Okay. So Mr. Stallone changed that
18 policy?
19     A   Right -- well, instead of saying a
20 generic, you put employee No. 1, employee No. 2
21 and then you put somewhere that -- in the back of
22 the file...
23     Q   Who specifically is each of those?
24     A   Right, No. 1, No. 2 and No. 3.
25     Q   Okay. On the second sentence it says

41 (Pages 149 to 152)