| Services and Drilling Master Contract | THIS CONTRACT NUMBER MUST APPEAR ON ALL DOCUMENTS |
|---|---|
| Unocal North American Oil & Gas Division Unocal Geothermal Division | 3282 ONS |

# UNOCAL⓻

This contract is entered into this ____18th____ day of ____April____, A.D., 199_4_, between Union Oil Company of California, dba Unocal, with the force and effect of this Agreement limited to Union Oil Company of California's North American Oil and Gas Division excepting Canada, and its Geothermal Division (hereinafter collectively COMPANY), P.O. Box 4531, Houston, Texas, 77210-4531, and _____

____Landis & Gyr Powers Inc._____ Attn: Jim Evers _____
and any and all of its parent companies, subsidiaries and affiliates (CONTRACTOR) at _____
____5761 Silverado Way Suite P____
____Anchorage, AK 99518____ (address), In exchang

for the mutual covenants and conditions contained herein, COMPANY and CONTRACTOR agree as follows:

1. **DESCRIPTION OF SERVICE(S) TO BE PERFORMED BY CONTRACTOR**

   CONTRACTOR, from time to time and upon receipt from COMPANY of instructions specifying the particular service to be performed and/or materials (includin rented equipment) to be supplied, shall:

   provide mechanical services (HVAC)

   It is understood between the parties herein that no performance is required hereunder except after receipt by CONTRACTOR of specific instructions fror COMPANY, this Services and Drilling Master Contract (Contract) serving only to establish the terms and conditions of performance pursuant to any suc instructions. Each set of such instructions shall be deemed a separate contract and transaction. If any conflict between such instructions and this Contrac should arise, this Contract shall be controlling.

2. **TERMS OF PAYMENT**

   COMPANY shall pay CONTRACTOR at the rates specified in CONTRACTOR'S published rates (including terms of payment) or at rates and terms agreed betwee COMPANY and CONTRACTOR for the above service(s) which rates and terms shall not be changed with less than 10 days written notice.

3. **TIME OF PAYMENT**

   CONTRACTOR shall forward three (3) copies of the invoice with the job order ticket to COMPANY at the address of the COMPANY personnel requesting service hereunder who will provide billing information. Payment shall be due hereunder in the city of billing when all the work to be done by CONTRACTOR has bee accepted by COMPANY as being in full compliance with all the terms, conditions, and requirements of this Contract, provided that on request of COMPANY CONTRACTOR shall have satisfied COMPANY that there are no liens or lienable claims on or against COMPANY or its property by reason of the operations c CONTRACTOR hereunder.

   CONTRACTOR shall reference all invoices or correspondence to this Contract's number and show the Outer Continental Shelf (OCS) destination for any materia and equipment that will be delivered beyond the territorial waters of any state. Such material and equipment deliveries beyond the State of California territoria waters will be exempt from California sales and/or use tax in accordance with Section 6396 of the California Revenue and Taxation Code.

4. **DURATION OF CONTRACT**

   This Contract may be terminated at the option of either party by giving the other party thirty (30) days notice in writing to that effect. For the purpose of givin; this notice, or any notice that may be necessary in the performance of this Contract, the addresses of the parties hereto shall be and remain as shown above unt notice by either party to the other, in writing, of a change of address. Notwithstanding the termination of this Contract, the parties shall continue to be bound b the provisions of this Contract that reasonably require some action or forbearance after such termination, including, but not limited to, Paragraphs 14, and 15

5. **PAYMENT OF CLAIMS**

   CONTRACTOR shall promptly pay all bills for labor and for materials purchased by it, or other indebtedness, involved in or arising out of this Contract, and shall if required, exhibit receipted statements or invoices for all labor and material used.

6. **INDEMNIFICATION**

   6.1 CONTRACTOR'S Indemnity. CONTRACTOR hereby agrees for itself and its officers, directors, agents, servants, employees and insurers (hereinafte referred to as "CONTRACTOR") to release, defend, and indemnify COMPANY and any of its parent, subsidiary and affiliated companies, its lessors, and it: non-operators, joint venturers, partners, co-owners, or co-lessees (and their lessors) with COMPANY who wholly or partially bear the costs of operations and/o enjoy the benefits hereunder and the respective officers, directors, employees, agents or servants of each as well as the heirs, representatives, successors o assigns of each, if any, (hereinafter collectively referred to as OWNER), and its contractors and subcontractor(s) of any tier to the maximum extent permitted b; the applicable law, in each and every case, irrespective of whether any indemnitee hereunder may be alleged or proven to have been negligent (including but no limited to active, passive, sole, joint, concurrent, comparative, contractual and gross negligence), or otherwise legally liable (with or without fault or whethe strictly liable or in breach of any warranty), and, except in jurisdictions where prohibited, without limitation by reason of any insurance required by this Contrac or maintained by CONTRACTOR, from and against any and all liability arising out of or in connection with the following:

   a. Except with respect to down-hole equipment lost or damaged in the hole, all loss of or damage to CONTRACTOR'S equipment or property, or thi equipment or property of contractors and subcontractors of any tier of CONTRACTOR as well as the property or equipment of the personnel of any of thi foregoing arising out of or in connection with the operations under this Contract, regardless of how, when or where such damage or destruction occurs; anc

   b. All claims, liabilities, demands, actions, damages, losses, and expenses, including but not limited to court costs, reasonable attorney's fees, and othe litigation expenses, arising out of or in connection with personal or bodily injury, illness, disease, or death to CONTRACTOR'S personnel, or the personnel o subcontractors of any tier of the CONTRACTOR, arising out of or in connection with the operations under this Contract, regardless of how, when, or when such injury, illness, disease or death occurs.

   6.2 COMPANY'S Indemnity. COMPANY shall release, defend, and indemnify CONTRACTOR and its contractors or subcontractors to the maximum exten permitted by the applicable law, in each and every case, irrespective of whether CONTRACTOR or its contractors or subcontractors may be alleged or proven ti have been negligent (including but not limited to active, passive, sole, joint, concurrent, comparative, contractual and gross negligence), or otherwise legally liable (with or without fault or whether strictly liable or in breach of any warranty), and without limitation by reason of any insurance maintained by either party from and against any and all liabilities arising out of or in connection with the following:

   a. All loss of or damage to COMPANY'S property or equipment or the equipment of COMPANY'S other contractors of any tier as well as thi property or equipment of the personnel of any of the foregoing arising out of or in connection with the operations under this Contract, regardless of how when or where such damage or destruction occurs; and

   b. All claims, liabilities, demands, actions, damages, losses, and expenses, including but not limited to court costs, reasonable attorneys' fees, and othe litigation expenses, arising out of or in connection with personal or bodily injury, illness, disease, or death to COMPANY'S personnel, or the personnel o COMPANY'S other contractors of any tier arising out of or in connection with the operations under this Contract, regardless of how, when, or where sucl injury, disease, or death occurs.

   6.3 Underground Damage. COMPANY shall indemnify and hold CONTRACTOR harmless, without limit and without regard to the cause and regardless of any negligence of CONTRACTOR, excepting only CONTRACTOR'S gross negligence or willful misconduct, for any and all claims against CONTRACTOR based on any incident arising out of or occurring during the term of this Contract on account of injury to, destruction of, or loss or impairment of any property rights in or to oil gas or other mineral substance or water, if at the time of the act or omission causing the injury, destruction, loss or impairment, the substances had not beer reduced to physical possession above the surface of the earth, and for any loss or damage to any formation, strata or reservoir beneath the surface of the earth

   6.4 Pollution.

   a. CONTRACTOR shall defend, indemnify and save harmless OWNER from and against all claims, demands and liabilities for property damage arising fron pollution, including control and removal thereof, caused by CONTRACTOR'S negligent act or omission, whether active or passive, in performance of

EXHIBIT __B__
PAGE __1__ OF __4__

FORM 4-3C130 (NEW 11-90) PRINTED IN U.S.A.

DEF 00013
*Grove v. UNOCAL*

services hereunder; provided, however, such indemnification shall be limited to One Million Dollars ($1,000,000.00) or the dollar amount of the contract for the project upon which CONTRACTOR is working hereunder at the time of any such occurrence, whichever amount is the greater, but such dollar limitation shall not apply when pollution is caused by CONTRACTOR'S gross negligence, willful misconduct or intentional violation of the law.

  b. COMPANY shall defend, indemnify and save harmless CONTRACTOR from and against all claims, demands and liabilities for property damage arising from pollution, including control and removal thereof, in connection with services performed hereunder not expressly undertaken by CONTRACTOR in Subparagraph (a) above and in the case of any such claims, demands or liabilities in excess of the above set forth dollar limitation of liability, notwithstanding that same may have been caused or contributed to by the active or passive negligence of CONTRACTOR.

6.5 <u>Third Party Liability</u>. With respect to personal or bodily injury, illness, disease, or death resulting therefrom to personnel or loss of or damage to property not covered by other sections of this Paragraph 6, CONTRACTOR and COMPANY mutually agree that each will indemnify the other to the maximum extent permitted by the applicable law from liability arising therefrom, to the extent that such liability is attributable to the negligent or wrongful acts or omission of the indemnifying party.

6.6 <u>Certified Hauler</u>. To the extent CONTRACTOR performs service under this Contract as a certified or licensed hauler within the state in which the work contemplated by this Contract is being performed, then this Contract shall be amended only for the performance of such service as a certified or licensed hauler to limit the indemnities requirements in Paragraph 6 and the insurance requirements in Paragraph 8 to only indemnity and hold the other party harmless from and against any and all claims, demands, losses, damages, and liability resulting from any wrongful or negligent act or omission on the part of the indemnifying party, its officers, agents or employees.

7. **ACCIDENTS TO BE REPORTED**

Contractor shall report all accidents. In the event that an accident involving the property, equipment, or personnel of CONTRACTOR, OWNER, or any third party occurs on COMPANY'S premises, or while traveling to or from COMPANY'S premises, which arises out of, results from, or is in any way connected with CONTRACTOR'S work or presence upon COMPANY'S premises pursuant to this Contract, CONTRACTOR shall immediately report such accident to COMPANY'S on-site supervisor or his designated representative. In addition, a written report of such accident must be prepared by CONTRACTOR and delivered to COMPANY'S Regional Vice President or his designated representative within 24 hours of such accident. This report should contain factual information only and should not contain opinion, speculation, or supposition as to fault, liability, or prevention. CONTRACTOR shall also provide COMPANY with a copy of every report of such accident which CONTRACTOR is required to submit, or submits, to any entity other than COMPANY, including without limitation, any governmental agency or body.

8. **INSURANCE**

CONTRACTOR shall provide such minimum coverage as set out on Exhibit "A" for onshore work and Exhibit "B" for offshore work attached hereto and by this reference made a part hereof. Furthermore, should Texas law be applicable to this contract and the activities performed hereunder, then for the purpose of satisfying the Texas Anti-Indemnity Statute for the mutual indemnities contained herein, COMPANY agrees to be self insured for its indemnity obligations up to the maximum dollar limits and extent of insurance coverage (or qualified self insurance) that the CONTRACTOR has agreed to provide COMPANY. If the laws of any other jurisdiction are applicable to this Contract, and such laws have similar provisions to those contained in the Texas Anti-Indemnity Statute as described above, the parties agree to take all steps necessary to receive the benefits of said statute.

9. **DEFAULT**

Time is expressly declared to be the essence of this Contract. In the event of a cessation of labor required by instructions issued hereunder for seventy-two or more consecutive hours or in the event of CONTRACTOR'S failure of performance, COMPANY may take over the work and complete or have the same completed at CONTRACTOR's expense, deducting the cost from the Contract price. These remedies shall not be exclusive, however, and the exercise thereof shall not be deemed to constitute a waiver of any other rights or remedies which the parties may have under applicable law in the event of default.

10. **FORCE MAJEURE**

This contract is subject to all Federal, State and Local laws, orders, rules, ordinances and regulations and neither COMPANY nor CONTRACTOR shall be liable for any delay or damage due, occasioned or caused as a result of such laws, orders, rules, ordinances, or regulations or by strikes, action of the elements or causes beyond the control of the parties, (other than financial distress, inability to pay debts when due, insolvency or bankruptcy). Any delay due to above causes or any of them shall not be deemed to be a breach of or failure to perform this Contract, or any part thereof, but the party hereunder that is rendered unable, wholly or in part, to carry out its obligations under this Contract shall give notice and full particulars of the cause of said delay in writing to the other party; promptly after the occurrence of the cause relied upon and the cause of said delay so far as possible shall be remedied with all reasonable dispatch. The requirement that any force majeure situation shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned. Nothing contained herein shall prohibit COMPANY from being able to terminate the Contract pursuant to Paragraph 4 hereof or in the event a force majeure event continues beyond a reasonable period of time.

11. **ASSIGNMENT OF CONTRACT**

CONTRACTOR shall not assign any portion of the work without written consent of COMPANY. This Contract shall enure to the benefit of and be binding upon the representatives, successors and assigns of the parties hereto.

12. **WAIVER OR MODIFICATION**

This contract constitutes COMPANY'S offer and represents the entire agreement between CONTRACTOR and COMPANY with respect to the matters herein addressed. Goods and services furnished by CONTRACTOR will be received only subject to the terms, conditions, or provisions set forth herein, and COMPANY'S acceptance of such goods and services shall be expressly conditional upon CONTRACTOR'S assent to these terms, conditions, or provisions. Any attempt by CONTRACTOR to delete or modify any term, condition, or provision hereof, or to add any different or conflicting term, shall not prevent the formation of a contract, but such attempted deletion, modification, or addition shall be deemed a Material Alteration, which Alteration is hereby rejected by COMPANY, thereby preventing such Alteration from becoming part of this Contract.

Further, no acceptance, receipt, or acknowledgement by any employee, agent or representative of COMPANY of any work order, service order, invoice, receipt, delivery document, or other document provided by the CONTRACTOR or subcontractor (of any tier) shall be effective to waive, modify, or delete any term, condition, or provision hereto, or to add any different or conflicting term, condition, or provision hereto, or to vary in any way the terms, conditions, or provisions of this Contract. This Contract may be amended only by a separate writing, expressly so stating, and signed by an authorized representative of each party.

13. **LABOR, EQUIPMENT, MATERIALS, SUPPLIES AND SERVICES**

13.1 In the performance of the work herein contemplated, CONTRACTOR is an independent contractor, with the authority to control and direct the performance and safety of the details of the work, COMPANY being interested only in the results obtained, but the work contemplated herein shall meet the approval of COMPANY. Labor and materials are to be the best of kind. CONTRACTOR specifically agrees that all persons employed by CONTRACTOR in performing work covered by this Contract, or by CONTRACTOR'S subcontractors, are not the employees of COMPANY for any purpose whatsoever. However, the foregoing shall not limit or abrogate any defense COMPANY may have under applicable Workers Compensation statutes including, but not limited to, the defense of tort immunity. CONTRACTOR hereby agrees to reimburse COMPANY for all contributions, taxes, interest, and penalties necessarily paid by COMPANY under unemployment compensation or insurance laws covering employees of CONTRACTOR or CONTRACTOR'S subcontractors.

13.2 CONTRACTOR guarantees that all tools and equipment used will be furnished, and all work and labor to be performed under the terms of this Contract will be performed in strict accordance with all Federal, State, and Local laws, rules, regulations, orders and ordinances. CONTRACTOR shall also obtain all permits, licenses and approvals necessary for the performance of this Contract. If the services to be rendered under this Contract are licensed by any governmental body, CONTRACTOR must obtain and maintain the license and submit a copy to COMPANY prior to the performance of work covered by this Contract.

13.3 If within one year from completion and acceptance of the work any workmanship furnished by CONTRACTOR or materials manufactured or fabricated by CONTRACTOR under the terms of this Contract prove defective, CONTRACTOR shall, upon receipt of written notice from COMPANY replace or repair the same to COMPANY'S satisfaction, without cost to COMPANY. If the CONTRACTOR fails to begin remedial work within thirty (30) days of written demand from COMPANY, or any shorter period designated by COMPANY in the case of an emergency, and to complete such work within a reasonable time, COMPANY shall have the right to engage the services of another contractor to perform such work, and CONTRACTOR agrees to reimburse COMPANY for the cost of such work and materials. However, this Subparagraph 13.3 does not constitute an election of remedies by COMPANY.

13.4 CONTRACTOR agrees to defend, indemnify, and save COMPANY harmless from and against any and all loss, damage, liability, or expense (including without limitation attorneys' fees and other defense costs) of any kind by reason of any actual or alleged infringement of any patent, copyright, or other proprietary right of a third party, arising out of any work done by CONTRACTOR or any of its subcontractors hereunder or the manufacture, sale and/or use for any purpose for which it is intended of any material supplied to COMPANY hereunder.

13.5 CONTRACTOR agrees that CONTRACTOR will disclose promptly and in writing to the Patent counsel, Union Oil Company of California, P.O. Box 76, Brea, California 92521, any and all inventions which CONTRACTOR, either alone or with others, may conceive or make, which inventions arise out of CONTRACTOR's work for COMPANY, and CONTRACTOR agrees to assign, and hereby assigns, to COMPANY or its nominee all CONTRACTOR's entire right, title and interest in and to said inventions; and CONTRACTOR further agrees that, during the term of this Agreement or at any time thereafter, CONTRACTOR will, at the request and expense of COMPANY, execute all papers and perform all other lawful acts which COMPANY may deem advisable for the purpose of obtaining or maintaining patents in the United States and/or other countries on such inventions. CONTRACTOR's obligations under this Paragraph shall survive termination of this Agreement.

EXHIBIT B
PAGE 2 OF 4

DEF 00014
*Grove v. UNOCAL*

13.6 CONTRACTOR shall keep and maintain equipment furnished by COMPANY in good condition, at CONTRACTOR'S expense and upon the termination of th use of such equipment, turn over same to COMPANY in as good condition as when received, subject, however, to ordinary wear and tear.

13.7 CONTRACTOR shall examine before using all materials, equipment and supplies furnished by COMPANY for performance directed pursuant to thi Contract, and will exercise reasonable diligence to report to COMPANY any defects therein in time to allow COMPANY to replace same without delayin operations. CONTRACTOR shall not exclude or modify any express or implied warranties which would otherwise attach to such materials, equipment, o supplies, or to a product furnished by CONTRACTOR, or waive any remedy available to COMPANY or CONTRACTOR as a consequence of any breach of suci warranties. Materials and equipment to be supplied in federal waters offshore California are to be delivered by CONTRACTOR or its agent to COMPANY at it offshore facility unless directed otherwise by COMPANY'S authorized representative.

13.8 No changes or alterations shall be made from instructions of COMPANY unless first ordered and acknowledged by a properly authorized representative o COMPANY. CONTRACTOR shall not be entitled to payment for changes and/or alterations unless same are made as above provided. Any changes and/o alterations which are made as above provided shall not in any way release any surety on any CONTRACTOR'S bond furnished by CONTRACTOR hereunder

14. **CONFIDENTIALITY**

All technical, business or other information which is developed or received by CONTRACTOR in connection with CONTRACTOR's work hereunder, or which i: otherwise disclosed to CONTRACTOR by COMPANY either orally or in writing, is the property of COMPANY, and CONTRACTOR agrees to maintain sucl information in strict confidence and not to use such information other than in work for COMPANY. The foregoing obligations of this Paragraph 14 shall not appl) to information which CONTRACTOR can show either (i) is already known to CONTRACTOR other than as a result of work performed hereunder and from som( source other than COMPANY or (ii) is or becomes part of the public domain, other than by CONTRACTOR's fault. CONTRACTOR's obligations under thi: Paragraph 14 shall survive termination of this Agreement.

15. **AUDIT**

CONTRACTOR shall maintain a true and correct set of records pertaining to work performed hereunder and all transactions related thereto. CONTRACTOR furthei agrees to retain all such records for a period of not less than three years after completion of the work performed hereunder. COMPANY may require CONTRACTOR at any time within said three year period to furnish sufficient evidence, with documentary support included but not limited to accounts, invoices tickets, and other documents exclusively related to work performed under this Contract, to enable COMPANY to (1) verify the correctness and accuracy o charges from Contractor and (2) verify that CONTRACTOR does not pay any commissions, fees, or grant any rebates to employees or officers of COMPANY nol favor employees or officers of COMPANY with gifts or entertainment of significant value nor enter into any business arrangement with employees or officers o COMPANY other than as a representative of COMPANY without COMPANY'S written approval. Within the time limit herein established, COMPANY may examine said documents on CONTRACTOR'S premises.

16. **NONDISCRIMINATION**

CONTRACTOR shall comply, to the extent applicable, with the following Parts of Code of Federal Regulations: Title 48:22.804 Affirmative Action Programs, 52.219-9 Small Business and Small Disadvantaged Business Subcontracting Plan, 52.220-4 Labor Surplus Area Concerns Subcontracting Program, 52.222-4 Contract Work Hours and Safety Standards Act - Overtime Compensation, 52.222-21 Certification of Nonsegregated Facilities 52.222-26 Equal Opportunity, 52.222-35 Affirmative Action for Special Disabled and Vietnam Era Veterans, 52.222-36 Affirmative Action for Handicapped Workers, 52.223-2 Clean Air and Water, 52.223-3 Hazardous Material Identification and Material Safety Data, and the Immigration Reform and Control Act Of 1986 and all regulations thereunder.

17. **BOND**

Bond may be required of CONTRACTOR upon COMPANY'S written request.

17.1 If required by COMPANY, CONTRACTOR will furnish COMPANY, prior to the commencement of the applicable work, a contractor's bond with a surety company, acceptable to COMPANY, guaranteeing and conditioned for CONTRACTOR'S full and faithful performance of work under this Contract and also guaranteeing and conditioned for the payment in full of the claims of all persons performing work upon or furnishing materials to be used in said work, the form of said bond and the amount thereof to be approved by COMPANY. If bond is required, CONTRACTOR may invoice COMPANY for the actual bond fee.

17.2 If bond is not required, CONTRACTOR, upon written notice as a condition precedent to any payment by COMPANY hereunder, shall execute and deliver to COMPANY an affidavit stating that CONTRACTOR has paid in full for all labor, materials, rental of equipment, transportation and all other charges in connection with the work performed under this Contract for the period covered by such payment.

18. **APPLICABLE LAW**

This Contract shall be construed, interpreted, and enforced in accordance with the internal laws and jurisprudence of the state in which the work is performed; and without reference to that state's conflict of laws rules. Where this Contract involves work on or related to the Outer Continental Shelf or on water or is otherwise subject to Federal law, the applicable Federal law shall apply. In the event that any provisions or portion of the Contract is determined to be unenforceable or void, then the parties hereto agree that the remainder of the Contract shall be construed, interpreted, and enforced to the maximum extent permitted by law. The captions in this Contract are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Contract.

19. **DRUG ABUSE POLICY**

CONTRACTOR acknowledges that it has been advised and agrees to advise all its employees, subcontractors, agents, business invitees, and the employees of any subcontractor, agent, or business invitee of the following safety regulation or policy concerning illegal drugs:

    a. It is the policy of COMPANY that the use, possession, sale, transfer, purchase, or presence in one's system of illegal drugs on COMPANY property is prohibited;

    b. Entry onto COMPANY property constitutes consent to an inspection of the person (including, but not limited to, the taking of a urine sample) and personal effects when entering or leaving COMPANY property;

    c. Any person who is found in violation of the policy or who refuses to permit an inspection may be removed and barred from COMPANY property, at the discretion of COMPANY;

    d. If testing for the presence of alcohol and/or controlled substances is required by law or regulations with respect to COMPANY property, employees of CONTRACTOR and/or subcontractor shall be subject to such testing as required and directed by COMPANY unless CONTRACTOR and/or its subcontractor provides COMPANY with quarterly reports adequate for COMPANY to determine compliance with such laws and regulations with respect to said employees; and

    e. CONTRACTOR will allow access to its property and records by COMPANY or any governmental representative with appropriate jurisdiction for the purpose of maintaining compliance with COMPANY'S drug policy and relevant laws and regulations.

20. **SPILL PREVENTION CONTROL**

It is COMPANY'S policy to conduct its operations so as to prevent pollution, including without limitation the discharge of oil or hazardous substances on land or into State waters or OCS waters.

CONTRACTOR performing work at any and all of COMPANY'S locations shall have the responsibility to conduct its operation in a manner so as to prevent a spill event from occurring. Any spill of oil or any hazardous substance shall be promptly reported to COMPANY'S authorized representative. In addition to this general precaution, CONTRACTOR shall adhere to all specific rules for pollution control and safety that are made a part of any specific job instruction. COMPANY'S authorized representative may interrupt any work in progress, as necessary, to prevent an oil spill or pollution.

CONTRACTOR'S responsibilities shall include, but not be limited to, the following:

    a. Cutting into existing lines: No line containing hydrocarbon (oil or gas) shall be cut, burned, welded, removed, or relocated without prior approval of COMPANY'S authorized representative.

    b. Pressure Testing: All new oil and/or gas lines shall be pressure tested with water, prior to placement into service. Such test must be witnessed by COMPANY'S authorized representative.

    c. Placement into Service: No oil or gas system shall be placed into service by CONTRACTOR without prior approval of COMPANY'S authorized representative.

21. **SAFETY**

CONTRACTOR agrees to perform its activities under this Contract in a safe manner and will have and enforce a set of safety and loss prevention standards which complies with all laws and that will meet or exceed COMPANY'S safety procedures and policies.

22. **HAZARD COMMUNICATION PROGRAM**

COMPANY'S written Hazard Communications Program for each facility is located in the respective facility field offices. Unless exempt, CONTRACTOR shall have its own written Hazard Communication Program meeting requirements of the OSHA Hazard Communication Standard which shall be available to COMPAN) immediately on request. A list of hazardous materials produced or used by COMPANY and material safety data sheets (MSDS) for each are located in respectiv

EXHIBIT B
PAGE 3 OF 4

DEF 00015
Grove v. UNOCAL

facility field offices. Prior to bringing any hazardous material on-site, CONTRACTOR shall provide the COMPANY on-site supervisor a list of hazardous materials he intends to use on COMPANY facilities and a copy of the MSDS for each containing all information required by the Hazard Communication Standard. CONTRACTOR and CONTRACTOR'S employees may review COMPANY'S written Hazard Communications Program and any MSDS during working hours. Arrangements should be made by the CONTRACTOR on-site supervisor with the COMPANY on-site supervisor. Before performing any work for COMPANY or work on COMPANY property, the CONTRACTOR must contact the COMPANY on-site supervisor for instructions on safe procedures, protective equipment or other precautionary measures required with respect to possible exposure to hazardous materials or other hazards. Prior to beginning work the CONTRACTOR shall train his employees in accordance with the Hazard Communications Standard, including but not limited to COMPANY Safety Rules, appropriate COMPANY operations and safe procedures, protective equipment, and other precautionary information made available to the CONTRACTOR by COMPANY. Training will cover both normal operations and forseeable emergencies, and include information with respect to the use and availability of MSDS's and all labeling systems used by CONTRACTOR or COMPANY.

23. **DRILLING CONTRACT**

This paragraph 23 and its Subparagraphs apply to CONTRACTOR if CONTRACTOR is engaged by COMPANY to drill, complete, deepen, workover, repair, maintain or plug and abandon a well or wells set forth in a Bid Sheet and Drilling Order, hereinafter called "Drilling Order", which has been or will be submitted to it by COMPANY. CONTRACTOR shall complete the Drilling Order, setting forth the prices it proposes to charge for its services, and properly execute the Drilling Order in triplicate originals and return same to COMPANY. If COMPANY is satisfied with CONTRACTOR'S proposals, COMPANY shall execute the Drilling Order and return one original to CONTRACTOR. When the Drilling Order has been agreed to and executed in the manner hereinabove provided, that Drilling Order, including the terms and conditions of this Services and Drilling Master Contract, shall govern and control the work described thereon for COMPANY by CONTRACTOR.

23.1 Commencement of Operations. If and when the Drilling Order has been executed by the parties hereto, CONTRACTOR agrees to commence the operation specified at this time or on the date set forth in the Drilling Order, and to drill, complete, deepen, workover, repair, maintain or plug and abandon a well or wells as specified, with due diligence and without undue delays or interruptions, the well or wells covered thereby for the production of oil, gas, geothermal resources and/or other minerals or other service as specified by COMPANY, at the location, in the manner, to the depth, and in accordance with all of the provisions and specifications of this Contract and the Drilling Order.

23.2 Labor, Equipment and Materials. Material, equipment special tools, supplies, and services necessary or proper to the drilling and completion of the well shall be furnished at the drillsite by the party designated in the Drilling Order.

Should CONTRACTOR purchase for COMPANY at COMPANY'S request any materials, supplies, or equipment which COMPANY is obligated to furnish under the terms of this Contract or any Drilling Order, COMPANY agrees to pay CONTRACTOR within thirty (30) days after date of receipt of CONTRACTOR'S invoice the actual cost of such materials, supplies, or equipment, less any cash discounts thereon to which CONTRACTOR may be entitled.

23.3 Operational Requirements. CONTRACTOR further agrees to:

a. Keep an accurate record of work performed in an I.A.D.C. Daily Drilling Report book provided by CONTRACTOR, recording therein the nature, depth, and thickness of formation encountered. Such log shall at all times be subject to inspection by COMPANY or its representative; and, upon completion or abandonment of the well to which it pertains, shall become the exclusive property of COMPANY. All invoices are paid on the basis of these tour reports and each copy is to be signed by a COMPANY representative and CONTRACTOR'S representative.

b. Promptly notify COMPANY whenever any oil and/or gas-bearing formation is found. COMPANY shall be afforded sufficient time to examine said information to determine whether or not the well should be completed in same, and for such time consumed CONTRACTOR shall be paid applicable day work rates.

c. Use all possible care and diligence to keep fence gates open or closed as found, to avoid pollution of water bodies and courses and damage to any land by reason thereof, to avoid injury to any crops, fences, livestock, structures, and other property.

d. Have drill pipe, drill collars, subs, kelly and swivel furnished by CONTRACTOR inspected as specified in the Drilling Order.

e. Use the utmost diligence and highest degree of care to discover defects in materials and equipment supplied by CONTRACTOR and used by CONTRACTOR.

f. Turn in all delivery tickets covering any materials or supplies furnished by COMPANY or furnished by vendors for which COMPANY is obligated to reimburse CONTRACTOR as specified in the Drilling Order.

23.4 Default. In the event of default by CONTRACTOR, COMPANY shall have the right at its option either:

a. To terminate this Contract and do and cause to be done no further work on said drilling operation, other than that which may be required under applicable federal, state, or local authority, in which case COMPANY shall not be indebted to CONTRACTOR in any amount whatsoever, under this Contract, or

b. To take over the hole and itself do the work contracted to be done by the CONTRACTOR, or in good faith procure some other contractor to do the same, in which event COMPANY shall have the entire control of such work with the right to proceed with same or abandon as it sees fit, and to take and use or permit the use of CONTRACTOR'S tools and drilling equipment. In such event, the accounts between the parties shall be settled as follows:

All costs incurred by COMPANY, including expenditures on a second and subsequent hole in the event of the loss of any hole or holes, in doing or causing to be done, the work contracted hereunder to be done by CONTRACTOR, shall be at CONTRACTOR'S expense; accurate record of such costs shall be kept and the CONTRACTOR shall be credited thereon with the amount which would have been due CONTRACTOR for the performance of the work hereunder, after deduction of indebtedness or liens, if any, paid for CONTRACTOR by COMPANY. The accounts shall be settled by payment by one party to the other as the facts may require. For the protection of amounts due to COMPANY hereunder, it shall have a lien on all machinery, drilling equipment, and supplies of CONTRACTOR used or held for use in connection with the work hereunder. The costs incurred by COMPANY and charged to CONTRACTOR pursuant to this paragraph shall not in any event exceed the amount which would have been due CONTRACTOR for the performance of the work hereunder and which is to be credited against costs incurred by COMPANY as aforesaid; any excess costs shall be borne by COMPANY. All risks with respect to personal injury, death, property damage or other damage arising out of work performed by or for COMPANY pursuant to this paragraph shall be borne solely by COMPANY and COMPANY shall indemnify CONTRACTOR therefor.

In the event of conflict between this Subparagraph 23.4 and Paragraph 9 or Subparagraph 13.3, this Subparagraph 23.4 shall prevail.

23.5 COMPANY Access to Premises. The actual performance and superintendence of all work hereunder shall be by CONTRACTOR, but COMPANY or its representatives shall have unlimited access to the premises to determine whether work is being performed by CONTRACTOR in accordance with all of the provisions of this Contract and the Drilling Order.

23.6 Ingress and Egress to Location. COMPANY shall secure for CONTRACTOR rights of ingress and egress to the tract of land on which the well is to be drilled. COMPANY shall advise CONTRACTOR of any limitations or restrictions affecting ingress and egress, and CONTRACTOR shall abide by and shall have its employees, agents, or subcontractors abide by such limitations or restrictions. Should CONTRACTOR be denied free access to the location for any reason not within the control of CONTRACTOR, time lost by such denial shall be paid for at a reasonable rate in keeping with the stage of operations at the time.

23.7 Cancellation of Drilling Contract. This Contract may be cancelled by either party at any time upon thirty (30) days written notice to the other party as provided in Paragraph 4. However, the operations conducted under a Drilling Order may be terminated as provided therein.

23.8 Conflicts. In the event there is a conflict between the provisions of this Paragraph 23 and its Subparagraphs and any papers or documents, including the Drilling Order, which may have been executed or passed between the parties hereto in connection with the subject matter hereof, it is understood and agreed that the provisions of this Paragraph 23 and its Subparagraphs shall be controlling. If there is a conflict between the provisions of this Contract or any fully executed amendment of the Contract, and any such other documents, this Contract or amended Contract shall be controlling.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT in duplicate as of the day and year first above written.

| CONTRACTOR | Union Oil Company of California, dba Unocal |
|---|---|
| LANDIS & GYR POWERS, INC. | Unocal North American Oil & Gas Division (excepting Canada) |
| | Unocal Geothermal Division |
| BY: R. W. BLODGETT, SECRETARY AND | BY: David E. Olson |
| TITLE: DIRECTOR, CONTRACT ADMINISTRATION | TITLE: Financial/Accounting Manager |
| CONTRACTOR'S LICENSE NO. AND EXPIRATION DATE | WITNESS FOR COMPANY |

EXHIBIT B
PAGE 4 OF 4

DEF 00016
*Grove v. UNOCAL*