UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>v.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | 3:04-CV-00096-TMB-DMS<br><br>DECISION AND ORDER RE: DEFENDANT'S MOTION FOR RULE OF LAW<br>[DOCKET 117] |

## I. MOTION BACKGROUND

The underlying case stems from an injury sustained by Mr. Larry Grove. Mr. Grove worked for Siemens Building Technologies, Inc. (hereafter Siemens). Siemens had a contract with Unocal Corporation (hereafter Unocal) to conduct certain maintenance functions in Unocal's Anchorage building (Doc.2, Tab 1 at 2). According to the complaint, in September 2002, Mr. Grove was changing the air filters in the mechanical room inside the building. He was using a work platform that consisted of a plank that was held up by brackets in the wall. He fell from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2).

Mr. Grove claims that Unocal's negligence caused him to fall and injure his ankle and requests damages. Mr. Grove's family members are also plaintiffs in this matter with distinct claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on Mr. Grove's ankle injuries (Doc. 2, Tab 1).

Unocal filed a motion requesting this Court for a ruling of law regarding five issues: 1) the reduction of punitive damages due to collateral benefits; 2) limits on non-economic

damages; 3) limits on punitive damages; 4) mitigation, and 5) loss of consortium for adult children. Specifically, Unocal requests this Court to make the following rulings.

1) Alaska Statute § 09.17.070 applies to this case and therefore Mr. Grove's union disability and early retirement benefits will reduce any damages he is awarded.

2) Alaska Statute § 09.17.010(b) applies in this case, thereby limiting any non-economic damage award to a maximum of $400,000.

3) Alaska Statute § 09.17.020 applies in this case, thereby limiting any punitive damage awards and directing fifty percent of any punitive damage award to the state.

4) Mr. Grove has a duty to mitigate mandated by state law.

5) Sarah Grove's consortium claim is limited to fourteen months after Mr. Grove's injury, ending when she reached the age of majority.

Plaintiffs oppose these requests, asserting it is unnecessary and premature to rule on these issues at this time. This Court has considered the motion and the related filings and has heard oral arguments on this motion.

## II. ANALYSIS

**A. Application of Alaska Substantive Law**

Unocal removed this case from Alaska state court to the Federal District Court for the District of Alaska. This Court has diversity jurisdiction. In diversity cases, federal courts apply the forum state's substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). It is clear that Alaska state substantive law applies.

Indeed, the plaintiffs do not contest the application of Alaska substantive law. During

oral argument plaintiffs agreed that Alaska state substantive law governs, subject to the federal Constitution. Rather, the plaintiffs object to the necessity, timing, and specifics of Unocal's request. Therefore, this Court will separately consider each of Unocal's five requests.

**B.  AS § 09.17.070 – Collateral Benefits Offset**

Alaska Statute § 09.17.070 addresses the deduction of a plaintiff's collateral benefits related to the injury from his or her damage award. Specifically, AS§ 09.17.070(a) provides that after the jury renders an award to the plaintiff and after the court has awarded costs and attorney fees, the defendant can introduce evidence of amounts received or to be received by the plaintiff as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract. Pursuant to § 09.17.070(c), those collateral benefits received by plaintiffs for the same injury can then be deducted from the total award. There are some limitations set forth in the statute. Under AS §09.17.070(d), benefits under federal law cannot be reduced or offset; a deceased's life insurance policy or gratuitous benefits provided to the plaintiff also should not count as collateral benefits.

In this case, Unocal asks this Court to rule that AS § 09.17.070 applies and that Mr. Grove's disability benefits and early retirement payments are collateral benefits that would be deducted from any damage award.

When federal jurisdiction is founded on diversity, the law of the forum state is typically applied to determine the correct measure of damages. Clausen v. M/V New Carissa, 339 F.3d 1049, 1065 (9th Cir. 2003) (quoting Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 491 (1916)) (stating that the right to damages in a diversity case is a substantive law question because the "'proper measure of damages is inseparably connected with the right of action'"); Klicker v.

Nw. Airlines, Inc., 563 F.2d 1310, 1316 n.10 (9th Cir. 1977) (stating that typically the correct measure of damages is governed by state law in diversity cases). Therefore, AS § 09.17.070, which deals with damage calculations, would be applicable in this case.

While this Court agrees that AS § 09.17.070 is currently an Alaska statute that would apply in this case, it declines to rule on what specific benefits received by Mr. Grove will or will not be deducted under this statute. The statute indicates that <u>after</u> the jury renders an award of damages to plaintiffs, a defendant can introduce evidence of other compensation received by plaintiff for the same injury. The statute does not allow defendants to introduce such evidence before trial. Unocal seeks to have this Court spend the resources to determine if, in fact, Mr. Grove's various disability and retirement benefits are sufficiently related to the same injury and would qualify as collateral benefits under § 09.17.070. This Court finds that Unocal has not presented sufficient explanation and evidence regarding the nature of Mr. Grove's benefits and whether those benefits are actually intended to compensate him for the same injury. Furthermore, the issue is not appropriately before this Court until damages are actually rewarded.

**C. AS 09.17.010 – Limitations on Non-Economic Damages**

Alaska Statute § 09.17.010 sets forth limitations on the amount of non-economic damages plaintiffs can recover in a personal injury or wrongful death action. Under AS § 09.17.010(b), the non-economic damages awarded out of a single injury or death may not exceed the greater of $400,000 or the injured person's life expectancy in years multiplied by $8,000. However, under § 09.17.010(c), this cap is raised to $1,000,000 if the injury is a "severe permanent physical impairment or a severe disfigurement."

In this case, Unocal asks this Court to rule that § 09.17.010(b) applies and therefore the

maximum amount of non-economic damages the plaintiffs can receive is $400,000. Unocal states that Mr. Grove's injuries do not fall within § 09.17.010(c) because his injury does not involve severe disfigurement. Unocal cites City of Bethel v. Peters, 97 P.3d 822 (Alaska 2004) for support that Mr. Grove's injuries do not constitute severe disfigurement under § 09.17.010(c). In City of Bethel, disfigurement was the issue. The plaintiff's leg was permanently contorted and scarred. 97 P.3d at 828-29. The court found that "severe disfigurement" concerns the outward appearance of a person's body, and not its function. Id. at 829. Unocal simply states that Mr. Grove's bruising and scars have healed and so, unlike the plaintiff in City of Bethel, Mr. Grove cannot claim that his injury amounts to severe disfigurement. Unocal's original motion does not address whether the injuries are "severe permanent physical impairment" and does not attach any evidence regarding the extent of Mr. Grove's injury.

Plaintiffs object to Unocal's request. They assert that Mr. Grove's injury is a severe permanent physical impairment as contemplated by § 09.17.010(c) and therefore the higher cap of $1,000,000 would apply. They request this Court to hear all the evidence presented at trial before making a threshold determination about the extent of Mr. Grove's injury. In Unocal's reply to plaintiffs' objection, it states that Mr. Grove is not severely and permanently impaired because he can walk, work, hunt, and fish and, as evidence, they attach a report from a doctor who found that Mr. Grove has a "Permanent Physical Impairment of 8% whole person."

Section 09.17.010, which deals with damage limitations, would be applicable in this diversity case. Clausen v. M/V New Carissa, 339 F.3d 1049, 1065 (9th Cir. 2003) (quoting Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 491 (1916) (stating that the right to damages in a diversity case is a substantive law question because the "'proper measure of damages is

inseparably connected with the right of action'"); Klicker v. Northwest Airlines, Inc., 563, F.2d 1310, 1316 (9th Cir. 1977) (stating that typically the correct measure of damages is governed by state law in diversity cases). However, this Court finds that Unocal's request for a ruling as to whether § 09.17.010(b) or (c) applies in this case is premature.

This Court does not need to make a determination as to the extent of Mr. Grove's injury until the evidence has been presented in full. It is true that the trial court must make an initial threshold determination of whether an injury is a severe disfigurement or severe permanent physical impairment before submitting the issue to the jury. City of Bethel, 97 P.3d at 829-30. If the trial court finds that no reasonable jury could find that the plaintiff suffered severe disfigurement or severe permanent physical impairment, then it can withhold the issue from the jury and therefore the higher maximum in § 09.17.010(c) would not apply. Id. This Court is not prepared to make such a threshold determination at this time. Unocal has presented little, if any, evidence regarding the nature of Mr. Grove's injury. While in its reply, Unocal attached a report from a doctor stating that Mr. Grove has "Permanent Physical Impairment of 8% whole person", it did not present any evidence of what that 8% Permanent Physical Impairment means. At this time, this Court cannot state that no reasonable juror could find that Mr. Grove has been severely disfigured or severely permanently impaired. Once the trial court hears the evidence in the case, the threshold determination can be made.

**D.  AS 09.17.020– Punitive Damages**

In a diversity jurisdiction action, the propriety and amount of punitive damage are determined by state law. Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). Alaska Statute § 09.17.020 addresses when and how punitive damages can be

awarded. The statute also sets forth limitations on the amount of punitive damages that can be rewarded to a plaintiff in a case. Furthermore, § 09.17.020(j) requires that fifty percent of any punitive damage award be paid to the State of Alaska.

Unocal requests this Court to rule that any punitive damages awarded to the plaintiffs will be limited under the caps set forth in § 09.17.020 and that fifty percent of any punitive damage award will be turned over to the state of Alaska pursuant to § 09.17.020(j). Unocal argues that the limitations on punitive damages and the fifty percent rule in § 09.17.020 have been upheld by the Alaska Supreme Court in Reust v. Alaska Petroleum Contractors, Inc., 127 P.3d 807 (Alaska 2005).

Plaintiffs argue that the constitutionality of Alaska's punitive damages statute is still an open question and that several grounds were not considered by the Alaska Supreme Court. Plaintiffs specifically state that they are not waiving such a challenge if the need arises in this litigation. Plaintiffs assert that it is premature to take up these complicated constitutional questions and that they should be addressed at the time it becomes relevant to the proceedings.

The statute is currently the law in the State of Alaska. Nevertheless, there is no need for this Court to rule affirmatively that it will apply because punitive damages have not yet been awarded and the plaintiffs have not yet raised any constitutional issues regarding the statute.

**E. Duty to Mitigate**

Federal courts apply state law on the issue of mitigation. Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322 (9th Cir. 1995). Under Alaska law, a plaintiff must "use reasonable efforts to avoid the consequences of injury done by another." Id. at 1329; Univ. of Alaska v. Chauvin, 521 P.2d 1234, 1239 (Alaska 1974). See also Spruce Equip. Co. v. Maloney,

527 P.2d 1295 (Alaska 1974) (reversing the lower court for failure to issue a proper instruction on the plaintiff's duty to mitigate damages). Unocal concedes that whether or not Mr. Grove mitigated his damages is a factual question for the jury. However, Unocal simply wants this court to find that as a matter of law, Mr. Grove has a duty to mitigate damages.

Plaintiffs argue that whether or not there is even an issue about mitigation or damages has not been determined. They say that it is obvious a duty to mitigate exists but that does not aid the court in determining whether an actual duty to mitigate instruction should be given in this case and what the contours of the instruction will be.

This Court agrees with plaintiffs. Alaska state law regarding the duty to mitigate will be applicable but the details of how that duty will apply does not need to be determined at this time.

## F. Sarah Grove's Consortium Claim

Unocal has asked this Court to make a ruling regarding the State of Alaska's law on consortium claims brought by adult children. In Hibpshman v. Prudhoe Bay Supply, Inc., 734 P.2d 991 (Alaska 1987), the Alaska Supreme Court recognized the right of a minor child to bring an independent loss of consortium claim based upon injuries to a parent. To date, the Alaska Supreme Court has not addressed whether an adult child can maintain a loss of consortium claim based upon injuries to a parent.

Where the state supreme court has not ruled on a question in issue, the federal courts look to the other decisions of courts in that state, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law. Home Indem. Co., 43 F.3d at 1326 (citing Burns v. Int'l Ins. Co., 929 F.2d 1422, 1424 (9th Cir.)). There is no other Alaska lower court ruling to provide guidance on this issue. There are a handful of other states that have

recognized an adult child's right to bring a consortium claim for injuries to a parent. See, e.g, Reagan v. Vaughn, 804 S.W.2d 463 (Tex. 1990); Rolf v. Tri Stat Motor Transit Co., 745 N.E.2d 424 (Ohio 2001). There are also states that have denied an adult child's right to recover for parental injuries or limited such a right only to dependant adult children. See, e.g, Belcher v. Goins, 400 S.E.2d 830 (W.Va. 1990) (limiting a child's consortium claim to minor children or physically or mentally handicapped children of any age who are dependant on their parents); Smith v. Vilvarajah, 57 S.W.3d 839 (Ky. App. 2000) (denying a claim for loss of parental consortium to emancipated adult children).

Unocal argues that Sarah Grove was a minor for only 14 moths after Mr. Grove was injured and therefore is only entitled to the alleged loss suffered during the 14 months before she became an adult. Plaintiffs object to Unocal's contention that Sarah Grove's action is limited to fourteen months of damages. The plaintiffs also contend that this Court need not decide the issue at this time. During oral argument, plaintiffs' counsel suggested that the jury could be instructed to make separate findings about Sarah Grove's damages before her 18th birthday and after her 18th birthday. Unocal concedes in a supplemental brief filed with the court that this would preserve the issue on appeal (Doc. 281).

Unocal argues that the Alaska Supreme Court has not recognized the right of an adult child to bring a loss of consortium claim and that this Court should not make new law for the State of Alaska. While this Court recognizes that the Alaska Supreme Court has not yet determined the issue, this Court is still able to determine what the appropriate state law is by looking to the other decisions of courts in Alaska, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law. Home

Indem. Co., 43 F.3d at 1326 (citing Burns v. Int'l Ins. Co., 929 F.2d 1422, 1424 (9th Cir.)). However, at this juncture of the litigation, this Court finds that it is not necessary to make such a determination.

This Court should not determine Alaska State law on the subject of adult children's loss of consortium claims until the issue is clearly before it. The issue of whether Sarah Grove can recover damages for the time her father was injured after she turned 18 is not determinative of her claim altogether. Unocal acknowledged at the oral argument that Sarah Grove has a cause of action for loss of consortium for at least fourteen months. Furthermore, this may never become an issue in the case. The jury must first find that Unocal was negligent and liable and that Sarah Grove actually suffered loss of consortium damages from that negligence. Only at that time, will the issue of whether Sarah Grove is entitled to recover damages for the period of time after she turned 18 be squarely before the Court. Only at that time, will this Court take up the task of determining whether the State of Alaska recognizes such a cause of action.

### III. CONCLUSION

While this Court finds that the State of Alaska's substantive law will apply in this diversity action, based on foregoing analysis, it does not find that the specific rulings of law requested by Unocal are appropriate or necessary at this juncture in the litigation. Therefore, Defendant's Motion for Rule of Law is **HEREBY DENIED.**

DATED this 12th day of February, 2008, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge