### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA
GROVE, SARAH GROVE, and, MICHAEL
GROVE (DOB 1/21/88) by and through his
father LAWRENCE H. GROVE,

                    Plaintiffs,

          v.

UNOCAL CORPORATION,

                    Defendant.

3:04-CV-00096-TMB-DMS


**DECISION AND ORDER RE:
PLAINTIFFS' (RENEWED) RULE 37
MOTION FOR ORDER COMPELLING
DISCLOSURE/DISCOVERY
[DOCKET 163]**

### I.  MOTION BACKGROUND

This Court has reviewed plaintiffs' Motion for Order Compelling Disclosure/Discovery at

Docket 163 and the related response and reply.  This motion does not contain a single discovery

dispute.  Rather, plaintiffs reassert a litany of long-standing complaints related to Unocal

Corporation's discovery compliance.

The underlying case stems from an injury sustained by Mr. Larry Grove.  Mr. Grove

worked for Siemens Building Technologies, Inc. (hereafter Siemens).  Siemens had a contract

with Unocal Corporation (hereafter Unocal) to conduct certain maintenance functions in

Unocal's Anchorage building (Doc. 2, Tab 1 at 2).  According to the complaint, in September

2002, Mr. Grove was changing the air filters in the mechanical room inside the building.  He was

using a work platform that consisted of a plank that was held up by brackets in the wall.  He fell

from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2).

Mr. Grove claims that Unocal's negligence caused him to fall and injure his ankle and

1

requests damages.  Mr. Grove's family members are also plaintiffs in this matter with distinct

claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on

Mr. Grove's ankle injuries (Doc. 2, Tab 1).

In March 2006, plaintiffs filed a motion requesting sanctions against Unocal and

requesting an order from the court to compel Unocal to comply with plaintiffs' various discovery

requests (Doc. 48).  Unocal also filed discovery motions around this time.  In April of 2006,

Judge Burgess held a status conference regarding the pending motions and the parties indicated a

desire to have more time to confer regarding discovery matters.  Judge Burgess granted the

request.  The parties filed a notice with the court indicating that mediation was planned for June

2006 (Doc. 86).  As a result, Judge Burgess denied the pending discovery motions as moot

without prejudice to renew (Doc. 87).  After attempts at mediation failed, plaintiffs submitted

this renewed motion to compel, addressing outstanding discovery complaints and setting forth

new discovery complaints.  Discovery closed in this matter on June 29, 2007 pursuant to an order

by Judge Burgess based upon a stipulation of the parties (Doc. 146).

Based on this Court's detailed review of the documents related to this motion, it has

determined that plaintiffs have six discovery grievances they would like this Court to address:

**1) Answers to interrogatories:**  Plaintiffs seek a) Verification under oath of Unocal's

answers to plaintiffs' interrogatories as required by the Federal Rules of Civil Procedure and

b) Unocal's answers to the last two sets of interrogatories.

**2) Disclosures regarding Unocal's relationship to Siemens:**  Plaintiffs demand Unocal

disclose more information about its relationship with Siemens and disclose any agreement the

two companies have about this litigation.  They also want to contact Siemens' employees directly

for interviews, without permission of counsel.

**3) Meeting minutes from March 4, 2003:**  Unocal has given plaintiffs a redacted copy of its meeting minutes from March 4, 2003.  Plaintiffs request that this Court order Unocal to produce an unredacted version of the minutes or, at a minimum, to submit these minutes to the Court for an *in camera* review.

**4) Documents pertaining to the work platform, the mechanical room, or the safety, repair, maintenance, installations, or construction in Unocal's Anchorage building:** According to the plaintiffs, in their first request for production under Rule 34 of the Federal Rules of Civil Procedure, plaintiffs asked for specific documents relating to the erection of the platform that Mr. Grove fell from (Doc. 165 at 17).  Unocal responded that it did not erect the platform and thus does not have any documents to produce (Doc. 165 at 17).  According to the plaintiffs, in plaintiffs' ninth request for production, they asked Unocal more generally to produce records dealing with the mechanical room where Mr. Grove fell and to produce all safety, repair, maintenance, installation, or construction policies and records for the building (Doc. 165 at 18-19).  Unocal responded to this request by asserting that plaintiffs could inspect the documents that Unocal *originally* produced in the case (Doc. 165 at 19).  In this motion, plaintiffs want Unocal to produce the documents requested and allow plaintiffs full access to its records.  They contend that Unocal has not properly or thoroughly searched for any of the requested documents.

**5) Surveillance:**  Plaintiffs have received two surveillance videotapes from Unocal. These videotapes contain surveillance of Mr. Grove.  Plaintiffs request that this Court order the production of all videotapes that exist of Mr. Grove and all notes, contracts, and papers related to

this surveillance.

**6) General Compliance:** Plaintiffs request that this Court issue a general order requiring Unocal to comply with the discovery rules.  They assert that Unocal has been evasive and has willfully evaded discovery in this matter.  Furthermore, plaintiffs summarily request that this Court order Unocal to turn over everything listed in the letter from plaintiffs' counsel to Unocal's counsel dated April 18, 2006, which is attached to their motion at Exhibit 1 (Doc. 163, Exhibit 1).  This letter is a list of thirty-six discovery grievances, including some requests for document production.

Upon initial review of this motion, this Court determined that plaintiffs failed to submit the proper certification as required under Rule 37 of the Federal Rules of Civil Procedure.  At the hearing held on December 7, 2007, the plaintiffs were directed to submit a certification verifying that the parties have at least discussed the matters in this motion.  Plaintiffs' counsel filed a certification that the parties have discussed these issues numerous times over the past two years and that the parties have made efforts to resolve these discovery disputes without the court's involvement (Doc. 276).  Unocal's counsel asserts in its supplemental briefing submitted after the hearing that the parties have never specifically conferred about these specific discovery matters and that the court should not consider this motion (Doc. 274).  This is a renewed motion.  Plaintiffs provided evidence of letters sent between the parties discussing these discovery issues (Doc. 276-5).  The record indicates that there have been discovery status hearings in front of Judge Burgess.  This Court held its own status hearing on December 7, 2007.  The parties have been unable to mediate the dispute.  Based on all of these factors, this Court finds that plaintiffs have made efforts to obtain the desired information and that at this juncture the parties will not

4

be able to resolve these matters without this Court's involvement.  In order to move this litigation

forward, this Court will address the motion at this time.

This Court has considered each of the six discovery issues and held a hearing on this

motion on December 7, 2007.  This Court HEREBY GRANTS IN PART AND DENIES IN

PART plaintiffs' (Renewed) Rule 37 Motion for Order Compelling Disclosure/Discovery.  The

analysis and order for each of the six discovery issues is set forth below.

## II.  ANALYSIS AND ORDERS

### A.  INTERROGATORIES

#### 1. Verify answers

##### a. 1st, 3rd, and 4th Sets of Interrogatories.

Under Rule 33(b) of the Federal Rules of Civil Procedure, each answer to an

interrogatory must be given in writing and under oath within 30 days after service of the

interrogatories.  Fed. R. Civ. P. 33(b).

Plaintiffs assert that the Unocal has submitted answers to plaintiffs' interrogatories but

that these answers were not verified under oath.  Specifically, plaintiffs assert Unocal has not

verified its answers to plaintiffs' 1st, 3rd, and 4th sets of interrogatories.

At the oral argument on December 7, 2007, Unocal did not contest that it still needs to

verify its answers to the 1st and 3rd sets of interrogatories.  Unocal claims that it sent a verification

for the 4th set of interrogatories, and it attached a copy of the verification to its response to this

motion (Doc. 179, Exhibit A).  However, as plaintiffs point out in their reply, the certificate of

service on the completed verification that Unocal attached was not filled out, and plaintiffs only

received a blank copy of the verification (Doc. 194-2, Exhibit 3).  This appears to be a

misunderstanding.  Unocal appears to have mailed the wrong piece of paper to the plaintiffs.

There is no indication that plaintiffs were ever sent a completed verification to the 4th set of

interrogatories.

**IT IS HEREBY ORDERED that Unocal verify under oath its answers to plaintiffs'**

**1st, 3rd, and 4th sets of interrogatories and deliver those verifications to plaintiffs' counsel by**

**February 26, 2008.  Further, it is HEREBY ORDERED that a hearing is set for Thursday,**

**March 27, 2008 at 2:00 p.m. in Courtroom 5 in Anchorage.  Unocal shall show cause why it**

**should not be sanctioned for failure to verify the answers to the 1st, 3rd and 4th set of**

**interrogatories.  The parties should be prepared to discuss whether Unocal's delay in**

**providing verified answers should be admissible at trial as a sanction.  Sanctions will be**

**considered pursuant to Fed. R. Civ. P. 33 and 37 and this Court's inherent power to impose**

**sanctions for discovery abuses.**

b. 5th Set of Interrogatories

Plaintiffs also assert that Unocal has not verified its answers to the 5th set of

interrogatories (including both supplemental answers).  Plaintiffs' fifth set of interrogatories has

a complicated background.  Plaintiffs' 5th set of interrogatories asked Unocal to explain what

happened to the work platform after Mr. Grove's accident (when was it removed, who removed

it, where it was placed after removal).  1) Unocal explains that it initially responded to plaintiffs'

5th set of interrogatories with a legal objection.  Thus, no verification would be required.

2) Unocal later submitted a supplemental response to this interrogatory, stating that it did not

know what happened to the work platform.  It did not verify this supplemental response.

3) Later, Unocal again supplemented its response and stated that based on the recollection of an

employee, Paul Crapps, the platform was removed by Mr. Crapps in September of 2002, a few

days after the accident.  It did not verify this supplemental response.  During plaintiffs'

subsequent deposition of Mr. Crapps, plaintiffs asked him to explain when he took down the

platform.  Mr. Crapps stated that he took it town a few days after the accident in September 2002.

Plaintiffs then produced a prior affidavit of Mr. Crapps in which he stated that he took the

platform down in March 2003, after the Occupational Safety and Health Administration (OSHA)

investigation.  Unocal asserts that it did not have the OSHA file containing the affidavit by

Mr. Crapps.  Unocal states that it has not verified the supplemental answers because it now

knows its supplemental answers are incorrect (the platform was taken down in March 2003, not

September 2002).  Unocal requests that it be able to withdraw its previous supplemental answers

to this 5th set of interrogatories and answer it based on Mr. Crapps' OSHA affidavit.

However, Unocal actually had this prior Crapps affidavit in its files.  The corporation has

acknowledged that it found a copy of this affidavit in its files and stated that it had been

separated from the main files (Doc. 62 at 9).  At the hearing on this motion, Unocal only argued

that it did not have the OSHA file, but it did not provide an explanation as to why the Crapps

affidavit was not located sooner.  Furthermore, Unocal had other documentation in its files and

available to it that indicated that the platform was still up as of March 2003.  For example,

Unocal had notes from a safety inspector, Ken Burns, related to the OSHA investigation in

March 2003 wherein Mr. Burns indicated that the platform was up in March 2003 (Doc. 194-3,

Exhibit 5).

Under Rule 26(e) of the Federal Rules of Civil Procedure, a party has a duty to

supplement or correct earlier interrogatory answers upon learning that the earlier answers were

incorrect when made.  Fed. R. Civ. P. 26(e).

      The party answering an interrogatory must furnish "such information as is available to the party." Fed. R. Civ. P. 33(a).  In this situation, at the time Unocal answered that the platform was removed a few days after the accident, Unocal had available to it notes from a safety inspector and an affidavit from Mr. Crapps stating that the platform was not removed until March 2003. This inconsistency indicates that, at the very least, Unocal was not thorough in its search to look for answers to plaintiffs' 5th set of interrogatories.  Because Unocal has an obligation to supplement incorrect answers under Rule 26(e), it should be allowed to supplement the answer to the fifth interrogatory at this time.

      Under Rule 37(c), a court can impose an appropriate sanction in a situation where a party fails to disclose documents under Rule 26(a) or amend documents under Rule 26(e), unless such failure is harmless.  Under Rule 37(d), a court can impose an appropriate sanction when a party fails to serve required answers.  This Court finds Unocal's delay in serving a verified answer to this 5th interrogatory troubling.  It also finds Unocal's delay in turning over the affidavit of Paul Crapps troubling.  Therefore, this Court is considering sanctions against respondent.

      **IT IS HEREBY ORDERED that Unocal submit amended answers to plaintiffs' 5th set of interrogatories and any other interrogatories related to the removal of the platform and that Unocal immediately verify these amended answers and submit the verification to plaintiffs' counsel by February 26, 2008. Furthermore, it is HEREBY ORDERED that a hearing is set for Thursday, March 27, 2008 at 2:00 p.m. in Courtroom 5 and Unocal shall show cause as to why it should not be sanctioned for failure to provide a verified answer to the 5th interrogatory and for failure to provide the affidavit of Paul Crapps until after his**

**deposition.  The parties should be prepared to address whether the 3 previous unverified answers and the failure to truly disclose the Crapps affidavit should be admissible at trial as a sanction.  Sanctions will be considered pursuant to Fed. R. Civ. P. 26 and 37 and this Court's inherent power to impose sanctions for discovery abuse.**

### 2) Answer the remaining interrogatories

Plaintiffs also request this Court order Unocal to answer the interrogatories set forth in the 9th and 10th sets of interrogatories.  Unocal answered the first interrogatory in the 9th set and then asserted that plaintiffs exceeded the allowable number of interrogatories, and it refused to answer the remaining questions.  In Exhibit O to Unocal's response to motion, they present a letter that its counsel sent to plaintiffs' counsel (Doc. 179, Exhibit O).  This letter states that Plaintiffs essentially misnumbered its interrogatories.  In its response to plaintiffs' motion, Unocal also gives an example of one interrogatory that it contends is actually six separate interrogatories.  Plaintiffs asked the following and counted it as one interrogatory:

> Please identify each and every Unocal employee and/or any other
>
> persons, who went into the mechanical room at the Unocal building
>
> where the accident, the subject of this litigation, occurred from the time
>
> of the accident on September 9, 2002 until the scaffolding/work
>
> platform was removed, and as to each Unocal employee or person,
>
> provide name, address, job position and responsibility at time of entry
>
> into the room, why they went into the room, what they did in the room,
>
> whether they recorded or documented the visit, if any photographs or
>
> videotaping was done, what they observed in the room in regard to the

scaffolding/work platform, bolts or machine screws, nuts, washers,

planks, vertical or horizontal supports, and whether they moved

anything, and if so, what was moved and where was it moved to?

Unocal objected to the Interrogatory as a "multi-part question".

(Doc. 179 at 16).  Unocal contends it should have been drafted as six different questions as

follows:

1. Please identify each and every Unocal employee and/or any other

persons, who went into the mechanical room at the Unocal building

where the accident, the subject of this litigation, occurred from the time

of the accident on September 9, 2002 until the scaffolding/work platform

was removed, and as to each Unocal employee or person, provide name,

address, job position and responsibility at time of entry into the room;

a. Why they went into the room;

b. What they did in the room;

c. Whether they recorded or documented the visit, if any

photographs or videotaping was done;

d. What they observed in the room in regard to the scaffolding/work

platform, bolts or machine screws, nuts, washers, planks,

vertical or horizontal supports; and

e. Whether they moved anything, and if so, what was moved and

where was it moved to.

(Doc. 179 at 16).

10

Under Rule 33(a) of the Federal Rules of Civil Procedure, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts ...." The issue presented to this Court is a difference of opinion about whether some of plaintiffs' interrogatories contained discrete subparts that should have been counted as separate interrogatories. Subparts to interrogatories are not discrete and are counted as one interrogatory if the subparts are "'logically or factually subsumed within and necessarily related to the primary question.'" Kendall v. GES Exposition Serv., Inc., 174 F.R.D. 684, 685 (D. Nev. 1997)(citing Ginn v. Gemini Inc., 137 F.R.D. 320, 322 (D. Nev. 1991)). While there are no set standards for determining whether a subpart is "logically or factually subsumed within and necessarily related to the primary question," other courts have looked at whether the subpart question can stand alone or if the subpart is a follow-up question on the preliminary question and is necessary to complete the details. Kendall, 174 F.R.D. at 685-86.

Whether or not Unocal's breakdown is correct, Unocal has not provided the remainder of the interrogatories nor an explanation as to how it broke down each interrogatory, and thus this court cannot confirm Unocal's calculations. Furthermore, under Rule 33(a), *each* plaintiff can serve each defendant with 25 interrogatories. See Trevino v. ACB American, Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) (holding that the plaintiffs did not exceed the 25-interrogatory limit because each of the two plaintiffs could serve each of the two defendants with 25 interrogatories). Therefore, because each of the Grove family members is a separate plaintiff, they can each ask 25 interrogatories, for a total of 100 interrogatories. Unocal conceded at the hearing on this motion that the plaintiffs, by its calculations, have submitted only approximately 45 interrogatories. At the hearing on this motion, Unocal argued that the interrogatories were

propounded as if only from one plaintiff and not from separate plaintiffs. This Court provided an opportunity for Unocal to submit further briefing on the matter to explain how this argument is pertinent. Unocal failed to do so by the deadline.

**IT IS HEREBY ORDERED that Unocal answer all of the remaining interrogatories that it has refused to answer to date and that all answers be verified under oath and delivered to plaintiffs' counsel by March 1, 2008.**

B. **SIEMENS RELATIONSHIP**

**1. Documents between Siemens and Unocal regarding this case**

During discovery, plaintiffs asked for all correspondence and documents between Unocal and Siemens regarding Mr. Grove's accident and the contract between the two companies. In response, Unocal produced a letter that it had written to Siemens. This letter tendered the defense of the case to Siemens pursuant to the contract between the two entities. Plaintiffs claim that Siemens should have responded to Unocal's letter but such a response was never produced by Unocal. The letter has a blank space at the bottom where Siemens was supposed to sign and send it back to Unocal (Doc. 179, Exhibit J). This signed page was not produced. Unocal states that no formal letter was issued by Siemens to accept the tender of defense (Doc. 179 at 9). The contract between the parties requires Siemens to indemnify Unocal for all claims, liabilities, damages in connection with injury, illness, disease or death to Siemens personnel.

Plaintiffs further contend that there must be a further deal between Unocal and Siemens, but no information about this deal has been produced. Plaintiffs speculate that Unocal will allocate fault to Siemens, and Siemens will likely just accept the majority of the fault. Plaintiffs assert that Siemens would ultimately benefit by accepting fault because Mr. Grove cannot

recover damages from Siemens; his only recourse against Siemens is workers' compensation.  As noted, Siemens has indemnified Unocal for damages that it has to pay plaintiffs.  Therefore, according to plaintiffs, if Unocal's fault is less, Siemens will ultimately pay less.  Plaintiffs want to know if there is a deal like this in place to enable them to impeach any witness from Siemens that testifies and takes any blame.

Unocal states it turned over the contract between Unocal and Siemens, which contains the indemnity provision.  Unocal also states that plaintiffs ultimately want to know about defense strategy and any documents about defense strategy are not discoverable under attorney-client privilege or work product protection.

In diversity actions, attorney-client privilege is determined in accordance with state law. See Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); Airheart v. Chicago & N.W. Trans. Co., 128 F.R.D. 669, 671 (D. S.D. 1989).  Work product is governed according to federal law, even in diversity actions.  See Airheart, 128 F.R.D. at 670 (citing Hickman v. Taylor, 329 U.S. 495, 510 (1947)) (stating that "unlike the attorney-client privilege, the application of which is determined in accordance with state law in diversity actions, work product protection questions are determined by federal courts applying federal law even in diversity cases).  The Federal Rules of Civil Procedure protect work product prepared in anticipation of litigation.  In Rule 26(b)(3), materials prepared by or for a party or by a party's attorney in preparation for trial is protected from discovery unless the requesting party has shown a substantial need for the material and undue hardship in obtaining the equivalent material.  Fed. R. Civ. P. 26(b)(3).  The burden of establishing work product protection lies with the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion. Holliday v. Extex,

13

447 F.Supp.2d 1131,1138 (D. Hawaii 2006).

Under Rule 26(b)(5)(A), when a party withholds discoverable information by asserting that the information is privileged or is protected as work product, the party must specifically assert the privilege or protection and describe "the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." In this case, Unocal has not specifically set forth what materials exist that are responsive to plaintiffs' discovery requests regarding Unocal's relationship with Siemens but that are protected under attorney-client privilege or the work product doctrine. At the hearing, Unocal conceded that it has not produced a detailed log regarding documents withheld due to the attorney-client privilege or work product protection. Unocal counsel was advised at that time to prepare such logs.

**IT IS HEREBY ORDERED, that by March 1, 2008 Unocal produce a written log in compliance with Rule 26(b)(5)(A), setting forth all correspondence and documents that are responsive to plaintiffs' requests regarding communications between Unocal and Siemens about Mr. Grove's accident and the contract between the parties that are being withheld based on attorney-client privilege or work product.**

### 2. Access to Siemens' employees.

Plaintiffs also assert that Siemens and Unocal are represented by the same counsel. They say that Unocal has therefore had unequal access to Siemens' employees and records. The plaintiffs do not cite any discovery rules or case law that require plaintiffs to have the same access to Siemens' employees and records. They simply contend that this unequal access is

14

unfair.  Unocal states that Siemens, who is not a party in this case, does not have to grant

plaintiffs open access to its employees, especially since the Groves have a separate workers'

compensation case pending with Siemens.  Unocal argued that the plaintiffs could subpoena

witnesses and documents from Siemens.

Under the Alaska Rules of Professional Conduct, Rule 4.2, a lawyer cannot communicate

about the subject of the representation with a party or person the lawyer knows to be represented

by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is

authorized by law to do so.  Ak. Rules of Prof'l Conduct R.4.2 (2007-2008).  The comments to

that rule state that when a corporation is a party, the rule prohibits communications by a lawyer

for one party concerning the matter in representation with persons having a "managerial

responsibility" on behalf of the corporation.  Ak. Rules of Prof'l Conduct R.4.2 (2007-2008).

Conversely, the rule allows an attorney to contact non-managerial employees regarding the issue,

assuming they are unrepresented by independent counsel.

The record indicates that plaintiffs wanted to talk to employees of Siemens.  Unocal

directed plaintiffs' counsel to Siemens' in-house counsel, Mr. Steve Shamash (Doc. 163, Exhibit

4).  According to plaintiffs, Mr. Shamash told plaintiffs' counsel that he could not talk to

Siemens' employees (Doc. 164 at 2).

This Court can find no authority that prohibits plaintiffs' counsel from contacting

Siemens' employees who do not have "managerial responsibility" on behalf of Siemens and are

unrepresented by independent counsel.  Similarly, this Court does not find authority for the

argument that Siemens must set up or arrange such contacts either.  While the record indicates

that Siemens' in-house counsel told plaintiffs' counsel not to talk to its employees, there is no

evidence that Siemens instructed employees not to talk to plaintiffs' counsel or that Siemens has

interfered with any independent efforts of plaintiffs' counsel to talk to employees.  Indeed, it does

not appear as if plaintiffs tried to approach any non-managerial employees for informal

interviews after determining that they are unrepresented by independent counsel.

Therefore, this Court finds that the issue of employee interviews is not squarely before it.

Under Alaska's professional conduct rules, plaintiffs' counsel is not prohibited from trying to

contact non-managerial employees for informal factual interviews.  Siemens does not have to

arrange the contact.  If plaintiffs' counsel attempts to contact employees and Unocal objects to

such contact, Unocal can file a motion for a protective order and present the specific facts

surrounding the disputed contacts at that time.

**IT IS HEREBY ORDERED that plaintiffs' request for this Court to order Unocal**

**and Siemens to provide and arrange for access to Siemens' employees is DENIED.**

## C.  MEETING MINUTES FROM MARCH 4, 2003

In order to prepare for trial, the plaintiffs would like to know what knowledge Unocal had

about the platform before the accident.  To gain information about Unocal's knowledge,

plaintiffs submitted a request for production (this is one of many differently worded but related

requests for production) of all management meeting records, including meeting minutes, and

corporate records concerning Mr. Grove, the work platform, safety in the building, and the

OSHA investigation (Doc. 163, Exhibit 7).  In response, Unocal objected to the request on the

grounds that the request was vague, overbroad, and burdensome (Doc. 163, Exhibit 7).  It also

objected because it would require producing attorney-client privileged, work product, and

proprietary material.  However, despite the objection, it produced a redacted copy of some

16

meeting minutes from March 4, 2003.  The meeting minutes were basically all redacted except

for a few bulleted items (Doc. 163, Exhibit 7).  Unocal indicates that the redacted material is

protected because it contains proprietary information.  Plaintiffs contend that Unocal has not

explained how the redacted information is protected as proprietary information.  Unocal claims

in its response to this motion that the unredacted material was the only relevant part of the

meeting and is disclosed in full and the rest of the material is proprietary business information.

Under the rules or case law, there is no absolute privilege for confidential

information.  Hill v. Eddie Bauer, 242 F.R.D. 556, 561 (C.D. Cal. 2007).   Under Rule 26(c)(7), a

party can request a protective order for "trade secret or other confidential research, development,

or commercial information."  In discovery disputes, "courts have attempted to reconcile the

competing interests in trade secret discovery."  Id.   The party opposing discovery must show

that the information is a trade secret or other confidential research, development, or commercial

information under Rule 26(c)(7) and that its disclosure would be harmful to the party's interest.

Id.  (citing Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 325 (10th Cir.

1981)); Creative Gifts, Inc. v. UFO, 183 F.R.D. 568, 571 (D. N.M. 1998).  The fact that

discovery might result in the disclosure of sensitive competitive information is not a basis to

deny discovery.  Estate of Le Baron v. Rohm & Haas Co., 441 F.2d 575, 577 (9th Cir. 1971).

In this situation, Unocal has not shown that the redacted information is, in fact,

confidential material and has not shown that disclosure would be harmful to its interests.  Unocal

has stated that the material is not relevant, but it has not articulated specifically why it is

confidential and why it would be harmed if it were disclosed.  Furthermore, if Unocal really

thinks that it has confidential material within the meeting minutes that it does not want to

disclose, it should have requested a protective order or entered into a stipulated protective order. See Eddie Bauer, 242 F.R.D. at 562. If Unocal believed that the document contained information protected by attorney-client privilege or work product protection, it should have identified the asserted privilege or protection and given a description of the nature of the information being withheld under Rule 26(b)(5)(A).

**IT IS HEREBY ORDERED that Unocal deliver an unredacted version of the March 4, 2003 meeting minutes to plaintiffs' counsel by February 26, 2008. In the event Unocal believes the minutes contain proprietary information, Unocal shall file a notice to this Court by February 19, 2008, discussing why the information contained therein is a trade secret or is confidential research, development, or commercial information under Rule 26(c)(7) and why its disclosure would be harmful to Unocal's interest, and it shall also file a copy of the unredacted meeting minutes with this Court under seal for an *in camera* review.**

## D. DOCUMENTS PERTAINING TO THE ACCIDENT, THE PLATFORM, THE MECHANICAL ROOM, AND THE SAFETY, REPAIRS, MAINTENANCE, CONSTRUCTION, AND INSTALLATIONS IN UNOCAL'S ANCHORAGE BUILDING

At various points in the discovery process, pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiffs have requested Unocal to produce documents related to: 1) the work platform; 2) Mr. Grove's accident; and 3) policies, procedures, and records related to safety, repairs, maintenance, construction, and installations in the building.

Initially, plaintiffs asked Unocal for the location of building records for the building, including archives about the construction or erection of the work platform (Doc. 165 at 17). According to plaintiffs, Unocal responded that it did not erect or construct the platform and that

this request should be directed to the party most knowledgeable about the platform (Doc. 165 at 17).

Plaintiffs later asked for the right to inspect all records and policies pertaining to Mr. Grove, the work platform, and construction, repairs, maintenance, installations and safety in the building (Doc. 165 at 18). According to plaintiffs, Unocal responded that plaintiffs could inspect the *original* documents produced in this case. Plaintiffs assert that Unocal has not attempted to go through archived records to look for any of the requested information and therefore wants this Court to order that plaintiffs must be allowed access to Unocal's record department.

Throughout their memorandum in support of this motion, plaintiffs provide indications that Unocal has not diligently looked for requested information. For example, Plaintiffs assert that during discovery Siemens turned over work orders from Unocal to Siemens during the time period covering the most recent Siemens/Unocal contract (Doc. 165 at 20). Plaintiffs assert that Unocal should also have these work orders and should have produced them in discovery as requested.

Plaintiffs also point to deposition testimony from a prior building custodian supervisor, Charlie Arnett, and a former human resource manager at Unocal, Archie Cook. Both men testified that Unocal approved all construction in the building and placement of all furniture or structures in the building (Doc. 163, Exhibit 8 and Exhibit 10). Plaintiffs therefore assert that Unocal should have some records regarding construction or repairs or installations in the building.

As discussed earlier in this order, there was also an instance where Unocal claimed it was unaware of the Crapps affidavit related to the OSHA investigation which was later found in its

files (Doc. 62 at 9).

Based on the deposition of human resources manager, Mr. Cook, there were at least two safety inspections when he worked at the Unocal building and at least one of the inspections was conducted by Ken Burns (Doc. 163, Exhibit 8).  In the deposition of Mr. Burns, he confirmed that he had done two safety inspections of the building (Doc. 163, Exhibit 9).  At the time plaintiffs filed this motion, Unocal had not produced these two safety reports.

Lastly, plaintiffs note that from subpoenas and their own investigation, they have discovered building inspections and evaluations related to the Unocal building (Doc. 194, Exhibit 8).  Unocal never turned these over despite plaintiffs' request that Unocal provide documents relating to safety inspections of the building.

While Unocal's response to each discovery request is not presented clearly to the court, it appears Unocal objected to producing documents based on relevancy or on the basis that the requests were vague, over broad, and burdensome.  In the response memorandum, Unocal dismisses plaintiffs' assertion that more documents must exist.  Unocal states that just because plaintiffs would like to have more documents to prove their theory, does not mean Unocal violated discovery duties.  At the hearing on this motion, counsel for Unocal indicated that it has since found and produced the two safety reports by Ken Burns.

Under Rule 34 of the Federal Rules of Civil Procedure,  "[a]ny party may serve on any other party a request to produce and permit the party making the request... to inspect ...designated documents ... which contain matters within  the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served."  To be in the possession, custody, or control of a party means that the party has a legal right to obtain

documents upon demand.  Eddie Bauer, 242 F.R.D. at 560 (quoting United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989)).  A party has an affirmative duty to look of information reasonably available to it from its employees, agents, or others subject to its control.  Eddie Bauer, 242 F.R.D. at 560 (quoting Gray v. Faulkner, 148 F.R.D. 220,223 (N.D. Ind. 1996)).

If there are documents related to the safety of the building in Unocal's archive files or in the hands of any employees, agents, or entities subject to its control, Unocal has a duty to look for the documents and produce them.  It is unclear what efforts Unocal has made to look for the requested documents and there is evidence that Unocal has not been thorough in its search.

In this situation, plaintiffs have demonstrated good cause to believe that Unocal's production of documents has been incomplete.   As discussed above, Unocal has misplaced documents in the past and has not produced safety reports related to the building that clearly existed.

Unocal contends in its response to the motion that it has not been able to find any documents related to the platform.  While this may be true, plaintiffs have requested a broader array of documents related to the building.  It appears that Unocal has not produced any of these general documents deciding unilaterally that anything unrelated to the platform is not relevant. Just because the documents that Unocal has may not specifically address the platform, these documents are relevant to the case for the purposes of discovery.

Under Rule 34, a party can request documents that contain matters within the scope of Rule 26(b).  Rule 26(b) allows discovery of  unprivileged information related "to the claim or defenses of any party . . . ." For discovery purposes, relevant information is information that is

reasonably calculated to lead to the discovery of admissible evidence.  <u>Eddie Bauer</u>, 242 F.R.D. at 561 (quoting <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 635 (9th Cir. 2005)). Plaintiffs appear to be looking for documents that might help discover when the platform was erected and that would show Unocal was responsible for the mechanical room where the platform was located or that Unocal should have known about the platform based on its safety, construction, repair, maintenance, installation history and policies.

Courts have ordered a party to provide a sworn declaration setting forth specific efforts it has made to locate documents requested by another party under a  Rule 34 request.  In <u>Fresenius Med. Care Holding Inc., v. Baxter Int'l, Inc.</u>, 224 F.R.D. 644 (N.D. Cal 2004), the court found that there was good cause to believe that the defendant's production of documents was incomplete.  The court ordered the defendant to "produce a declaration under a penalty of perjury setting forth the specific efforts it has made to locate documents responsive to the plaintiffs' requests and to certify that all documents have been produced" or provide a certification that the requested information does not exist and that it has exhausted its efforts to locate responsive information.  <u>Id.</u> at 650-51.  <u>See also</u>  <u>Cytosport, Inc. v. Nature's Best, Inc.</u>, 2007 WL 1040993 (E.D. Cal. April 4, 2007) (stating that courts occasionally order a responding party to provide verified responses to a Rule 34 document request when a dispute arises as to whether or not all the requested documents have been produced and requiring the plaintiff to provide verified responses that it has produced all documents responsive to this request).

Unocal objected to some of the requests based on the fact that the requests are burdensome, vague, oppressive and on the fact that it would require disclosure of attorney-client information and work product information.  Unocal also has not specified why such requests are

burdensome.  See Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 529 (D. Nev.

1997) (stating that a party claiming that a discovery request is unduly burdensome must allege

specific facts which indicate the nature and extent of the burden, usually by affidavit or other

reliable evidence).  Furthermore, Unocal has not set forth how many documents or what kind of

documents it has that are responsive to plaintiffs' request but that are protected under Rule

26(b)(3) (work product protection).  See Holliday v. Extex, 447 F.Supp.2d 1131 (D. Hawaii

2006) (stating that the burden of establishing work product protection lies with the proponent and

it must be specifically raised and demonstrated rather than asserted in a blanket fashion).  Unocal

has not set forth what documents it has that are protected under attorney-client privilege either.

No log of documents claimed to be privileged has been provided.  Therefore, it is impossible for

this Court to look in detail at each piece of discovery and make a determination as to whether

Unocal's objections are well-founded.

      However, district courts have broad discretion in controlling discovery and determining

whether discovery is burdensome and oppressive.  Jackson v. Montgomery Ward & Co., Inc.,

173 F.R.D. 524, 526 (D. Nev. 1997).  In ruling on a motion to compel, a district court can narrow

the requests rather than sustain the responding objections in total. Green v. Baca, 219 F.R.D. 485,

490 (C.D. Cal. 2003).

      **Therefore, it is HEREBY ORDERED that Unocal produce the following evidence**

**and documents: 1) any documents related to the work platform; 2) any documents related**

**to the mechanical room; 3) safety inspection reports for the building; 4) policies/procedures**

**for the building regarding safety, construction, repair, maintenance, and installations;**

**5) work orders pursuant to all contracts with Siemens or any other company relating to the**

**maintenance of the building; and 6) any meeting records that relate to the accident, the mechanical room, or the OSHA investigation. Unocal shall deliver all documents and evidence found to plaintiffs' counsel by March 12, 2008 along with an affidavit describing under oath all efforts–historical and recent–taken to look for those documents. Unocal must also verify under oath that it is producing all documents responsive to this order that it has in its possession and control or, if no documents are found, verifying under oath that it does not have any responsive documents. If there are responsive documents that Unocal feels are protected by the attorney-client privilege or Rule 26(b)(3) then Unocal should file a log generally describing the documents and setting forth how each document meets the qualifications for attorney-client privilege or work product protection.**

### E. SURVEILLANCE

Plaintiffs have received two videotapes from Unocal. These videotapes contain surveillance of Mr. Grove. Plaintiffs request this Court to order the production of all video tapes that exist of Larry Grove and all notes, contracts, and papers related to this surveillance. There is no evidence in the record that more of these tapes exist. Unocal's counsel has represented in its response to the motion that it has disclosed every video it received in discovery and that the videos were produced in unedited form (Doc. 179 at 21-23). Unocal also asserts that any notes and contracts about the surveillance is work product and thus protected from discovery.

The work product protection granted under Rule 26(b)(3) of the Federal Rules of Civil Procedure protects documents or things prepared by a party or his representative in anticipation of litigation. Fed. R. Civ. Pro. 26(b)(3); In re Grand Jury Subpoena (Mark Torf/Torf Env. Mgmt.), 357 F.3d 900, 906 (9th Cir. 2004). A court can only order these documents or things

produced upon the requesting party's demonstration of substantial need for the items and undue

hardship in obtaining equivalent evidence.   This doctrine also "applies to documents created by

investigators working for attorneys, provided the documents were created in anticipation of

litigation." Id. (citing United States v. Nobles, 422 U.S. 225, 239 (1975)).   The work product

protection shields the mental impressions, conclusions, opinions, or legal theories of an attorney

or other representative of a party concerning the litigation.  Fed. R. Civ. P. 26(b)(3).  In this

situation, any notes and papers about the surveillance are clearly protected under Rule 26(b)(3).

Any notes and papers would disclose the mental impressions, conclusions, opinions, and legal

theories of Unocal's counsel and investigators.  Plaintiffs have not demonstrated a need for this

evidence, especially given the fact that Unocal has submitted the videos that it possesses.

However, a contract or fee agreement does not clearly set forth the mental impressions,

conclusions, or opinions, and legal theories of Unocal's counsel and investigators.

At the hearing on this motion, this Court allowed plaintiffs to submit supplemental

briefing regarding this topic.  In their supplemental briefing, plaintiffs cite to Lowery v. State,

762 P.2d 457 (Alaska Ct. App. 1988) to support their contention that they are entitled to notes,

contracts and papers related to the surveillance of Mr. Grove.  In Lowery, the court held that the

defendant waived work-product privilege to reports of the investigator when reports were used to

impeach one witness and to refresh another witness's recollection.  That case dealt with waiver

of the work-product privilege, which is not at issue in this case.  Unocal has not used any notes,

reports, or papers related to the surveillance for impeachment purposes of any kind at this time.

Plaintiffs also cite Roundy v. Staley, 984 P.2d 404 (Utah Ct. App. 1999).  In that case, the court

held that the defendant was required to produce surveillance tapes and the identity of the

surveillor because the tapes were prepared for introduction at trial.  The tape was going to be used as evidence in the case and so was discoverable.  It is unclear in this case that the surveillance tapes will be introduced as evidence.

**Plaintiffs' request for this Court to order Unocal to turn over all surveillance tapes of Mr. Grove is HEREBY DENIED AS MOOT and plaintiffs' request to turn over the investigator's notes and papers related to Mr. Grove's surveillance is HEREBY DENIED. Plaintiffs' request to turn over any contract or fee agreement that exists regarding the surveillance of Mr. Grove is hereby GRANTED.  In the event Unocal believes any existing contract or fee agreement regarding the surveillance of Mr. Grove is protected under work product or attorney-client privilege, it shall file a log generally describing the document and setting forth how each document meets the qualifications for attorney-client privilege or work product protection.  Furthermore, it is HEREBY ORDERED that if the surveillance tapes will be used as evidence during trial, Unocal shall disclose to plaintiffs the name of the person(s) who will authenticate the tapes.**

## F.  <u>GENERAL COMPLIANCE</u>

Plaintiffs assert that Unocal has been evasive and has willfully evaded discovery in this matter.  They generally assert that Unocal has not dutifully followed its Rule 26(a) disclosure requirements and has not been responsive to their document requests under Rule 34.  Plaintiffs request that this Court require Unocal to comply with the discovery rules and produce all types of documents that plaintiffs have requested.  Furthermore, plaintiffs want this Court to order Unocal to turn over everything listed in the letter dated April 18, 2006, which is attached to the motion at Exhibit 1.  This is a list of 36 discovery grievances, including some requests for document

production.   Some of the grievances and requested documents in the letter are specifically discussed in this motion.  However, some of the grievances and document requests are not discussed in detail in the motion or memorandum and the facts surrounding those grievances and document requests are not presented.  It is not clear what Unocal's response to the letter was and whether some of the items have already been produced.

Plaintiffs have not presented the request in a way to permit the Court to know the facts behind each request in the letter, and Unocal did not address the letter in its response to this motion.  Furthermore, it is not clear how a general motion ordering Unocal to comply with the rules will solve any of these discovery disputes or address plaintiffs' main concerns in this motion.

**Therefore, plaintiffs' request for this Court to generally order Unocal to submit everything listed in the April 18, 2006 letter and to generally order Unocal to comply with the Federal Rules of Civil Procedure is HEREBY DENIED.**

DATED this 12th day of February, 2008, at Anchorage, Alaska.


/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge