John B. Thorsness, Esq.
Linda J. Johnson, Esq.
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501
(907) 272-9272
usdc-anch-ntc@cplawak.com
Attorneys for Defendant Unocal Alaska

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>vs.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | Case No. 3:04-cv-0096-TMB |

**DEFENDANT'S SUPPLEMENTAL BRIEFING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES AND ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (liability issue)**

Pursuant to court order, defendant Unocal Corporation, by and through counsel Clapp, Peterson, Van Flein, Tiemessen, and Thorsness LLC, hereby supplements its briefing on Motion for Partial Summary Judgment on Punitive Damages and on Plaintiffs' Motion for Partial Summary Judgment as to Defendant Unocal's Liability for Negligence, Punitive Damages and Allocation of Fault. The following issues are addressed herein:

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 1 of 20

1) UNOCAL properly delegated responsibility for Grove's safety to Siemens;

2) Spoliation is controlled by Federal, not State, law;

3) Admissibility of OSHA fine on Siemens;

4) The Master Services Contract from 1994 supersedes Siemens' 2000 Proposal.

5) Record Supplemented:
   a) Ken Burns' safety inspection reports.
   b) Michael Van Bree's expert report
   c) Photos
   d) The Siemens-Unocal contract.
   e) SIEMENS Safety Resource Manual

## I. UNOCAL HAD THE RIGHT TO DELEGATE RESPONSIBILITY FOR GROVE'S SAFETY TO SIEMENS.

### A. The Scope of UNOCAL's Duty to Grove as a Possessor of Property

UNOCAL had a right to, and did in fact, delegate responsibility for Grove's safety to his employer, Siemens, pursuant to contract. UNOCAL'S delegation of the responsibility for Grove's safety included the duty to inspect the Fan Room for hazardous conditions.

#### 1. Alaska Law

In *Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977), the court abolished the distinction between the status of persons as trespassers, licenses or invitees as controlling factors in determining the scope of the duty of a possessor of property and held that ordinary principles of negligence govern the conduct of a landowner. The court adopted the following statement of the duty of a landowner to those entering upon the premises:

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 2 of 20

> A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk.[1]

The rule in *Webb* applies to claims by employees of independent contractors engaged by a landowner ("hirer") to perform work on its premises such as is presented by the facts of this case. Grove was employed by Siemens, an independent contractor working for Unocal. *Moloso v. State*, 644 P.2d 205 (Alaska 1982) (Duty to warn, imposed upon landowner by latent hazardous condition of land, extends to employees of independent contractor working on the premises);[2] *Ferriss v. Texaco, Inc.*, 599 P.2d 161, 165 (Alaska 1979) (Oil company owed

---

[1] Notably, the court in *Webb* made the following observation regarding the propriety of summary adjudication in premises liability cases:
> As a general rule, issues of negligence are generally not susceptible to summary determination, but should be resolved by trial in the ordinary manner. The reason for this rule is: (B)ecause of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial.

*Webb*, 561 P.2d at 735. *See also, Carlson v. State*, 598 P.2d 969, 974 (Alaska, 1979) ("Whether particular conduct is reasonable under the circumstances is generally considered a question of fact for the jury. It is therefore ordinarily not an appropriate issue for determination on a motion for summary judgment").

[2] In *Moloso*, the court held that a landowner has a duty to warn employees of an independent contractor working on the premises about latent hazardous defects; however, either an adequate warning to the contractor or the contractor's own full knowledge of the condition is sufficient to discharge the landowner's responsibilities to the contractors' employees. This principle was reiterated in *Exxon v. Alvey*, 690 P.2d 733, 737 (Alaska 1984).

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 3 of 20

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

employee of contractor engaged to install metal canopies above gasoline pumps at defendant's service station that duty of care established in *Webb*).

### 2. California Law

California law is helpful here. When there is a known safety hazard on a hirer's premises that can be addressed through reasonable safety precautions on the part of the independent contractor, the hirer generally delegates the responsibility to take such precautions to the contractor, and the hirer is not liable to the contractor's employee if the contractor fails to implement precautions. *Kinsman v. UNOCAL Corp.*, 123 P.3d 931, 939-940 (Cal. 2006) ("We fully reaffirm the right of hirers 'to delegate to independent contractors the responsibility for ensuring the safety of their workers'").[3] The hirer has no duty to act to protect the employee when the contractor breaches its responsibilities for workplace safety by failing to take reasonable safety precautions in connection with known safety hazards. *Kinsman*, 123 P.3d at 940.

However, if the hirer knows, or should know, of a concealed pre-existing hazard on its premises, it may be subject to liability for injuries to the employees of its contractors even if it does not retain control over the work, if (1) it knows or reasonably should know of a concealed, pre-existing hazardous condition on its

---

[3] Alaska case law also imposes a common law duty upon an employer to provide a safe worksite even in the absence of the existence of a contractual delegation of such a duty. *See Parker Drilling Co. v. O'Neill*, 674 P.2d 770, 776 (Alaska 1983); *Bachner v. Rich*, 554 P.2d 430, 443 (Alaska 1976); *State v. Marathon Oil*, 528 P.2d 293, 297 (Alaska 1974).

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 4 of 20

premises; (2) the contractor does not know and could not reasonably ascertain the condition; <u>and</u> (3) the landowner fails to warn the contractor. *Id*. The hirer can only be subject to liability to the employees of its contractor if the contractor did not know and could not have reasonably ascertained the hazard. *Id*. at 943. Whether a hazard is concealed is a factual issue. *Id*. at 946.[4] But, the hirer is not liable "when the contractor has failed to engage in inspections of the premises implicitly or explicitly delegated to it." *Id*. at 942.

### B. UNOCAL Delegated Responsibility for Grove's Safety While in the Fan Room to Siemens, a World-Wide HVAC Contractor

#### 1. The "Services and Drilling Master Contract"

UNOCAL contracted with a multinational company, Siemens Building Technologies, who in their proposal to UNOCAL boasted that UNOCAL would have "...the confidence of knowing that . . . [it was] backed by a company dedicated to customer service with over 100 years proven experience...throughout the entire world." (UNOCAL–Siemens contract, Exhibit A hereto, p. DEF00004.) Siemens went on to describe itself as "...one of the largest manufacturer, installer and service provider (sic) for building HVAC systems in the world. . . ." *Id*. More specifically, at

---

[4] In abolishing the distinctions between trespassers, licensees and invitees as the controlling factor in determining the scope and extent of the duty of care owed by landowners in *Webb*, the Alaska Supreme Court placed substantial reliance upon the California Supreme Court's decision in *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968). The Alaska Supreme Court again relied upon *Rowland* in formulating its holding in *Moloso*. *Moloso*, 644 P.2d at 219. It is likely, therefore, that the Alaska Supreme Court would embrace the rule adopted by the California Supreme Court in *Kinsman* for determining a premises owner's liability for injuries to an independent contractor's employee for hazards alleged to exist on the premises.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 5 of 20

DEF00007 of the proposal, the filter replacement Grove was doing when his accident occurred is listed as work Siemens would do at the Unocal building. *Id.*

UNOCAL's delegation of responsibility for the safety of Siemens' employees to Siemens is demonstrated by the following salient provisions of the UNOCAL – Siemens contract (i.e., Siemens Technical support Program Proposal) and the "Services and Drilling Master Contract" (DEF00001–00018), Ex. A:

> 1. Description of Services To Be Performed by Contractor
>
> . . . provide mechanical services (HVAC)
>
> 13.1 [I]n the performance of work herein contemplated, CONTRACTOR is an <u>independent contractor</u>, with the authority to <u>control and direct</u> the performance and <u>safety</u> of the details of the work, COMPANY being interested only in the results obtained. . . .
>
> 13.2 CONTRACTOR guarantees that all tools and equipment used will be furnished, and all work and labor to be performed under the terms of this Contract will be performed <u>in strict accordance with all Federal, State, and Local laws, rules, regulations, order and ordinances</u>.
>
> 13.6 CONTRACTOR shall keep and maintain <u>equipment furnished by COMPANY</u> in good condition, at CONTRACTOR'S expense. . . .
>
> 13.7 CONTRACTOR shall <u>examine before using</u> all materials, equipment and supplies furnished by COMPANY to replace same without delaying operations.
>
> 21. SAFETY
>
> CONTRACTOR agrees to perform its activities under this Contract in a safe manner and will have and enforce <u>a set of safety and loss prevention</u>

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 6 of 20

standards which complies with all laws and that will meet or exceed Company's safety procedures and policies.[5]

*Id.* at DEF00014–015 (emphasis added).

### 2. SIEMENS' Safety Resource Manual

At his January 3, 2006 30(b)(6) deposition, Siemens designee Doug Schutte produced a voluminous and detailed document titled SIEMENS Safety Resource Manual (excerpted in Exhibit B). This is the document referenced in paragraph 21 of the UNOCAL-Siemens contract, quoted above. It begins with an introduction page that states:

> Siemens Building Technologies Inc., as a responsible employer, realizes the obligation of providing a safe and healthful workplace.

Under "Policies" Siemens sets out the "Purpose" of its safety policy:

> Providing safe working conditions is of continual concern to Siemens Building Technologies. It is important to the Company that adequate policies and procedures are developed and adhered to in order to ensure safe, and efficient operating conditions, thereby safeguarding employees. . . .

On page 27, Siemens speaks of its "personal commitment to our fellow employees. . . ."

Pages 26 through 53 contain a section titled "Injury and Illness Prevention Program."

---

[5] Plaintiffs' own expert "Safety Man" Robert Carmichael testified:
Q.   And you would agree with me that as contractors, Siemens was obligated to direct the safe performance of the work Mr. Grove was conducting.
A.   Correct. I agree with that.
Bob Carmichael Deposition, July 31, 2007, p. 87, Exhibit C hereto.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 7 of 20

Finally, Pages 134 through 135 contain a separate "Fall Protection Program" which among other sections addresses when such protections must be in place; ". . . employees working six feet or more above the floor. . . ." (p. 124), and on that same page states that body belts are required for workers on "scaffolds." On page 132 of the section, there is a discussion of "body harnesses" and how they have replaced "body belts." On page 133, specific strength and rigging requirements are addressed.

Plaintiffs' expert Mr. Carmichael agreed that Grove should have been wearing a safety harness:

> Q.    Okay. Should Mr. Grove have been wearing fall protection?
> MR. COHN: Objection. Speculation, foundation.
> THE WITNESS: Some form of fall prevention or protection would have been appropriate if the platform was indeed more than six feet off the lower level. So it should have been either guardrails or a fall protection harness or a guard. Something should have been there.

Bob Carmichael Deposition, July 31, 2007, p. 114, Exhibit C hereto.

Carmichael then testified that Siemens was to provide Grove with, and train him to use, a safety harness:

> Q..... Okay. Was it his employer's responsibility to see to it that he was provided with and used this fall protection?
> MR. COHN: Objection. Foundation, speculation.
> THE WITNESS: That's not a simple question to answer. But I will tell you that in summary is <u>yes, it's the employer's responsibility to provide the employee with training in the safety equipment that they're required to use</u>.
>         What I don't know is whether Siemens 19   expected them to be using -- expected their employees to be using fall protection systems. If Siemens did, in fact, provide safety harnesses to their employees, then there is a requirement for them to train to use them.
> BY MR. THORSNESS:

Def.'s Supp. Briefing on MPSJ
Grove v. Unocal, Case 3:04-cv-0096-TMB
Page 8 of 20

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

> Q. And likewise, it would be Siemens' obligation to ensure that they, in fact, did use them.
> MR. COHN: Objection. Speculation.
> BY MR. THORSNESS:
> Q. Is that correct?
> MR. COHN: Calls for legal conclusion.
> THE WITNESS: In my experience, yes, that's correct. If it is the employer's policy that employee wear a particular piece of safety equipment in certain circumstances, then yes, the employer, in my experience, has an obligation to enforce that policy.

(Emphasis added.) Further, plaintiffs' expert discussed the OSHA duties Siemens had:

> BY MR. THORSNESS:
> Q. What do the OSHA regs say about that in terms of the employer's responsibility?
> A. The general duty clause says that the employer's responsible to provide a safety and healthful workplace that is as free from recognized safety hazards as possible.
> In the fall protection standard, <u>OSHA says that the employer is responsible for providing fall protection equipment</u>, . . .

Ex. C, pp. 117-18 (emphasis added).

In addition, Unocal's expert Michael VanBree, on pages 8 and 9 of his report, states that Siemens violated its own Safety Policy by not requiring Grove to wear a safety harness since he was eight feet off the floor while standing on the platform. Van Bree report, Exhibit D hereto.

The only admissible evidence shows that Unocal was not aware that the platform even existed in the fan room, on the "Penthouse" floor of its office building. Next, given (1) Siemens' significant credentials and reputation; (2) the "SIEMENS' Safety Resource Manual" and; (3) Unocal's contractual delegation of workplace safety to Siemens, as demonstrated by the provisions of the UNOCAL – Siemens

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 9 of 20

"Services And Drilling Master Contract" quoted above, UNOCAL had no duty to act to protect Grove unless UNOCAL knew, or should have known, of a latent or concealed preexisting hazardous condition in the filter room <u>and</u> Siemens did not know and could not have reasonably discovered the hazardous condition. *See, Kinsman*, 123 P.3d at 940.

Whether the condition of UNOCAL's premises of which Grove complains preexisted Siemens' retention, was hazardous and concealed and, if so, whether UNOCAL <u>should have known</u> of the condition or whether Siemens <u>should have discovered</u> the condition are factual issues which preclude summary judgment in favor of Grove on the issue of liability. *Id.*

Next, under the second prong of the test as articulated in *Kinsman, id.*, Grove's own experts have testified that the unsafe condition they contend existed, was hardly one that Grove (and therefore Siemens) "could not reasonably ascertain..." Here Mr. Manning testified:

> BY MR. THORSNESS:
> Q. Had Mr. Grove taken a moment to reach up, give that joint a good shake, would you expect he would have been able to ascertain that that joint was loose?
> A. That --
> MR. COHN: Objection. Speculation.
> THE WITNESS: That joint has to speak specifically to the one that came apart, and it would have been loose and detectable to the appropriate person doing the appropriate inspection. Whether that was this man or not I don't know, but it had to have been substantially loose.
> BY MR. THORSNESS:
> Q.  <u>And detectable by simply giving it a good shake?</u>
> A.  <u>Well, probably by looking --</u>
> MR. COHN: Objection. Speculation.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 10 of 20

THE WITNESS: -- at it. Either the bolts were gone or they were ready to fall out, and it -- had you looked and had adequate light and gone to the right place and done it, you know, it should have been discoverable.
BY MR. THORSNESS:
Q. So a simple visual inspection, it might well have revealed that that joint was loose?
A. Maybe.
MR. COHN: Objection. Speculation.
BY MR. THORSNESS:
Q. And then secondly in addition to following a visual inspection, if a person reached up and gave it a good shake, that would confirm that the joint was loose, wouldn't it?
MR. COHN: Objection. Speculation.
THE WITNESS: Yeah, but this falls in about the

Manning Deposition, August 14, 2007, pp. 26-27, Exhibit E hereto (emphasis added).

Plaintiffs' metallurgist Balser testified:

BY MR. THORSNESS:
Q. Would he have -- if the fastener -- if the bolts were gone and that was just one piece of metal sitting on top of another, would you agree with me that it would have been relatively easy for Mr. Grove to tell by shaking that horizontal piece a little bit that that joint was loose for some reason?
MR. COHN: Objection to the form of the question. Speculation.
THE WITNESS: <u>I believe that he would have been able to see that the joint separated as he shook it if he had been shaking it.</u>
BY MR. THORSNESS:
Q. All right. He would feel some play in there?
A. He would see --
MR. COHN: Objection. Form. Speculation.
THE WITNESS: He would see the joint separate if he was shaking it horizontally.
BY MR. THORSNESS:
Q. And he would – go ahead.
A. If he was shaking it vertically, he would also be able to see the joint separating.
Q. And he would feel the movement, wouldn't he?
A. Yes.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 11 of 20

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

```
MR. COHN: Objection. Form. Speculation.
THE WITNESS: He would see the movement.
BY MR. THORSNESS:
Q.    I know, but he would also feel --
A.    And feel it, yes.
Q.    Feel the --
A.    He would feel it give.
Q.    The looseness?
A.    Yes.
Q.    All right. Thank you.
```

Balser Deposition, August 15, 2007, pp. 38-39, Exhibit F hereto (emphasis added).

```
Q.    In terms of other people who might have made that
assessment, might his employer have been able -- would you expect
his employer, Siemens Corporation, to -- had they inspected the fan
room, had they inspected that work platform --
A.    No.
Q.    -- would you have expected that they would have been able to
detect any loosening of any joints?
MR. COHN: Form. Foundation. Speculation.
THE WITNESS: If the Siemens Corporation was charged with the
responsibility for having maintained that scaffold and had they
performed those regular maintenance and inspections, certainly they
would have been able to discover that loose joint. . . . .
```

Ex. F, pp. 48-49 (emphasis added).

Finally, plaintiffs' expert Carmichael noted Grove's statutory duty:

```
Q.    Did -- Mr. Grove had an obligation, didn't he, to take reasonable
steps to ensure his own personal safety?
A.    That is included in the OSHA general duty clause, correct.
Q.    All right. And that would include that he -- before he gets up on
a work platform, that he make reasonable efforts to ascertain whether
it's still structurally sound; isn't that correct?
MR. COHN: Objection to the form. Speculation, foundation.
THE WITNESS: Depending on the definition of "reasonable," that's
correct.
```

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 12 of 20

Ex. C, pp. 73-74 (emphasis added.)[6]

## II. SPOLIATION

### A. Federal Law Governs the Imposition of Spoliation Sanctions in Diversity Cases

The majority of the federal circuit courts of appeal hold that federal law governs the imposition of spoliation sanctions in diversity suits. *Martinez v. Brink's Inc.*, 2006 WL 551239 *4 n.7 (11th Cir. 2006); *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005); *Hodge v. Wal-Mart Stores Inc.*, 360 F.3d 446, 449-450 (4th Cir. 2004). The Sixth Circuit Court of Appeals is the only exception. *Davison v. Cole Sewell Corp.*, 2007 WL 1892089 *6 n.4.

Although the Ninth Circuit Court of Appeals has not explicitly addressed the subject of whether state or federal law governs the imposition of spoliation sanctions, decisions in diversity cases within the Circuit have applied federal law. *Transue v. Aethetech Corp.*, 341 F.3d 911, 920-921 (9th Cir. 2003) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

---

[6] Likewise, Unocal's duties as articulated in the decisional authority discussed above. The contract demonstrating Siemens' assumption of safety responsibilities and the details of the voluminous Siemens "Safety Resource Manual" again demonstrate that Grove has not come forward with admissible evidence meeting the "clear and convincing" burden of proof, that even if the jury finds that Unocal "should have known" of the platform's alleged unsafe condition, nothing resembling the <u>Restatement</u>'s definition of "Reckless Indifference" can be demonstrated; and therefore plaintiffs' punitive damages claim should be dismissed.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 13 of 20

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## III. OSHA CITATION

### A. OSHA's Investigative Files Are Admissible

In response to a complaint submitted by plaintiff, Lawrence Grove, the Alaska Occupational Safety and Health Section ("AKOSH") opened a file and commenced an investigation into the Grove accident on March 2, 2003. Representatives of AKOSH inspected the filter room and conducted employee interviews. The AKOSH investigation resulted in the issuance of two citations to Siemens for violation of federal occupational safety and health regulations (29 CFR 1910.23; 29 CFR 1910.25(d)(xv)); AKOSH issued a single citation to UNOCAL for violation of 29 CFR 1910.23. Although hearsay, the investigative files of AKOSH, including the findings of fact and opinions of the AKOSH investigators, are admissible in evidence in this proceeding pursuant to Evidence Rule 803(8)(C).

Federal Rule of Evidence 803 states in pertinent part as follows:

> **Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness;
>
> . . . .
>
> **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Evidence Rule 803(8)(C) allows into evidence public reports that (1) set forth factual findings (2) made pursuant to authority granted by law (3) that the court finds

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 14 of 20

trustworthy. "[F]actually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)(C)." *Beech Aircraft v. Rainey,* 488 U.S. 153, 162, 109 S.Ct. 439, 446, 102 L.Ed.2d 445 (1988). Therefore, the AKOSH investigative files are admissible under Evidence Rule 803(8)(C) even though the files may contain the conclusions of its authors, e.g., that violations of OSHA regulations occurred.

The second prerequisite for the admissibility of the AKOSH investigative files is a judicial finding of trustworthiness. Evidence Rule 803(8)(C). The Advisory Comments to Evidence Rule 803(8) set forth several considerations to aid in determining the trustworthiness of a public report: the timeliness of the investigation; the skill and experience of the investigator; whether the investigator held any sort of a hearing; and the investigator's impartiality. These considerations are not meant to be exhaustive. Federal Civil Judicial Procedure and Rules, p. 546 (Thomson West, rev. ed. 2007). Applying the aforementioned considerations to the circumstances of the AKOSH investigation into the Grove accident, there is no basis for concluding that the AKOSH investigative files are anything but entirely trustworthy. The files should therefore be deemed admissible in this proceeding.

Numerous courts have held that OSHA investigative files are admissible. *Valenzuela v. Heldenfels Brothers, Inc.,* 2006 WL 2294562 *2 (Tex. App. 2006) (OSHA citations issued to deceased worker's employer following investigation into worker's death were admissible as reports from a public agency in wrongful death action even if used to establish fault); *Smith v. International Paper Co.,* 656 So.2d

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 15 of 20

355, 357-358 (Ala. 1995) (Pursuant to common law exception to hearsay rule for public records, report made by OSHA inspector was admissible in wrongful death action); *Mark v. Mellott Mfg. Co., Inc.*, 666 N.E.2d 631 (Ohio App. 1995) (OSHA regulations and documents, including accident reports and citations against plaintiffs' employer arising from investigation of the accident, was relevant to risk-benefit analysis and to consideration of issue of whether intervening or superseding cause rather than product defect proximately caused plaintiffs' injuries); *Felden v. Ashland Chem. Co., Inc.*, 631 N.E.2d 689, 698 (Ohio App.1993) (OSHA investigation file was admissible at trial pursuant to the public records and reports hearsay exception as contained in Evid. R. 803(8)).

Based upon the foregoing discussion, the court should hold that the OSHA investigative files and citations arising from the accident which is the subject of this proceeding are admissible in evidence at trial.

### IV. THE "SERVICES AND DRILLING MASTER CONTRACT"

Attached is a copy of the total contract between Unocal and Siemens, encompassing 18 pages (Ex. A.). The document is in two parts. The first 12 pages are part of a contract extension that Unocal and Siemens entered into in the year 2000. Pages 13-18 constitute the April 18, 1994 Master Services contract between Landis & Gyr Powers Inc. and Unocal. Siemens acquired Landis & Gyr's U.S. holdings in 1998 and Landis & Gyr was merged into Siemens. At that point, Siemens assumed the contract with Unocal.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 16 of 20

On page 9 of the 2000 agreement, in the section entitled Agreement, the parties agreed that: **"The following terms and conditions shall apply, but where there is a conflict with the Master Services Contract, the Master Services Contract shall supercede [sic] (contract dated 4/18/94, #3282-ONS)."** Therefore, the parties to the 2000 contract specifically adopted all the terms of the 1994 contract and agreed that the 1994 terms were paramount.

The "access" language that Plaintiffs quote is attached to the 2000 contract extension. In the section Customer Responsibilities, it reads:

> 6.3   Customer will provide [Siemens] with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices. Customer will be solely responsible for any removal, replacement, or refinishing of the building structure or finishes that may be required to gain access to such Equipment.

Plaintiffs claim that "access" encompassed access to the filters on the filter bank and that the platform was the means of "access" that Unocal provided. Plaintiffs read this provision to mean that Unocal was solely responsible for the construction and maintenance of the platform.

In contrast, the Master Services contract from 1994 states:

> 13.7 CONTRACTOR shall examine before using all materials, equipment and supplies furnished by COMPANY for performance directed pursuant to this Contract, and will exercise reasonable diligence to report to COMPANY any defects therein in time to allow COMPANY to replace same without delaying operations.

Ex. A, p. DEF00015.

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 17 of 20

Unocal asserts that because the Master Contract specifically supersedes any language in the 2000 contract, that the above provision required Siemens to inspect the platform and report any defects therein to Unocal. Siemens therefore had a contractual duty to inspect the platform for defects.

There is a conflict between the parties' contract interpretations that creates a genuine issue of material fact as to negligence liability. Summary judgment on liability would therefore be precluded. The issue is one for the jury.

## V. SUPPLEMENTATION OF THE RECORD

As orally requested by Judge Smith in the February 13, 2008 oral argument hearings, attached are documents to supplement the defense record. The following documents are provided to assist and clarify matters in the subject motions:

1. Michael P. Van Bree's report dated 12/6/06 (Bates Nos. 700116 – 124, 700110-111). In this report Mr. Van Bree describes the dimensions of the penthouse fan room. [Ex. D hereto.]

2. Siemens contract with Unocal dated 5/31/00 (Bates Nos. DEF00001 – DEF 00018). [Ex. A hereto.]

3. Copies of the OSHA photos taken of the penthouse fan room on 3/3/03 (Bates Nos. LG00814 –LG00824). [Exhibit G hereto.]

4. Color photos of the penthouse fan room taken by Larry Grove the day after his accident 9/10/02. [Exhibit H hereto.]

5. Copies of documents relevant to inspections and safety meetings regarding the penthouse including:

    a) Memo to Archie Cook from Ken Burns dated 4/5/00 (Bates No. 102375 – 102378) [Exhibit I hereto]
    b) Inspection of Anchorage Bldg. dated 1/6/99 (Bates Nos. 102379 – 102381) [Exhibit J hereto]

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal*, Case 3:04-cv-0096-TMB
Page 18 of 20

  c) Safety Inspection sheets dated 3/5/03 (Bates Nos. 102382 – 102394) [Exhibit K hereto]
  d) Safety Inspection sheet dated 2/21/06 (Bates Nos. 102395 – 102397) [Exhibit L hereto]
  e) Appendix C, Contractor Qualification Survey (2000) (Bates Nos. 101709 – 101716) [Exhibit M hereto]
  f) OSHA Compliance Manual forms, years 1997-1999 (Bates Nos. 101716 – 101718) [Exhibit N hereto]

## IV. CONCLUSION

A.  Concerning Unocal's duty as the building owner, there is no evidence that Unocal knew of the platform's condition or that it even existed having delegated responsibility for safety of the Fan Room to Siemens. However, according to plaintiffs' own experts, Siemens, and its on-site man Plaintiff Larry Grove could easily have ascertained the subject joints allegedly loose condition by a simple visual inspection and/or by shaking the joint to check for looseness.

B.  Next, Federal law appears to govern spoliation.

C.  The OSHA citations and file materials are admissible.

D.  The Unocal "Drilling and Master Services" contract supersedes the Siemens proposal.

\#
\#
\#
\#
\#
\#

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 19 of 20

Dated at Anchorage, Alaska, this __20th__ day of February 2008.

CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS, LLC
Attorneys for Defendant Unocal

s/ Linda J. Johnson
CLAPP, PETERSON, VAN FLEIN,
TIEMESSEN & THORSNESS LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
Phone:  (907) 272-9631
Fax:  (907) 272-9586
Direct email:  ljj@cplawak.com
Alaska Bar No. 8911070

### Certificate of Service

I hereby certify that on February 20, 2008, a copy of the foregoing document was served electronically on Phillip P. Weidner, Esq.

s/ Linda J. Johnson

Def.'s Supp. Briefing on MPSJ
*Grove v. Unocal,* Case 3:04-cv-0096-TMB
Page 20 of 20