

3851 Exchange Avenue
Aurora, Illinois 60504

Phone: (630) 851-4566
Fax: (630) 851-4870
esi-website.com

# REPORT

> Grove (Lawrence)
>
> vs.
>
> Unocal Corporation
>
> ESI File No.: 21002A
> Your File No.: 6200-1

**REPORT SUBMITTED TO:**

Ms. Linda J. Johnson, Esq.
Clapp, Peterson, Van Flein, Tiemessen, Thorsness LLC
711 H Street, Suite 620
Anchorage, AK  99501-3454
907-272-9272

Report Submitted by:

_signature_   12/6/06
Michael P. Van Bree    Date
Senior Staff Consultant

Reviewed by:

_signature_   12/6/06
George V. Karosas, P.E., CSP   Date
Senior Consultant
P.E. License Expires: November 30, 2007

[Seal: George V. Karosas, 062-036299, Registered Professional Engineer, State of Illinois]

EXHIBIT  D
PAGE  1  OF  11           700116

COLORADO    FLORIDA    ILLINOIS    LOUISIANA    MISSOURI    TEXAS

Grove (Lawrence) vs. Unocal Corporation                                      12/6/06
ESI File No. 21002A                                                     Page 2 of 9

## INTRODUCTION

At the request of Ms. Linda Johnson with the law firm of Clapp, Peterson, Van Flein, Tiemessen and Thorsness, ESI has been asked to conduct an independent engineering investigation and analysis in the matter of Lawrence, Cynthia, Sarah & Michael Grove v. Unocal Corporation. An incident involving Mr. Lawrence Grove allegedly occurred on September 9, 2002 while Mr. Grove was employed by Siemen's and was changing ventilation system air filters in the filter room at the Unocal Building. Mr. Grove claims that an elevated work platform he was using for this job gave way and resulted in him falling and being injured. At the time of the incident Mr. Grove was 49 years old (DOB 8/11/53) and weighed 170 to 180 pounds and was 5 feet 7 inches tall.

## MATERIAL REVIEWED

The following materials were presented to or obtained by ESI for consideration in the investigation of this incident. ESI also relies upon education, training, work experience and observations made during an inspection of the Unocal filter room.

Miscellaneous
- OSHA documents (Bates Nos. LG00685-LG00783, LG00782-LG00858)
- Blueprint of Unocal Penthouse
- Siemens Records and Safety Resource Manual
- Unocal contract and related documents
- OSHA reports
- Resume of plaintiff's safety expert, Sally Ann Carey
- Proposed metallurgical protocol – bolt analysis by Plaintiff's expert Dr. Joseph Balser, dated 2/16/06
- Plaintiff's response to ConocoPhillips proposed additions to bolt inspection protocol
- Transmittal documents for client's shipping subject bolts to Anamet for inspection

Court Documents
- Complaint
- Answer

Depositions
- Deposition of Lawrence Grove (Vol. I) – 11/12/04
- Deposition of Lawrence Grove (Vol. II) – 12/15/05
- Deposition of Cynthia Grove – 11/12/04
- Deposition of Michael Grove – 12/23/05

700117

Grove (Lawrence) vs. Unocal Corporation  
ESI File No. 21002A

12/6/06  
Page 3 of 9

- Deposition of Sarah Grove – 12/21/05
- Deposition of Doug Schutte with 11 Exhibits – 1/3/06
- Deposition of Tom Scanlon – 4/14/06 with Exhibits
- Deposition of John Stallone – 4/14/06 with Exhibits
- Deposition of Robert Sprinkle – 4/24/06 with Exhibits
- Deposition of Charlie Arnett – 4/26/06 with Exhibits
- Deposition of Noah Laufer, M.D. – 10/20/06 with Exhibits

Photographs
- Color photographs from site inspection – 1/24/06 by plaintiff expert, Sally Carey
- Color photograph taken by Unocal
- Color bolt photographs taken by V. Homaa- 9/2005
- Color laser copied photographs taken at site inspection on 1/24/06
- Color laser copied photographs taken by Unocal
- (12) .jpgs of subject bolt photographs taken by client (V. Homan) in September 2005
- (15) color copies of photos of the scaffolding in the Unocal Building "filter room" taken by plaintiff and reproduced from negatives

Report
- Report by Bob Carmichael – 7/29/06
- Report by Joseph Balser – 11/9/06
- Report by Lindley Manning – 11/7/06

## FINDINGS PERTAINING TO THE SCENE

On April 12, 2006 the rooftop ventilation area of the Unocal Building 909 w. 9th Ave, Anchorage, AK was inspected and documented with notes and photographs. Specifically, the filter room was identified as the location of Mr. Grove's incident. Entry into the filter room was through a 20 inch wide hinged door mounted into a sheet metal wall with the bottom of the door about a foot above the floor. The filter room is somewhat rectangular, but the corners are not square since the wall containing the door is at an angle.

Inside the door was an aisleway that extended about 16 ½ feet to the far wall of the room. The width of the aisle is tapered from just over two feet at the entry door to almost four feet wide at the far wall of the room. The left side wall ("filter wall") contains 54 paper filters that are each 20 inches square. The filters are positioned in a grid that is six filters high and nine filters wide. The paper filters covered the wall beginning roughly 42 inches above the floor and extending six rows upward, almost reaching the 14 foot high ceiling. On the right hand side of the aisle, a sheet metal plenum wall extended upward 86 ½ inches and ran the full depth of the filter room.



3    700118

Grove (Lawrence) vs. Unocal Corporation  
ESI File No. 21002A

12/6/06  
Page 4 of 9

The plenum wall is believed to form part of the ductwork for the return air from the building. The top of the ductwork extends from the plenum wall over to the right until it reaches an exterior wall. This exterior wall is roughly 8 feet away from the filter wall and contains louvers that adjust to control the amount of outside air allowed into the system. There are also adjustable louvers in the top of the ductwork controlling the building return air flow.

Information provided concerning Mr. Grove's incident indicated that he was allegedly standing on a board or boards positioned above the aisleway and was in the process of changing filters when he fell. At the time of ESI's inspection, the boards and supporting structure were no longer in position. Photographs taken after the incident were available and show that the board had been supported on two horizontal "L" shaped perforated angle sections that spanned over the aisle from the filter wall to the plenum wall. One horizontal support member was just inside the door and the second was located roughly in the middle of the 16 ½ foot wall length. The horizontal support in the middle is shown to be detached from the plenum wall side connection and angled downward into the aisleway after the incident.

Both horizontal members were attached to the plenum wall side of the aisle by using the same type of "L" shaped perforated angle material. Angle sections were vertically mounted on the plenum wall at the noted locations. The two horizontal members were positioned and attached with mechanical fasteners at each vertical support such that one side of the "L" was above the vertical angle. The horizontal member closest to the door was attached to the filter wall in the same manner just described for the plenum wall – with the use of a vertically mounted angle section. The centrally located horizontal member was attached directly into the filter wall grid work.

## OSHA INVESTIGATION

In response to a 2/25/03 complaint from Mr. Grove, an AKOSHA file was opened (Complaint Number: 201672011). Mr. Grove reported a hazard in the rooftop mechanical room – supply fan filter section – of the Unocal Building. He provided the following description of the hazard in his complaint: "Using home made non approved scaffolding. Cross support fastener sheared when stepped on causing ankle injury." He indicated that this hazard exposes 5 employees to possible injury.

According to an OSHA Inspection Narratives (Bates No. LG00702 – LG00707 for Siemens and Bates No. LG00748 – LG00753 for Unocal), an investigation was conducted by Mr. Tom Scanlon and Lee Zhao (CHSO in training). They began with an initial meeting at Siemen's on Monday March 2, 2003 with Mr. Tom Lake, HVAC Supervisor and Leverette Hoover, Operations Manager. It was agreed that they would meet again the next morning for further discussion and the report notes that "On Tuesday March 3, 2003 we completed the opening conference with Mr. Lake and Hoover".



Grove (Lawrence) vs. Unocal Corporation          12/6/06
ESI File No. 21002A                              Page 5 of 9

From the initial meeting at Siemen's on Monday March 2, 2003, the OSHA officers proceeded to the Unocal Building and met with Unocal representatives Ms. Roxanne Sinz, Manager Public Affairs and Ken Burns, Safety Advisor. The four of them went to the area in question and OSHA compliance officers took photographs and measurements. Photo negatives are not available per the OSHA Records Custodian (LG00848).

There are explicit references (Bates no. LG00703 & LG00749) to employee interviews: two from Siemen's pipefitters and five from Unocal building maintenance personnel (past and present). No witness statements, notes, or recordings exist regarding these interviews (Bates No. LG00726).

On March 5, 2003 AKOSHA determined that this was a multiple employer location and opened two inspection files: Siemens' number is 305757510 and Unocal's number is 305757577. Ultimately, a citation was issued to Siemen's, Mr. Grove's employer, as the "exposing employer". Unocal was also cited. As the owner of the building, OSHA identified Unocal as the "creating employer".

Siemens' Citation

A "Citation and Notification Penalty", dated 4/28/2003, was issued to Siemens' (beginning at Bates No. LG00689). It references OSHA 29 CFR 1910.23, titled "Guarding floor and wall openings and holes." This section applies in a general industry setting. The notification cites one "serious" violation of 29 CFR 1910.23(c)(1).

**1910.23(c)(1)**

Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a toeboard wherever, beneath the open sides,

**1910.23(c)(1)(i)**

Persons can pass,

**1910.23(c)(1)(ii)**

There is moving machinery, or

**1910.23(c)(1)(iii)**

There is equipment with which falling materials could create a hazard.

Grove (Lawrence) vs. Unocal Corporation
ESI File No. 21002A

12/6/06
Page 6 of 9

The following explanation of the violation is provided:
> "Example: An employee was working at the "Unocal Corporate office on a work platform that was four feet or more above adjacent floor or ground level that was not guarded by a rail or equivalent. Employees had worked on the platform for at least the last two years. The employee was exposed to fall hazards due to the unguarded open side platform."

A penalty of $525 was imposed on Siemens' Building Technologies Incorporated. This fine was appealed and resulted in a reduced penalty being paid.

A second citation was issued to Siemen's under 29 CFR 1910.25 which addresses the safe use of portable wood ladders in the General Industry setting. The type of violation is listed as "other" and no penalty was imposed. The specific section being violated is listed as 29 CFR 1910(d)(2)(xv).

### 1910.25(d)(2)(xv)

No ladder should be used to gain access to a roof unless the top of the ladder shall extend at least 3 feet above the point of support, at eave, gutter, or roofline;

Once again the citation is explained:
> "Example: Employees regularly use a step ladder [sic] to access a work area in the Unocal Building to replace the filters. The top of the ladder did not extend at least three feet above the point of support or roof line of the work area. Employees were exposed to potential fall hazards, as a result of the ladder not extending three feet above roof line."

### Unocal Citation

A "Citation and Notification Penalty", dated 4/30/2003, was issued to Unocal 76 Incorporated (beginning at Bates No. LG00740). It references OSHA 29 CFR 1910.23, titled "Guarding floor and wall openings and holes." This section applies in a general industry setting. The notification cites one "serious" violation of 29 CFR 1910.23(c)(1). This is the same section referenced in the Siemens citation and was previously listed.

The following explanation of the violation is provided:
> "Example: A Siemens Building Technologies Inc. employee was working at the Unocal Office on a work platform that was four feet or more about adjacent floor or ground level that was not guarded by a rail or equivalent. The employees had changed the filters at Unocal for the past four years, once every three months. Employee was exposed to fall hazards due to the unguarded open side of platform."

A penalty of $1125 was imposed on Unocal and after an appeal an agreed upon reduced fine was paid for this violation.

Grove (Lawrence) vs. Unocal Corporation
ESI File No. 21002A

12/6/06
Page 7 of 9

The AKOSHA citations include an entry regarding the "Date By Which Violation Must be Abated". Both citations indicate that the violations were "Corrected During Inspection".

## DISCUSSION AND ANALYSIS

The OSHA general duty clause directs that each employer is responsible for providing their employees a workplace free of recognized hazards. Mr. Grove was an employee of Siemens and they had a responsibility for his safety, including oversight and training. Unocal requested an updated Health, Environmental and Safety Review from Siemens in a July 20, 2000 letter. Siemens represented in the reply to Unocal (letter Appendix C) that their company safety program included annual training of employees that included classroom training and issuance of certificates. Among other representations, this document indicates fall protection training was conducted in 12/99 and Confined space was covered in 4/00. Mr. Grove's testimony contradicts this training regimen.

Also from Mr. Grove's testimony, there are telling examples of his lack of attentiveness towards his own safety just within the work being conducted in the filter room. For example, he acknowledged that he did not inspect the work platform before getting on it. Mr. Grove had an obligation to do an inspection. He also describes misusing the stepladder by using it unopened and leaning it against the wall and climbing onto the work platform in violation of the instructions.

The OSHA citation, issued to Siemens for Mr. Grove's use of the stepladder by leaning it against the wall, criticizes his failure to have three feet of ladder length extending above the access point. This three foot requirement relates to non-self-supporting ladders (single and extension), not to self supporting ladders like the stepladder Mr., Grove was using. Review of the file material shows that the OSHA investigators also used the stepladder unopened and leaned against the wall.

Another HVAC technician that worked at the Unocal building prior to Mr. Grove, Robert Sprinkle, reported changing the filters by utilizing the work platform on at least one occasion as long ago as 1992 or 1993. Mr. Sprinkle indicates that he needed to place a ladder on the platform in order to reach the uppermost filters. Placing a ladder on top of a work platform, or scaffold system is a safety violation and should not be done. Tom Scanlon, the OSHA safety enforcement officer, also acknowledged that Siemens employees were placing ladders up onto the boards in the filter room.

Consideration should also be given to the long standing contractual relationship between Siemens (and their predecessor company Landis & Gyr) with Unocal to maintain the HVAC equipment at this location. Siemens and the predecessor company had been maintaining this facility for more than eight years. The contract terms and conditions document dates back to April 1994. Paragraph 21 specifically addresses safety and calls for Siemens to perform its

Grove (Lawrence) vs. Unocal Corporation  
ESI File No. 21002A

12/6/06  
Page 8 of 9

activities in a safe manner and have and enforce safety standards. Review of the Siemens Policies addressing safety ("Injury and Illness Prevention Program") identifies several policies that were not being performed or were not being fully complied with according to the evidence. Following are some examples:

- Project Manager/Operations Supervisors are responsible for requiring that Siemens employees under their care and supervision utilize the proper individual protective equipment and job safety devices and assure that safety equipment is available. Supervisors are also to conduct safety inspections of work areas and direct corrective action for unsafe conditions and inform the Safety coordinator of inspection results. (Page 29)
- Safety harnesses are required when performing elevated work where there is no guard rail protection. (Page 32)
- Ladders are to be inspected prior to use. Straight ladders must be tied off, held or nailed down for stability. (Page 33)
- Fall protection requirements are to meet federal, state and local safety standards and include using a safety harness or proper guardrails when there is a fall exposure of six feet or more. (Page 40)
- A safe means of access to and egress from the work level must be provided. Ladders used for access/egress must be secured at top and bottom. (Page 44)
- Whenever personnel of Siemens work in non-permit space, an attendant shall be posted at the opening. (Page 89)
- There is also a fall protection program (pages 124-135) that reiterates Siemens responsibilities and further details points discussed above.

Paragraph 13.6 of the contract specifies, "Contractor (Siemens) shall keep and maintain equipment furnished by the company in good condition, at contractors expense and upon termination of use of such equipment, turn over same to company in as good condition as when received, subject, however, to ordinary wear and tear."

Additional focus on paragraph 13.7 is appropriate. It states in part, "Contractor shall examine before using all materials, equipment and supplies furnished by company for performance directed pursuant to this contract and will exercise reasonable diligence to report to company any defects therein in time to allow company to replace same without delaying operations. Again, Mr. Grove did not inspect the work platform as he should have and did not ever report any defects or request maintenance or repair from Unocal during his four plus years changing out filters. He seemingly ignored his own understanding that he was not working in a safe manner based on stating in his OSHA complaint that he was "Using home made non approved scaffolding".

During investigation of the complaint filed after the incident by Mr. Grove, OSHA made a determination that Unocal was the "creating employer" of a hazard. As the name implies, this is the employer that caused a hazardous condition that violates an OSHA standard to occur. No



Grove (Lawrence) vs. Unocal Corporation  
ESI File No. 21002A

12/6/06  
Page 9 of 9

depositions of Unocal employees from the present or recent past have been seen that indicate Unocal knew anything about the presence of an elevated work surface, ever had their employees' use the work platform or played any part in the design, fabrication or maintenance of the work platform within the filter room. If any hazard was created, Mr. Grove and other Siemens employees were the only ones identified as using the work platform, so they would be the ones creating the hazard.

## CONCLUSIONS/OPINIONS

The opinions and conclusions expressed throughout this report, including those articulated below are stated within a reasonable degree of scientific probability:

- There is no direct evidence that identifies the person or entity that designed or constructed the work platform located in the filter room.

- As is discussed in another report issued by Mr. Charles Morin, the metallurgical evidence shows that the work platform connections were structurally sound at the time of Mr. Grove's incident. The failures observed are consistent with a dynamic overload to the structure.

- Climbing equipment and working surface safety standards routinely specify that product designs incorporate a factor of safety of 3 or 4. This means products intended to carry users and their equipment must support without failure a static load that is multiple times what is being applied to them. Analysis by ESI confirms that the subject work platform support fasteners exceeded this requirement.

- Mr. Grove failed to exercise reasonable care when he failed to inspect the work platform he was using.

- Unocal could reasonably expect Siemens, as an experienced HVAC Maintenance Contractor, to perform work in a safe manner and promptly notify Unocal of any hazards in order to allow Unocal to correct them.

- There is no evidence that Unocal employees were required to perform any work tasks in the filter room or had any reason to use the work platform.

ESI reserves the right to supplement its findings in this matter, based upon further work performed by ESI, including but not limited to review of further discovery, testing or analysis. The CV of Michael P. Van Bree and a listing of testimony offered during the last four years is attached for reference. Work performed by Mr. Van Bree is billed by ESI at $210 per hour.

<<< END OF REPORT >>>



3851 Exchange Avenue
Aurora, Illinois 60504

Phone: (630) 851-4566
Fax: (630) 851-4870
esi-website.com

## MICHAEL P. VAN BREE
## SENIOR STAFF CONSULTANT
## ILLINOIS OFFICE

Mr. Van Bree is a Senior Staff Consultant at Engineering Systems Inc. (ESI), a professional engineering firm and laboratory headquartered in Aurora, Illinois. ESI is a multidisciplinary company that provides professional engineering services to a variety of clients, such as, industrial, legal, and insurance firms, government agencies and trade organizations and acts as consultants to other engineering firms. Laboratory capabilities are supplemented by cooperative agreement with other recognized facilities to provide a wide range of technical support capabilities, including metallurgical, materials, aeronautical, mechanical, biomechanical, structural, electrical, safety, automotive and audio/visual services. Projects ranging from simple failure investigations to complex engineering studies are undertaken.

Mr. Van Bree is a mechanical engineer with 20 years industrial experience designing, manufacturing, testing and analyzing mechanical and electromechanical systems. He has conducted engineering analyses, tolerance analyses utilizing geometric dimensioning and tolerancing techniques, hazard analyses and mechanical testing of new products and has managed development programs producing products for mass-merchandizing through national retail stores. He has developed product warnings, written instruction manuals, developed safety standards and assured compliance with ANSI and OSHA standards.

Mr. Van Bree has performed over a hundred incident investigations, including product and site inspections, human factors and ergonomics evaluations, mechanical and failure analysis, product testing and reconstruction. He has provided reports and expert testimony in deposition and at trial regarding product design, product safety, accident investigations and reconstruction.

### Areas of Specialization

Product design and safety analysis
Mechanical engineering and testing
Human factors and ergonomics
Accident analysis and reconstruction
Failure analysis and reliability

### Education

Bachelor of Science in Mechanical Engineering, May 1986
Purdue University – West Lafayette, Indiana

**700110**

January 2006

COLORADO    FLORIDA    ILLINOIS    LOUISIANA    MISSOURI    TEXAS

**Professional Affiliations**

American National Standards Institute (ANSI)

Member - ANSI ASC A14.2 subcommittee on safety requirements for portable metal ladders
Member - ANSI ASC A14.5 subcommittee on safety requirements for portable reinforced plastic ladders
Member - ANSI ASC A14.7 subcommittee on safety requirements for mobile ladder stands
Member - ANSI ASC A14.8 subcommittee developing proposed safety requirements for ladder accessories
Member - ANSI ASC A14.9 subcommittee developing proposed safety requirements for attic ladders
Member - ANSI ASC A14.11 subcommittee developing proposed safety requirements for stepstools
Member - ANSI ASC A14.2 subcommittee task force reviewing articulated ladder testing requirements
Member - ANSI ASC A14 task force reviewing labeling/marking requirements for ladders

**Engineering Positions Held**

Engineering Systems Inc., Aurora, Illinois
    Senior Staff Consultant, 2004

Louisville Ladder Group LLC, Louisville, KY
    Product Safety Engineering Manager/Officer, 2002 – 2004
    Product Safety Engineer/Officer, 1996 – 2002
    Product Design Engineer, 1993 – 1996

Special Products Division of Emerson Electric, St. Louis, MO
    Engineering Specialist, 1989 – 1992

Robinson Nugent Inc., New Albany, IN
    Product Design Engineer, 1986 – 1989

**Presentations / Publications**

"A Fiberglass Reinforced Plastic Case Study – A Focus on the Importance of Joint Testing Protocols in Current Forensic Practice,"
    C. R. Morin, D. E. Alexander, M. P. Van Bree, presented (by C. R. Morin) at the Failure Analysis Symposium, 2004 Materials Solutions Conference, ASM International, Columbus, OH, October 19, 2004

Ladder Safety Training to numerous end users and safety trainers throughout industry and construction.


esi-website.com