Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE; CYNTHIA
GROVE; SARAH GROVE; and
MICHAEL GROVE (DOB 1/21/88)
by and through his father
LAWRENCE H. GROVE,

    Plaintiffs,

    vs.                     Case No. A04-0096 CV (TMB)

UNOCAL CORPORATION,

    Defendant.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

DEPOSITION OF LINDLEY MANNING, P.E.

OAKLAND, CALIFORNIA

AUGUST 14, 2007

Reported by Susan F. Magee, RPR, CLR, CSR No. 11661

EXHIBIT E
PAGE 1 OF 2

Lindley Manning, P.E.                                     August 14, 2007

Page 26

1  by familiarity breeds contempt?
2       MR. COHN: Objection. Foundation.
3       THE WITNESS: Well, you know, when you --
4       MR. COHN: Form.
5       THE WITNESS: -- start getting into cliches and
6  old sayings, I don't know what to say about them. I
7  mean, that -- it is what it is. It's a cliche, so do
8  what you want with it. I don't know.
9       BY MR. THORSNESS: Q. Had Mr. Grove taken a
10 moment to reach up, give that joint a good shake, would
11 you expect he would have been able to ascertain that
12 that joint was loose?
13      A. That --
14      MR. COHN: Objection. Speculation.
15      THE WITNESS: That joint has to speak
16 specifically to the one that came apart, and it would
17 have been loose and detectable to the appropriate person
18 doing the appropriate inspection. Whether that was this
19 man or not I don't know, but it had to have been
20 substantially loose.
21      BY MR. THORSNESS: Q. And detectable by simply
22 giving it a good shake?
23      A. Well, probably by looking --
24      MR. COHN: Objection. Speculation.
25      THE WITNESS: -- at it. Either the bolts were

Page 27

1  gone or they were ready to fall out, and it -- had you
2  looked and had adequate light and gone to the right
3  place and done it, you know, it should have been
4  discoverable.
5       BY MR. THORSNESS: Q. So a simple visual
6  inspection, it might well have revealed that that joint
7  was loose?
8       A. Maybe.
9       MR. COHN: Objection. Speculation.
10      BY MR. THORSNESS: Q. And then secondly in
11 addition to following a visual inspection, if a person
12 reached up and gave it a good shake, that would confirm
13 that the joint was loose, wouldn't it?
14      MR. COHN: Objection. Speculation.
15      THE WITNESS: Yeah, but this falls in about the
16 same category as going out and checking your wheel nuts
17 every morning before you drive off. I've seen a lot of
18 wheels fall off, and I don't know that I've ever known a
19 driver other than in Indianapolis to check the wheel
20 nuts before they go out on the track, but ...
21      BY MR. THORSNESS: Q. Did you perform any
22 calculations, Mr. Manning?
23      A. No.
24      Q. Were there any you wanted to perform but you
25 didn't?

Page 28

1       A. No.
2       Q. Did you consult any learned treatises as -- to
3  form the basis of any of your opinions?
4       A. Not specifically for this. I mean, I taught
5  machine design for 20 years. This fell in that
6  category. It's so simple, so straightforward. It's
7  something elementary to an engineer. Maybe not to a
8  lawyer.
9       Q. So you didn't make any calculations concerning
10 the shear strength of these machine screws?
11      A. No, because I had no doubt that they would have
12 been adequate if they had been tight. The thing lasted
13 a number of years anyway. That's proof. Your man --
14 forget his name -- Morin or something like that --
15      Q. Yes.
16      A. -- may have did it. Well, I saw nothing wrong
17 with what he did. It looked like just turning a crank
18 and wasting time on the obvious. But again, I'm an
19 engineer, not a lawyer. But this was -- I had no doubt
20 going in that the original strength of the bolts would
21 have been adequate to resist the load.
22      Well, simple proof is that the thing lasted for
23 quite a number of years, and people climbed all over it
24 and it --
25      Q. Yes.

Page 29

1       A. -- didn't break until it had deteriorated, as
2  would be expected to happen.
3       Q. Yes. You're no doubt familiar with something
4  called clamping strength?
5       A. Sure.
6       Q. And do you remember reading in Mr. Morin's
7  report his discussion of the role of clamping strength
8  in the strength of these joints?
9       A. Well, this is a common concept in bolted
10 joints. Now, I taught bolted joints. I had models
11 showing -- what most people don't realize is that a
12 bolted joint is a compilation of springs. The bolt
13 itself is a spring; it stretches. The connected parts
14 are springs; they compress.
15      Q. Right.
16      A. You go through and do the strength or the
17 deformation calculations and all of that which are done
18 for high performance joints with regularity. But so
19 what? You're -- we've got square nuts which are almost
20 certainly going to come loose almost all of time. You
21 know, if you've ever worked with old wood stoves, the
22 door's a little loose when you go to close it. It's got
23 steel bolts which these are. They -- those square nuts
24 loosen up. They are really not even good for package
25 shelves. They're light-duty stuff that you just