## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA
GROVE, SARAH GROVE, and, MICHAEL
GROVE (DOB 1/21/88) by and through his
father LAWRENCE H. GROVE,

               Plaintiffs,

      v.

UNOCAL CORPORATION,

               Defendant.

3:04-CV-00096-TMB-DMS

**INITIAL REPORT AND
RECOMMENDATION RE:
PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO
DEFENDANT UNOCAL'S LIABILITY
FOR NEGLIGENCE, PUNITIVE
DAMAGES AND ALLOCATION OF
FAULT
[DOCKET 160]**

### I. MOTION PRESENTED

At docket 160, plaintiffs requested partial summary judgement pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  Specifically, plaintiffs requested this Court to grant summary

judgment in their favor on three matters: 1) defendant's liability for negligence in relation to the

accident at issue in this case; 2) defendant's liability for punitive damages in relation to the

accident at issue in this case; 3) and defendant's inability to allocate fault to Mr. Larry Grove and

Mr. Grove's employer, Siemens Building Technologies, Inc. (hereafter Siemens).  Plaintiffs

argued that summary judgment is appropriate because there are no genuine issues of material fact

for these three issues and they are entitled to judgment on these three issues as a matter of law.

Additionally, plaintiffs argued that summary judgment is appropriate because defendant

destroyed the work platform at the center of this case.

The defendant, Unocal Corporation (hereafter Unocal), filed an opposition to this motion

at docket 178.  Defendant Unocal argued that there are genuine issues of material fact regarding

1

the negligence claim and that plaintiffs are not entitled to summary judgment on punitive damages or summary judgment prohibiting it from allocating fault to Siemens or Mr. Grove.

An oral argument was held on this motion on February 13, 2008.  At the hearing, this Court permitted supplemental briefing on the issues and permitted certain supplemental evidence into the record, including photos of the accident location, two safety reports found by Unocal subsequent to the briefing filed on this motion, an affidavit from Unocal's counsel regarding representation of Siemens, and the Services and Drilling Master Contract dated April 18, 1994, which is one of the agreements governing the duties and relationship between defendant Unocal and Siemens.

## II.  STATEMENT OF UNDISPUTED FACTS

The underlying case stems from an injury sustained by Mr. Larry Grove.  Mr. Grove worked for Siemens.  According to the complaint, Siemens had a contract with defendant Unocal to conduct certain maintenance functions, such as servicing the heating, ventilating, and air conditioning system, in defendant's Anchorage building (Doc.2, Tab 1 at 2).  There were two contracts governing the duties and relationship between defendant Unocal and Siemens.  The first contract, entitled "Services and Drilling Master Contract" (hereinafter Master Contract), was executed in 1994 between Unocal and Landis & Gyr Powers Inc., which Siemens assumed when it acquired Landis (Doc. 295-2 at 13).  The second contract, entitled "Unocal Technical Support Program Proposal" (hereinafter Technical Support Contract), was executed in 2000 between Unocal and Siemens (Doc. 295-2 at 1).  Based on section 4 of the Technical Support Contract, in the event of a conflict between the two documents, the Master Contract superceded the Technical Support Contract (Doc. 295-2 at 9).

2

The Master Contract contained indemnity provisions in sections 6.1 and 6.2. In these provisions each party agreed to indemnify the other party for any claims arising out of or in connection with injuries of their own employees regardless of the other party's negligence (Doc. 295-2 at 13).

Every three or four months, as part of the building maintenance contracts, a Siemens' employee changed the air filters inside defendant's Anchorage building. Mr. Grove began working for Siemens in 1999 (Doc. 178-3 at 4) and was often the Siemens employee assigned to change the air filters in Unocal's building (Doc. 178-3 at 7).

According to the complaint, in September 2002, Mr. Grove was changing the air filters inside the defendant's building. The air filters were located in a room on the penthouse level of the Unocal Anchorage building. He was using a work platform that consisted of a plank that was held up by brackets fastened to the wall with bolts (Doc. 295-9). The platform was roughly eight feet off the ground (Doc.2, Tab 1 at 3). The platform collapsed, and Mr. Grove fell from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2). He immediately called the maintenance supervisor in the building, Mr. Charles Arnett (Doc. 178-3 at 8). There is nothing in the record to indicate that Mr. Arnett or Mr. Grove told anyone else at Unocal about the accident. In fact, Mr. Arnett stated in his deposition that he did not remember telling anyone at Unocal about the accident ( Doc. 178-7 at 4).

Five months later, in March of 2003, the Occupational Health and Safety Administration (hereinafter OSHA) came to Unocal's Anchorage building to look into a complaint about the work platform in the air filter room. The platform was back up at the time of the OSHA inspection (Doc. 160-6; Doc.160-5). OSHA did not make a determination regarding the cause of

3

Mr. Grove's accident (Doc.178-9 at 5); rather, OSHA issued a citation to both Unocal and Siemens for the platform as it existed at the time of the inspection because the platform did not have the proper railings and toeboards on its open sides (Doc. 160-6 at 1). OSHA determined that Unocal was the employer that created the hazard, based on the fact that the platform appeared to have been there for many years and that it was put up again after Mr. Grove's accident without proper railings (Doc. 178-9 at 6). OSHA determined that Siemens was the employer exposing employees to the hazard (Doc 178-9 at 4). In order to abate the violation, Unocal removed the platform (Doc. 160-6 at 14). OSHA considered removal of the platform a proper abatement of the violation (Doc. 178-12 at 3).

Mr. Grove filed his complaint against defendant Unocal a year later, in April of 2004. In his complaint, Mr. Grove claimed that Unocal's negligence caused him to fall and injure his ankle and requested damages (Doc. 2, Tab 1). Mr. Grove's family members are also plaintiffs in this matter with distinct claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on Mr. Grove's ankle injuries (Doc. 2, Tab 1).

## III.  ANALYSIS

### A.  Summary Judgment Standards

Unocal removed this case from Alaska state court to the Federal District Court for the District of Alaska. This Court has diversity jurisdiction. In diversity cases such as this, federal courts are to apply the forum state's substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). Therefore, Alaska law governs the underlying negligence, punitive damages, and allocation of fault determinations.

4

While state law governs the underlying substantive issues in diversity cases, federal law governs procedural aspects for summary judgment.  See Ceasar Elec. Inc. v. Andrews, 905 F.2d 287, 289 n. 3 (9th Cir. 1990) (stating that "federal law governs the procedural aspects of summary judgment in a diversity case"); Bank of California, N.A. v. Opie, 663 F.2d 977, 979 (9th Cir. 1981) (stating that "federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact"); Bell Lavalin Inc. v. Simcoe & Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995).  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The inquiry at the summary judgment stage is a threshold determination about whether or not a trial is needed—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The initial burden of showing that there are no factual issues for trial is on the moving party.  Semegen v. Weidner, 780 F.2d 727, 732 (9th Cir. 1986).  Once the moving party has met this initial burden, to avoid summary judgment, the non-moving party must counter with facts that reveal a genuine factual dispute.  Id.  After the facts have been presented, under federal summary judgment standards, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254.  Summary judgment is not appropriate if the judge determines that the jury could find for either party given the standards of proof—that is to say, the judge must determine that a reasonable jury could find either that the party with the burden of proof at trial proved his or her case by the quality and quantity of

5

evidence required by the governing law *or,* conversely, that the party with the burden of proof at trial failed to prove his or her case given the required standard of proof. Id.

While the judge must take into account the applicable evidentiary burden during a summary judgment determination, the judge does not weigh conflicting evidence or make credibility determinations about the evidence submitted. Id. at 255. Instead, the judge must view the evidence in a light most favorable to the non-moving party, meaning that direct evidence from the non-moving party is to be believed and all justifiable inferences are to be drawn in the non-moving party's favor. Id.; T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from undisputed background or contextual facts or from underlying facts that may be disputed based on direct evidence but that the judge has properly resolved in favor of the non-moving party for purposes of summary judgment proceedings. T.W. Elec. Serv., 809 F.2d at 631 (9th Cir. 1987). Inferences based on this type of circumstantial evidence must be reasonable. Id. See also McLaughlin v. Liu, 849 F.2d 1205, 1207-08 (9th Cir. 1988) (discussing the differences between direct evidence and circumstantial evidence in relation to summary judgment standards).

**B. Negligence**

Under Alaska law, a negligence claim requires a plaintiff to prove four elements in order for a defendant to be liable–duty, breach of duty, causation, and harm. Lyons v. Midnight Sun Transp. Serv., Inc., 928 P.2d 1202, 1204 (Alaska 1996). Based on federal summary judgment standards set forth above, in order for this Court to grant summary judgment in favor of plaintiffs on the issue of Unocal's negligence, plaintiffs must show that there are no disputed material facts regarding: 1) Unocal's duty in relation to the platform; 2) Unocal's breach of that duty; 3) the

6

breach of that duty being the cause of the accident; and 3) the resulting harm.

### 1. Duty and Breach of Duty

This Court has considered the various ways defendant could owe a duty of care to

Mr. Grove in relation to the platform and, based on the record before it, has determined there are

disputed facts about whether defendant had a duty in relation to the platform and whether the

defendant breached that duty. First, if Unocal constructed the platform, it would have owed Mr.

Grove a duty of care in relation to that platform.  Under Alaska law an employer of a

subcontractor, such as defendant Unocal, generally owes no duty to the subcontractor's

employees, such as Mr. Grove, to protect them from negligence of the subcontractor.  Moloso v.

State, 644 P.2d 205, 210 (Alaska 1982).  However, the employer of a subcontractor does owe a

duty to the subcontractor's employees to protect those employees from its own negligent actions,

such as constructing an unsafe work platform.  Id.  In this situation, however, plaintiffs have not

shown the court direct evidence that Unocal designed or constructed the work platform.  While

there is indirect evidence to suggest that Unocal erected the platform, such as the fact that the

platform looked like had been in place for a long time (Doc. 160-3 at 4; Doc. 160-3 at 6-7) and

that Unocal's management had to approve all structures or construction in the building (Doc.

160-4 at 5), this evidence does not preclude the possibility that a prior subcontractor or a

subcontractor's employee put up the platform without permission.  Because this Court must draw

any justifiable inferences in favor of Unocal, this Court concludes that there are factual disputes

regarding who constructed the platform.

Second, if defendant Unocal assumed affirmative duties related to Siemens' access to the

air filters, Unocal owed a duty of care to Mr. Grove in relation to that platform. The employer of

7

a subcontractor owes the subcontractor's employees affirmative duties with respect to safety if

that employer has retained sufficient control over any part of the work to be performed or

conducted by the subcontractor's employees.  Moloso, 644 P.2d at 210.  In this situation, there is

an issue of fact regarding whether or not Unocal assumed a duty under the contracts between

Unocal and Siemens to provide a safe work platform or other means of access to the higher air

filters.  Plaintiffs argued that section 6.3 of the Technical Support Contact placed an affirmative

duty on defendant Unocal to provide access to the air filters and that the platform was

presumably the method of access Unocal provided.[1]  Plaintiffs argued that Unocal retained

control over safety related to accessing the air filters and therefore had a duty to Mr. Grove.

Unocal countered that section 13 of the Master Contract placed the duty on Siemens for safety of

Siemens' employees and required Siemens to maintain and examine any equipment supplied by

Unocal.[2]  It further argued that based on section 4 of the Technical Support Contract (Doc. 160-4

at 15), the Master Contract controls in the event of a conflict between the two documents.  This

Court finds that these contracts are susceptible to varying interpretations and that it would be

---

[1] Section 6.3 of the Technical Support Contract states: "[Unocal] will provide [Siemens] with reasonable means of access to the Equipment and shall make any necessary provisions to reach the Equipment and peripheral devices. [Unocal] will be solely responsible for any removal, replacement or refinishing of the building structure of finishes that may be required to gain access to such Equipment." (Doc. 160-4 at 17).

[2] Section 13.1 of the Master Contract states: "...[Siemens] is an independent contractor, with the authority to control and direct the performance and safety of the details of the work ..."
     Section 13.6 states: "...[Siemens] shall keep and maintain equipment furnished by [Unocal] in good condition, at [Siemens'] expense and upon the termination of the use of such equipment, turn over same to company in as good condition as when received, subject, however, to ordinary wear and tear."
     Section 13.7 states: "...[Siemens] shall examine before using all materials, equipment and supplies furnished by [Unocal] for performance directed pursuant to this Contract, and will exercise reasonable diligence to report to [Unocal] any defects therein in time to allow [Unocal] to replace same without delaying operations ..."

within the province of the jury to reasonably conclude Unocal retained control over safety related to access of the air filters; however, the jury could also reasonably conclude Siemens accepted that responsibility in the Master Contract.

Even assuming that Unocal constructed the platform or retained control over Siemens' access to the air filters, there is a genuine issue of fact regarding whether Unocal breached its duty of care. While plaintiffs presented evidence from its experts showing that the platform was a safety hazard and improperly designed (Doc. 160-2), Unocal countered this evidence with a report from its own expert concluding that the platform was sufficient to hold a total weight six times Mr. Grove's weight (Doc. 178-5 at 5). Therefore, this Court finds that there are factual issues regarding the design and the construction of the platform that should be presented to and decided by a jury.

Finally, as the owner of the building, Unocal may have owed Mr. Grove a duty of care to protect him against hazards, regardless of whether Mr. Grove was a subcontractor's employee. Under Alaska law, the liability of a landowner is no longer determined by the status of the person entering the property (invitee, licensee etc.). Webb v. City and Borough of Sitka, 561 P.2d 731, 733 (Alaska 1977). Instead, simple principles of negligence apply and "[a] landowner must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk." Id. Therefore, in order for Unocal to be negligent in relation to the platform under general landowner duties, its actions or omissions must be unreasonable.

Based on the record, plaintiff put forth evidence of omissions on the part of Unocal. The

record indicates that since construction of the building in 1969 only two safety inspections were conducted before Mr. Grove's accident in 2002 (Doc. 160-2 at 19; Doc. 295-10; Doc. 295-11). Ken Burns, the Unocal employee who conducted the inspections, could not remember if he inspected the penthouse level of Unocal's building and did not recall seeing the air filter room or the platform (Doc. 160-3 at 3). His reports from the inspections were undiscovered at the time of his deposition. He testified that if he would have seen the platform during the inspection he would have considered it a hazard (Doc. 160-3 at 3). Mr. Burns's safety reports were found in Unocal's files after the deposition. These reports indicate that Mr. Burns inspected the penthouse level of the building. However, the reports do not indicate whether or not he went into the air filter room, because there is no documentation about the room or the platform in the reports (Doc. 295-10; Doc. 295-11). Of the depositions submitted to this Court, no one working for or with Unocal remembers seeing the platform before Mr. Grove's accident. The maintenance supervisor for the building at the time of the accident, Mr. Charlie Arnett, testified that he did not recall seeing the platform before Mr. Grove's accident (Doc. 178-7 at 3). Mr. Archie Cook, the human resources manager at the time of the accident, testified that he had been in the air filter room but did not remember seeing the platform (Doc. 178-6 at 5).

If these omissions on the part of Unocal and its employees were unreasonable, then Unocal may have breached its duty as a landowner. However, whether Unocal's lack of knowledge about its own building and lack of regular safety inspections of the air filter room amounted to unreasonable conduct is not for this Court to decide in a summary judgment motion. Plaintiffs do not cite to Alaska case law, and this Court could not find any, to support a conclusion that a failure to inspect all portions of a building amounts to *per se* negligence.

Furthermore, determinations about what level of care is reasonable in light of the circumstances are generally not susceptible to summary determination but should be resolved by a jury. Webb, 561 P.2d at 735. See also Arney v. United States, 479 F.2d 653, 660 (9th Cir. 1973) (quoting Roucher v. Traders & Gen. Ins. Co. 235 F.2d 423, 424 (5th Cir. 1956)) (recognizing that issues of negligence are ordinarily not susceptible of summary adjudication).

This Court, reviewing the evidence in favor of the non-moving party, finds that reasonable minds could differ on the issue of Unocal's negligence given the uncertainty regarding who erected the platform; Mr. Grove's status as a subcontractor employee; contractual ambiguities regarding whether Unocal assumed affirmative duties in relation to subcontractor Siemens' employees; the conflicting expert evidence regarding the adequacy of the design of the platform; and questions regarding reasonable conduct for building owners, and what constitutes unreasonable omissions by building owners.[3]

## 2. Causation

Even if it were clear that defendant Unocal had a duty regarding the platform and breached that duty, summary judgment on the issue of negligence is still inappropriate because

---

[3] Plaintiffs made a reference to the doctrine of *res ipsa loquitur* in their reply brief and plaintiffs' counsel mentioned the doctrine during oral argument. This Court notes, however, that under Alaska law, and based on the current record, the doctrine of *res ipsa loquitur* does not apply. The doctrine acts as a "'bridge, dispensing with the requirement that a plaintiff specifically prove  breach of duty, once that duty and proximate case have been established.'" State Farm Fire & Cas. Co. v. Municipality of Anchorage, 788 P.2d 726, 730 (Alaska 1990) (quoting Widmyer v. Se. Skyways, Inc., 584 P.2d 1, 10 (Alaska 1978)). It can be applied when the accident is one which ordinarily does not occur in the absence of negligence, the instrumentality at issue is within the exclusive control of the defendant, and the injurious condition was not due to any voluntary action or contribution on the part of the plaintiff. Id. As explained in this report, this Court finds that there are genuine material issues of fact regarding duty and causation. Furthermore, the platform is not within the exclusive control of the Unocal since Mr. Grove and other Siemens' employees had access to and used the platform regularly and, as stated below, there is no direct evidence to demonstrate that Unocal was the only party who could have erected the platform.

there are genuine issues of material fact regarding causation. Defendant Unocal put forth evidence that the collapse of the platform was not caused by improper design and construction or poor maintenance but by a one-time dynamic load, meaning something heavy was dropped or fell onto the platform (Doc. 178-5 at 5). Therefore, viewing the evidence in favor of Unocal, this Court finds that there is a dispute about what caused the platform to collapse. Based on plaintiffs' experts, a reasonable juror could find that the wrong nuts and bolts were used, causing the collapse of the platform (Doc. 160-2). Conversely, based on Unocal's experts, a reasonable juror could find that something heavy was dropped onto the platform, causing the collapse of the platform (Doc. 178-5). Because of the conflicting direct evidence in the record regarding causation, the determination of negligence must be left to the jury.

## C.  Punitive Damages

In a diversity jurisdiction action, the propriety and amount of punitive damage are determined by state law. Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). Alaska Statute § 09.17.020 addresses when and how punitive damages can be awarded. Punitive damages can be awarded to the plaintiff only if the plaintiff proves by clear and convincing evidence that the defendant's conduct was "outrageous, including acts done with malice or bad motives" or "evidenced reckless indifference to the interest of another person." AS § 09.17.020.

As explained above, this Court believes that there are genuine issues of material fact surrounding the platform. These issues include who erected it, the Unocal's duties in relation to the platform, whether those duties were properly discharged and what caused the collapse. These same factual issues cause this Court to find that summary judgment on the issue of punitive

damages is also inappropriate. Because this Court finds that the determination of whether or not Unocal's actions or omissions rise to the level of negligence is a question for the jury, it must necessarily find that the determination of whether or not these same actions or omissions rise to the level of outrageous behavior or reckless indifference must be left to the jury.

Based on the punitive damage standards of "outrageous" conduct or "reckless indifference," whether punitive damages are warranted could also depend on the extent to which defendant Unocal knew about the platform or tried to avoid knowledge about the platform. As Unocal pointed out in its opposition, based on the current record in front of the court, there are genuine issues of material fact regarding the extent of its knowledge about the existence of the platform. Mr. Grove stated in his deposition that he remembers Mr. Arnett handing him filters while he was standing on the platform (Doc. 178-3 at 7). However, Mr. Arnett testified in his deposition that he does not recall ever seeing the platform (Doc. 178-7 at 3). No other person from Unocal (or working under the control of Unocal) recalled knowing about the platform prior to the accident. For this summary judgment motion, this Court must view the evidence in favor of Unocal, the non-moving party. Therefore, this Court finds that there are factual disputes regarding the nature of Unocal's conduct and/or omissions that should be resolved by the jury.

Indeed, while not withdrawing the argument altogether, plaintiffs' counsel acknowledged during the oral argument that the issue of punitive damages could be a proper issue for the jury.

**D. Allocation of Fault**

   **1. Allocation of Fault to Siemens**

In this motion for summary judgment, plaintiffs requested this Court to prohibit Unocal from allocating any fault to Siemens. Plaintiffs argued that for public policy reasons, Unocal

13

should not be able to shift any portion of the fault for the accident to Siemens under Alaska Statute § 09.17.080. Under this statute, if an action involves the fault of more than one person or entity, a jury must make findings that indicate what percentage of the total fault is allocated to each plaintiff, defendant, third-party defendant, or other person responsible for the damages. AS § 09.17.080(a)(2). The court then enters judgment against each party found liable on the basis of several liability in accordance with that party's percentage of fault. AS § 09.17.080(d). Joint and several liability is not recognized in Alaska. See Robinson v. Alaska Properties & Inv., Inc., 878 F. Supp 1318, 1322 (D. Alaska 1995); Fancyboy v. Alaska Village Elec. Co-op, Inc., 984 P.2d 1128, 1133 n.8 (Alaska 1999).

As plaintiffs acknowledged in their briefing, AS § 09.17.080 allows a defendant to shift fault to the plaintiff's employer, even though the plaintiff's employer cannot be found liable to its employee in tort actions under AS § 23.30.055. Under AS § 23.30.055, a plaintiff's only remedy against his or her employer is a worker's compensation claim. See 1997 Alaska Session Laws Ch. 26 (H.B. 58) §1(7) (stating that the 1997 amendments to the apportionment of damages statute were intended to ensure that a defendant does not have to pay the portion of fault allocated to an employer and to overrule Lake v. Constr. Mach., Inc., 787 P.2d 1027 (Alaska 1990)). Therefore, if Unocal shifts fault to Siemens during trial and the jury allocates a percentage of fault to Siemens under § 09.17.080, plaintiffs cannot recover those tort damages that are allocated to Siemens and Unocal only pays damages in accordance with its allocated percentage of fault.

Plaintiffs argued that when the statute is coupled with an indemnity agreement between the defendant and an employer, such as in this case, the employer has incentive to assist the

14

defendant in placing blame on itself to lower the fault of the defendant and ultimately reduce what it pays the defendant based on the indemnity agreement. This, plaintiffs argued, is against public policy because it counters the statute's presumption that the potential tortfeasors will seek to minimize their own fault.

Plaintiffs did not present enough support for this Court to find that they are entitled to judgment on this issue as a matter of law. First, the plaintiffs did not provide any citations to support its argument that the indemnity agreement coupled with the apportionment statute is against public policy. The only clear law on this issue is that under Alaska law a defendant can allocate fault to a non-party employer. Based on the legislative history of the apportionment statute, the statute allows the defendant to put fault on the plaintiff's employer even though that employer cannot be a defendant in the tort lawsuit and plaintiff cannot recover from that employer under the tort lawsuit under AS § 23.30.055. Second, the plaintiffs did not present any evidence that Siemens has or will improperly accept all fault for the platform. Third, while plaintiffs argued that Siemens and Unocal have joint counsel and are in collusion, Unocal's counsel, with permission of this Court, supplemented the record with an affidavit verifying that it does not jointly represent Siemens in this matter.

This Court finds that there are genuine issues of material facts regarding Siemens' fault to preclude summary judgment on the matter. Plaintiffs present testimony from a building manager that nothing could be constructed in the building without permission from Unocal's management (Doc. 160-4 at 5) and therefore plaintiffs argue that Unocal must have known about and approved of the platform. However, as Unocal points out, there is no documentation or direct evidence that Unocal approved of the platform. While the plaintiffs' evidence could lead a jury

15

to conclude that Unocal constructed the platform, that same evidence could suggest that someone other than Unocal built the platform without permission.

Drawing all inferences in favor of the non-moving party, this Court finds that summary judgment on the issue of Siemens' fault is inappropriate and that the issue of fault should be determined by a jury after all the evidence is presented.

### 2. Allocation of Fault to Mr. Grove

Plaintiffs also requested this Court to prohibit Unocal from allocating any fault to Mr. Grove. Under Alaska Statute § 09.17.060, any fault on the part of the plaintiff does not bar recovery but rather it proportionally reduces in the amount of compensatory damages awarded to the plaintiff. AS § 09.17.060.

The record shows that there are issues of fact related to the level of care Mr. Grove exercised. While plaintiffs put forth evidence to support their argument that Mr. Grove was not negligent and was not aware that the platform was unsafe, Unocal also presented some evidence to counter that argument and create an issue of fact regarding negligence on the part of Mr. Grove. As Unocal pointed out in its briefing, if the platform was a clearly identifiable hazard, as plaintiffs argued, based on the testimony of Ken Burns, there is an issue about whether or not Mr. Grove should have stepped on the platform. Mr. Grove testified that he did not check the platform before stepping on it (Doc. 178-3). But another Siemens' employee that changed filters in the Unocal building , Mr. Robert Sprinkle, testified that while he assumed the platform was safe, he would check it out and make sure it felt okay (Doc. 160-3 at 6).

Again, negligence involves determinations of reasonable levels of care. Such determinations about what level of care is reasonable in light of the circumstances are generally

not susceptible to summary determination but should be resolved by a jury.  Webb v. City and

Borough of Sitka, 561 P.2d 731, 735 (Alaska 1977). See also Nat'l Bank of Alaska v. McHugh,

416 P.2d 239, 242 (Alaska 1966) (stating that whether or not a plaintiff exercised proper care for

his own safety was a question as to which there was room for diversity of opinion among

reasonable men);  Arney v. United States, 479 F.2d 653, 660 (9th Cir. 1973) (quoting Roucher v.

Traders & Gen. Ins. Co. 235 F.2d 423, 424 (5th Cir. 1956)) (recognizing that issues of negligence

are ordinarily not susceptible of summary adjudication).

Furthermore, Unocal's expert sets forth evidence that the platform collapse was cause by

a dynamic overload (Doc. 178-5 at 5).  This presents the possibility that a reasonable jury could

find that Mr. Grove dropped something heavy on the platform or fell down onto the platform.

This Court finds that summary judgment regarding the issue of fault on the part of

Mr. Grove is unwarranted.  A jury should decide the matter after hearing all the facts.

## E. Spoliation of Evidence

Plaintiffs argued that summary judgment is appropriate as a sanction against Unocal for

spoliation of the evidence.  This Court finds that Unocal did not commit spoliation of evidence to

warrant sanctions.  Plaintiffs are not bringing a tort claim against Unocal for intentional

spoliation of evidence under state law.  See Hazan v. Municipality of Anchorage, 718 P.2d 456

(Alaska 1986) (recognizing a tort claim for intentional spoliation of evidence); Nichols v. State

Farm Fire & Cas. Co., 6 P.3d 300, 304 (Alaska 2000) (stating that Alaska only recognizes a tort

claim for intentional destruction of evidence and not negligent spoliation of evidence).  Rather,

they are asking this Court to issue summary judgment against Unocal as a discovery sanction. In

diversity cases such as this, federal courts apply federal law regarding sanctions for failure to

17

preserve evidence. See Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); Condrey v. Suntrust Bank of Ga., 431 F.3d 191, 203 (5th Cir. 2005); State Farm Fire & Cas. Co. v. Broan Mfg. Co., Inc., 523 F. Supp. 2d 992, 996 (D. Ariz. 2007). See also Transue v. Aethetech Corp., 341 F.3d 911, 920-21 (9th Cir. 2003) (applying federal law in a diversity case when reviewing the imposition of spoliation sanctions).

A party is found to have engaged in spoliation of documents as a matter of law only if they had some notice of its relevance to litigation. See United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (stating that the district court found there was no spoliation because the defendants offered credible reasons for the destruction of the records and finding that the defendant did not have notice of the lawsuit when it destroyed records in the course of ordinary business a couple of years before the lawsuit was filed). While the platform is certainly relevant to the current litigation, at the time Unocal removed and destroyed the platform, it had no notice of the plaintiffs' lawsuit against it. The platform was removed in March of 2003 in response to an OSHA investigation and citation. Removal was a proper abatement for a non-compliant platform. The plaintiffs did not bring their lawsuit until April of 2004, around one year after the OSHA citation. Plaintiffs presented no evidence that defendant Unocal was or should have been aware of the lawsuit at the time it removed the platform. The evidence on the record demonstrates that Unocal threw away the platform in response to the violation found by OSHA and not in anticipation of future litigation. Furthermore, plaintiffs were able to retrieve some evidence relating to the platform at the time of its collapse because Mr. Grove went into the air filter after the accident and collected some bolts from the platform and took pictures of the collapsed brackets.

## IV.  CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that plaintiffs'

motion for partial summary judgment be DENIED.

DATED this 16th day of May, 2008, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to F.R.Cv.P. 72(b) and 28 U.S.C. § 636(b)(1), a party seeking to object to this
finding and recommendation shall file written objections with the Clerk of Court no later than
**NOON on May 27, 2008**.  Failure to object to a magistrate judge's findings of fact may be
treated as a procedural default and waiver of the right to contest those findings on appeal.
McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The
Ninth Circuit concludes that a district court is not required to consider evidence introduced for
the first time in a party's objection to a magistrate judge's recommendation United States v.
Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages**
in length, and shall not merely reargue positions presented in motion papers.  Rather, objections
and responses shall specifically designate the findings or recommendations objected to, the basis
of the objection, and the points and authorities in support.  Response(s) to the objections shall be
filed on or before **NOON on June 3, 2008**.  The parties shall otherwise comply with provisions
of Fed.R.Civ.P. 72(b).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant
to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See
Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).