UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and, MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>Plaintiffs,<br><br>v.<br><br>UNOCAL CORPORATION,<br><br>Defendant. | 3:04-CV-00096-TMB-DMS<br><br>**INITIAL REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES [DOCKET 209]** |

## I. MOTION PRESENTED

At docket 209, defendant Unocal Corporation (hereafter Unocal), requested partial summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, defendant requested this Court to grant summary judgment in their favor regarding plaintiffs claim for punitive damages. Defendant contended that plaintiffs have only presented facts suggesting negligence at most and have not presented evidence to meet their burden of demonstrating by clear and convincing evidence that defendant engaged in outrageous conduct or conduct amounting to reckless indifference to the interests of others to justify punitive damages under Alaska law.

Plaintiffs filed an opposition to this motion at docket 229. In this opposition, plaintiffs argued that there are genuine issues of material fact regarding the reckless indifference of defendant to the safety of others.

Oral argument was held on this motion on February 13, 2008. At the hearing, this Court

1

permitted supplemental briefing on the issues and permitted certain supplemental evidence into the record, including photos of the accident location, two safety reports found by defendant subsequent to the briefing filed on this motion, an affidavit from defendant's counsel regarding representation of Siemens Building Technologies, Inc. (hereafter Siemens), and the Services and Drilling Master Contract dated April 18, 1994, which is one of the agreements governing the duties and relationship between defendant Unocal and Siemens.

## II.  STATEMENT OF UNDISPUTED FACTS

The underlying case stems from an injury sustained by Mr. Larry Grove.  Mr. Grove worked for Siemens.  According to the complaint, Siemens had a contract with defendant Unocal to conduct certain maintenance functions, such as servicing the heating, ventilating, and air conditioning system, in Unocal's Anchorage building (Doc.2, Tab 1 at 2).  There were two contracts governing the duties and relationship between defendant Unocal and Siemens.  The first contract, entitled "Services and Drilling Master Contract" (hereinafter Master Contract), was executed in 1994 between defendant and Landis & Gyr Powers Inc., which Siemens assumed when it acquired Landis (Doc. 295-2 at 13).  The second contract, entitled "Unocal Technical Support Program Proposal" (hereinafter Technical Support Contract), was executed in 2000 between defendant and Siemens (Doc. 295-2 at 9).

The Master Contract contained indemnity provisions in sections 6.1 and 6.2.  In these provisions each party agreed to indemnify the other party for any claims arising out of or in connection with injuries of their own employees regardless of the other party's negligence (Doc. 295-2 at 13).

Every three or four months, as part of the building maintenance contracts, one of

Siemens' employees would change the air filters inside Unocal's Anchorage building. Mr. Grove began working for Siemens in 1999 (Doc. 210-5 at 2) and would often be the Siemens employee assigned to change the air filters in defendant's building (Doc. 210-5 at 4).

According to the complaint, in September 2002, Mr. Grove was changing the air filters inside the defendant's building. The air filters were located in a room on the penthouse level of Unocal's Anchorage building. He was using a work platform that consisted of a plank that was held up by brackets fastened to the wall with bolts (Doc. 295-9). The platform was roughly eight feet off the ground (Doc.2, Tab 1 at 3). The platform collapsed, and Mr. Grove fell from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2). He immediately called the maintenance supervisor in the building, Mr. Charles Arnett. There is nothing in the record to indicate that Mr. Arnett or Mr. Grove told anyone else at Unocal about the accident (Doc. 210-5 at 6).

Five months later, in March of 2003, the Occupational Health and Safety Administration (hereinafter OSHA) came to defendant's Anchorage building to look into a complaint about the work platform in the air filter room. A platform was back up at the time of the OSHA inspection (Doc. 230-12; Doc. 230-13). OSHA did not make a determination regarding the cause of Mr. Grove's accident; rather, OSHA issued a citation to both defendant and Siemens for the platform as it existed at the time of the inspection because the platform did not have the proper railings/toeboards on its open sides (Doc. 230-13 at 4). OSHA determined that defendant was the employer that created the hazard based on the fact that the platform appeared to have been there for many years and that it was put up again after Mr. Grove's accident without proper railings. OSHA determined that Siemens was the employer exposing employees to the hazard

(Doc. 264-2 at 3). In order to abate the violation, defendant removed the platform (Doc. 230-13 at 17).

Mr. Grove filed his complaint against defendant Unocal a year later, in April of 2004. In his complaint, Mr. Grove claimed that Unocal's negligence caused him to fall and injure his ankle and requested damages (Doc. 2, Tab 1). Mr. Grove's family members are also plaintiffs in this matter with distinct claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on Mr. Grove's ankle injuries (Doc. 2, Tab 1).

### III.  ANALYSIS

**A.  Summary Judgment Standards**

Unocal removed this case from Alaska state court to the Federal District Court for the District of Alaska. This Court has diversity jurisdiction. In diversity cases such as this, federal courts are to apply the forum state's substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003) (quoting Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)). Therefore, Alaska law governs the underlying negligence, punitive damages, and allocation of fault determinations.

While state law governs the underlying substantive issues in diversity cases, federal law governs procedural aspects for summary judgment. See Caesar Elec. Inc. v. Andrews, 905 F.2d 287, 289 n. 3 (9th Cir. 1990) (stating that "federal law governs the procedural aspects of summary judgment in a diversity case"); Bank of California, N.A. v. Opie, 663 F.2d 977, 979 (9th Cir. 1981) (stating that "federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact"); Bell Lavalin Inc. v. Simcoe & Erie Gen. Ins. Co., 61 F.3d 742, 745 (9th Cir. 1995). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The inquiry at the summary judgment stage is a threshold determination about whether or not a trial is needed—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The initial burden of showing that there are no factual issues for trial is on the moving party. Semegen v. Weidner, 780 F.2d 727, 732 (9th Cir. 1986). Once the moving party has met this initial burden, to avoid summary judgment, the non-moving party must counter with facts that reveal a genuine factual dispute. Id. After the facts have been presented, under federal summary judgment standards, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254. Summary judgment is not appropriate if the judge determines that the jury could find for either party given the standards of proof—that is to say, the judge must determine that a reasonable jury could find *either* that the party with the burden of proof at trial proved his or her case by the quality and quantity of evidence required by the governing law *or,* conversely, that the party with the burden of proof at trial failed to prove his or her case given the required standard of proof. Id.

While the judge must take into account the applicable evidentiary burden during a summary judgment determination, the judge does not weigh conflicting evidence or make credibility determinations about the evidence submitted. Id. at 255. Instead, the judge must view the evidence in a light most favorable to the non-moving party, meaning that direct evidence from the non-moving party is to be believed and all justifiable inferences are to be drawn in the

5

non-moving party's favor. Id.; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from undisputed background or contextual facts or from underlying facts that may be disputed based on direct evidence but that the judge has properly resolved in favor of the non-moving party for purposes of summary judgment proceedings. T.W. Elec. Serv., 809 F.2d at 631 (9th Cir. 1987). Inferences based on this type of circumstantial evidence must be reasonable. Id. See also McLaughlin v. Liu, 849 F.2d 1205, 1207-08 (9th Cir. 1988) (discussing the differences between direct evidence and circumstantial evidence in relation to summary judgment standards).

**B. Punitive Damages**

In a diversity jurisdiction action, the propriety and amount of punitive damage are determined by state law. Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). Alaska Statute § 09.17.020 addresses when and how punitive damages can be awarded. Punitive damages can be awarded to the plaintiff only if the plaintiff proves by *clear and convincing evidence* that they are warranted under the statute.

While the substantive law of Alaska determines whether plaintiffs are entitled to punitive damages or not, federal law governs whether evidence presented is sufficient to raise a question for the jury. See Opie, 663 F.2d at 979 (stating that "federal law alone governs whether evidence is sufficient to raise a question for the trier-of-fact"). Therefore, this Court applies Anderson and must "view the evidence presented through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254. See also Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 922 (9th Cir. 1987) (applying Anderson summary judgment standards to a diversity case); Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1194-95 (10th Cir. 2002) (stating that

while the state courts do not apply the clear and convincing standard at the summary judgment stage, a federal court sitting in diversity is guided by federal law such as Anderson and so the judge must view the evidence through the prism of the substantive evidentiary burden); Barron v. Safeway Stores, Inc., 704 F. Supp. 1555, 1560-61 (E.D. Wash. 1988) (discussing the standards set forth in Anderson and applying them to a diversity case). In Alaska, the substantive evidentiary burden for punitive damages is clear and convincing proof. Therefore, viewing the evidence presented in favor of the plaintiffs (as the non-moving party), if this Court determines that a reasonable jury could find for either party— meaning it could find either that plaintiffs proved their claim for punitive damages by clear and convincing evidence or that they did not prove their punitive damages claim by clear and convincing evidence— then summary judgment would not be appropriate.

Under § 09.17.020, punitive damages are warranted if the defendant's conduct was "outrageous, including acts done with malice or bad motives" or "evidenced reckless indifference to the interest of another person." AS § 09.17.020. A showing of actual malice is not required to support a claim of punitive damages—a showing of conduct that amounts to reckless disregard of the interests of others is sufficient. Chizmar v. Mackie, 896 P.2d 196, 210 (Alaska 1995). To make such a showing of reckless indifference, a plaintiff must establish that the defendant's conduct was conscious action in deliberate disregard of others. Id. (quoting State v. Haley, 687 P.2d 305, 320 (Alaska 1984)). Reckless conduct differs from negligence. Negligent conduct consists of inadvertence or incompetence; whereas reckless conduct consists of "a conscious choice of a course of action." Id.

Defendant argued that plaintiffs have not presented evidence to show by clear and

convincing evidence that defendant engaged in any conscious action that amounts to a reckless indifference to the rights of others. Defendant stated that none of plaintiffs' evidence shows that defendant built the platform or even knew about the platform and so a jury could not find that it consciously disregarded the safety of others.

      However, there is evidence to suggest that defendant erected the platform. There is evidence in the record to reasonably suggest that the platform had been in place for a long time (Doc. 230-8 at 1; Doc. 230-9 at 2-3); there is evidence to show that defendant's management had to approve all structures or construction in the building (Doc. 230-14 at 4-5); and the Technical Support Contract stated that defendant would provide access to the equipment (Doc. 230-5 at 11). This Court must draw reasonable inferences in favor of plaintiffs, the non-moving party, and therefore, based on the evidence presented by plaintiffs, a reasonable jury could determine that Unocal built the platform. If so, then plaintiffs have presented evidence to show that the platform was very poorly designed and constructed—a "hack job"(Doc. 256-4 at 6). This Court does not weigh the evidence at this juncture, but simply must take the non-moving party's direct evidence as true. There are issues of fact regarding whether or not the platform was so unsafe that the mere construction of it was reckless indifference to the safety of others and, if the jury resolves these facts in favor of plaintiffs, a jury could find by clear and convincing evidence for the plaintiffs on the issue of punitive damages.

      Furthermore, plaintiffs presented evidence to raise questions of fact for a jury about the nature of defendant's omissions. There is evidence that only two building inspections were conducted before Mr. Grove's accident since the building's construction in 1969 (See Docs. 295-10, 295-11). Mr. Burns, an employee of Unocal, conducted the inspections and the maintenance

supervisor, Mr. Charles Arnett, a subcontractor employee that worked under the direction and control of Unocal (Doc.230-14 at 4-6), accompanied him (Doc. 230-7 at 5). Mr. Arnett acted as the guide for Mr. Burns (Doc. 230-7 at 5). In his deposition, Mr. Burns did not recall inspecting the upper level of the building during the inspections or seeing the platform before the accident (Doc. 230-7 at 5). He testified that if he would have seen the platform, he would have considered it a hazard to be remedied (Doc. 230-7 at 8). His inspection reports were later found and indicate that he did inspect the top level, but the reports do not indicate that he went into the room with the air filters (Doc. 295-10). These facts suggest that the platform was never inspected.

There are facts that could lead to an inference that the air filter room was purposefully not inspected. Mr. Grove testified that Mr. Arnett had been in the filter room and handed filters to Mr. Grove while he stood on the platform (Doc. 210-5 at 4). While Mr. Arnett testified that he never saw the work platform, this Court must take the evidence presented by plaintiffs as true for the purposes of this motion. Mr. Burns testified that the penthouse level where the boiler and other mechanical facilities are located would not be important to the inspection because Unocal's employees do not actually work up there (Doc. 230-7 at 5). Based on these facts and taking all inferences in favor of plaintiffs, a jury could find by clear and convincing evidence that defendant's omissions regarding the failure to inspect the air filter room were conscious decisions that recklessly disregarded the safety of contract employees who went into the air filter room. Thus, the motion for summary judgment to disallow punitive damages must be denied.

Furthermore, based on <u>Anderson</u>, this Court can deny summary judgment in a case where it has reason to believe that proceeding to a trial would be the better course of action. In this case, this Court has already determined that summary judgment on the issue of defendant's

negligence is inappropriate because genuine issues of material fact exist that would allow a jury to reasonably find for either party (Doc. 305).  Thus, the jury will be presented with all evidence regarding the circumstances in this case and the actions of defendant in order to determine the negligence issues.[1]  This Court believes there are many factual disputes and the jury should determine if defendant's conduct was lawful or if it demonstrated negligence or reckless disregard of safety.

## IV.  CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that defendant's motion for partial summary judgment be DENIED.

DATED this 16th day of May, 2008, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to F.R.Cv.P. 72(b) and 28 U.S.C. § 636(b)(1), a party seeking to object to this finding and recommendation shall file written objections with the Clerk of Court no later than **NOON on May 27, 2008**.  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON on June 3, 2008**.  The parties shall otherwise comply with provisions

---

[1] Additionally, this Court has ordered Unocal to provide further discovery to plaintiffs since the filing of these motions and has provided both parties with more time to complete expert depositions.  Because discovery continues and the evidence continues to be developed, this Court believes that a trial on the issue of punitive damages is the better course of action.

of Fed.R.Civ.P. 72(b).

      Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  <u>See Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).