## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAWRENCE H. GROVE, CYNTHIA GROVE, SARAH GROVE, and MICHAEL GROVE (DOB 1/21/88) by and through his father LAWRENCE H. GROVE,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNOCAL CORPORATION,<br><br>     Defendant. | 3:04-CV-00096-TMB-DMS<br><br><br>**ORDER RE: PLAINTIFFS' MOTION IN LIMINE [DOCKET 156]** |

## I.  MOTION BACKGROUND

The underlying case stems from an injury sustained by Mr. Larry Grove (hereafter Plaintiff).  Plaintiff worked for Siemens Building Technologies, Inc. (hereafter Siemens). Siemens had a contract with Defendant, Unocal Corporation (hereafter Defendant), to conduct certain maintenance functions in Unocal's Anchorage building (Doc. 2, Tab 1 at 2).  According to the complaint, in September 2002, Plaintiff was changing the air filters in the mechanical room inside the building.  He was using a work platform that consisted of a plank that was held up by brackets in the wall.  He fell from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2).

Plaintiff claims that Unocal's negligence caused him to fall and injure his ankle and requests damages.  Mr. Grove's family members are also plaintiffs in this matter with distinct claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on Mr. Grove's ankle injuries (Doc. 2, Tab 1).

1

At docket 156, Plaintiffs filed a motion in limine. The motion consists of thirty-one evidentiary issues that Plaintiffs request this Court consider prior to trial. Of the thirty-one issues presented in the motion, Plaintiffs primarily ask this Court to exclude certain evidence that they believe Defendant Unocal will use during trial.

Defendant opposes the motion in limine. It set forth specific objections to most of Plaintiffs' thirty-one evidentiary requests, arguing that exclusions of evidence would either be unwarranted or premature.

This Court has considered the issues presented in the motion and each of the thirty-one requests.

## II. ANALYSIS AND RECOMMENDATIONS

**1. Responsibility for work platform:** Plaintiffs ask this Court to examine the evidence and conclude that no evidence shows any other entity except Defendant owned or had responsibility for the work platform.

**Recommendation:** In order to rule for the Plaintiffs, the Court would have to determine whether there are factual issues in dispute regarding the work platform. Such a request is properly brought through a motion for summary judgment, which has already been considered and determined in this case (Doc. 305). In this Court's recommendation on Plaintiffs' summary judgment motion, which was adopted by the District Court (Doc. 307), it found genuine issues of material fact regarding construction of and responsibility for the work platform and denied the summary judgment motion. The issue is left for the jury. Plaintiffs' first request is denied.

**2. Other work platform issues:** Plaintiffs ask this Court to preclude Defendant from making certain arguments regarding the cause of the accident as a sanction for spoliation of the

2

evidence. Specifically, Plaintiffs argue that the Defendant should be barred from arguing or inferring (a) that Mr. Grove faked the accident; (b) that the nuts and bolts retrieved by Larry Grove were not from the collapsed platform; and (c) that the platform was not defectively designed, built, or maintained.

**Recommendation:** Plaintiffs previously asked this Court to consider the spoliation of evidence issue and, as a sanction, enter summary judgment in their favor. The Court denied Plaintiffs' request, finding that the Defendant did not engage in spoliation (Doc. 305 at 17). Because this Court has determined that the Defendant did not engage in spoliation of evidence, sanctions– including the exclusion of evidence or certain arguments– are unwarranted. Plaintiffs' second request is denied.

**3. Sheared bolts:** Plaintiffs argue that "Unocal should be prohibited from claiming that the sheared bolts retrieved by Larry Grove did not come from the collapsed work platform." In a short paragraph supporting this requests, Plaintiffs simply argue that Defendant should be barred from making any such claim as a sanction for spoliation of evidence and as a sanction for discovery violations.

**Recommendation:** As stated above, there has been no spoliation of evidence to warrant sanctions. Furthermore, this Court previously considered and ruled on the discovery issues in this case, granting in part and denying in part Plaintiffs' motion to compel discovery and disclosure (Doc. 293). As part of its order on Plaintiffs' motion to compel, the Court directed Defendant to show cause as to why it should not be sanctioned for failing to provide verified answers or to locate and disclose the affidavit of Mr. Paul Crapps (regarding the dismantling of the work platform). At the hearing, Plaintiffs withdrew the request for sanctions (Doc. 303).

3

This Court finds that these discovery issues have been adequately resolved and sanctions are not appropriate. Plaintiffs' third request is denied.

**4. Allocation of fault:** Plaintiffs argue that "Unocal should be precluded from claiming Siemens [is] at fault."[1] Plaintiffs contend that Siemens Building Technology, Mr. Grove's employer at the time of the accident, and Defendant are jointly represented. According to Plaintiffs, "[i]t is unfair for the same counsel to represent Unocal and Siemens" because it "[subverts] the litigation process in favor of Unocal while restricting discovery to [P]laintiffs." As a sanction for "tainting the litigation process," Plaintiffs request that Defendant be precluded from allocating any fault to Siemens. Plaintiffs also appear to argue that there is no evidence to suggest Siemens is at fault.

**Recommendation:** This Court has already considered Plaintiffs arguments about equal access to Siemens' employees and declined to issue any order compelling access to them (Doc. 293). Furthermore, Plaintiffs already requested this Court to consider summary judgment on this fault allocation issue. This Court determined that Plaintiffs were not entitled to judgment on this issue as a matter of law and that there are genuine issues of material fact regarding Siemens' fault. This Court also found that based on an affidavit submitted by Defendant's counsel, Siemens and the Defendant do not have joint counsel.

Because the issues regarding joint counsel and allocation of fault have been adequately

---

[1] At the end of Plaintiffs' briefing regarding their fourth request, they argue that in addition to precluding Unocal from allocating fault to Siemens, they should be allowed to introduce evidence of the indemnity agreement between the two companies during trial. They did not provide any analysis for this argument. This issue about the indemnity agreement is the subject of Defendant's motion in limine (Doc. 211) and has been more fully briefed in the filings related to that motion. Therefore, this issue of the admissibility of the indemnity clause and agreement will be addressed in this Court's recommendation for that motion.

4

determined in prior motions, Plaintiffs' fourth request is denied.

**5. State violations:**  Plaintiffs argue that pursuant to Rule 609(b) of the Federal Rules of Evidence (hereinafter FRE), Defendant should not be able to introduce any evidence of Mr. Grove's or Mrs. Grove's alleged violations in 1992-1994 of Alaska Statute 16.05.420, which relates to false statements in license, tag, permit, and registration applications.[2]  Rule 609(a)(2) provides that for the purpose of attacking the credibility of a witness, evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or a false statement by the witness, regardless of the punishment.  Fed. R. Evid. 609(a)(2).  However, Rule 609(b) states that evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction. Fed. R. Evid. 609(b).

Defendant concedes that the alleged violation occurred more than ten years ago, but contends that the evidence should still be admissible to show Mr. Grove's pattern or habit of providing false information to Alaska Fish and Game.  It asserts that evidence of a violation of AS 16.05.420 is admissible under Federal Rule of Evidence 404(b) because it would be offered

---

[2] The statute states as follows:
AS 16.05.420. License, Tag, Permit, and Registration Violations:

(a) A false statement of a material fact in an application for a license, tag, permit, and sport fishing vessel registration ... voids the license, tag, permit, or registration for which the application is made.

(b) A person may not make a false statement, or omit a material fact, in an application for a license, tag, permit, or sport fishing vessel registration ... A person who without any culpable mental state makes a false statement as to the person's identity or residency in an application for a license, tag, permit, or sport fishing vessel registration ... is guilty of a violation and upon conviction is punishable by a fine of not more than $300.  A person who knowingly violates this subsection is guilty of a class A misdemeanor.

as proof to show "absence of mistake or accident" regarding his repeated dishonesty with Alaska

Fish and Game.  Defendant claims that Mr. Grove has lied to Alaska Fish and Game on

numerous occasions and that evidence of specific state violations bolster its argument that

Mr. Grove has intentionally lied to Alaska Fish and Game on other occasions.  Defendant claims

that this pattern of lying reflects on his credibility as a whole.

**Recommendation:** This Court finds that under Rule 609(b) of the Federal Rules of

Evidence, evidence of the Grove's alleged violations of AS 16.05.420 is inadmissible.

Defendant contends that it wants to use prior violations to piece together an overall pattern of

intentional dishonesty.  In other words, they want to attack the credibility of Mr. Grove in part

through these prior violations of AS 16.05.420.  This Court finds that Rule 609(b) prevents the

admission of convictions older than ten years in order to attack credibility in any manner.

Because the alleged violations of AS 16.05.420 occurred in 1992-1994, they cannot be

introduced.  Furthermore, this Court finds that delving into Mr. Grove's violations of Alaska's

licensing laws almost ten years ago is inadmissible under Rule 403 of the Federal Rules of

Evidence, as substantially more prejudicial than probative.  Plaintiffs' fifth request is granted; the

Defendant is prohibited from introducing any evidence of Mr. or Mrs. Grove's citations for

AS 16.05.420 violations.

**6. Surveillance:**  Plaintiffs argue that the Groves have been secretly videotaped on two

separate occasions and evidence of these videotapes had been withheld from Plaintiffs for three

years.  They argue that the tapes are not relevant or reliable and therefore should not be admitted

during trial.

Defendant contends that it discovered the existence of one video surveillance tape when

6

defense counsel was reviewing Mr. Grove's workers' compensation file during discovery. Counsel then obtained a copy, disclosing the video to Plaintiffs within one week. Defendant states that it authorized a second surveillance of Mr. Grove in 2006 and that the video from that surveillance was disclosed to Plaintiffs in December of 2006. Defendant contends that the video turned over to the Plaintiffs is unedited.

This Court addressed the issue of the surveillance video tapes in its order on Plaintiffs' motion for a protective order (Doc. 250). In that motion, Plaintiffs requested that this Court order Defendant to stop video surveillance. This Court found that the video was created while Mr. Grove was in public and that the Plaintiffs did not show good cause for the protective order by providing specific and substantiated reasons why the surveillance of actions in the public view is harmful or prejudicial. It denied the motion. This Court also addressed the issue of video surveillance in its discovery order (Doc. 293). In that order, the Court ordered Defendant to disclose to Plaintiffs' counsel the name of the person(s) who will authenticate the surveillance tapes if they are introduced at trial.

**Recommendation:** This Court finds that the video surveillance could be relevant during trial. Neither side has distributed a copy of the video tapes to the Court but, based on the parties' description of video tapes' contents, this Court finds that the tapes could be probative of Defendant's argument that Mr. Grove's injuries are not as extensive or debilitating as claimed. This Court also finds that the relevancy of such evidence would be substantial because the tapes are directly related and relevant to the injury. However, only when the specific content and context is available for the Court to review can it balance the evidence's probative nature versus any potential prejudice under Rule 403. Based on the information presently available to the

Court, Plaintiffs' sixth request is denied at this time but may be renewed upon introduction of such evidence by defense counsel at trial.

**7. Prior workers' compensation:**  Plaintiff asserts that Defendant will likely seek to introduce evidence of Mr. Grove's prior workers' compensation incidents to show that he was unsafe and thus comparatively at fault in the collapse of the work platform.  Plaintiffs argue that Mr. Grove's prior workers' compensation claims and incidents should be inadmissible because they are irrelevant, and unduly prejudicial.  Defendant lists the prior workers' compensation claims and argues that the sheer volume of these complaints is relevant and probative to Defendant's contention that Mr. Grove does not take care of his own safety.  Defendant does not provide specific details surrounding the other workers' compensation claims that it might seek to introduce.

**Recommendation:** This Court finds that a mere listing of Mr. Grove's prior workers' compensation claims would be unduly prejudicial and thus inadmissible.  The simple fact that Mr. Grove has had a handful of other workers' compensation accidents or filed other workers' compensation claims is not highly relevant to the specific accident at issue.  Under Rule 403 of the Federal Rules of Evidence, telling the jury that Mr. Grove has had other workers' compensation accidents is substantially more prejudicial than probative.  However, this Court cannot rule that all the evidence regarding each and every workers' compensation claim is inadmissible.  For example, if the facts and circumstances of one of Mr. Grove's accidents are recognizably and directly similar to the accident at issue in this case, evidence of that accident could be more probative than prejudicial and relevant.  In such a situation, this Court would have to reassess the Rule 403 balancing test to determine admissibility.

This Court cannot find that all of the workers' compensation accidents would be admissible to show that Mr. Grove has a pattern or habit of unsafe behavior in the workplace. Rule 406 of the Federal Rules of Evidence provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.  Habit describes one's regular response to a repeated specific situation.  See Fed. R. Evid. 406 Advisory Committee Note (describing conduct that qualifies as habit as "semi-automatic" or "one's regular response to a repeated specific situation").  In deciding whether certain conduct constitutes habit, courts consider three guiding factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct. United States v. Angwin, 271 F.3d 786, 799 (9th Cir. 2001), *overruled on other grounds*, United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007) (en banc).  The burden of establishing that certain conduct qualifies as evidence of habit falls on the party wishing to introduce the evidence.  Id. (citations omitted). In this situation, Defendant suggests that the sheer number of Mr. Grove's prior workers' compensation accidents alone shows that he has a general pattern of working without due regard to his safety.  However, this Court finds that unless a prior accident shows similar and particular conduct on the part of Mr. Grove, it is not admissible under Rule 406 of the Federal Rules of Evidence.

Plaintiffs' seventh request is granted in part and denied in part as follows:  Defendant

may not introduce a list of Mr. Grove's prior workers' compensation claims during trial but may seek admission of evidence relating to a specific prior workers' compensation accident but only if it shows similar and particular conduct on the part of Mr. Grove, and Plaintiffs may again challenge the admissibility at that time.

**8. Prior ankle injury:** Plaintiffs argue that Defendant should be prohibited from introducing evidence of a prior ankle injury Mr. Grove suffered two years before the accident at issue in this litigation.  Based on the parties' briefings, in 2000 Mr. Grove was treated for a sprain of his right ankle, the same ankle injured in 2002 after Mr. Grove's fall.  Plaintiffs say that, unlike the injuries resulting from the fall at issue in this case, there was no fracturing of the ankle as a result of the first accident in 2000 and that those prior injuries healed within two weeks.  Thus, Plaintiffs contend that the ankle injuries are medically different and any evidence of this prior ankle injury should be suppressed.  Defendant argues that evidence of the prior ankle injury back in 2000 is relevant.  According to the defense, it shows a pre-existing injury that could have contributed to Mr. Grove's current condition, thus limiting Defendant's liability, if any liability is found to exist.  Defendant also argues that it is relevant to Mr. Grove's credibility, as the physicians report after Mr. Grove's 2002 fall and ankle injury indicates that Mr. Grove failed to disclose this prior ankle injury to the treating physician.

**Recommendation:**  This Court finds that any evidence of a pre-existing condition is relevant to the issue of causation and to Mr. Grove's credibility.  Plaintiffs' eighth request is denied.

**9. Resuming work with Siemens:**  Plaintiffs argue that "Unocal should be prohibited from suggesting that Larry Grove could return to work for Siemens Building Technologies, Inc."

Plaintiffs argue that Defendant has attempted to create the impression that Mr. Grove could have gone back to work with Siemens after the accident. They argue that the evidence shows this is not the case. Thus, according to Plaintiffs, Defendant should not be allowed to make any suggestion that Mr. Grove could have returned to work for Siemens after the accident because it is not relevant and would confuse the jury. Defendant argues that under Alaska substantive law, which is applicable in this case, Plaintiff has a duty to mitigate damages, and thus any evidence of steps Mr. Grove took or failed to take to secure alternative employment is relevant.

This Court already noted that Alaska substantive law regarding mitigation of damages is applicable to this case (Doc. 290 at 7-8).

**Recommendation:** This Court finds that evidence related to mitigation of damages, including efforts and ability to secure re-employment and/or alternative employment, is relevant to this case. Therefore, Plaintiffs' ninth request is denied.

**10. Grove family's finances:** Plaintiffs argue that any benefits received by the Grove family and any property owned by the Grove family is inadmissible during trial. The Plaintiffs state that the defense has undertaken an extensive discovery effort to find out information about the Grove family's finances. They argue that Defendant should be prohibited from introducing into evidence any suggestion that Mr. Grove has received or is receiving certain benefits resulting from the accident, including insurance benefits, social security benefits, or workers' compensation benefits. Plaintiffs cite to Eichel v. N.Y. Cent. R.R. Co., 375 U.S. 253, 255 (1963) and Sheehy v. S. Pac. Transp. Co., 631 F.2d 649, 652 (9th Cir. 1980) for support that evidence of collateral benefits are more prejudicial than probative and should be inadmissible under Rule 403 of the Federal Rules of Evidence. Defendant argues that collateral benefits and other sources of

11

income could be relevant during trial as to mitigation and calculation of damages.

**Recommendation:** This Court finds that any evidence of insurance, disability, workers' compensation, or social security benefits that Mr. Grove has received or is receiving would be inadmissible under Rule 403 to show duration of the injury or motive for not returning to work. Evidence of the Grove family's income sources may be relevant to mitigation and calculation of damages at a later stage of the trial. For example, as this Court acknowledged in its ruling on Defendant's motion for rule of law (Doc. 293), if a jury renders an award of damages to Plaintiffs, Alaska's collateral source statute would then be applied to allow Defendant to introduce certain evidence of other compensation received by Mr. Grove for the same injury. However, this Court has inadequate information about what financial evidence Defendant will seek to introduce and for what purpose to make a broad admissibility determination at this time.

Therefore, Plaintiffs' tenth request is granted in part and denied in part as follows: Any evidence of insurance, disability, worker's compensation, or social security benefits that Mr. Grove has received or is receiving is inadmissible under Rule 403 to show duration of the injury or motive for not returning to work. However, information about the Grove family's finances may be admissible for other purposes during trial and such admissibility determinations will be made at the time Defendant seeks to introduce specific items of financial evidence.

**11. Settlement proposals:** Plaintiffs contend that any workers' compensation settlement proposals should not be admitted during trial.

**Recommendation:** Rule 408 of the Federal Rules of Evidence provides that evidence of "conduct or statements made in compromise negotiations regarding the claim ..." are "not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of

a claim that was disputed as to validity or amounts or to impeach through a prior inconsistent statement or contradiction ..." Fed. R. Evid. 408(a)(2).

Therefore, Plaintiffs' request regarding the admissibility of any settlement proposals is granted and Defendant is prohibited from introducing any such evidence in accordance with Federal Rule of Evidence 408.

**12. OSHA citations:** Plaintiffs argue that Defendant should be prohibited from introducing evidence of any fines the Occupational Safety and Health Administration (OSHA) levied against Siemens for the work platform that was investigated after Mr. Grove's fall. Defendant argues that the citation against Siemens is relevant to the proper allocation of fault.

Five months after Mr. Grove's fall, in March of 2003, OSHA investigators came to Defendant Unocal's Anchorage building to look into a complaint about the work platform in the air filter room. The platform was back up at the time of the OSHA inspection (Doc. 157, Exhibit 12). OSHA did not make a determination regarding the cause of Mr. Grove's accident (Doc.178-9 at 5); rather, OSHA issued a citation to both Unocal and Siemens for the platform as it existed at the time of the inspection. Both Unocal and Siemens were cited because the platform did not have the proper railings and toeboards on its open sides and Siemens was also cited for having an employee improperly use a ladder in conjunction with the work platform (Doc. 182, Exhibit H at 4-7). In order to abate the violation, Unocal removed the platform (Doc. 157, Exhibit 12).

**Recommendation:** This Court finds that the citations OSHA issued should be inadmissible under Rule 403 of the Federal Rules of Evidence because the probative value of the evidence is substantially outweighed by the danger of confusion of the issues and misleading of the jury. The OSHA investigator did not make a determination as to what caused the platform to

collapse when Mr. Grove was working on it, nor did he apply Alaska tort law standards to make a fault determination. Therefore, introducing evidence of the citations resulting from the OSHA inspection runs the risk of confusing the jury. Furthermore, the citations were for the platform as it existed at the time of the OSHA inspection. Therefore, his citations are not highly relevant to the issue of who is at fault for the collapse of the work platform as it existed at the time of Mr. Grove's accident.

Therefore, Plaintiffs' request that the OSHA citation levied against Siemens be ruled inadmissible is granted and evidence of both Defendant's citation and Siemens' citation from OSHA is excluded from trial. Should Plaintiffs be able to provide evidence that the platform viewed by OSHA was constructed in the same manner as the platform used by Mr. Grove, the Court would reconsider the admissibility of Defendant's citation.

**13. Admissions to OSHA:** Plaintiffs request this Court to rule that any admissions on the part of Defendant to the OSHA inspector are admissible. Plaintiffs argue that these admissions are exceptions to the inadmissibility of hearsay. Defendant argues that the OSHA inspector's report does not clearly indicate that Defendant's employees or agents made any admissions because it does not indicate which individual made any specific statements. Therefore, according to Defendant, the statements do not fit within the hearsay exceptions.

**Recommendation:** Under Rule 801(d)(2) of the Federal Rules of Evidence, admissions by a party opponent offered as evidence against that party are not hearsay. Rule 801(d)(2)(D) clarifies that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is deemed an admission by that party and is thus not hearsay. Fed. R. Evid. 801(d)(2)(D). Defendant appears

14

to assert that, for purposes of determining whether a statement by an individual can be attributed to the corporate party opponent, the status of that individual as a subcontractor rather than an actual employee determines whether an agency relationship exists.  This Court finds that this assertion is an over-simplification.  Regardless of the individuals exact contractual status, that individual could still be an "agent" of the corporate party opponent if his or her responsibilities were comparable to that of an employee.  See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 454 F.Supp.2d 966, 973-74 (C.D. Cal. 2006) (stating that a "statement is admissible under Rule 801(d)(2)(D) so long as it is made by an agent within the scope of agency, regardless of the precise contractual relationship between the agent and the party against whom the evidence is offered").  A federal court must look to common-law rules of agency when determining whether a statement was made by an agent of a party for purposes of the hearsay rule.  See Lippay v. Christos, 996 F.2d 1490 (3d Cir. 1993).  Under the Restatement of Agency, a person is an employee only if he or she is subject to the employer's control, or right to control, the performance or services for the employer.  Restatement (Second) of Agency § 220 (1958). The proponent of the statement must lay an adequate foundation to demonstrate that the statement was made by an actual agent and was made about a matter within that person's scope of employment.  Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1440 (9th Cir. 1990).

The statements of Defendant's employees and agents to the OSHA investigator would be admissible during trial under Rule 801(d)(2)(D).  However, in order to rule definitively on admissibility, Plaintiffs would have to demonstrate that the individuals reporting and talking to the OSHA inspectors were actual agents of Defendant and were speaking within the scope of their agency and during the existence of that agency.  At this time, such a foundation has not

15

been clearly established.

Therefore, Plaintiffs' request for this Court to rule Defendant's admissions to OSHA admissible is denied at this time.  Plaintiffs may again seek introduction at trial of any statements made to OSHA upon adequate demonstration that an agent of Defendant actually made such statements.

**14. Ketchikan dock incident:**  Plaintiffs assert that "Unocal should not be permitted to refer in any manner whatsoever to a pre-accident incident in which plaintiff Larry Grove apparently jumped off a dock in Ketchikan for charity."  According to the parties' briefings, in March of 2002, Mr. Grove jumped off a dock in Ketchikan, Alaska as part of a charity event.  A month prior to jumping off the dock, Mr. Grove had slipped on ice and injured his back and was being treated for the injury.  According to the Defendant, he was off work for the injury at the time he jumped off the dock.  Defendant asserts that the dock-jumping incident should be admissible under Rule 406 of the Federal Rules of Evidence because it shows a pattern of 1) Mr. Grove not caring for his own well-being while injured; 2) Mr. Grove taking advantage of paid time off work to pursue recreational activities; and 3) Mr. Grove demonstrating activity levels that are inconsistent with his alleged injury.  Defendant also asserts that this evidence is admissible under Rule 404(b) because it is proof that his recreational activities in excess of his treating doctor's advice is not a mistake or accident and that he intended to pursue recreational activities while taking advantage of paid time off work.

**Recommendation:** This Court finds that evidence regarding Mr. Grove's jumping off a dock in Ketchikan after an injury is not admissible as evidence of habit under Rule 406 of the Federal Rules of Evidence.  Applying the standards set forth and discussed in number 7 above,

this Court finds that such evidence is more akin to character evidence than evidence of a reflexive, particular response to an injury.  Furthermore, this Court finds that evidence of the dock-jumping incident has little probative value to any mitigation or credibility issues in this case.  Any probative value is substantially outweighed by confusion of issues and efficiency of court time.  In order for Defendant to establish the relevancy of the incident, it would have to introduce evidence about his prior injury and his treatment and speculation as to the affect of this activity on that prior injury.  This Court finds that such a diversion into the specific circumstances of unrelated injuries and treatment is unnecessary given the minimal relevance of the evidence.

Therefore, evidence regarding Mr. Grove's March 2002 recreational activities in Ketchikan, Alaska is inadmissible.  Plaintiffs' fourteenth request is granted.

**15. Alcohol consumption:** Plaintiffs argue that "the trial court should not permit any scurrilous efforts that Unocal counsel may utilize in regard to alleged alcohol consumption by Mr. Grove."  Defendant responds that it intends to show that Mr. Grove consumed four alcoholic beverages a day for many years and that this consumption elevated his blood pressure. Defendant asserts that since Mr. Grove's surgery for his ankle was postponed by two months for high blood pressure, it should be allowed to show that Grove's surgery was postponed as a result of Mr. Grove's excessive drinking, which is probative to show that Mr. Grove does not take care of his health or his injuries.

**Recommendation:** This Court finds that information regarding how many drinks per day Mr. Grove consumed before the fall and ankle injury at issue and whether that consumption was against the advice of doctors at that time is not admissible.  Again, this Court finds that evidence

of Mr. Grove's conduct related to his health, including alcohol consumption, prior to the 2002 fall and ankle injury at issue in this case would amount to inadmissible character evidence and inadmissible habit evidence.

Furthermore, any evidence to suggest that Mr. Grove is a heavy drinker is not relevant to this case. Defendant does not assert that it intends to show Mr. Grove's drinking had anything to do with the accident itself. Instead, Defendant asserts that evidence of his heavy drinking will be linked to his high blood pressure and the postponement of his surgery. This connection is speculative. This Court did not see any direct evidence that Mr. Grove disregarded the doctor's advice about drinking for this particular injury or surgery or any direct evidence about how much Mr. Grove was drinking at the time of this surgery. Furthermore, there is no direct evidence that the two-month delay of the surgery worsened the condition of the ankle or changed the duration of any alleged permanent injury. Thus, the causal connection set forth in the record at this time between the surgery postponement and Mr. Grove's alleged excessive drinking at the time of the scheduled surgery is insufficient to establish relevancy.

Defendant concedes in its briefing that Mr. Grove did not state how much he was drinking around the time that the surgery was postponed, but Defendant nonetheless argues that there is a clear inference Mr. Grove did not stop drinking when doctors advised him to do so. This Court finds that even if evidence of Mr. Grove's drinking could establish an inference that it caused the postponement of the surgery, the slight probative value of that evidence is substantially outweighed by unfair prejudice.

Therefore, Plaintiffs' request is granted and Defendant is prohibited from introducing evidence regarding Mr. Grove's alcohol consumption.

18

**16. Blood pressure:** Plaintiffs assert that Defendant should not be permitted to introduce any allegations that Mr. Grove has failed to take care of any alleged high blood pressure.

**Recommendation:** To the extent Defendant seeks admission of evidence about high blood pressure to link this evidence to Mr. Grove's alcohol consumption, the same analysis and finding set forth in number 15 applies. Furthermore, more generally, this Court finds that evidence of Mr. Grove's high blood pressure has minimal relevance to the issues in this case at this time. Again, the relevance of Mr. Grove's high blood pressure is only speculative as to the issue of Mr. Grove's alleged failure to mitigate his damages. Any relevance that could be established through inferences would be substantially outweighed by unfair prejudice, confusion of the issues, and efficiency of the trial court's time.

Therefore, Plaintiffs' request is granted and Defendant is prohibited from introducing evidence regarding Mr. Grove's high blood pressure in order to prove his failure to mitigate damages.

**17. Prescription medication:** Plaintiffs argue that Unocal should not be permitted to raise any allegations that Mr. Grove took pills from an expired prescription of Vioxx. Defendant asserts that it again is evidence to demonstrate that Mr. Grove is careless with his health. There is no citation to the record to demonstrate when Mr. Grove allegedly took this left over prescription and to indicate whether or not the prescription and medication were expired. Furthermore, there is no citation to the record to demonstrate that Mr. Grove's ingestion of possibly old Vioxx pills impaired his health or his ability to work.

**Recommendation:** This Court has very little information about this Vioxx incident and how and when Defendant would seek to introduce it during trial. Again, as with many of these

evidentiary issues, Defendant asserts that these prior incidents involving Mr. Grove's health demonstrate that he has a pattern of carelessness regarding his health. This Court finds that the indirect relevance of Mr. Grove's <u>prior</u> medical history and conduct related to his <u>prior</u> medical issues is substantially outweighed by unfair prejudice, confusion of the issues, and efficient use of the court's time.

Therefore, Plaintiffs' request is granted and any evidence Defendant seeks to introduce regarding Mr. Grove's intake of expired Vioxx pills is deemed inadmissible.

**18. Missed physical therapy appointments:** Plaintiffs argue that "Unocal should not be permitted to refer to, argue or suggest that Mr. Grove's injuries are due to any alleged missing of appointments with physical therapist." Defendant argues that any failure by Mr. Grove to follow his health care providers' recommended treatment is relevant to the issue of damage mitigation.

**Recommendation:** This Court finds that any evidence of Mr. Grove's conduct related to the treatment of his ankle injury is relevant and admissible to the issue of damage mitigation. Thus, Defendant may present evidence to demonstrate that Mr. Grove failed to follow the recommended treatment for his ankle injury, including evidence that he failed to complete physical therapy.

Therefore, Plaintiffs' request to have evidence regarding missed physical therapy appointments excluded from trial is denied.

**19. Farooz Sakata's physical capacity evaluation:** Plaintiffs argue that the "testimony of Farooz Sakata and the physical capacity evaluation [on March 13, 2003] by Farooz Sakata should be excluded." Plaintiffs contend that Ms. Sakata is not a medical doctor, and thus she is not qualified to testify about Mr. Grove's physical capacity. Plaintiffs also contend that she

20

relied on erroneous information during her physical capacity evaluation of Mr. Grove because she conducted the evaluation before Mr. Grove had his ankle surgeries and before she knew about his full medical treatment.  At the end of Plaintiffs' briefing on the issue, they add that her testimony is subject to <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 516 U.S. 869 (1993).  Defendant argues that Ms. Sakata's evaluation was based on Dr. Nolan's medical evidence, which has not been challenged as erroneous.  Defendant argues that her evaluation of Mr. Grove was complete at the time she conducted the exam and that there is no basis for excluding her testimony simply because she performed her evaluation prior to Mr. Grove's treatment by another doctor, Dr. Geitz, and prior to Mr. Grove's surgeries.

**Recommendation:** This Court finds no adequate basis for excluding Ms. Sakata's testimony at this pre-trial stage.  Ms. Sakata conducted her physical capacity evaluation of Mr. Grove in March of 2003 and came to a conclusion about his physical ability as of that date. Plaintiffs contend that after this evaluation, Mr. Grove met with different doctors who identified an ankle fracture and performed surgeries on Mr. Grove's ankle and therefore her evaluation in March was necessarily flawed.  This Court cannot find that this fact alone makes her March 2003 conclusion unreliable. This Court has not been presented with Ms. Sakata's actual report or any information about physical capacity evaluations in general to make any reliability determinations. Much of what Plaintiffs present in this request appears to reflect on the weight Ms. Sakata's testimony should receive rather than the admissibility of her testimony.

 In the event Defendant has Ms. Sakata testify as to her professional conclusions in March of 2003, her qualifications as an expert will have to be established under Rule 702 of the Federal Rules of Evidence.  Defendant must also lay a foundation as to the reliability of her evaluation.

At that time, Plaintiffs could present *specific* evidence that her evaluation methods are unreliable or that *in this specific case* Ms. Sakata failed to consider the appropriate physical requirements of Mr. Grove's job.  If Plaintiffs raise a material dispute about the admissibility of Ms. Sakata's conclusions, at that time the trial court could hold an in limine hearing to consider the conflicting evidence and make a finding regarding the reliability of Ms. Sakata's evaluation.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1318 n. 10 (9th Cir. 1995).  If Ms. Sakata's testimony is deemed admissible, Plaintiffs' counsel can make appropriate objections as to any portion of her testimony or cross examine her about her conclusions and credibility.

Therefore, Plaintiffs' request to exclude Ms. Sakata's conclusions and testimony is denied at this time.

**20. Michael Grove's juvenile records:** Plaintiffs contend that "Unocal should not be permitted to utilize or admit any of Michael Grove's juvenile records."  Defendant contends that Michael Grove committed a crime in 2006 and was adjudicated delinquent despite the fact that Mr. Grove was off of work and at home with his son since September of 2002.  It therefore argues that Michael Grove's misbehavior reflects upon the existing relationship between Mr. Grove and his son and the possibility that other factors besides Mr. Grove's ankle injury changed the relationship between the two.  Thus, according to Defendant, evidence about Michael Grove's juvenile records is relevant to Michael Grove's loss of consortium claim.

**Recommendation:** This Court finds that any relevance of these juvenile records is substantially outweighed by prejudice, and therefore these records are inadmissible under Rule 403 of the Federal Rules of Evidence.

Therefore, Plaintiffs' request is granted and Defendant is prohibited from introducing

evidence of Michael Grove's juvenile criminal history.

**21. Sarah Grove's on-line journal:** Plaintiffs contend that Sarah Grove's on-line journal should be excluded from this trial. Defendant contends that Sarah Grove posted statements on a public internet site and that to the extent these statements contain information about her relationship with her father or information about Mr. Grove's activities after his ankle injury, they are relevant and admissible.

**Recommendation:** Sarah Grove posted statements in a public sphere.  This Court has not been presented with the exact content of Sarah Grove's statements to be able to make a definitive determination about admissibility of her entire on-line journal and all her statements in the journal.  However, these statements appear to be made by Ms. Grove, a party in this matter, and thus would be admissible under Federal Rule of Evidence 801(d)(2).  While some statements may contain information that would be more prejudicial than probative, and thus be inadmissible under Rule 403, some may be highly relevant to her loss of consortium claim.  This Court finds that the admissibility of Sarah Grove's on-line journal must be determined on a statement-by-statement basis during trial when the contents and context are available for the Court's review.

Therefore, Plaintiffs' request to have Sarah Grove's on-line statements excluded from trial is denied at this time.

**22. Mr. Grove's trip to Africa:** Plaintiffs argue that "Unocal should not be permitted to argue, imply, or suggest to the jury that Lawrence Grove's Africa trips somehow indicate that he has not suffered significant injuries, in fact, all references to Africa should be excluded from this trial."

**Recommendation:** This Court finds that Mr. Grove's activity level and use of his ankle

is relevant to his degree of impairment, and thus his travels and activities abroad after his 2002

accident should be admissible.  As Plaintiffs recognize and discuss in their briefing, they can

present evidence during trial to counter any evidence introduced by Defendant that Mr. Grove's

trip to Africa reflects on his physical capabilities.

Therefore, Plaintiffs' request to exclude any reference about Mr. Grove's hunting trips to

Africa is denied.

**23. Mr. Grove's hunting and fishing activities:** Plaintiffs request that this Court "limit

the extent of Unocal's questioning or referencing Larry Grove's hunting and fishing activities

and/or suggesting or implying the fact that Mr. Grove can engage in limited hunting/fishing

activities suggest that he does not have injury or damages."

**Recommendation:** Again, this Court finds that evidence regarding Mr. Grove's activity

level and use of his ankle is relevant to the degree of his impairment, and thus his hunting and

fishing activities after his accident in 2002 are admissible.

Therefore, Plaintiffs' request to exclude all evidence of Mr. Grove's hunting and fishing

activities is denied.

**24. Moose tag incident:** Plaintiffs contend that "Unocal should not be permitted to

suggest, refer, [or] question Mr. Grove regarding an incident in which a friend of Larry Grove,

John Yenason, shot a moose but the Fish and Game Records reflect that Mr. Grove had shot the

moose."  Defendant presented evidence to show that Mr. Grove testified during a deposition that

he did not shoot a moose in September of 2004, but contrary to Mr. Grove's deposition

testimony, the Alaska Fish and Game Records show that he did shoot a moose in September of

2004.  Thus, according to the defendant, the moose incident reflects on Mr. Grove's credibility

and is relevant and admissible.

**Recommendation:** The incident at issue in this request involves a hunting incident in 2004. Unlike the issue with Mr. Grove's citation discussed in number 5 above, this incident did not involve any official citation or conviction and thus Rule 609 is inapplicable. Under Rule 608, this Court may allow Defendant, during cross-examination of a witness, to inquire into specific instances of conduct that reflect on that witness's trustworthiness. How Defendant presents and frames any question related to the moose incident will be determinative of admissibility.

Defendant argues that Mr. Grove lied when he reported shooting a moose in 2004 and thus the incident is relevant to credibility. There is no clear evidentiary basis to suggest that Mr. Grove deliberately lied to Alaska Fish and Game. Any questions regarding the incident itself are therefore not clearly probative of credibility and any probative value is substantially outweighed by prejudice to the Defendant. Defendant is prohibited from inquiring into the moose incident itself or from suggesting Mr. Grove deliberately lied to Alaska Fish and Game when reporting his hunting results.

However, the record shows an inconsistency between the Alaska Fish and Game records and Mr. Grove's statement during his *sworn deposition*. Any possibly false statement made during a recent deposition is very probative of credibility and, in most instances, during cross-examination of a witness a party should be able to inquire about that witness's prior statements it believes are false based on other evidence in its possession. Thus, this Court finds that Defendant may, in accordance with Rule 608, ask about the allegedly false deposition statement during cross-examination of Mr. Grove.

25

Therefore, Plaintiffs' request to prevent Defendant from mentioning the moose tag in 2004 is denied in part and granted in part. Defendant is prohibited from inquiring into the moose incident itself or from suggesting Mr. Grove deliberately lied to Alaska Fish and Game when reporting his hunting results.  However, Defendant may, in accordance with Rule 608, ask about the allegedly false statement during cross-examination of Mr. Grove.

**25. Mr. Grove's personal use fishing permits:** Plaintiffs assert that Defendant should be prohibited from introducing evidence related to allegedly false statements made by Mr. Grove on his personal use permit fishing permits.  Defendant contends that in 2005, Mr. Grove improperly included some of his adult children on his personal use fishing permits in order to increase the number of fish he could take home.  Plaintiffs contend that Mr. Grove was told that he could include his adult children living out of state as members of his household for purposes of personal use fishing.

**Recommendation:** The record does not demonstrate an adequate basis to suggest that Mr. Grove deliberately lied to Alaska Fish and Game on his personal use fishing permits. Furthermore, the record does not indicate that Mr. Grove has given any inconsistent information about this incident during any depositions or sworn answers.  Thus, at this time this Court cannot find that this information is relevant to Mr. Grove's credibility and any possible relevance is outweighed by prejudice to Mr. Grove.

Therefore, Plaintiffs' request to prevent Defendant from mentioning Mr. Grove's personal use fishing permits is granted.

**26. Mr. Grove's trips to Nevada and gambling:** Plaintiffs contend that Defendant should not be able to introduce or refer to Mr. Grove's trips to Nevada, his gambling in Nevada,

or his trips to the shooting range.

**Recommendation:** To the extent that any specific evidence about Mr. Grove's activities after his 2002 ankle injury reflects on his physical abilities and the use of his ankle, it is relevant to his degree of impairment and thus admissible.

However, the relevancy of Mr. Grove's gambling is questionable, as such conduct does not depend on Mr. Grove's physical abilities. Defendant contends that his gambling activities would be admissible with respect to Cynthia Grove's or Sarah Grove's consortium claims because both women, as part of their consortium claims, have stated a concern about money since Mr. Grove's accident. Defendant argues that Mr. Grove's recent gambling activities are inconsistent with Cynthia's and Sarah's stated financial concerns. This Court has not been presented with information to determine how much, if anything, Mr. Grove lost with his gambling and therefore cannot determine whether it really would be relevant to these consortium claims. The relevancy for this evidence appears speculative and marginal at best and would likely be substantially outweighed by the danger of undue prejudice. However, this Court cannot make a definitive determination without knowing more information about the content and context of the evidence Defendant seeks to introduce. If the evidence indicates that Mr. Grove gambled with college education savings or other savings, such evidence may be admissible to show that the accident was not the cause of the family's financial worries. However, short of these large sums of money being gambled and lost, this Court finds that the relevance of these gambling activities would be outweighed by the danger of undue prejudice towards Plaintiffs.

Therefore, Plaintiffs' request to exclude all information about trips, gambling, and shooting range activities is granted in part and denied in part at this time. To the extent that any

specific evidence about Mr. Grove's trips and activities after his 2002 ankle injury reflects on his physical abilities and the use of his ankle, it is relevant to his degree of impairment and thus admissible. Evidence about Mr. Grove's gambling is inadmissible at this time.

**27. The term "subsistence":** Plaintiffs contend that the term "subsistence" should not be allowed during trial because such a term denotes lost economic value rather than loss of quality of life.

**Recommendation:** Plaintiffs have not set forth a clear argument as to why the term "subsistence" should not be used during trial. This Court does not believe a pre-trial ruling prohibiting the utterance of the word is appropriate.

Therefore, Plaintiffs' request regarding the term use of the word "subsistence" is denied.

**28. Other Siemens' employee injuries:** Plaintiffs assert that Defendant should not introduce evidence about other Siemens' employees with similar injuries. Defendant states that it does not intend to present evidence of a Siemens' employee with an ankle injury.

**Recommendation:** This Court cannot make a determination about evidence related to an accident or injury involving another Siemens' employee without details on the specific circumstances surrounding that accident or injury. Defendant states that it does not plan to introduce any evidence about a Siemens' employee with a similar injury.

Therefore, Plaintiffs' request is denied at this time.

**29. Demonstrative tests and experiments:** Plaintiffs ask this Court to limit Defendant's use of "demonstrative tests and experiments" at trial and rule that any such evidence will be closely scrutinized before being admitted.

**Recommendation:** At this time, neither side has put forth any details regarding

demonstrative tests or experiments that might be introduced at trial, and thus this Court cannot make any admissibility determinations.  It is clear that the trial court will examine any specific evidence Defendant seeks to introduce to make sure it is admissible under the law and the Federal Rules of Evidence.

Therefore, Plaintiffs' request is denied at this time.

**30. Mitigation:** Plaintiffs want this Court to prohibit Defendant from arguing that Mr. Grove has not properly mitigated his damages by failing to undertake the appropriate rehabilitation plan or take a comparable job.

**Recommendation:** Plaintiffs fail to describe any details surrounding this request or provide any analysis regarding why this Court should grant the request.  As discussed in the order at docket 290, Alaska state law regarding the mitigation of damages applies.  To the extent Defendant presents evidence that is relevant to the issue of damage mitigation, it is admissible

Therefore, Plaintiffs' request regarding mitigation of damages is denied.

**31. General exclusions:** Plaintiffs ask this Court to "limit the areas of inquires of Unocal on matters not specifically addressed above but likely [to be raised] by defense to divert the jury from the main issues in this case."  Specifically, Plaintiffs ask this Court to limit  questions regarding minor, irrelevant inconsistencies in Mr. Grove's actions and/or statements.  According to Plaintiffs, such questions would simply be prejudicial to Mr. Grove and wasteful of the Court's time.  They also ask this Court to prohibit Defendant from mentioning Mr. Grove's association with certain adult-oriented businesses and from using pejorative terms to describe Mr. Grove during trial.

**Recommendation:** This Court finds that it cannot make a blanket ruling to declare

certain inconsistent statements or actions by Mr. Grove inadmissible as irrelevant or as a waste of the Court's time. Without content and context, this Court cannot bar all questions that raise doubts about Mr. Grove's credibility. The trial court will be able to consider questions as they are raised and to exclude irrelevant, repetitive, or cumulative evidence when necessary.

The same is true for any words that Defendant may use to describe Mr. Grove. Terms that are blatantly offensive and prejudicial will not be allowed. However, this Court cannot order all terms that Plaintiffs deem to be pejorative excluded from trial. It must consider the objections as they are raised.

Finally, from what the Court knows at this time, the mere fact that Mr. Grove is the figurehead president of some adult-oriented businesses is not relevant to this case. However, depending on the Defendant's evidence gathered during discovery, the *income* Mr. Grove receives from these businesses, if any, could be relevant to the calculation of Mr. Grove's damages and lost earnings. The *nature* of the business, however, is inadmissible as irrelevant and prejudicial. Should additional information become available during discovery, the Defendant may request the Court to review this ruling outside the presence of the jury.

Therefore, Plaintiffs' general request to exclude information about inconsistencies in Mr. Grove's actions and statements and pejorative descriptions of Mr. Grove is denied at this time. Information about the nature of the seven businesses in which Mr. Grove is involved is deemed inadmissible due to its prejudicial and severely limited probative value.

DATED this 28th day of July, 2008, at Anchorage, Alaska.
.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

30