## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

LAWRENCE H. GROVE, CYNTHIA
GROVE, SARAH GROVE, and, MICHAEL
GROVE (DOB 1/21/88) by and through his
father LAWRENCE H. GROVE,

               Plaintiffs,

      v.

UNOCAL CORPORATION,

               Defendant.

3:04-CV-00096-TMB-DMS

**ORDER RE: DEFENDANT'S
MOTION IN LIMINE
[DOCKET 211]**

### I. MOTION BACKGROUND

The underlying case stems from an injury sustained by Mr. Larry Grove. Mr. Grove worked for Siemens Building Technologies, Inc. (hereafter Siemens). Siemens had a contract with Defendant, Unocal Corporation (hereafter Defendant), to conduct certain maintenance functions in Defendant's Anchorage building (Doc. 2, Tab 1 at 2). According to the complaint, in September 2002, Mr. Grove was changing the air filters in the mechanical room inside the building. He was using a work platform that consisted of a plank that was held up by brackets in the wall. He fell from this work platform and suffered ankle injuries (Doc. 2, Tab 1 at 2).

Mr. Grove claims that Unocal's negligence caused him to fall and injure his ankle and requests damages. Mr. Grove's family members are also plaintiffs in this matter with distinct claims. Cynthia, Sarah, and Michael Grove each have a separate consortium claim based on Mr. Grove's ankle injuries (Doc. 2, Tab 1).

1

At Docket 211, Defendant filed a motion in limine.  The motion consists of five evidentiary issues that Defendant requests this Court consider prior to trial.  Plaintiffs oppose the motion in limine, arguing that Defendant's requests are either unwarranted or premature.  This Court has considered the issues presented in the motion and presents its analysis and recommendation for each of the five requests.

## II. ANALYSIS AND RECOMMENDATIONS

**1. Indemnity agreement:** Defendant requests this Court preclude any evidence regarding the indemnity agreement contained in its contract with Siemens, Mr. Grove's employer at the time of the accident. The agreement consists of reciprocal indemnity provisions wherein each entity agrees to indemnify the other for claims brought by its own employees.  In other words, Siemens must indemnify Defendant for all claims, liabilities, or damages in connection with injury, illness, disease, or death to Siemens' personnel, and vice versa.  Defendant asserts that evidence of this indemnity agreement is inadmissible under Rule 411 of the Federal Rules of Evidence and pursuant to federal precedent.  Plaintiffs oppose the request, arguing that evidence of the indemnity agreement would be admissible to prove Defendant's reckless indifference toward the safety of Siemens' employees and to prove bias or prejudice in the event one of Siemens' employee accepts blame for the work platform collapse during testimony.

**Recommendation:** Rule 411 applies to evidence of liability insurance.  The rule states as follows:

> Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability

2

when offered for another purpose, such as proof of agency, ownership, or control,

or bias or prejudice of a witness.

Fed. R. Evid. 411.  The purpose of the rule is to prohibit evidence of liability insurance for the

purpose of proving fault and the absence of liability insurance as proof of lack of fault.  Fed. R.

Evid. 411 Advisory Committee Note.

The Ninth Circuit has not clearly addressed whether Rule 411 specifically applies to

indemnity agreements, as well as liability insurance.  See Larez v. Holcomb, 16 F.3d 1513, 1520

n.6  (9th Cir. 1994) (reviewing whether the jury could hear about an indemnity agreement

between the defendant police officer and his city employer in a 42 U.S.C. § 1983 case and stating

"[a]lthough we note that our holding is consistent with Rule 411, we do not rest our decision on

the Rule. ... we leave for another day a determination of the reach of Rule 411").  However,

applying the federal common law in a 42 U.S.C. § 1983 case, the Ninth Circuit affirmed that

"evidence of insurance or other indemnification is not admissible on the issue of damages, and,

should any such information reach the ears of the jurors, the court should issue a curative

instruction."  Id. at 1518-19.

It is clear that evidence of the indemnity agreement is inadmissible as general evidence of

fault for the collapse of the platform.  Such evidence, even if not covered by Rule 411, would be

much more prejudicial than probative because indemnification evidence is easily misused and its

purpose likely to be misunderstood by the jury.  See Sears v. S. Pac. Co., 313 F.2d 498, 504 (9th

Cir. 1963).  Thus, this Court finds that evidence of the indemnity agreement is inadmissible

under Rule 403 for purposes of proving Defendant's liability in general.  However, this Court

cannot make a blanket ruling that in all circumstances questions about or evidence regarding the

3

indemnity agreement would be prohibited.  Although the record available to the Court does not indicate that any of Siemens' employees or agents will testify and accept responsibility for the construction or maintenance of the work platform at issue in this case, evidence of the indemnity agreement could become admissible to prove bias in the event a Siemens employee or agent does testify and accept responsibility for the work platform.  The indemnity agreement may also become admissible in conjunction with other evidence Plaintiffs introduce regarding whether Defendant's conduct amounted to reckless indifference to the safety of subcontractors' employees, thus warranting punitive damages.  For example, in the event Plaintiffs present evidence that Defendant had a policy or made some overt decision not to inspect areas where only contract employees work, questions about or evidence of the indemnity agreement may be relevant to prove why such a policy or decision would be made.

Therefore, Defendant's request to prohibit all references to and evidence of the indemnity agreement between Siemens and Defendant is granted in part and denied in part as follows: Evidence of the indemnity agreement between Siemens and Defendant is inadmissible for purposes of proving Defendant's fault or liability, but in the event Plaintiffs believe that the indemnity agreement has become relevant to prove bias on the part of a witness or to prove reckless indifference on the part of Defendant for purposes of punitive damage determinations, Plaintiffs may seek to introduce evidence of the indemnity agreement by presenting the admissibility question to the Court outside the presence of the jury.

**2. Surveillance of Mr. Grove:** Defendant asserts that Plaintiffs should be precluded from alleging or inferring that Defendant's surveillance of Mr. Grove was illegal, unethical, or otherwise inappropriate.  While Plaintiffs contend that they will not assert that the video

4

surveillance of Mr. Grove was illegal, they argue that Defendant's discovery in this litigation has

been excessive and harassing to the Grove family.

**Recommendation:** Much of Plaintiffs' opposition to this request covers the discovery

grievances Plaintiffs have had with Defendant.  Subsequent to the briefing on this motion, this

Court considered and resolved the outstanding discovery grievances (See Docs. 250, 293).  At

docket 250, this Court found that the video surveillance of Mr. Grove was not shown to be

oppressive or harassing and thus concluded that Plaintiffs were not entitled to a protective order.

Based on this Court's prior discovery ruling on the matter and Plaintiffs' recognition that the

surveillance was not illegal, any attempt to frame the surveillance as illegal or inappropriate

would be a mischaracterization of Defendant's discovery efforts and would unduly prejudice the

Defendant and confuse the issues.

Therefore, Defendant's request is granted, and Plaintiffs are prohibited from attempting to

cast Defendant's surveillance of Mr. Grove as illegal or as an inappropriate discovery method.

**3. Sarah Grove's on-line statements:** Defendant asserts that Plaintiffs should be

precluded from alleging or inferring that Defendant's acquisition of Sarah Grove's on-line

journal was illegal, unethical, or otherwise inappropriate.  While Plaintiffs contend that they will

not assert that the Defendant's downloading of Sarah Grove's on-line journal was illegal, they

argue that this on-line journal and the statements therein are irrelevant to this litigation and

should not be introduced during trial in any manner.

**Recommendation:** The issue in this motion in limine is not the admissibility of the on-

line statements but rather on how Plaintiffs characterize Defendant's discovery and use of the

statements.  Plaintiffs raised the issue about the on-line statements' admissibility in their motion

in limine at docket 156, and the issue has already been considered and determined.  This Court found that the admissibility of Sarah Grove's on-line journal must be determined on a statement-by-statement basis during trial when the contents and context are available for the Court's review and thus recommended that Plaintiffs' request to have Sarah Grove's on-line statements excluded from trial be denied (Doc. 309).  Thus, Plaintiffs' response in opposition to Defendant's request is inapplicable to the decision at issue in this particular motion.

Plaintiffs do not address the issue of whether or not they can attack Defendant's acquisition or use of Sarah Grove's on-line journal during trial.  However, at docket 250, this Court found that Defendant's discovery and use of Sarah Grove's on-line journal was not shown to be oppressive or harassing, and thus concluded that Plaintiffs were not entitled to a protective order in regards to the journal (Doc. 250).  Based on this Court's prior ruling on the matter and Plaintiffs' recognition that the downloading of the on-line journal for purposes of this litigation was not illegal, any attempt to frame Defendant's acquisition or use of the public statements as illegal or inappropriate would be a mischaracterization of Defendant's discovery efforts and would unduly prejudice the Defendant and confuse the issues.

Therefore, Defendant's request is granted, and Plaintiffs are prohibited from arguing that Defendant's acquisition or use of Sarah Grove's journal for purposes of this litigation is illegal or inappropriate.

**4. Spoliation:** Defendant argues that Plaintiffs should be precluded from arguing or implying that Defendant engaged in evidence spoliation.  In response, Plaintiffs reassert their argument that Defendants have engaged in evidence spoliation.

**Recommendation:** Plaintiffs previously asked this Court to consider the spoliation of

6

evidence issue and, as a sanction, enter summary judgment in their favor.  The Court denied

Plaintiffs' request, finding that Defendant did not engage in spoliation (Doc. 305 at 17).  Because

this Court has determined that Defendant did not engage in spoliation, during trial Plaintiffs

should not assert or imply that Defendant has engaged in improper spoliation or otherwise

wrongfully destroyed evidence in this case.

This Court notes that Defendant requested only that Plaintiffs refrain from referring to

evidence spoliation or wrongful evidence destruction.  For purposes of clarification, Plaintiffs are

not prohibited from introducing evidence about or referring factually to the disposition of the

work platform.

Therefore, Defendant's request is granted, and Plaintiffs are prohibited from asserting or

implying that Defendant has engaged in improper spoliation of evidence or otherwise wrongfully

destroyed evidence in this case.

**5. Discovery compliance:**  Defendant asserts that Plaintiffs should be precluded from

arguing or implying that Defendant has failed to comply with its discovery obligations.  Plaintiffs

object, responding with arguments regarding Defendant's discovery violations.

**Recommendation:** After the filing of this motion in limine and the briefing on the

matter, this Court considered and ruled on the discovery motions in this case.  At Docket 293,

this Court granted in part and denied in part Plaintiffs' motion to compel discovery and

disclosure.  This Court finds that Plaintiffs discovery grievances were properly considered and

addressed in the order at Docket 293.  Defendant was ordered to comply with certain discovery

rules and provide further information to Plaintiffs.  Furthermore, as part of its order on Plaintiffs'

motion to compel, the Court directed Defendant to show cause as to why it should not be

sanctioned for failing to provide verified answers or to locate and disclose the affidavit of Mr. Paul Crapps (regarding the dismantling of the work platform).  The order also directed the parties to be prepared to discuss at the hearing whether or not the jury should hear about these discovery matters as a potential sanction.  At the hearing, Plaintiffs withdrew the request for sanctions (Doc. 303).

The Plaintiffs should not be able to inform the jury about the discovery proceedings and practices involved with this litigation.  These discovery issues have been adequately resolved by the Court prior to the trial and there is no need to revisit the issues in front of the jury.

Therefore, Defendant's request is granted, and Plaintiffs are prohibited from arguing or implying that Defendant has failed to comply with its discovery obligations.

DATED this 28th day of July, 2008, at Anchorage, Alaska.

.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

8